## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT, LLC,[1] | Case No. 21-30589 (JCW) |
| Debtor. | |

## DEBTOR'S EX PARTE APPLICATION FOR
## AN ORDER AUTHORIZING IT TO RETAIN AND EMPLOY
## BATES WHITE, LLC AS TALC CONSULTANTS AS OF THE PETITION DATE

The above-captioned debtor (the "Debtor") applies to the Court for the entry of an order authorizing it to retain and employ Bates White, LLC ("Bates White") as talc consultants in this chapter 11 case as of October 14, 2021 (the "Petition Date"). In support of this Application, the Debtor represents as follows:

### Background

1. On the Petition Date, the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

2. The Debtor is a North Carolina limited liability company. It is the direct parent of Royalty A&M LLC, a North Carolina limited liability company, which manages a portfolio of royalty revenue streams, including some based on third-party sales of certain products, and will seek opportunities to acquire or finance additional royalty revenue streams.

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

As of the Petition Date, the Debtor was a defendant in thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products.

3.      A comprehensive description of the Debtor, its history, its assets and liabilities and the events leading to the commencement of this chapter 11 case can be found in the *Declaration of John K. Kim in Support of First Day Pleadings* [Dkt. 5] (the "First Day Declaration"), which was filed on the Petition Date and is incorporated herein by reference.  In addition to the First Day Declaration, the Debtor has filed an Informational Brief [Dkt. 3] to provide additional information about its talc litigation, related costs and plans to address these matters in this chapter 11 case (the "Chapter 11 Case").

4.      On November 8, 2021, the Court entered an order [Dkt. 355] appointing an official committee of talc claimants (the "Talc Committee") in the Chapter 11 Case.

**Relief Requested**

5.      Pursuant to section 327(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Bankruptcy Rules"), and consistent with the *Guidelines for Compensation and Expense Reimbursement of Professionals* issued by this Court (the "Compensation Guidelines"), the Debtor seeks to retain and employ Bates White as talc expert consultants in the Chapter 11 Case to provide expert and consulting services relating to the evaluation and estimation of the Debtor's talc liability, effective as of the Petition Date, in accordance with the terms of the engagement letter between Bates White and Jones Day (on behalf of the Debtor), dated as of October 12, 2021, a copy of which is attached hereto as Exhibit A (the "Engagement Letter") and to continue its role as consultant to the Debtor in connection with *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del.)

("Imerys"), pursuant to an engagement agreement entered into by Bates White and Weil, Gotshal & Manges LLP on behalf of Johnson & Johnson.[3]

6.      In support of this Application, the Debtor submits the *Declaration of Charles H. Mullin, Ph.D.*, the Managing Partner of Bates White (the "Mullin Declaration"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein.

***Bates White's Qualifications***

7.      Bates White is an economic consulting firm that provides, among other things, services relating to the economic analysis and estimation of mass tort claims. Prior to the Petition Date, and beginning on May 20, 2019, Bates White served as a consultant for Old JJCI and Johnson & Johnson in Imerys with respect to talc litigation. On September 13, 2021, Dr. Mullin submitted an expert report in Imerys in response to the expected future claim forecasts and claim valuations offered by experts for the tort claimants' committee and future claimants' representative in that case, and he was deposed on his analysis in that matter on October 8, 2021. Dr. Mullin was preparing to testify in the confirmation hearing in the Imerys matter until the hearing was postponed by order of the court. The Debtor has selected Bates White based on, among other things, its considerable experience with, and knowledge regarding, talc claims and valuation.

8.      As indicated in the Mullin Declaration and in Dr. Mullin's curriculum vitae attached thereto, Dr. Mullin has more than 20 years of experience in providing expert testimony and guidance on litigation and business matters and has authored more than 75 expert reports. Included among the matters in which Dr. Mullin has provided or is currently providing

---

[3]      Bates White's retention agreement for work on the Imerys matter was executed with Weil, Gotshal & Manges LLP ("Weil") on behalf of their client "Johnson & Johnson." Bates White's current understanding is that Weil represents both Johnson & Johnson and Johnson & Johnson Consumer Inc. ("Old JJCI") in Imerys and that Bates White's work in Imerys is for the benefit of both Old JJCI and Johnson & Johnson.

mass tort related expert testimony or related services are the asbestos-related bankruptcy cases of Aldrich Pump LLC, DBMP LLC, Leslie Controls Inc., Motors Liquidation Company, Owens Corning, Plant Insulation Company, Specialty Products Holding Corp. (Bondex), and Thorpe Insulation Company.  In addition, Dr. Mullin has testified in numerous asbestos-related insurance and reinsurance coverage disputes and provided analysis related to valuation in bankruptcies involving other mass torts, such as Blitz U.S.A., Inc. (relating to allegedly defective gas cans), Chemtura Corporation (relating to food and beverage additive diacetyl), Imerys (relating to claims allegedly caused by talc exposure) and TK Holdings (relating to defective airbags).

***Services to Be Provided by Bates White***

9.    The Debtor anticipates that Bates White will render economic consulting, claims valuation and related services to the Debtor as needed in connection with talc personal injury claims against the Debtor and related potential costs and liabilities.  Bates White also will continue to provide consulting services to Johnson & Johnson and the Debtor in Imerys.  Bates White's services to the Debtor in this Chapter 11 Case may include, but are not limited to:

(a)    performing due diligence and analysis regarding the Debtor's current, potential and overall talc liability (both defense costs and indemnity), including with respect to historical and projected trends, econometric evaluations, market analysis and evaluations using other established methodologies;

(b)    estimating the number and value of, and producing analysis with respect to, present and future talc personal injury claims against the Debtor;

(c)    assisting the Debtor in negotiations with various parties regarding the Debtor's talc liability, including by evaluating proposals or potential proposals and providing analysis, information and support in connection therewith;

(d)    advising the Debtor regarding the funding of any talc trust that may be created pursuant to the Bankruptcy Code;

(e)   advising the Debtor regarding financial issues that may impact the valuation of talc claims;

(f)   providing expert testimony and reports related to the foregoing and assisting the Debtor in preparing and evaluating reports and testimony by other experts and consultants;

(g)   assisting and advising the Debtor with regards to talc liability and matters in <u>Imerys</u>; and

(h)   providing such other consulting services as may be requested by the Debtor.

10.   The Debtor requires knowledgeable consultants to render these essential professional services.  As noted above, Bates White has substantial expertise in all of these areas. In addition, Bates White has become familiar with the Debtor, its history and its talc liabilities as a result of its work for Old JJCI and Johnson & Johnson prior to the Petition Date.  Accordingly, the Debtor respectfully submit that Bates White is well qualified to perform these services for the Debtor.

***Compensation and Fee Applications***

11.   Bates White has indicated its willingness to serve as talc consultants and experts for the Debtor and to receive compensation and reimbursement in accordance with its standard billing practices, the provisions of the Engagement Letter, sections 330 and 331 of the Bankruptcy Code, the Compensation Guidelines, any order establishing procedures for interim compensation and reimbursement of expenses of retained professionals (any such order, the "<u>Interim Compensation Order</u>") and any applicable orders of this Court.  The Engagement Letter specifies that the Bates White retention is through Jones Day, as counsel to the Debtor; however, the Debtor is solely responsible for the payment of fees for services rendered by Bates White any related costs under the terms of the Engagement Letter.  <u>See</u> Engagement Letter ¶ 3.

12.     Bates White has agreed to accept as compensation such sums as may be allowed by the Court.  Bates White understands that interim and final fee awards are subject to approval by this Court.

13.     As noted above, Bates White served as a consultant for Old JJCI and Johnson & Johnson in <u>Imerys</u>.  Bates White continues to serve in such role for Johnson & Johnson and now the Debtor on the terms of an engagement agreement entered into by Bates White and Weil.  Bates White's fees and expenses in <u>Imerys</u> will continue to be billed pursuant to that engagement agreement, the terms of which are substantially similar to the terms contained in the Engagement Letter, and reflected in a separate time category for record-keeping purposes. To the extent that Bates White provides services solely to either Johnson & Johnson or the Debtor in <u>Imerys</u>, Bates White will allocate 100% of such fees and expenses to the entity for whom services are provided.  To the extent that Bates White provides services to both the Debtor and Johnson & Johnson, Bates White will allocate 50% of such fees and expenses to the Debtor and 50% of such fees and expenses to Johnson & Johnson.  Bates White's services in the Chapter 11 Case will be provided solely to the Debtor, and accordingly, all such fees and expenses will be charged to the Debtor as set forth in the Engagement Letter and herein.

14.     Prior to the Petition Date, on or about October 12, 2021, Old JJCI provided Bates White a retainer of $250,000.00 for professional services and expenses rendered or to be rendered to the Debtor (the "<u>Retainer</u>").  The application of the Retainer through the Petition Date totaled $4,222.50 and reflects actual fees and expenses for the period from October 12, 2021 through October 14, 2021.  Thus, as of the Petition Date, $245,777.50 of the Retainer remained unapplied.

15.    In addition, on or about October 12, 2021, Bates White received payments for all outstanding invoices relating to the <u>Imerys</u> matter and payment for estimated fees and expenses in <u>Imerys</u> for the period prior to the Petition Date.  Specifically, Bates White received payment of (a) $955,029.59 for (i) invoice #25349 dated August 11, 2021 in the amount of $289,304.27 and (ii) invoice #25588 dated September 21, 2021 in the amount of $665,725.32 and (b) $750,000.00 for certain estimated fees and expenses incurred but not yet billed on the <u>Imerys</u> matter (the "<u>Estimated Amount</u>").  As of the Petition Date, and subject to further reconciliation, Bates White had incurred $578,732.09 in actual fees and expenses not yet billed on the <u>Imerys</u> matter, leaving a $171,267.91 balance from the Estimated Amount to be applied in the future to fees and expenses incurred by Johnson & Johnson in the <u>Imerys</u> matter.

16.    The Debtor respectfully submits that the rates charged by Bates White are fair and reasonable.  Bates White has provided its hourly rates below for work in this case, as follows:

| Billing Category | Range |
|---|---|
| *Partner* (Dr. Charles Mullin) | $1,025 |
| *Partner* | $700-$1,500 |
| *Principal* | $525-$775 |
| *Manager* | $450-$660 |
| *Senior Economist* | $430-$535 |
| *Senior Consultant* | $415-$475 |
| *Economist* | $425 |
| *Consultant II* | $375-$400 |
| *Consultant I* | $350 |
| *Project Coordinator* | $225-$240 |
| *Research Assistant* | $195 |

Bates White's hourly billing rates are subject to periodic adjustments to reflect economic and other conditions and promotions;[4] however, such rates may be adjusted only with the consent of the Debtor. Engagement Letter ¶ 8. Further, under the terms of the Engagement Letter, if the invoiced fees that are not subject to any bankruptcy holdback are paid within 30 days of the date they are due under the Interim Compensation Order or other applicable rules in the Chapter 11 Case, the Debtor will receive a 5% prompt-pay discount for the entire invoiced amount. See Engagement Letter ¶ 11.

17.    Bates White's hourly billing rates are not intended to cover out-of-pocket expenses and certain elements of other expenses that are typically billed separately. Accordingly, Bates White regularly charges its clients for the expenses and disbursements incurred in connection with the client's case, including, among other things, postage and package delivery charges, court fees, transcript costs, travel expenses, expenses for "working meals" and research. Bates White has agreed that it will only seek reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the Compensation Guidelines, the Interim Compensation Order and any other applicable orders of this Court.

18.    The Engagement Letter specifies that any dispute arising between Bates White and Jones Day or the Debtor will be determined by binding arbitration in Washington, DC. See Engagement Letter ¶ 15. Notwithstanding this provision, Bates White has agreed that the bankruptcy court shall hear and adjudicate any such dispute during the pendency of the Chapter 11 Case.

19.    The Engagement Letter specifies that the parties thereto shall not be liable to one another for substantially all indirect, special, consequential or exemplary damages.

---

[4]    The bill rates in the table above reflect Bates White's bill rates for 2021. Bates White is in the process of setting new market rates for 2022 and will provide those to the Debtor once available. Bates White has informed the Debtor that Dr. Mullin's hourly rate for 2022 will be $1,150.

See Engagement Letter ¶ 17.  The Engagement Letter also limits the liability of Bates White for direct damages to the amount of fees paid with respect to services performed under the Engagement Letter.  Id.  Notwithstanding such provision, Bates White's liability will not be limited or released by the Engagement Letter for any claim or expense where:  (a) such claim or expense is judicially determined to have arisen from Bates White's gross negligence, willful misconduct, fraud or bad faith; (b) with respect to a contractual dispute in which the Debtor alleges the breach of Bates White's contractual obligations, the court determines that such release or limitation would not be permissible under applicable law; or (c) such claim or expense is settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Bates White should not have its liability released or limited under the terms of the Engagement Letter.

20.    The Engagement Letter also permits the Debtor, Jones Day or Bates White to terminate the agreement upon seven days written notice.  See Engagement Letter ¶ 19.

*Disclosure Concerning Disinterestedness*

21.    In reliance on the Mullin Declaration and except as set forth therein, the Debtor believes that (a) the members and professionals of Bates White do not have any connections with the Debtor, its affiliates, its creditors, the Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator"), any person employed in the office of the Bankruptcy Administrator or any other party with an actual or potential interest in the Chapter 11 Case or their respective attorneys or accountants; (b) Bates White is not a creditor, equity security holder or insider of the Debtor; (c) none of Bates White's professionals is, or was within two years of the Petition Date, a director, officer or employee of the Debtor; and (d) Bates White neither holds nor represents an interest materially adverse to the Debtor or its estate.  Accordingly, the Debtor believes that Bates White is a "disinterested

person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

22.     To the extent that, during the period of its retention, Bates White discovers any new relevant facts or relationships bearing on the matters described herein, Bates White will supplement the Mullin Declaration.

### Notice

23.     Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtor seeks approval of this Application on an <u>ex parte</u> basis.  Nevertheless, consistent with the *Order Establishing Certain Notice, Case Management and Administrative Procedures* [Dkt. 322] (the "<u>Case Management Order</u>"), notice of this Application has been provided to:  (a) the Bankruptcy Administrator; (b) the Talc Committee; (c) counsel to the Debtor's non debtor affiliates, Johnson & Johnson Consumer Inc. and Johnson & Johnson; and (d) the other parties on the Service List established by the Case Management Order.  The Debtor submits that, in light of the <u>ex parte</u> nature of the relief requested, no other or further notice need be provided.

### No Prior Request

24.     No prior request for the relief sought in this Application has been made to this or any other court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court (a) enter an order, substantially in the form attached hereto as <u>Exhibit C</u>, granting the relief requested herein; and (b) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated: November 15, 2021
   Charlotte, North Carolina

Respectfully submitted,

LTL Management LLC

By: _/s/ John K. Kim_
  John K. Kim
  Chief Legal Officer

PROPOSED ATTORNEYS FOR
DEBTOR:

C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
Matthew L. Tomsic (NC 52431)
RAYBURN COOPER & DURHAM, P.A.
227 West Trade Street, Suite 1200
Charlotte, North Carolina 28202
Telephone:  (704) 334-0891
Facsimile:  (704) 377-1897
E-mail:  rrayburn@rcdlaw.net
            jmiller@rcdlaw.net
            mtomsic@rcdlaw.net

Gregory M. Gordon (TX Bar No. 08435300)
Dan B. Prieto (TX Bar No. 24048744)
Amanda Rush (TX Bar No. 24079422)
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  gmgordon@jonesday.com
            dbprieto@jonesday.com
            asrush@ jonesday.com
(Admitted *pro hac vice*)

Brad B. Erens (IL Bar No. 06206864)
JONES DAY
77 West Wacker, Suite 3500
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
E-mail:   bberens@jonesday.com
(Admitted *pro hac vice*)

## **Exhibit A**

Engagement Letter

NAI-1521761342

**BATES
WHITE**
ECONOMIC CONSULTING  2001 K Street, NW, North Building, Suite 500, Washington, DC 20006   main 202.408.6110   fax 202.408.7838

October 12, 2021

<u>Via Electronic Mail</u>
Dan B. Prieto, Esq.
Jones Day
2727 North Harwood Street
Suite 500
Dallas, Texas 75201-1515
T: 214.969.4515
dbprieto@jonesday.com

Re:  **LTL Management LLC – Valuation of potential legacy talc liabilities**

Dear Mr. Prieto:

1. Thank you for selecting Bates White, LLC ("Bates White") to provide expert services on behalf of your client, LTL Management LLC ("LTL"), in the above-referenced matter. This letter sets forth the terms of this engagement.

2. Jones Day ("Jones Day" or "you") has agreed to retain Bates White on behalf of Jones Day's client, LTL, in connection with the above-referenced matter. Bates White has agreed to provide Jones Day and LTL with expert consulting services and analysis, including, if requested, a report on same in writing or in sworn testimony. Bates White has agreed to apply independent judgment and conduct independent analysis while undertaking such inquiry and performing such tasks as Jones Day may request and Bates White and Jones Day determine are appropriate.

3. While Jones Day will review invoices provided by Bates White for appropriateness, LTL, not Jones Day, will be responsible for payment of all fees and expenses. Bates White agrees to send all invoices to Jones Day, and Jones Day will forward those invoices, after review, to LTL on a monthly basis. Bates White agrees that, if requested, invoices will also be submitted via an electronic billing system.

4. Bates White understands that its work product under this arrangement is being prepared in connection with the above matter. Bates White agrees not to disclose the fact that it is providing consulting services in this matter unless it has first obtained the written consent of LTL or Jones Day. Bates White will treat all communications with LTL and Jones Day as privileged and confidential; and all documents, data and information, provided to Bates White, in paper, electronic and any other format, by LTL or by Jones Day, shall be deemed "confidential." Unless otherwise agreed, any reports, memoranda, or other documents we prepare in connection with this

BATESWHITE.COM

matter will be treated as confidential attorney work product. Such case-specific materials prepared by Bates White for LTL in connection with this matter (the "Deliverables") will be the property of LTL and will be segregated and maintained separate from Bates White's other work for other clients so that the confidentiality of these matters can be maintained. No disclosure of any such materials will be made to third parties unless such disclosure has been authorized in writing by LTL or Jones Day, or a court or some other lawful process has required disclosure. Information or documents provided by LTL that are or become publicly available shall not be considered confidential. Bates White agrees to comply with all applicable data privacy laws and confidentiality or protective orders.

5. Notwithstanding the foregoing, all methodologies, procedures, management tools, software, data files, concepts, ideas, inventions, know-how, reports, documents, materials, and other intellectual capital ("Bates White intellectual property") that Bates White has developed, created, or acquired prior to performing the above-described services, or such Bates White intellectual property of general purpose and utility that Bates White develops, creates, or acquires during performance of the above-described services, are and shall remain the sole and exclusive property of Bates White, and neither Jones Day nor LTL shall have or acquire any right, claim, title or interest in or to any such intellectual capital.

6. Bates White shall take direction from Jones Day regarding the scope of work and as to the manner in which its work is presented and its Deliverables are prepared and presented. LTL agrees that Bates White may take direction from Jones Day without notification to or approval or concurrence from LTL.

7. The project team at Bates White will include professional and administrative staff resources as appropriate. Our fees are based upon the time actually spent by each assigned Bates White Partner and employee at their hourly billing rate.

8. Our 2021 rates for Bates White personnel range from $195.00 to $1,500.00 per hour. Outside of promotions, Bates White agrees that rates will remain fixed through December 31, 2021. Subsequently and subject to your consent, rates may be adjusted from time to time, typically annually at the end of a calendar year and upon promotion of staff, however rate adjustments must be approved by Jones Day or LTL. Provided that the adjusted rates are market, you, on behalf of LTL, agree that consent to these adjustments will not be unreasonably withheld. Bates White has a wealth of experts, including economists and affiliated academics widely recognized in their fields, who have developed significant expertise in many different fields over many years,

Dan B. Prieto, Esq.
October 12, 2021

and from time to time, those experts may provide strategic consulting advice on this matter. That advice will be billed on an hourly basis, except as otherwise agreed. In addition to professional fees, our bills will include out-of-pocket expenses that Bates White incurs on LTL's behalf, such as travel, electronic invoicing charges from third party vendors, and other case-specific charges. Bates White will initially bill its monthly fees and expenses against the retainer of $250,000 already received in connection with this work.

9.  Invoices will be presented for each month's efforts and are due upon presentation.  Our invoices will contain the total hourly charges by timekeeper for the period covered by the invoice plus a summary of expenses.  Professional fees shall be subject to a 5% prompt pay discount if payment is received by Bates White within sixty (60) days of the invoice date. LTL agrees to communicate disputes over amounts due on an invoice, in writing, within thirty (30) days of the invoice date; provided, however, that to the extent that information regarding an invoice was not reasonably known to LTL as of the invoice data, LTL shall communicate such disputes within thirty (30) days of becoming aware of such information. LTL shall pay the undisputed portion within sixty (60) days of the invoice date. Failure by you or LTL to communicate a disagreement regarding the amount due shall constitute a waiver of any such disagreement. In the event that LTL's account becomes overdue in excess of ninety (90) days past the invoice date or LTL refuses to pay in whole or in part for work performed, Bates White reserves the right to withhold further services.  Bates White requires that all invoices outstanding more than ninety (90) days past the invoice date be paid prior to any deposition, hearing appearance or courtroom testimony.

10. If it becomes necessary for an affiliate of LTL to file a petition under chapter 11 of the Bankruptcy Code, the ongoing employment of Bates White will be subject to the approval of the bankruptcy court with jurisdiction over the petition. If necessary, Bates White will modify the terms and conditions of employment described above as may be required to comply with the applicable requirements of the bankruptcy process, including any orders of the bankruptcy court.

11. Should this matter become subject to bankruptcy court payment processes, subject to the approval of the bankruptcy court as described above, then payment terms would be modified as follows. The timing of payment regarding the portion of invoices not subject to any holdback provisions will dictate the prompt-pay discount and interest accrual for the entire balance of the invoice. For example, invoices for which LTL pays the balance not subject to a holdback provision within thirty (30) days of the payment date included in the bankruptcy court payment process would receive the 5% prompt-pay discount for the entire balance of the invoice, regardless of when the court approves payment of the funds subject to the holdback provision. Similarly, interest shall not apply to portions of invoices subject to a holdback provision until after seventy-five (75) days

Dan B. Prieto, Esq.
October 12, 2021

after the later of the date the court approves payment of the funds subject to the holdback provision and the deadline for making the holdback payment set forth in the bankruptcy court payment process.

12. Upon request, Bates White will provide Jones Day or LTL with an estimated budget for the services. Any estimate of anticipated fees and costs will be our best estimate of the effort required to complete the work based upon the information available to Bates White at the time it is made. Under no circumstances shall any such estimate be considered a maximum fee or an offer to perform the services on a fixed fee basis.

13. Except as otherwise may be required by law, it is Bates White's policy to return or destroy documents and data provided by Jones Day or LTL, or subject to protective orders, at the conclusion of the engagement. Therefore, Jones Day or LTL will notify Bates White promptly upon the closing of this matter and provide direction to Bates White with respect to disposition of such documents or data. If Jones Day or LTL requests the return or destruction of its documents or data, Bates White will return or destroy them at LTL's expense. If Jones Day or LTL does not provide such direction within the earlier of thirty days (30) of the conclusion of the engagement or fourteen (14) days prior to the deadline for compliance with the terms of an applicable protective order, Bates White may return or destroy such documents at LTL's expense without further notice or liability.

14. Bates White is not aware of anything that would impair our ability to provide independent and objective services in this matter. Jones Day and LTL acknowledge that Bates White is engaged by many different clients, ranging from corporations to other business entities, law firms, and government entities, including those with adverse, competitive or opposing interests. Jones Day and LTL further acknowledge that they are aware that Bates White was previously retained by Weil, Gotshal & Manges LLP on behalf of their client Johnson & Johnson to provide consulting and expert services in the matter of *In re: Imerys Talc America, Inc. et al., No. 19-10289 (Bankr. D. Del.)*. That matter remains active and Bates White will continue to take direction from Weil, Gotshal & Manges LLP regarding the scope of work and as to the manner in which such work is presented and what Deliverables are prepared and presented in the Imerys litigation. To avoid potential conflicts of interest, Bates White agrees not to consult or serve as a consultant or testifying expert in the present bankruptcy matter or substantially similar matter on behalf of any party that is adverse to LTL in this matter. You and LTL agree, however, that Bates White may be engaged by parties with interests adverse to LTL in matters other than those described in the immediately preceding sentence. Jones Day and LTL acknowledge that Bates White has been, is, or may be engaged to provide consulting and/or expert services by other defendant parties

Dan B. Prieto, Esq.
October 12, 2021

Page 5 of 8

involved in or with interests in lawsuits or claims alleging injury from talcum powder products. To ensure clarity, such Bates White retentions by other talc defendants is not considered adverse to LTL. You and LTL further acknowledge that Bates White remains free to perform work similar, in subject matter or otherwise, to that requested by you in other matters and for other clients. Bates White is not required to advise Jones Day or LTL of such engagements. Bates White is committed to protecting the confidential information of clients, and Bates White may establish internal walls if deemed necessary in Bates White's discretion and at such time as Bates White deems necessary and appropriate.

15. Any dispute, claim or controversy between Bates White on the one hand and Jones Day or LTL on the other hand, arising out of or relating to this agreement, whether sounding in contract, tort (including, but not, limited to malpractice) or otherwise, including the breach, termination, enforcement, interpretation or validity thereof, and including the determination of the scope or applicability of this agreement to arbitrate and all issues relating to whether a dispute, claim, controversy, or party is subject to arbitration, shall be determined in binding arbitration. The arbitration shall be before a single arbitrator and shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedure then in place and effect. Such arbitration shall take place in Washington, DC. The substantially prevailing party shall be entitled to fees and costs incurred in the arbitration. Judgment on the award may be entered in any court of competent jurisdiction.

16. This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia without respect to its conflicts of laws principles. Each of the parties hereby consents to submit itself to the personal jurisdiction of the federal and local courts located in Washington, DC in any suit, action, or proceeding arising out of or relating to this Agreement that could not be resolved by the parties in accordance with the arbitration process set out above. In any proceedings brought to enforce the terms of this Agreement, the substantially prevailing party shall be entitled to fees and costs incurred including, without limitation, reasonable attorneys' fees.

17. The parties shall not be liable to one another, whether sounding in contract, tort, (including but not limited to malpractice), or otherwise, including the breach, termination, enforcement, interpretation, or validity of this agreement, for indirect, special, consequential, or exemplary damages, nor shall Bates White be liable for direct damages in excess of fees paid with respect to services performed under this letter.

Dan B. Prieto, Esq.
October 12, 2021

18. Unless extended in writing (or unless earlier terminated as provided below), this engagement will terminate upon the earliest of (a) the end of the matter described in this letter, (b) the conclusion of our work on the matter, or (c) written notification by Bates White, Jones Day or LTL that the agreement is terminated. In any event, unless we agree otherwise in writing, this engagement will be deemed terminated if the matter has been inactive and Bates White has had no occasion to perform any expert services in connection with it for a period of one year.

19. Jones Day, LTL or Bates White may terminate this agreement upon seven (7) days written notice. In the event of termination by Jones Day, LTL, or Bates White, LTL continues to be responsible for payment for work performed up to and including the date of termination, and such payment shall be due immediately.

20. The parties agree that paragraphs 2, 3, 4, 5, 9, 13, 14, 15, 16, 17, and 19 survive the termination of this Agreement.

21. If this letter correctly states our arrangements, please sign below where indicated and return it to our attention.

Sincerely,

Bates White, LLC

Andrew R. Evans, CFA
Partner

Dan B. Prieto, Esq.
October 12, 2021

Jones Day

By: _____
     Dan B. Prieto

Dated: 10/29/21 _____

Dan B. Prieto, Esq.
October 12, 2021

LTL Management LLC

By: _____
     John K. Kim
     Chief Legal Officer

Dated: _____

## **Exhibit B**

Mullin Declaration

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT, LLC,[1] | Case No. 21-30589 (JCW) |
| Debtor. | |

### DECLARATION OF CHARLES H. MULLIN, PH.D.

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), Charles H. Mullin, Ph.D. declares:

1.      I am the Managing Partner of Bates White, LLC ("Bates White"), which

maintains offices at 2001 K Street NW, North Building, Suite 500, Washington, DC 20006.

A copy of my curriculum vitae is attached hereto as Exhibit 1.

2.      I am duly authorized to make this Declaration on behalf of Bates White.

I make this Declaration in support of the *Debtor's Ex Parte Application for an Order*

*Authorizing It to Retain and Employ Bates White, LLC as Talc Consultants as of the Petition*

*Date* (the "Application").[2]  The facts set forth in this Declaration are personally known to me

and, if called as a witness, I could and would testify thereto.

### Bates White's Qualifications

3.      Bates White is an economic consulting firm that provides, among other

things, services relating to the economic analysis and estimation of mass tort claims.  Prior to the

Petition Date, and beginning on May 20, 2019, Bates White served as consultant for Old JJCI

---

[1]      The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is
501 George Street, New Brunswick, New Jersey 08933.

[2]      Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

and Johnson & Johnson in <u>Imerys</u> with respect to certain talc litigation.[3]  On September 13,

2021, I submitted an expert report in <u>Imerys</u> in response to the expected future claim forecasts

and claim valuations offered by experts for the tort claimants committee and future claimants'

representative in that case, and was deposed on my analysis in that matter on October 8, 2021.

I was preparing to testify in the confirmation hearing in the <u>Imerys</u> matter when the order was

entered in that case postponing that hearing.  Bates White thus has considerable experience with,

and knowledge regarding, talc claims and valuation.

       4.     I have more than 20 years of experience in providing expert testimony and

guidance on litigation and business matters and have authored more than 75 expert reports.

Included among the matters in which I have provided or am currently providing mass tort related

expert testimony or related services are the asbestos-related bankruptcy cases of Aldrich Pump

LLC, DBMP LLC, Leslie Controls Inc., Motors Liquidation Company, Owens Corning, Plant

Insulation Company, Specialty Products Holding Corp. (Bondex), and Thorpe Insulation

Company.  In addition, I have testified in numerous asbestos-related insurance and reinsurance

coverage disputes and provided analysis related to valuation in bankruptcies involving other

mass torts, such as Blitz U.S.A., Inc. (relating to allegedly defective gas cans), Chemtura

Corporation (relating to food and beverage additive diacetyl), <u>Imerys</u> (relating to claims

allegedly caused by talc exposure) and TK Holdings (relating to defective airbags).

## Services to Be Provided by Bates White

       5.     Bates White will render economic consulting, claims valuation and related

services to the Debtor as needed in connection with talc personal injury claims against

---

[3]     Bates White's retention agreement for work on the <u>Imerys</u> matter was executed with Weil on behalf of their
client "Johnson & Johnson."  Bates White's current understanding is that Weil represents both Old JJCI
and Johnson & Johnson in <u>Imerys</u> and that Bates White's work in <u>Imerys</u> is for the benefit of both Old JJCI
and Johnson & Johnson.

the Debtor and related potential costs and liabilities.  Bates White also will continue to provide

consulting services to Johnson & Johnson and the Debtor in Imerys.  Bates White's services to

the Debtor in this Chapter 11 Case may include, but are not limited to:

(a)  performing due diligence and analysis regarding the Debtor's current, potential and overall talc liability (both defense costs and indemnity), including with respect to historical and projected trends, econometric evaluations, market analysis and evaluations using other established methodologies;

(b)  estimating the number and value of, and producing analysis with respect to, present and future talc personal injury claims against the Debtor;

(c)  assisting the Debtor in negotiations with various parties regarding the Debtor's talc liability, including by evaluating proposals or potential proposals and providing analysis, information and support in connection therewith;

(d)  advising the Debtor regarding the funding of any talc trust that may be created pursuant to the Bankruptcy Code;

(e)  advising the Debtor regarding financial issues that may impact the valuation of talc claims;

(f)  providing expert testimony and reports related to the foregoing and assisting the Debtor in preparing and evaluating reports and testimony by other experts and consultants;

(g)  assisting and advising the Debtor with regards to talc liability and matters in Imerys; and

(h)  providing such other advisory services as may be requested by the Debtor.

**Compensation and Fee Applications**

6.      Bates White is willing to serve as talc consultants and experts for the

Debtor and to receive compensation and reimbursement in accordance with its standard billing

practices, the provisions of the Engagement Letter, sections 330 and 331 of the Bankruptcy

Code, the Compensation Guidelines, the Interim Compensation Order and any other applicable

orders of this Court.  The Engagement Letter specifies that the Bates White retention is through

Jones Day, who will provide direction as to the scope and type of services Bates White is to

provide.  In any event, however, the Debtor is solely responsible for the payment of services

rendered by Bates White under the terms of the Engagement Letter.  See Engagement Letter ¶ 3.

7.      Bates White has agreed to accept as compensation such sums as may be

allowed by the Court.  Bates White understands that interim and final fee awards are subject to

approval by this Court.

8.      As noted above and in the Application, Bates White served as consultant

for Old JJCI and Johnson & Johnson in Imerys.  Bates White continues to serve in such role for

Johnson & Johnson and now the Debtor on the terms of an engagement agreement entered into

by Bates White and Weil.  Bates White's fees and expenses in Imerys will continue to be billed

pursuant to that engagement agreement, the terms of which are substantially similar to the terms

contained in the Engagement Letter, and reflected in a separate time category for record-keeping

purposes.  To the extent that Bates White provides services solely to either Johnson & Johnson

or the Debtor in Imerys, Bates White will allocate 100% of such fees and expenses to the entity

for whom services are provided.  To the extent that Bates White provides services to both the

Debtor and Johnson & Johnson, Bates White will allocate 50% of such fees and expenses to the

Debtor.  Bates White's services in the Chapter 11 Case will be provided solely to the Debtor, and

accordingly, all such fees and expenses will be charged entirely to the Debtor as set forth in the

Engagement Letter and herein.

9.      Prior to the Petition Date, on or about October 12, 2021, Old JJCI

provided Bates White a retainer of $250,000.00 for professional services and expenses rendered

or to be rendered to the Debtor (the "Retainer").  The application of the Retainer through the

Petition Date totaled $4,222.50 and reflects certain actual fees and expenses for the period from

October 12, 2021 through October 14, 2021.  Thus, as of the Petition Date, $245,777.50 of the Retainer remained unapplied.

   10. In addition, on or about October 12, 2021, Bates White received payments for all outstanding invoices relating to the <u>Imerys</u> matter and payment for certain estimated fees and expenses in <u>Imerys</u> for the period prior to the Petition Date.  Specifically, Bates White received payment of (a) $955,029.59 for (i) invoice #25349 dated August 11, 2021 in the amount of $289,304.27 and (ii) invoice #25588 dated September 21, 2021 in the amount of $665,725.32 and (b) $750,000.00 for certain estimated fees and expenses incurred but not yet billed on the <u>Imerys</u> matter (the "<u>Estimated Amount</u>").  As of the Petition Date, and subject to further reconciliation, Bates White had incurred $578,732.09 in actual fees and expenses not yet billed on the <u>Imerys</u> matter, leaving a $171,267.91 balance from the Estimated Amount to be applied in the future to fees and expenses incurred by Johnson & Johnson in the <u>Imerys</u> matter.

   11. Bates White has provided its hourly rates below for work in this case as follows:

| **Billing Category** | **Range** |
|---|---|
| *Partner* (Dr. Charles Mullin) | $1,025 |
| *Partner* | $700-$1,500 |
| *Principal* | $525-$775 |
| *Manager* | $450-$660 |
| *Senior Economist* | $430-$535 |
| *Senior Consultant* | $415-$475 |
| *Economist* | $425 |
| *Consultant II* | $375-$400 |
| *Consultant I* | $350 |
| *Project Coordinator* | $225-$240 |
| *Research Assistant* | $195 |

Bates White's hourly billing rates are subject to periodic adjustments to reflect economic and other conditions and promotions;[4] however, such rates may be adjusted only with the consent of the Debtor.  See Engagement Letter ¶ 8.  Further, under the terms of the Engagement Letter, if the invoiced fees that are not subject to any bankruptcy holdback are paid within 30 days of the date they are due under the Interim Compensation Order or other applicable rules in the Chapter 11 Case, the Debtor will receive a 5% prompt-pay discount for the entire invoiced amount.  See Engagement Letter ¶ 11.

12.    In addition, also subject to approval by this Court, Bates White shall submit for reimbursement all of its reasonable out-of-pocket expenses in connection with this chapter 11 case.

13.    No promises have been received by Bates White as to compensation in connection with this chapter 11 case other than as outlined in this Declaration and the Application in accordance with the provisions of the Bankruptcy Code.  Bates White has no agreement with any other entity to share any compensation received.

14.    The terms of Bates White's employment and compensation as described in this Declaration, the Engagement Letter and the Application are consistent with employment and compensation arrangements typically entered into by Bates White when providing such advisory services and, to the best of our knowledge, are competitive with those arrangements entered into by other economic consulting firms when rendering comparable services.

15.    The Engagement Letter specifies that any dispute arising between Bates White and Jones Day or the Debtor will be determined by binding arbitration in Washington, DC.  See Engagement Letter ¶ 15.  Notwithstanding this provision, Bates White has

---

[4]    The bill rates in the table above reflect Bates White's bill rates for 2021.  Bates White is in the process of setting new market rates for 2022 and will provide those to the Debtor once available.  Bates White has informed the Debtor that my hourly rate for 2022 will be $1,150.

agreed that the bankruptcy court shall hear and adjudicate any such dispute during the pendency of the Chapter 11 Case.

16.     The Engagement Letter specifies that the parties thereto shall not be liable to one another for substantially all indirect, special, consequential or exemplary damages. See Engagement Letter ¶ 17.  The Engagement Letter also limits the liability of Bates White for direct damages to the amount of fees paid with respect to services performed under the Engagement Letter.  Id.  Notwithstanding such provision, Bates White's liability will not be limited or released by the Engagement Letter for any claim or expense where:  (a) such claim or expense is judicially determined to have arisen from Bates White's gross negligence, willful misconduct, fraud or bad faith; (b) with respect to a contractual dispute in which the Debtor alleges the breach of Bates White's contractual obligations, the Court determines that such release or limitation would not be permissible under applicable law; or (c) such claim or expense is settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Bates White should not have its liability released or limited under the terms of the Engagement Letter.

17.     The Engagement Letter also permits the Debtor, Jones Day or Bates White to terminate the agreement upon seven days written notice.  See Engagement Letter ¶ 19.

### Disclosure Concerning Disinterestedness

18.     Through Jones Day, the Debtor has provided us a listing of potentially interested parties in the Chapter 11 Case (the "Interested Parties").  To the extent that information was available, we undertook a detailed, good faith search to determine and to disclose, as set forth herein, whether we have provided or currently provide consulting services to any significant creditors, insiders or other parties-in-interest identified by such list in any

substantively unrelated matters. The identities of the Interested Parties are set forth on Exhibit 2 hereto.

19. In preparing this Declaration, our staff, under my direction and control, searched our database containing the names and matter descriptions of current and previous engagements handled by our firm. To the extent the information is available, the search request identified parties to whom Bates White has provided or currently provides services that also are Interested Parties, which included significant creditors of the Debtor, significant professional advisors to the Debtor and other potential parties-in-interest in this Chapter 11 Case.

20. To the best of my knowledge and belief, Bates White has provided, or is currently providing, consulting services to certain creditors of the Debtor (or affiliates of creditors of the Debtor), equity security holders or other parties-in-interest in matters unrelated to the Debtor or the Chapter 11 Case, as described on Exhibit 3 to this Declaration. In addition, as described in Exhibit 3, and as noted above, prior to the formation of the Debtor, Bates White was retained to provide consulting services to the Debtor's non-debtor affiliates, Johnson & Johnson and Old JJCI in connection with Imerys, and is currently continuing to provide such services to Johnson & Johnson and the Debtor at the direction of Weil.

21. If Bates White discovers additional information that requires disclosure, we will promptly file a supplemental disclosure with the Court.

22. Bates White is not a creditor, equity security holder or an insider of any of the Debtor.

23. Bates White is not, and was not, within two years before the Petition Date, a director, officer or employee of the Debtor.

24. Accordingly, to the best of my knowledge, information and belief, Bates White is a "disinterested person" as such term is defined by section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 15, 2021
        Washington, DC

Charles H. Mullin, Ph.D.
BATES WHITE, LLC
2001 K Street NW
North Building, Suite 500
Washington, DC 20006
Telephone:  (202) 408-6110
Facsimile:  (202) 408-7838

## **EXHIBIT 1**

Charles H. Mullin, Ph.D. Curriculum Vitae

NAI-1521761342



2001 K Street NW North Building, Suite 500
Washington, DC 20006
Main 202. 408. 6110

# CHARLES H. MULLIN, PHD

**Partner**



**AREAS OF EXPERTISE**

- **Data analysis**
- **Econometrics**
- **Economic modeling**
- **Insurance allocation**
- **Microsimulation modeling**
- **Statistical analysis**

## SUMMARY OF EXPERIENCE

Charles H. Mullin is the Bates White Managing Partner. He provides advice and expert analysis on issues involving mass torts, class actions, insurance coverage, bankruptcies, and due diligence for mergers, acquisitions, and spin-offs. He is a recognized expert on statistical and data analysis, econometrics, economic and microsimulation modeling, sample design, insurance allocation, and the valuation of mass torts. Since 2018— the inaugural year of the award—*Who's Who Legal* has named him Insurance Expert of the Year, and he has been a *Who's Who Legal* Insurance and Reinsurance Expert Witness Thought Leader since 2016 and Global Elite Thought Leader since 2020. Dr. Mullin has authored more than 75 expert reports and provided expert testimony in more than 50 matters, as well as provided due diligence reports for corporate transactions. He has more than 20 years of experience providing this expertise in both the private and public sectors.

He taught courses in statistics, econometrics, and labor economics while on the faculty in the Department of Economics at Vanderbilt University and at the University of California at Los Angeles. Dr. Mullin has published papers on applied and theoretical econometrics and labor economics in peer-reviewed journals, and he is frequently invited to speak at industry conferences.

## EDUCATION

- PhD, Economics, University of Chicago
- BA, Mathematics and Economics, University of California at Berkeley

## SELECTED EXPERIENCE

- Authored expert report and provided deposition on behalf of the Debtor in *In re LTL Management LLC*, No. 21-30589 (JCW) (Bankr. W.D.N.C.): 2021–present.
- Authored expert report and provided deposition testimony on behalf of the Johnson & Johnson in *In re: Imerys Talc America, Inc.*, et al. No. 19-10289-LSS (Bankr. D. Del.): 2019–present.
- Authored expert report in *In re: Mallinckodt PLC*, et al. No. 20-12522-JTD (Bankr. D. Del.): 2020–present.

- Authored expert report and provided deposition testimony in *Kevin Brown et al. v. Saint-Gobain Performance Plastics Corporation and Gwenael Busnel*, No. 1:16-cv-00242-JL (U.S. Dist. Ct. D. N.H.): 2020–present.

- Authored expert report, provided deposition testimony, provided hearing testimony, and assessed the value of pending and future asbestos-related personal-injury claims on behalf of the Debtors in *In re Aldrich Pump LLC, et al.*, No. 20-30608 (Bankr. W.D.N.C.): 2020–present.

- Assessed the value of pending and future abuse claims on behalf of the Debtors in *In re: Boy Scouts of America and Delaware BSA, LLC* No. 20-10343-LSS (Bankr. D. Del.): 2020–present.

- Assessed the value of pending and future asbestos-related personal-injury claims on behalf of the Debtors in *In re DBMP, LLC*, No. 20-30080 (Bankr. W.D.N.C.): 2020–present.

- Assessed the value of pending and future asbestos-related personal-injury claims on behalf of the Debtors in *In re Paddock Enterprises, LLC*, No. 20-10028 (LSS) (Bankr. D. Del.): 2020–present.

- Authored presentation for investor group and provided model of potential losses related to bodily-injury claims alleged related to agricultural pollutant: 2019.

- Retained on behalf of the Debtors in *In re Purdue Pharma L.P., et al.*, No. 19-23649 (Bankr. S.D.N.Y.): 2019–present.

- Authored expert report in *In re Midwest Generation, LLC, et al.*, No. 12-49218 (Bankr. N.D. Ill.): 2019.

- Authored expert report and provided deposition testimony on behalf of excess insurers in *In re Kaiser Gypsum Company, Inc., et al.*, No. 16-31602 (Bankr. W.D.N.C.): 2018–present.

- Authored expert report in *Consumer Financial Protection Bureau v. Navient Corporation and Navient Solutions, Inc.*, No. 3:17-cv-00101 (M.D. Pa., Jan. 18, 2017). 2018–present.

- Authored expert report and provided deposition testimony in *Keyes Law Firm v. Napoli Bern Ripka Shkolnik, LLP, et al.*, No. 1:17-cv-02972 (U.S. Dist. Ct. D. Md.): 2018–2020.

- Authored expert report and provided deposition testimony in *St. Paul Surplus Lines Insurance Company v. Wright Medical Group, Inc., et al.*, No. CH-14-0927 (Tn. Ch. Ct. 13th Jud. Dist. Memphis): 2018–2019.

- Authored expert report, provided deposition testimony, and testified in *Cannon Electric, Inc., now known as ITT Cannon, Inc., et al. v. ACE Property and Casualty Company, et al.*, No. BC 290354 (Super. Ct. Cal. L.A. Cnty. Ct.): 2018.

- Assessed the value of pending and future asbestos-related personal-injury claims on behalf of the Debtors in *In re Bestwall, LLC*, No. 17-31795 (Bankr. W.D.N.C.): 2017–present.

- Assessed the value of pending and future airbag-related personal-injury claims on behalf of automobile manufacturers in the matter of *In re: TK Holdings Inc., et al.*, No. 17-11375 (BLS) (Bankr. D. Del.) and related proceedings: 2017–2018.

- Authored expert reports and testified in *James D. Sullivan et al. v. Saint-Gobain Performance Plastics Corporation*, No. 5:16-cv-00125 (U.S. Dist. Ct. D. Vt.): 2017–2019.

- Authored expert report, provided deposition testimony, and testified in *In re the Receivership of Fraser's Boiler Service, Inc.*, No. 15-2-01791-8 SEA (Wash. Super. Ct., King Cnty.): 2017.

- Authored expert report in *Gerrit H. Brouwer et al. v. Wyndham Vacation Resorts, Inc. et al.*, No. 2014-CA-008533 (Fl. Cir. Ct. 9th Jud. Cir. Orange Ct.): 2017–present.

- Authored expert report in *Ernest Yaeger, Jr. et al. v. Wyndham Vacation Resorts, Inc. et al.*, No. 2014-CA-008054 (Fl. Cir. Ct. 9th Jud. Cir. Orange Ct.): 2017–present.

- Authored declarations and testified in a reinsurance arbitration: 2017–present.

- Authored declaration and reports, provided deposition testimony, and testified in a reinsurance arbitration: 2016–present.

- Analyzed coverage issues on behalf of Columbia Casualty Co. regarding pharmaceutical-based losses: 2016.

- Authored expert reports on behalf of HDI-Gerling Industrial Insurance Co. regarding pharmaceutical-based losses: 2015–2016.

- Authored expert report and declaration and provided deposition testimony in *Appleton Papers Inc. & NCR Corp. v. George A. Whiting paper Co. et al.*, No. 08-C-16 (U.S. Dist. Ct. E.D.WI): 2015–2017.

- Authored expert reports on behalf of ACE Bermuda insurance Ltd. regarding an arbitration claim by 3M Company regarding allegedly defective masks and respirators against Bermuda-Form policies: 2015–2016.

- Authored expert report on behalf of Allstate Insurance Company regarding an insurance contribution claim in *Certain Underwriters at Lloyd's London v. Allstate et al.*, No. C101-1674 (Ohio Ct. Com. Pl., Lucas Cnty.): 2015–2016.

- Analyzed coverage issues stemming from agricultural-related water contamination claims: 2015–2018.

- Analyzed coverage issues stemming from MTBE-related claims filed: 2015–2018.

- Authored expert report and provided deposition testimony in *Direct General Ins. Co. v. Indian Harbor Ins. Co.*, No. 1:14-CV-20050-MGC (S.D. Fla.): 2015.

- Authored expert report, provided deposition testimony, and testified during arbitration on behalf of General Re Corporation and SCOR SE in a reinsurance matter: 2014–2017, 2018–present.

- Analyzed coverage issues stemming from Benzene claims filed in *Radiator Specialty Company vs. Arrowood Indemnity Company et al.*, No. 13 CVS 2271 (NC Super. Ct. Mecklenburg Cnty.): 2014–2015.

- Coauthored letters supporting the approximately $700 million international legacy asbestos liability and related insurance valuations for the newly combined AMEC Foster Wheeler across US GAAP and IFRS accounting frameworks, as well as periodic updates to said analyses: 2014–present.

- Authored declaration on behalf of insurance companies in *AIU Ins. Co. v. Philips Elecs. N. Am. Corp.*, No. 9852-VCN (Del. Ch.): 2014–2015.

- Authored declaration on behalf of insurance companies in *In re T.H. Agric. & Nutrition, LLC*, No. 08-14692 (Bankr. S.D.N.Y.): 2014.

- Analyzed coverage issues stemming from environmental loss in *Olin Corporation v. Insurance Company of North America et al.*, No. 84 CIV. 1968 (TPG) (U.S. Dist. Ct. S.D.N.Y.): 2014–2015.

- Provided legacy liability valuation report that parsed liability for a large-scale energy generator across specific facilities and over time: 2014.

- Authored expert report, provided deposition testimony, and testified during arbitration on behalf of Allstate Insurance Company in a reinsurance matter: 2013–2015.

- Provided deposition testimony on behalf of National Indemnity Company in *Nat'l Indem. Co. v. State*, No. XDDV 2012-140 (Mont. Dist. Ct., Lewis & Clark Cnty.): 2013–2018.

- Authored expert report, provided deposition testimony, and testified on behalf of insurance companies in *Nooter Corp. v. Allianz Underwriters Ins. Co.*, No. 1022-CC01145-01 (Mo. Cir. Ct. 22nd Jud. Cir. St. Louis City): 2013–present.

- Coauthored expert report, provided deposition testimony, and testified on behalf of multiple insurance companies in *In re Blitz U.S.A.*, No. 11-13603 (PJW) (Bankr. D. Del.): 2013–2014.

- Provided deposition testimony on behalf of The Hartford Accident and Indemnity Company in the matter *Fluor Corp. v. Hartford Accident & Indem. Co.*, No. 06CC00016 (Cal. Super. Ct., Orange Cnty.): 2013.

- Authored expert report on behalf of The Hartford Accident and Indemnity Company in the matter *Hartford Accident & Indemnity Co. v. Travelers Indem. Co.*, No. X07-HHD-CV-11-6021732-S (Conn. Super. Ct., Hartford Cnty.): 2013–2015.

- Provided deposition and trial testimony on behalf of The Travelers Indemnity Company in *US Silica Co. v. ACE Fire Underwriters Ins. Co.*, No. 06-C-2 (W. Va. Cir. Ct., Morgan Cnty.): 2013.

- Authored expert report and testified during arbitration proceedings on behalf of the Massachusetts Insurance Insolvency Fund in *In re the Liquidation of Midland Ins. Co.*, No. 41294/86 (N.Y. Sup. Ct.): 2012–2013.

- Authored expert report, provided deposition testimony, and testified at trial on behalf of Defendant in *Cannon Elec., Inc. v. Affiliated FM Ins. Co.*, No. BC 290354 (Cal. Super. Ct., L.A. Cnty.): 2012–2013.

- Authored expert report and provided deposition testimony on behalf of multiple insurance companies in *Goodrich Corp. v. A.G. Securitas et al.*: 2013–2015.

- Authored expert reports and testified during arbitration proceedings on behalf of Munich Re regarding pharmaceutical-based losses: 2011–2013.

- Authored expert report on behalf of Zurich International (Bermuda) Ltd. in a Wellington ADR: 2011.

- Authored expert reports, provided deposition testimony, and testified during arbitration on behalf of Liberty Mutual Insurance Company in a series of related reinsurance arbitration matters: 2011–2013.

- Authored expert reports and declarations, provided deposition testimony, and testified during the confirmation hearing on behalf of multiple insurance companies in *In re Plant Insulation Co.*, No. 09-31347 TC (Bankr. N.D. Cal.): 2011–2014.

- Provided consulting services for a coalition of direct action plaintiffs in *In re Puerto Rican Cabotage Antitrust Litigation.*

- Analyzed liability and damages resulting from the indirect claim on behalf of a large coalition of direct-action plaintiffs in the United States, Asia, and Europe in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.): 2011–2015.

- Authored expert reports, provided deposition testimony, and testified assessing the value of pending and future asbestos-related personal-injury claims on behalf of the Debtors in *In re Specialty Prods. Holding Corp.*, No. 10-11780 (JKF) (Bankr. D. Del.): 2010–2015.

- Assessed the value of pending and future asbestos-related personal-injury claims on behalf of the Debtors in *In re Garlock Sealing Techs., LLC*, No. 10-BK-31607 (Bankr. W.D.N.C.): 2010–2018.

- Assisted a Fortune 500 company in the completion of a limited portfolio transfer of thousands of asbestos claims to a major insurance company: 2010–2011.

- Authored declaration and provided deposition testimony on behalf of multiple insurance companies in *In re Leslie Controls, Inc.*, No. 10-12199 (CSS) (Bankr. D. Del.): 2010–2011.

- Authored declarations on behalf of Century Indemnity Company in *In re Thorpe Insulation Co.*, No. CV 10-1493 DSF (Bankr. C.D. Cal.): 2010–2011.

- Assessed the value of pending and future asbestos-related personal-injury claims on behalf of the Official Committee of Unsecured Creditors in *In re Motors Liquidation Co.*, No. 09-50026 (REG) (Bankr. S.D.N.Y.): 2010–2011.

- Assessed the value of diacetyl claims on behalf of the Official Committee of Equity Security Holders in *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y.): 2010.

- Provided deposition and trial testimony in *Cannon Electric, Inc., now known as ITT Cannon, Inc., et al. v. Affiliate FM Insurance Company, et al.*, No. BC 290354 (Super. Ct. Cal. L.A. Cty. Ct.) Goulds: 2009–2017.

- Authored expert report on behalf of FM Global and Utica in an arbitration matter: 2009–2010.

- Authored expert reports and provided deposition testimony on behalf of Aviva Insurance Company in *Flintkote Co. v. Gen. Accident Assurance Co. of Can.*, No. C04-01827 MHP (N.D. Cal.): 2009–2010.

- Provided deposition testimony on behalf of NL Industries, Inc., in *Brown v. NL Indus., Inc.*, No. 06-602096-CZ (Mich. Cir. Ct., Wayne Cnty.): 2009–2010.

- Authored expert report on behalf of taxpayers in *Cencast Servs., L.P. v. United States*, Nos. 02-1916 T through 02-1925 T (Fed. Cl.): 2009–2012.

- Authored declaration on behalf of the State of Israel in *In re Holocaust Victim Assets Litig.*, No. 09-160 (ERK)(JO) (E.D.N.Y.): 2009–2010.

- Provided deposition testimony on behalf of multiple insurance companies in the matter *State of Minnesota v. Associated Medical Assurance Ltd.*, No. 27-CV-08-1912 (Minn. Dist. Ct., Hennepin Cnty.): 2008–2010.

- Authored expert reports, provided deposition testimony, and testified on behalf of multiple insurance companies in *Continental Casualty Co. v. BorgWarner Inc.*, No. 04 CH 01708 (Ill. Cir. Ct., Cook Cnty.): 2007–present.

- Authored expert reports, provided deposition testimony, and testified on behalf of multiple insurance companies in *Continental Ins. Co. v. Honeywell Int'l.*, Inc., No. MRS-L-1523-00 (N.J. Super. Ct., Morris Cnty.): 2007–2018.

- Authored expert report and provided deposition testimony on behalf of insurance company in *Nat'l Serv. Indus., Inc. v. Appalachian Ins. Co.*, No. E-22807 (Ga. Super. Ct., Fulton City): 2007.

- Authored expert report, provided deposition testimony, and testified on behalf of policyholder in *Imo Indus., Inc. v. Transamerica Corp.*, No. L-2140-03 (N.J. Super. Ct., Mercer Cnty.): 2007–2011.

- Authored expert report and provided deposition testimony on behalf of insurance company in *Degussa Corp. v. Century Indem. Co.*, No. UNN-L-2163-03 (N.J. Super. Ct., Union Cnty.): 2007.

- Authored expert report and provided deposition testimony on behalf of insurance joint defense group in *Foster Wheeler LLC v. Affiliated FM Ins. Co.*, No. 600777/01 (N.Y. Sup. Ct., N.Y. Cnty.): 2007–2011.

- Authored expert reports, provided deposition testimony, and testified on behalf of Argonaut Insurance Company in several reinsurance arbitrations: 2006–2007.

- Coauthored a report on the economic viability of the Trust Fund proposed under S.852, the Fairness in Asbestos Injury Resolution (FAIR) Act of 2005, which highlights how compensation criteria specified for the proposed Fund would change the number and composition of claims relative to the current tort environment: 2005.

- Authored due diligence reports on asbestos, silica, opioids, and other mass tort matters for corporate transactions that assessed potential future tort expenditures and evaluated the insurance assets that may provide coverage for those tort expenditures: 2005–present.

- Authored expert reports and provided deposition testimony assessing the Trust-based liquidated values and insurance allocation on behalf of Plaintiff in *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Porter Hayden Co.*, No. 1:03-CV-03408-CCB (D. Md.): 2004–2015.

- Authored expert report and provided deposition testimony to address the fraction of expenditures associated with a company's asbestos installation operations on behalf of Defendants in *Owens Corning v. Birmingham Fire Ins. Co. of Pa.*, No. C10200104929 (Ohio Ct. Com. Pl., Lucas Cnty.): 2003–2005.

- Authored expert report focused on the design and implementation of claims file samples in *Hercules Inc. v. OneBeacon Am. Ins. Co.*, No. 02C-11-237 (Del. Super. Ct., New Castle Cnty.): 2004.

- Assisted with settlement negotiations by analyzing the total value of a national refractory company's products and nonproducts coverage associated with claims for both asbestos and potential silica liabilities.

- Evaluated future liabilities and projected insurance recoveries under various scenarios, such as geographic constraints regarding a regional insulation contractor and supply company.

- Served on behalf of the US Department of Labor in providing statistical analysis for discriminatory hiring cases and assessing damages.

- Analyzed demand-side management programs for utility companies. Evaluated different contract structures, software development options, and returns on subsidization programs.

- Investigated potential collusion and redlining by auto-insurance companies on behalf of the Office of the Chicago Mayor.

## OTHER PROFESSIONAL EXPERIENCE

Prior to joining Bates White, Dr. Mullin worked at Chicago Partners, where he provided damages assessments for antitrust matters. Previously, he worked at Quantum Consulting, where he conducted demand-side management for utility companies, and at Litigation Resolution Group. In addition to his professional experience, Dr. Mullin was on the faculty in the Departments of Economics at Vanderbilt University and the University of California at Los Angeles.

## INDUSTRY PRESENTATIONS

- "Update on Talc Litigation." Perrin Conferences—National Asbestos Litigation Conference, Oct. 1, 2018.

- "Corporate Roundtable: In-House Perspectives on Asbestos Litigation." Perrin Conferences—Asbestos Litigation Conference: A National Overview & Outlook, Sept. 13, 2016.

- "Emerging Risks & Insurance Issues in 2016 Coverage Litigation." Perrin Conferences—Emerging Insurance Coverage & Allocation Issues Conference, May 18, 2016.

- "Impact of Bankruptcies on Litigation Strategies." Perrin Conferences—Asbestos Litigation Conference: A National Overview & Outlook, Sept. 28, 2015.

- "Emerging Issues, Coverage Trends and Key Jurisdictional Updates for 2015." Perrin Conferences—Emerging Insurance Coverage & Allocation Issues, May 19, 2015.

- "National Trends Driving Asbestos Litigation." Perrin Conferences—Asbestos Litigation Conference: A National Overview & Outlook, Sept. 17, 2013.

- "Asbestos Bankruptcy Update." Perrin Conferences—Asbestos Litigation Conference: A National Overview & Outlook, Sept. 16, 2013.

- "Charting the Right Course in 2013: A Closer Look at This Year's Emerging Insurance Coverage Issues." Perrin Conferences—Emerging Insurance Coverage & Allocation Issues in 2013, May 14, 2013.

- "National Trends Driving Asbestos Litigation." Perrin Conferences—Asbestos Litigation Conference: A National Overview & Outlook, Sept. 10, 2012.

- "Mathematical Estimates of Carrier Exposures." Perrin Conferences—Emerging Insurance Coverage & Allocation Issues, Feb. 23, 2012.

- "Quantifying the Exposure: Reinsurance, Reserves, and Practical Considerations." Perrin Conferences—Emerging Insurance Coverage & Allocation Issues, Jan. 24, 2011.

- "Adding Up the Parts—Settlement Offsets in All Sums Jurisdictions." Perrin Conferences—Emerging Insurance Coverage & Allocation Issues, Jan. 24, 2011.

- "Impact of Current Tort Environment on Asbestos Reserves." 2010 Casualty Actuary Society Annual Meeting, Nov. 8, 2010.

- "Litigating Asbestos Cases in 2010: National Trends Driving the Litigation." Perrin Conferences—Asbestos Litigation Conference: A National Overview & Outlook, Sept. 13, 2010.

- "Trusts On-Line: The Impact of Asbestos Bankruptcies on the Tort System." Perrin Conferences—Asbestos Bankruptcy Conference, June 21, 2010.

- "Asbestos Litigation in 2010 & Beyond—Current and Emerging Trends." Perrin Conferences—Cutting Edge Issues in Asbestos Litigation, Feb. 25–26, 2010.

- "A National Update on Current Cases & Trends that are Driving Asbestos Bankruptcy Litigation." Perrin Teleconference Series, Dec. 1, 2009.

- "Asbestos Bankruptcy: New Filings, Confirmations & Dismissals." Perrin Conferences—Asbestos Litigation Mega Conference, Sept. 14–16, 2009.

- "Claims Estimation in Mass Tort Cases." ABA Section of Business Law Spring Meeting Committee on Business Bankruptcy, Apr. 16–18, 2009.

- "Role of the Bankruptcy Trusts in Civil Asbestos." BVR Legal/Mealey's Emerging Trends in Asbestos Litigation Conference, Mar. 9–11, 2009.

- "Damages in a Bad Faith Case." BVR Legal/Mealey's Bad Faith Litigation Conference, Nov. 6–7, 2008.

- "Emerging Issues and Important Developments." West Legalworks, Insurance and Reinsurance Allocation 2008: A Comprehensive Workshop, June 12, 2008.

- "Impact of Underlining Litigation Developments." West Legalworks, Insurance and Reinsurance Allocation, Nov. 7, 2007.

- "Removing the Asbestos Overhang—Is There an Alternative to Asbestos Bankruptcy?" Mealey's Publications, Mealey's National Asbestos Litigation SuperConference, Sept. 26, 2007.

- "Another Chapter in Asbestos Bankruptcy Litigation: What Does the Future Hold?" Mealey's Publications, Asbestos Bankruptcy Conference, June 8, 2007.

- "Impact of Underlining Litigation Developments." West Legalworks, Insurance and Reinsurance Allocation Superbowl 2007, Mar. 20, 2007.

- "Quantifying the Risk: The Impact Investigations into Fraudulent Silica/Asbestos Suits Will Have on the Rate of Filing and Value of Current & Future Claims." Mealey's Publications, Silica & Asbestos Claims Conference: What Effect Will Investigations into Fraudulent Suits Have on the Litigation? Nov. 11, 2006.

- "How State and Federal Tort-Reform Efforts Are Changing the Asbestos Litigation Landscape." Mealey's Teleconference: Asbestos Legislation—Is a Solution to the Crisis around the Corner? July 20, 2006.

- "Asbestos Legislative Initiatives for Federal and State Tort Reform." American Conference Institute's (ACI) 7th Annual Litigating, Settling, and Managing Asbestos Claims, June 15, 2006.

- "The FAIR Act: An Economic Analysis." American Legislative Exchange Council, 2005 States and Nation Policy Summit, Dec. 2005.

- "The Impact of Different Approaches to Settlement Credits." Mealey's Publications, All Sums: Reallocation & Settlement Credits Conference, Nov. 7, 2005.

- "Assessing the Merits of Reallocation." American Enterprise Institute, Industry Roundtable Discussion, Apr. 21, 2005.

- "The Effect of Joint and Several Liability on the Incentive of Defendants to Declare Bankruptcy: Evidence from Asbestos Litigation." American Law and Economics Association, Annual Meeting, May 2004.

- "Assessing the Merits of Reallocation." American Law and Economics Association, 14th Annual Meeting (co-author Anup Malani), May 3, 2004.

## PUBLICATIONS

- Mullin, Charles H., Karl N. Snow, and Noah B. Wallace. "Unresolved Issues in Allocation of Loss to Insurance." *Coverage* 21, no. 1 (2011): 13–23.

- Mullin, Charles H., Karl N. Snow, and Noah B. Wallace. "Proper Settlement Credits in All Sums Jurisdictions." *Coverage* 20, no. 3 (2010): 26–31.

- Mullin, Charles H., Charles E. Bates, and Marc Scarcella. "The Claiming Game." *Mealey's Litigation Report: Asbestos* 25, no. 1 (2010).

- Mullin, Charles H., Charles E. Bates, and A. Rachel Marquardt. "The Naming Game." *Mealey's Litigation Report: Asbestos* 24, no. 15 (2009).

- Mullin, Charles H., and Charles E. Bates. "State of the Asbestos Litigation Environment." *Mealey's Litigation Report: Asbestos*, 23 no. 19 (2008).

- Mullin, Charles H., and Charles E. Bates. "Show Me the Money." *Mealey's Litigation Report: Asbestos* 22, no. 21 (2007).

- Mullin, Charles H., and Charles E. Bates. "The Bankruptcy Wave of 2000—Companies Sunk by an Ocean of Recruited Asbestos Claims." *Mealey's Litigation Report: Asbestos* 21, no. 24 (2007).

- Mullin, Charles H., and Charles E. Bates. "Having Your Tort and Eating It Too?" *Mealey's Asbestos Bankruptcy Report* 6, no. 4 (2006).

- Mullin, Charles H. "Identification and Estimation with Contaminated Data: When Do Covariate Data Sharpen Inference?" *Journal of Econometrics* 130, no. 2 (2006): 253–72.

- Mullin, Charles H., and David H. Reiley. "Recombinant Estimation for Normal-Form Games, with Applications to Auctions and Bargaining." *Games and Economic Behavior* 54, no. 1 (2006): 159–82.

- Mullin, Charles H. "Bounding Treatment Effects with Contaminated and Censored Data: Assessing the Impact of Early Childbearing on Children." *Advances in Economic Analysis & Policy* 5, no. 1, (2005): article 8.

- Mullin, Charles H., Kelly A. Dugan, and John J. Siegfried. "Undergraduate Financial Aid and Subsequent Alumni Giving Behavior." *Quarterly Review of Economics and Finance* 45, no. 1 (2005): 123–43.

- Mullin, Charles H., and Anandi Mani. "Choosing the Right Pond: Social Approval and Occupational Choice." *Journal of Labor Economics* 22, no. 4 (2004): 835–62.

- Mullin, Charles H., V. Joseph Hotz, and John K. Scholz. "Welfare, Employment, and Income: Evidence on the Effects of Benefit Reductions from California." *American Economic Review* 92, no. 2 (2002): 380–84.

- Mullin, Charles H., V. Joseph Hotz, and John K. Scholz. "Welfare Reform, Employment and Advancement." *Focus* 22, no. 1, Special Issue (2002).

- Mullin, Charles H., V. Joseph Hotz, and John K. Scholz. "The Earned Income Tax Credit and Labor Market Participation of Families on Welfare." In *The Incentives of Government Programs and the Well-Being of Families*, eds. Bruce Meyer and Greg Duncan (Evanston, IL: Joint Center for Poverty Research, 2001).

- Mullin, Charles H., V. Joseph Hotz, and John K. Scholz. "The Earned Income Tax Credit and Labor Market Participation of Families on Welfare." *Poverty Research News*, May/June 2001.

- Mullin, Charles H., and John J. Siegfried. "Grants Today, Gifts Tomorrow." *Currents* 27, no. 4 (2001): 9–10.

- Mullin, Charles H., Carolyn J. Hill, V. Joseph Hotz, and John K. Scholz. "EITC Eligibility, Participation, and Compliance Rates for AFDC Households: Evidence from the California Caseload," May 1999, prepared for the State of California.

- Mullin, Charles H., V. Joseph Hotz, and Seth Sanders. "Bounding Causal Effects Using Data from a Contaminated Natural Experiment: Analyzing the Effects of Teenage Childbearing." *Review of Economic Studies* 64, no. 4 (1997): 575–603.

## GRANTS

- 2004–2007: Principal Investigator (with V. J. Hotz and J. K. Scholz), National Science Foundation Grant, "Tax Policy and Low-Wage Labor Markets: New Work on Employment, Effectiveness and Administration."

- 2000–2001: Principal Investigator (with V. J. Hotz and J. K. Scholz), Grant to the University of Wisconsin–Madison from Assistant Secretary of Planning and Evaluation, US Department of Health and Human Services.

- 1997–1998: National Institutes of Health Predoctoral Training Grant.

## PROFESSIONAL ASSOCIATIONS AND HONORS

- *Who's Who Legal*: Insurance Expert of the Year, 2018–present

- *Who's Who Legal* Thought Leader: Global Elite list, 2019–present

- *Who's Who Legal*: Insurance & Reinsurance Expert Witnesses Thought Leader, 2016–present

- *Who's Who Legal*: Insurance & Reinsurance Expert Witnesses Global Elite Thought Leader, 2020–present

- American Bar Association

- American Economic Association

- American Law and Economics Association

- Econometric Society

- Society of Labor Economists

# **EXHIBIT 2**

Interested Parties List

**LTL Management LLC**
**Potentially Interested Parties**

**Debtor**

LTL Management LLC

**Direct Equity Owner of Debtor**

Johnson and Johnson Consumer Inc.

**Debtor's Direct Non-Debtor Subsidiary**

Royalty A&M LLC

**Other Non-Debtor Affiliates**

3Dintegrated ApS
Acclarent, Inc.
Actelion Ltd
Actelion Manufacturing GmbH
Actelion Pharmaceuticals Australia
    Pty. Limited
Actelion Pharmaceuticals Korea Ltd.
Actelion Pharmaceuticals Ltd
Actelion Pharmaceuticals Mexico
    S.A. De C.V.
Actelion Pharmaceuticals Trading
    (Shanghai) Co., Ltd.
Actelion Pharmaceuticals UK Limited
Actelion Pharmaceuticals US, Inc.
Actelion Registration Limited
Actelion Treasury Unlimited Company
Akros Medical, Inc.
Albany Street LLC
ALZA Corporation
Alza Land Management, Inc.
AMO (Hangzhou) Co., Ltd.
AMO (Shanghai) Medical Devices
    Trading Co., Ltd.
AMO ASIA LIMITED
AMO Australia Pty Limited
AMO Canada Company
AMO Denmark ApS
AMO Development, LLC
AMO France
AMO Germany GmbH

AMO Groningen B.V.
AMO International Holdings
AMO Ireland
AMO Ireland Finance Unlimited Company
AMO Italy SRL
AMO Japan K.K.
AMO Manufacturing Spain S.L.
AMO Manufacturing USA, LLC
AMO Netherlands BV
AMO Nominee Holdings, LLC
AMO Norway AS
AMO Puerto Rico Manufacturing, Inc.
AMO Sales and Service, Inc.
AMO Singapore Pte. Ltd.
AMO Spain Holdings, LLC
AMO Switzerland GmbH
AMO U.K. Holdings, LLC
AMO United Kingdom, Ltd.
AMO Uppsala AB
AMO US Holdings, Inc.
AMO USA Sales Holdings, Inc.
AMO USA, LLC
Animas Diabetes Care, LLC
Animas LLC
Animas Technologies LLC
AorTx, Inc.
Apsis
Aragon Pharmaceuticals, Inc.
Asia Pacific Holdings, LLC
Atrionix, Inc.
AUB Holdings LLC
Auris Health, Inc.
Backsvalan 2 Aktiebolag
Backsvalan 6 Handelsbolag
Beijing Dabao Cosmetics Co., Ltd.
BeneVir BioPharm, Inc.
Berna Rhein B.V.
BioMedical Enterprises, Inc.
Biosense Webster (Israel) Ltd.
Biosense Webster, Inc.
C Consumer Products Denmark ApS
Calibra Medical LLC
Campus-Foyer Apotheke GmbH

Carlo Erba OTC S.r.l.
Centocor Biologics, LLC
Centocor Research & Development, Inc.
ChromaGenics B.V.
Ci:Labo Customer Marketing Co., Ltd.
Ci:z. Labo Co., Ltd.
Cilag AG
Cilag GmbH International
Cilag Holding AG
Cilag Holding Treasury Unlimited Company
Cilag-Biotech, S.L.
CNA Development GmbH
Codman & Shurtleff, Inc.
Coherex Medical, Inc.
ColBar LifeScience Ltd.
Company Store.com, Inc.
Cordis de Mexico, S.A. de C.V.
Cordis International Corporation
Corimmun GmbH
CoTherix Inc.
CSATS, Inc.
Darlain Trading S.A.
Debs-Vogue Corporation
    (Proprietary) Limited
DePuy France
DePuy Hellas SA
DePuy International Limited
DePuy Ireland Unlimited Company
DePuy Mexico, S.A. de C.V.
DePuy Mitek, LLC
DePuy Orthopaedics, Inc.
DePuy Products, Inc.
DePuy Spine, LLC
DePuy Synthes Gorgan Limited
DePuy Synthes Institute, LLC
DePuy Synthes Leto SARL
DePuy Synthes Products, Inc.
DePuy Synthes Sales, Inc.
DePuy Synthes, Inc.
Dr. Ci:Labo Co., Ltd.
DR. CI:LABO COMPANY LIMITED
Dutch Holding LLC
ECL7, LLC
EES Holdings de Mexico,
    S. de R.L. de C.V.
EES, S.A. de C.V.

EIT Emerging Implant Technologies GmbH
Ethicon Biosurgery Ireland
Ethicon Endo-Surgery (Europe) GmbH
Ethicon Endo-Surgery, Inc.
Ethicon Endo-Surgery, LLC
Ethicon Holding Sarl
Ethicon Ireland Unlimited Company
Ethicon LLC
Ethicon PR Holdings Unlimited Company
Ethicon Sarl
Ethicon US, LLC
Ethicon Women's Health & Urology Sarl
Ethicon, Inc.
Ethnor (Proprietary) Limited
Ethnor del Istmo S.A.
Ethnor Farmaceutica, S.A.
Ethnor Guatemala, Sociedad Anomina
Finsbury (Development) Limited
Finsbury (Instruments) Limited
Finsbury Medical Limited
Finsbury Orthopaedics International Limited
Finsbury Orthopaedics Limited
FMS Future Medical System SA
GH Biotech Holdings Limited
Global Investment Participation B.V.
GMED Healthcare BV
Guangzhou Bioseal Biotech Co., Ltd.
Hansen Medical Deutschland GmbH
Hansen Medical International, Inc.
Hansen Medical UK Limited
Hansen Medical, Inc.
Healthcare Services (Shanghai) Ltd.
I.D. Acquisition Corp.
Innomedic Gesellschaft für innovative
    Medizintechnik und Informatik mbH
Innovalens B.V.
Innovative Surgical Solutions, LLC
J & J Company West Africa Limited
J&J Pension Trustees Limited
J.C. General Services BV
Janssen Alzheimer Immunotherapy
    (Holding) Limited
Janssen Biologics (Ireland) Limited
Janssen Biologics B.V.
Janssen BioPharma, Inc.
Janssen Biotech, Inc.

Janssen Cilag Farmaceutica S.A.
Janssen Cilag S.p.A.
Janssen Cilag SPA
Janssen Cilag, C.A.
Janssen de Mexico, S. de R.L. de C.V.
Janssen Development Finance
    Unlimited Company
Janssen Diagnostics, LLC
Janssen Egypt LLC
Janssen Farmaceutica Portugal Lda
Janssen Global Services, LLC
Janssen Group Holdings Limited
Janssen Holding GmbH
Janssen Inc.
Janssen Irish Finance Company UC
Janssen Korea Ltd.
Janssen Oncology, Inc.
Janssen Ortho LLC
Janssen Pharmaceutica
    (Proprietary) Limited
Janssen Pharmaceutica NV
Janssen Pharmaceutica S.A.
Janssen Pharmaceutical
Janssen Pharmaceutical K.K.
Janssen Pharmaceutical Sciences
    Unlimited Company
Janssen Pharmaceuticals, Inc.
Janssen Products, LP
Janssen R&D Ireland
Janssen Research & Development, LLC
Janssen Sciences Ireland
    Unlimited Company
Janssen Scientific Affairs, LLC
Janssen Supply Group, LLC
Janssen Vaccines & Prevention B.V.
Janssen Vaccines Corp.
Janssen-Cilag
Janssen-Cilag (New Zealand) Limited
Janssen-Cilag A/S
Janssen-Cilag AG
Janssen-Cilag Aktiebolag
Janssen-Cilag AS
Janssen-Cilag B.V.
Janssen-Cilag de Mexico S. de R.L. de C.V.
Janssen-Cilag Farmaceutica Lda.
Janssen-Cilag Farmaceutica Ltda.

Janssen-Cilag GmbH
Janssen-Cilag International NV
Janssen-Cilag Kft.
Janssen-Cilag Limited
Janssen-Cilag Limited
Janssen-Cilag Manufacturing, LLC
Janssen-Cilag NV
Janssen-Cilag OY
Janssen-Cilag Pharma GmbH
Janssen-Cilag Pharmaceutical S.A.C.I.
Janssen-Cilag Polska, Sp. z o.o.
Janssen-Cilag Pty Ltd
Janssen-Cilag S.A.
Janssen-Cilag s.r.o.
Janssen-Cilag, S.A.
Janssen-Cilag, S.A. de C.V.
Janssen-Pharma, S.L.
J-C Health Care Ltd.
Jevco Holding, Inc.
JJ Surgical Vision Spain, S.L.
JJC Acquisition Company B.V.
JJHC, LLC
JJSV Belgium BV
JJSV Manufacturing Malaysia SDN. BHD.
JJSV Norden AB
JJSV Produtos Oticos Ltda.
JNJ Global Business Services s.r.o.
JNJ Holding EMEA B.V.
JNJ International Investment LLC
JNJ Irish Investments ULC
Johnson & Johnson
Johnson & Johnson - Societa' Per Azioni
Johnson & Johnson (Angola), Limitada
Johnson & Johnson (China) Investment Ltd.
Johnson & Johnson (Egypt) S.A.E.
Johnson & Johnson (Hong Kong) Limited
Johnson & Johnson (Ireland) Limited
Johnson & Johnson (Jamaica) Limited
Johnson & Johnson (Kenya) Limited
Johnson & Johnson (Middle East) Inc.
Johnson & Johnson (Mozambique),
    Limitada
Johnson & Johnson (Namibia)
    (Proprietary) Limited
Johnson & Johnson (New Zealand) Limited
Johnson & Johnson (Philippines), Inc.

Johnson & Johnson (Private) Limited
Johnson & Johnson (Thailand) Ltd.
Johnson & Johnson (Trinidad) Limited
Johnson & Johnson (Vietnam) Co., Ltd
Johnson & Johnson AB
Johnson & Johnson AG
Johnson & Johnson Belgium
    Finance Company BV
Johnson & Johnson Bulgaria EOOD
Johnson & Johnson China Ltd.
Johnson & Johnson Consumer
    (Hong Kong) Limited
Johnson & Johnson Consumer
    (Thailand) Limited
Johnson & Johnson Consumer B.V.
Johnson & Johnson Consumer
    Holdings France
Johnson & Johnson Consumer Inc.
Johnson & Johnson Consumer NV
Johnson & Johnson Consumer
    Saudi Arabia Limited
Johnson & Johnson Consumer Services
    EAME Ltd.
Johnson & Johnson d.o.o.
Johnson & Johnson de Argentina
    S.A.C. e. I.
Johnson & Johnson de Chile Limitada
Johnson & Johnson de Chile S.A.
Johnson & Johnson de Colombia S.A.
Johnson & Johnson de Costa Rica, S.A.
Johnson & Johnson de Mexico, S.A. de C.V.
Johnson & Johnson de Uruguay S.A.
Johnson & Johnson de Venezuela, S.A.
Johnson & Johnson del Ecuador, S.A.
Johnson & Johnson Del Paraguay, S.A.
Johnson & Johnson del Peru S.A.
Johnson & Johnson do Brasil Industria E
    Comercio de Produtos Para Saude Ltda.
Johnson & Johnson Dominicana, S.A.S.
Johnson & Johnson Enterprise
    Innovation Inc.
Johnson & Johnson European
    Treasury Company
Johnson & Johnson Finance Corporation
Johnson & Johnson Finance Limited

Johnson & Johnson Financial
    Services GmbH
Johnson & Johnson for Export and
    Import LLC
Johnson & Johnson Foundation Scotland
    (NON-PROFIT)
Johnson & Johnson Gateway, LLC
Johnson & Johnson Gesellschaft m.b.H.
Johnson & Johnson GmbH
Johnson & Johnson Guatemala, S.A.
Johnson & Johnson Health and
    Wellness Solutions, Inc.
Johnson & Johnson Health Care
    Systems Inc.
Johnson & Johnson Hellas Commercial and
    Industrial S.A.
Johnson & Johnson Hellas Consumer
    Products Commercial Societe Anonyme
Johnson & Johnson Hemisferica S.A.
Johnson & Johnson Holding GmbH
Johnson & Johnson Holdings K.K.
Johnson & Johnson Inc.
Johnson & Johnson Industrial Ltda.
Johnson & Johnson Innovation - JJDC, Inc.
Johnson & Johnson Innovation Limited
Johnson & Johnson Innovation LLC
Johnson & Johnson International
Johnson & Johnson International
    (Singapore) Pte. Ltd.
Johnson & Johnson International Financial
    Services Company
Johnson & Johnson Japan Inc.
Johnson & Johnson K.K.
Johnson & Johnson Kft.
Johnson & Johnson Korea Ltd.
Johnson & Johnson Korea Selling &
    Distribution LLC
Johnson & Johnson Limitada
Johnson & Johnson Limited
Johnson & Johnson LLC
Johnson & Johnson Luxembourg Finance
    Company Sarl
Johnson & Johnson Management Limited
Johnson & Johnson Medical (China) Ltd.
Johnson & Johnson Medical
    (Proprietary) Ltd

Johnson & Johnson Medical (Shanghai) Ltd.

Johnson & Johnson Medical (Suzhou) Ltd.

Johnson & Johnson Medical B.V.

Johnson & Johnson Medical Devices & Diagnostics Group - Latin America, L.L.C.

Johnson & Johnson Medical GmbH

Johnson & Johnson Medical Korea Ltd.

Johnson & Johnson Medical Limited

Johnson & Johnson Medical Mexico, S.A. de C.V.

Johnson & Johnson Medical NV

Johnson & Johnson Medical Products GmbH

Johnson & Johnson Medical Pty Ltd

Johnson & Johnson Medical S.A.

Johnson & Johnson Medical S.p.A.

Johnson & Johnson Medical SAS

Johnson & Johnson Medical Saudi Arabia Limited

Johnson & Johnson Medical Servicios Profesionales S. de R.L. de C.V.

Johnson & Johnson Medical Taiwan Ltd.

Johnson & Johnson Medical, S.C.S.

Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi

Johnson & Johnson Middle East FZ-LLC

Johnson & Johnson Morocco Societe Anonyme

Johnson & Johnson Nordic AB

Johnson & Johnson Pacific Pty Limited

Johnson & Johnson Pakistan (Private) Limited

Johnson & Johnson Panama, S.A.

Johnson & Johnson Personal Care (Chile) S.A.

Johnson & Johnson Poland Sp. z o.o.

Johnson & Johnson Private Limited

Johnson & Johnson Pte. Ltd.

Johnson & Johnson Pty. Limited

Johnson & Johnson Research Pty Ltd

Johnson & Johnson Romania S.R.L.

Johnson & Johnson S.E. d.o.o.

Johnson & Johnson S.E., Inc.

Johnson & Johnson Sante Beaute France

Johnson & Johnson SDN. BHD.

Johnson & Johnson Services, Inc.

Johnson & Johnson Servicios Corporativos, S. de R.L. de C.V.

Johnson & Johnson Surgical Vision India Private Limited

Johnson & Johnson Surgical Vision, Inc.

Johnson & Johnson Taiwan Ltd.

Johnson & Johnson UK Treasury Company Limited

Johnson & Johnson Ukraine LLC

Johnson & Johnson Urban Renewal Associates

Johnson & Johnson Vision Care (Shanghai) Ltd.

Johnson & Johnson Vision Care Ireland Unlimited Company

Johnson & Johnson Vision Care, Inc.

Johnson & Johnson, S.A.

Johnson & Johnson, S.A. de C.V.

Johnson & Johnson, s.r.o.

Johnson & Johnson, s.r.o.

Johnson and Johnson (Proprietary) Limited

Johnson and Johnson Sihhi Malzeme Sanayi Ve Ticaret Limited Sirketi

JOM Pharmaceutical Services, Inc.

La Concha Land Investment Corporation

Latam International Investment Company Unlimited Company

Lifescan

McNeil AB

McNeil Consumer Pharmaceuticals Co.

McNeil Denmark ApS

McNeil Healthcare (Ireland) Limited

McNeil Healthcare (UK) Limited

McNeil Healthcare LLC

McNeil Iberica S.L.U.

McNeil LA LLC

McNEIL MMP, LLC

McNeil Nutritionals, LLC

McNeil Panama, LLC

McNeil Products Limited

McNeil Sweden AB

MDS Co. Ltd.

Medical Device Business Services, Inc.

Medical Devices & Diagnostics Global Services, LLC

Medical Devices International LLC
Medical Industrial do Brasil Ltda.
Medos International Sarl
Medos Sarl
MegaDyne Medical Products, Inc.
Menlo Care De Mexico, S.A. de C.V.
Mentor B.V.
Mentor Deutschland GmbH
Mentor Medical Systems B.V.
Mentor Partnership Holding
    Company I, LLC
Mentor Texas GP LLC
Mentor Texas L.P.
Mentor Worldwide LLC
Micrus Endovascular LLC
Middlesex Assurance Company Limited
Momenta Ireland Limited
Momenta Pharmaceuticals, Inc.
NeoStrata Company, Inc.
NeoStrata UG (haftungsbeschränkt)
Netherlands Holding Company
Neuravi Inc.
Neuravi Limited
NeuWave Medical, Inc.
Novira Therapeutics, LLC
NuVera Medical, Inc.
Obtech Medical Mexico, S.A. de C.V.
OBTECH Medical Sarl
OGX Beauty AU Pty Ltd
OGX Beauty Limited
OMJ Holding GmbH
OMJ Ireland Unlimited Company
OMJ Pharmaceuticals, Inc.
Omrix Biopharmaceuticals Ltd.
Omrix Biopharmaceuticals NV
Omrix Biopharmaceuticals, Inc.
Ortho Biologics LLC
Ortho Biotech Holding LLC
Ortho-McNeil Pharmaceutical, LLC
Orthotaxy
Patriot Pharmaceuticals, LLC
Peninsula Pharmaceuticals, LLC
Penta Pty. Limited
Percivia LLC
Perouse Plastie
Pharmadirect Ltd.

Pharmedica Laboratories (Proprietary)
    Limited
PMC Holdings G.K.
Princeton Laboratories, Inc.
Productos de Cuidado Personal y de La
    Salud de Bolivia S.R.L.
Proleader S.A.
PT Integrated Healthcare Indonesia
PT. Johnson & Johnson Indonesia
Pulsar Vascular, Inc.
Regency Urban Renewal Associates
RespiVert Ltd.
RoC International
Rutan Realty LLC
Scios LLC
Sedona Enterprise Co., Ltd.
Sedona Singapore International Pte. Ltd.
Sedona Thai International Co., Ltd.
Serhum S.A. de C.V.
Shanghai Elsker For Mother & Baby
    Co., Ltd
Shanghai Johnson & Johnson Ltd.
Shanghai Johnson & Johnson
Pharmaceuticals Ltd.
Sightbox, LLC
Sodiac ESV
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability
    Partnership
Spine Solutions GmbH
SterilMed, Inc.
Sterilmed, Inc.
Surgical Process Institute Deutschland
    GmbH
Synthes Costa Rica S.C.R., Limitada
SYNTHES GmbH
Synthes GmbH
Synthes Holding AG
Synthes Holding Limited
SYNTHES Medical Immobilien GmbH
Synthes Medical Surgical Equipment &
    Instruments Trading LLC
Synthes Produktions GmbH
Synthes Proprietary Limited
Synthes S.M.P., S. de R.L. de C.V.

Synthes Tuttlingen GmbH
Synthes USA Products, LLC
Synthes USA, LLC
Synthes, Inc.
TARIS Biomedical LLC
TearScience, Inc.
The Anspach Effort, LLC
The Vision Care Institute, LLC
Tibotec, LLC
Torax Medical, Inc.
TriStrata, Incorporated
UAB "Johnson & Johnson"
Vania Expansion
Verb Surgical Inc.
Vision Care Finance Unlimited Company
Vogue International LLC
Vogue International Trading, Inc.
WH4110 Development Company, L.L.C.
Xian Janssen Pharmaceutical Ltd.
XO1 Limited
Zarbee's, Inc.

## Managers and Officers of the Debtor

John Kim
Richard Dickinson
Robert Wuesthoff
Russell Deyo

## Major Current Business Affiliations of Debtor's Managers

American Foundation for Opioid
   Alternatives
Lawyers for Civil Justice
Migration Policy Institute
Miller Center for Community Protection &
   Reliance, Eagleton Institute of Politics,
   Rutgers University
National Center for State Courts
National Council, McLean Hospital
New Jersey Civil Justice Institute
One Mind

## Depository and Disbursement Banks

Bank of America, N.A.

## Major Sureties

Chubb
Federal Insurance Company
Liberty Mutual Insurance Company
Travelers Casualty and Surety Company of
   America

## Parties to Material Contracts with the Debtor

Johnson & Johnson
Johnson & Johnson Consumer Inc.
Johnson & Johnson Services, Inc.
U.S. Bank N.A.

## Significant Co-Defendants in Talc-Related Litigation

3M Company
A.O. Smith Corporation
Albertsons Companies, Inc.
Avon Products, Inc.
Barretts Minerals, Inc.
BASF Catalysts LLC
Block Drug Company, Inc.
Borg Warner Morse Tec, Inc.
Brenntag North America
Brenntag Specialties, Inc.
Bristol-Myers Squibb Company
Carrier Corporation
Chanel, Inc.
Charles B. Chrystal Co., Inc.
Chattem, Inc.
Colgate-Palmolive Company
Conopco Inc.
Costco Wholesale Corporation
Coty, Inc.
Crane Co.
CVS Health Corporation
CVS Pharmacy, Inc.
Cyprus Amax Minerals Company
Cyprus Mines Corporation
Dana Companies, LLC
DAP Products, Inc.
Dollar General Corporation
Duane Reade Inc.

Eaton Corporation
Eli Lilly and Company
Elizabeth Arden, Inc.
Estee Lauder Inc.
Family Dollar Stores Inc.
Flowserve US, Inc.
FMC Corporation
Food 4 Less of California, Inc.
Ford Motor Company
Foster Wheeler, LLC
Gardner Denver, Inc.
General Electric Company
Genuine Parts Company
Goodyear Tire & Rubber Co.
Goulds Pumps, LLC
Grinnell LLC
Honeywell International, Inc.
Imerys Talc America, Inc.
Imerys USA, Inc.
IMO Industries Inc.
John Crane, Inc.
K&B Louisiana Corporation
Kaiser Gypsum Company, Inc.
Kmart Corporation
Kolmar Laboratories
Longs Drug Stores California
L'Oreal USA, Inc.
Lucky Stores, Inc.
Macy's, Inc.
Mary Kay Inc.
Maybelline LLC
Metropolitan Life Insurance Company
Noxell Corporation
Personal Care Products Council
Pfizer, Inc.
Pharma Tech Industries, Inc.
Pneumo Abex, LLC
PTI Royston, LLC
Publix Super Markets, Inc.
R.T. Vanderbilt Holding Company, Inc.
Ralphs Grocery Company
Revlon Consumer Products Corporation
Revlon, Inc.
Rite Aid Corporation
Safeway, Inc.
Sanofi-Aventis U.S. LLC

Shulton, Inc.
Specialty Minerals Inc.
Target Corporation
The Dow Chemical Company
The Estee Lauder Companies, Inc.
The Kroger Co.
The Procter & Gamble Company
Thrifty Payless, Inc.
Unilever Home & Personal Care USA
Union Carbide Corporation
Vanderbilt Minerals, LLC
ViacomCBS, Inc.
Walgreen Co.
Walmart, Inc.
Warren Pumps, LLC
Whittaker Clark & Daniels, Inc.
Wyeth Holdings LLC
Yves Saint Laurent America, Inc.

**Debtors' Retained Professionals and Claims Agent**

AlixPartners LLP
Bates White LLC
Epiq Corporate Restructuring LLC
Jones Day
King & Spalding LLP
McCarter & English, LLP
Rayburn Cooper & Durham, P.A.
Shook, Hardy & Bacon L.L.P.
Weil Gotshal & Manges LLP

**Debtors' Significant Ordinary Course Professionals, Consultants, and Service Providers**

Adler Pollock & Sheehan PC
Bailey Glasser LLP
Barnes & Thornburg, LLP
Barrasso Usdin Kupperman
   Freeman & Sarver, L.L.C.
Blake, Cassels & Graydon LLP
Blank Rome LLP
Brown Greer PLC
Butler Snow LLP
Carlton Fields, P.A.

Chehardy, Sherman, Williams,
   Recile, & Hayes
Covington & Burling LLP
Damon Key Leong Kupchak Hastert
Davis Hatley Haffeman & Tighe
Dechert LLP
Elliott Law Offices, PA
Faegre Drinker Biddle & Reath LLP
Foliart, Huff, Ottaway & Bottom
Gibson, Dunn & Crutcher LLP
Goldman Ismail Tomaselli Brennan &
   Baum
Hartline Barger
HeplerBroom LLC
Irwin Fritchie Urquhart & Moore LLC
Johnson & Bell Ltd.
Jones, Skelton & Hochuli, P.L.C.
Kaplan, Johnson, Abate & Bird LLP
Kelley Jasons McGowan Spinelli
   Hanna & Reber, LLP
Kirkland & Ellis LLP
Kitch Drutchas Wagner
   Valitutti & Sherbrook
Lewis Brisbois Bisgaard & Smith, LLP
Manion Gaynor & Manning LLP
Miles & Stockbridge
Milligan & Herns
Morgan Lewis
Nelson Mullins Riley & Scarborough, LLP
Nutter McClennen & Fish LLP
Orrick, Herrington, & Sutcliffe, LLP
Patterson Belknap Webb & Tyler LLP
Proskauer Rose LLP
Quattlebaum, Grooms & Tull PLLC
Schnader Harrison Segal & Lewis
Schwabe Williamson & Wyatt
Sidley Austin LLP
Skadden, Arps, Slate, Meager & Flom LLP
Stoel Rives LLP
Sullivan Whitehead & Deluca LLP
Swartz Campbell LLC
The Weinhardt Law Firm
Tucker Ellis LLP
Willcox & Savage, P.C.

**Known Professionals for Certain
Non-Debtor Parties in Interest**

Cravath, Swaine & Moore
White & Case LLP

**Material Potentially Indemnified Parties**

Bausch Health Companies Inc.
Cyprus Mines Corporation
Cyprus Talc Corp.
Imerys Talc America, Inc.
Imerys Talc Vermont, Inc.
Luzenac America, Inc.
Pharma Tech Industries, Inc.
PTI Royston, LLC
Rio Tinto America, Inc.
RTZ America, Inc.
Valeant Pharmaceuticals International, Inc.
Windsor Minerals Inc.
Costco Wholesale Corporation
Publix Super Markets, Inc.
Rite Aid Corporation
Safeway Inc.
Walmart Inc.

**Law Firms with Significant
Representations of Talc Claimants**

Arnold & Itkin LLP
Ashcraft & Gerel, LLP
Aylstock, Witkin, Kreis & Overholtz, PLLC
Barnes Firm
Beasley Allen Law Firm
Cellino Law LLP
Dalimonte Rueb Stoller, LLP
Dean Omar Branham Shirley, LLP
Driscoll Firm, LLC
Fears Nachawati Law Firm
Ferraro Law Firm
Flint Law Firm LLC
Golomb Spirit Grunfeld, P.C.
Honik LLC
Johnson Law Group
Karst & von Oiste LLP
Kazan, McClain, Satterly
   & Greenwood PLC

Lanier Law Firm
Levy Konigsberg LLP
Maune Raichle Hartley French &
    Mudd, LLC
Miller Firm, LLC
Motley Rice LLC
Napoli Shkolnik PLLC
OnderLaw, LLC
Simmons Hanly Conroy LLC
Simon Greenstone Panatiere
    Bartlett, PC
The Gori Law Firm
Trammell PC
Weitz & Luxenberg, P.C.
Williams Hart Law Firm

**Key Parties in *Imerys Talc America, Inc.*
and *Cyprus Mines Corp. Chapter 11 Cases***

Cyprus Amax Minerals Company
Cyprus Mines Corporation
Cyprus Talc Corporation
Imerys S.A.
Imerys Talc America, Inc.
Imerys Talc Vermont, Inc.
    (fka Windsor Minerals Inc.)
James L. Patton
Luzenac America, Inc.
Official Committee of Tort Claimants
    (*In re Imerys Talc America, Inc.*)
Official Committee of Tort Claimants
    (*In re Cyprus Mines Corp.*)
Roger Frankel

**Debtor's Insurers**

A.G. Securitas
ACE Property & Casualty Insurance
    Company
Aetna Casualty and Surety Company
Affiliated FM Ins. Company
AIG Europe S.A.
AIG Property and Casualty Company
AIU Ins. Company
Allianz Ins. Company

Allianz Global Risks US Insurance
    Company
Allstate Insurance Company
American Centennial Ins. Company
American Motorists Ins. Company
American Re-Insurance Company
Arrowood Indemnity Company
ASR Schadeverzekering N.V.
Assurances Generales De France
Assurantiekantoor VanWijk & Co.
Atlanta International Insurance Company
Birmingham Fire Ins. Company of
    Pennsylvania
Central National Ins. Company of Omaha
Century Indemnity Company
Champion Dyeing Allocation Year
Chubb
City Ins. Company
Colonia Versicherungs AG, Koln
Continental Insurance Company
Darag Deutsche Versicherungs-Und
    Rückversicherungs-AG
Drake Ins. Company of New York
Employers Ins. Company of Wausau
Employers Ins. of Wausau
Employers Mutual Casualty Company
Eurinco Allgemeine
    Versicherungs AG, Dusseldorf
Everest Reinsurance Company
Fireman's Fund Ins. Company
First State Ins. Company
GAP
Gibraltar Casualty Company
Granite State Ins. Company
Great American
Great Northern Ins. Company
Great Southwest Fire Ins. Company
Groupe Drouot
Harbor Ins. Company
Hartford Accident and Indemnity Company
Home Ins. Company
Ideal Mutual Ins. Company
Industrial Indemnity Company
Ins. Company of North America
Ins. Company of the State of Pennsylvania
Ins. Corporation of Singapore Limited

Integrity Ins. Company
International Ins. Company
International Surplus Lines Ins. Company
Lexington Ins. Company
London Guarantee and Accident
    Company of N.Y.
L'Union Atlantique S.A. d'Assurances
Mead Reinsurance Corporation
Middlesex Assurance Company
Midland Ins. Company
Midstates Reinsurance Corp.
Mission Ins. Company
Mission National Ins. Company
Munich Reinsurance America, Inc.
Mutual Fire, Marine, & Inland Ins.
    Company
N.V. De Ark
N.V. Rotterdamse Assurantiekas
N.V. Schadeverzekeringsmaatschappij
    Maas Lloyd
National Casualty Company
National Union Fire Ins. Company of
    Pittsburgh, PA
Nationwide
New Hampshire Ins. Company
North River Ins. Company
Northbrook Excess and Surplus
    Ins. Company
Northeastern Fire Ins. Company
    of Pennsylvania
Pacific Employers Ins. Company
ProSight
Prudential Reinsurance Company
Puritan Insurance Company
Republic Indemnity Company of America
Republic Ins. Company
Republic Western Ins. Company
Repwest Insurance Company
Resolute Management Inc.
Rheinland Versicherungen
Rheinland Verzekeringen
Riverstone Insurers
Royal Belge I.R., S.A. d'Assurances
Royal Indemnity Company
Royal Ins. Company
Safety Mutual Casualty Corporation

Safety National Casualty Corporation
Seguros La Republica SA
Sentry Insurance A Mutual Company
Southern American Ins. Company
Starr Indemnity & Liability Company
TIG Insurance Company
Transamerica Premier Insurance Company
Transit Casualty Company
Travelers Casualty and Surety Company
UAP
Union Atlantique d'Assurances S.A.
Union Indemnity Ins. Company
    of New York
Westchester Fire Insurance Company
Westport Insurance Corporation
XL Ins. Company

**Employees of the Bankruptcy
Administrator's Office for the Western
District of North Carolina**

Alexandria Kenny
Anne Whitley
David Shepherd
Katrina Adams
Sarah Scholz
Shelley K. Abel

**Bankruptcy Judges for the Western
District of North Carolina**

Judge George Hodges
Judge J. Craig Whitley
Judge Laura T. Beyer

**Bankruptcy Rule 2002 Appearances**[1]

AIG Europe S.A. (as successor in interest to
    Union Atlantique d'Assurances S.A)
AIG Property Casualty Company (f/k/a
    Birmingham Fire Insurance Company of
    Pennsylvania)
AIU Insurance Company
Wanda Allen
Allstate Insurance Company, as successor in
    interest to Northbrook Excess & Surplus
    Insurance Company, formerly
    Northbrook Insurance Company
Atlanta International Insurance Company (as
    successor in interest to Drake Insurance
    Company)
Arnold & Itkin LLP
ASR Schadeverzekering N.V. (as successor
    in interest to Assurantiekoor Van Wijk
    & Co.)
Aylstock, Witkin, Kreis & Overholtz, PLLC
Barnes Law Group
Bausch Health Americas, Inc. f/k/a Valeant
    Pharmaceuticals International
Bausch Health Companies Inc. f/k/a Valeant
    Pharmaceuticals International, Inc.
Bausch Health US, LLC f/k/a Valeant
    Pharmaceuticals North America LLC
Bestwall LLC
Blue Cross Blue Shield Association
Blue Cross Blue Shield of Massachusetts,
    Inc
Edna Brown
Barbara Busch
Beatriz Cabeza
Monica Cambron
Tarshwa Carter
Bridget Coates
Cohen, Placitella & Roth P.C.
Lillian Cohn-Sharon
The Continental Insurance Company
Elaine Cook
Cyprus Amax Minerals Company

Cyprus Mines Corporation
Gloria Davis
Dawn Dispensa
Patricia Dunbar
Fears Nachawati PLLC
Ann Frye-Moragne
Debra Fugiel
Victoria Gomes
Granite State Insurance Company
Andrea Harris
Charlette Hein
Tabitha Henry
Christine Hodge
Darlene Holland
Imerys Talc America, Inc.
Imerys Talc Canada Inc.
Imerys Talc Vermont, Inc.
The Insurance Company of the State of
    Pennsylvania
Johnson & Johnson
Johnson & Johnson Consumer Inc.
Voncile Jones
Amanda Joyce
Kazan, McClain, Satterley &
    Greenwood, PLLC
Shelly King
Mildred Kirk-Brown
Julie Lamore
Susan Leach
Mary Leinen
Levy Konigsberg LLP
Lexington Insurance Company
Jo Ellen Luster
Nancy Lyman
Massey & Gail LLP
Bernadette McGinnis
Pamela Morrill
National Union Fire Insurance Company of
    Pittsburgh, Pa.
New Hampshire Insurance Company
The North River Insurance Company
N.V. Schadeverzekeringsmaatschappij Maas
    Lloyd (individually and as successor in

---

[1]     Where a Bankruptcy Rule 2002 appearance was filed by counsel on behalf of clients, the clients have been
        listed herein to the extent identified and where certain clients have not been identified, the filing counsel is
        listed, to the extent not otherwise listed herein.

interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark)

Kathleen O'Halloran

Lisa O'Neal

OnderLaw, LLC

The Plaintiffs Steering Committee in the In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Precuts Liability Multi-District Litigation

RheinLand Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen)

Rio Tinto America Inc.

Cora Robinson

Robinson Calcagnie, Inc.

Lisa Sabatine

Maraldine Schmidt

Valerie Schultz

Isabel Spano

Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company)

State of Texas, Attorney General of Texas

Three Crowns Insurance Company

Christine Torres

Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company)

May Virata

Waldrep Wall Babcock & Bailey PLLC

Westchester Fire Insurance Company

Sharon Wildman

Oshunna Williams

# **EXHIBIT 3**

Schedule of Bates White Prior or Current Affiliations
For Services Provided for or on behalf of Interested Parties

Schedule of Bates White Prior or Current Affiliations[1]

For Services Provided for or on behalf of Potentially Interested Parties

- 3M Company

- ACE Property and Casualty Insurance Company

- Aetna Casualty and Surety Company

- Affiliated FM Ins. Company

- AIG Property Casualty Company

- AIU Ins. Company

- Allianz

- Allstate Insurance Company

- American Re-insurance Company

- Arrowood Indemnity Company

- Barnes & Thornburg, LLP

- BASF Catalysts LLC

- Bausch Health Companies Inc. f/k/a Valeant Pharmaceuticals International, Inc.

- Bestwall LLC

- Birmingham Fire Ins. Company of Pennsylvania

- Blank Rome LLP

- Blue Cross Blue Shield Association

- Blue Cross Blue Shield of Massachusetts, Inc

- Carrier Corporation

- Century Indemnity Company

- Chubb

- Colgate-Palmolive Company

- Conopco Inc.

---

[1]    Prior affiliations include services provided in the last ten years.

- Continental Insurance Company
- Costco Wholesale Corporation
- Covington & Burling LLP
- Crane Co.
- Cravath, Swaine & Moore
- CVS Health Corporation
- CVS Pharmacy, Inc.
- Dechert LLP
- Eaton Corporation
- Eli Lilly and Company
- Employers Ins. Company of Wausau
- Estee Lauder Inc.
- Everest Reinsurance Company
- Faegre Drinker Biddle & Reath LLP
- Federal Insurance Company
- Fireman's Fund Ins. Company
- First State Ins. Company
- Ford Motor Company
- Foster Wheeler, LLC
- General Electric Company
- Gibraltar Casualty Company
- Gibson, Dunn & Crutcher LLP
- Goodyear Tire & Rubber Co.
- Granite State Ins. Company
- Great American
- Harbor Ins.
- Hartford Accident and Indemnity Company
- Home Ins. Company

- Honeywell International, Inc.
- IMO Industries, Inc.
- Ins. Company of North America
- Ins. Company of the State of Pennsylvania
- International Ins. Company
- International Surplus Lines Ins. Company
- Janssen Biotech
- Janssen Pharmaceuticals
- John Crane, Inc.
- Johnson & Johnson
- Johnson & Johnson Consumer Inc.
- Johnson & Johnson Services, Inc.
- Jones Day
- King & Spalding LLP
- Kirkland & Ellis LLP
- Kmart Corporation
- Lewis Brisbois Bisgaard & Smith, LLP
- Lexington Ins. Company
- Liberty Mutual Insurance Company
- McCarter & English, LLP
- Morgan Lewis
- Munich Reinsurance
- Napoli Shkolnik PLLC
- National Casualty Company
- National Union Fire Ins. Company of Pittsburgh, PA
- Nationwide
- Nelson Mullins Riley & Scarborough, LLP
- New Hampshire Ins. Company

- North River Ins. Company

- Northbrook Excess and Surplus Ins. Company

- Northeastern Fire Ins. Company of Pennsylvania

- Orrick, Herrington, & Sutcliffe, LLP

- Patterson Belknap Webb & Tyler LLP

- Pfizer, Inc.

- Pneumo Abex LLC

- Proskauer Rose LLP

- Prudential Reinsurance Company

- Resolute Management Inc.

- Rite Aid Corporation

- Riverstone Insurers

- Royal Indemnity Company

- Shook, Hardy & Bacon L.L.P.

- Sidley Austin LLP

- Skadden, Arps, Slate, Meager & Flom LLP

- Starr Indemnity & Liability Company

- Stoel Rives LLP

- Target Corporation

- The Dow Chemical Company

- The Estee Lauder Companies, Inc.

- The Procter & Gamble Company

- TIG Insurance Company

- Travelers Casualty and Surety Company of America

- U.S. Bank N.A.

- Union Carbide Corporation

- Valeant Pharmaceuticals International, Inc.

- ViacomCBS, Inc.

- Walmart, Inc.

- Warren Pumps, LLC

- Weil, Gotshal & Manges LLP

- Westchester Fire Insurance Company

- Westport Insurance Corporation

- White & Case LLP

## **EXHIBIT C**

Proposed Order

NAI-1521761342

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT, LLC,[1] | Case No. 21-30589 (JCW) |
| Debtor. | |

## EX PARTE ORDER AUTHORIZING THE DEBTOR TO RETAIN AND EMPLOY BATES WHITE, LLC AS TALC CONSULTANTS AS OF THE PETITION DATE

This matter coming before the Court on the *Debtor's Ex Parte Application for an Order Authorizing It to Retain and Employ Bates White, LLC as Talc Consultants as of the Petition Date* (the "Application"),[2] filed by the above-captioned debtor (the "Debtor"); the Court having reviewed the Application and the Mullin Declaration, and having considered the statements of counsel and evidence adduced with respect to the Application; and the Court

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Application or the exhibits thereto.

having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a

core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Application was sufficient

under the circumstances and (v) Bates White neither holds nor is engaged by any interest

materially adverse to the Debtor's estate and is a "disinterested person," as defined in

section 101(14) of the Bankruptcy Code and as required by section 327 of the Bankruptcy Code;

and the Court having determined that the legal and factual bases set forth in the Application and

the Mullin Declaration establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.       The Application is GRANTED.

2.       The Debtor is authorized to retain and employ Bates White as talc

consultants in the Chapter 11 Case, pursuant to section 327(a) of the Bankruptcy Code and

Bankruptcy Rule 2014, on the terms and conditions set forth in the Application and

the Engagement Letter, as of the Petition Date.

3.       Bates White is authorized to continue its role as consultant with respect to

the Debtor in In re Imerys Talc America, Inc., Case No. 19-10289 (LSS) (Bankr. D. Del.), on the

terms and conditions set forth in the Application as of the Petition Date.

4.       Bates White shall be compensated for its services and reimbursed for any

related expenses as set forth in the Application and the exhibits thereto, and in accordance with

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy

Rules, the Interim Compensation Order and any other applicable orders or procedures of this

Court.

5.      Subject to the terms of the Interim Compensation Order, Bates White is authorized to hold the Retainer as security for the payment of postpetition fees and expenses.

6.      Bates White shall not apply any portion of the Retainer to fees and expenses incurred from and after the Petition Date unless and until authorized to do so by a further order of this Court, including the Interim Compensation Order.

7.      Notwithstanding any contrary provision of the Engagement Letter, the Court shall have jurisdiction over, hear and adjudicate any dispute that may arise under the Engagement Letter among the parties to the Engagement Letter during the pendency of the Chapter 11 Case.

8.      Notwithstanding any contrary provision of the Engagement Letter, Bates White's liability will not be limited or released by the Engagement Letter for any claim or expense where:  (a) such claim or expense is judicially determined to have arisen from Bates White's gross negligence, willful misconduct, fraud or bad faith; (b) with respect to a contractual dispute in which the Debtor alleges the breach of Bates White's contractual obligations, the Court determines that such release or limitation would not be permissible under applicable law; or (c) such claim or expense is settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Bates White should not have its liability released or limited under the terms of the Engagement Letter, as modified by this Order.

9.      To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

10.     This Order shall be immediately effective and enforceable upon its entry.

11.     Pursuant to Local Bankruptcy Rule 9013-1(f), any party shall be entitled

to request a hearing or request that the Court reconsider entry of this Order by filing a motion for

reconsideration within 14 days of service of this Order.

12.     The Debtor is authorized and empowered to take all actions necessary to

implement the relief granted in this Order in accordance with the Application.

13.     This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation, interpretation or enforcement of this Order.


This Order has been signed electronically.                        United States Bankruptcy Court
The Judge's signature and Court's seal appear
at the top of the Order.