**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No. 21-30589 (JCW) |
| Debtor. | |

**DEBTOR'S EX PARTE APPLICATION FOR**
**ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtor (the "Debtor") applies to the Court for the entry of an order authorizing it to retain and employ AlixPartners, LLP ("AlixPartners") as financial advisors in this chapter 11 case of October 14, 2021 (the "Petition Date"). In support of this Application, the Debtor respectfully represents as follows:

**Background**

1. On the Petition Date, the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

2. The Debtor is a North Carolina limited liability company. It is the direct parent of Royalty A&M LLC, a North Carolina limited liability company, which manages a

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

portfolio of royalty revenue streams, including some based on third-party sales of certain

products, and will seek opportunities to acquire or finance additional royalty revenue streams.

As of the Petition Date, the Debtor was a defendant in thousands of lawsuits asserting personal

injuries allegedly caused by exposure to talc-containing products.

3.       A comprehensive description of the Debtor, its history, its assets and

liabilities and the events leading to the commencement of this chapter 11 case can be found in

the *Declaration of John K. Kim in Support of First Day Pleadings* [Dkt. 5] (the "First Day

Declaration"), which was filed on the Petition Date and is incorporated herein by reference.  In

addition to the First Day Declaration, the Debtor has filed an Informational Brief [Dkt. 3] to

provide additional information about its talc litigation, related costs and plans to address these

matters in this chapter 11 case (the "Chapter 11 Case").

4.       On November 8, 2021, the Court entered an order [Dkt. 355] appointing

an official committee of talc claimants (the "Talc Committee") in the Chapter 11 Case.

**Relief Requested**

5.       Pursuant to section 327(a) of the Bankruptcy Code, Rules 2014(a) and

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1

and 2016-1 of the Rules of Practice and Procedure of the United States Bankruptcy Court for the

Western District of North Carolina (the "Local Bankruptcy Rules"), and consistent with the

*Guidelines for Compensation and Expense Reimbursement of Professionals* issued by this Court

(the "Compensation Guidelines"), the Debtor seeks entry of an order (the "Order"), substantially

in the form attached hereto as Exhibit A, authorizing the Debtor to employ and retain

AlixPartners as its financial advisor effective as of the Petition Date, and in accordance with the

terms and conditions set forth in that certain engagement letter dated as of October 28, 2021

(the "Engagement Letter"), a copy of which is attached hereto as Exhibit B.[3]

6.      In support of this Application, the Debtor submits, and incorporates by

reference the *Declaration of John R. Castellano, a Managing Director of AlixPartners*

(the "Castellano Declaration"), a copy of which is attached hereto as Exhibit C.

### AlixPartners' Qualifications

7.      AlixPartners is an internationally recognized restructuring and turnaround

firm with substantial experience in providing financial advisory services and has an excellent

reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors

and creditors throughout the United States.

8.      AlixPartners' professionals have assisted, advised and provided strategic

advice to, debtors, creditors, bondholders, investors and other entities in numerous chapter 11

cases of similar size and complexity to the Debtor's Chapter 11 Case.  AlixPartners has provided

financial or crisis management services in numerous large cases in this and other districts.

*See, e.g.*, *In re Aldrich Pump LLC,* Case No. 20-30608 (JCW) (Bankr. W.D.N.C. June 18, 2020);

*In re Sheridan Holding Co. I, LLC*, No. 20-31884 (MI) (Bankr. S.D. Tex. Apr. 24, 2020); *In re*

*SRII Opco, LP and SRII Opco GP, LLC*, No. 19-35133 (MI) (Bankr. S.D. Tex. Apr. 21, 2020); *In*

*Re Celadon Grp., Inc.*, Case No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble*

*Bee Parent, Inc.*, Case No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Purdue*

*Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019); *In re Deluxe Ent.*

*Servs. Grp. Inc.*, Case No. 19-23774 (RDD) (Bankr. S.D.N.Y. Nov. 14, 2019); *In re Sheridan*

---

[3]      Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express
terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter
and such summaries or references herein. Additionally, any capitalized terms used in this Application and
not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

*Holding Co. II, LLC*, Case No. 19-25198 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Jack*

*Cooper Ventures, Inc.*, Case No. 19-62393 (PWB) (Bankr. N.D. Ga. Aug. 30, 2019); *In re*

*Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019); *In re Ditech*

*Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Mar. 25, 2019); *In re Fullbeauty*

*Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Mar. 7, 2019).

## **Scope of Services**

9.      The Debtor and AlixPartners have entered into the Engagement Letter,

which governs the relationship between them.  The terms and conditions of the Engagement

Letter were negotiated between the Debtor and AlixPartners and reflect the parties' mutual

agreement as to the efforts that will be required in this engagement.  Subject to further order of

the Court, AlixPartners may provide the services described in the Engagement Letter as

AlixPartners and the Debtor shall deem appropriate and feasible in order to advise the Debtor in

the course of the Chapter 11 Case, including, but not limited to, the following:

a.      Coordinating and providing administrative support for the Chapter 11 Case and developing the Debtor's plan of reorganization or other appropriate case resolution, if necessary.

b.      Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court as well as providing assistance in such areas as testimony before the Court on matters that are within AlixPartners' areas of expertise.

c.      Assist in obtaining and responding to due diligence requests of the Debtor's professionals and other parties in interest in the Debtor's bankruptcy process including official committees appointed by the Court, and the Court itself.

d.      Assist the Debtor and its management in developing any forecasts that may be required, including by creditor constituencies in the Chapter 11 Case or by the Debtor for other corporate purposes.

e.      Assist as requested in managing any litigation that may be brought against the Debtor in the Court.

f.       Assist as requested in managing any claims resolution process.

g.      Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

10.      Such financial advisory services are necessary to the Debtor's restructuring efforts.  As noted above, the Debtor believes that AlixPartners has substantial relevant expertise in providing financial advisory services to chapter 11 debtors and, therefore, AlixPartners' services will provide valuable support to the Debtor in the Chapter 11 Case. Accordingly, the Debtor respectfully submits that AlixPartners is well qualified to perform these services for the Debtor.

11.      When necessary, the individuals working on this matter (the "<u>AlixPartners Personnel</u>") will be assisted by or replaced by various professionals at various levels.

12.      To the extent AlixPartners uses the services of independent contractors (the "<u>Contractors</u>") in the Chapter 11 Case, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtor at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs incurred; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

## <u>No Duplication of Services</u>

13.      The financial advisory services provided by AlixPartners will complement, and not duplicate, the services to be rendered by any other professional retained in the Chapter 11 Case.

## <u>AlixPartners' Disinterestedness</u>

14.      To the best of the Debtor's knowledge, information and belief, and except to the extent disclosed herein and in the Castellano Declaration, AlixPartners (a) is a

"disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) has no connection with the Debtor, its creditors, or other parties in interest, or the attorneys or accountants of the foregoing, the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") or any person employed in the Office of the Bankruptcy Administrator or the bankruptcy judges for the Western District of North Carolina; and (c) does not hold any interest adverse to the Debtor's estate.

15.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, Debtor is advised that AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

**Professional Compensation and Expense Reimbursement**

16.     AlixPartners' decision to accept this engagement to provide services to the Debtor is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

17.     AlixPartners' current standard hourly rates for 2021, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,030 – $1,295 |
| Director | $825 – $980 |
| Senior Vice President | $665 – $755 |
| Vice President | $485 – $650 |

| Title | Hourly Rate |
|---|---|
| Consultant | $180 – $480 |
| Paraprofessional | $305 – $325 |

18.    AlixPartners changes its rates annually on January 1.  Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

19.    In addition to compensation for professional services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable, necessary, and documented out-of-pocket expenses incurred in connection with the Chapter 11 Case, including transportation costs, lodging, and meals.

20.    To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

21.    The Debtor understands that AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Case consistent with the Fee and Expense Structure, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of this Court.

22.    AlixPartners will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in the Chapter 11 Case.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtor.

AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid

by the Debtor pursuant to the terms of the Engagement Letter and any procedures established by

the Court, pursuant to an interim compensation order or otherwise.

23.     AlixPartners often works for compensation that includes hourly-based fees

and performance-based, contingent-incentive compensation earned upon achieving meaningful

results.  AlixPartners is not seeking a success fee in connection with the Chapter 11 Case.

24.     The Fee and Expense Structure is consistent with and typical of

compensation arrangements entered into by AlixPartners and other comparable firms that render

similar services under similar circumstances.  The Debtor believes that the Fee and Expense

Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its

work and to cover fixed and routine overhead expenses.

### Indemnification and Limitation of Liability

25.     The Engagement Letter contains standard indemnification language with

respect to AlixPartners' services including, without limitation, an agreement by the Debtor to

indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents

(each, an "AlixPartners Party") from and against all claims, liabilities, losses, expenses and

damages arising out of or in connection with the engagement of AlixPartners that is the subject

of the Engagement Letter, except for those finally determined or otherwise agreed by the parties

to be the direct result of the gross negligence, fraud, bad faith, willful misconduct or self-dealing

of any AlixPartners Party.

26.     The Engagement Letter also contains a limitation of liability provision

(the "Limitation of Liability Provision") that limits the liability of AlixPartners for direct

damages to two times the amount of fees paid with respect to services performed under the

Engagement Letter.

27.    The Debtor and AlixPartners believe that the indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") and the Limitation of Liability Provision are customary and reasonable for AlixPartners and comparable firms providing financial advisory services.

28.    The terms and conditions of the Indemnification Provisions and the Limitation of Liability Provision were negotiated by the Debtor and AlixPartners at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtor, its estate, and creditors in light of the fact that the Debtor requires AlixPartners' services to successfully reorganize.  The Debtor requests that this Court approve the Indemnification Provisions and the Limitation of Liability Provision as set forth in the Engagement Letter.

## Applicable Authority

29.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

> 11 U.S.C. § 327(a).

30.    Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United

States trustee, or any person employed in the office of the United
States trustee.

Fed. R. Bankr. P. 2014.

31.    The Debtor respectfully submits that section 327 of the Bankruptcy Code

permits them to hire a professional firm like AlixPartners to undertake an advisory role in the

Chapter 11 Case.  Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied

by this Application.  The retention of AlixPartners as financial advisor in the Chapter 11 Case is

in the best interests of the Debtor's estate, creditors, and the parties in interest.

### Notice

32.    Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtor seeks approval

of this Application on an ex parte basis.  Nevertheless, consistent with the *Order Establishing

Certain Notice, Case Management and Administrative Procedures* [Dkt. 322] (the "Case

Management Order"), notice of this Application has been provided to:  (a) the Bankruptcy

Administrator; (b) the Talc Committee; (c) counsel to the Debtor's non debtor affiliates, Johnson

& Johnson Consumer Inc. and Johnson & Johnson; and (d) the other parties on the Service List

established by the Case Management Order.  The Debtor submits that, in light of the ex parte

nature of the relief requested, no other or further notice need be provided.

### No Prior Request

33.    No prior request for the relief sought in this Application has been made to

this or any other Court in connection with the Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court:  (a) enter the Order,

granting the relief requested herein; and (b) grant such other and further relief to the Debtor as the

Court may deem just and proper.

Dated:  November 15, 2021
       Charlotte, North Carolina

Respectfully submitted,

LTL Management LLC

By:  */s/ John K. Kim*
     John K. Kim
     Chief Legal Officer

PROPOSED ATTORNEYS FOR
DEBTOR:

C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
Matthew L. Tomsic (NC 52431)
RAYBURN COOPER & DURHAM, P.A.
227 West Trade Street, Suite 1200
Charlotte, North Carolina 28202
Telephone:  (704) 334-0891
Facsimile:  (704) 377-1897
E-mail:   rrayburn@rcdlaw.net
          jmiller@rcdlaw.net
          mtomsic@rcdlaw.net

Gregory M. Gordon (TX Bar No. 08435300)
Dan B. Prieto (TX Bar No. 24048744)
Amanda Rush (TX Bar No. 24079422)
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  gmgordon@jonesday.com
  dbprieto@jonesday.com
  asrush@ jonesday.com
(Admitted *pro hac vice*)

Brad B. Erens (IL Bar No. 06206864)
JONES DAY
77 West Wacker, Suite 3500
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
E-mail:   bberens@jonesday.com
(Admitted *pro hac vice*)

## **EXHIBIT A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No. 21-30589 (JCW) |
| Debtor. | |

**EX PARTE ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

This matter coming before the Court on the *Debtor's Ex Parte Application for an Order Authorizing the Employment and Retention of AlixPartners, LLP as Financial Advisor Effective as of the Petition Date* (the "Application"),[2] filed by the above-captioned debtor (the "Debtor"); the Court having reviewed the Application, the Castellano Declaration, and the

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

Engagement Letter; and the Court having found that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(d) notice of the Application was sufficient under the circumstances, (e) AlixPartners does not

hold nor represent any interest adverse to the Debtor or its estate, as required by section 327(a) of

the Bankruptcy Code, (f) the Application and all related schedules and exhibits fully comply

with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the

Compensation Guidelines; and the Court having determined that the legal and factual bases set

forth in the Application and the Castellano Declaration establish just cause for the ex parte relief

granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED.

2.      Pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules

2014(a) and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1, the Debtor is authorized to

employ and retain AlixPartners as its financial advisor in the Chapter 11 Case effective as of the

Petition Date, in accordance with the terms and conditions set forth in the Application and

Engagement Letter, except as provided by this Order.

3.      The terms of the Engagement Letter, including without limitation, the

Indemnification Provisions, the Limitation of Liability Provision and the Fee and Expense

Structure, are reasonable terms and conditions of employment and are approved in all respects,

as modified by this Order.

4.      AlixPartners shall file monthly, interim and final fee requests for

allowance of compensation and reimbursement of expenses pursuant to the procedures set forth

in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules and the Local

Bankruptcy Rules, the Compensation Guidelines and any other such procedures as may be fixed

by order of this Court. For billing purposes, AlixPartners shall keep its time in one-tenth (1/10)

hour increments in accordance with the Compensation Guidelines.

       5.     AlixPartners shall use its reasonable best efforts to avoid duplication of

services provided by any of the Debtor's other retained professionals in the Chapter 11 Case.

       6.     To the extent that there is any inconsistency between this Order and the

Engagement Letter, Application or the Castellano Declaration, the provisions of this Order shall

govern.

       7.     The indemnification provisions included in the Engagement Letter and its

attachments are approved, subject during the pendency of the Chapter 11 Case to the following:

      a.     AlixPartners shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement thereof are approved by this Court;

      b.     The Debtor shall have no obligation to indemnify AlixPartners, or provide contribution or reimbursement to AlixPartners, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from AlixPartners' gross negligence, fraud, bad faith, willful misconduct or self-dealing; or (ii) settled prior to a judicial determination as to AlixPartners gross negligence, fraud, bad faith, willful misconduct or self-dealing but determined by this Court after notice and hearing to be a claim or expense for which AlixPartners should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order; and

      c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Case, AlixPartners believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation, the

-3-

advancement of defense costs, AlixPartners must file an application therefor in this Court, and the Debtor may not pay any such amounts to AlixPartners before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by AlixPartners for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify, or make contributions or reimbursements to, AlixPartners.  All parties in interest shall retain the right to object to any demand by AlixPartners for indemnification, contribution and/or reimbursement.

8.      In the event that, during the pendency of the Chapter 11 Case, AlixPartners seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in AlixPartners' fee applications and such invoices and time records shall be in compliance with the Local Bankruptcy Rules, and shall be subject to the Compensation Guidelines and approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327.

9.      To the extent AlixPartners uses the services of independent contractors (the "Contractors") in the Chapter 11 Case, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtor at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs incurred; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

10.     This Order shall immediately be effective and enforceable upon its entry.

11.     Pursuant to Local Bankruptcy Rule 9013-1(f), any party shall be entitled to a hearing or request that the Court reconsider the entry of this Order by filing a motion for reconsideration within 14 days of service of this Order.

12.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

13.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

This Order has been signed electronically.                    United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order.

## **EXHIBIT B**

Engagement Letter

NAI-1522354801

**Alix**Partners

Mr. John K. Kim
Chief Legal Officer                                                                October 28, 2021
LTL Management LLC
501 George Street
New Brunswick, NJ 08933

**Re:    Agreement for Financial Advisory and Consulting Services**

Dear Mr. Kim:

This letter, together with the attached Schedules and General Terms and Conditions, sets
forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and LTL
Management LLC (the "Company") for the engagement of AlixPartners to provide financial
advisory and consulting services to the Company.

All defined terms shall have the meanings ascribed to them in this letter and in the attached
Schedules and General Terms and Conditions. The Company and AlixPartners are each a
"party," and together the "parties."

AlixPartners understands that the Company commenced a reorganization case (the
"Bankruptcy Case") under Chapter 11 of the United States Bankruptcy Code (the
"Bankruptcy Code") on October 14, 2021 (the "Petition Date") in the United States
Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court").

**Objectives and Tasks**

The responsibilities of AlixPartners will be as follows:

- Assist in coordinating and providing administrative support in connection with the
  Bankruptcy Case and developing the Company's Plan of Reorganization or other
  appropriate Bankruptcy Case resolution, if necessary.

- Assist with the preparation of the Company's statement of financial affairs, schedules
  of assets and liabilities and other regular reports required by an order of the
  Bankruptcy Court, the Bankruptcy Code or other applicable rules or guidelines, and
  provide assistance with testimony before the Bankruptcy Court on matters that are
  within AlixPartners' areas of expertise.

- Assist in obtaining and responding to due diligence requests of the Company's
  professionals and other parties in interest in the Bankruptcy Case including official
  committees and claimant representatives appointed by the Bankruptcy Court, and the
  Bankruptcy Court itself.

- Provide assistance as requested by management in connection with the Company's
  development of any forecasts as may be required, including by creditor constituencies
  in the Bankruptcy Case or by the Company for other corporate purposes.

- Assist as requested in managing any litigation support that may be brought against
  the Company in the Bankruptcy Court where appropriate.

- Assist as requested in managing any claims resolution process.

- Assist with such other matters as may be requested that fall within AlixPartners'
  expertise and that are mutually agreeable.

**AlixPartners**

LTL Management LLC
Page 2 of 9

## Staffing

John Castellano and Randall Eisenberg will be the managing directors responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

## Timing and Fees

AlixPartners commenced this engagement on the Petition Date.  The Agreement will be subject to Bankruptcy Court approval.

The Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention nunc pro tunc to the Petition Date. AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

* * *

If these terms meet with your approval, please sign and return a copy of this Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

John Castellano
Managing Director

Randall Eisenberg
Managing Director

Acknowledged and Agreed to:

LTL Management LLC

By:

Its: Chief Legal Officer

Dated: 10/29/21

**AlixPartners**

## Schedule 1

### Fees and Expenses

1. **Fees:** AlixPartners' fees (the "Professional Fees") will be based on the actual hours spent by AlixPartners personnel at AlixPartners' standard hourly rates in effect when the services are rendered.  The current hourly rates are:

| | |
|---|---|
| Managing Director | US$1,030 – US$1,295 |
| Director | US$825 - US$980 |
| Senior Vice President | US$665 – US$755 |
| Vice President | US$485 – US$650 |
| Consultant | US$180 – US$480 |
| Paraprofessional | US$305 – US$325 |
| Intern | US$70 – US$105 |
| Developer | US$285 – US$650 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2. **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3. **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

5. **Payment:** Notwithstanding anything to the contrary in the General Terms and Conditions, AlixPartners acknowledges that payment of its Professional Fees and reimbursement of its expenses will be subject to compliance with sections 330 and 331 of the Bankruptcy Code, any order establishing procedures for interim compensation and reimbursement of expenses of retained professionals entered in the Bankruptcy Case, and any other relevant local rules, guidelines, or orders of the Bankruptcy Court.

NAI-1522287291v2

**Alix**Partners

**Data Protection Schedule**

**Description of Transfer**

### 1. Categories of Data Subjects

 X  Employees / Members / Contractors of Data Controller

___ Clients of Data Controller

___ Other:

### 2. Types of Personal Data

___ Background Check Data (Criminal History, Drug Test Results, References, etc.)

___ Biometric Data (Facial Recognition, Fingerprints, Voice Recording, etc.)

___ Browsing Data (Cookies, Website History, IP Address, etc.)

 X  Contact Information (Contact Details, Address, Email Address, Phone Numbers, etc.)

___ Education and Skills (Academic Transcripts, Educational Degrees, Languages, Training, etc.)

___ Employment Information (Compensation, Job Title, Personnel Number, Workers Comp, Office Location, etc.)

___ Family Information (Children, Parents, etc.)

 X  Financial Personal Information (Bank Accounts, Credit Card Numbers, etc.)

___ Genetic Information (Genetic Sequence)

___ Government Identifiers (National Identification Number, SSN, Driving License, etc.)

___ Personal Identifiers (Name, Age, Date of Birth, Race, Video/Photo, Signature, etc.)

___ Professional Experience & Affiliations (Trade Union Membership, Qualifications/Certifications, etc.)

___ Social Media Data (Social Media Accounts, Social Media History, etc.)

___ Travel and Expense (Travel History, Expense Details, etc.)

___ User Account Information (Account Age, Account Number, Account Password, etc.)

___ Workplace Welfare (Harassment Reports, Disciplinary Action, etc.)

___ Other:

### 3. Frequency of Data Transfers

The frequency of the transfer will be continuous (multiple transfers).

### 4. Processing by AlixPartners

4.1. <u>Nature of processing</u>: The nature of processing will include receiving, storing, analyzing, transmitting to appropriate parties, and disposing of Personal Data.

4.2. <u>Purpose of the data transfer and further processing</u>: The purpose of processing is to provide the services described in the agreement above.

4.3. <u>The period for which the personal data will be retained, or if the period is not known, the criteria used to determine the period</u>: AlixPartners will process Personal Data for the duration of the engagement.

4.4. <u>Transfer to Sub-processors</u>: Sub-processors may process Personal Data for the duration of the engagement life cycle and for the purposes specified above. See https://www.alixpartners.com/policies/subprocessors/ for a list of sub-processors.

NAI-1522287291v2

**AlixPartners, LLP**
General Terms and Conditions

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management.

### Section 2. Billing, Payments and Taxes

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

### Section 3. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended

to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

### Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client conflicts. AlixPartners may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection

with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law. The Company may not rely on any draft or interim Work Product.

## Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Company Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

## Section 6. Framework of the Engagement

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

## Section 7. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages, including reasonable legal fees and disbursements of counsel (collectively "Losses") arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, other than Losses finally determined or otherwise agreed by the parties to be the direct result of gross negligence, fraud, willful misconduct, bad faith or self-dealing of any AlixPartners Party. The Company shall not be liable for indirect, special and consequential damages, lost profits, lost data, reputational damages, punitive damages or any other similar damages under any circumstances, even if the Company has been advised of the possibility of such damages. Any request for indemnification shall be subject to application to and approval of the Bankruptcy Court. If, in the opinion of counsel, representing more than one party in a matter subject to indemnification in this Section 7 creates a potential conflict of interest, the applicable AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

AlixPartners shall indemnify, hold harmless and defend the Company and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "Company Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement that are finally determined or otherwise agreed by the parties to be the direct result of (i) personal injury or damages to or losses of any equipment or other Company tangible personal property caused by AlixPartners in connection with this engagement, (ii) the gross negligence, bad faith, self-dealing, fraud or willful misconduct of any of the AlixPartners Parties, or (iii) any actual or alleged infringement, violation or misappropriation of the intellectual property rights of any third person in connection with the Work Product provided by AlixPartners.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not

NAI-1522287291v2

**AlixPartners, LLP**
General Terms and Conditions

against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

## Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, any party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

## Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

## Section 10. Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary

investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/ contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors in violation of the preceding paragraph, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, $1,000,000; (ii) for a Director, $500,000; and (iii) for any other employee/contractor, $250,000. The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

## Section 11. Limitation of Liability

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, FRAUD, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO TWO TIMES THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap. Notwithstanding the foregoing, the Liability Cap

NAI-1522287291v2

**AlixPartners, LLP**
General Terms and Conditions

shall not limit the liability of AlixPartners from claims directly resulting from AlixPartners' gross negligence, fraud, self-dealing or willful misconduct or other liabilities that cannot be disclaimed under applicable law.

## Section 12. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

AlixPartners, LLP
2000 Town Center, Suite 2400
Southfield, MI 48075
Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to AlixPartners. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

## Section 13. Bankruptcy Related Matters

Notwithstanding anything to the contrary in these Terms, the following provisions will prevail:

The Company shall promptly apply to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the U.S. Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company. AlixPartners' standard practice is to

NAI-1522287291v2

| **AlixPartners, LLP** |
| General Terms and Conditions |

charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

**Section 14. Data Protection**

To the extent applicable, the Company and AlixPartners shall comply with the terms of the AlixPartners Data Protection Addendum (located at: https://www.alixpartners.com/policies/processor-data-protection-addendum/), which form part of the Agreement. The Data Protection Schedule of this Agreement shall apply to the Data Protection Addendum.

NAI-1522287291v2

# **EXHIBIT C**

Castellano Declaration

NAI-1522354801

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No. 21-30589 (JCW) |
| Debtor. | |

**DECLARATION OF JOHN R. CASTELLANO IN SUPPORT OF DEBTOR'S**
**EX PARTE APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Rules of Practice and Procedure

of the United States Bankruptcy Court for the Western District of North Carolina (the "Local

Bankruptcy Rules"), I, John R. Castellano, hereby declare:

1.     I am a Managing Director with AlixPartners, LLP ("AlixPartners"), which

has a place of business at 909 Third Avenue, New York, New York 10022.

2.     I submit this declaration on behalf of AlixPartners in support of the

*Debtor's Ex Parte Application for Entry of an Order Authorizing the Employment and Retention*

*of AlixPartners, LLP as Financial Advisor Effective as of the Petition Date* (the "Application")[2]

by which the Debtor is seeking retention of AlixPartners on the terms and conditions set forth in

the Application and the engagement letter and addendum between the Debtor and AlixPartners

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is
501 George Street, New Brunswick, New Jersey 08933.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

attached to the Application as <u>Exhibit B</u> (the "<u>Engagement Letter</u>").  Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein.  If called and sworn as a witness, I could, and would, testify competently to the matters set forth herein.

### AlixPartners' Qualifications

3.      AlixPartners provides financial advisory services to debtors in chapter 11 cases and out-of-court restructurings.  AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

4.      AlixPartners' professionals have assisted, advised and provided strategic advice to, debtors, creditors, bondholders, investors and other entities in numerous chapter 11 cases of similar size and complexity to the Debtor's Chapter 11 Case.  AlixPartners has provided financial or crisis management services in numerous large cases in this and other districts. *See, e.g.*, *In re Aldrich Pump LLC,* Case No. 20-30608 (JCW) (Bankr. W.D.N.C. June 18, 2020); *In re Sheridan Holding Co. I, LLC*, No. 20-31884 (MI) (Bankr. S.D. Tex. Apr. 24, 2020); *In re SRII Opco, LP and SRII Opco GP, LLC*, No. 19-35133 (MI) (Bankr. S.D. Tex. Apr. 21, 2020); *In Re Celadon Grp., Inc.*, Case No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, Case No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019); *In re Deluxe Ent. Servs. Grp. Inc.*, Case No. 19-23774 (RDD) (Bankr. S.D.N.Y. Nov. 14, 2019); *In re Sheridan Holding Co. II, LLC*, Case No. 19-25198 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Jack*

---

[3]      Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at AlixPartners and are based on information provided by them.

*Cooper Ventures, Inc.*, Case No. 19-62393 (PWB) (Bankr. N.D. Ga. Aug. 30, 2019); *In re*

*Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019); *In re Ditech*

*Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Mar. 25, 2019); *In re Fullbeauty*

*Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Mar. 7, 2019).

## Services to be Provided

5.      Subject to further order of the Court, AlixPartners may provide the

services described in the Engagement Letter, including, but not limited to, the following:[4]

a.      Coordinating and providing administrative support for the Chapter 11 Case and developing the Debtor's plan of reorganization or other appropriate case resolution, if necessary.

b.      Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Court as well as providing assistance in such areas as testimony before the Court on matters that are within AlixPartners' areas of expertise.

c.      Assist in obtaining and responding to due diligence requests of the Debtor's professionals and other parties in interest in the Debtor's bankruptcy process including official committees appointed by the Court, and the Court itself.

d.      Assist the Debtor and its management in developing any forecasts that may be required, including by creditor constituencies in the Chapter 11 Case or by the Debtor for other corporate purposes.

e.      Assist as requested in managing any litigation that may be brought against the Debtor in the Court.

f.      Assist as requested in managing the claims resolution process.

g.      Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

---

[4]      The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.

NAI-1522354801

6.      If the Application is approved, AlixPartners will provide necessary financial advisory services to the Debtor.  AlixPartners' personnel will work closely with the Debtor's management and other professionals throughout the reorganization process.  By virtue of the expertise of its restructuring personnel, AlixPartners is well qualified to provide services to and represent the Debtor's interests in the Chapter 11 Case.

### No Duplication of Services

7.      AlixPartners understands that the Debtor may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtor.  The financial advisory services provided by AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in the Chapter 11 Case.

### Professional Compensation and Expense Reimbursement

8.      AlixPartners' decision to accept this engagement to provide services to the Debtor is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

9.      AlixPartners' current standard hourly rates for 2021, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
| --- | --- |
| Managing Director | $1,030 – $1,295 |
| Director | $825 – $980 |
| Senior Vice President | $665 – $755 |

-4-

| Title | Hourly Rate |
|---|---|
| Vice President | $485 – $650 |
| Consultant | $180 – $480 |
| Paraprofessional | $305 – $325 |

10.     AlixPartners adjust its billing rates annually on January 1.  Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

11.     In addition to compensation for professional services rendered by AlixPartners' Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with the Chapter 11 Case, including but not limited to transportation costs, lodging and meals.

12.     To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

13.     AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Case consistent with the Fee and Expense Structure, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable procedures and orders of this Court.

14.     AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in the

NAI-1522354801

Chapter 11 Case. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtor.

15.     AlixPartners often works for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results. AlixPartners is not seeking a success fee in connection with the Chapter 11 Case.

16.     The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances. I believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine overhead expenses.

### Indemnification and Limitation of Liability Provisions

17.     The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtor to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "AlixPartners Party") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except for those finally determined or otherwise agreed by the parties to be the direct result of the gross negligence, fraud, bad faith, willful misconduct or self-dealing of any AlixPartners Party.

18.     The Engagement Letter also contains a limitation of liability provision (the "Limitation of Liability Provision") that limits the liability of AlixPartners for direct damages to two times the amount of fees paid with respect to services performed under the Engagement Letter.

NAI-1522354801

19.     AlixPartners believes that the indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") and the Limitation of Liability Provision are customary and reasonable for AlixPartners and comparable firms providing financial advisory services.

20.     The terms and conditions of the Indemnification Provisions and the Limitation of Liability Provision were negotiated by the Debtor and AlixPartners at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtor, its estate, and creditors.  Accordingly, as part of this Application, I believe that this Court should approve the Engagement Letter.

## **AlixPartners' Disinterestedness**

21.     In connection with its proposed retention by the Debtor in this Chapter 11 Case, AlixPartners undertook a complex process, the details of which are set forth in **Schedule 2**, to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor's estate.  Specifically, AlixPartners obtained from the Debtor and/or its representatives a potential parties in interest list in this Chapter 11 Case (each party a "Party in Interest", and collectively the "Parties in Interest List").  The Parties in Interest List is attached hereto as **Schedule 1**.  A search was performed for connections to each Party in Interest as to AlixPartners Holdings, LLP, AlixPartners' parent company ("Holdings"), and each of Holdings' U.S. and non-U.S. subsidiaries ("Holdings Enterprise", collectively "AP").  Results for connections to the Parties in Interest List are disclosed on **Schedule 2**.

22. Based on that review, AlixPartners represents that, to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest, cause it not to be disinterested or hold or represent an interest adverse to the Debtor's estate.

23. AlixPartners and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt. As part of its diverse practice, AlixPartners appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in this Chapter 11 Case. Further, AlixPartners has in the past, and may in the future, be represented by various attorneys and law firms, some of whom may be involved in this Chapter 11 Case. In addition, AlixPartners has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtor or this Chapter 11 Case in which it works with or in opposition to other professionals involved in this Chapter 11 Case. Moreover, AlixPartners might have referred work to other professionals who are retained in this Chapter 11 Case. Likewise, certain such professionals who are retained in this Chapter 11 Case might have referred work to AlixPartners. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relationships constitute interests adverse to the Debtor.

24. From time to time, AlixPartners has provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters wholly unrelated to this Chapter 11 Case. As described herein, however, AlixPartners has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant creditor, equity holder, insider, or other party-in-interest in such unrelated matters.

NAI-1522354801

25.     To the best of my knowledge, information and belief, insofar as I have

been able to ascertain after reasonable inquiry, none of the AlixPartners' personnel (a) have any

connection with the United States Bankruptcy Administrator for the Western District of North

Carolina (the "Bankruptcy Administrator") and employees in the Office of the Bankruptcy

Administrator and (b) bankruptcy judges for the Western District of North Carolina, except as

otherwise set forth **Schedule 2**.

26.     To the best of my knowledge, information and belief, insofar as I have

been able to ascertain after reasonable inquiry, AlixPartners has not been retained to assist any

entity or person other than the Debtor on matters relating to, or in direct connection with, this

Chapter 11 Case.  AlixPartners will continue to provide professional services to entities that may

be creditors or equity holders of the Debtor or other parties in interest in this Chapter 11 Case,

provided that such services do not relate to, or have any direct connection with, this Chapter 11

Case.

27.     Certain of AlixPartners' employees, managing directors, board members,

equity holders, or an affiliate of any of the foregoing may have financial accounts or insurance

relationships with a potential party in interest.

28.     Despite the efforts described above to identify and disclose the

connections that AlixPartners and its affiliates have with parties in interest in this Chapter 11

Case, because the Debtor is a large enterprise with numerous creditors and other relationships,

AlixPartners is unable to state with certainty that every client relationship or other connection

has been identified and disclosed.

29.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy

Rule 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with

NAI-1522354801

any other party in interest, including the Debtor, any creditor, or any attorney for such party in

interest in this Chapter 11 Case, (a) for the purpose of sharing or fixing fees or other

compensation to be paid to any such party in interest or its attorneys for services rendered in

connection therewith, (b) for payment of such compensation from the assets of the estate in

excess of the compensation allowed by this Court pursuant to the applicable provisions of the

Bankruptcy Code, or (c) for payment of compensation in connection with this Chapter 11 Case

other than in accordance with the applicable provisions of the Bankruptcy Code.

30.    Accordingly, except as otherwise set forth herein, insofar as I have been

able to determine, neither I, AlixPartners nor any AlixPartners' personnel holds or represents any

interest adverse to the Debtor or its estate, and AlixPartners is a "disinterested person" as that

term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

Bankruptcy Code, in that AlixPartners and its professionals and employees who will work on the

engagement:

(a)    are not creditors, equity holders, or insiders of the Debtor;

(b)    were not, within two years before the Petition Date, a director, officer or
employee of the Debtor; and

(c)    do not have an interest materially adverse to the interest of the Debtor's
estate or any class of creditors or equity holders, by reason of any direct or
indirect relationship to, connection with, or interest in, the Debtor, or for
any other reason.

31.    If AlixPartners discovers additional information that requires disclosure,

AlixPartners will promptly file a supplemental disclosure with this Court as required by

Bankruptcy Rule 2014.  AlixPartners reserves the right to supplement this Declaration in the

event that AlixPartners discovers any facts bearing on matters described in this Declaration

regarding AlixPartners' employment by the Debtor.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
is true and correct to the best of my knowledge and belief.

Dated: November 15, 2021

John R. Castellano
Managing Director

## **SCHEDULE 1**

**Potential Parties in Interest**

NAI-1522354801

**LTL Management LLC**
**Potentially Interested Parties**

**Debtor**

LTL Management LLC

**Direct Equity Owner of Debtor**

Johnson and Johnson Consumer Inc.

**Debtor's Direct Non-Debtor Subsidiary**

Royalty A&M LLC

**Other Non-Debtor Affiliates**

3Dintegrated ApS
Acclarent, Inc.
Actelion Ltd
Actelion Manufacturing GmbH
Actelion Pharmaceuticals Australia
    Pty. Limited
Actelion Pharmaceuticals Korea Ltd.
Actelion Pharmaceuticals Ltd
Actelion Pharmaceuticals Mexico
    S.A. De C.V.
Actelion Pharmaceuticals Trading
    (Shanghai) Co., Ltd.
Actelion Pharmaceuticals UK Limited
Actelion Pharmaceuticals US, Inc.
Actelion Registration Limited
Actelion Treasury Unlimited Company
Akros Medical, Inc.
Albany Street LLC
ALZA Corporation
Alza Land Management, Inc.
AMO (Hangzhou) Co., Ltd.
AMO (Shanghai) Medical Devices
    Trading Co., Ltd.
AMO ASIA LIMITED
AMO Australia Pty Limited
AMO Canada Company
AMO Denmark ApS
AMO Development, LLC
AMO France
AMO Germany GmbH

AMO Groningen B.V.
AMO International Holdings
AMO Ireland
AMO Ireland Finance Unlimited Company
AMO Italy SRL
AMO Japan K.K.
AMO Manufacturing Spain S.L.
AMO Manufacturing USA, LLC
AMO Netherlands BV
AMO Nominee Holdings, LLC
AMO Norway AS
AMO Puerto Rico Manufacturing, Inc.
AMO Sales and Service, Inc.
AMO Singapore Pte. Ltd.
AMO Spain Holdings, LLC
AMO Switzerland GmbH
AMO U.K. Holdings, LLC
AMO United Kingdom, Ltd.
AMO Uppsala AB
AMO US Holdings, Inc.
AMO USA Sales Holdings, Inc.
AMO USA, LLC
Animas Diabetes Care, LLC
Animas LLC
Animas Technologies LLC
AorTx, Inc.
Apsis
Aragon Pharmaceuticals, Inc.
Asia Pacific Holdings, LLC
Atrionix, Inc.
AUB Holdings LLC
Auris Health, Inc.
Backsvalan 2 Aktiebolag
Backsvalan 6 Handelsbolag
Beijing Dabao Cosmetics Co., Ltd.
BeneVir BioPharm, Inc.
Berna Rhein B.V.
BioMedical Enterprises, Inc.
Biosense Webster (Israel) Ltd.
Biosense Webster, Inc.
C Consumer Products Denmark ApS
Calibra Medical LLC
Campus-Foyer Apotheke GmbH

Carlo Erba OTC S.r.l.
Centocor Biologics, LLC
Centocor Research & Development, Inc.
ChromaGenics B.V.
Ci:Labo Customer Marketing Co., Ltd.
Ci:z. Labo Co., Ltd.
Cilag AG
Cilag GmbH International
Cilag Holding AG
Cilag Holding Treasury Unlimited Company
Cilag-Biotech, S.L.
CNA Development GmbH
Codman & Shurtleff, Inc.
Coherex Medical, Inc.
ColBar LifeScience Ltd.
Company Store.com, Inc.
Cordis de Mexico, S.A. de C.V.
Cordis International Corporation
Corimmun GmbH
CoTherix Inc.
CSATS, Inc.
Darlain Trading S.A.
Debs-Vogue Corporation
   (Proprietary) Limited
DePuy France
DePuy Hellas SA
DePuy International Limited
DePuy Ireland Unlimited Company
DePuy Mexico, S.A. de C.V.
DePuy Mitek, LLC
DePuy Orthopaedics, Inc.
DePuy Products, Inc.
DePuy Spine, LLC
DePuy Synthes Gorgan Limited
DePuy Synthes Institute, LLC
DePuy Synthes Leto SARL
DePuy Synthes Products, Inc.
DePuy Synthes Sales, Inc.
DePuy Synthes, Inc.
Dr. Ci:Labo Co., Ltd.
DR. CI:LABO COMPANY LIMITED
Dutch Holding LLC
ECL7, LLC
EES Holdings de Mexico,
   S. de R.L. de C.V.
EES, S.A. de C.V.

EIT Emerging Implant Technologies GmbH
Ethicon Biosurgery Ireland
Ethicon Endo-Surgery (Europe) GmbH
Ethicon Endo-Surgery, Inc.
Ethicon Endo-Surgery, LLC
Ethicon Holding Sarl
Ethicon Ireland Unlimited Company
Ethicon LLC
Ethicon PR Holdings Unlimited Company
Ethicon Sarl
Ethicon US, LLC
Ethicon Women's Health & Urology Sarl
Ethicon, Inc.
Ethnor (Proprietary) Limited
Ethnor del Istmo S.A.
Ethnor Farmaceutica, S.A.
Ethnor Guatemala, Sociedad Anomina
Finsbury (Development) Limited
Finsbury (Instruments) Limited
Finsbury Medical Limited
Finsbury Orthopaedics International Limited
Finsbury Orthopaedics Limited
FMS Future Medical System SA
GH Biotech Holdings Limited
Global Investment Participation B.V.
GMED Healthcare BV
Guangzhou Bioseal Biotech Co., Ltd.
Hansen Medical Deutschland GmbH
Hansen Medical International, Inc.
Hansen Medical UK Limited
Hansen Medical, Inc.
Healthcare Services (Shanghai) Ltd.
I.D. Acquisition Corp.
Innomedic Gesellschaft für innovative
   Medizintechnik und Informatik mbH
Innovalens B.V.
Innovative Surgical Solutions, LLC
J & J Company West Africa Limited
J&J Pension Trustees Limited
J.C. General Services BV
Janssen Alzheimer Immunotherapy
   (Holding) Limited
Janssen Biologics (Ireland) Limited
Janssen Biologics B.V.
Janssen BioPharma, Inc.
Janssen Biotech, Inc.

Janssen Cilag Farmaceutica S.A.
Janssen Cilag S.p.A.
Janssen Cilag SPA
Janssen Cilag, C.A.
Janssen de Mexico, S. de R.L. de C.V.
Janssen Development Finance
    Unlimited Company
Janssen Diagnostics, LLC
Janssen Egypt LLC
Janssen Farmaceutica Portugal Lda
Janssen Global Services, LLC
Janssen Group Holdings Limited
Janssen Holding GmbH
Janssen Inc.
Janssen Irish Finance Company UC
Janssen Korea Ltd.
Janssen Oncology, Inc.
Janssen Ortho LLC
Janssen Pharmaceutica
    (Proprietary) Limited
Janssen Pharmaceutica NV
Janssen Pharmaceutica S.A.
Janssen Pharmaceutical
Janssen Pharmaceutical K.K.
Janssen Pharmaceutical Sciences
    Unlimited Company
Janssen Pharmaceuticals, Inc.
Janssen Products, LP
Janssen R&D Ireland
Janssen Research & Development, LLC
Janssen Sciences Ireland
    Unlimited Company
Janssen Scientific Affairs, LLC
Janssen Supply Group, LLC
Janssen Vaccines & Prevention B.V.
Janssen Vaccines Corp.
Janssen-Cilag
Janssen-Cilag (New Zealand) Limited
Janssen-Cilag A/S
Janssen-Cilag AG
Janssen-Cilag Aktiebolag
Janssen-Cilag AS
Janssen-Cilag B.V.
Janssen-Cilag de Mexico S. de R.L. de C.V.
Janssen-Cilag Farmaceutica Lda.
Janssen-Cilag Farmaceutica Ltda.

Janssen-Cilag GmbH
Janssen-Cilag International NV
Janssen-Cilag Kft.
Janssen-Cilag Limited
Janssen-Cilag Limited
Janssen-Cilag Manufacturing, LLC
Janssen-Cilag NV
Janssen-Cilag OY
Janssen-Cilag Pharma GmbH
Janssen-Cilag Pharmaceutical S.A.C.I.
Janssen-Cilag Polska, Sp. z o.o.
Janssen-Cilag Pty Ltd
Janssen-Cilag S.A.
Janssen-Cilag s.r.o.
Janssen-Cilag, S.A.
Janssen-Cilag, S.A. de C.V.
Janssen-Pharma, S.L.
J-C Health Care Ltd.
Jevco Holding, Inc.
JJ Surgical Vision Spain, S.L.
JJC Acquisition Company B.V.
JJHC, LLC
JJSV Belgium BV
JJSV Manufacturing Malaysia SDN. BHD.
JJSV Norden AB
JJSV Produtos Oticos Ltda.
JNJ Global Business Services s.r.o.
JNJ Holding EMEA B.V.
JNJ International Investment LLC
JNJ Irish Investments ULC
Johnson & Johnson
Johnson & Johnson - Societa' Per Azioni
Johnson & Johnson (Angola), Limitada
Johnson & Johnson (China) Investment Ltd.
Johnson & Johnson (Egypt) S.A.E.
Johnson & Johnson (Hong Kong) Limited
Johnson & Johnson (Ireland) Limited
Johnson & Johnson (Jamaica) Limited
Johnson & Johnson (Kenya) Limited
Johnson & Johnson (Middle East) Inc.
Johnson & Johnson (Mozambique),
    Limitada
Johnson & Johnson (Namibia)
    (Proprietary) Limited
Johnson & Johnson (New Zealand) Limited
Johnson & Johnson (Philippines), Inc.

Johnson & Johnson (Private) Limited
Johnson & Johnson (Thailand) Ltd.
Johnson & Johnson (Trinidad) Limited
Johnson & Johnson (Vietnam) Co., Ltd
Johnson & Johnson AB
Johnson & Johnson AG
Johnson & Johnson Belgium
Finance Company BV
Johnson & Johnson Bulgaria EOOD
Johnson & Johnson China Ltd.
Johnson & Johnson Consumer
(Hong Kong) Limited
Johnson & Johnson Consumer
(Thailand) Limited
Johnson & Johnson Consumer B.V.
Johnson & Johnson Consumer
Holdings France
Johnson & Johnson Consumer Inc.
Johnson & Johnson Consumer NV
Johnson & Johnson Consumer
Saudi Arabia Limited
Johnson & Johnson Consumer Services
EAME Ltd.
Johnson & Johnson d.o.o.
Johnson & Johnson de Argentina
S.A.C. e. I.
Johnson & Johnson de Chile Limitada
Johnson & Johnson de Chile S.A.
Johnson & Johnson de Colombia S.A.
Johnson & Johnson de Costa Rica, S.A.
Johnson & Johnson de Mexico, S.A. de C.V.
Johnson & Johnson de Uruguay S.A.
Johnson & Johnson de Venezuela, S.A.
Johnson & Johnson del Ecuador, S.A.
Johnson & Johnson Del Paraguay, S.A.
Johnson & Johnson del Peru S.A.
Johnson & Johnson do Brasil Industria E
Comercio de Produtos Para Saude Ltda.
Johnson & Johnson Dominicana, S.A.S.
Johnson & Johnson Enterprise
Innovation Inc.
Johnson & Johnson European
Treasury Company
Johnson & Johnson Finance Corporation
Johnson & Johnson Finance Limited

Johnson & Johnson Financial
Services GmbH
Johnson & Johnson for Export and
Import LLC
Johnson & Johnson Foundation Scotland
(NON-PROFIT)
Johnson & Johnson Gateway, LLC
Johnson & Johnson Gesellschaft m.b.H.
Johnson & Johnson GmbH
Johnson & Johnson Guatemala, S.A.
Johnson & Johnson Health and
Wellness Solutions, Inc.
Johnson & Johnson Health Care
Systems Inc.
Johnson & Johnson Hellas Commercial and
Industrial S.A.
Johnson & Johnson Hellas Consumer
Products Commercial Societe Anonyme
Johnson & Johnson Hemisferica S.A.
Johnson & Johnson Holding GmbH
Johnson & Johnson Holdings K.K.
Johnson & Johnson Inc.
Johnson & Johnson Industrial Ltda.
Johnson & Johnson Innovation - JJDC, Inc.
Johnson & Johnson Innovation Limited
Johnson & Johnson Innovation LLC
Johnson & Johnson International
Johnson & Johnson International
(Singapore) Pte. Ltd.
Johnson & Johnson International Financial
Services Company
Johnson & Johnson Japan Inc.
Johnson & Johnson K.K.
Johnson & Johnson Kft.
Johnson & Johnson Korea Ltd.
Johnson & Johnson Korea Selling &
Distribution LLC
Johnson & Johnson Limitada
Johnson & Johnson Limited
Johnson & Johnson LLC
Johnson & Johnson Luxembourg Finance
Company Sarl
Johnson & Johnson Management Limited
Johnson & Johnson Medical (China) Ltd.
Johnson & Johnson Medical
(Proprietary) Ltd

Johnson & Johnson Medical (Shanghai) Ltd.

Johnson & Johnson Medical (Suzhou) Ltd.

Johnson & Johnson Medical B.V.

Johnson & Johnson Medical Devices & Diagnostics Group - Latin America, L.L.C.

Johnson & Johnson Medical GmbH

Johnson & Johnson Medical Korea Ltd.

Johnson & Johnson Medical Limited

Johnson & Johnson Medical Mexico, S.A. de C.V.

Johnson & Johnson Medical NV

Johnson & Johnson Medical Products GmbH

Johnson & Johnson Medical Pty Ltd

Johnson & Johnson Medical S.A.

Johnson & Johnson Medical S.p.A.

Johnson & Johnson Medical SAS

Johnson & Johnson Medical Saudi Arabia Limited

Johnson & Johnson Medical Servicios Profesionales S. de R.L. de C.V.

Johnson & Johnson Medical Taiwan Ltd.

Johnson & Johnson Medical, S.C.S.

Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi

Johnson & Johnson Middle East FZ-LLC

Johnson & Johnson Morocco Societe Anonyme

Johnson & Johnson Nordic AB

Johnson & Johnson Pacific Pty Limited

Johnson & Johnson Pakistan (Private) Limited

Johnson & Johnson Panama, S.A.

Johnson & Johnson Personal Care (Chile) S.A.

Johnson & Johnson Poland Sp. z o.o.

Johnson & Johnson Private Limited

Johnson & Johnson Pte. Ltd.

Johnson & Johnson Pty. Limited

Johnson & Johnson Research Pty Ltd

Johnson & Johnson Romania S.R.L.

Johnson & Johnson S.E. d.o.o.

Johnson & Johnson S.E., Inc.

Johnson & Johnson Sante Beaute France

Johnson & Johnson SDN. BHD.

Johnson & Johnson Services, Inc.

Johnson & Johnson Servicios Corporativos, S. de R.L. de C.V.

Johnson & Johnson Surgical Vision India Private Limited

Johnson & Johnson Surgical Vision, Inc.

Johnson & Johnson Taiwan Ltd.

Johnson & Johnson UK Treasury Company Limited

Johnson & Johnson Ukraine LLC

Johnson & Johnson Urban Renewal Associates

Johnson & Johnson Vision Care (Shanghai) Ltd.

Johnson & Johnson Vision Care Ireland Unlimited Company

Johnson & Johnson Vision Care, Inc.

Johnson & Johnson, S.A.

Johnson & Johnson, S.A. de C.V.

Johnson & Johnson, s.r.o.

Johnson & Johnson, s.r.o.

Johnson and Johnson (Proprietary) Limited

Johnson and Johnson Sihhi Malzeme Sanayi Ve Ticaret Limited Sirketi

JOM Pharmaceutical Services, Inc.

La Concha Land Investment Corporation

Latam International Investment Company Unlimited Company

Lifescan

McNeil AB

McNeil Consumer Pharmaceuticals Co.

McNeil Denmark ApS

McNeil Healthcare (Ireland) Limited

McNeil Healthcare (UK) Limited

McNeil Healthcare LLC

McNeil Iberica S.L.U.

McNeil LA LLC

McNEIL MMP, LLC

McNeil Nutritionals, LLC

McNeil Panama, LLC

McNeil Products Limited

McNeil Sweden AB

MDS Co. Ltd.

Medical Device Business Services, Inc.

Medical Devices & Diagnostics Global Services, LLC

Medical Devices International LLC
Medical Industrial do Brasil Ltda.
Medos International Sarl
Medos Sarl
MegaDyne Medical Products, Inc.
Menlo Care De Mexico, S.A. de C.V.
Mentor B.V.
Mentor Deutschland GmbH
Mentor Medical Systems B.V.
Mentor Partnership Holding
    Company I, LLC
Mentor Texas GP LLC
Mentor Texas L.P.
Mentor Worldwide LLC
Micrus Endovascular LLC
Middlesex Assurance Company Limited
Momenta Ireland Limited
Momenta Pharmaceuticals, Inc.
NeoStrata Company, Inc.
NeoStrata UG (haftungsbeschränkt)
Netherlands Holding Company
Neuravi Inc.
Neuravi Limited
NeuWave Medical, Inc.
Novira Therapeutics, LLC
NuVera Medical, Inc.
Obtech Medical Mexico, S.A. de C.V.
OBTECH Medical Sarl
OGX Beauty AU Pty Ltd
OGX Beauty Limited
OMJ Holding GmbH
OMJ Ireland Unlimited Company
OMJ Pharmaceuticals, Inc.
Omrix Biopharmaceuticals Ltd.
Omrix Biopharmaceuticals NV
Omrix Biopharmaceuticals, Inc.
Ortho Biologics LLC
Ortho Biotech Holding LLC
Ortho-McNeil Pharmaceutical, LLC
Orthotaxy
Patriot Pharmaceuticals, LLC
Peninsula Pharmaceuticals, LLC
Penta Pty. Limited
Percivia LLC
Perouse Plastie
Pharmadirect Ltd.

Pharmedica Laboratories (Proprietary)
    Limited
PMC Holdings G.K.
Princeton Laboratories, Inc.
Productos de Cuidado Personal y de La
    Salud de Bolivia S.R.L.
Proleader S.A.
PT Integrated Healthcare Indonesia
PT. Johnson & Johnson Indonesia
Pulsar Vascular, Inc.
Regency Urban Renewal Associates
RespiVert Ltd.
RoC International
Rutan Realty LLC
Scios LLC
Sedona Enterprise Co., Ltd.
Sedona Singapore International Pte. Ltd.
Sedona Thai International Co., Ltd.
Serhum S.A. de C.V.
Shanghai Elsker For Mother & Baby
    Co., Ltd
Shanghai Johnson & Johnson Ltd.
Shanghai Johnson & Johnson
Pharmaceuticals Ltd.
Sightbox, LLC
Sodiac ESV
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability
    Partnership
Spine Solutions GmbH
SterilMed, Inc.
Sterilmed, Inc.
Surgical Process Institute Deutschland
    GmbH
Synthes Costa Rica S.C.R., Limitada
SYNTHES GmbH
Synthes GmbH
Synthes Holding AG
Synthes Holding Limited
SYNTHES Medical Immobilien GmbH
Synthes Medical Surgical Equipment &
    Instruments Trading LLC
Synthes Produktions GmbH
Synthes Proprietary Limited
Synthes S.M.P., S. de R.L. de C.V.

Synthes Tuttlingen GmbH
Synthes USA Products, LLC
Synthes USA, LLC
Synthes, Inc.
TARIS Biomedical LLC
TearScience, Inc.
The Anspach Effort, LLC
The Vision Care Institute, LLC
Tibotec, LLC
Torax Medical, Inc.
TriStrata, Incorporated
UAB "Johnson & Johnson"
Vania Expansion
Verb Surgical Inc.
Vision Care Finance Unlimited Company
Vogue International LLC
Vogue International Trading, Inc.
WH4110 Development Company, L.L.C.
Xian Janssen Pharmaceutical Ltd.
XO1 Limited
Zarbee's, Inc.

**Managers and Officers of the Debtor**

John Kim
Richard Dickinson
Robert Wuesthoff
Russell Deyo

**Major Current Business Affiliations of
Debtor's Managers**

American Foundation for Opioid
    Alternatives
Lawyers for Civil Justice
Migration Policy Institute
Miller Center for Community Protection &
    Reliance, Eagleton Institute of Politics,
    Rutgers University
National Center for State Courts
National Council, McLean Hospital
New Jersey Civil Justice Institute
One Mind

**Depository and Disbursement Banks**

Bank of America, N.A.

**Major Sureties**

Chubb
Federal Insurance Company
Liberty Mutual Insurance Company
Travelers Casualty and Surety Company of
    America

**Parties to Material Contracts with the
Debtor**

Johnson & Johnson
Johnson & Johnson Consumer Inc.
Johnson & Johnson Services, Inc.
U.S. Bank N.A.

**Significant Co-Defendants in Talc-
Related Litigation**

3M Company
A.O. Smith Corporation
Albertsons Companies, Inc.
Avon Products, Inc.
Barretts Minerals, Inc.
BASF Catalysts LLC
Block Drug Company, Inc.
Borg Warner Morse Tec, Inc.
Brenntag North America
Brenntag Specialties, Inc.
Bristol-Myers Squibb Company
Carrier Corporation
Chanel, Inc.
Charles B. Chrystal Co., Inc.
Chattem, Inc.
Colgate-Palmolive Company
Conopco Inc.
Costco Wholesale Corporation
Coty, Inc.
Crane Co.
CVS Health Corporation
CVS Pharmacy, Inc.
Cyprus Amax Minerals Company
Cyprus Mines Corporation
Dana Companies, LLC
DAP Products, Inc.
Dollar General Corporation
Duane Reade Inc.

Eaton Corporation
Eli Lilly and Company
Elizabeth Arden, Inc.
Estee Lauder Inc.
Family Dollar Stores Inc.
Flowserve US, Inc.
FMC Corporation
Food 4 Less of California, Inc.
Ford Motor Company
Foster Wheeler, LLC
Gardner Denver, Inc.
General Electric Company
Genuine Parts Company
Goodyear Tire & Rubber Co.
Goulds Pumps, LLC
Grinnell LLC
Honeywell International, Inc.
Imerys Talc America, Inc.
Imerys USA, Inc.
IMO Industries Inc.
John Crane, Inc.
K&B Louisiana Corporation
Kaiser Gypsum Company, Inc.
Kmart Corporation
Kolmar Laboratories
Longs Drug Stores California
L'Oreal USA, Inc.
Lucky Stores, Inc.
Macy's, Inc.
Mary Kay Inc.
Maybelline LLC
Metropolitan Life Insurance Company
Noxell Corporation
Personal Care Products Council
Pfizer, Inc.
Pharma Tech Industries, Inc.
Pneumo Abex, LLC
PTI Royston, LLC
Publix Super Markets, Inc.
R.T. Vanderbilt Holding Company, Inc.
Ralphs Grocery Company
Revlon Consumer Products Corporation
Revlon, Inc.
Rite Aid Corporation
Safeway, Inc.
Sanofi-Aventis U.S. LLC

Shulton, Inc.
Specialty Minerals Inc.
Target Corporation
The Dow Chemical Company
The Estee Lauder Companies, Inc.
The Kroger Co.
The Procter & Gamble Company
Thrifty Payless, Inc.
Unilever Home & Personal Care USA
Union Carbide Corporation
Vanderbilt Minerals, LLC
ViacomCBS, Inc.
Walgreen Co.
Walmart, Inc.
Warren Pumps, LLC
Whittaker Clark & Daniels, Inc.
Wyeth Holdings LLC
Yves Saint Laurent America, Inc.

**Debtors' Retained Professionals and
Claims Agent**

AlixPartners LLP
Bates White LLC
Epiq Corporate Restructuring LLC
Jones Day
King & Spalding LLP
McCarter & English, LLP
Rayburn Cooper & Durham, P.A.
Shook, Hardy & Bacon L.L.P.
Weil Gotshal & Manges LLP

**Debtors' Significant Ordinary Course
Professionals, Consultants, and Service
Providers**

Adler Pollock & Sheehan PC
Bailey Glasser LLP
Barnes & Thornburg, LLP
Barrasso Usdin Kupperman
    Freeman & Sarver, L.L.C.
Blake, Cassels & Graydon LLP
Blank Rome LLP
Brown Greer PLC
Butler Snow LLP
Carlton Fields, P.A.

Chehardy, Sherman, Williams,
    Recile, & Hayes
Covington & Burling LLP
Damon Key Leong Kupchak Hastert
Davis Hatley Haffeman & Tighe
Dechert LLP
Elliott Law Offices, PA
Faegre Drinker Biddle & Reath LLP
Foliart, Huff, Ottaway & Bottom
Gibson, Dunn & Crutcher LLP
Goldman Ismail Tomaselli Brennan &
    Baum
Hartline Barger
HeplerBroom LLC
Irwin Fritchie Urquhart & Moore LLC
Johnson & Bell Ltd.
Jones, Skelton & Hochuli, P.L.C.
Kaplan, Johnson, Abate & Bird LLP
Kelley Jasons McGowan Spinelli
    Hanna & Reber, LLP
Kirkland & Ellis LLP
Kitch Drutchas Wagner
    Valitutti & Sherbrook
Lewis Brisbois Bisgaard & Smith, LLP
Manion Gaynor & Manning LLP
Miles & Stockbridge
Milligan & Herns
Morgan Lewis
Nelson Mullins Riley & Scarborough, LLP
Nutter McClennen & Fish LLP
Orrick, Herrington, & Sutcliffe, LLP
Patterson Belknap Webb & Tyler LLP
Proskauer Rose LLP
Quattlebaum, Grooms & Tull PLLC
Schnader Harrison Segal & Lewis
Schwabe Williamson & Wyatt
Sidley Austin LLP
Skadden, Arps, Slate, Meager & Flom LLP
Stoel Rives LLP
Sullivan Whitehead & Deluca LLP
Swartz Campbell LLC
The Weinhardt Law Firm
Tucker Ellis LLP
Willcox & Savage, P.C.

**Known Professionals for Certain
Non-Debtor Parties in Interest**

Cravath, Swaine & Moore
White & Case LLP

**Material Potentially Indemnified Parties**

Bausch Health Companies Inc.
Cyprus Mines Corporation
Cyprus Talc Corp.
Imerys Talc America, Inc.
Imerys Talc Vermont, Inc.
Luzenac America, Inc.
Pharma Tech Industries, Inc.
PTI Royston, LLC
Rio Tinto America, Inc.
RTZ America, Inc.
Valeant Pharmaceuticals International, Inc.
Windsor Minerals Inc.
Costco Wholesale Corporation
Publix Super Markets, Inc.
Rite Aid Corporation
Safeway Inc.
Walmart Inc.

**Law Firms with Significant
Representations of Talc Claimants**

Arnold & Itkin LLP
Ashcraft & Gerel, LLP
Aylstock, Witkin, Kreis & Overholtz, PLLC
Barnes Firm
Beasley Allen Law Firm
Cellino Law LLP
Dalimonte Rueb Stoller, LLP
Dean Omar Branham Shirley, LLP
Driscoll Firm, LLC
Fears Nachawati Law Firm
Ferraro Law Firm
Flint Law Firm LLC
Golomb Spirit Grunfeld, P.C.
Honik LLC
Johnson Law Group
Karst & von Oiste LLP
Kazan, McClain, Satterly
    & Greenwood PLC

Lanier Law Firm
Levy Konigsberg LLP
Maune Raichle Hartley French &
   Mudd, LLC
Miller Firm, LLC
Motley Rice LLC
Napoli Shkolnik PLLC
OnderLaw, LLC
Simmons Hanly Conroy LLC
Simon Greenstone Panatiere
   Bartlett, PC
The Gori Law Firm
Trammell PC
Weitz & Luxenberg, P.C.
Williams Hart Law Firm

**Key Parties in _Imerys Talc America, Inc._
and _Cyprus Mines Corp. Chapter 11 Cases_**

Cyprus Amax Minerals Company
Cyprus Mines Corporation
Cyprus Talc Corporation
Imerys S.A.
Imerys Talc America, Inc.
Imerys Talc Vermont, Inc.
   (fka Windsor Minerals Inc.)
James L. Patton
Luzenac America, Inc.
Official Committee of Tort Claimants
   (_In re Imerys Talc America, Inc._)
Official Committee of Tort Claimants
   (_In re Cyprus Mines Corp._)
Roger Frankel

**Debtor's Insurers**

A.G. Securitas
ACE Property & Casualty Insurance
   Company
Aetna Casualty and Surety Company
Affiliated FM Ins. Company
AIG Europe S.A.
AIG Property and Casualty Company
AIU Ins. Company
Allianz Ins. Company

Allianz Global Risks US Insurance
   Company
Allstate Insurance Company
American Centennial Ins. Company
American Motorists Ins. Company
American Re-Insurance Company
Arrowood Indemnity Company
ASR Schadeverzekering N.V.
Assurances Generales De France
Assurantiekantoor VanWijk & Co.
Atlanta International Insurance Company
Birmingham Fire Ins. Company of
   Pennsylvania
Central National Ins. Company of Omaha
Century Indemnity Company
Champion Dyeing Allocation Year
Chubb
City Ins. Company
Colonia Versicherungs AG, Koln
Continental Insurance Company
Darag Deutsche Versicherungs-Und
   Rückversicherungs-AG
Drake Ins. Company of New York
Employers Ins. Company of Wausau
Employers Ins. of Wausau
Employers Mutual Casualty Company
Eurinco Allgemeine
   Versicherungs AG, Dusseldorf
Everest Reinsurance Company
Fireman's Fund Ins. Company
First State Ins. Company
GAP
Gibraltar Casualty Company
Granite State Ins. Company
Great American
Great Northern Ins. Company
Great Southwest Fire Ins. Company
Groupe Drouot
Harbor Ins. Company
Hartford Accident and Indemnity Company
Home Ins. Company
Ideal Mutual Ins. Company
Industrial Indemnity Company
Ins. Company of North America
Ins. Company of the State of Pennsylvania
Ins. Corporation of Singapore Limited

Integrity Ins. Company
International Ins. Company
International Surplus Lines Ins. Company
Lexington Ins. Company
London Guarantee and Accident
  Company of N.Y.
L'Union Atlantique S.A. d'Assurances
Mead Reinsurance Corporation
Middlesex Assurance Company
Midland Ins. Company
Midstates Reinsurance Corp.
Mission Ins. Company
Mission National Ins. Company
Munich Reinsurance America, Inc.
Mutual Fire, Marine, & Inland Ins.
  Company
N.V. De Ark
N.V. Rotterdamse Assurantiekas
N.V. Schadeverzekeringsmaatschappij
  Maas Lloyd
National Casualty Company
National Union Fire Ins. Company of
  Pittsburgh, PA
Nationwide
New Hampshire Ins. Company
North River Ins. Company
Northbrook Excess and Surplus
  Ins. Company
Northeastern Fire Ins. Company
  of Pennsylvania
Pacific Employers Ins. Company
ProSight
Prudential Reinsurance Company
Puritan Insurance Company
Republic Indemnity Company of America
Republic Ins. Company
Republic Western Ins. Company
Repwest Insurance Company
Resolute Management Inc.
Rheinland Versicherungen
Rheinland Verzekeringen
Riverstone Insurers
Royal Belge I.R., S.A. d'Assurances
Royal Indemnity Company
Royal Ins. Company
Safety Mutual Casualty Corporation

Safety National Casualty Corporation
Seguros La Republica SA
Sentry Insurance A Mutual Company
Southern American Ins. Company
Starr Indemnity & Liability Company
TIG Insurance Company
Transamerica Premier Insurance Company
Transit Casualty Company
Travelers Casualty and Surety Company
UAP
Union Atlantique d'Assurances S.A.
Union Indemnity Ins. Company
  of New York
Westchester Fire Insurance Company
Westport Insurance Corporation
XL Ins. Company

**Employees of the Bankruptcy
Administrator's Office for the Western
District of North Carolina**

Alexandria Kenny
Anne Whitley
David Shepherd
Katrina Adams
Sarah Scholz
Shelley K. Abel

**Bankruptcy Judges for the Western
District of North Carolina**

Judge George Hodges
Judge J. Craig Whitley
Judge Laura T. Beyer

## Bankruptcy Rule 2002 Appearances[1]

AIG Europe S.A. (as successor in interest to
    Union Atlantique d'Assurances S.A)
AIG Property Casualty Company (f/k/a
    Birmingham Fire Insurance Company of
    Pennsylvania)
AIU Insurance Company
Wanda Allen
Allstate Insurance Company, as successor in
    interest to Northbrook Excess & Surplus
    Insurance Company, formerly
    Northbrook Insurance Company
Atlanta International Insurance Company (as
    successor in interest to Drake Insurance
    Company)
Arnold & Itkin LLP
ASR Schadeverzekering N.V. (as successor
    in interest to Assurantiekoor Van Wijk
    & Co.)
Aylstock, Witkin, Kreis & Overholtz, PLLC
Barnes Law Group
Bausch Health Americas, Inc. f/k/a Valeant
    Pharmaceuticals International
Bausch Health Companies Inc. f/k/a Valeant
    Pharmaceuticals International, Inc.
Bausch Health US, LLC f/k/a Valeant
    Pharmaceuticals North America LLC
Bestwall LLC
Blue Cross Blue Shield Association
Blue Cross Blue Shield of Massachusetts,
    Inc
Edna Brown
Barbara Busch
Beatriz Cabeza
Monica Cambron
Tarshwa Carter
Bridget Coates
Cohen, Placitella & Roth P.C.
Lillian Cohn-Sharon
The Continental Insurance Company
Elaine Cook
Cyprus Amax Minerals Company

Cyprus Mines Corporation
Gloria Davis
Dawn Dispensa
Patricia Dunbar
Fears Nachawati PLLC
Ann Frye-Moragne
Debra Fugiel
Victoria Gomes
Granite State Insurance Company
Andrea Harris
Charlette Hein
Tabitha Henry
Christine Hodge
Darlene Holland
Imerys Talc America, Inc.
Imerys Talc Canada Inc.
Imerys Talc Vermont, Inc.
The Insurance Company of the State of
    Pennsylvania
Johnson & Johnson
Johnson & Johnson Consumer Inc.
Voncile Jones
Amanda Joyce
Kazan, McClain, Satterley &
    Greenwood, PLLC
Shelly King
Mildred Kirk-Brown
Julie Lamore
Susan Leach
Mary Leinen
Levy Konigsberg LLP
Lexington Insurance Company
Jo Ellen Luster
Nancy Lyman
Massey & Gail LLP
Bernadette McGinnis
Pamela Morrill
National Union Fire Insurance Company of
    Pittsburgh, Pa.
New Hampshire Insurance Company
The North River Insurance Company
N.V. Schadeverzekeringsmaatschappij Maas
    Lloyd (individually and as successor in

---

[1]     Where a Bankruptcy Rule 2002 appearance was filed by counsel on behalf of clients, the clients have been
    listed herein to the extent identified and where certain clients have not been identified, the filing counsel is
    listed, to the extent not otherwise listed herein.

interest to policies subscribed in favor of
Johnson & Johnson by N.V.
Rotterdamse Assurantiekas, n/k/a De
Ark)

Kathleen O'Halloran

Lisa O'Neal

OnderLaw, LLC

The Plaintiffs Steering Committee in the In
re: Johnson & Johnson Talcum Powder
Products Marketing, Sales Practices and
Precuts Liability Multi-District
Litigation

RheinLand Versicherungen (as successor in
interest only to the subscriptions of the
former Dutch company Rheinland
Verzekeringen)

Rio Tinto America Inc.

Cora Robinson

Robinson Calcagnie, Inc.

Lisa Sabatine

Maraldine Schmidt

Valerie Schultz

Isabel Spano

Starr Indemnity & Liability Company (as
successor in interest to Republic
Insurance Company)

State of Texas, Attorney General of Texas

Three Crowns Insurance Company

Christine Torres

Travelers Casualty and Surety Company
(f/k/a The Aetna Casualty and Surety
Company)

May Virata

Waldrep Wall Babcock & Bailey PLLC

Westchester Fire Insurance Company

Sharon Wildman

Oshunna Williams

# SCHEDULE 2

## AlixPartners' Disinterestedness

In connection with the proposed employment and retention of AlixPartners, LLP ("AlixPartners") by the Debtor in this Chapter 11 Case, AlixPartners undertook a complex process, the details of which are set forth below, to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor's estate.

AlixPartners Holdings, LLP, AlixPartners' parent company ("Holdings"), directly or indirectly owns the subsidiaries AlixPartners, AP Services, AlixPartners International, Inc., and other operating entities (collectively, the "Holdings Enterprise"). The equity capital of Holdings is owned by the following investors:

(i)     Lakeview Capital Holdings, Inc., the Jay Alix Living Trust and other trusts established by Jay Alix (collectively the "Lakeview Parties");

(ii)    Caisse de dépôt et placement du Québec ("CDPQ");

(iii)   Investcorp Holdings B.S.C. ("IVC");

(iv)    Public Sector Pension Investment Board ("PSP"); and

(v)     current and certain former Managing Directors of AP (as defined below) and their individual and family trusts, as well as certain other individuals, including current members of the Boards (as hereinafter defined) and employees of the Lakeview Parties, and their individual and family trusts.

(Collectively, (i) – (v) above are hereinafter referred to as the "Investors", and the subset (ii) – (iv) above are hereinafter referred to as the "Institutional Investors").

Holdings and AlixPartners, each have a board of directors (together, the "Boards"). No individual or entity controls either of the Boards.  Designees of each of the Investors (i) – (iv) above serve as members of the Boards. The Holdings Enterprise does not invest in distressed assets of any class, nor does it have any investment affiliates.

CDPQ is one of Canada's largest institutional investment managers.  It manages investments on behalf of most of Quebec Canada's public and parapublic pension and insurance funds. CDPQ invests globally in numerous industries.

IVC is a leading global provider and manager of alternative investment products.

PSP is one of Canada's largest pension investment managers. It invests funds for the pension plans of the Public Service, the Canadian Armed Forces, the Royal Canadian Mounted Police and the Reserve Force. PSP manages a diversified global portfolio in numerous industries throughout the world.

The Lakeview Parties and related entities are entities owned or controlled by Jay Alix that, among other things, make investments on behalf of Mr. Alix and his family.

In addition to their investments in Holdings, the Institutional Investors have substantial investments unrelated to AlixPartners.

The Boards are not involved in the delivery of client services and their members do not have access to client files, except for a minority of members of the Boards that are AlixPartners employees. As a precautionary matter, AlixPartners maintains information barriers and guidelines designed to prevent certain confidential client information, including the names of clients likely to be involved in a not-yet-filed case under the Bankruptcy Code, from being shared with the Investors or their designees on the Boards.

To that end, no material nonpublic information about the Debtor (including, before the filing of this Chapter 11 Case, the fact that AlixPartners was about to undertake an assignment involving the Debtor) has been or will be furnished by AlixPartners to the Investors or their Board designees, and AlixPartners will continue to abide by its confidentiality obligations to the Debtor. Each Investor is independent of each other Investor and is governed by its own board of directors or similar body and managed by its own management team.  AlixPartners operates independently and does not share employees, officers or other management with any of the Investors. AlixPartners and each of the Investors have separate offices in separate buildings, use separate internet email addresses, and do not otherwise share IT systems.

AlixPartners has one database where connections are stored for all entities in the Holdings Enterprise. The process for the preparation of disclosures is as follows: upon receipt of a potential parties in interest list from Debtor and/or their representatives (the "Parties in Interest List"), all such parties are input to the database by team members familiar with the database.  A report of the "hits" is generated, and the team members review those "hits" for connections. Where there is a connection, a disclosure is drafted. After the team completes draft disclosures, the disclosures are reviewed by an in-house bankruptcy attorney. The attorney coordinates with the team to finalize the disclosures, which are then reviewed by the engagement AlixPartners managing director. These initial disclosures (the "Initial Disclosures") are thereafter filed with the Bankruptcy Court as part of the retention pleadings.

Promptly thereafter, a bankruptcy paralegal in the firm uses the Initial Disclosures and the Parties in Interest List to draft a firmwide email for each bankruptcy filing, including the Debtor's case. This email is sent to every firm employee as well as the members of the Boards and the Lakeview Parties.  The firmwide email requests each recipient to review the attached file that includes the parties in interest and corresponding disclosures, and  asks that every recipient: (a) contact the legal department in the event that they have a connection or relationship with an interested party that is not included in our disclosures; (b) if they have a connection or relationship with an interested party that is included in our disclosures, confirm that it is accurately described; and (c) contact the legal department if they own securities of the debtor (if applicable). Members of the legal team review all

email responses and draft any supplemental disclosures appropriate to reflect information received in response to the firmwide email. After the review process described in the immediately preceding paragraph, supplemental disclosures are thereafter filed with the Bankruptcy Court.

After the Initial Disclosures are filed with the Bankruptcy Court, AlixPartners also provides the names of the Debtor, their owners/investors, lenders and, on a case-by-case basis, other named entities (collectively, the "Investor Search Parties"), to the Institutional Investors, and requests that each Institutional Investor run a check of the Investor Search Parties across all investment portfolios including, upon reasonable investigation, (i) private and public funds, (ii) loan positions, and (iii) known positions across CLO holdings (all of the foregoing subject to the exceptions listed below, the "Investor Connections Check"). The exceptions to the Investor Connections Check are (i) investments over which the Institutional Investors do not possess actual investment authority and discretion ("direct control"), (ii) index replication position, (iii) investments owned in separate accounts managed by independent parties not affiliated with the Institutional Investors, and (iv) pooled investment vehicles in which the Institutional Investors do not exercise actual control or in which the Institutional Investors do not have visibility sufficient to ascertain such vehicle's investments. Members of the legal team review all responses received from the Institutional Investors and draft disclosures appropriate to reflect information received from the Institutional Investors that, following review, are filed with the Bankruptcy Court.

Upon receipt of the responses from the Institutional Investors to the Investor Connections Check, AlixPartners will file any supplemental disclosures which may be required.

To the extent AlixPartners learns of connections that are not included herein, AlixPartners will promptly file a supplemental disclosure.

Further, AlixPartners may have had, currently have or may in the future have business relationships with, among other entities, portfolio companies of the Institutional Investors and portfolio companies of private equity funds in which they are limited partners, in matters unrelated to the Debtor or its affiliates in this chapter 11 case. Based on, among other things, the business separation between each of the Investors and AlixPartners, the contractual client confidentiality obligations of AlixPartners and the information barriers referred to above, AlixPartners believes that it does not hold or represent an interest adverse to the estate with respect to any such engagement.

Other than as specifically noted herein, AlixPartners has not undertaken to determine the existence, nature, and/or full scope of any business relationships or connections that the Investors may have with the Investor Search Parties, the Debtor and its affiliates, and other parties in interest in this Chapter 11 Case.

Specifically, AlixPartners obtained from the Debtor and/or its representatives the Parties in Interest List, which is attached hereto as Schedule 1 and conducted a search for connections in accordance with the procedures set forth above.

AlixPartners represents that, to the best of its knowledge, it knows of no fact or situation that would represent a conflict of interest, cause it not to be disinterested or hold or represent an interest adverse to the Debtor's estate, and furthermore wishes to the disclose the following with respect to the Holdings Enterprise (collectively, "AP", unless otherwise noted):

- AP interacts with U.S. Bankruptcy Court judges, representatives of the U.S. Trustee Program, and Bankruptcy Administrators regularly in its capacity as a professional consulting firm that offers turnaround and restructuring services.

- AP has issued debt in the form of a USD-denominated senior secured term loan, and a Euro-denominated senior secured term loan (collectively, the "Term Loans"), as well as a Revolving Credit Facility.

  Bank of America, N.A. serves as the Administrative Agent for the Term Loans and the Revolving Credit Facility and as such manages all trading of the Term Loans and Revolving Credit Facility between investors. Many of the holders of the Term Loans are pools organized by banks, mutual fund management companies and other fund managers (collectively, "Fund Managers") who pool debt instruments issued by multiple / different borrowers and offer interests in the pools to investors. The identities of the investors in the pools cannot be ascertained by AP. The Term Loans are actively traded. Thus, the list of Fund Managers and other investors directly holding the Term Loans can become outdated quickly. On a monthly basis, AP reviews the list of investors in the Term Loans for the purpose of making relationship disclosures in chapter 11 cases. As of the last monthly report, no Fund Manager or other investor in the Term Loans held greater than 10% of the combined US-denominated and Euro-denominated Term Loans. In the event that any entity accumulates a 10% or greater interest in the combined US-denominated and Euro-denominated Term Loans, AP will disclose the name of such entity.

  The participants in the Revolving Credit Facility are Bank of America, N.A., Credit Suisse, Deutsche Bank AG Host Bank, Goldman Sachs Lending Partners LLC, HSBC Bank USA, NA, and JPMorgan Chase Bank N.A.

- The Internal Revenue Service ("IRS") is a current and former AP client in matters unrelated to the Debtor. The IRS is a vendor, adverse party, professional in interest, related party, litigation party, and taxing authority to current and former AP clients in matters unrelated to the Debtor. The IRS is a former employer of current AP employees.

- The United States Department of Justice ("DOJ"), including the United States Attorney General's Office, is a current and former client of AP in matters unrelated to the Debtor. The DOJ has also been an adverse party and client to current and former AP clients in matters unrelated to the Debtor.

NAI-1522354801

- AP follows a practice to solicit from its institutional investors their connections to certain parties independent of AP.  In response, the foregoing have offered the following disclosures:
    - o        BofA is a lender to an AP investor or one of its affiliates.
    - o        Blue Cross Blue Shield is a vendor to an AP investor.
    - o        Chubb is a vendor to an AP investor or one of its affiliates.
    - o        Faegre Drinker provides legal services to an AP investor or one of its affiliates.
    - o        McCarter & English is a legal services provider to an AP investor or one of its affiliates.
    - o        An AP investor or one of its affiliates is involved in a litigation matter unrelated to this chapter 11 case in which Proskauer is opposing counsel.
    - o        Transamerica is a vendor to an AP investor or one of its affiliates.
    - o        US Bank is a vendor to an AP investor or one of its affiliates.

- 3M Company ("3M"), a significant co-defendant to the Debtor in talc-related litigation, is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.  3M is a current AP client in matters unrelated to the Debtor.  3M is a former employer of a current AP employee.

- A.O. Smith Corporation, a significant co-defendant to the Debtor in talc-related litigation is an adverse litigation party and litigation party to former AP clients in matters unrelated to the Debtor.

- ACE Property & Casualty Insurance Company, an insurer to the Debtor, and affiliates ("Ace") are adverse litigation parties, affiliates, bondholders, litigation parties, lenders and lienholders to current and former AP clients in matters unrelated to the Debtor.  Ace is a current AP client in matters unrelated to the Debtor.  AP has a group insurance program in place for all US managing directors and AP board members under which personal excess liability (umbrella) insurance may be purchased from Chubb, an affiliate of ACE, Westchester Fire Insurance Company and Westchester Surplus, at group rates.

- Aetna Casualty and Surety Company, an insurer to the Debtor, and affiliates ("Aetna") are adverse litigation parties and shareholders to current and former AP clients in matters unrelated to the Debtor.

- AIG Europe S.A., AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A), AIG Property and Casualty Company and AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania, insurers and parties in interest to the Debtor, and affiliates ("AIG"), are litigation parties, adverse litigation parties, bondholders, lessors, lenders, and director-affiliated companies to current and former AP clients in matters unrelated to the Debtor.  AIG is a current and former AP client in matters unrelated to the Debtor.  AIG is a former employer of current AP employees.  AIG is an insurance provider to AP.  Illinois National Insurance Company, an affiliate of AIG, is a former insurance provider to AP and former litigant against AP.

NAI-1522354801

- AIU Insurance Company, an insurer and party in interest to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Albertsons Companies Inc. a significant co-defendant to the Debtor in talc-related litigation, is a litigation party, related party, investor, lessee and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Allianz Ins. Company and Allianz Global Risks US Insurance Company, insurers to the Debtor, and affiliates ("Allianz"), are adverse litigation parties, bondholders, shareholders, lienholders, lenders and lessors to current and former AP clients in matters unrelated to the Debtor. Allianz is a current and former AP client in matters unrelated to the Debtor. Allianz is a former employer of current AP employees. Allianz is an insurance provider to AP. Allianz is a vendor to AP.

- Allstate Insurance Company and Allstate Insurance Company, as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company, insurers and parties in interest to the Debtor, are litigation parties, adverse litigation parties, bondholders, lenders and lienholders to current and former AP clients in matters unrelated to the Debtor.

- American Re-Insurance Company, an insurer to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Arnold & Itkin LLP, a law firm with significant representation of talc claimants and parties in interest to the Debtor, is a litigation party and opposing counsel to current AP clients in matters unrelated to the Debtor.

- Arrowood Indemnity Company, an insurer to the Debtor, is a shareholder, lender and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Asia Pacific Holdings, LLC, a non-debtor affiliate to the Debtor, and affiliates ("Asia Pacific") are litigation parties to a former AP client in matters unrelated to the Debtor.

- Bailey Glasser LLP ("Bailey Glasser"), counsel to the official talc claimants' committee, is counsel and a professional to current and former AP clients in matters unrelated to the Debtor. Bailey Glasser is a current and former AP client in matters unrelated to the Debtor. Bailey Glasser is a vendor to AP.

- Bank of America, N.A., a depository and disbursement bank to the Debtor, and affiliates, ("BofA"), are shareholders, bondholders, lienholders, litigation parties, adverse litigation parties, lenders, professionals, lessees, lessors and investors to current and former AP clients in matters unrelated to the Debtor. BofA is a current and former AP client in matters unrelated to the Debtor. BofA is a former employer of current AP employees. A current employee of AP that is an attorney in AP's Legal Department was previously employed by a law firm where Bank of America was a primary client. BofA is a vendor to AP.

- Barnes & Thornburg, LLP, an ordinary course professional in this bankruptcy case, is a professional, counsel, opposing counsel and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Barnes & Thornburg is a current and former AP client in matters unrelated to the Debtor.

- BASF Catalysts LLC, a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("BASF") are litigation parties, adverse litigation parties and lessors to current and former AP clients in matters unrelated to the Debtor. BASF is a former employer of a current AP employee.

- Bates White LLC, a professional in this bankruptcy case, is a professional to current AP clients in matters unrelated to the Debtor.

- Beasley Allen Law Firm, a law firm with significant representation of talc claimants, is opposing counsel to current AP clients in matters unrelated to the Debtor.

- Blake Cassels & Graydon LLP ("Blake Cassels"), an ordinary course professional in this bankruptcy case, is counsel and a professional to current and former AP clients in matters unrelated to the Debtor. Blake Cassels is a current AP client in matters unrelated to the Debtor.

- Blank Rome LLP ("Blank Rome"), an ordinary course professional in this bankruptcy case, is a litigation party, adverse litigation party, counsel, opposing counsel and professional to current and former AP clients in matters unrelated to the Debtor. Blank Rome is a current and former AP client in matters unrelated to the Debtor.

- Blue Cross Blue Shield Association and Blue Cross Blue Shield of Massachusetts, Inc, parties in interest to the Debtor, and affiliates ("Blue Cross Blue Shield"), are bondholders, litigation parties, adverse litigation parties, lienholders, lessors, investors, lenders, professionals and director-affiliated companies to current and former AP clients in matters unrelated to the Debtor. Blue Cross Blue Shield is a current and former AP client in matters unrelated to the Debtor. Blue Cross Blue Shield is a former employer of current AP employees.

- Bristol-Myers Squibb Company ("Bristol-Myers"), a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party to a current AP client in matters unrelated to the Debtor. Bristol-Myers is a former AP client in matters unrelated to the Debtor. Bristol-Myers is former employer of a current AP employee.

- Butler Snow LLP, an ordinary course professional in this bankruptcy case, is a professional to current and former AP clients in matters unrelated to the Debtor.

- Century Indemnity Company, an insurer to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Chanel, Inc., a significant co-defendant to the Debtor in talc-related litigation, is a former employer of a current AP employee.

- Chehardy, Sherman, Williams, Recile, & Hayes, an ordinary course professional in this bankruptcy case, is opposing counsel to current AP clients in matters unrelated to the Debtor.

- Chubb, a major surety and insurer to the Debtor and affiliates ("Chubb"), are litigation parties, adverse litigation parties, bondholders, lenders and investors to current and former AP clients in matters unrelated to the Debtor. Chubb is a current and former AP client in matters unrelated to the Debtor. Chubb is an insurance provider to AP.

- Cohen, Placitella & Roth P.C., a party in interest to the Debtor, is a professional to a former AP client in matters unrelated to the Debtor.

- Continental Insurance Company, an insurer to the Debtor, is an adverse litigation party to current AP clients in matters unrelated to the Debtor.

- Costco Wholesale Corporation ("Costco"), a significant co-defendant to the Debtor in talc-related litigation and a material potentially indemnified party to the Debtor, is a litigation party to current AP clients in matters unrelated to the Debtor. Costco is a current and former AP client in matters unrelated to the Debtor. Costco is a vendor to AP.

- Covington & Burling LLP ("Covington & Burling"), an ordinary course professional in this bankruptcy case, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. Covington & Burling is a current and former AP client in matters unrelated to the Debtor. Covington & Burling is a former employer of a current AP employee. Covington & Burling is a vendor to AP.

- Cravath, Swaine & Moore ("Cravath"), a professional for the Debtor's non-debtor affiliates, is counsel and a professional to current and former AP clients in matters unrelated to the Debtor. Cravath is a current and former AP client in matters unrelated to the Debtor.

- CVS Health Corporation and CVS Pharmacy, Inc., significant co-defendants to the Debtor in talc-related litigation , and affiliates ("CVS") are litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor.  CVS is a vendor to AP.

- Davis Hatley Haffeman & Tighe, an ordinary course professional in this bankruptcy case, is a professional to a current AP client in matters unrelated to the Debtor.

- Dechert LLP ("Dechert"), an ordinary course professional in this bankruptcy case, is counsel, opposing counsel and a professional to current and former AP clients in matters unrelated to the Debtor. Dechert is a current and former AP client in matters unrelated to the Debtor. Dechert is a former employer of a current AP employee.

- Dollar General Corporation, a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party to a current AP client in matters unrelated to the Debtor.

NAI-1522354801

- The Dow Chemical Company ("<u>Dow Chemical</u>"), a significant co-defendant to the Debtor in talc-related litigation, is a litigation party, adverse litigation party and bondholder to current and former AP clients in matters unrelated to the Debtor. Dow Chemical is a current AP client in matters unrelated to the Debtor. Dow Chemical is a former employer of current AP employees.

- Driscoll Firm, LLC, a law firm with significant representation of talc claimants, is opposing counsel to a current AP client in matters unrelated to the Debtor.

- Duane Reade Inc., a significant co-defendant to the Debtor in talc-related litigation, is a litigation party to a former AP client in matters unrelated to the Debtor.

- Eaton Corporation ("<u>Eaton</u>"), a significant co-defendant to the Debtor in talc-related litigation , is a litigation party, adverse litigation party,  and lender to current and former AP clients in matters unrelated to the Debtor. Eaton is a current and former AP client in matters unrelated to the Debtor. Eaton was a member of the UCC represented by AP in The NORDAM Group, Inc., a former bankruptcy matter unrelated to the Debtor.

- Employers Mutual Casualty Company, an insurer to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Epiq Corporate Restructuring LLC, a professional in this bankruptcy case, and affiliates ("<u>Epiq</u>") are adverse litigation parties and professionals to current and former AP clients in matters unrelated to the Debtor. Epiq is a vendor to AP.

- Estee Lauder Inc. ("<u>Estee Lauder</u>"), a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party to a former AP client in matters unrelated to the Debtor. Estee Lauder was a member of the UCC represented by AP in Bon-Ton Stores, Inc., a former bankruptcy matter unrelated to the Debtor.

- Everest Reinsurance Company, an insurer to the Debtor, and affiliates ("Everest") are litigation parties, bondholders and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor. Everest is an insurance provider to AP.

- Faegre Drinker Biddle & Reath LLP ("<u>Faegre Drinker</u>"), an ordinary course professional in this bankruptcy case, is a litigation party, adverse litigation party and professional to current and former AP clients in matters unrelated to the Debtor.

- Family Dollar Stores Inc, a significant co-defendant to the Debtor in talc-related litigation, is a lessor to a current AP client in matters unrelated to the Debtor.

- Fears Nachawati Law Firm and Fears Nachawati PLLC, law firms with significant representation of talc claimants, are opposing counsel to current and former AP clients in matters unrelated to the Debtor.

- Federal Insurance Company, a major surety to the Debtor, is a lessor, lender and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Federal

Insurance Company is an insurance provider to AP. Federal Insurance Company is a vendor to AP.

- Ferraro Law Firm, a law firm with significant representation of talc claimants, is a professional and opposing counsel to current AP clients in matters unrelated to the Debtor.

- Flowserve US, Inc. ("Flowserve"), a significant co-defendant to the Debtor in talc-related litigation, is a litigation party and adverse litigation party to former AP clients in matters unrelated to the Debtor. Flowserve is a former AP client in matters unrelated to the Debtor.

- FMC Corporation, a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("FMC") are associated companies, litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor. FMC is a former AP client in matters unrelated to the Debtor.

- Ford Motor Company, a significant co-defendant to the Debtor in talc-related litigation , and affiliates ("Ford") are litigation parties, adverse litigation parties, parent companies, investors, lenders, limited partners and director-affiliated companies to current and former AP clients in matters unrelated to the Debtor. Ford is a current and former AP client in matters unrelated to the Debtor. Ford is a former employer of current AP employees. Ford is a vendor to AP.

- Foster Wheeler LLC, a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("Foster Wheeler") are lessors, professionals, litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor.

- Gardner Denver Inc. a significant co-defendant to the Debtor in talc-related litigation, is a litigation party, adverse litigation party and professional to current and former AP clients in matters unrelated to the Debtor.

- General Electric Company, a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("GE") are related parties, affiliates, parent companies, joint venture companies, lessors, lenders, professionals, bondholders, shareholders, lienholders, litigation parties, adverse litigation parties and director-affiliated companies to current and former AP clients in matters unrelated to the Debtor. GE is a current and former AP client in matters unrelated to the Debtor. GE is a former employer of current AP employees. GE and AP are parties to an account receivable factoring arrangement whereby AP's invoices to GE are sold to a third party, in a way that improves payment terms to AP in exchange for an invoice discount.

- Genuine Parts Company, a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party to a former AP client in matters unrelated to the Debtor. Genuine Parts Company is a former AP client in matters unrelated to the Debtor.

- Gibraltar Casualty Company, an insurer to the Debtor, is an adverse litigation party to current AP clients in matters unrelated to the Debtor.

- Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), an ordinary course professional in this bankruptcy case, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. Gibson Dunn is a current and former AP client in matters unrelated to the Debtor.  Gibson Dunn is a former legal services provider to AP

- Goldman Ismail Tomaselli Brennan & Baum ("Goldman Ismail"), an ordinary course professional in this bankruptcy case is counsel to current AP clients in matters unrelated to the Debtor. Goldman Ismail is a current AP client in matters unrelated to the Debtor.

- Goodyear Tire & Rubber Co., a significant co-defendant to the Debtor in talc-related litigation ("Goodyear"), is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- The Gori Law Firm, a law firm with significant representation of talc claimants, is a professional to a current AP client in matters unrelated to the Debtor.

- Goulds Pumps LLC, a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party and litigation party to former AP clients in matters unrelated to the Debtor.

- Granite State Insurance Company, an insurer and party in interest to the Debtor, is an adverse litigation party to current AP clients in matters unrelated to the Debtor.

- Great American, an insurer to the Debtor, is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Great American is a current and former AP client in matters unrelated to the Debtor. Great American is an insurance provider to AP.

- Hartford Accident and Indemnity Company, an insurer to the Debtor and affiliates ("The Hartford"), are bondholders, lenders, litigation parties, adverse litigation parties, shareholders and lienholders to current and former AP clients in matters unrelated to the Debtor. The Hartford is a current and former AP client in matters unrelated to the Debtor. The Hartford is an insurance provider to AP.

- Hartline Barger, an ordinary course professional in this bankruptcy case, is a professional and counsel to current AP clients in matters unrelated to the Debtor.

- Hepler Broom LLC, an ordinary course professional in this bankruptcy case, is a professional to a current AP client in matters unrelated to the Debtor.

- Honeywell International, Inc., a significant co-defendant to the Debtor in talc-related litigation , and affiliates ("Honeywell") are litigation parties, adverse litigation parties, lenders and professionals to current and former AP clients in matters unrelated to the Debtor. Honeywell is a current and former AP client in matters unrelated to the Debtor. Honeywell is a former employer of a current AP employee.

NAI-1522354801

- Janssen Alzheimer Immunotherapy (Holding) Limited, Janssen Biologics (Ireland) Limited, Janssen Biologics B.V., Janssen BioPharma Inc., Janssen Biotech Inc., Janssen Cilag Farmaceutica S.A., Janssen Cilag SPA, Janssen Cilag C.A., Janssen de Mexico, S. de R.L. de C.V., Janssen Development Finance Unlimited Company, Janssen Diagnostics, LLC, Janssen Egypt LLC, Janssen Farmaceutica Portugal Lda, Janssen Global Services, LLC, Janssen Group Holdings Limited, Janssen Holding GmbH, Janssen Inc., Janssen Irish Finance Company UC, Janssen Korea Ltd., Janssen Oncology, Inc., Janssen Ortho LLC, Janssen Pharmaceutica (Proprietary) Limited, Janssen Pharmaceutica NV, Janssen Pharmaceutica S.A., Janssen Pharmaceutical, Janssen Pharmaceutical K.K., Janssen Pharmaceutical Sciences Unlimited Company, Janssen Pharmaceuticals, Inc., Janssen Products, LP, Janssen R&D Ireland, Janssen Research & Development, LLC, Janssen Sciences Ireland Unlimited Company, Janssen Scientific Affairs LLC, Janssen Supply Group LLC, Janssen Vaccines & Prevention B.V., Janssen Vaccines Corp., Janssen-Cilag, Janssen-Cilag (New Zealand) Limited, Janssen-Cilag A/S, Janssen-Cilag AG, Janssen-Cilag Aktiebolag, Janssen-Cilag AS, Janssen-Cilag B.V., Janssen-Cilag de Mexico S. de R.L. de C.V., Janssen-Cilag Farmaceutica Lda., Janssen-Cilag Farmaceutica Ltda., Janssen-Cilag GmbH, Janssen-Cilag International NV, Janssen-Cilag Kft., Janssen-Cilag Limited, Janssen-Cilag Manufacturing LLC, Janssen-Cilag NV, Janssen-Cilag OY, Janssen-Cilag Pharma GmbH, Janssen-Cilag Pharmaceutical S.A.C.I., Janssen-Cilag Polska, Sp. z o.o., Janssen-Cilag Pty Ltd, Janssen-Cilag S.A., Janssen-Cilag s.r.o., Janssen-Cilag, S.A., Janssen-Cilag, S.A. de C.V., Janssen-Pharma, S.L., non-debtor affiliates to the Debtor, are litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor**.**

- Johnson & Bell Ltd., an ordinary course professional in this bankruptcy case, is a professional to a former AP client in matters unrelated to the Debtor.

- Johnson & Johnson, Johnson & Johnson - Societa' Per Azioni, Johnson & Johnson (Angola), Limitada, Johnson & Johnson (China) Investment Ltd., Johnson & Johnson (Egypt) S.A.E., Johnson & Johnson (Hong Kong) Limited, Johnson & Johnson (Ireland) Limited, Johnson & Johnson (Jamaica) Limited, Johnson & Johnson (Kenya) Limited, Johnson & Johnson (Middle East) Inc., Johnson & Johnson (Mozambique), Limitada, Johnson & Johnson (Namibia) (Proprietary) Limited, Johnson & Johnson (New Zealand) Limited, Johnson & Johnson (Philippines), Inc., Johnson & Johnson (Private) Limited, Johnson & Johnson (Thailand) Ltd., Johnson & Johnson (Trinidad) Limited, Johnson & Johnson (Vietnam) Co., Ltd, Johnson & Johnson AB, Johnson & Johnson AG, Johnson & Johnson Belgium Finance Company BV, Johnson & Johnson Bulgaria EOOD, Johnson & Johnson China Ltd., Johnson & Johnson Consumer (Hong Kong) Limited, Johnson & Johnson Consumer B.V., Johnson & Johnson Consumer Holdings France, Johnson & Johnson Consumer Inc., Johnson & Johnson Consumer NV, Johnson & Johnson Consumer Saudi Arabia Limited, Johnson & Johnson Consumer Services EAME Ltd., Johnson & Johnson Consumer (Thailand) Limited, Johnson & Johnson d.o.o., Johnson & Johnson de Argentina S.A.C. e. I., Johnson & Johnson de Chile Limitada, Johnson & Johnson de Chile S.A., Johnson & Johnson de Colombia S.A., Johnson & Johnson de Costa Rica, S.A., Johnson & Johnson de Mexico, S.A. de C.V., Johnson & Johnson de Uruguay S.A., Johnson & Johnson de Venezuela, S.A., Johnson & Johnson del Ecuador, S.A., Johnson & Johnson Del Paraguay, S.A., Johnson & Johnson del Peru S.A., Johnson & Johnson do

Brasil Industria E Comercio de Produtos Para Saude Ltda., Johnson & Johnson Dominicana, S.A.S., Johnson & Johnson Enterprise Innovation Inc., Johnson & Johnson European Treasury Company, Johnson & Johnson Finance Corporation, Johnson & Johnson Finance Limited, Johnson & Johnson Financial Services GmbH, Johnson & Johnson for Export and Import LLC, Johnson & Johnson Foundation Scotland (NON-PROFIT), Johnson & Johnson Gateway, LLC, Johnson & Johnson Gesellschaft m.b.H., Johnson & Johnson GmbH, Johnson & Johnson Guatemala, S.A., Johnson & Johnson Health and Wellness Solutions, Inc., Johnson & Johnson Health Care Systems Inc., Johnson & Johnson Hellas Commercial and Industrial S.A., Johnson & Johnson Hellas Consumer Products Commercial Societe Anonyme, Johnson & Johnson Hemisferica S.A., Johnson & Johnson Holding GmbH, Johnson & Johnson Holdings K.K., Johnson & Johnson Inc., Johnson & Johnson Industrial Ltda., Johnson & Johnson Innovation - JJDC, Inc., Johnson & Johnson Innovation Limited, Johnson & Johnson Innovation LLC, Johnson & Johnson International, Johnson & Johnson International Financial Services Company, Johnson & Johnson International (Singapore) Pte. Ltd., Johnson & Johnson Japan Inc., Johnson & Johnson K.K., Johnson & Johnson Kft., Johnson & Johnson Korea Ltd., Johnson & Johnson Korea Selling & Distribution LLC, Johnson & Johnson Limitada, Johnson & Johnson Limited, Johnson & Johnson LLC, Johnson & Johnson Luxembourg Finance Company Sarl, Johnson & Johnson Management Limited, Johnson & Johnson Medical Saudi Arabia Limited, Johnson & Johnson Medical (China) Ltd., Johnson & Johnson Medical (Shanghai) Ltd., Johnson & Johnson Medical (Suzhou) Ltd., Johnson & Johnson Medical B.V., Johnson & Johnson Medical Devices & Diagnostics Group - Latin America, L.L.C., Johnson & Johnson Medical GmbH, Johnson & Johnson Medical Korea Ltd., Johnson & Johnson Medical Limited, Johnson & Johnson Medical Mexico, S.A. de C.V., Johnson & Johnson Medical NV, Johnson & Johnson Medical Products GmbH, Johnson & Johnson Medical Proprietary) Ltd, Johnson & Johnson Medical Pty Ltd, Johnson & Johnson Medical S.A., Johnson & Johnson Medical S.p.A., Johnson & Johnson Medical SAS, Johnson & Johnson Medical Servicios Profesionales S. de R.L. de C.V., Johnson & Johnson Medical Taiwan Ltd., Johnson & Johnson Medical, S.C.S., Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi, Johnson & Johnson Middle East FZ-LLC, Johnson & Johnson Morocco Societe Anonyme, Johnson & Johnson Nordic AB, Johnson & Johnson Pacific Pty Limited, Johnson & Johnson Pakistan (Private) Limited, Johnson & Johnson Panama, S.A., Johnson & Johnson Personal Care (Chile) S.A., Johnson & Johnson Poland Sp. z o.o., Johnson & Johnson Private Limited, Johnson & Johnson Pte. Ltd., Johnson & Johnson Pty. Limited, Johnson & Johnson Research Pty Ltd, Johnson & Johnson Romania S.R.L., Johnson & Johnson S.E. d.o.o., Johnson & Johnson S.E., Inc., Johnson & Johnson Sante Beaute France, Johnson & Johnson SDN. BHD., Johnson & Johnson Services, Inc., Johnson & Johnson Services, Inc., Johnson & Johnson Servicios Corporativos, S. de R.L. de C.V., Johnson & Johnson Surgical Vision India Private Limited, Johnson & Johnson Surgical Vision, Inc., Johnson & Johnson Taiwan Ltd., Johnson & Johnson UK Treasury Company Limited, Johnson & Johnson Ukraine LLC, Johnson & Johnson Urban Renewal Associates, Johnson & Johnson Vision Care Ireland Unlimited Company, Johnson & Johnson Vision Care (Shanghai) Ltd., Johnson & Johnson Vision Care, Inc., Johnson & Johnson, S.A., Johnson & Johnson, S.A. de C.V., Johnson & Johnson, s.r.o., Johnson & Johnson, s.r.o., PT. Johnson & Johnson Indonesia, Shanghai Johnson & Johnson Ltd., Shanghai Johnson & Johnson Pharmaceuticals Ltd., Johnson and

NAI-1522354801

Johnson (Proprietary) Limited, Johnson and Johnson Consumer Inc. and Johnson and Johnson Sihhi Malzeme Sanayi Ve Ticaret Limited Sirketi, non-debtor affiliates, equity owners and parties in interest to the Debtor, and affiliates ("J&J") are litigation parties to current AP clients in matters unrelated to the Debtor.  J&J is a current and former AP client in matters unrelated to the Debtor.  J&J is a former employer of current AP employees.  An AP employee who works in the AP legal department and performs services on this matter has a son who is employed in the tax department of an affiliate of the Debtor.  An AP Managing Director has been identified as a preferred consultant by Johnson & Johnson in matters unrelated to the Debtor, but is not currently performing any work for Johnson & Johnson.

- Jones Day, a professional in this bankruptcy case, are professionals, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. Jones Day is a current and former AP client in matters unrelated to the Debtor. Jones Day is a current legal services provider to AP. Jones Day is a vendor to AP.

- Kazan McClain Satterley & Greenwood PLLC and Kazan McClain Satterley & Greenwood PLC, parties in interest to the Debtor and law firms with significant representation of talc claimants, are professionals to a current AP client in matters unrelated to the Debtor.

- Kelley Jasons McGowan Spinelli Hanna & Reber LLP, an ordinary course professional in this bankruptcy case, is a professional to a current AP client in matters unrelated to the Debtor.

- King & Spalding LLP ("King & Spalding"), a professional in this bankruptcy case, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. King & Spalding is a current and former AP client in matters unrelated to the Debtor.

- Kirkland & Ellis LLP ("Kirkland & Ellis"), an ordinary course professional in this bankruptcy case, is a professional, counsel, opposing counsel and litigation party to current and former AP clients in matters unrelated to the Debtor. Kirkland & Ellis is a current and former AP client in matters unrelated to the Debtor.

- Kitch Drutchas Wagner Valitutti & Sherbrook, an ordinary course professional in this bankruptcy case, is a professional to a current AP client in matters unrelated to the Debtor.

- Kmart Corporation, a significant co-defendant to the Debtor in talc-related litigation, is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Lanier Law Firm, a law firm with significant representation of talc claimants, is a professional and opposing counsel to current AP clients in matters unrelated to the Debtor.

- Levy Konigsberg LLP, a law firm with significant representation of talc claimants and party in interest to the Debtor, is a professional to a current AP client in matters unrelated to the Debtor.

- Lewis Brisbois Bisgaard & Smith LLP, an ordinary course professional in this bankruptcy case ("Lewis Brisbois"), is a professional and counsel to current and former AP clients in matters unrelated to the Debtor.

- Lexington Insurance Company, an insurer and party in interest to the Debtor, is a litigation party and adverse ligation party to current and former AP clients in matters unrelated to the Debtor.

- Liberty Mutual Insurance Company, a major surety to the Debtor, and affiliates ("Liberty Mutual") are bondholders, litigation parties, lenders and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor. Liberty Mutual is a current and former AP client in matters unrelated to the Debtor. Liberty Mutual is an insurance provider to AP.

- L'Oreal USA, Inc., a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("L'Oreal") are former AP clients in matters unrelated to the Debtor.

- Macy's Inc. ("Macy's"), a significant co-defendant to the Debtor in talc-related litigation, is a litigation party to current and former AP clients in matters unrelated to the Debtor. Macy's is a current AP client in matters unrelated to the Debtor.

- Maune Raichle Hartley French & Mudd LLC, a law firm with significant representation of talc claimants, is a professional to a current AP client in matters unrelated to the Debtor.

- McCarter & English, LLP, a professional in this bankruptcy case, is a professional and opposing counsel to current and former AP clients in matters unrelated to the Debtor.

- Metropolitan Life Insurance Company, a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("MetLife") are litigation parties, adverse litigation parties, lienholders, lessors, lenders and bondholders to current and former AP clients in matters unrelated to the Debtor. MetLife is a former AP client in matters unrelated to the Debtor. MetLife is a former employer of a current AP employee. MetLife is a vendor to AP.

- Miles & Stockbridge, an ordinary course professional in this bankruptcy case, is counsel and a professional to current and former AP clients in matters unrelated to the Debtor. Miles & Stockbridge is a former AP client in matters unrelated to the Debtor.

- Miller Firm, LLC ("Miller Firm"), a law firm with significant representation of talc claimants, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. Miller Firm is a current and former AP client in matters unrelated to the Debtor.

- 15 -

- Morgan Lewis, an ordinary course professional in this bankruptcy case, is a professional, adverse litigation party, counsel, opposing counsel, litigation party, lender and director-affiliated company to current and former AP clients in matters unrelated to the Debtor. Morgan Lewis is a current and former AP client in matters unrelated to the Debtor.  Morgan Lewis is a vendor to AP.

- Motley Rice LLC, a law firm with significant representation of talc claimants, is a professional, counsel, opposing counsel and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Munich Reinsurance America, Inc., an insurer to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Napoli Shkolnik PLLC, a law firm with significant representation of talc claimants, is opposing counsel to current AP clients in matters unrelated to the Debtor.

- National Casualty Company, an insurer to the Debtor, and affiliates ("National Casualty") are shareholders, bondholders, lenders, lienholders and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor.

- National Union Fire Insurance Company of Pittsburgh PA, an insurer and party in interest to the Debtor, is a litigation party, lender, adverse litigation party and bondholder to current and former AP clients in matters unrelated to the Debtor.

- Nationwide, an insurer to the Debtor, is a bondholder, lienholder, litigation party, adverse litigation party and lender to current and former AP clients in matters unrelated to the Debtor. Nationwide is a former employer of a current AP employee. Nationwide is an insurance provider to AP.

- Nelson Mullins Riley & Scarborough LLP, an ordinary course professional in this bankruptcy case, is a professional to current and former AP clients in matters unrelated to the Debtor.

- New Hampshire Insurance Company, an insurer and party in interest to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Orrick, Herrington, & Sutcliffe, LLP ("Orrick"), an ordinary course professional in this bankruptcy case, is a professional, counsel, opposing counsel and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Orrick is a current and former AP client in matters unrelated to the Debtor.

- Ortho-McNeil Pharmaceutical LLC, a non-debtor affiliate to the Debtor, is a litigation party to current AP clients in matters unrelated to the Debtor.

- Patterson Belknap Webb & Tyler LLP ("Patterson Belknap"), an ordinary course professional in this bankruptcy case, is an adverse litigation party and counsel to current

and former AP clients in matters unrelated to the Debtor. Patterson Belknap is a former AP client in matters unrelated to the Debtor.

- Pfizer, Inc., a significant co-defendant to the Debtor in talc-related litigation, is a related party, litigation party, lender, affiliate and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Pfizer is a current and former AP client in matters unrelated to the Debtor.

- Pneumo Abex LLC, a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party to a former AP client in matters unrelated to the Debtor.

- Proskauer Rose LLP ("Proskauer"), an ordinary course professional in this bankruptcy case, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. Proskauer is a former AP client in matters unrelated to the Debtor. Proskauer is a current legal services provider to AP. Proskauer is a vendor to AP.

- Prudential Reinsurance Company, an insurer to the Debtor, and affiliates ("Prudential") are lienholders, bondholders, lessors, lenders, professionals and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor. Prudential is a former employer of a current AP employee. Prudential is an insurance provider to AP. Prudential is a vendor to AP.

- Publix Super Markets, Inc., a significant co-defendant to the Debtor in talc-related litigation and a material potentially indemnified party to the Debtor, is a lessor, litigation party and adverse litigation party to current AP clients in matters unrelated to the Debtor.

- Puritan Insurance Company, an insurer to the Debtor, is an adverse litigation party to a current AP client in matters unrelated to the Debtor.

- Rayburn Cooper & Durham, P.A., a professional in this bankruptcy case, is a professional to a current AP client in matters unrelated to the Debtor.

- Revlon Inc. and Revlon Consumer Products Corporation, significant co-defendants to the Debtor in talc-related litigation, and affiliates ("Revlon") are associated companies to current AP clients in matters unrelated to the Debtor. Revlon is a former AP client in matters unrelated to the Debtor.

- Rite Aid Corporation, a significant co-defendant to the Debtor in talc-related litigation and a material potentially indemnified party to the Debtor, is a litigation party, adverse litigation party and lessor to current and former AP clients in matters unrelated to the Debtor.

- Robinson Calcagnie Inc., a party in interest to the Debtor, is opposing counsel to current AP clients in matters unrelated to the Debtor.

- Royal Indemnity Company, an insurer to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- 17 -

- Safety National Casualty Corporation, an insurer to the Debtor, is a bondholder, lender, lienholder, shareholder and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Safeway Inc., a material potentially indemnified party to the Debtor and significant co-defendant to the Debtor in talc-related litigation, is a related party, litigation party, adverse litigation party and lessee to current and former AP clients in matters unrelated to the Debtor.

- Sentry Insurance – a Mutual Company, an insurer to the Debtor, is a shareholder, lender, limited partner and adverse litigation party to current AP clients in matters unrelated to the Debtor.

- Sidley Austin LLP ("Sidley Austin"), an ordinary course professional in this bankruptcy case, is a professional, counsel, litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Sidley Austin is a current and former AP client in matters unrelated to the Debtor. Sidley Austin is a current legal services provider to AP.  Sidley Austin is a vendor to AP.

- Simmons Hanly Conroy LLC ("Simmons Hanly"), a law firm with significant representation of talc claimants, is a professional and opposing counsel to current AP clients in matters unrelated to the Debtor. Simmons Hanly is a former AP client in matters unrelated to the Debtor.

- Simon Greenstone Panatiere Bartlett PC, a law firm with significant representation of talc claimants, is opposing counsel and a professional to current AP clients in matters unrelated to the Debtor.

- Skadden, Arps, Slate, Meager & Flom LLP ("Skadden Arps"), an ordinary course professional in this bankruptcy case, is a professional, litigation party, opposing counsel and counsel to current and former AP clients in matters unrelated to the Debtor. Skadden Arps is a current and former AP client in matters unrelated to the Debtor. Skadden Arps is a former employer of current AP employees.

- Starr Indemnity & Liability Company and Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company), insurers and parties in interest to the Debtor, and affiliates ("Starr") are adverse litigation parties and litigation parties to a current and former AP clients in matters unrelated to the Debtor. Starr is a current and former AP client in matters unrelated to the Debtor. Starr  is an insurance provider to AP.

- Stoel Rives LLP, an ordinary course professional in this bankruptcy case, is a professional to current and former AP clients in matters unrelated to the Debtor.

- Swartz Campbell LLC, an ordinary course professional in this bankruptcy case, is a professional to a current AP client in matters unrelated to the Debtor.

- 18 -

- Target Corporation, a significant co-defendant to the Debtor in talc-related litigation ("Target"), is a litigation party, adverse litigation party and lessor to current and former AP clients in matters unrelated to the Debtor. Target is a current AP client in matters unrelated to the Debtor. Target is a former employer of current AP employees.

- The Kroger Co., a significant co-defendant to the Debtor in talc-related litigation, is a litigation party, adverse litigation party and director-affiliated company to current and former AP clients in matters unrelated to the Debtor.

- The Procter & Gamble Company, a significant co-defendant to the Debtor in talc-related litigation ("Proctor & Gamble"), is a litigation party and adverse litigation party to former AP clients in matters unrelated to the Debtor. Proctor & Gamble is a former employer of a current AP employee.

- Thrifty Payless Inc., a significant co-defendant to the Debtor in talc-related litigation, is a litigation party to current AP clients in matters unrelated to the Debtor.

- TIG Insurance Company, an insurer to the Debtor, is an adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Transamerica Premier Insurance Company, an insurer to the Debtor ("Transamerica"), is a shareholder, bondholder, lessor, litigation party, adverse litigation party, lender and professional to current and former AP clients in matters unrelated to the Debtor.

- Travelers Casualty and Surety Company, Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company) and Travelers Casualty and Surety Company of America, insurers, major sureties, and parties in interest to the Debtor, and affiliates ("Travelers") are litigation parties, adverse litigation parties, bondholders, professionals, lessors, lenders and limited partners to current and former AP clients in matters unrelated to the Debtor. Travelers is a former AP client in matters unrelated to the Debtor. Travelers is an insurance provider to AP.

- Tucker Ellis LLP, an ordinary course professional in this bankruptcy case, is a professional and counsel to current AP clients in matters unrelated to the Debtor.

- US Bank N.A., a material contract counterparty to the Debtor ("US Bank"), is a bondholder, lienholder, litigation party, lender, adverse litigation party, professional, lessor and shareholder to current and former AP clients in matters unrelated to the Debtor. US Bank is a current and former AP client in matters unrelated to the Debtor. U.S. Bank was a member of the UCC represented by AP in Tops Holding II Corporation, a former bankruptcy matter unrelated to the Debtor.

- Union Carbide Corporation, a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party and litigation party to former AP clients in matters unrelated to the Debtor.

- Valeant Pharmaceuticals International, Inc., a material potentially indemnified party to the Debtor, is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- Walgreen Co., a significant co-defendant to the Debtor in talc-related litigation, and affiliates ("Walgreens") are litigation parties and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor. Walgreens is a former employer of a current AP employees.

- Walmart Inc., a material potentially indemnified party and significant co-defendant to the Debtor in talc-related litigation, is a litigation party, adverse litigation party and lessor to current and former AP clients in matters unrelated to the Debtor. Walmart Inc. is a current and former AP client in matters unrelated to the Debtor. Walmart Inc. is a former employer of current AP employees.

- Warren Pumps LLC, a significant co-defendant to the Debtor in talc-related litigation, is an adverse litigation party and litigation party to former AP clients in matters unrelated to the Debtor.

- Weil Gotshal & Manges LLP ("Weil Gotshal"), a professional in this bankruptcy case, is a professional, counsel and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. Weil Gotshal is a current and former AP client in matters unrelated to the Debtor. Weil Gotshal is a current legal services provider to AP.  Weil Gotshal is a vendor to AP.

- Weitz & Luxenberg, P.C., a law firm with significant representation of talc claimants, is an opposing counsel and professional to current AP clients in matters unrelated to the Debtor.

- Westchester Fire Insurance Company, an insurer and party in interest to the Debtor, is a bondholder, lender and adverse litigation party to current and former AP clients in matters unrelated to the Debtor. AP has a group insurance program in place for all US managing directors and AP board members under which personal excess liability (umbrella) insurance may be purchased from Chubb, an affiliate of ACE, Westchester Fire Insurance Company and Westchester Surplus, at group rates.

- Westport Insurance Corporation, an insurer to the Debtor, is a litigation party and adverse litigation party to current and former AP clients in matters unrelated to the Debtor.

- White & Case LLP ("White & Case"), a professional in this bankruptcy case, is a professional, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtor. White & Case is a current and former AP client in matters unrelated to the Debtor. White & Case is a former employer of current AP employees. White & Case is a former legal services provider to AP.

- XL Insurance Company, an insurer to the Debtor, and affiliates ("XL") are bondholders, litigation parties, lessors and adverse litigation parties to current and former AP clients in matters unrelated to the Debtor. XL is an insurance provider to AP.

NAI-1522354801