FILED & JUDGMENT ENTERED
Steven T. Salata

November 16 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **LTL Management LLC**, ) | Case No. 21-30589 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

## ORDER TRANSFERRING CASE TO THE DISTRICT OF NEW JERSEY

**THIS MATTER** is before the Court on the Motion of the Bankruptcy Administrator to Transfer Venue of Bankruptcy Case Pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1) in the Interest of Justice or for the Convenience of Parties (the "BA's Motion"), the Court's October 26, 2021, Order to Appear and Show Cause Why Venue Should Not Be Transferred to Another District (the "Show Cause Order"), and similar motions to transfer venue filed by certain law firms on behalf of ovarian and mesothelioma cancer claimants. For the reasons set forth below, the Court orders the transfer of venue to the District of New Jersey.

### Background and Procedural History

The Debtor commenced this Chapter 11 case on October 14, 2020. Just two days before filing this case, the Debtor was first created through a corporate restructuring. As a result of this restructuring, the former Johnson & Johnson Consumer Inc. ("Old JJCI"), a subsidiary of Johnson & Johnson ("J&J"), ceased to exist and two new corporate entitles were created. The first is the Debtor, which initially was formed as a Texas limited liability company, and then converted into a North Carolina limited liability company. The second entity was also initially formed as a Texas

Case 21-30589-MBK    Doc 416    Filed 11/16/21    Entered 11/16/21 08:59:39    Desc Main
Document    Page 2 of 11

limited liability company, but then it was merged into J&J and changed its name to Johnson & Johnson Consumer Inc. ("New JJCI"). The Debtor maintains this restructuring was undertaken to enable the Debtor to fully resolve talc-related claims through a chapter 11 reorganization without subjecting the entire J&J enterprise to a bankruptcy proceeding.

Through the restructuring, the Debtor received certain limited assets from Old JJCI, together with all of Old JJCI's liabilities arising from talc-related claims. Among the limited assets the Debtor owns are a bank account containing approximately $6 million in cash, Old JJCI's rights as payee under a funding agreement, and membership interests in Royalty A&M, a North Carolina limited liability company formed just prior to the Debtor. The Debtor also has access to various insurance receivables that potentially cover talc-related liabilities.

The Debtor operates out of New Jersey. In its voluntary petition, the Debtor lists its principal place of business and mailing address as 501 George St., New Brunswick, NJ 08933. The employees of the Debtor are all employees of Johnson & Johnson Services, Inc. ("JJS"), a New Jersey corporation, that have been seconded to the Debtor. These employees all continue to work in New Jersey. JJS further provides the Debtor with, among other things, accounting services, human resources, tax support, and most notably, office space and other facilities located in New Jersey. The Debtor's assets involve no operation of a business in North Carolina.

The Debtor's only liabilities are Old JJCI's liabilities arising from talc-related claims. As of the petition date, approximately 38,000 ovarian cancer cases were pending against the Debtor as well as J&J, including approximately 35,000 cases pending in a federal multi-district litigation (the "MDL") in front of the Honorable Freda L. Wolfson. <u>In re: Johnson & Johnson Talcum Power Products Marketing, Sales Practices and Products Liability Litigation</u>, Case MDL No. 2738, in the U.S. District Court for the District of New Jersey, Case No. 16-02738. In addition to the ovarian claims, more than 430 mesothelioma cases were pending against the Debtor as of the petition date across the U.S., with cases pending in New Jersey, California, Illinois, Missouri, New York, Ohio and others.

Other interested parties in this case are currently involved in pending proceedings with the Debtor's ultimate parent, J&J, and Old JJCI. Certain of the Debtor's third-party insurers filed a lawsuit against Old JJCI and J&J in the New Jersey Superior Court of Middlesex County in May 2019 (Docket No. MID-L-003563-19) (the "New Jersey Coverage Action"). The insurers seek declaratory judgment regarding their respective obligations under each of their insurance policies. Moreover, Imerys Talc America Inc., and its affiliates ("Imerys") and Cyprus Mines Corporation ("Cyprus") are in separate, factually intertwined bankruptcy cases currently pending in the District of Delaware. Imerys and Cyprus each filed adversary proceedings against Old JJCI and J&J in their respective bankruptcy cases seeking declaratory judgments related to indemnity.

The Bankruptcy Administrator ("BA") filed her Motion to transfer this case to the District of New Jersey on October 25, 2021. The Court, considering the apparent lack of a connection to this judicial district as well as its own judicial resources, entered the Show Cause Order on October 26, 2021, requiring the Debtor to appear on November 10, 2021, and show cause why this case should not be transferred to a different venue. The Show Cause Order permitted other parties to file their own motions and responses and set a hearing on November 10, 2021.

Other law firms and interested parties filed motions seeking to transfer venue to either the District of New Jersey or the District of Delaware. The Debtor filed an objection on November 5, 2021, seeking to keep venue in this district. On November 8, 2021, the BA docketed a letter from the Official Committee of the Talc Claimants (the "TCC"). The letter informed the Court that the committee unanimously supports the transfer of venue to the District of New Jersey.[1]

Attorneys for the Debtor and J&J; attorneys for the Plaintiffs' Steering Committee (the "PSC") in the MDL, certain talc claimants and their law firms, certain insurers of the Debtor, Imerys, and Cyprus; and the BA were among the parties who appeared at the November 10 hearing. At that hearing, the BA argued in favor of transferring the case to the District of New Jersey. The PSC, certain mesothelioma claimants, and certain ovarian cancer claimants joined in her argument. Two law firms on behalf of certain claimants argued in favor of transferring the case to the District of Delaware. Notably, the attorney for Imerys took no position as to whether the case should be

---

[1] The TCC could not retain counsel in time to respond to the Show Cause Order.

transferred but argued against transferring the case to Delaware. The Debtor continued to oppose any transfer of the case.

## Discussion

Venue is proper for a bankruptcy case in any judicial district where the Debtor's "domicile, residence, principal place of business . . . or principal assets" have been located for "a longer portion" of the 180 days prior to the petition date. 28 U.S.C. § 1408(1). Venue is proper in this judicial district since the Debtor was a North Carolina entity on the filing date, if only for two days. Even if venue is proper, the court may transfer venue to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.[2] "The moving party bears the burden of showing by a preponderance of the evidence that either the interests of justice or the convenience of the parties would be served by a transfer of the case." In re Grand Dakota Partners, LLC, 573 B.R. 197, 201 (Bankr. W.D.N.C. 2017) (citing In re Lakota Canyon Ranch Dev., LLC, No. 11-03739-8, 2011 WL 5909630, at *2–3 (Bankr. E.D.N.C. June 21, 2011)). Ultimately, the decision to transfer venue is within the sound discretion of the court based on "a case-by-case analysis of the facts underlying each particular case." Grand Dakota Partners, LCC, 573 B.R. at 201 (citation omitted). "Substantial weight and deference" is given to a debtor's choice of forum. In re Bestwall LLC, 605 B.R. 43, 51 (Bankr. W.D.N.C. 2019). As a result, a court does not lightly transfer venue, and it is highly unusual to do so; however, this case is highly unusual. Both the convenience of the parties and the interests of justice warrant transfer of this case to the District of New Jersey.

### I. Convenience of the Parties

In determining whether to transfer venue for the convenience of the parties, courts use six factors: "(1) the proximity of creditors of every kind to the court; (2) the proximity of the Debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if a liquidation should occur." Id. at 53 (quoting Lakota Canyon Ranch

---

[2] Made applicable by Fed. R. Bankr. P. 1014(a)(1).

4

Dev., LLC, 2011 WL 5909630, at *3). The economic administration of the estate is given the most weight in determining whether to transfer venue. See Bestwall LLC, 605 B.R. at 53.

Here, the first and fifth factors both weigh in favor of transferring this case to the District of New Jersey. Substantial litigation in another district supports the transfer of the case to that district. See In re Asset Resol. LLC, No. 09-16142 (AJG), 2009 WL 4505944, at *3 (Bankr. S.D.N.Y. Nov. 24, 2009) ("For purposes of efficiency and judicial economy, the substantial learning curve that the Nevada courts have already developed in presiding over these on-going disputes . . . weighs in favor of transferring venue to Nevada."). The overwhelming number of ovarian cancer cases against the Debtor—approximately 35,000 of approximately 38,000—are pending in the MDL in New Jersey. Plaintiffs in the MDL are not necessarily located in New Jersey, but the United States Judicial Panel on Multidistrict Litigation (the "Panel") chose the District of New Jersey as the appropriate venue. The Panel did this at the request of Old JJCI and J&J. The presiding judge, Judge Wolfson, the attorneys in the MDL, and other interested parties have now devoted significant time and resources over the past five years litigating in this forum.

The Debtor asserts that the MDL does not alter the fact that the claimants reside in states throughout the country, and, ultimately, most of these cases will be resolved in each plaintiff's home state. This assertion ignores that to date, the cases are still currently pending in New Jersey, and the plaintiffs and their professionals are accustomed to appearing in New Jersey, making this venue preferrable to the vast majority of the creditors. The Panel chose New Jersey as the forum for the MDL because it was convenient and accessible for all the parties involved.

Furthermore, the MDL presents a unique opportunity to help work towards an estimation of present and future claims that could take place in any future bankruptcy proceeding. Talc claims, unlike asbestos claims, are a relatively new type of claim in this country. The verdict and settlement history only goes back a few years as opposed to decades. As a result, any estimation proceeding that could take place in a bankruptcy lacks a litigation history to help accurately estimate what is already tens of thousands of claims. Absent a bankruptcy, upon completion of the MDL's pre-trial process, six cases would be tried before the rest of the cases are sent back to their respective courts. Although far from a final ruling in other courts, those cases could serve as

a template for other courts to help efficiently try their cases and could help resolve important issues. To date, the MDL has resolved important issues and gained an understanding of potential liability, causation, defenses, and settlement discussions. Although presently stayed, the MDL should be accounted for during the bankruptcy case and, it could even be joined with the bankruptcy case to help efficiently resolve thousands of talc related claims and aid in any future estimation proceeding. Therefore, the administration of this estate is best served by transferring this case to the District of New Jersey.

The District of New Jersey is convenient for other interested parties as well. Cyprus and Imerys are involved in bankruptcy proceedings in Delaware, a state that borders New Jersey. Furthermore, the New Jersey Coverage Action, which impacts certain insurance companies with an interest in this case, remains pending in Middlesex County, New Jersey.

The second, third, and fourth factors all further weigh in favor of transferring this case to the District of New Jersey based on the Debtor's continuing connections to that district. A New Jersey address is listed as the Debtor's headquarters and as the Debtor's mailing address. The employees seconded to the Debtor, and most of the potential witnesses for the Debtor, including the Debtor's Chief Legal Officer, continue to work in New Jersey. New JJCI and J&J are also headquartered in New Jersey. In contrast to New Jersey, the Debtor's connections to North Carolina are limited. The only physical asset located in North Carolina is a bank account with $6 million. The Debtor owns an interest in a North Carolina limited liability company, Royalty A&M, but this asset is intangible and was formed on the eve of the bankruptcy case. Royalty A&M, along with all the Debtor's assets, were all set up primarily for the purpose of filing bankruptcy in this district, and the assets are not involved in any further business in North Carolina.

In arguing against a transfer of venue, the Debtor primarily cites to two prior rulings of this Court—Bestwall and Kaiser. Bestwall LLC, 605 B.R. 43; In re Kaiser Gypsum Co., Inc., No. 16-31602 (Bankr. W.D.N.C. Jan. 30, 2017) (Order Denying Motion of Certain Kaiser Gypsum Claimants to Transfer Chapter 11 Cases to the United States District Court for the Western District of Washington), ECF No. 348. Both cases are distinguishable. In Kaiser, the movants sought to transfer the case to the District of Washington. Kaiser Gypsum was a wholly owned subsidiary of

6

HPCI that became a Washington corporation in or about 1965. Kaiser existed solely to manage its legacy asbestos and environmental liabilities and had no material assets, active employees, or ongoing business operations. In 2016, Kaiser Gypsum reincorporated in North Carolina and filed for bankruptcy. We held that no other potential venue was inherently more favorable. Kaiser Order at 3. Kaiser's listed address was in Texas, its parent was domiciled in Arizona, and all the interested parties and claimants were scattered throughout the country.

Here, there is a venue preferrable to all parties. The Debtor's parent company and key witnesses are located in New Jersey, and most of the interested parties and claimants are currently involved in proceedings pending in the District of New Jersey.

The facts in Bestwall closely track this case but are still distinguishable. Like the Debtor in this case, Bestwall was first created through a Texas divisional merger and incorporated in North Carolina shortly before filing for bankruptuptcy. In Bestwall, The Official Committee of Asbestos Claimants (the "ACC") sought transfer to the District of Delaware. Bestwall LLC, 605 B.R. at 53. None of Bestwall's representatives were located in Delaware, and the majority of the creditors were not clustered around Delaware. Id. In addition, Bestwall's headquarters and its predecessor were headquartered in Atlanta, Georgia, a city closer to this district than to Delaware. Id. Thus, Judge Beyer could not conclude a transfer of venue was appropriate. Id. Here, in contrast to Bestwall, most of the parties have strong connections to New Jersey, and it is the most convenient venue.

There is another important difference between this case and Bestwall. In Bestwall, the debtor first filed the case in November 2017, the ACC filed its motion to transfer venue in August 2018. The Court heard arguments in November 2018 and January 2019 and entered its final order denying the ACC's motion in July 2019. Nearly two years passed from the filing of the case to the order denying the venue transfer. In the meantime, the Court invested significant time in the case. Transferring the case would have meant additional costs for a new judge incurred in connection with learning the facts and relevant law of the case. This case is less than a month old, and the additional learning curve costs for a new judge are not as great.

7

The Debtor references three other mass tort cases all currently pending in this district: In re DBMP LLC, No. 20-30080 (Bankr. W.D.N.C. filed Jan. 23, 2020); In re Aldrich Pump LLC, No. 20-30608 (Bankr. W.D.N.C. filed June 18, 2020); and In re Murray Boiler LLC, No. 20-306069 (Bankr. W.D.N.C. filed June 18, 2020).  However, no party filed a motion to transfer venue in these cases.  In DBMP, that lack of a motion was likely due to the same circumstances existent in Bestwall.  DBMP's predecessor existed in Pennsylvania, its ultimate parent resided in Paris, France, and the claimants were located throughout the country.  As to Aldrich and Murray, the debtors' predecessors were headquartered in Davidson, North Carolina, which is in this judicial district.  This is was the most appropriate venue for those cases. Therefore, all the prior mass tort cases the Debtor cites as support for denying a motion to transfer venue are factually distinct.

In summary, the Debtor's strong connections to New Jersey; New Jersey's proximity to relevant witnesses, creditors and other interested parties; and the MDL's potential to aid in any possible administration of the estate support transferring venue to the District of New Jersey for the convenience of the parties.

## II. Interest of Justice

The interest of justice standard is "a broad and flexible standard that is applied based on the facts and circumstances of each case." In re Enron Corp., 284 B.R. 376, 403 (Bankr. S.D.N.Y. 2002).  In evaluating the interest of justice, courts consider whether transferring venue promotes "the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness." Bestwall LLC, 605 B.R. at 51 (quoting In re Manville Forest Prods. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990)).  "As a practical matter . . . if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer."  Grand Dakota Partners, LLC, 573 B.R. at 205 (quoting In re Pinehaven Assoc., 132 B.R. 982, 990 (Bankr. E.D.N.Y. 1991)).  Here, as previously laid out, the convenience of the parties is served by a transfer of venue to the District of New Jersey.

Whether the Debtor is forum shopping is also a consideration.  See In re Patriot Coal Corp., 482 B.R. 718, 743 (Bankr. S.D.N.Y. 2012).   In Patriot Coal Corp., the debtor created two new

8

entities and incorporated them in the State of New York just weeks prior to the petition date, allowing 97 other affiliates across the country to file for bankruptcy in the Southern District of New York pursuant to 28 U.S.C. § 1408(2). Id. at 726–28. The court held that:

> Notwithstanding the absence of bad faith on the part of the Debtors and the deference to which the Debtors' venue choice is entitled . . . the Debtors' purposeful creation of the venue-predicate affiliates in New York on the eve of filing must be considered in the "interest of justice" analysis set forth in section 1412.

Id. at 743. The court in Patriot Coal further stated that it could not "allow the Debtors' venue choice to stand, as to do so would elevate form over substance in [a] way that would be an affront to the purpose of the bankruptcy venue statute and the integrity of the bankruptcy system." Id. at 744.

This case is analogous to Patriot Coal, although instead of using of using a subsidiary to serve as the lead filer, the Debtor's predecessor underwent a Texas divisive merger, resulting in the formation of the Debtor. Upon creation, the Debtor immediately converted its state of incorporation to North Carolina—a stratagem known as the "Texas Two Step"—as a predicate to venue in this District. As in Patriot Coal, this stratagem achieved literal compliance with section 1408, and no party has presented evidence of a bad faith filing.[3] However, the Debtor's undertaking "created facts in order to satisfy the statute." Id. at 746.

The Debtor contends that this case is distinguishable from Patriot Coal since, in this case, the Debtor is not a shell company and has substantial assets. The Debtor may have assets, but they were all created to effectuate a bankruptcy filing and have no other business purpose. The Debtor compares these cases to Bestwall and Kaiser, but as previously noted, these cases are different, particularly considering the Debtor only existed two days in North Carolina before filing bankruptcy. Such a short existence indicates that the Debtor subjected itself to the laws of North Carolina purely for the purpose of filing bankruptcy. Setting up a company with the sole intent of filing bankruptcy in a certain district cannot be "the thing which the [venue] statute intended." Id. at 745. Even without any evidence of bad faith, courts are not required to "condone every strategy devised by clever lawyers to outsmart statutory purpose." Patriot Coal Corp., 482 B.R. at 745.

---

[3] To date, no party has filed a motion to dismiss. Thus, the court has never weighed in as to whether this case is a bad faith filing.

9

Here, the Debtor is trying to manufacture venue and is attempting to outsmart the purpose of the statute. In response to this argument, the Debtor contends that the claimants are forum shopping themselves. The Debtor attests that the claimants are only seeking transfer of this case to, according to the Debtor's belief of the claimant's perception, a circuit with a more friendly dismissal standard. Any forum shopping by the parties weighs against them both in looking at the factors, but in this case, the Debtor is not just forum shopping; the Debtor is manufacturing forum and creating a venue to file bankruptcy. Thus, the purposeful creation of venue, although not dispositive by itself, must be considered in the interest of justice analysis. The more dispositive factor, however, remains that that there is a more appropriate venue for the administration of the estate.

The Debtor further argues that for the benefit of all parties and in the interest of justice, this case should remain in this district given this Court's experience with mass tort cases and divisional mergers. It is not an accident that this Court has this experience. Rather, the Debtor's actions indicate a preference to file bankruptcy in this district, likely due to the Fourth Circuit's two-prong dismissal standard[4] and Judge Hodges's estimation ruling in the Garlock case. See In re Garlock Sealing Techs., LLC., et al., 504 B.R. 71 (Bankr. W.D.N.C. 2014).

This case mirrors four other bankruptcy cases filed in this district: Bestwall, DBMP, Aldrich Pump, and Murray Boiler. In each of these cases, a corporation with substantial asbestos liability hired the law firm of Jones Day, the corporation used the "Texas Two Step" to create a North Carolina entity with limited assets and all or most of its predecessors' asbestos liability, and the North Carolina entity filed for bankruptcy in this district shortly after its creation. See In re DBMP LLC, No. 20-30080, 2021 WL 3552350, at *16 (Bankr. W.D.N.C. Aug. 11, 2021). The first time any debtor in the country used this procedure was in Bestwall in 2017. Thereafter, every debtor using the Texas Two Step filed for bankruptcy in this district. As a result, any superior experience and purported expertise this Court may possess as to divisional mergers exists only because it is the only court that has ever seen these issues.

---

[4] In the Fourth Circuit, a court can dismiss a Chapter 11 filing as a bad faith filing when the bankruptcy reorganization is both (i) objectively futile *and* (ii) filed in subjective bad faith. Carolin Corp. v. Miller, 886 F.2d 693, 700-01 (4th Cir. 1989).

10

There is no reason this Court should be the only bankruptcy court to have the opportunity to weigh in on these novel legal issues, especially considering that the "Texas Two Step" tactic is being employed by national corporations and impacts tens of thousands of present and future claimants across the country. Moreover, the New Jersey Bankruptcy Court has significant mass tort experience, having sat on at least two cases—In re Congoleum Corp., case no. 20-18488 filed in 2007 and In re G-I Holdings, Inc., case no. 01-30135 filed in 2001. Both of the judges who presided over those cases still sit on that bench.

Finally, this Court must consider its own docket as it affects judicial economy when evaluating whether to transfer venue. There are currently five mass tort bankruptcy cases pending in this district, including the four involving the "Texas Two Step." This is a two-judge district with limited resources to devote to these highly complex cases. It is possible to augment judicial resources using a visiting judge, but that judge would likely be assigned over one of these asbestos cases. Thus, any efficiencies in keeping this case here in light of this court's experience would be lost. Therefore, this case may as well be heard in the more appropriate venue.

In sum, transferring this case to the District of New Jersey is in the interest of justice and will promote an effective administration of the estate, fairness, and judicial economy.

## CONCLUSION

In conclusion, pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P 1014(a), for the convenience of the parties and in the interest of justice, this Court transfers this case to the U.S. District Court for the District of New Jersey, potentially to be referenced to the Bankruptcy Court, should that Court deem it appropriate.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court