|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>(Admitted *pro hac vice*)<br>PROPOSED ATTORNEYS FOR DEBTOR | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No.: 21-30589<br><br>Judge: Michael B. Kaplan |

### DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR AN ORDER APPOINTING JOSEPH W. GRIER, III
### AS LEGAL REPRESENTATIVE FOR FUTURE TALC CLAIMANTS

       The above-captioned debtor (the "Debtor") moves the Court for the entry of an order, pursuant to sections 105(a) and 524(g)(4)(B)(i) of the Bankruptcy Code, appointing Joseph W. Grier, III as the legal representative for future talc claimants in the Debtor's chapter 11 case. In support of this Motion, the Debtor respectfully states as follows:

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1523893394

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are sections 105(a) and 524(g)(4)(B) of the Bankruptcy Code.

**Background**

3. On October 14, 2021 (the "Petition Date"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina (the "NC Bankruptcy Court"). On November 16, 2021, the NC Bankruptcy Court entered an order transferring the case to the District of New Jersey, which referred the case to this Court. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor is a North Carolina limited liability company. It is the direct parent of Royalty A&M LLC, a North Carolina limited liability company, which manages a portfolio of royalty revenue streams, including some based on third-party sales of certain products, and will seek opportunities to acquire or finance additional royalty revenue streams. As of the Petition Date, the Debtor was a defendant in thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products.

5. A comprehensive description of the Debtor, its history, its assets and liabilities, and the events leading to the commencement of this chapter 11 case can be found in the declaration of John K. Kim [Dkt. 5] (the "First Day Declaration"), which was filed on the

Petition Date. In addition to the First Day Declaration, the Debtor filed an Informational Brief [Dkt. 3] to provide additional information about its talc litigation, related costs, and plans to address these matters in this chapter 11 case (the "Chapter 11 Case").

6. On November 8, 2021, the NC Bankruptcy Court entered an order [Dkt. 355] appointing an official committee of talc claimants (the "Talc Committee") in the Chapter 11 Case.

## Relief Requested

7. Pursuant to sections 105(a)$^2$ and 524(g)(4)(B)(i) of the Bankruptcy Code, the Debtor requests that the Court appoint Mr. Grier as the legal representative to protect the rights of future talc claimants in the Chapter 11 Case (the "Future Claimants' Representative") in accordance with the terms and conditions described below.

## The Debtor's Need for a Future Claimants' Representative

8. The Debtor filed for bankruptcy protection in the face of a virtual tidal wave of talc-related claims. As of the Petition Date, there were approximately 38,000 ovarian cancer cases pending against the Debtor, including approximately 35,000 cases pending in a federal multi-district litigation in New Jersey, and approximately 3,300 cases in multiple state court jurisdictions across the country. First Day Decl. ¶ 42. 12,300 complaints related to ovarian

---

2   Pursuant to section 105(a) of the Bankruptcy Code, the Court may issue an order to assist in carrying out the other provisions of the Bankruptcy Code, including by appointing a future claimants' representative as contemplated by section 524(g)(4)(B)(i) of the Bankruptcy Code. See In re Forty-Eight Insulations, Inc., 58 B.R. 476, 477 (Bankr. N.D. Ill. 1986); In re Johns-Manville Corp., 36 B.R. 743, 757 (Bankr. S.D.N.Y. 1984); see also In re Garlock Sealing Tech., Case No. 10-31607 (GRH) (Bankr. W.D.N.C. Sept. 16, 2010). Future claimants' representatives have also been appointed pursuant to section 327(a) of the Bankruptcy Code. See In re Kaiser Gypsum Co., Inc., Case No. 16-31602 (JCW) (Bankr. W.D.N.C. Oct. 19, 2016); In re Specialty Prods. Holding Corp., Case No. 10-11780 (JKF) (Bankr. D. Del. Oct. 18, 2010); In re W.R. Grace & Co., Case No. 01-01139 (JKF) (Bankr. D. Del. May 24, 2004). To the extent the Court determines that section 327(a) of the Bankruptcy Code is an appropriate basis for the relief sought herein, the Debtor also seeks relief under that section.

cancer claims were served in just the first ten and a half months of 2021. Id. ¶ 43. In addition to the ovarian cancer claims, more than 430 mesothelioma cases were pending against the Debtor on the Petition Date. Id. ¶ 44. These claims, like the ovarian cancer claims, spanned the U.S. Id. Prior to commencing this case, the former Johnson & Johnson Consumer Inc. ("Old JJCI") incurred nearly $1 billion in defending personal injury lawsuits relating to alleged talc exposure, nearly all of which was spent in only the last five years. Id. ¶ 40. In the months prior to the Petition Date, Old JJCI was paying anywhere from $10 million to $20 million in defense costs on a monthly basis. Id. In addition to these costs, Old JJCI paid approximately $3.5 billion in indemnity in connection with settlements and verdicts. Id.

9. As further described in the Informational Brief, Old JJCI was also subject to a number of plaintiff verdicts involving unpredictable and wildly divergent compensatory and punitive damages awards. Id. ¶ 38. The lottery-like results of the litigation created substantial uncertainty and were inhibiting Old JJCI's ability to fully focus on its business operations. Id. ¶ 58. And, cosmetic talc litigation against the Debtor was anticipated to grow for decades more, as were the extraordinary costs of resolving tens of thousands of expected claims. Id. ¶ 41. Plaintiff experts estimate that the latency period for mesothelioma can be as long as 60 years and have begun to assert extended latency periods for ovarian cancer allegedly caused by asbestos exposure. Id. As a result, even though Old JJCI stopped selling its talc-based JOHNSON'S® Baby Powder in North America in 2020, individuals who develop mesothelioma or ovarian cancer in 2080 and beyond could sue the Debtor, potentially drawing out the litigation to the end of this century. Id.

10. Based on the cost, uncertainty, and anticipated extensive duration of the talc-related litigation, the Debtor determined to file a chapter 11 case, which offers the only

alternative for equitably and permanently resolving all current and future talc-related claims against it.  Id. ¶ 58.  To achieve a resolution, the Debtor's goal is to promptly negotiate, obtain court approval of, and ultimately consummate a plan of reorganization that would, among other things, establish and fund a trust to efficiently and equitably resolve and pay current and future talc-related claims.  Id. ¶ 59.  Such a resolution requires, however, that future claimants, a key constituency in this Chapter 11 Case, be adequately represented.

11. The appointment of a legal representative to protect the rights of future claimants is well established in chapter 11 proceedings, and future claimants' representatives are routinely appointed in mass tort-related chapter 11 cases in this District and in others.[3]  In addition, to the extent that a trust is established under section 524(g) of the Bankruptcy Code, one of the conditions that must be met for the issuance of a channeling injunction under that section is that the court appoint a future claimants' representative.  See 11 U.S.C. § 524(g)(4)(B)(i).

12. The Debtor has determined that Mr. Grier is the best candidate to represent the interests of the future claimants and, therefore, should be appointed as the Future Claimants' Representative in this Chapter 11 Case.  The Debtor based its determination on Mr.

---

[3] See, e.g., In re Mallinckrodt plc, et al., Case No. 20-12522 (JTD) (Bankr. D. Del. Mar. 16, 2021); In re Aldrich Pump LLC, Case No. 20-30608 (JCW) (Bankr. W.D.N.C. Oct. 14, 2020); In re DBMP LLC, Case No. 20-30080 (JCW) (Bankr. W.D.N.C. June 1, 2020); In re Boy Scouts of America and Delaware BSA, LLC, Case No. 20-10343 (LSS) (Bankr. D. Del. Apr. 24, 2020); In re Imerys Talc Am., Inc., Case No. 19-10289 (LSS) (Bankr. D. Del. June 3, 2019); In re Duro Dyne Natl's Corp., Case No. 18-27963 (MBK) (Bankr. D.N.J. Oct. 17, 2018); In re Bestwall LLC, Case No. 17-31795 (LTB) (Bankr. W.D.N.C. Feb. 23, 2018); In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. Sept. 6, 2017); In re Kaiser Gypsum Co., Inc., Case No. 16-31602 (JCW) (Bankr. W.D.N.C. Oct. 19, 2016); In re Yarway Corp., Case No. 13-11025 (BLS) (Bankr. D. Del. May 28, 2013); In re Metex Mfg. Corp., Case No. 12-14554 (BRL) (Bankr. S.D.N.Y. Jan. 16, 2013); In re Specialty Prods. Holding Corp., Case No. 10-11780 (JKF) (Bankr. D. Del. Oct. 18, 2010); In re Garlock Sealing Techs., Case No. 10-31607 (GRH) (Bankr. W.D.N.C. Sept. 16, 2010); In re Durabla Mfg. Co., Case No. 09-14415 (MFW) (Bankr. D. Del. May 3, 2010); In re W.R. Grace & Co., Case No. 01-01139 (JKF) (Bankr. D. Del. May 24, 2004).

Grier's exemplary qualifications, experience, disinterestedness, and independence.

## Basis for Relief Requested

***Mr. Grier Is Well-Qualified to Serve as the Future Claimants' Representative and No Adverse Interest Precludes Him from Serving in that Role.***

13. Mr. Grier is well-qualified to serve as the Future Claimants' Representative.[4] He is a leading bankruptcy and commercial law lawyer, and is a founding partner of Grier Wright Martinez, P.A. ("Grier Wright Martinez") based in Charlotte, North Carolina. At Grier Wright Martinez, Mr. Grier specializes in bankruptcy law and debtor-creditor work. In addition to his extensive experience as a bankruptcy and commercial law practitioner, Mr. Grier has acquired substantial experience representing various constituencies in a fiduciary capacity, including, among others, as a federal and state court-appointed receiver, an operating and liquidating trustee in bankruptcy, and as a legal representative for future claimants in two mass tort bankruptcy cases.

14. For example, from 2007 through 2014, Mr. Grier served, at the request of the State of North Carolina, as the receiver for a group of entities that had attempted, unsuccessfully and fraudulently, to develop resort property in the mountains of North Carolina. State of North Carolina ex rel. Roy Cooper, Attorney General v. Peerless Real Estate Services, Inc., et al., Case No. 07-CVS-009006, Wake County, North Carolina, Superior Court. In that capacity, Mr. Grier obtained a forensic accounting of the expenditure of over $90 million of investor monies and filed a number of recovery actions. In addition, after five of the principals in the group of entities pled guilty to federal criminal charges, the United States District Court

---

[4] In support of this Motion, the Debtor further submits the *Declaration of Joseph W. Grier, III*, which is attached hereto as Exhibit A (the "Grier Declaration"). A copy of Mr. Grier's *curriculum vitae* is attached as Schedule 1 to the Grier Declaration. The Grier Declaration, including Mr. Grier's *curriculum vitae*, is incorporated herein by reference.

appointed Mr. Grier as a special master to assist the District Court in fashioning restitution orders.

15. Mr. Grier also has served as the court-appointed federal receiver in Commodity Futures Trading Commission v. James Harvey Mason, Case No. 3:13-CV-196 (GCM) (W.D.N.C.), Commodity Futures Trading Commission v. Barki, et al., Case No. 3:09-CV-106 (GCM) (W.D.N.C.), and Commodity Futures Trading Commission v. CapitalStreet Financial LLC, et al., Case No. 3:09-CV-387 (RJC-DCK) (W.D.N.C.). In that capacity, Mr. Grier has collected millions of dollars in assets, adjudicated claims to those assets, and made distributions to claimants.

16. Directly relevant to this Chapter 11 Case, Mr. Grier was found to possess qualifications necessary to serve as the future claimants' representative in the jointly administered bankruptcy cases of Aldrich Pump and Murray Boiler (together, referred to herein as "Aldrich/Murray") and the Garlock bankruptcy case. In re Aldrich Pump LLC, et al., Case No. 20-30608 (JCW) [Dkt. 389] (Bankr. W.D.N.C. Oct. 14, 2020); In re Garlock Sealing Techs., Case No. 10-31607 (GRH) [Dkt. 512] (Bankr. W.D.N.C. Sept. 16, 2010).

17. Despite the highly contested nature of the Garlock case, Mr. Grier was able to represent effectively the interests of future claimants while working with the debtors and the official committee of asbestos claimants to formulate and obtain confirmation of a plan of reorganization under section 524(g) that established a trust to pay present and future claimants. Mr. Grier currently serves as the future claims representative for the Garlock trust.

18. Similarly, in the Aldrich/Murray cases, Mr. Grier has participated in lengthy, hard-fought negotiations with the debtors and their non-debtor affiliates. These negotiations ultimately resulted in a settlement among Mr. Grier, the debtors, and their

non-debtor affiliates that would provide funding for a trust to compensate current and future asbestos claimants in the amount of $545 million. The asbestos claimants' committee in the Aldrich/Murray cases has thus far refused to engage in settlement negotiations with either the debtors or Mr. Grier.

19. That Mr. Grier is well-qualified to serve as a future claimants' representative is further demonstrated by the fact that the Office of the United States Trustee (the "U.S. Trustee"), which, among other things, serves as an independent watch-dog in bankruptcy cases and has no economic stake in any individual case, has proposed Mr. Grier as a future claimants' representative candidate in other recent mass tort cases. See, e.g., In re Paddock Enters., LLC, Case No. 20-10028 (LSS) [Dkt. 192] (Bankr. D. Del. Mar. 13, 2020); In re Maremont Corp., Case No. 19-10118 (LSS) [Dkt. 68] (Bankr. D. Del. Feb. 20, 2019); In re The Fairbanks Co., Case No. 18-41768 (PWB) [Dkt. 202] (Bankr. N.D. Ga. Jan. 31, 2019).

20. The Debtor believes that Mr. Grier's many years of experience serving in a broad range of fiduciary capacities—including his directly relevant experience as future claimants' representative in the Aldrich/Murray and Garlock cases—and his many years of practice make him highly qualified and well-suited to represent the interests of the future claimants in this Chapter 11 Case.

21. Moreover, in reliance on the Grier Declaration, the Debtor further believes that Mr. Grier is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, and has no adverse interest that would preclude his appointment as Future Claimants' Representative in this Chapter 11 Case.

***The Breadth of Mr. Grier's Experience and His Independence Will Best Serve the Interests of Future Claimants and This Chapter 11 Case.***

22. The Debtor submits that Mr. Grier's broad-based experience, unequivocal

independence, and ability and willingness to "work across the aisle" set him apart from other potential candidates and make him particularly well-positioned to represent the interests of future claimants.

23. Unlike other candidates who have various connections to and routinely are recommended by law firms that sit on mass tort claimants' committees, Mr. Grier has no such connections. Indeed, he was appointed by the Court in the Aldrich/Murray cases over the objection of the asbestos claimants' committee. As a result, the Debtor does not foresee any risk or have any concern that his representation of future claimants in this case might be influenced by (a) any connection to law firm members of the Talc Committee or (b) any expectation or possibility of a recommendation for a role in a subsequent mass tort-related case. Rather, the Debtor anticipates that Mr. Grier's undivided focus will be on representing vigorously the interests of the future claimants in this case, recognizing that those interests, at times, may be adverse to the Talc Committee, the Debtor, or both.

24. Notably, Mr. Grier's suitability for the role of future claimants' representative and independence also has been recognized and highlighted by the U.S. Trustee's office in its recommendations of Mr. Grier to serve as a future claimants' representative in other cases. See, e.g., In re The Fairbanks Co., Case No. 18-41768 (PWB) Hearing Tr. 30:23-31:1 (Bankr. N.D. Ga. Mar. 29, 2019) ("Mr. Grier has served as an FCR in the past and successfully so and he brought a fresh look into the process, which is something that needs to be done here . . . ");[5] In re Paddock Enters., LLC, Case No. 20-10028 (LSS) [Dkt. 192 ¶ 10] (Bankr. D. Del. Mar. 13, 2020) (proposing Mr. Grier as one of two candidates for future claimants' representative

---

[5] An excerpt of this transcript is attached hereto as Exhibit B.

and noting that the candidates "generally do not have the long history of entanglements with other parties and professionals in this case…[t]he Court may therefore be assured that either would provide truly independent representation to future claimants.").

25. The importance of having an independent future claimants' representative like Mr. Grier goes beyond Mr. Grier's ability to zealously advocate for his constituency. The Debtor does not underestimate that achieving a consensual resolution in this case will require significant work. In Garlock, though the interests of his constituency conflicted—significantly at times—with both the interests of the debtors and the interests of the official committee of asbestos claimants, Mr. Grier proved his ability to work towards a consensual result that benefitted all parties, while still effectively and rigorously representing future claimants. Similarly, in Aldrich/Murray, Mr. Grier engaged in extensive negotiations with the debtors to reach a settlement for the benefit of his constituency and continues to advocate for, and work towards, a consensual resolution with the committee representing current asbestos claimants. For these reasons, the Debtor believes that Mr. Grier's appointment will not only be in the best interests of the future claimants, but in the best interests of all parties in this Chapter 11 Case.

**Terms and Conditions of Mr. Grier's Appointment**

26. The Debtor requests that the appointment of Mr. Grier be approved on the following terms and conditions:

>   (a)   Appointment. Mr. Grier will be appointed as the Future Claimants' Representative to represent and protect the rights of persons who may, subsequent to confirmation of a plan of reorganization for the Debtor, hold claims against the Debtor related in any way to talc or talc-containing materials that are based on, arising out of, or related to injury, disease, or death that has not manifested, become evident, or been diagnosed as of the effective date of a plan (collectively, the "Future Claimants"). The Future Claimants' Representative shall represent the interests of, appear and act on behalf of, and be a fiduciary to Future Claimants to protect the

NAI-1523893394                                    -10-

    rights and interests of such Future Claimants and shall be entitled to compensation in connection therewith from the date of the filing of this Motion.  However, Mr. Grier shall not be obligated to perform the duties of Future Claimants' Representative until the Court has entered an order appointing Mr. Grier as Future Claimants' Representative, nor shall Mr. Grier be liable to any party on account of services performed prior to entry of such order.  Mr. Grier will have no other obligations except those that may be prescribed by orders of the Court and accepted by Mr. Grier.

(b)     <u>Party in Interest</u>.  The Future Claimants' Representative shall be a party in interest in this case and shall have standing under section 1109(b) of the Bankruptcy Code to be heard on any issue in this case in the Bankruptcy Court, the District Court, or any other court affecting the rights of Future Claimants.  The Future Claimants' Representative shall have the powers and duties of a committee set forth in section 1103 of the Bankruptcy Code as are appropriate for a Future Claimants' Representative.

(c)     <u>Engagement of Professionals</u>.  Mr. Grier may employ attorneys and other professionals consistent with sections 105, 327, and 1103 of the Bankruptcy Code, subject to prior approval of this Court.  Such attorneys and other professionals will be subject to the terms of any order establishing procedures for interim compensation and reimbursement of expenses of retained professionals entered by this Court (an "<u>Interim Compensation Order</u>").

(d)     <u>Compensation</u>.  Compensation, including professional fees and reimbursement of expenses, will be payable to Mr. Grier and his professionals from the Debtor's estate, subject to approval of this Court, and in accordance with the terms, conditions, and procedures set forth in the Interim Compensation Order.  Mr. Grier will be compensated at the rate of $600 per hour, subject to periodic adjustment (usually on January 1 of each year) in the ordinary course of Mr. Grier's business, plus reimbursement of actual, reasonable, and documented out-of-pocket expenses.

(e)     <u>Liability Insurance</u>.  Mr. Grier will be covered by his own firm's liability insurance without any additional cost to the Debtor's estate.

(f)     <u>Indemnification</u>.  The Future Claimants' Representative shall not be liable for any damages, or have any obligation other than as prescribed by order of the Court; provided, however, that the Future Claimants' Representative may be liable for damages caused by willful misconduct or gross negligence.  The Future

Claimants' Representative shall not be liable to any person as a result of any action or omission taken or made in good faith. The Debtor jointly and severally shall indemnify, defend, and hold harmless Mr. Grier, his partners, associates, principals, employees, and professionals (individually an "Indemnified Party") from all claims against any of them, and all losses, claims, damages, or liabilities (or actions in respect thereof) to which any of them may become subject, as a result of or in connection with such party rendering services pursuant to any order approving this Motion or to the Future Claimants' Representative, unless and until it is finally judicially determined that such losses, claims, damages, or liabilities were caused by willful misconduct or gross negligence on the part of such Indemnified Party. If before the earlier of (i) the entry of an order confirming a plan of reorganization in this case, and such order having become final and no longer subject to appeal, and (ii) the entry of an order closing this Chapter 11 Case, an Indemnified Party believes that he, she, or it is entitled to payment of any amount by the Debtor on account of the Debtor's obligation to indemnify, defend, and hold harmless as set forth herein, including, without limitation, the advancement of defense costs, the Indemnified Party must file an application for such amounts with the Court, and the Debtor may not pay any such amounts to the Indemnified Party before the entry of an order by the Court authorizing such payments. The preceding sentence is intended to specify the period of time during which the Court has jurisdiction over the Debtor's obligations to indemnify, defend, and hold harmless as set forth herein, and is not a limitation on the duration of the Debtor's obligation to indemnify any Indemnified Party. In the event that a cause of action is asserted against any Indemnified Party arising out of or relating to the performance of his, her, or its duties pursuant to any order approving the Motion or to the Future Claimants' Representative, the Indemnified Party shall have the right to choose his, her, or its own counsel.

(g) Right to Receive Notices. Mr. Grier and any Court-approved counsel retained by Mr. Grier will be deemed members of the "Master Service List" (or equivalent thereof) for purposes of any order establishing notice, case management and administrative procedures (a "Case Management Order").

(h) Termination of Appointment. Unless otherwise ordered by the Court or provided for in any confirmed plan of reorganization, Mr. Grier's appointment as Future Claimants' Representative will terminate upon the effective date of a plan of reorganization in this Chapter 11 Case or otherwise by written resignation or incapacity to serve.

27. The Debtor believes that the proposed terms of Mr. Grier's employment are consistent with the terms typically approved by bankruptcy courts for such appointments.

28. For all of the foregoing reasons, the Debtor submits that the appointment of Mr. Grier as Future Claimants' Representative is in the best interests of the Debtor, its estate, the Future Claimants, and all other parties in interest.

**Notice**

29. Notice of this Motion has been provided to (a) the Office of the United States Trustee for the District of New Jersey; (b) counsel to the Talc Committee; (c) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Consumer Inc. and Johnson & Johnson; (d) the proposed Future Claimants' Representative and his counsel; and (e) any other party entitled to notice pursuant to D.N.J. LBR 9013–1(m). The Debtor respectfully submits that no further notice is required.

**No Prior Request**

30. No prior request for the relief sought in this Motion has been made to this or any other court in connection with the Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court enter an order: (a) appointing Joseph W. Grier, III as legal representative for Future Claimants; and (b) granting such other and further relief to the Debtor as the Court may deem just and proper.

<table>
<tr><td>Dated: December 6, 2021</td><td>

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon
Brad B. Erens
Dan B. Prieto
Amanda Rush
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)
PROPOSED ATTORNEYS FOR DEBTOR
</td></tr>
</table>