# JONES DAY

2727 NORTH HARWOOD STREET • DALLAS, TEXAS 75201.1515

TELEPHONE: +1.214.220.3939 • FACSIMILE: +1.214.969.5100

DIRECT NUMBER: (214) 969-3759
GMGORDON@JONESDAY.COM

December 7, 2021

The Honorable Michael B. Kaplan
United States Bankruptcy Court, District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street, Courtroom #8
Trenton, NJ 08608

Re:  LTL Management LLC, Case No. 21-30589(MBK)

Dear Judge Kaplan:

This responds to Mr. Glasser's letter submitted yesterday on behalf of the Talc Claimants' Committee ("TCC").

As an initial matter, the Debtor has not refused to make Ms. Goodridge available for deposition. To the contrary, in a detailed response to the TCC's discovery requests, which I sent to Mr. Glasser on December 3, 2021, the Debtor proposed a list of potential deponents with knowledge about the corporate restructuring and bankruptcy filing, and Ms. Goodridge was the first person included on that list. Tellingly, the TCC sent its letter raising what is in reality a non-issue shortly after we advised the TCC that we intended to seek relief from Your Honor regarding the TCC's discovery demands.

The issue is not the deposition of Ms. Goodridge but rather the gross over breadth of the TCC's discovery requests. The claimants have already had significant discovery in this case regarding the corporate restructuring and related matters. In the preliminary injunction adversary proceeding, the claimants deposed five witnesses for more than 20 hours. At the hearings on the automatic stay and preliminary injunction, John Kim, the Chief Legal Officer of LTL, testified for two days and was cross-examined extensively. The claimants served 35 document requests, 19 interrogatories and a request for admission. LTL responded to all these requests and produced almost 2,750 documents totaling approximately 23,600 pages.

Despite this significant prior discovery, the discrete issues raised by the motion to dismiss and the limited time available between now and the February 15, 2022 hearing date (which includes a number of intervening holidays), the TCC served LTL with extensive additional discovery, including requests for admission, interrogatories and 67 document requests. The TCC also asked for (a) E-discovery from 78 custodians (the list is attached to the document requests), which include at least 15 in-house and outside counsel, members of the Johnson & Johnson

JONES DAY

December 7, 2021
Page 2

Board of Directors and members of the Johnson & Johnson Executive Committee (including the Chief Executive Officer of Johnson & Johnson), (b) privilege logs for all privileged communications generated from this custodian search and (c) proposed search terms for E-discovery that include such generic words as "talc," "baby powder" and "cancer." And the TCC has asked that the Debtor complete its production of documents by January 10, 2022. For the Court's convenience, I have attached copies of the TCC's discovery requests to this letter.

On top of this written discovery, the TCC also seeks to take an indefinite number of depositions. It has refused to discuss any limit on the number of depositions and has not even agreed to limit the number to the 10 permitted by the Federal Rules for an entire civil case.

Finally, the TCC has insisted that it must take three initial "exploratory" depositions, including the deposition of Ms. Goodridge, within the next week or two (the Debtor is uncertain why the TCC's letter only mentions one of the three), depriving the Debtor of any meaningful time to prepare the witnesses. Notwithstanding this, the Debtor offered to provide one of the three individuals late this week (and would also be amenable to providing Ms. Goodridge in lieu of the person we offered, either late next week or early the following week), provided the TCC agrees to a reasonable deposition limit. As I indicated, the TCC has not been willing to even discuss a limit.

It is simply not possible for the Debtor to comply with the TCC's excessive discovery requests. The collection and review of E-discovery for 78 custodians alone could not be completed before the hearing on February 15, 2022. Preparation of privilege logs and the time needed to prepare an unspecified number of witnesses for deposition would only further expand the scope and burden beyond what is reasonable and appropriate given the expedited proceedings and discrete issues.

The Debtor respectfully requests the Court's assistance in substantially narrowing the scope of the TCC's discovery requests. In the Debtor's view, depositions and custodians should be limited to five to seven individuals each. Based on the discovery the claimants have already taken, the TCC has the information it needs to narrow its requests to this number and, in a meet and confer yesterday, the Debtor provided TCC's counsel with additional information on the TCC's 78-person custodian list to assist it in winnowing down that list to a manageable number of potential deponents and custodians.

The motion to dismiss raises only a discrete number of issues. The claimants have already had substantial discovery regarding the corporate restructuring and the Debtor is willing to provide substantial additional discovery. The TCC's overbroad requests are disproportionate to the needs of the motion to dismiss and the accelerated time frame under which the parties are

**JONES DAY**

December 7, 2021
Page 3

operating does not provide the Debtor with sufficient time to even remotely comply with the discovery requests as currently formulated.

We respectfully submit that the Court should not permit discovery that is irrelevant and unnecessary to the dismissal motion. The Court may reserve for another day whether the discovery, much of which appears to relate to other issues, should be allowed in connection with any future matter in this case. The Debtor, of course, would likewise reserve its rights in the event the discovery is later propounded in another matter.

We are available for a call at 4 pm today and respectfully request that Your Honor consider these requests at that time.

Respectfully submitted,

Gregory M. Gordon   w/permission
D. Stone

NAI-1524115201v3

# ENCLOSURE 1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor.[1] | |

## FIRST SET OF INTERROGATORIES BY OFFICIAL COMMITTEE OF TALC CLAIMANTS TO DEBTOR LTL MANAGEMENT LLC IN CONNECTION WITH MOTION TO DISMISS

TO:    LTL Management LLC, c/o its attorneys of record, James N. Lawlor, Wollmuth Maher & Deutsch LLP., 90 Washington Valley Road, Bedminster, NJ  07921 and Gregory M. Gordon, Esq., Jones Day, 2727 N. Harwood Street, Dallas, TX 75201

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules"), incorporated in this contested matter by Rules 7026, 7033 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Talc Claimants (the "TCC"), by its undersigned counsel, hereby requests that LTL Management LLC respond to the following Interrogatories no later than December 31, 2021.

## DEFINITIONS

1.    The "First Day Declaration" shall refer to the Declaration of John K. Kim in Support of First Day Pleadings, dated October 14, 2021, filed in the main bankruptcy case as Dkt. No. 5.

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

6768258.2

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalves.

3.   The terms "Identify" or "Identification" shall mean:

   a.   When used in reference to a natural person, the person's full name, present or last known address, present or last known telephone number(s), present or last known employer, position, title, and/or business affiliation.

   b.   When used in reference to a business entity, the entity's name and address, telephone number(s), principal place of business, and the legal nature of the entity (i.e., corporation, partnership, etc.).

   c.   When used in reference to a document, the description (i.e., letter, memorandum, report, etc.), its title and date, the number of pages thereof, the subject matter and author, the person or persons to whom it was directed, and its present location, and the identity of the person or entity presently having possession, control, or custody of such document.

4.      The phrases "Specify in all possible detail" or "describe in detail" means to describe completely and accurately the subject matter about which inquiry is made, using the simplest, most descriptive, and most factual statements of which the Debtor is capable.

5.      The "Requests for Admission" refers to the First Set of Requests for Admission by the Official Committee of Talc Claimants to Debtor LTL Management LLC in Connection with the Motion to Dismiss.

2

6768258.2

6.      The term "document" is defined to be synonymous in meaning and equal in scope

to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P.

34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic

media, the original and any draft, version or copy which differs in any way from the original of

any written or graphic matter, however produced or reproduced, of any kind or description,

whether sent or received (or neither), and it shall include, without limitation, any paper, book,

account, minutes, photograph, agreement, contract, memorandum, advertising material, letter,

e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed,

recorded, computer-generated, computer-stored, or otherwise maintained or reproduced

communication or representation, any database or data compilation in any form, whether

comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or

impulses, electronic data, active files, deleted files, file fragments, or any combination thereof

including, without limitation, all memoranda, notes, records, letters, envelopes, emails,

voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates,

working papers, accounts, analytical records, reports and/or summaries of investigations, opinions

or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other

reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers,

booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams,

instructions, minutes or meetings, correspondence, and communications of any type (including,

but not limited to, video files, audio files, inter- and intra-office communications), questionnaires,

surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (e.g. Microsoft

PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be

obtained (translated, if necessary, through intermediary or other devices into useable forms),

documents maintained on, stored in or generated on any electronic transfer or storage system, any

preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which the Debtor has access or of which the Debtor is aware .and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of Debtor, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on Debtor behalf.

7.      The term "all documents" means every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

8.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation, meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements and press releases, and newspaper stories.  References to communications with business entities shall be deemed to include all officers, directors, employees, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

4

9.      The term "all communications" shall mean each and every communication, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

10.      The term "electronic data," "electronic database," "database" and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal.  Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

5

11.    The term "electronic media" means any magnetic or other storage media device used to record electronic data.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

12.    The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

13.    The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them.  For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities, In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

14.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including

6

the operating system, private- and custom-developed applications, commercial applications and/or shareware.

15.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

16.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

17.    The "Petition Date" shall refer to October 14, 2021.

18.    "Motion" shall refer to the TCC's Motion to Dismiss the Debtor's Chapter 11 Case pursuant to § 1112(b).

19.    The "Adversary Proceeding" refers to the adversary proceeding captioned, *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1 – 1000*, Adv. Pro. No. 21-03032 MBK, now pending in the United States Bankruptcy Court for the District of New Jersey.

20.    The "2021 Corporate Restructuring" shall refer, individually and collectively, to the series of corporate or company transactions and filings, whenever they occurred, that culminated in the formation, capitalization and/or re-domiciling of the Debtor and New JJCI on or about October 12, 2021, involving all entities and transactions that resulted in the division of Chenango Zero LLC ("Chenango Zero") into the Debtor and New JJCI as described in Section II of the First Day Declaration.

21.    "Financial statements" means such records that reflect the financial performance of an entity during a particular time period and/or as of a particular date, as the context requires, and include, but are not limited to, the consolidated and consolidating balance sheet, income statement and statement of cash flow, along with associated notes, footnotes, exceptions or management discussion and analysis.

22.    Plural words include the singular equivalent, and singular words include the plural equivalent.

23.    The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.    In answering these Interrogatories, the Debtor is required to furnish all information available to the Debtor or subject to reasonable inquiry by the Debtor, including, but not limited to, information in the Debtor's possession, the possession of the Debtor's attorneys, accountants, advisors, or other persons directly or indirectly employed by the Debtor, the Debtor's attorney, or anyone else otherwise subject to the Debtor's control.

2.    These Interrogatories shall be continuing in nature until the date of the Motion to Dismiss Hearing, and the Debtor is required to serve supplemental answers as additional information may become or be made available to You.

3.    These Interrogatories call for all information available to the Debtor, including, without limitation, information available to the Debtor's agents, attorneys and/or other representatives.

4.    Each Interrogatory must be answered separately and fully in writing under oath.

5.    If the Debtor claims the information necessary to answer an Interrogatory is not available to it, the Debtor shall so state and answer the Interrogatory in as detailed a fashion as possible, and identify all persons known to have such knowledge.

6.    In each instance where an Interrogatory is answered based on information and belief, the Debtor shall set forth the basis for such information and belief.

7.    If the Debtor elects to specify and produce business records in response to any Interrogatory, the Debtor must comply with Rule 33(d) of the Federal Rules.

8.    If the Debtor objects to any Interrogatory or any part thereof, you shall identify the Interrogatory or part thereof to which you object, state with specificity all grounds for the objection and answer any portion of the Interrogatory to which you do not object.

9.    These Interrogatories are continuing in nature.  Pursuant to Rule 26(e) of the Federal Rules, the Debtor is required promptly to supplement or correct any answer to these Interrogatories if it learns that the answer is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the TCC during the discovery process or in writing.

10.    The TCC reserves the right to amend, supplement and/or modify these Interrogatories.

## **INTERROGATORIES**

1.    Identify each person who, at any time between March 1, 2021 and the present, is, was or has been a member of the Board of Directors, or Board of Managers, as applicable, or was the sole member, manager or shareholder of each entity in the chain of ownership between J&J and the Debtor, inclusive, including, but not limited to, each such member of the Board of Directors or Board of Managers, or each sole member, manager or shareholder, of J&J, Janssen Pharmaceuticals, Inc., Old JJCI, Chenango Zero, Chenango One, Chenango Two, Currahee, New JJCI and the Debtor.

6768258.2

2.      If the Debtor's response to any request for admission in the Requests for Admission is anything other than an unqualified "admit," describe in detail the bases on which the Debtor will not admit the request.

3.      State the total worldwide sales, in terms of gross revenue, of talcum powder products by Old JJCI in fiscal year 2020 and fiscal year to date 2021.

4.      State the total worldwide sales, in terms of gross revenue, of talcum powder products by New JJCI in November 2021.

5.      Identify all public relations and consulting firms involved in the 2021 Corporate Restructuring, any aspect of "Project Plato," or who handle work associated with public relations in respect of this bankruptcy action or the MDL litigation in front of Judge Wolfson.

Dated: December 1, 2021                   Respectfully submitted,

**GENOVA BURNS LLC**                      **BROWN RUDNICK LLP**
Daniel M. Stolz                           David J. Molton
110 Allen Road                            Robert J. Stark
Suite 304                                 Jeffrey L. Jonas
Basking Ridge, NJ 07920                   Michael Winograd
Tel: 973-467-2700                         7 Times Square
Fax: 973-467-8126                         New York, NY 10036
Email: dstolz@genovaburns.com             Tel: 212-209-4800
                                          Fax: 212-209-4801
                                          Email: dmolton@brownrudnick.com
                                                 rstark@brownrudnick.com
                                                 jjonas@brownrudnick.com
                                                 mwinograd@brownrudnick.com
                                          -and-
                                          Sunni Beville
                                          One Financial Center
                                          Boston, MA 02111
                                          Tel: 617-856-8200
                                          Fax: 617-856-8201
                                          Email: sbeville@brownrudnick.com

6768258.2

**BAILEY GLASSER LLP**
Brian A. Glasser
Thomas B. Bennett
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC  20007
Tel: 202-463-2101
Fax: 202-463-2103
Email: bglasser@baileyglasser.com
       tbennett@baileyglasser.com

**MASSEY & GAIL LLP**
Jonathan S. Massey
1000 Maine Avenue SW
Suite 450
Washington, DC 20024
Tel: 202-652-4511
Fax: 312-379-0467
Email: jmassey@masseygail.com

**OTTERBOURG P.C.**
Melanie L. Cyganowski
Adam C. Silverstein
John Bougiamas
230 Park Avenue
New York, NY 10169
Tel: 212-905-3628
Fax: 212-682-6104
Email: mcyganowski@otterbourg.com
       asilverstein@otterbourg.com

**PARKINS LEE & RUBIO LLP**
Lenard M. Parkins
Charles M. Rubio
Pennzoil Place
700 Milam Street
Suite 1300
Houston, Texas 77002
Phone: 713-715-1666
Email: lparkins@parkinslee.com
       crubio@parkinslee.com

*Proposed Co-Counsel for the Official Committee of Talc Claimants*

6768258.2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing FIRST SET OF

INTERROGATORIES BY OFFICIAL COMMITTEE OF TALC CLAIMANTS TO DEBTOR

LTL MANAGEMENT LLC IN CONNECTION WITH MOTION TO DISMISS by DISMISS

by regular mail and electronic mail to the email addresses identified below, which is the last

email address know to me:

> James N. Lawlor
> Wollmuth Maher & Deutsch LLP.
> 90 Washington Valley Road
> Bedminster, NJ  07921
> jlawlor@wmd-law.com
>
> Gregory M. Gordon, Esq.
> Jones Day
> 2727 Harwood Street
> Dallas, TX 75201
> gmgordon@jonesday.com
>
> Attorneys for Plaintiff LTL Management LLC

Dated: December 1, 2021                     /s/ Brian A. Glasser
                                            Brian A. Glasser

12

6768258.2

# ENCLOSURE 2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor.[1] | |

**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS BY OFFICIAL**
**COMMITTEE OF TALC CLAIMANTS TO DEBTOR LTL**
**MANAGEMENT LLC IN CONNECTION WITH MOTION TO DISMISS**

TO:    LTL Management LLC, c/o its attorneys of record, James N. Lawlor, Wollmuth Maher & Deutsch LLP., 90 Washington Valley Road, Bedminster, NJ 07921 and Gregory M. Gordon, Esq., Jones Day, 2727 N. Harwood Street, Dallas, TX 75201

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants, by its proposed undersigned counsel, hereby requests that LTL Management LLC produce the documents specified below by electronic means to the Bailey Glasser LLP, 923 Haddonfield Road, Suite 300, Cherry Hill, NJ 08002, attention: Katherine E. Charonko, Esq., kcharonko@baileyglasser.com, in accordance with the schedule agreed upon by the parties, on a rolling basis to be completed on or before December 31, 2021, at 5:00 p.m.

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## **DEFINITIONS**

1.      The "First Day Declaration" shall refer to the Declaration of John K. Kim in Support of First Day Pleadings, dated October 14, 2021, filed in the main bankruptcy case as Dkt. No. 5.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalves.

3.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations,

2

opinions or reports of consultants, opinions or reports of experts, opinions or reports of

accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles,

magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts,

drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of

any type (including, but not limited to, video files, audio files, inter- and intra-office

communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films,

webcasts, presentations (e.g. Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all

other compiled data which can be obtained (translated, if necessary, through intermediary or

other devices into useable forms), documents maintained on, stored in or generated on any

electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the

foregoing, electronically stored information (of any kind), object, report, record, summary

accounting, transcript, study, notation, working paper, interoffice or intraoffice communication,

charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery

ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or

conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic

matter or data compilations, however produced or reproduced, to which the Debtor has access or

of which the Debtor is aware .and other writings or documents of whatever description or kind,

whether produced or authorized by or on behalf of Debtor or anyone else, and shall include all

non-identical copies and drafts of any of the foregoing now in the possession, custody or control

of Debtor, or the former or present directors, offices, counsel, agents, employees, partners,

consultants, principals, and /or persons acting on Debtor behalf.

   4.  The term "all documents" means every document, whether an original or copy,

known to you or which you can locate or discover by reasonably diligent effort, within your

6768270.2

custody, possession or control, or the custody, possession or control of your present or former

attorneys, accountants, insurance carriers, representatives, employees and/or agents.

5.      The term "communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise) including but not limited to any oral or written transmittal

and/or receipt of facts, information, thoughts, inquiries, opinions, including, without limitation,

meetings, conversations in person, telephone conversations, records of conversations or

messages, telegrams, telexes, facsimile transmissions, electronic mail transmissions, letters,

reports, memoranda, formal statements and press releases, and newspaper stories. References to

communications with business entities shall be deemed to include all officers, directors,

employees, agents, attorneys, accountants, consultants, independent contractors, or other

representatives of such entities.

6.      The term "all communications" shall mean each and every communication,

whether an original or copy, known to you or which you can locate or discover by reasonably

diligent effort, within your custody, possession or control, or the custody, possession or control

of your present or former attorneys, accountants, insurance carriers, representatives, employees

and/or agents.

7.      The term "electronic data," "electronic database," "database" and "data" mean the

original (native electronic format) and any non-identical copies (whether non-identical because

of notes made on copies or attached comments, annotations, marks, transmission notations, or

highlighting of any kind) of writings of every kind and description whether inscribed by

mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way

of example only, computer programs (whether private, commercial or works-in-progress),

programming notes or instructions, activity listings or electronic mail receipts and /or

transmittals, output resulting from the use of any software program, including word processing

4

documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

8.      The term "electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and /or transmittal.

9.      The term "native electronic format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices and networks or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

10.     The term "network" means any hardware and /or software combination that connects two or more computers together and which allows the computers to share and/or

transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities, In addition, there need not be a central file or data server nor a central network operating system in place, i.e. peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

11.    The term "computer" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

12.    The terms "concern" or "concerning" shall mean refer to, allude to, related to, connected with, in respect of, about, regarding, discussing, showing, evidencing, describing, in support of, in substitution of, reflecting, and analyzing.

13.    The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

14.    The "Petition Date" shall refer to October 14, 2021.

6

15.     "Motion" shall refer to the TCC's Motion to Dismiss the Debtor's Chapter 11 Case pursuant to § 1112(b).

16.     The "Adversary Proceeding" refers to the adversary proceeding captioned, *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1 – 1000*, Adv. Pro. No. 21-03032 MBK, now pending in the United States Bankruptcy Court for the District of New Jersey.

17.     The "2021 Corporate Restructuring" shall refer, individually and collectively, to the series of corporate or company transactions and filings, whenever they occurred, that culminated in the formation, capitalization and/or re-domiciling of the Debtor and New JJCI on or about October 12, 2021, involving all entities and transactions that resulted in the division of Chenango Zero LLC ("Chenango Zero") into the Debtor and New JJCI as described in Section II of the First Day Declaration.

18.     The "Closing Binder" shall refer to the final, compiled record (in whatever form) of the fully-executed transaction documents delivered to the parties in connection with the 2021 Corporate Restructuring.

19.     "Decision Maker" means each officer, director, member, or manager of an entity.

20.     "Financial statements" means such records that reflect the financial performance of an entity during a particular time period and/or as of a particular date, as the context requires, and include, but are not limited to, the consolidated and consolidating balance sheet, income statement and statement of cash flow, along with associated notes, footnotes, exceptions or management discussion and analysis.

21.     "Lisman Deposition" shall refer to transcript of the October 30, 2021 deposition of Adam Lisman taken in connection with the Adversary Proceeding.

7

22.     "Identified Custodians" are those persons identified as custodians for the purpose of conducting searches of documents requested herein and listed in the attached Document Custodian List.

23.     Plural words include the singular equivalent, and singular words include the plural equivalent.

24.     The term "and" includes the disjunctive "or," and "or" includes the conjunction "and."

## **INSTRUCTIONS**

1.     Documents and communications that the Debtor has already produced in the Adversary Proceeding, which are Bates numbered LTL 0000001 to LTL 023608, need not be produced in response to these requests; provided that, such documents shall be identified pursuant to Instruction 9 below.

2.     If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall comply with Local Bankruptcy Rule 7026-1 and, in addition, identify:

> a.     the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

> b.      (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

3.      A request for a document shall be deemed to include a request for all transmittal sheets, cover letters, transmittal emails, exhibits, enclosures and attachments to the document, in addition to the document itself.

4.      A request for a document shall be deemed to include a request for all drafts, revisions, modifications, versions and supplements thereof, in addition to the original document itself.

5.      The masculine or feminine gender of any word shall be construed to include the masculine, feminine and neuter genders.

6.      The past tense of any verb shall embrace and be applied as the present tense, or the context requires or as applicable, and vice versa.

7.      Each request is to be construed and considered to act independently, and is not to be referenced to any other request for purposes of limitation.

8.      These requests are intended to cover all documents (including, without limitation electronically stored information), wherever located, in Debtor's possession, custody or control, including, without limitation, all documents in the personal possession of any agent, attorney, servant, employee, officer, director, affiliate, subsidiary, corporate parent, expert and other representative of Debtor, and any other person or entity from which Debtor may obtain documents.

9.      Given the Debtor's lack of any regular course of business, due to its bankruptcy filing two days after its formation, documents produced in response to these requests shall be clearly organized and labeled to correspond to the categories in these requests so as to indicate which documents are being produced in response to which numbered request. In the event that any documents called for by these requests were produced by the Debtor in the Adversary

6768270.2

Proceeding, the Debtor shall identify by Bates number the previously-produced documents that are responsive to each request herein.

10.    If the parties agree, then production of documents shall be governed by the procedures set forth in the Discovery Plan governing the production of paper documents ("hardcopy") and electronically stored information ("ESI"), which shall apply to all discovery of ESI and hardcopy documents in this case.

## **REQUESTS FOR PRODUCTION**

1.    All documents and communications concerning the 2021 Corporate Restructuring, including, without limitation, (i) any certificates and other documents filed with any governmental departments, agencies, units or entities, (ii) all organizational documents, *e.g.,* limited liability company ("LLC") or operating agreements, shareholder agreements, by-laws, and articles of incorporation, any amendments or modifications thereto, and any drafts thereof, and (iii) all intercompany or third-party agreements related to the 2021 Corporate Restructuring, including but not limited to any non-disclosure agreements, employment agreements, consulting agreements along with drafts, mark-ups or comments on documents used, considered, executed and/or filed in connection with the 2021 Corporate Restructuring.

2.    A copy of the full Closing Binder and any exhibits, schedules, agreements, ancillary agreements, including, without limitation, side-letters, included therein or prepared in connection therewith, related to the 2021 Corporate Restructuring.

3.    Copies of each draft version of each document in the Closing Binder and communications related thereto.

4.    Any workflow lists, task lists or closing checklists generated or received in connection with the 2021 Corporate Restructuring and all communications related thereto.

10

5.      Financial Statements, whether or not printed or transmitted, for Old JJCI as of the date and time immediately prior to Old JJCI's merger into Chenango Zero, including, without limitation, any such Financial Statements communicated, prior to the merger of Old JJCI into Chenango Zero, to any Decision Maker involved with the decision to effectuate such merger.

6.      All communications concerning the decision to merge Old JJCI into Chenango Zero to or from any Decision Maker involved with the decision to merge Old JJCI into Chenango Zero.

7.      Financial Statements, whether or not printed or transmitted, for Old JJCI as of the end of each of the 2018, 2019, and 2020 fiscal years, and as of the end of each quarter (or any stub period therein) during the first three quarters of fiscal year 2021.

8.      Copies of any Financial Statements, whether or not printed or transmitted, for Chenango Zero as of the date and time immediately prior to Old JJCI's merger into Chenango Zero, including, without limitation, any such Financial Statements communicated, prior to the merger of Old JJCI into Chenango Zero, to any Decision Maker involved with the decision to merge Old JJCI into Chenango Zero.

9.      Financial Statements, whether or not printed or transmitted, for Chenango Zero as of each of the date and time immediately prior to its divisive merger into Chenango One LLC ("Chenango One") and Chenango Two LLC ("Chenango Two").

10.     Financial Statements, whether or not printed or transmitted, for each of Chenango One and Chenango Two immediately after the divisive merger of Chenango Zero into Chenango One and Chenango Two, including, without limitation, any such Financial Statements, or pro forma Financial Statements, communicated, prior to the divisive merger of Chenango Zero, to any Decision Maker involved with the decision to effectuate such merger.

11

11.    Financial Statements, whether or not printed or transmitted, for Chenango Two as each of the date and time immediately prior to, and immediately after, its merger into Currahee, including, but not limited to, any such Financial Statements communicated, prior to the merger of Chenango Two into Currahee, to any Decision Maker involved with the decision to effectuate such merger.

12.    Financial Statements, whether or not printed or transmitted, for Currahee as of each of the date and time immediately prior to, and immediately after, Chenango Two's merger into Currahee, including, but not limited to, any such Financial Statements communicated, prior to the merger of Chenango Two into Currahee, to any Decision Maker involved with the decision to effectuate such merger.

13.    Financial Statements, whether or not printed or transmitted, for Chenango One as of each of the date and time immediately prior to, and immediately after, Chenango One's conversion into a North Carolina LLC, including, but not limited to, any such Financial Statements communicated, prior to the conversion of Chenango One into a North Carolina LLC, to any Decision Maker involved with the decision to effectuate such conversion.

14.    Financial Statements, whether or not printed or transmitted, for the Debtor as of immediately after its formation by conversion including, but not limited to, any such Financial Statements communicated to any Decision Maker involved with the decision to form the Debtor by conversion.

15.    Financial Statements, whether or not printed or transmitted, of Royalty A&M as of the date of its formation, including, but not limited to, any such Financial Statements communicated, prior to the decision to make Royalty A&M a subsidiary of the Debtor, to any Decision Maker involved with such decision.

6768270.2

16.     Financial Statements, whether or not printed or transmitted, of each of the Debtor, New JJCI and Royalty A&M as of the Petition Date.

17.     Financial Statements of each of the Debtor, New JJCI and Royalty A&M to any Decision Maker, at any time within two days prior to the Petition Date, communicated to any Decision Maker involved with the 2021 Corporate Restructuring.

18.     All documents concerning any valuation, whether formal or informal, external or internal, performed with respect to the Debtor, New JJCI, or any portion of either's assets or liabilities, including, but not limited to, the valuation itself and any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith.

19.     Each "Power Point slide," as described on pages 94 to 96 and 163 to 164 of the Lisman Deposition, for each quarter from the first quarter of 2016 to present.

20.     Each "accounting memo," as described on pages 27 to 29 and 145 to 146 of the Lisman Deposition, for each quarter from the first quarter of 2016 to the present.

21.     Any valuations or assessments of liabilities, reserves, or accruals, for talcum powder related claims, costs or liabilities, prepared in connection with J&J's consolidated financial reporting, and all communications concerning any such valuations or assessments, reserves or accruals.

22.     Documents sufficient to identify the name, address and amount owed to each creditor of Chenango One as of (a) the date of and immediately after the divisive merger of Chenango Zero into Chenango One and Chenango Two, and (b) the date and time immediately prior to Chenango One's conversion into a North Carolina LLC.

13

23. Documents sufficient to identify the name, address and amount owed to each creditor of the Debtor as of (a) the date of and immediately after Chenango One's conversion into a North Carolina LLC, and (b) the Petition Date.

24. Documents sufficient to identify all assets and liabilities allocated to Chenango One in the divisive merger of Chenango Zero.

25. Documents sufficient to identify all assets and liabilities allocated to Chenango Two in the divisive merger of Chenango Zero.

26. All documents and communications discussing or describing any bases or reasons for the allocation of assets and liabilities between Chenango One and Chenango Two in the divisive merger of Chenango Zero.

27. All documents concerning any valuation, whether formal or informal, external or internal, of any royalties assigned to or acquired by Royalty A&M, including, without limitation, any pro forma projections or budgets used in the valuation, any work papers or communications existing in connection therewith..

28. Documents sufficient to identify any royalty rights assigned to or acquired by Royalty A&M, including, but not limited to, copies of any such assignment, purchase or acquisition documents.

29. Any fairness opinion generated or received in connection with any aspect of the 2021 Corporate Restructuring, including, without limitation, the merger of Old JJCI into Chenango Zero and the divisive merger of Chenango Zero.

30. All documents concerning any decision to seek or not seek a fairness opinion in connection with any aspect of the 2021 Corporate Restructuring, including, without limitation, the merger of Old JJCI into Chenango Zero and the divisive merger of Chenango Zero.

6768270.2

31.     Any services agreements between J&J Services, on the one hand, and the Debtor or Royalty A&M, on the other, and any exhibits, schedules, amendments or modifications thereto.

32.     All communications by or on behalf of J&J, or any subsidiary or affiliate of J&J, to any insurance company, insurance agent or insuring broker concerning talcum powder liability, expense or fees on or after January 1, 2016.

33.     Any quarterly review or assessment by J&J and any subsidiary or affiliate of J&J concerning past and future talcum powder-related litigation liabilities, expenses and fees.

34.     All federal and state income tax returns filed within the United States of America by or on behalf of Old JJCI, and all schedules thereto, for each tax year from 2016 to the present.

35.     Organizational charts sufficient to identify the existence of, and relationship to J&J and the Debtor, of all J&J subsidiaries and affiliates organized in North America at any time from January 1, 2016 to the present.

36.     Organizational charts sufficient to identify the existence of, and relationship to J&J and the Debtor, of all J&J subsidiaries and affiliates organized outside North America at any time from January 1, 2016 to the present.

37.     Any accounts payable aging reports for Old JJCI, whether or not printed or transmitted, as of the end of each quarter for each of the first through third quarters of 2021 or any stub period thereof.

38.     All documents and communications concerning the purpose(s) and reason(s) for the 2021 Corporate Restructuring and each transaction therein.

39.     All documents concerning any reasons for the timing of the filing of the Debtor's bankruptcy case, including, but not limited to, any connection of the bankruptcy filing to (a) the

*Robert Ingham et al. v. Johnson & Johnson, et al.* or (b) J&J's announced spinoff of its consumer health business.

40.     Documents sufficient to identify each of the plaintiff(s), counsel for plaintiff(s), amount of agreed payment(s), date(s) of agreed payment(s), payor(s) of each agreed payment(s), bank account numbers and institution for each agreed payment(s) and releasees, for each settlement by J&J or any of any subsidiary of J&J of a talcum powder-related claim (regardless of claimed injury) at any time from January 1, 2016 to the present including any agreements for the settlement of any future talcum powder-related claim.

41.     Documents sufficient to identify each of the plaintiff(s), counsel for plaintiff(s), amount of agreed payment(s), date(s) of agreed payment(s), payor(s) of each agreed payment(s), bank account numbers and institution for each agreed payment(s) and releasees, for each judgment paid by or on behalf of J&J or any of any subsidiary of J&J of a talcum powder-related claim (regardless of claimed injury) at any time from January 1, 2016 to the present.

42.     Documents concerning any bases for Debtor's listing of the amount of $2 billion or more as a "receivable," "paid in capital" and an "asset" on its first Monthly Operating Report.

43.     All communications, at any time during the period of March 1, 2021 through October 31, 2021, inclusive, to or from (a) any person working in the Investor Relations or Finance departments, groups, or units of J&J and (ii) any other Decision Makers of J&J, Janssen Pharmaceuticals, Inc., Old JJCI, New JJCI, the Debtor, or any other subsidiary of J&J containing any of "bankruptcy," "bankrupt," "bk" "talc", "talcum powder", "ovarian cancer," "meso," "mesothelioma," "cancer," "baby powder," "Project Plato," "Plato," "stock performance," "stock price," "market," "reaction,", "fraud" "fraudulent," "two-step," "Chenango," "Currahee," "divisive merger", "automatic stay," "funding agreement," "LTL,"  "liability management," or "injunction."

16

44.    Any account agreements for the concentration bank account(s) into which all monies from operating subsidiaries of J&J in North America, as referred to on pages 41 and 42 of the Lisman Deposition, are swept on a daily or near-daily basis, and for any linked bank accounts involving any of the entities involved in the 2021 Corporate Restructuring or their corporate parents.

45.    Any intercompany loan, funding or finance agreements to which Old JJCI or New JJCI is or was a party at any time from January 1, 2019 to the present.

46.    Any intercompany loan, funding or finance agreement, and any exhibits, amendments, modifications thereto, to which the Debtor is a party.

47.    A mirror or copy of the hard drive of the laptop computer referred to on pages 29 and 31 of the Lisman Deposition.

48.    A copy of the "legal cost accounting" policy referred to on pages 42 and 43 of the Lisman Deposition

49.    All documents and communications concerning "Project Plato," including, without limitation, all documents and communications containing the term "Plato."

50.    Copies of any Board minutes or resolutions of J&J or any subsidiary of J&J discussing "Project Plato" or any aspect thereof and/or the resolution *en masse* of talcum powder-related liabilities, expenses and fees at any time from January 1, 2018 to the present.

51.    Documents sufficient to identify each Decision Maker and Identified Custodian involved with "Project Plato" or any aspect thereof and/or the resolution *en masse* of talcum powder-related liabilities, expenses and fees at any time from January 1, 2018 to the present.

52.    Any non-disclosure or consulting agreements signed by any person involved with the 2021 Corporate Restructuring or any aspect of "Project Plato" from January 1, 2018 to the present.

17

6768270.2

53.    All Jones Day billing records to any entity involved in the 2021 Corporate Restructuring or any aspect of "Project Plato" from January 1, 2021 to the present.

54.    Any power points or presentation materials created by Jones Day related to the 2021 Corporate Restructuring or any aspect of "Project Plato" from January 2021 to the present.

55.    All draft versions of the memorandum, dated Oct 11, 2021, titled "Approval Request – Memorandum of Approval," bearing Bates numbers LTL 0021791 – LTL 0021801 (the "Approval Memo"), and all communications concerning the Approval Memo, including, without limitations, any communications reflecting, including or enclosing approval of any transaction(s) identified in the Approval Memo.

56.    Any secondment agreements between or among J&J Services, on the one hand, and the Debtor and Royalty A&M, on the other, and all communications concerning the negotiation, drafting or execution thereof.

57.    Any intercompany loan, funding or finance agreement to which Royalty A&M is a party.

58.    Any indemnity agreements between or among Imerys Talc America Inc. or Cyprus Mines Corp., or any respective affiliate thereof, on the one hand, and J&J or any affiliate thereof, on the other.

59.    Unredacted versions of all minutes and resolutions of the J&J Board previously produced in the Adversary Proceeding.

60.    All communications, including e-mails, instant messages and text messages, at any time from March 1, 2020 through the present, to or from any of the Identified Custodians containing any of  "bankruptcy," "bankrupt," "bk" "talc", "talcum powder", "ovarian cancer," "meso," "mesothelioma," "cancer," "baby powder," "Project Plato," "Plato," "stock performance," "stock price," "market," "reaction,", "fraud" "fraudulent," "two-step,"

18

"Chenango," "Currahee," "divisive merger," "automatic stay," "stay," "funding agreement,"

"LTL," "liability management," or "injunction."

61.    All signature cards and account-related agreements or other documents concerning the Bank of America account ending in 3987 referred to in Dkt. No. 548.

62.    All documents discussing the basis or reasons for assigning the Debtor the 3987 bank account and the $6 million in cash that the Debtor received in the 2021 Corporate Restructuring.

63.    All documents concerning any secondment, employment, bonuses, LTIP, incentive pay, options, warrants, health or welfare benefits, pension or retirement benefits or any other thing of value received or receivable from J&J or any subsidiary or affiliate of J&J in connection with any work or services performed for the Debtor.

64.    All documents, generated or received by any Decision Maker after January 1, 2018, discussing or describing any alternative means of resolving talcum powder-related liabilities, expenses and fees other than the 2021 Corporate Restructuring.

65.    All Documents discussing or describing why Chenango One was re-domiciled as a North Carolina LLC.

66.    All documents concerning the proposed reorganization and rehabilitation of the Debtor, including, without limitation, any draft Chapter 11 plans, outlines of Chapter 11 plans, projections, and analyses of feasibility.

67.    Any documents that the Debtor expects to introduce at any hearing on the Motion.

6768270.2

Dated: December 1, 2021                    Respectfully submitted,

**GENOVA BURNS LLC**                       **BROWN RUDNICK LLP**
Daniel M. Stolz                           David J. Molton
110 Allen Road                            Robert J. Stark
Suite 304                                 Jeffrey L. Jonas
Basking Ridge, NJ 07920                   Michael Winograd
Tel: 973-467-2700                         7 Times Square
Fax: 973-467-8126                         New York, NY 10036
Email: dstolz@genovaburns.com             Tel: 212-209-4800
                                          Fax: 212-209-4801
                                          Email: dmolton@brownrudnick.com
                                                 rstark@brownrudnick.com
                                                 jjonas@brownrudnick.com
                                                 mwinograd@brownrudnick.com
                                          -and-
                                          Sunni Beville
                                          One Financial Center
                                          Boston, MA 02111
                                          Tel: 617-856-8200
                                          Fax: 617-856-8201
                                          Email: sbeville@brownrudnick.com


**BAILEY GLASSER LLP**                     **MASSEY & GAIL LLP**
Brian A. Glasser                          Jonathan S. Massey
Thomas B. Bennett                         1000 Maine Avenue SW
1055 Thomas Jefferson Street NW           Suite 450
Suite 540                                 Washington, DC 20024
Washington, DC  20007                     Tel: 202-652-4511
Tel: 202-463-2101                         Fax: 312-379-0467
Fax: 202-463-2103                         Email: jmassey@masseygail.com
Email: bglasser@baileyglasser.com
       tbennett@baileyglasser.com

**OTTERBOURG P.C.**                        **PARKINS LEE & RUBIO LLP**
Melanie L. Cyganowski                     Lenard M. Parkins
Adam C. Silverstein                       Charles M. Rubio
John Bougiamas                            Pennzoil Place
230 Park Avenue                           700 Milam Street
New York, NY 10169                        Suite 1300
Tel: 212-905-3628                         Houston, Texas 77002
Fax: 212-682-6104                         Phone: 713-715-1666
Email: mcyganowski@otterbourg.com         Email: lparkins@parkinslee.com
       asilverstein@otterbourg.com               crubio@parkinslee.com

*Proposed Co-Counsel for the Official Committee of Talc Claimants*

20

6768270.2

## Talc Creditors Committee (LTL Bankruptcy)

## Document Custodian List

| | | |
|---|---|---|
| Andrew, Chris | Green, N. | Mulcahy, Ann M. |
| Azevedo, Jose | Goodbridge, Michelle | Munoz, M. |
| Batesko, Peter | Gorsky, Alex | Murdica, Jim |
| Beckerle, Mary | Haas, Erik | Neat, Kevin |
| Borst, Chuck | Hewson, Maryllin | Nixon, Randy |
| Braunreuther, Joseph | Joly, Hubert | Orlando, Matthew |
| Brennan, Sarah | Kim, John | Picariello, Christopher |
| Cnossen, Valeria | Kerrane, Peter | Prince, Charles O. |
| Coulson, V. | Kowlalski, Steve | Purple Strategies |
| Davis, D.Scott | Kozak, J | Rivera, Stephen |
| Davis, Ian E.L. | Larkin, M. | Romanko, Lisa |
| DeCandia, Leonardo | Lawrence, Alyson | Ruh, Paul |
| Decker, Robert J. Jr. | Lisman, Adam | Ryan, Michelle |
| Devine, K. | Manfre, K. | Schneider, Mark |
| Deyo, Russell | McCann, Tom | Sneed, Michael |
| Dickinson, Richard | McClellan, Mark B. | Spellman, Thomas |
| Doudna, Jennifer A. | McKeegan, John | Stanzione, C. |
| Duato, Jaoquin | McGraw, D. | Stoffels, P. |
| Freinberg, Tony | McGraw, Donny | Taubert, Jennifer |
| French, Tina | Mongon, Thibaut | Telofski, Lorena |
| Freyne, L. | Montagnino, K. | Turk, Catherine |
| Giacino, Laura | Morano, S. | Ullman, Michael |

Van Arsdale, Duane

Vertenten, M.

Washington, Eugene

Weingrod, Louise

Weinberger, M.

West, Nadja

Williams, Ronald A.

White, A.

Widmer, Kathy

Wolk, Joseph

Wuesthoff, Bob

Zavis, Phillip

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing FIRST SET OF

REQUESTS FOR PRODUCTION OF DOCUMENTS BY OFFICIAL COMMITTEE OF TALC

CLAIMANTS TO DEBTOR LTL MANAGEMENT LLC IN CONNECTION WITH MOTION

TO DISMISS by regular mail and electronic mail to the email addresses identified below, which

is the last email address know to me:

> James N. Lawlor
> Wollmuth Maher & Deutsch LLP.
> 90 Washington Valley Road
> Bedminster, NJ  07921
> jlawlor@wmd-law.com
>
> Gregory M. Gordon, Esq.
> Jones Day
> 2727 Harwood Street
> Dallas, TX 75201
> gmgordon@jonesday.com
>
> *Attorneys for Plaintiff LTL Management LLC*

Dated: December 1, 2021                    /s/ Brian A. Glasser
                                           Brian A. Glasser

6768270.2

# ENCLOSURE 3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor.[1] | |

## FIRST SET OF REQUESTS FOR ADMISSION BY OFFICIAL COMMITTEE OF TALC CLAIMANTS TO DEBTOR LTL MANAGEMENT LLC IN CONNECTION WITH <u>MOTION TO DISMISS</u>

TO:     LTL Management LLC, c/o its attorneys of record, James N. Lawlor, Wollmuth Maher & Deutsch LLP., 90 Washington Valley Road, Bedminster, NJ  07921 and Gregory M. Gordon, Esq., Jones Day, 2727 N. Harwood Street, Dallas, TX 75201

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rules 7036 and 9014 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Talc Claimants (the "TCC"), by its undersigned counsel, hereby requests that LTL Management LLC ("LTL" or "Debtor") admit, for purposes of this contested matter, the truth of the following matters, by December 31, 2021.

## <u>INSTRUCTIONS</u>

1.      The requests for admission are to be answered in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the local rules of this Court and any other applicable rule.

---

[1]      The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2.      In answering these requests, the Debtor must include all information available to the Debtor or subject to reasonable inquiry by the Debtor, including, but not limited to, information in the Debtor's possession, the possession of the Debtor's attorneys, accountants, advisors, or other persons directly or indirectly employed by the Debtor, the Debtor's attorneys, or anyone else otherwise subject to the Debtor's control.

## DEFINITIONS

1.      The "First Day Declaration" shall refer to the Declaration of John K. Kim in Support of First Day Pleadings, dated October 14, 2021, filed in the main bankruptcy case as Dkt. No. 5.

2.      Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration, except that any capitalized term in the First Day Declaration referring to an entity, here, shall also mean that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalves.

3.      The "2021 Corporate Restructuring" shall refer, individually and collectively, to the series of corporate or company transactions and filings, whenever they occurred, that culminated in the formation, capitalization and/or re-domiciling of the Debtor and New JJCI on or about October 12, 2021, involving all entities and transactions that resulted in the division of Chenango Zero LLC ("Chenango Zero") into the Debtor and New JJCI as described in Section II of the First Day Declaration.

## REQUESTS

ADMIT THAT:

REQUEST No. 1:

6768250.2

Admit that Old JJCI's talcum powder products contained asbestos.

RESPONSE:

REQUEST No. 2:

Admit that Old JJCI's talcum powder products never contained asbestos.

RESPONSE:

REQUEST No. 3:

Admit that the Debtor owns Old JJCI's going concern worldwide talcum powder business as a result of the 2021 Corporate Restructuring.

RESPONSE:


REQUEST No. 4:

Admit that Old JJCI's going concern worldwide talcum powder business was not transferred to the Debtor in connection with the 2021 Corporate Restructuring.

RESPONSE:


REQUEST No. 5:

Admit that a valuation of all assets and all liabilities of Old JJCI and/or Chenango Zero was made for purposes of allocating assets and liabilities of Chenango Zero into Chenango One and Chenango Two.

RESPONSE:

6768250.2

REQUEST No. 6:

        Admit that the Debtor is not a going concern.

RESPONSE:

Dated: December 1, 2021                        Respectfully submitted,

**GENOVA BURNS LLC**
Daniel M. Stolz
110 Allen Road
Suite 304
Basking Ridge, NJ 07920
Tel: 973-467-2700
Fax: 973-467-8126
Email: dstolz@genovaburns.com

**BROWN RUDNICK LLP**
David J. Molton
Robert J. Stark
Jeffrey L. Jonas
Michael Winograd
7 Times Square
New York, NY 10036
Tel: 212-209-4800
Fax: 212-209-4801
Email: dmolton@brownrudnick.com
      rstark@brownrudnick.com
      jjonas@brownrudnick.com
      mwinograd@brownrudnick.com
-and-
Sunni Beville
One Financial Center
Boston, MA 02111
Tel: 617-856-8200
Fax: 617-856-8201
Email: sbeville@brownrudnick.com

**BAILEY GLASSER LLP**
Brian A. Glasser
Thomas B. Bennett
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC  20007
Tel: 202-463-2101
Fax: 202-463-2103
Email: bglasser@baileyglasser.com
      tbennett@baileyglasser.com

**MASSEY & GAIL LLP**
Jonathan S. Massey
1000 Maine Avenue SW
Suite 450
Washington, DC 20024
Tel: 202-652-4511
Fax: 312-379-0467
Email: jmassey@masseygail.com

4

6768250.2

**OTTERBOURG P.C.**
Melanie L. Cyganowski
Adam C. Silverstein
John Bougiamas
230 Park Avenue
New York, NY 10169
Tel: 212-905-3628
Fax: 212-682-6104
Email: mcyganowski@otterbourg.com
      asilverstein@otterbourg.com

**PARKINS LEE & RUBIO LLP**
Lenard M. Parkins
Charles M. Rubio
Pennzoil Place
700 Milam Street
Suite 1300
Houston, Texas 77002
Phone: 713-715-1666
Email: lparkins@parkinslee.com
      crubio@parkinslee.com

*Proposed Co-Counsel for the Official Committee of Talc Claimants*

6768250.2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing FIRST SET OF

REQUESTS FOR ADMISSION BY OFFICIAL COMMITTEE OF TALC CLAIMANTS TO

DEBTOR LTL MANAGEMENT LLC IN CONNECTION WITH MOTION TO DISMISS by

regular mail and electronic mail to the email addresses identified below, which is the last email

address know to me:

> James N. Lawlor
> Wollmuth Maher & Deutsch LLP.
> 90 Washington Valley Road
> Bedminster, NJ  07921
> jlawlor@wmd-law.com
>
> Gregory M. Gordon, Esq.
> Jones Day
> 2727 Harwood Street
> Dallas, TX 75201
> gmgordon@jonesday.com
>
> Attorneys for Plaintiff LTL Management LLC

Dated: December 1, 2021                    /s/ Brian A. Glasser_____
                                           Brian A. Glasser

6768250.2