**JONES DAY**

2727 NORTH HARWOOD STREET • DALLAS, TEXAS 75201.1515

TELEPHONE: +1.214.220.3939 • FACSIMILE: +1.214.969.5100

Direct Number: (214) 969-3759
gmgordon@jonesday.com

January 14, 2022

The Honorable Michael B. Kaplan
United States Bankruptcy Court, District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street, Courtroom #8
Trenton, NJ 08608

Re: LTL Management LLC, Case No. 21-30589 (MBK)

Dear Chief Judge Kaplan:

On behalf of the Debtor, I submit this response to three separate letters submitted to the Court on January 13, 2022, by representatives of talc claimants.

I will address first the letter from Ms. Cyganowski, counsel to Committee I, requesting a further adjournment of the January 21, 2022 hearing on the Debtor's motion regarding the automatic stay and issuance of a preliminary injunction [Adv. Pro. Dkt. 2] (the "PI Motion"). I then will turn to letters from Mr. Jonas, also counsel to Committee I, and from Brian Glasser, counsel to Committee II. Mr. Jonas and Mr. Glasser each write separately concerning certain discovery issues related to the Motions to Dismiss.

## PI Hearing Adjournment

Ms. Cyganowski advises that the Talc Committees are in agreement that (i) the PI Hearing should be further continued, this time to a date certain promptly following the February 15, 2022 hearing on the Motions to Dismiss and, (ii) to accommodate the requested adjournment, a bridge order should be entered further extending the automatic stay/preliminary injunction order entered by the North Carolina Bankruptcy Court (Adv. Pro. Dkt. 94).

The Court should deny this request. As the Court will recall, at the teleconference with the Court on January 6, 2022, counsel for Committee I requested a two-week adjournment of the PI Hearing to "permit, for want of better words, respect for the comity between the courts to allow Judge [Wolfson] sufficient time to consider the papers before her without placing this Court into the difficult position of moving forward on a matter that could be at any time removed from it." (Jan. 6, 2022 Tr. 5:4-9).

Taking claimants at their word, Judge Wolfson expeditiously entered an order denying the motion to withdraw the reference for the adversary proceeding (Adv. Pro Dkt. 153). Judge

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

January 14, 2022
Page 2

Wolfson entered that order "in light of various impending deadlines in the underlying bankruptcy proceedings, and the need to provide the parties and the Bankruptcy Court with certainty as to where these proceeding should proceed . . . ." (Order, 1.) Having imposed on Judge Wolfson to accommodate their stated interests, claimants have no legitimate reason to seek to further adjourn the PI Hearing from January 21, 2022, the date the Talc Committees requested in the interest of comity.

Deferring a ruling on the PI Motion beyond the hearing on the Motions to Dismiss will only delay the Debtor's objective of commencing mediation with representatives of the talc claimants as soon as possible. No adjournment is warranted, particularly in light of the Court's prior ruling on the extent of evidence that can be presented. These important threshold issues need to be decided and the PI Hearing should go forward on the date the Talc Committees requested, January 21, 2022.

### Discovery Matters

Messrs. Jonas and Glasser raise issues concerning the breadth and pace of discovery in connection with the Motions to Dismiss. As the Debtor has previewed for the Court, the issues necessary to decide the Motions to Dismiss are relatively narrow, and few, if any, factual issues are in dispute. The Debtor already has produced to claimant representatives documents and information necessary to resolve the Motions to Dismiss as a part of the expedited discovery exchanged in the preliminary injunction proceeding in North Carolina.

Nevertheless, since the start of discovery here, the Talc Committees have inundated the Debtor with myriad requests designed to maximize the costs and burden on the Debtor. They served grossly overbroad discovery requests that included 67 separate document requests and initially asked the Debtor to collect and review the electronically stored information ("ESI") of 78 custodians. They did this knowing that the Debtor could not possibly respond to these requests in the limited time available for discovery before the hearing on the Motions to Dismiss, which they demanded be set on an aggressive schedule.

The Debtor consistently has responded in good faith and has worked to negotiate reasonable limits, all with the goal of providing what can be produced practically in the short timeframe available. It has been transparent about what it can and cannot produce and has worked relentlessly (including over the two-week holiday period) to review thousands of documents and produce what is responsive as quickly as possible.

The Talc Committees' claim that the Debtor has been slow to produce documents and has produced very little is inaccurate. The Debtor produced over 2,700 documents (approximately 23,600 pages) in the North Carolina proceeding alone, including the entire closing binder for the

JONES DAY

January 14, 2022
Page 3

2021 corporate restructuring ("NC Production"). The Debtor agreed that the Talc Committees may use, in connection with the Motions to Dismiss, all of the documents that the parties produced in the multi-district talc litigation pending in the District of New Jersey, MDL No. 16-2738 (FLW) (LGH) ("MDL Production"). The MDL Production alone is over 500,000 documents (approximately 2.5 million pages).

The Debtor has made substantial progress toward completing its production of documents in response to the Talc Committees' recent document requests. The Debtor has completed its production of documents in response to at least 40 of the Talc Committee's 67 original requests and has partially responded to at least another 15. Another six of the Talc Committees' 67 original document requests were withdrawn or deferred. The Debtor has completed the production of ESI for five of the nine agreed-upon custodians, and expects to complete the production of ESI for another three custodians next week. All of the ESI for custodians whose depositions have been requested is being produced in advance of the scheduled depositions.

The Debtor addresses below each of the specific issues raised by the separate letters from Messrs. Jonas and Glasser. The Debtor also addresses certain new requests that the Talc Committees made to the Debtor on January 12, 2022.

**Depositions**

As the Court may recall, at the original Talc Committee's request, the parties scheduled three depositions just before the holidays (Ms. Goodridge on December 20 and Messrs. Wuesthoff and Azevedo on December 22). The deposition of Mr. Azevedo had to be postponed, however, because counsel for the original Committee and other counsel for talc claimants engaged in duplicative examinations of Mr. Wuesthoff and, as a result, that deposition took the full day. Mr. Azevedo's deposition has been rescheduled to January 24.

On December 31, the Talc Committees informed the Debtor that they wanted to take the deposition of Thibaut Mongon and Michelle Ryan. The parties have scheduled Mr. Mongon's deposition for January 19. Ms. Ryan recently retired and since the beginning of the year has been in the process of moving to Florida. Until yesterday, the Debtor was unable to confirm a date for her deposition other than to indicate to the Talc Committees that it would need to be at the end of January to allow for her to complete her move to Florida. The Debtor has confirmed that Ms. Ryan is available to be deposed on January 27.

On January 3, the Debtor requested that the Talc Committees identify any additional deponents as soon as possible to provide sufficient time to address any scheduling challenges that might exist. During the conference with the Court on January 3, the Court directed the Talc Committees to identify their additional witnesses in the next three days. (Jan. 3, 2022 Tr. 27:8-

January 14, 2022
Page 4

10). On January 4, the Talc Committees requested two more depositions, of Richard Dickinson and John Kim, bringing the total requested to seven. Those depositions have been scheduled for January 21 and January 26, respectively.

With two depositions completed and five more scheduled, the Debtor reasonably believed there would be no more depositions requested by the Talc Committees. But on January 12, six days after the Court's deadline for identifying deponents, the Talc Committees requested three additional depositions: Chris Andrews, Tom McCann, and Bob Decker.

The Debtor objects to these requests and asks the Court to deny them. There is no need for depositions of ten fact witnesses to address the issues relevant to the Motions to Dismiss. That number of depositions is the maximum number allowed under the Federal Rules of Civil Procedure for civil actions the discovery periods for which can extend for many months and sometimes years. These requests are especially excessive given that five other witnesses were previously deposed in connection with the North Carolina preliminary injunction hearing on many of the issues relevant to the Motions to Dismiss.

The depositions of these newly identified witnesses will not yield any additional relevant information. Mr. Andrews is a lawyer, and Mr. McCann works with Mr. Andrews in the legal department. All of their involvement in the corporate restructuring was performed in these roles. The only substantive testimony these two witnesses could provide would be privileged or work product protected. Finally, Mr. Decker is the supervisor of Adam Lisman, one of the five witnesses deposed in connection with the North Carolina preliminary injunction proceeding. Thus, all of his testimony is likely to be duplicative of Mr. Lisman's. The Court should deny each of these additional deposition requests.

**Custodians**

On December 15, 2021, at the Court's direction, the parties agreed on seven ESI custodians – Alex Gorsky, Joaquin Duato, Thibaut Mongon, Michelle Ryan, Bob Decker, Melissa Munoz, and Tom McCann. The Debtor promptly began collecting and processing their ESI so it could be ready for review over the holidays. On December 21, the Debtor agreed to use the search terms proposed by the Talc Committees (with two minor modifications, which are described in more detail below) that would be applied to the ESI. Immediately thereafter, the Debtor began reviewing documents and made its first production of ESI a little over two weeks later.

Throughout the discovery process, the Debtor has emphasized that it is critical that the Talc Committees identify custodians as early as possible because it takes a significant amount of time to collect, process, review, and produce ESI. Nevertheless, on January 4, the Talc Committees requested an additional three custodians – Jose Azevedo, Richard Dickinson, and John Kim.

JONES DAY

January 14, 2022
Page 5

As an accommodation, the Debtor agreed to include Messrs. Azevedo and Dickinson as custodians, provided that the date range of the review be limited to September 1, 2021, to the petition date, which proposal the Talc Committees accepted.  The Debtor declined to include Mr. Kim as a custodian because he is a lawyer and most if not all of his documents will be privileged or otherwise protected from disclosure.  In addition, Mr. Kim has already been deposed and cross examined in connection with the preliminary injunction hearing, and he will be deposed again later this month in connection with the Motions to Dismiss.  The Talc Committees will have had ample opportunity to obtain discovery into any non-privileged information Mr. Kim can provide that is relevant to the Motions to Dismiss.

At the conference on January 6, the Talc Committees asked the Court to order the Debtor to include Mr. Kim as a custodian.  (Jan. 6, 2022 Tr. 28:3-5).  The Court denied this request.  (Id. at 35:9-10).  As the Court ruled, "[t]here's a compressed time frame here, and there has been an opportunity to examine Mr. Kim and to have documents produced. … And I believe, including Mr. Kim as a custodian, will simply overwhelm the work that needs to be done to bring this to bear in February."  (Id. at 35:13-20).

Committee I, nonetheless, again asks this Court to direct the Debtor to make Mr. Kim an ESI custodian.  Yet the only arguments that it makes are the same ones that this Court rejected just eight days ago. (Compare Jan. 6, 2022 Tr. 28:9-29:6 with January 13, 2022 letter of Jonas to Court [Dkt. 1141] at 2).  There has been no change in circumstances since the January 6 conference that would justify including Mr. Kim as an ESI custodian.

Committee I also argues that this is a "classic use of the sword-and-shield."  But the Debtor is not relying on the advice of counsel or any other privileged information to oppose the Motions to Dismiss.  Mr. Kim has testified and will testify only about non-privileged communications and facts.  Thus, as the Court concluded on January 6, the sword-and-shield argument is misplaced.  (Jan. 6, 2022 Tr. 28:3-5) ("I don't believe there'll be … information that'll be shielded").  Thus, there can be no prejudice to the Talc Committees from not including Mr. Kim as a custodian.  In contrast, requiring the Debtor to do so will cause it to spend even more time and money reviewing Mr. Kim's documents to conclude what we already know – that most, if not all, are protected from disclosure.  The Debtor asks the Court to deny this request a second time.

On January 12, the Talc Committees requested yet two additional ESI custodians: Mark Schneider and Duane Van Arsdale.  The Court should deny both requests.  It is simply too late in the process to add new custodians.  There is not enough time to collect and review their materials in time for the hearing on the Motions to Dismiss.  Moreover, the ESI of both individuals will largely be redundant of the ESI of two other custodians – Ms. Ryan and Mr. Decker.  Mr. Van Arsdale replaced Ms. Ryan as corporate treasurer, and Mr. Schneider reports to Mr. Lisman, who

JONES DAY

January 14, 2022
Page 6

in turn reports to Mr. Decker in the corporate controller's group.  It is unlikely that either will have anything relevant that is not already covered by the ESI of Ms. Ryan and Mr. Decker.  The Debtor asks the Court to deny these late requests for additional custodians.

**Document Requests**

Below the Debtor responds to the specific document requests that the Talc Committees addressed in their letters.

RFP No. 53: Jones Day billing records.  The Debtor will produce documents responsive to this request in the format ordered by the Court (aggregate hours and aggregate fees by entity) early next week.

RFP No. 55: Draft versions of the Approval Memo.  The Debtor anticipates that any documents responsive to this request will be privileged and/or protected by the work product doctrine.  Nevertheless, if there are any non-privileged documents responsive to this request in the files of the agreed-upon ESI custodians, the Debtor will produce them.

RFP No. 28: Documents sufficient to identify royalty rights assigned to Royalty A&M.  The Debtor understood that it had satisfied this request by identifying, on December 31, 2021, documents responsive to this request that were included in the NC Production.  On January 12, however, the Talc Committees asked the Debtor to produce additional documents concerning royalty rights.  The Debtor will be in a position to respond to this new request next week and requests that the Court defer any ruling on this request until after the Debtor has a chance to respond.

RFP No. 49: Documents concerning "Project Plato."  The Talc Committees have asked the Debtor to search for and produce all documents and communications concerning Project Plato – not just within the files of the agreed-upon ESI custodians, but "wherever they may be located."  This is a sweepingly broad, burdensome, and unreasonable request that is not remotely proportional to the needs of the case.  And it is plainly contrary to the parties' agreement that ESI would be limited to specific search terms and identified custodians.  Read literally, this would require the Debtor to collect and review ESI for even more than the 78 custodians originally requested by the Talc Committees; indeed, the search would encompass all individuals' emails on all company servers.  The Debtor is producing non-privileged documents responsive to this request from the files of the nine agreed-upon custodians.  It is grossly disproportionate and burdensome to request that the Debtor engage in this overbroad search requested by the Talc Committees.

Further, Committee II claims that it made it clear "during several discussions" with the Debtor that the request for "Project Plato" documents is not limited to just the agreed-upon

custodians. That is not true. During the parties' meet and confers, the Debtor stated repeatedly that it would only search for communications on this topic to the extent they were identified in the files of the agreed-upon custodians. The Debtor said this again in a letter to the Talc Committees on December 13, in which the Debtor agreed to respond to RFP No. 49 "[s]ubject to the parties reaching an agreement on custodians and search terms." It reiterated this on December 31, in its response and objection to RFP 49: "Subject to and without waiving its objections, the Debtor will produce non-privileged communications related to Project Plato that it identifies after applying the Search Terms to the files of the Custodians dated from March 1, 2020, to the Petition Date."

The Talc Committees never expressed any concern about the Debtor's response until January 12, more than a month after the Debtor first said it would limit its searches to the files of the agreed-upon ESI custodians and nearly two weeks after the Debtor served its responses and objections. The Court should reject this late attempt to expand discovery to levels of burden that simply cannot be borne.

RFP No. 40: Documents identifying settlement payments for talc claims. Committee II seeks discovery regarding settlements of talc claims. The Debtor respectfully submits that this information is not relevant to any undercapitalization or "scarcity of funds" argument because the Debtor, through the Funding Agreement has the same access to assets and paying power as it had prior to the corporate restructuring.

In support of its pursuit of settlement information, Committee II asserts that Johnson & Johnson ("J&J") produced unredacted settlement agreements for approximately 2,000 ovarian cancer cases and 800 mesothelioma cases in the Imerys bankruptcy. That is not true. In Imerys, J&J was ordered by the bankruptcy court to produce, on an attorneys-eyes only basis, redacted versions of only nine master settlement agreements and eight individual releases. Notably, these productions were made over the objection of a number of plaintiffs' firms. And, this information was produced to enable Imerys's experts to value claims for purposes of trust distribution procedures. The production of limited redacted information there has little if any relevance here.

In addition, the recent decision in Plastronics Socket Partners, Ltd. v. Dong Weon Hwang, 2022 WL 108948 (Fed. Cir. Jan. 12, 2022) that Committee II cites does not present "facts very similar to those relevant to this matter." The only similarity is that both cases involved use of the Texas divisional merger statute.

All this said, the Debtor is willing to provide, consistent with the Court's directive at a prior conference, the following confidential information, provided that the Talc Committees agree to treat the following information as confidential pursuant to the protective order in this matter:

Pre-filing, [X] ovarian claims were resolved for a total of $[Y].

January 14, 2022
Page 8

Pre-filing, [X] meso claims were resolved for a total of $[Y].

**Search Term Hit Report**

In connection with RFP No. 60, Committee II requests search term "hit reports" so it can formulate a counter-proposal to Debtor's "unilateral search term protocol." The search protocol that the Debtor has used to review and produce ESI is not a "unilateral search term protocol."

In fact, the Debtor agreed to use nearly all of the 28 search terms that the Talc Committees originally proposed. The Debtor modified only two search terms – "stay" and "cancer" – because they were yielding a high number of false hits. For example, the search term "stay" yielded a significant number of false hits that included the phrases "stay home," "stay safe," "stay connected," and "stay" in the context of a hotel stay. The search term "cancer" yielded a significant number of false hits that referred to cancer institutes or cancer research.

On December 21, the Debtor informed the Talc Committees of this and proposed to use the following search term combinations instead of "stay" and "cancer":

- "Stay" w/10 of any of the following: automatic; bankrupt*; J&J; Johnson; case*; litigation; or proceed*

- "Cancer" w/20 of trial*; lawsuit*; or litigation

The Talc Committees never responded to the proposal. Hearing nothing from the Talc Committees, the Debtor understood that the Talc Committees agreed to these minor modifications to the two proposed terms and proceeded to run them together with the Talc Committees' search terms as originally proposed against the ESI collected from the custodians' files. The Debtor has now reviewed thousands of documents and produced ESI from the files of five custodians using this search protocol. It is too late, and would be overly burdensome and costly, to allow the Talc Committees to change this search protocol now. The Debtor respectfully requests that the Court deny this request.

Moreover, the Debtor respectfully requests that the Court deny Committee II's request for the search term hit report. Since the Debtor has used the search terms that the Talc Committees originally proposed (with the two minor modifications noted above), there is no value to producing the report at this time. The only purpose it could possibly serve is to permit the Talc Committees to obtain discovery about discovery. That is not a proper request and the Debtor respectfully submits that it is a wasteful distraction from much more important issues in this proceeding.

**Privilege Logs**

JONES DAY

January 14, 2022
Page 9

Committee II has demanded that the Debtor provide by Sunday, January 16, a privilege log for documents withheld from the custodian files of Thibault Mongon.  The Debtor respectfully asks the Court to deny this request.  The Debtor is currently in the process of reviewing thousands of potentially privileged documents across all the custodians.  Privilege review requires careful consideration and analysis.  It cannot be rushed to meet arbitrary expedited deadlines.  The Debtor respectfully asks the Court to allow it to complete a thorough review of the privilege documents and produce the logs by the close of fact discovery.

**Case Management Order**

The Debtor understands that the following issues remain unresolved with respect to the case management order.

<u>Deadline for Serving Expert Reports</u>:  The Debtor initially proposed a deadline for serving expert reports of January 24, while the Talc Committees proposed January 31.  As a compromise, the Debtor proposed January 27 for the deadline, and the Talc Committees rejected that proposal.  The Debtor respectfully submits that expert reports should be served no later than January 27 to allow the parties sufficient time to prepare for expert depositions, which are scheduled to begin February 2.

<u>Deadline for Fact Discovery</u>: The Debtor proposed a deadline for fact discovery of February 2, while the Talc Committees proposed February 10.  Given the fact that the parties are conducting expert depositions between February 2 and 10, the Debtor respectfully submits that that the fact discovery deadline should be no later than February 2.  That would give the parties sufficient time to complete document production and depositions of fact witnesses.

<u>Reply and Sur-reply Briefs</u>: Your Honor previously stated that all briefing on the Motions to Dismiss should be completed by February 4, 2022.   For that reason, the Debtor originally proposed to the Talc Committees that reply briefs be due on January 26 and sur-reply briefs on February 4.  The Debtor agrees to the Talc Committees' proposal that reply briefs be due January 31, provided that the Court is willing to permit the Debtor to file its sur-reply brief on February 7.

Thank you for your consideration of this letter.

JONES DAY

January 14, 2022
Page 10

        Respectfully submitted,

        */s/ Gregory M. Gordon*

        Gregory M. Gordon