| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-1(b)**<br><br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones<br>Karen B. Dine<br>Colin R. Robinson<br>Peter J. Keane<br>919 N. Market Street, 17th Floor<br>Wilmington, DE  19801<br>Telephone:  (302) 652-4100<br>Facsimile:   (302) 652-4400<br>Email: ljones@pszjlaw.com<br>          kdine@pszjlaw.com<br>          crobinson@pszjlaw.com<br>          pkeane@pszjlaw.com<br><br>*Counsel to Arnold & Itkin LLP* |

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>                                   Debtor.[1] | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>**Hearing Date and Time:**<br>January 19, 2022 at 10:00 a.m. |

**REPLY IN SUPPORT OF MOTION FOR ORDER
VACATING APPOINTMENT OF SECOND OFFICIAL
COMMITTEE OF TALC CLAIMANTS AND
<u>ADDITION OF NEW COMMITTEE MEMBERS</u>**

The law firm of Arnold & Itkin LLP ("<u>Arnold & Itkin</u>"), on behalf of over 7,000 talc personal injury claimants who are represented by Arnold & Itkin ("<u>Movants</u>"), by and through the undersigned counsel, hereby submits this reply (the "<u>Reply</u>") in support of Movants' motion seeking entry of an order vacating the Office of the United States Trustee's ("<u>UST</u>") appointment

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

DOCS_DE:237826.8 05471/002

of a second official committee of talc claimants and addition of new committee members (the "Motion") and in response to the (i) *Objection of Official Committee of Talc Claimants II ("TCC II") to (I) Debtor's Motion for an Order Determining that the United States Trustee's Notice of "Reconstituted and Amended" Talc Claimants Committee is Invalid and Reinstating that Committee; and (II) Arnold & Itkin LLP's Motion for Order Vacating Appointment of Second Official Committee of Talc Claimants and Addition of New Committee Members* [Docket No. 1158] (the "TCC II Objection"), (ii) *Objection of Official Committee of Talc Claimants I ("TCC I") to Motions to Reinstate Initial TCC Filed by the Debtor and Arnold & Itkin* [Docket No. 1159] (the "TCC I Objection"), and (iii) *Objection of the United States Trustee (the "UST", together with TCC I and TCC II, the "Objectors") to (i) Debtor's Motion for an Order Determining that the United States Trustee's Notice of "Reconstituted and Amended" Talc Claimants Committee is Invalid and Reinstating that Committee; and (ii) Arnold & Itkin LLP's Motion for Order Vacating Appointment of Second Official Committee of Talc Claimants and Addition of New Committee Members* [Docket No. 1161] (the "UST Objection").  In support hereof, Movants respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1.    The TCC I Objection barely qualifies as an objection, limited as it to a tepid concern about the time lost if the originally appointed Official Committee of Talc Claimants (the "Original TCC") is reinstated.  This concern is illusory: if the Court grants the Motion, the case will revert to the status quo in place at the time the UST filed the *Notice of the United States Trustee's Filing of Reconstituted and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II*

---

[2] Nothing in the Motion or this Reply should be viewed as being in derogation of the arguments set forth in the *Motion to Dismiss Bankruptcy Case* [Docket No. 766] filed by Movants.

[Docket No. 965] (the "UST Notice") with little or no adverse consequence to the functioning of either this case or the Original TCC.  In fact, the TCC I Objection reads more like an endorsement of the Motion: it notes that the Original TCC was "functioning well" and "adequately represented the Debtor's unsecured creditors" at the time the UST reconstituted the Original TCC into TCC I and TCC II [TCC I Objection at §2].  The TCC I Objection further notes that TCC I, TCC II *and their professionals* communicate on a daily basis on case issues [TCC I Objection at §2] (emphasis added).  Reinstatement of the Original TCC will not result in any delay or prejudice to the Original TCC's operations or the progress of this case.  Instead, it will simply eliminate an unnecessary step or layer in advocacy on behalf of talc claimants by eliminating the need for two sets of lawyers for two separate committees to confer with one another and then with their respective committees before positions are taken on behalf of talc claimants, and avoid having the two committees present conflicting views to the Court based on differing judgments or strategies of their respective counsel that have nothing to do with any supposed divergence in the interests of ovarian cancer claimants and mesothelioma claimants.  Progress in the case will not be facilitated by turning what should be bilateral negotiations or litigation between the Debtor and a committee representing talc claimants into trilateral negotiations or litigation among the Debtor and two different committees representing talc claimants.

2. Both the TCC II Objection and UST Objections argue that this Court lacks the authority to review the UST's action in issuing the UST Notice.  The TCC II Objection explicitly requests this Court to adopt the reasoning set forth in *In re Caesars Entertainment Operating Co.*, 526 B.R. 265 (Bankr. N.D. Ill. 2015) where that court determined that it lacked the power to disband a committee appointed by the UST.  That request would, however, have this Court

ignore the unique characteristics of this case that distinguish it from *Caesars Entertainment*. Unlike this case, *Caesars Entertainment* did not involve an attempt by the UST to, in effect, modify a prior court order appointing a single committee and specifying its members that was entered pursuant to a statute that governed the appointment at the time it occurred and empowered the Bankruptcy Court to appoint the Committee and define its composition. In short, *Caesars Entertainment* did not address the authority of the UST to modify the composition of a Committee established by a prior court order. Nor, for that matter, did any of the other cases that the Objectors cite in support of their position that the UST's action in modifying the composition of a committee appointed by a prior bankruptcy court order is immune from review by the Court.

3. The Objectors do not dispute that the United States Bankruptcy Court for the Western District of North Carolina (the "NC Bankruptcy Court") had the statutory authority to enter the *Order Appointing the Official Committee of Talc Claimants* [Docket No. 255] (the "Talc Committee Appointment Order"). What they misapprehend is the effect that order has on the UST's ability to, in effect, modify it via issuance of the UST Notice. Despite Objectors' protestations to the contrary, the UST did not have the authority to effectively overrule the NC Bankruptcy Court's Talc Committee Appointment Order; and the UST's action in so doing is a nullity.

4. Were the Court to determine that the UST Notice is not a nullity, and that the issue before it is the standard for review of the UST's action in modifying a committee created by court order, the standard of review should be one of *de novo* review. It is the prior court order, not the UST's action in essentially disregarding it, that is entitled to deference. Moreover, even if the Court were to determine that *de novo* review was inappropriate, and that "abuse of discretion" is the standard of review, the UST's action was an abuse of discretion and should be

vacated, because the UST has made the review of its action impossible as a practical matter. The UST has refused to provide *any* justification or rationale for the unprecedented action it took when it appointed two official committees for holders of unsecured personal injury claims based solely on the nature of the underlying disease suffered by tort claimants – an action never taken in the history of mass tort chapter 11 cases. Instead, the UST simply states that its decision is shielded from any question or review (which is ironic given the UST's dedication to "transparency" in bankruptcy cases.) Despite the extraordinary nature of its action, the UST rebuffs all inquiries and provides no justification to any party - *including this Court* – to support its unprecedented decision to appoint the two talc committees in this case. In essence, the UST claims that it could modify the composition of a committee established by a prior court order, without even explaining why it did so.

5. Since Movants filed the Motion, developments in this case have borne out some of the practical concerns set forth therein. As but one example, in connection with a January 6th status conference to consider adjournment of the hearing date of the preliminary injunction hearing, TCC I and TCCII initially espoused conflicting views on the scheduling question – a procedural question unrelated to whether a talc claimant has ovarian cancer, mesothelioma or both. *See* Transcript of Status Conference, January 6, 2022 at 4-5. While post-status conference counsel for the two TCC's ultimately ironed out their differences and presented a united front to the Court on the timing issue [*see* letter from TCC I counsel and TCC II counsel to the Court, Docket No. 149], this incident makes clear that one result of the two committee construct has been to convert bilateral negotiations and disputes (i.e., Debtor versus Original TCC) into trilateral negotiations and disputes (i.e., Debtor versus TCC I versus TCC II), even as to matters on which the interests of ovarian cancer claimants and mesothelioma claimants are indisputably

aligned. The question of the timing of the preliminary injunction hearing was not grounded in the nature of a claimants' underlying disease. Instead, the respective counsel to TCC I and TCC II held divergent views on strategy or other issues having nothing to do with disease type. The two committee structure will undoubtedly breed more such incidents.

## ARGUMENT

6. As acknowledged by the UST and TCC II in their Objections, prior to the 1986 amendments to the Bankruptcy Code, the power to appoint committees resided solely in the bankruptcy courts (except in those districts participating in the U. S. Trustee pilot program) [*See* UST Objection at ¶ 23, TCC II Objection at ¶ 26]. After 1986, the UST had the authority to appoint committees, except in North Carolina and Alabama. *Id.* Accordingly, the NC Bankruptcy Court issued the Talc Committee Appointment Order pursuant to its authority under section 1102 of the Bankruptcy Code as the entity with the power to appoint an official committee. The transfer of venue to a district governed by a different statutory scheme for committee appointment does not nullify the statutory authority under which the Talc Committee Appointment Order was entered or alter the requirements for that Order's amendment. In this respect, this case is far more analogous to *In re Sharon Steel Corp.,* 100 B.R. 767 (Bankr. W.D. Pa. 1989) than the Objectors would like to admit. In fact, *Sharon Steel* is the only case cited by any party whose facts and history mirror those of this case.

7. When the *Sharon Steel* court entered its committee appointment order, section 1102 of the Bankruptcy Code as it then existed granted the court the exclusive authority to appoint one or more committees (other than in districts participating in the U.S. Trustee pilot program). Similarly, the NC Bankruptcy Court entered the Talc Committee Appointment Order under section 1102 of the Bankruptcy Code as the entity with the exclusive authority to appoint

committees in its district.  The distinction between the two cases is that the *Sharon Steel* order was issued prior to the 1986 amendments that gave the UST the authority to appoint committees in districts other than North Carolina and Alabama, while the NC Bankruptcy Court Order was entered under the existing statutory scheme that allows only the bankruptcy court to appoint a committee in a case filed in North Carolina.   This is, however, a distinction without a difference.  In both cases, the statutory schemes governing committee appointments changed after the orders appointing the respective committees were entered.  In *Sharon Steel*, the change was a result of the 1986 amendments to the Bankruptcy Code; in this case, the change occurred by virtue of the transfer of venue to the District of New Jersey, a district in which the UST operates.

8. As in *Sharon Steel*, the UST here can neither ignore the Talc Committee Appointment Order nor effectively vacate it by unilaterally reconstituting the NC Bankruptcy Court-appointed Original TCC:  "The legislative history of the 1986 Act indicates that section 1102 of the Bankruptcy Code in no way purports to vest the U.S. Trustee with the authority to review decisions of the bankruptcy court."  *Sharon Steel*, 100 B.R. at 772.  Under the unique facts of this case, which parallel those in *Sharon Steel*, if the UST wanted to reconstitute the Original TCC and appoint a second committee, it needed first to move for modification of the Talc Committee Appointment Order and demonstrate why such relief is warranted.  As in *Sharon Steel*, "[t]he U.S. Trustee's reconstitution of the Official Committee in the face of the [prior] Order is beyond his authority as a member of the executive branch of the government".  Sharon Steel at 775.

9. TCC II argues that the Talc Committee Appointment Order did not "finally adjudicate" the question of the appointment of a second official committee.  TCC II Objection at ¶ 41.  In fact, it did, subject only to reconsideration by a *court*.  By virtue of the Talc Committee

Appointment Order, the NC Bankruptcy Court appointed one Official Committee of Talc Claimants and appointed the eleven specifically identified members of that Committee. It is clear that numerous parties had approached Shelley Abel, the Bankruptcy Administrator, regarding the appointment of a second committee [Nov. 4 Tr. at 56]. The Bankruptcy Administrator carefully considered – and rejected as unjustified and unprecedented – several requests for a second committee [Nov. 4 Tr. at 56-57]. The NC Bankruptcy Court adopted the Bankruptcy Administrator's conclusion when it entered the Talc Committee Appointment Order. Notwithstanding the finality of the Talc Committee Appointment Order on this issue, the Bankruptcy Administrator (and the NC Bankruptcy Court) recognized that a future request to modify the Talc Committee Appointment Order to provide for a second committee might be forthcoming: "If someone wants to come in and say, "We need another one," then they're more than welcome to do that and *carry that burden*." [Nov. 4 Transcript at 57, emphasis added]. But such a modification of the Talc Committee Appointment Order would require moving the NC Bankruptcy Court or any subsequent court with jurisdiction to modify the Talc Committee Appointment Order. Indeed, such a procedure was specifically contemplated by the NC Bankruptcy Court: the Talc Committee Appointment Order states that it is "without prejudice to further consideration *by this or any other court with jurisdiction*" (emphasis added)[3]. At the hearing on November 4, 2021, the NC Bankruptcy Court even stated its concern and solution:

> "I would not want to tie the hands of a *successor judge*. … I'm going to approve what the Bankruptcy Administrator has proposed now …, but without prejudice to consider this further either by me or by another court and to consider additions, deletions, changes, whatever is appropriate under the circumstances." [Nov. 4 Tr. at 61-62] (emphasis added).

---

[3] The UST acknowledges this aspect of the Talc Committee Appointment Order [UST Objection at ¶ 14] but does not address its inability to modify the order absent relief form the appropriate court.

In effect, TCC II and the UST seek to rewrite the Talc Committee Appointment Order by adding the words "or the United States Trustee if venue is transferred" after the word "jurisdiction" in the Talc Committee Appointment Order. There is no basis in the record, however, for such a rewrite.

10. Significantly, the NC Bankruptcy Court was well aware on November 8, 2021, when it issued the Talc Committee Appointment Order, and on November 4, 2021, when it held the hearing that led to that Order, that a transfer of venue of this case to either New Jersey or Delaware – both states where the UST Program operates – was possibly imminent. The Court had already issued on October 26, 2021 its *Order to Appear and Show Cause why Venue should not be Transferred to another District* [Docket No. 208], which specifically identified New Jersey and Delaware as the potential transferee venues if venue was transferred. *Id*. at 2. Yet the Talc Committee Appointment Order expressly limited further consideration to "this or ***any court*** with jurisdiction" (emphasis added). The NC Bankruptcy Court could have – but did not – provide in the Talc Committee Appointment Order that the UST could change, add members to or subtract members from, the Original TCC if venue was transferred.

11. Accordingly, the UST was not authorized to disregard the existence of the final Talc Committee Appointment Order. "… [A]n interpretation of section 1102 that would confer authority on the office of the U.S. Trustee to nullify final orders of the bankruptcy court is implausible." *Sharon Steel* at 774. Instead of moving this Court to modify or amend the Talc Committee Appointment Order, the UST ignored it; usurped the Court's role; changed the membership of the Original TCC (giving it a new name); and appointed a second Committee, all without attempting to satisfy ***any*** burden before this Court. In so doing, the UST both ***removed*** from the Original TCC four members that had been appointed by the NC Bankruptcy Court (who

were moved to TCC II), and **added** two new members that had not been appointed by the NC Bankruptcy Court. *See* UST Objection at ¶ 16. *Sharon Steel* dictates that the UST's action here, if not a nullity, is, at a minimum, subject to a *de novo* review. *Id.*

12. With respect to the UST's removal from the Original TCC of four members appointed by the NC Bankruptcy Court, TCC II cites "the general principle that the power to appoint is the power to remove" (*citing Carlucci v. Doe,* 488 U.S. 93, 99 (1988)) and observes "that the 'authority to terminate…is implicit in the power of appointment'" (*quoting In re Brookover,* 352 F.3d 1083, 1089 (6th Cir. 2003). TCC II Objection at 10-11, n.6. Under the circumstances of this case, however, those principles do not support TCC II's position; rather, they defeat it. In this case, since the power to appoint the members of the Original TCC was held by the Bankruptcy Court when it appointed those members, the cited principles simply mean that ***the Bankruptcy Court*** has the "implicit" power to remove the members that the Court had appointed to the Original TCC. Nowhere does Section 1102 give the UST the power to remove a member of an official committee; and although the UST may have the "implicit" power to remove members ***that the UST has appointed in the first instance*** pursuant to its statutory authority, ***there is no basis for conjuring up an "implicit" power of the UST to remove a member of an official committee properly appointed by a Court.***

13. In any event, the principles and analysis articulated by the court in *Sharon Steel* are equally applicable here, when the UST has, in effect, modified a court order appointing a single committee (and adopting the Bankruptcy Administrator's recommendation not to appoint a second committee), entered when only the Bankruptcy Court in which the case was pending had the power to appoint one or more official committees. In purporting to overrule the NC Bankruptcy Court's adoption of the Bankruptcy Administrator's recommendation, the UST has

upended several decades of mass tort bankruptcy case precedent by separating similarly situated tort claimants into two separate committees, based solely on underlying disease type, all without providing the Court, much less other interested parties, with any rationale or basis for this extraordinary action. Nothing in section 1102 empowers the UST to override a prior court order in this fashion.

14. Even if this Court determines that it may not review the UST's action under a *de novo* standard, it may review that action under an abuse of discretion standard, which is the standard TCC II argues is applicable [TCC II Objection at ¶ 43.] Even under this lesser standard, the UST's action in disregarding the Talc Committee Appointment Order and unilaterally reconstituting the Original TCC and appointing TCC II without providing any rationale or explanation for this Court to review is clearly an abuse of discretion. The UST cannot argue that it did not abuse its discretion when it refuses to disclose the rationale behind the exercise of that discretion.

15. While TCC II attempts to provide a rationale for the UST's action by detailing some asserted differences between mesothelioma claims and ovarian cancer claims that are irrelevant to the "two committee" issue, the UST remains mum on its justification. In fact, as the UST informed the Court at the discovery status conference on January 14, 2021, the UST believes that the issue before the Court is solely a legal issue as to the UST's authority under section 1102 and that it is not required to provide anyone – not even the Court – with any of the facts or justification underpinning its decision. The UST has chosen to have its action in reconstituting the Original TCC rise or fall on the basis of the resolution of the legal issue of whether this Court has any power to review or nullify the action of the UST under the circumstances of this case. On that basis alone, the UST Notice must be vacated.

16. TCC II tries to save the day for the UST in the face of the UST's adamant refusal to explain its action, by detailing certain alleged differences between mesothelioma claims and ovarian cancer claims as to success in the tort system and settlement history. *See* TCC II Objection at ¶¶ 9-16. Such asserted differences – that ultimately go to the relative amounts of different types of personal injury claims – have ***never*** been recognized as a basis for a proliferation of official committees of personal injury claimants. TCC II's assertions regarding the relative value of mesothelioma claims as compared to claims based on other asbestos-linked diseases could be made in every chapter 11 asbestos case; yet ***TCC II has not been able to cite a single case where separate committees for mesothelioma claimants and other personal injury claimants were appointed on this or any other basis***.

17. Finally, Movants respectfully submit that the Court cannot help but consider the inevitable negative ramifications of the two committee construct, as detailed more fully in the Motion and described briefly above. Some are easily foreseeable while others are less so. But granting the Motion will avoid these negative ramifications entirely and restore the committee structure to that ordered by the NC Bankruptcy Court in the Talc Committee Appointment Order, which, as TCC I (f/k/a the Official Committee of Talc Claimants) has observed, was functioning quite well prior to the UST Notice.

WHEREFORE, for all the reasons set forth above and in the Motion, Movants respectfully request that the Court enter an order: (i) granting the Motion; (ii) vacating the UST Notice; (iii) reconstituting TCC I and TCC II as the Original TCC with its original composition; and (iv) granting such other relief as the Court deems just.

Dated: January 17, 2022              **PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Colin R. Robinson*
Laura Davis Jones
Karen B. Dine
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      kdine@pszjlaw.com
      crobinson@pszjlaw.com
      pkeane@pszjlaw.com

*Counsel for Arnold & Itkin LLP*