**FOR PUBLICATION**

| |
|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)** |
| In re: <br><br> LTL MANAGEMENT, LLC., <br><br>                              Debtor |

Case No. 21-30589 (MBK)

Chapter 11

Hearing Date: January 19, 2022

Judge: Michael B. Kaplan

ALL COUNSEL OF RECORD

**MEMORANDUM OPINION**

This matter comes before the Court upon motions (collectively, "Motions") filed by the Debtor, LTL Management, LLC ("LTL" or "Debtor") (ECF No. 1047) and the law firm of Arnold & Itkin, LLP, on behalf of certain talc personal injury claimants (ECF No. 1067) (together "Movants"), seeking an Order determining that the Notice of the United States Trustee's Filing of Reconstituted and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II (ECF No. 965) (the "Notice of Appointment") is invalid and reinstating the Talc Claimants Committee appointed by order of the United States Bankruptcy Court for the Western District of North Carolina (ECF No. 355). The Court has considered fully the parties' submissions as well as the arguments raised during the hearing on January 19, 2022. For the reasons expressed below, the Court grants the Motions in part and strikes the Notice of Appointment. The Court issues the

1

following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

**I. Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all Bankruptcy cases to the Bankruptcy Court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

**II. Background**

On October 14, 2021, LTL filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina (the "North Carolina bankruptcy court"). (ECF No. 1). LTL is an indirect subsidiary of Johnson & Johnson ("J&J") and traces its roots back to Johnson & Johnson Baby Products, Company ("J&J Baby Products"), a New Jersey company incorporated in 1970 as a wholly owned subsidiary of J&J. *Declaration of John K. Kim in Support of First Day Pleadings* ¶ 9-10. ECF No. 5. J&J, a New Jersey company incorporated in 1887, first began selling JOHNSON'S® Baby Powder in 1894, launching its baby care line of products. *Id*. at ¶¶ 10-14. In 1972, J&J established a formal operating division for its baby products business, which included JOHNSON'S® Baby Powder. *Id*. In 1979, J&J transferred all its assets associated with the Baby Products division to J&J Baby Products. *Id*. In connection with this transfer, J&J Baby Products assumed all liabilities associated with the Baby Products division. *Id*. Prior or to October 12, 2021, one of J&J's corporate subsidiaries was Johnson & Johnson Consumer Inc. ("Old JJCI"). *Id*. As the result of a series of intercompany transactions,

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

2

Old JJCI assumed responsibility for all claims alleging that J&J's talc-containing baby powder caused ovarian cancer and mesothelioma. *Id*. at ¶¶ 15, 32.

On October 12, 2021, Old JJCI engaged in a series of transactions through which it ceased to exist and two new companies, LTL and Johnson & Johnson Consumer Inc. ("New JJCI"), were formed. *Id*. at ¶¶ 16, 22-23. The alleged purpose of this restructuring was to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old JJCI enterprise to a bankruptcy proceeding." *Id*. at ¶ 21. As a result of the restructuring, LTL assumed responsibility for all of Old JJCI's talc-related liabilities. *Id*. at ¶¶ 16, 24. Through the restructuring, LTL also received Old JJCI's rights under a funding agreement (the "Funding Agreement"). *Id*. at ¶ 24. Under the Funding Agreement, J&J and New JJCI are obligated to pay "any and all costs and expenses" LTL incurs during its bankruptcy case, "including the costs of administering the Bankruptcy Case" to the extent necessary. *Annex 2 to Declaration of John K. Kim in Support of First Day Pleadings: Funding Agreement* 6, ECF No. 5.

The day after LTL's bankruptcy petition was filed, the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") filed a notice soliciting parties interested in serving on an Official Committee of Talc Claimants. *Notice of Solicitation of Parties Interested in Serving on the Official Committee of Talc Claimants,* ECF No. 38. In that notice, the Bankruptcy Administrator explained that she was "tasked with recommending the appointment of an official committee of creditors or claimants." *Id*. at 10. On October 28, 2021, the Bankruptcy Administrator filed a motion (ECF No. 227) requesting that the North Carolina bankruptcy court appoint an Official Committee of Talc Claimants and recommending persons that the court should appoint to the committee. The Western District of North Carolina is not part of the United States Trustee system that we enjoy here in the District of

New Jersey. *See* 28 U.S.C. § 581. Among the many differences under this system of oversight is that all decisions under 11 U.S.C. § 1102 regarding the number and membership of committees in the Western District of North Carolina are made with the express approval of the bankruptcy court. Several responses and objections to the proposed committee's composition were filed. *See, e.g.*, ECF Nos. 240, 256, 258, 278, 279, 280, 291, 307, 309, 316.

By way of an order entered on November 8, 2021 (the "TCC Order"), the North Carolina bankruptcy court, "acting pursuant to its authority under 11 U.S.C. § 1102," established the Official Committee of Talc Claimants in this case (the "Original TCC"), composed of the eleven members proposed by the Bankruptcy Administrator. *Order Appointing the Official Committee of Talc Claimants*, ECF No. 355. The TCC Order stated that the Bankruptcy Administrator's motion was being granted "without prejudice to further consideration of" the various responses and objections that had already been filed regarding the composition of the TCC, either by the North Carolina bankruptcy court "or any court with jurisdiction." *Id*. at 5. On November 16, 2021, the North Carolina bankruptcy court entered an order transferring venue of this case to the District of New Jersey. *Order Transferring Case to the District of New Jersey*, ECF No. 416.

On December 23, 2021, the United States Trustee for Region 3 (the "U.S. Trustee"), pursuant to his obligations under 11 U.S.C. § 1102(a), filed the Notice of Appointment. The Notice of Appointment stated that the U.S. Trustee had determined to reconstitute the Original TCC and appoint the Official Committee of Talc Claimants I (the "Ovarian Cancer Claimants Committee" or "TCC I")[2] and the Official Committee of Talc Claimants II (the "Mesothelioma Claimants Committee" or "TCC II", and together with the Ovarian Cancer Claimants Committee, the "Committees"). The Notice of Appointment also stated that the U.S. Trustee had taken action to

---

[2] The Notice of Appointment simply referred to the Committees as the Official Committee of Talc Claimants I & II, without any additional description or indication as to composition.

expand membership of the Original TCC and, accordingly, "no member of the [TCC] as originally constituted has been removed from committee membership." *Notice of Appointment* 2, ECF No. 965. TCC I is comprised of nine (9) members, seven (7) of whom were members of the Original TCC—including the insurance claimant—plus two (2) new members. TCC II consists of seven (7) members, four (4) of whom were members of the Original TCC plus three (3) new members.

On January 3, 2022, the Debtor filed a motion (ECF No. 1047) before this Court seeking an Order determining that the Notice of Appointment is invalid and reinstating the TCC appointed by order of the United States Bankruptcy Court for the Western District of North Carolina. Similarly, on January 5, 2022, the law firm of Arnold & Itkin, LLP, on behalf of approximately 7,000 talc personal injury claimants, filed a motion (ECF No. 1067) seeking entry of an order vacating the U.S. Trustee's appointment of a second official committee of talc claimants. The thrust of the arguments which undergird the Motions point to valid and substantial concerns regarding: (1) the alleged procedural impropriety of issuing the Notice of Appointment without first securing relief from the TCC Order through an order from this Court; (2) the lack of factual or legal support for separate committees based solely upon the nature of the disease afflicting the claimants; (3) the added unnecessary costs and complexity inherent in dual talc claimant committees and retained professionals; (4) the unfairness of vesting undue leverage in a constituency which comprise less than one percent of all claimants by number; (5) the creation of conflict of issue problems for counsel initially representing the Original TCC; and (6) the absence of any precedent for appointing separate committees based on disease type.

### III. Discussion

#### A. The TCC Order is Law of the Case

At the outset, the Court addresses whether the Notice of Appointment is void, or possibly voidable as contravening the terms of Judge Whitley's original TCC Order. Section 1102(a)(1) of the bankruptcy code provides that "the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors . . . as the United States trustee deems appropriate." Section 1102(a)(2) of the bankruptcy code states that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors." Nothing in § 1102 (a)(1) mandates that the U.S. Trustee secure a court order before initially appointing a committee, or additional committees; however, nothing in the referenced language empowers the U.S. Trustee to modify a court order by unilaterally "reconstituting" a committee of creditors whose composition has been established by such an order.

In the present matter, the Bankruptcy Administrator followed local practice in the Western District of North Carolina and filed her Committee Motion (ECF No. 227) after receiving and considering over 50 responses to her "Notice of Solicitation of Parties Interested in Serving on the Official Committee of Talc Claimants" (ECF No. 38). Judge Whitley conducted a hearing on the Committee Motion, on notice to interested parties, on November 4, 2021, at which the Bankruptcy Administrator detailed her efforts to select the membership of the Original TCC, including the possibility of creating two committees. The Court also considered arguments from other interested parties seeking to propose changes/additions to the TCC, and thereafter, on November 8, 2021, entered the TCC Order approving the Original TCC as proposed by the Bankruptcy Administrator. As argued by Movants, The TCC Order is now law of the case and comes to this Court in full force

and effect. *See Benecard Servs., Inc. v. Allied World Specialty Ins. Co.*, No. 20-2359, 2021 WL 4077047, at *5 (3d Cir. Sept. 8, 2021); *Am. C.L. Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (citations omitted)); In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432 (3d Cir. 2009); *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994) ("The law of the case doctrine limits the extent to which an issue will be reconsidered once the court has made a ruling on it."); *see also, e.g. Monroe v. Ethicon, Inc.*, No. CV 19-5384, 2019 WL 7050130, at *11 (E.D. Pa. Dec. 23, 2019) (holding that an order issued by another judge in another court is still law of the case); *In re Winstar Commc'ns, Inc.*, 435 B.R. 33, 41 (Bankr. D. Del. 2010), aff'd, No. AP 08-50296-KJC, 2013 WL 6053838 (D. Del. Nov. 15, 2013), aff'd, 591 F. App'x 58 (3d Cir. 2015) (same).

The Court understands the U.S. Trustee's position regarding the authority vested in it by Congress in § 1102. This Court respects the U.S. Trustee's authority and certainly appreciates the role the U.S. Trustee plays in the bankruptcy process. However, as the parties pointed out during oral argument, this case is in an "unusual" procedural posture—having been transferred from a Bankruptcy Administrator District in North Carolina to a United States Trustee District here in New Jersey. Therefore, this Court must also recognize and respect the authority and role that other courts play in a transferred case. An ample body of case law exists—based on principles of finality and judicial efficiency—establishing that a transferor judge's order is law of the case. *See, e.g., In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432; *Monroe v. Ethicon, Inc.*, 2019 WL 7050130; *In re Winstar Commc'ns, Inc.*, 435 B.R. 33. Transferee courts—although they are

endowed with various statutory and inherent authorities to make decisions in a case—are without power to modify or vacate a transferor judge's order without adequate justification. *See In re Pharmacy Benefit Managers Antitrust Litig.,* 582 F.3d 432 (holding that transferee judge's order vacating transferor judge's order—without justification—violated the law of the case doctrine); *Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982) (holding that "principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority").[3] Likewise, a U.S. Trustee—although he is endowed with statutory powers afforded to him by Congress—may not use those powers to unilaterally side-step an existing order. *See, e.g.*, *In re Sharon Steel Corp.*, 100 B.R. 767, 775 (Bankr. W.D. Pa. 1989) ("The Constitution prohibits the U.S. Trustee, as a member of the executive branch, from overruling a decision of the Bankruptcy Court, as a duly constituted entity of the judicial branch.").

It is manifestly evident that Judge Whitley's TCC Order establishes a single official talc claimants committee and fixes its composition by identifying its members by name. Quite simply, the U.S. Trustee's Notice of Appointment is inconsistent with the TCC Order in that it adds an additional committee and shifts membership between the two. Thus, the Notice of Appointment violates law of the case doctrine and this Court is obligated to vacate same and re-establish the force and effect of the TCC Order.

To be clear, this Court is not making any determinations as to the appropriateness of two committees, nor is it ruling that the U.S. Trustee is without authority to seek the reconstitution of the TCC and the formation of an additional talc committee. Indeed, such actions may be warranted

---

[3] Further, courts are somewhat limited in their ability to reconsider their own orders in that they may only do so "when it is consonant with justice[.]" *In re Energy Future Holdings Corp.*, 904 F.3d 298, 310 (3d Cir. 2018); *see also In re Dots, LLC*, 562 B.R. 286, 291 (Bankr. D.N.J. 2017) (collecting cases).

and prudent. However—absent a showing of circumstances that warrant modification of an existing order—this Court cannot ignore the TCC Order, nor can the U.S. Trustee use § 1102 to overrule Judge Whitley's findings therein. Rather, this Court is of the view that to accomplish his aims, the U.S. Trustee is obligated to reconcile his powers under § 1102 with law of the case doctrine by seeking relief from the TCC Order under either FED. R. BANK. P. 9024, 11 U.S.C. §105, or the Court's inherent authority to revisit prior orders. *See, e.g.*, *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439 (explaining that that the law of the case doctrine does not preclude a court from revisiting its own decisions or one of a coordinate court); *Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d at 169 (3d Cir. 1982) (recognizing exceptions to the doctrine of law of the case); *Dae Sub Choi v. Sushi Maru Express Corp.*, No. 17-cv-5230, 2018 WL 1087505, at *2 (D.N.J. Feb. 27, 2018) (discussing the types of "unusual circumstances" which must be shown to reconsider a decision that has become law of the case).

### B. Remaining Issues

There are three additional critical issues that have been raised and contested by the Motions under review: (1) whether the Court has the authority to review the decision by the U.S. Trustee in issuing the Notice of Appointment; (2) whether the Court, if it possesses such authority, has the power to disband the recently formed committees; and (3) whether or not there is a factual and legal basis for the Court to take such action. Unfortunately, this Court fears that if these issues are not addressed at this juncture, even preliminarily, this case will be mired in uncertainty and we likely will be revisiting these issues again—syphoning resources and attention from other critical matters. The Court thus turns to these issues.

### 1. Court's Authority to Review U.S. Trustee's Decision

The U.S. Trustee contends that § 1102(a)(1) vests him with sole discretion regarding the composition of creditor/equity committees, as well as the initial appointment of additional committees, as he "deems appropriate." In other words, in the U.S. Trustee's view, the decision is committed to his discretion as a matter of law. The U.S. Trustee rests his position in large part on the fact that Congressional amendments to the bankruptcy code in 1986[4] transferred the administrative task of appointing committees of creditors from the courts to the newly created United States Trustee position. This change, it is argued, indicates an intent on the part of Congress to vest sole authority over creditor committees with the United States Trustee. To uphold congressional intent, the U.S. Trustee asserts that his decisions in this area cannot be subjected to judicial review. Likewise, the U.S. Trustee takes the position that he need not provide either the Court or other parties with his rationale or reasoning behind the actions taken. The Court, respectfully, disagrees with this position.

Although there is a sharp conflict among courts regarding this issue of reviewability, this Court finds more persuasive the arguments and decisions that favor judicial review. *See, e.g.*, *In re Cont'l Cast Stone, LLC*, 625 B.R. 203, 209 (Bankr. D. Kan. 2020) ("The majority of courts hold that a bankruptcy court can review any action of the U.S. trustee under § 105, including the existence or composition of committees."); *id.* at 209 n.30 (collecting cases); *In re JNL Funding Corp.*, 438 B.R. 356 (Bankr. E.D. N.Y 2010); *In re Mercury Finance Co.*, 240 B.R. 270 (Bankr. N.D. Ill. 1999); *In re Sharon Steel Corp.*, 100 B.R. 767 (Bankr. W.D. Pa. 1989).

---

[4] On October 27, 1986, then President Ronald Reagan signed Pub. L. No. 99-554, the "Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986" into law. The 1986 Amendments provided for the national and permanent expansion of the U.S. Trustee system to 48 states, Puerto Rico, the U.S. Virgin Islands, and Guam.

In reaching this conclusion, the Court is guided, in part, by practicality. Indeed, the notion that the U.S. Trustee's decisions regarding committee appointments are not subject to *any* type of review by *any* authority seems to belie common sense. The Court presented hypotheticals to counsel for the U.S. Trustee during oral argument on this matter and queried whether there would ever be an instance when a party or the Court could take issue with the U.S. Trustee's actions— for example, when the U.S. Trustee appoints three additional committees (for a total of five), when the Court possesses knowledge that a committee is engaged in improper behavior, or when the U.S. Trustee fails in any aspect of its responsibility. Counsel for the U.S. Trustee did not provide a satisfactory answer, indicating instead that committee issues should be brought to the U.S. Trustee's attention and that inappropriate actions on the U.S. Trustee's part would be frowned upon by the United States Attorney General. The simpler solution, in this Court's view, is that judicial review of a U.S. Trustee's committee decisions is available if the circumstances so warrant.

This view is consistent with the long-standing, strong presumption that Congress intends judicial review of administrative actions. *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 673, 106 S. Ct. 2133, 2137, 90 L. Ed. 2d 623 (1986); *In re Lykes Bros. Steamship Co., Inc.*, 200 B.R. 933, 939 (M.D. Fla.1996) (relying on strong presumption in favor of judicial review of administrative action to conclude that bankruptcy courts may review a trustee's administrative task of appointing committee members, upon motion of a party in interest or upon the court's own motion). The Supreme Court has instructed "[u]nless 'there is persuasive reason to believe' that Congress intended to preclude judicial review, the Court will not preclude review." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060, 204 L. Ed. 2d 433 (2019) (Thomas, J. concurring) (quoting *Bowen*, 476 U.S. at 670); *see also Smith v. Berryhill*, 139 S. Ct.

1765, 204 L. Ed. 2d 62 (2019). Here, the Court perceives no "persuasive reason" to conclude that Congress intended to restrict judicial review of the U.S. Trustee's decisions under § 1102, *PDR Network, LLC*, 139 S. Ct. at 2060, nor has the U.S. Trustee satisfied the "heavy burden" to overcome the strong presumption in favor of judicial review, *see Smith v. Berryhill*, 139 S. Ct. at 1776.

In so concluding, the Court is persuaded by the language of the statute, the legislative history of the 1986 Amendments, and the rationale of the courts who have also analyzed those materials in the context of a court's ability to review a trustee's committee appointments. *See, e.g.*, *In re Cont'l Cast Stone, LLC*, 625 B.R. 203, 207 (Bankr. D. Kan. 2020); *In re Lykes Bros. S.S. Co., Inc.*, 200 B.R. at 939. As an initial matter, this Court finds no express language that prohibits a bankruptcy court from engaging in judicial review of a trustee's committee appointments. While §1102(a)(1) grants the U.S. Trustee the authority to appoint additional committees as he or she "deems appropriate," there is nothing in this section that expressly or impliedly restricts judicial review of such decisions. Thus, neither the statute's language nor structure demonstrates that Congress wanted the U.S. Trustee to "police its own conduct." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486, 135 S. Ct. 1645, 1651, 191 L. Ed. 2d 607 (2015) (citing *Block v. Community Nutrition Institute*, 467 U.S. 340, 349, 351, 104 S. Ct. 2450, 81 L.Ed.2d 270 (1984)). Rather, Congress—in employing the phrase "deems appropriate"—is simply confirming that there are no set statutory criteria or requirements which must be satisfied.

Moreover, if Congress had desired to place any restrictions on the courts' review, one would expect to see limiting language, such as "the courts shall not" or "the courts may not." Indeed, Congress is keenly aware how to place such limitations on the courts. As counsel for the U.S. Trustee stated during oral argument, when Congress chooses to use different words in

different sections, it "means something." A cursory review of the Bankruptcy Code undertaken by this Court reveals twenty-nine different Code sections that place limits on the courts by employing such phrases as "the court shall not" or "the court may not." Similar limiting language is found in the Code's legislative history as well as the Judicial Code codified in Title 28.

Additional support for the Court's ability to review the decisions of the U.S. Trustee with respect to the appointment of committees and their composition is found in subsections of § 1102. Specifically, § 1102(a)(2) allows the bankruptcy court to order that additional committees be appointed and § 1102(a)(4) permits the court to order a change the membership of a committee. These provisions necessarily require that a review of U.S. Trustee's decisions regarding fairness and the "adequacy of representation" take place. The bankruptcy court cannot evaluate whether an additional committee is necessary, or whether a change in membership is warranted, without considering the actions and reasoning in appointing the initial committee. The court must review a U.S. Trustee's decision to fulfill its obligation under the statute if so requested by a party in interest. *See* 11 U.S.C. § 1102(a)(2); *see also, e.g.*, *In re Mercury Fin. Co.*, 240 B.R. 270, 276 (N.D. Ill. 1999); *In re Voluntary Purchasing Groups, Inc.*, No. 96-396, 1997 WL 155407, at *2 (E.D. Tex. Mar. 21, 1997).

Finally, the Court finds significant support in Federal Rule of Bankruptcy Procedure 2020, which expressly provides that "any act" by the U.S. Trustee is subject to review by the Bankruptcy Court. *See* FED. R. BANKR. P. 2020 ("A proceeding to contest any act or failure to act by the United States trustee is governed by [Bankruptcy] Rule 9014"). The advisory committee's notes to Rule 2020 explain:

> [T]he United States trustee performs administrative functions, such as the convening of the meeting of creditors and the appointment of trustees and committees. . . . [T]he United States trustee is not a judicial officer and does not resolve disputes regarding the propriety of its own actions. This rule . . . provides a

> procedure for judicial review of the United States trustee's acts or failure to act in connection with the administration of the case.

FED. R. BANKR. P. 2020 advisory committee's note.

The advisory committee's note gives a specific example using § 341 and states that a party in interest can challenge—by way of motion—the propriety of the U.S. Trustee's decision to schedule a meeting of creditors under § 341 of the Code. Section 341 is structured much like §1102—the code provision at issue in this case—in that § 341 confers authority *only* to the U.S. Trustee to "convene and preside at a meeting of creditors." Similarly, § 1102 confers authority *only* to the U.S. Trustee to "appoint a committee of creditors." Nevertheless, the advisory committee's note to Rule 2020 make clear that parties may challenge, and the Court may review, a U.S. Trustee's administrative function under § 341. It therefore follows that a Court may review the U.S. Trustee's other administrative functions, such as those under § 1102 in connection with the appointment of creditors.

With respect to the proper standard of review, the Court follows the well-reasoned approach of Judge Alan Trust in *In re JNL Funding Corp.*, 438 B.R. 356, 360 (Bankr. E.D.N.Y. 2010), wherein he noted that despite the limited decisional authority on this issue, the majority of courts holds that the bankruptcy court has the inherent power, as well as the statutory authority under § 105(a), to review acts of the U.S. Trustee under an "arbitrary and capricious" or "abuse of discretion" standard of review. *See, e.g., In re Mercury Finance. Co.*, 240 B.R. 270 (internal citations omitted); *In re Barney's Inc.*, 197 B.R. 431, 438 (Bankr. S.D.N.Y. 1996) (holding that the court reviews the UST's appointment of a committee under an arbitrary and capricious standard).

## 2. Disbandment Is Available as a Remedy

Now the Court turns to whether potential remedy of disbandment of the Committee is available to a bankruptcy court. While the Bankruptcy Code is wholly silent as to the disbandment of creditors' committees appointed by the U.S. Trustee, courts have ordered the disbandment of a committee in appropriate circumstances. *See e.g., In re City of Detroit, Mich.*, 519 B.R. 673 (2014) ("[T]he Court is authorized to vacate the appointment of the Committee pursuant to 11 U.S.C. § 105, and that this authority should, in the Court's discretion, be exercised in this case."); *In re Pacific Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012) (ordering disbandment of committee under § 105(d) because, among other things, the committee's fees were paid out of the secured lender's cash collateral—which was a "free ride for one group of creditors at the expense of another and the committee was not "necessary to protect the interests of its constituency"); *In re JNL Funding Corp.*, 438 B.R. 356, 360 (Bankr. E.D.N.Y. 2010) ("Despite limited case law on this issue, the majority of courts hold[ ] that the bankruptcy court has the inherent power, as well as the statutory authority under § 105(a), to review acts of the UST, under an 'arbitrary and capricious' or 'abuse of discretion' standard of review.").

This Court bottoms its authority to disband any committee, if the facts and law so warrant, on § 105(a) of the Bankruptcy Code, providing that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).[5]

---

[5] Although § 105(a) serves as sufficient statutory support to disband a committee appointed by the U.S. Trustee, the Court agrees with the view expressed by Judge George R. Hodges in *In re Pac. Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012), that § 105(d) also provides the Court with the authority to disband a creditor's committee. Section 105(d) of the Bankruptcy Code provides that

> the court, on its own motion or on the request of a party in interest . . . shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and . . . may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically.

As opponents to the Motions point out, § 105(a) of the Bankruptcy Code may not be used to create substantive rights that are not provided for in the Code. *See In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005) (citing *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000)) *see also Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014). However, this Court finds that "§ 105(a) can be and should be used to assure that the trustee does not act in an arbitrary or capricious manner." *In re Voluntary Purchasing Groups, Inc.*, No. 96-cv-396, 1997 WL 155407, at *3 (E.D. Tex. Mar. 21, 1997) (stating that "[this] Court agrees with other jurisdictions that have held that 11 U.S.C. sec. 105(a) allows the bankruptcy court to review the trustee's decisions on committee appointments"); *see also In re: Ican Benefit Group, LLC, et. al,* 2021 WL 4439821 (Bankr. S.D. Fla 2021); *In re Cont'l Cast Stone, LLC*, 625 B.R. 203, 209 (Bankr. D. Kan. 2020); *In re First Rep. Bank Corp.*, 95 B.R. 58, 60 (Bankr. N.D. Tex. 1988) (reading § 105 of the Bankruptcy Code to "authorize review of the United States trustee's administrative task" and stating that "the court should use the arbitrary and capricious standard applicable for [its] administrative review."). In so ruling, the Court disagrees with the holdings in cases like *In re Caesars Ent. Operating Co., Inc.*, 526 B.R. 265, 269 (Bankr. N.D. Ill. 2015), on which opponents to the Motions rely heavily. The decisions of out-of-circuit bankruptcy courts are not binding on this Court and this Court is not persuaded by their analyses.

---

11 U.S.C. § 105(d)(1)-(2).

### 3. Review of the Facts in this Case

Having determined that the Court possesses the authority to review the U.S. Trustee's decision to issue the Notice of Appointment, and if appropriate strike such Notice and disband the committees formed thereunder (resulting in the reinstatement of the Original TCC), the Court must still tackle whether such action by the Court is warranted. As noted above, review acts of the U.S. Trustee must be undertaken under an "arbitrary and capricious" or "abuse of discretion" standard of review. Put simply, the actions and decision of the U.S. Trustee are entitled to deference. This Court, however, has been handcuffed in undertaking such analysis by the U.S. Trustee's position that the issues to be resolved in the Motions under review are legal in nature and that the U.S. Trustee is not required to disclose or make any record regarding his reasoning, rationale or conclusions behind his issuance of the Notice of Appointment. Without such information, the Court cannot accord the U.S. Trustee such deference and properly evaluate the objections raised by Movants or the arguments supporting the U.S. Trustee's position. The credible and extensive efforts by the TCC II to offer the Court justification for the U.S. Trustee's actions fall short of what is necessary to make an informed review.  The Court is left with no choice but to grant the Motions, unless and until the U.S. Trustee pulls back the curtains on the decision-making process.

## IV. Conclusion

For the reasons discussed, this Court will enter an Order striking, without prejudice, the Notice of Appointment, disbanding the two committees formed thereunder and reinstating the Original TCC.  The Court understands and appreciates that its decision today may well be disruptive to the administration of the case, including the on-going merry-go-round retention process for committee professionals. In this regard, it may make sense for those affected, interested parties to consider forming an ad hoc committee, which may come before the Court at a later date

17

to seek recognition as an official committee if the facts and law so warrant. *See In re Budd Co., Inc.*, 512 B.R. 910 (Bankr. N.D. Ill. 2014). As directed during the hearing held on January 19, 2022, Movants will prepare and circulate a proposed form of order consistent with this Opinion.

*[signature]*
Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: January 20, 2021