**JONES DAY**

2727 NORTH HARWOOD STREET • DALLAS, TEXAS 75201.1515

TELEPHONE: +1.214.220.3939 • FACSIMILE: +1.214.969.5100

Direct Number: (214) 969-3759
gmgordon@jonesday.com

January 23, 2022

The Honorable Michael B. Kaplan
United States Bankruptcy Court, District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street, Courtroom #8
Trenton, NJ 08608

Re:  LTL Management LLC, Case No. 21-30589 (MBK)

Dear Chief Judge Kaplan:

For the Debtor, I submit this response to two separate letters submitted to the Court on January 21, 2022, by counsel for Talc Committees I and II related to discovery issues. Mr. Glasser raises issues related to specific document requests and depositions, and Mr. Capone raises issues related to the Debtor's redaction of privileged information from produced documents.

I also raise two issues related to the deficient witness lists and expert disclosures served by Talc Committees I and II.

**Document Requests**

The Debtor responds first to the issues raised by Mr. Glasser on behalf of Talc Committee II related to specific document requests.

RFP No. 63. Privacy redactions of salary and bonus figures. The Debtor has informed the Talc Committees that it will produce the documents without redactions.

RFP No. 53. Jones Day billing records. During a meet and confer the morning of January 21, the Debtor informed counsel for Talc Committees I and II that the agreed-upon billing records would be included in the documents being produced later that day. Consistent with that representation, the Debtor produced the records the evening of January 21.

RFP No. 28. Royalty documents. On January 20, the Debtor informed Mr. Glasser in writing that the requested documents would be produced on January 21. Again, during a meet and confer the morning of January 21, the Debtor reiterated that the requested documents would be included in the production later that day. Consistent with that representation, the Debtor produced the records the evening of January 21.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

January 23, 2022
Page 2

RFP No. 3. Electronic and hard copy calendars for 20 individuals. This request calls for all calendars, whether electronic or hard copy, for 20 individuals. Six of the individuals are agreed-upon document custodians. The Debtor has no objection to producing responsive, non-privileged calendar invitations for those custodians and, in fact, has been doing so. Most calendar invitations relevant to the restructuring will be in the files of two agreed-upon custodians—Tom McCann and John Kim—and will be produced this week. The remaining 14 individuals whose calendars the Talc Committees seek are not agreed-upon custodians, and the Debtor objects to including them as custodians at this late stage in the litigation. It is unduly burdensome to require the Debtor to collect the ESI for 14 new custodians, process it, review it, and produce it by January 31, which is the deadline for the parties to be substantially complete with document productions.

RFP No. 4. Expert report of Dr. Mullin from *Imerys* proceeding. The Debtor objects to producing this report because it is not in the Debtor's possession, custody, or control. In addition, as the Talc Committees know, the expert report is subject to a protective order in place in the *Imerys* bankruptcy case and cannot be disclosed in this proceeding.

**Depositions**

The Debtor addressed the Talc Committees' request for the depositions of Messrs. Andrew and Decker in its letter to the Court dated January 14. The Debtor briefly summarizes the status of depositions and its objection to these two new requested depositions below.

To date, the parties have completed the depositions of three witnesses requested by the Talc Committees: Ms. Goodridge on December 20, Mr. Wuesthoff on December 22, and Mr. Mongon on January 19. All three depositions have lasted the full day. The parties have scheduled four more depositions requested by the Talc Committees: Mr. Azevedo on January 24, Mr. Dickinson on January 26, Ms. Ryan on January 27, and Mr. Kim on January 28.

Throughout discovery, the Debtor has emphasized the need for the Talc Committees to identify deponents as soon as possible to provide sufficient time to address any scheduling challenges that might exist. Consistent with this, during the conference with the Court on January 3, the Court directed the Talc Committees to identify any additional deponents in the next three days. (Jan. 3, 2022 Tr. 27:8-10).

After receiving, on January 4, the Talc Committees' request to depose Messrs. Dickinson and Kim, the Debtor reasonably believed that the Talc Committees would not request more depositions. But on January 12, six days after the Court's deadline for identifying deponents, the Talc Committees requested three additional depositions: Chris Andrew, Tom McCann, and Bob Decker. The Talc Committees have since withdrawn their request for Mr. McCann's deposition but still seek to depose Messrs. Andrew and Decker.

January 23, 2022
Page 3

The Debtor objects to these requests and asks the Court to deny them. There is no need for depositions of ten individual fact witnesses to address the issues relevant to the motions to dismiss. This is particularly the case given that the Talc Committees also have served corporate representative deposition notices under Fed. R. Civ. P. 30(b)(6) on the Debtor and Johnson & Johnson. Ten depositions is the maximum number allowed under the Federal Rules of Civil Procedure for civil actions whose discovery periods can extend for many months and sometimes years. These requests are especially excessive given that five other witnesses were previously deposed in connection with the North Carolina preliminary injunction hearing on many of the issues relevant to the Motions to Dismiss.

The depositions of these newly identified witnesses will not yield any additional relevant information. Mr. Andrew's involvement in the corporate restructuring was performed in his role as a lawyer in the legal department of Johnson & Johnson. The only substantive testimony he could provide would be privileged or work product protected. Mr. Decker is the supervisor of Adam Lisman, one of the five witnesses deposed in connection with the North Carolina preliminary injunction proceeding. Thus, any testimony that could be elicited from him is likely to be duplicative of Mr. Lisman's. The Court should deny these additional deposition requests.

**Redaction of Privileged Information**

The Debtor responds below to the issues raised by Mr. Capone on behalf of Talc Committee I related to the Debtor's redaction of certain privileged information from two documents—an October 11, 2021 presentation by legal counsel for Johnson & Johnson to Mr. Wuesthoff and others and the October 14, 2021 Minutes of the Board of Managers of LTL Management.

Talc Committee I does not appear to dispute that the redacted portions of these documents are in fact privileged and/or protected by the work product doctrine. Instead, it argues that the Debtor has waived such protections by "selectively disclos[ing] communications with counsel that informed its decision to file for bankruptcy and the options considered …." (Capone Ltr. at 5) Talc Committee I cites a number of cases for the proposition that a party cannot selectively use privileged communications as a sword while simultaneously shielding other privileged communications from disclosure. None of those cases is relevant, however, because the Debtor has not selectively disclosed any privileged communications or otherwise put the advice of counsel at issue.[1]

---

[1] *United Jersey Bank v. Wolosoff*, 483 A.2d 821 (N.J. Super. Ct. App. Div. 1984) (bank could not voluntarily waive privilege over certain documents prepared during settlement while withholding others); *Aysseh v. Lawn*, 452 A.2d 218 (N.J. Super. Ct. Ch. Div. 1982) (attorney waived privilege over all communications related to contract by testifying about the intent of contracting parties); *Martin v. Shaen*, 156 P.2d 681 (Wash. 1945) (executor of estate waived privilege over communications with decedent bearing on the validity of a quitclaim deed when he testified at

JONES DAY

January 23, 2022
Page 4

      The Debtor is not relying on the advice of counsel or any other privileged information to oppose the motions to dismiss. Mr. Kim and Mr. Wuesthoff have testified only about non-privileged information or communications. They have testified only to facts regarding the Debtor's rationale for filing this chapter 11 case. Both have testified that the Debtor considered various options and determined that filing the chapter 11 case was the only viable alternative for equitably and permanently resolving current and future talc-related claims. Neither has testified or will testify about legal advice requested or received or any other privileged communications related to those options. Thus, as the Court concluded on January 6, the sword-and-shield argument is misplaced. (Jan. 6, 2022 Tr. 28:3-5) ("I don't believe there'll be … information that'll be shielded.")

      The Court should deny Talc Committee I's request for a ruling (i) that the redactions be removed from the two documents at issue and (ii) that the Debtor has waived privilege over all discussions at the LTL board meeting.

**The Talc Committees' Deficient Witness Lists**

      As the Debtor has said throughout discovery, the issues necessary to decide the motions to dismiss are relatively narrow, and few, if any, factual issues are in dispute. Most of the documents and information necessary to resolve the motions to dismiss were produced as part of the preliminary injunction proceeding in North Carolina.

      Nevertheless, the Talc Committees continue to inundate the Debtor with myriad requests designed to maximize the costs and burden on the Debtor. They have served broad and ever expanding discovery demands on the Debtor, first with their request for 78 custodians and now with their growing list of deposition requests. The Debtor consistently has responded in good faith and has worked to negotiate reasonable limits on these demands, despite receiving endless complaints from the Talc Committees.

---

trial about how he had received the deed); *Weingarten v. Weingarten*, 560 A.2d 1243 (N.J. Super. Ct. App. Div. 1989) (in divorce action, wife waived privilege by claiming husband's misrepresentations caused her to not follow her attorney's recommendations); *Sicpa N. Am., Inc. v. Donaldson Enters., Inc.*, 430 A.2d 262 (N.J. Super. Ct. Law Div. 1981) (company's intentional waiver of privilege over attorney's report for settlement purposes waived privilege over report for other purposes); *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817 (D.N.J. June 26, 2008) (plaintiff voluntarily waived privileged by disclosing valuation report in patent dispute); *In re Welded Constr., L.P.*, 2021 WL 537406 (Bankr. D. Del. Feb. 15, 2021) (defendants could not assert privilege over audit report after citing it in opposition to summary judgment); *In re Grand Jury Subpoena*, 913 A.2d 78 (N.J. Super. Ct. App. Div. 2006) (holding that attorney could assert privilege in response to specific questions before grand jury); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co*, 32 F.3d 851 (3d Cir. 1994) (holding that insured did not waive privilege in insurance coverage lawsuit).

January 23, 2022
Page 5

Most recently, the Talc Committees' excess appears in their disclosure of witnesses they anticipate calling at the hearing on the motions to dismiss. Under the case management order that the parties have been negotiating and adhering to, the parties agreed to serve witness lists no later than January 21. The Debtor timely served its list, identifying three fact witnesses. Talc Committee I and Talc Committee II each served a list. Talc Committee I included ***12 fact witnesses, 11 of whom are with the Debtor, J&J or a J&J affiliate*** and Talc Committee II included ***17 fact witnesses, 14 of whom are with the Debtor, J&J or a J&J affiliate.*** Eleven of the witnesses on the two lists overlap.

Both lists are excessive and divorced from reality. To highlight just a few examples, Talc Committee II's list includes *three* apex-level executives at Johnson & Johnson (Joseph Wolk, the chief financial officer; Michael Ullman, the general counsel; and Thibaut Mongon, the worldwide head of consumer health). Talc Committee I's list also includes Mr. Ullman and Mr. Mongon. And inexplicably Talc Committee II's list includes Joseph Satterley, a lawyer for individual talc claimants.

By deliberately including more witnesses than could possibly be called at the hearing, the Talc Committees are prejudicing the Debtor by limiting the time it has to prepare those witnesses who actually will be called for the hearing. The Debtor requests that the Court order the Talc Committees to serve a single, combined final witness list by the close of business on January 24 so the Debtor's preparations for the hearing are not further prejudiced by the Talc Committees' actions.

**The Talc Committees' Deficient Expert Disclosures**

Under the case management order that the parties have been negotiating and adhering to, the parties agreed to identify the name and affiliation of each expert they intend to call at the hearing by January 18. Talc Committee I and Talc Committee II served separate lists. There was significant redundancy in the separate disclosures. For example, both committees disclosed experts who will provide testimony about the divisional merger transaction and its potential impacts and the financial condition of Johnson & Johnson, Johnson & Johnson Consumer, Inc., and LTL.

In addition, Talc Committee II failed to identify the name or affiliation for three of the five experts it listed. Instead, its disclosure included three "Professionals to be named by January 28, 2022." This does not comply with the case management order. After receiving this deficient disclosure, the Debtor requested that that Talc Committee II identify the three unnamed experts by January 20. To date, Talc Committee II has refused to name them. Talc Committee II's delay in identifying its experts is prejudicing the Debtor's ability to prepare both for the depositions of those experts and for the hearing. The Debtor requests that the Court order Talc Committee II to

JONES DAY

January 23, 2022
Page 6

identify these unnamed experts by name and affiliation by the close of business on January 24 so the Debtor's preparations for the hearing are not further prejudiced by the Talc Committees' actions.

Thank you for your consideration of this letter.

Respectfully submitted,

*s/ Gregory M. Gordon*

Gregory M. Gordon