| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-1(b)**<br><br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones<br>John A. Morris<br>Karen B. Dine<br>Colin R. Robinson<br>Peter J. Keane<br>919 N. Market Street, 17th Floor<br>Wilmington, DE  19801<br>Telephone:  (302) 652-4100<br>Facsimile:   (302) 652-4400<br>Email: ljones@pszjlaw.com<br>          jmorris@pszjlaw.com<br>          kdine@pszjlaw.com<br>          crobinson@pszjlaw.com<br>          pkeane@pszjlaw.com<br><br>*Counsel to Arnold & Itkin LLP* | |
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>                                   Debtor.[1] | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>Hearing Date and Time:<br>Feb. 15, 2022 at 10:00 a.m. (ET) |

### ARNOLD & ITKIN LLP'S *AMENDED* NOTICE OF DEPOSITION
### OF LTL MANAGEMENT LLC, PURSUANT TO F.R.B.P. 7030(b)(6)

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Bankruptcy Procedure 7030

(b)(6), incorporating by reference Federal Rule of Civil Procedure 30, Arnold & Itkin LLP ("A&I")

hereby gives notice that, in connection with the *Motion to Dismiss Bankruptcy Case* filed by

Arnold & Itkin on December 7, 2021 [Docket No 766], A&I will take the deposition of the debtor,

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**LTL Management LLC,** on January 31, 2022 at 9:30 a.m. Eastern Time or at such other date and time as counsel to A&I shall agree in writing. The deposition will be taken under oath before a notary public or other person authorized by law to administer oaths and will be visually recorded by video or otherwise.

The deposition will be taken remotely via an online platform due to the coronavirus pandemic such that no one will need to be in the same location as anyone else in order to participate in the deposition and by use of Interactive Realtime. Parties who wish to participate in the deposition should contact Jesse Weisfelner at jesse.weisfelner@lexitaslegal.com, with a copy to Danielle D'Aquila at dd'aquila@brownrudnick.com **no fewer than 24 hours before the start of the deposition** for more information regarding participating in this deposition remotely.

## DEFINITIONS

1. Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the First Day Declaration (as defined below), except that any capitalized term in the First Day Declaration referring to any entity shall also include that entity's present and former parents, subsidiaries, affiliates, directors, officers, members, managers, employees, agents, attorneys and representatives, and every other person acting on its or their behalves.

2. "Approval Memo" means the "Approval Request – Memorandum of Approval" dated October 11, 2021.

3. "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI, including metadata (and any attachments thereto), Documents, telephone conversations, text messages, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

4. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

5. "Decision Maker" means each officer, director, member, or manager of an entity.

6. "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made. This includes, but is not limited to, Communications, ESI (including metadata), "writings" as defined by Rule 1001 of the Federal Rules of Evidence, copies or drafts, and any tangible or intangible thing or item that contains any information. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

7. "ESI" has the meaning ascribed to it in Federal Rules of Civil Procedure 16, 26, and 34(a).

8. "Financial Distress" means an inability to generate sufficient cash flow, revenue, or income and includes, but is not limited to (a) difficulty meeting or satisfying debts or obligations when due, (b) the existence of overdue debts or obligations, (c) default(s) or risk(s) of default(s) on existing or future debts or obligations, (d) difficulty raising or borrowing money when needed, and/or (e) impaired access to capital markets..

9. "Financial Statements" means audited or unaudited financial statements including balance sheets, income statements, and statements of operations, and any notes with respect to the foregoing, prepared on a weekly, monthly, quarterly, semi-annually, or annual basis.

10. "First Day Declaration" refers to the *Declaration of John K. Kim in Support*

*of First Day Pleadings*, dated October 14, 2021, and filed at Docket. No. 5, including the documents attached thereto.

11. "J&J Announcement" refers to the J&J press release attached as Exhibit A to the *Declaration of Laura Davis Jones*, dated December 9, 2021, and filed at Docket No. 766-2.

12. "Jones Day Application" refers to the *Debtor's Ex Parte Application for an Order Authorizing It to Retain and Employ Jones Day as of the Petition Date*, dated November 15, 2021, and filed at Docket No. 404.

13. "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (e.g., as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

14. "2021 Corporate Restructuring" shall refer, individually and collectively, to the series of corporate or company transactions and filings that culminated in the formation, capitalization and/or re-domiciling of the Debtor and New JJCI on or about October 12, 2021, involving all entities and transactions that resulted in the division of Chenango Zero LLC into the Debtor and New JJCI as described in Section II of the First Day Declaration, and the agreements associated therewith, including the Amended and Restated Funding Agreement (the "Funding Agreement").

15. "You" or "Your" means LTL Management LLC and anyone authorized to act on behalf of LTL Management LLC.

16. Plural words include the singular equivalent, and singular words include the plural equivalent.

17. The term "and" includes and disjunctive "or," and "or" includes the conjunction "and."

Deponent shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf as to the following deposition topics:

**DEPOSITION TOPICS**

**Topic 1:**

All engagement letters signed by Jones Day Concerning the services provided by that firm in connection with the J&J Estimated Amount (as that term is defined in paragraph 21 of the Jones Day Application).

**Topic 2:**

Old JJCI's Financial Statements prepared during the one-year period preceding the consummation of the 2021 Corporate Restructuring.

**Topic 3:**

The J&J Announcement, including, without limitation, the (i) purpose or intent of the transactions described and/or contemplated in the J&J Announcement; (ii) when J&J or any direct or indirect subsidiary of J&J first began considering those transactions and the circumstances giving rise to such consideration; and (iii) the effect of those transactions on J&J's and New JJCI's obligations under the Funding Agreement.

**Topic 4:**

The creation, purpose, and capitalization of Royalty A&M, including (a) the organization of Royalty A&M; (b) the contribution of $367.1 million to Royalty A&M; and (c) the subsequent use by Royalty A&M of this contribution to acquire certain royalty streams from Old JJCI and certain of its affiliates, as described in paragraph 22 of the First Day Declaration, including, without limitation, the reasons for any of the foregoing.

**Topic 5:**

Any estimations of claims under the Bankruptcy Code in this case or in any other potential chapter 11 case to adjudicate, determine or otherwise resolve any claims against Old JJCI or J&J

relating to products containing talc or talcum powder prepared on or after January 1, 2021.

**Topic 6:**

The negotiation (if any) and drafting of the Funding Agreement, including (a) the identification of each person who negotiated the Funding Agreement on behalf of each party to the Funding Agreement, (b) the time period of any negotiations, (c) all proposals and counterproposals made during the negotiations (whether or not accepted), and (d) all drafts of the Funding Agreement.

**Topic 7:**

Your negotiation of any of the terms of the Funding Agreement with any other Person, including (a) the identification of each person who represented Your interests in the negotiation of the Funding Agreement, (b) all proposals and counterproposals made by You or on Your behalf during the negotiation of the Funding Agreement, and (c) Your decision to enter into the Funding Agreement, including the reasons for Your decision.

**Topic 8:**

The reasons for entry into the 2021 Corporate Restructuring.

**Topic 9:**

All alternatives to the 2021 Corporate Restructuring considered by You, J&J, and/or Old JJCI to resolve the Talc-related Liabilities, as that term is used in the First Day Declaration and Funding Agreement.

**Topic 10:**

Any valuations, whether formal or informal, external or internal, performed with respect to You and/or New JJCI, or any portion of either's assets or liabilities at any time on or after January 1, 2021.

**Topic 11:**

Any valuations or assessments of liabilities, reserves, or accruals for Talc Related Claims (as that term is used in the First Day Declaration) prepared in connection with J&J's consolidated financial reporting.

**Topic 12:**

Any valuation, whether formal or informal, external or internal, of any royalties, royalty streams or rights to royalties assigned to or acquired by Royalty A&M.

**Topic 13:**

Any fairness opinion generated or received in connection with any aspect of the 2021 Corporate Restructuring, including, without limitation, the merger of Old JJCI into Chenango Zero and the divisive merger of Chenango Zero into Chenango One and Chenango Two.

**Topic 14:**

The service agreements between J&J Services, on the one hand, and the Debtor or Royalty A&M on the other hand.

**Topic 15:**

Accounts payable obligations of Old JJCI at the end of each quarter for each of the first through third quarters of 2021 or any stub period thereof.

**Topic 16:**

The reasons for the timing of the filing of Your bankruptcy case, including, but not limited to, any relationship to, or any consideration of, (a) the *Robert Ingham et al; v. Johnson & Johnson, et al* litigation or (b) the J&J Announcement.

**Topic 17:**

The reasons the Debtor listed the amount of $2 billion dollars or more as a "receivable,"

"paid in capital" and an "asset" on its first Monthly Operating Report.

**Topic 18:**

The secondment agreements between J&J Services, on the one hand, and the Debtor and Royalty A&M, on the other hand.

**Topic 19:**

Any intercompany loan, funding, or finance agreement to which Royalty A&M is a party.

**Topic 20:**

The proposed reorganization of the Debtor, including, without limitation, any draft chapter 11 plans, outlines or proposed chapter 11 plans, projections, analyses of feasibility, trust agreements or terms and trust procedures.

**Topic 21:**

Any analysis, calculation, determination or estimation of the "full value of New JJCI" (as that term is used in the Funding Agreement) including Communications Concerning same.

**Topic 22:**

Any Communications with or between J&J and New JJCI Concerning the federal tax implications of a contribution by either entity into a Qualified Settlement Fund, as that term is defined in the Internal Revenue Code, Concerning the Debtor or this chapter 11 case.

**Topic 23:**

If You contend that (a) You are in Financial Distress, and/or (b) were in Financial Distress on the Petition Date, the facts and documents upon which You base that contention.

**Topic 24:**

If You contend that Old JJCI was in Financial Distress as of the day before it merged into Currahee, the facts and documents upon which You base that contention.

**Topic 25:**

9

If You contend that You filed Your bankruptcy case to preserve Your going concern value, the facts and documents upon which You base that contention.

**Topic 26:**

If You contend that You filed Your bankruptcy case to maximize the value of Your assets, the facts and documents upon which You base that contention.

**Topic 27**

The reason or reasons why you have no employees of Your own.

Dated: January 28, 2022	**PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Colin R. Robinson*
Laura Davis Jones
John A. Morris
Karen B. Dine
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
    jmorris@pszjlaw.com
    kdine@pszjlaw.com
    crobinson@pszjlaw.com
    pkeane@pszjlaw.com

*Counsel for Arnold & Itkin LLP*