# JONES DAY

2727 NORTH HARWOOD STREET • DALLAS, TEXAS 75201.1515

TELEPHONE: +1.214.220.3939 • FACSIMILE: +1.214.969.5100

Direct Number: (214) 969-3759
gmgordon@jonesday.com

February 3, 2022

Honorable Michael B. Kaplan
402 East State Street
Trenton, N.J. 08608
Courtroom #8

Dear Chief Judge Kaplan,

      I am writing on behalf of LTL Management LLC ("LTL"), along with co-counsel for Johnson & Johnson ("J&J"), to inform the Court that it appears lawyers representing mass tort plaintiffs in this proceeding have shared confidential documents produced in discovery with the Reuters news agency, in violation of the Court's December 21, 2021 Protective Order ("Protective Order"). Specifically, the violation encompasses ***at least*** two documents marked confidential: (1) the minutes from a May 17, 2021 Special Meeting of the Board of Directors of J&J, during which J&J's General Counsel briefed directors on the talc litigation generally and J&J's appeal of a Missouri talc verdict to the U.S. Supreme Court (LTL 0019825); and (2) a series of communications regarding a meeting with Jones Day partner Greg Gordon and his team to discuss a potential divisional merger and bankruptcy (LTL 003536-78, LTL 0036459-61). Based on the specificity of the questions from Reuters, it is apparent that these plaintiffs' lawyers have generally been feeding a series of company documents and deposition testimony from this proceeding to Reuters in order to try their case in the court of public opinion.

      These materials were referenced in a recent email from a Reuters reporter to two J&J media specialists and to Jones Day seeking comments regarding an upcoming Reuters article on the pending LTL bankruptcy. *See* Ex. A.

      This is not the first time that Reuters is acting as a mouthpiece for plaintiffs, and not the first time plaintiffs' lawyers are using the media to advance their one-sided story in the talc litigation. Indeed, it appears to be part of their respective business models. In 2018, Reuters published an article entitled, "Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder." *See* Lisa Girion, Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder, Reuters (Dec. 14, 2018), https://www.reuters.com/investigates/special-report/johnsonandjohnson-cancer/ (attached as Ex. C). The 2018 article purported to contain newly discovered information about asbestos contaminants in talc that was being reported by Reuters "for the first time," but instead merely regurgitated false allegations by plaintiffs' lawyers, who sought to use media publicity to give their meritless allegations a veneer of legitimacy, drive down J&J's stock price and improve their settlement leverage against the company. As plaintiffs' lawyer Mark Lanier admitted in a recent declaration submitted in a securities proceeding, he was a primary source for the 2018 article, and publication of the 2018 article "serve[d] [his] purposes as a litigator to say, 'Yes, get their attention; keep driving the stock down.'" *See* Decl. of Mark Lanier ¶ 6, Dec. 20, 2021, *Hall v. Johnson & Johnson*, No. 3:18-CV-01833-FLW-TJB (D.N.J.)

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

(attached as Ex. D). (Notably, Mr. Lanier also stated in that declaration that the Reuters article did not contain any information about talc that was not previously available in the public record, contrary to Reuters' suggestions in the article that it was publicizing various documents for the first time.) The mass tort bar and Reuters appear to be collaborating again on a hit job designed to prejudice J&J and LTL in the courtroom (and in the court of public opinion), this time in blatant disregard and violation of Your Honor's Protective Order.

We have conveyed our serious concerns to Reuters and have asked that it confirm in writing by 2 pm EST today that it will return and not disclose any Confidential Information covered by the Protective Order in any forthcoming article. *See* Letter from Thomas A. Clare and Joseph R. Oliveri to Katharine Larsen, Feb. 2, 2022 (attached as Ex. B). If Reuters refuses to provide that assurance, we will consider moving this Court for an emergency temporary restraining order to protect the Debtor's rights. *Cf. In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 397 (E.D.N.Y. 2007) ("injunction requires the return of the protected documents" disseminated to *New York Times* reporter and others).

We bring this issue to the Court's immediate attention because it appears to be part of an ongoing strategy to litigate this bankruptcy proceeding in the media in the weeks prior to the Motion to Dismiss hearing and deny the Debtor a fair day in court. As set forth in the Debtor's Objection to Motions for Leave to File Briefs of Amici Curiae, claimants' counsel have solicited three "amicus" briefs from law professors in support of their motion to dismiss Debtor's Chapter 11 case that largely parrot the mass tort lawyers' positions in this case. The belated and procedurally improper amicus submissions—made without requisite disclosures concerning the amici's interestedness and bias—plainly are intended to add a false veneer of gravitas to the mass tort lawyers' positions, while depriving the Debtor of an adequate opportunity to respond. Notably, this amicus effort, too, was covered in Reuters, along with a quote from a plaintiff's lawyer. *See* Maria Chutchian, "Bankruptcy Experts Join Call To Dismiss J&J Chapter 11," https://www.reuters.com/legal/transactional/bankruptcy-experts-join-call-dismiss-jj-talc-ch-11-2022-01-26/ (quoting Clay Thompson of the Maune Raichle Hartley French & Mudd firm, praising amicus briefs as "frank, unvarnished talk from academics") (attached as Ex. E). Given the coordinated filing of those briefs and reach-out to the media covering their filing, these efforts all appear to be part of a concerted strategy to undermine the integrity of these proceedings and prejudice the Debtor.

Thank you for your consideration of these issues.

Respectfully submitted,

*/s/ Gregory M. Gordon*
Gregory M. Gordon, Jones Day
Counsel for LTL Management LLC

*/s/ Jessica Lauria*
Jessica Lauria, White & Case LLP

Counsel for Johnson & Johnson