UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
BRIAN M. BOYNTON
Acting Assistant Attorney General
RUTH A. HARVEY
Director
MARGARET NEWELL
Assistant Director
MATTHEW J. TROY
Senior Trial Counsel
P.O. Box 875 Ben Franklin Station
Washington, DC 20044-0875
Tel: (202) 514-9038
matthew.troy@usdoj.gov

*Attorneys for the United States of America*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re*<br><br>LTL MANAGEMENT, LLC,<br><br>　　　　　　　　　　　Debtor. | Chapter 11<br>Case No. 21-30589-MBK<br><br>Judge Michael B. Kaplan<br><br>Hearing Date: February 18, 2022<br>Hearing Time: 10:00 a.m. |

**OBJECTION OF THE UNITED STATES OF AMERICA TO DEBTOR'S MOTION FOR AN ORDER AUTHORIZING ESTABLISHMENT OF A QUALIFIED SETTLEMENT FUND FOR PAYMENT OF TALC CLAIMS**

The United States of America, on behalf of the Department of Health and Human Service ("HHS"), Centers for Medicare & Medicaid Services ("CMS"), and the Indian Health Service ("IHS"), hereby objects to the *Debtor's Motion for an Order Authorizing Establishment of a Qualified Settlement Fund for Payment of*

*Talc Claims* ("Motion") (ECF No. 8).  In support thereof, the United States respectfully represents as follows:

## FACTUAL BACKGROUND

1. LTL Management LLC ("Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 14, 2021 (the "Petition Date") [ECF Doc. No. 1].

2. On the Petition Date, the Debtor also filed the Motion seeking approval for "the establishment and funding of a North Carolina trust (the 'QSF Trust') that will constitute a 'qualified settlement fund' to resolve or satisfy current and future talc-related claims asserted against or related to the Debtor but excluding any such claims pursuant to which amounts will be paid or incurred to, or at the direction of, any government or governmental entity (collectively the 'QSF Talc Claims') upon the terms set forth in the trust agreement." *Motion* at 1 (footnote omitted).[1]  The proposed Trust Agreement establishing the QSF Trust is attached to the Motion as Exhibit A.

3. Debtor is seeking to establish and fund the QSF Trust pursuant to the prepetition Funding Agreement. *Motion* at ¶¶ 5-7.  Under the Funding Agreement, nondebtor affiliates (New JJCI and J&J) are obligated, on a joint and several basis, to provide funding, up to full value of New JJCI, to (a) pay all of the Debtor's costs and expenses including the costs of administering the Debtor's bankruptcy and (b)

---

[1] Terms not defined herein shall have the meaning ascribed to them in the Motion.

2

fund amounts necessary to satisfy the Debtor's talc-related liabilities. *Id.* Neither the Motion, the proposed Trust Agreement nor the Funding Agreement define the amount of "the full value of New JJCI."

4. Specifically, the Motion seeks authority to advance $2 billion under the Funding Agreement into the QSF Trust to resolve or satisfy the QSF Talc Claims in order "to promote a prompt resolution of this case and avoid unnecessary litigation regarding any alleged harm suffered by claimants as a result of the 2021 Corporate Restructuring." *Id.* at ¶ 7.

5. The proposed Trust Agreement defines Talc Claim as meaning "current and future talc-related claims asserted against or related to [the Debtor] LTL" but specifically "excluding any such claim pursuant to which amounts will be paid or incurred to, or at the direction of, any government or governmental entity (as defined in Treas. Reg. § 1.162-21(e))." *Motion*, Ex. A at 18.

6. Section 1.162-21(e) of title 26 of the Code of Federal Regulations defines (a) government as including the United States and (b) governmental entity as meaning a corporation or other entity serving as an agency or instrumentality of a government. 26 C.F.R. §1.162(e)(1) and (2).

7. Despite seeking authority for the nondebtor affiliates to fund the QSF Trust now, those funds will not be available to the Debtor to address QSF Talc Claims until the effective date of a confirmed plan, *Motion* at ¶ 11, which does not yet exist.

## STATUTORY BACKGROUND

<u>Medicare Secondary Payer Liability</u>

8.      The Medicare program pays for covered medical items and services provided to eligible beneficiaries. 42 U.S.C. § 1395, *et seq.* The Medicare Secondary Payer ("MSP") law, 42 U.S.C. § 1395y(b), prohibits Medicare from paying for items and services in instances when payment has been made or can reasonably be expected to be made by a "primary plan." 42 U.S.C. § 1395y(b)(2)(A). The MSP law broadly defines "primary plan" to include group health plans, a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan), and no fault insurance. *Id.* Payments made by a trust approved as part of a chapter 11 plan are "primary" to Medicare and trigger obligations under the MSP law. *See* 42 U.S.C. § 1395y(b)(2)(B); *Humana v. Shrader & Assoc.*, 584 B.R. 658, 680-81 (S.D. Tex. 2018). The MSP statute also provides the United States a direct right of action against entities that are responsible for making a primary payment and any entity that receives a primary payment. 42 U.S.C. § 1395y(b)(2)(B)(iii).

9.      If a primary plan is not expected to pay an eligible beneficiary promptly, Medicare is authorized to make "conditional payments." These payments are subject to reimbursement once a primary plan becomes responsible for paying for the item or service at issue. 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii). A plan's responsibility for

4

payment may be "demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).

10. To help Medicare coordinate payments for Medicare-covered items and services, and to identify MSP situations, an "applicable plan" must identify instances in which it has or may have responsibility to pay for medical care of a Medicare beneficiary and report that information to Medicare. 42 U.S.C. § 1395y(b)(7)-(8); *see also* Medicare, Medicaid and SCHIP Extension Act of 2007, 2 Pub. L. No. 110-173, § 111, 121 Stat. 2492, 2497-500 (2007). Similar to entities that are primary plans, an "applicable plan" includes as liability insurance (including self-insurance), no-fault insurance, workers' compensation laws or plans, and the fiduciary or administrator under such a law, plan, or arrangement. 42 U.S.C. § 1395y(b)(8)(F). The information to be reported by or on behalf of the applicable plan includes the identity of the Medicare beneficiary, and other pertinent information such as the injury or illness that gave rise to the beneficiary's claim against the plan, and the amount of the payment made or to be made by the plan. 42 U.S.C. § 1395y(b)(8)(B).

Additional Recovery Rights

11. Under the Federal Medical Care Recovery Act (FMCRA), the United States has a direct recovery right for medical care it provides to a person injured under circumstances that "creat[e] a tort liability upon some third person . . . to pay damages therefor." 42 U.S.C. § 2651(a); *United States v. Merrigan*, 389 F.2d 21, 21 (3d Cir. 1968) ("Subsection (a) of the Medical Care Recovery Act unmistakably confers on the [G]overnment what the congressional reports describe as an 'independent right of recovery' from the tortfeasor of the reasonable value of the care and treatment it furnishes to the injured person."). The FMCRA applies to non-military direct health care programs furnished by HHS through its various sub-agencies and operating divisions. *See United States v. Trammel*, 899 F.2d 1483, 1486-87 (6th Cir. 1990); *United States v. Fort Benning Rifle and Pistol Club*, 387 F.2d 884, 885 (5th Cir. 1967); *Maddox v. Cox*, 382 F.2d 119, 123-24 (8th Cir. 1967).

12. The Indian Health Care Improvement Act (IHCIA) provides IHS a second right of direct recovery from third-party tortfeasors. *See* 25 U.S.C. § 1621e. Pursuant to the IHCIA, the United States has "the right to recover from . . . third-party tortfeasors . . . the reasonable charges billed by the Secretary . . . in providing health services through the Service . . . , or, if higher, the highest amount the third party would pay for care and services furnished by providers other than governmental entities, to any individual to the same extent that such individual, or any nongovernmental provider of such services, would be eligible to receive

6

damages, reimbursement, or indemnification for such charges or expenses . . . ." 25 U.S.C. § 1621e(a).  The IHCIA further specifies that IHS is the payer of last resort for services provided by the agency, notwithstanding any Federal, State, or local law.  25 U.S.C. § 1623(b).

## OBJECTION

### A. The QSF Trust Violates Applicable Non-Bankruptcy Law

13. The QSF Trust violates applicable non-bankruptcy law because it contains no provisions to ensure compliance with the MSP law.  Specifically, there are no requirements to either report or provide the information detailed in paragraph 10 above or ensure that HHS is reimbursed for its conditional Medicare payments.  To address this issue, the United States has provided language for insertion into the QSF Trust to the Debtor but has not yet received a response.

14. It is unclear if the QSF Trust would actually receive, review, and pay any QSF Talc Claims, in which case the reporting requirements are not triggered. Funds in the QSF Trust would not be available to the Debtor to address QSF Talc Claims until the effective date of a confirmed plan. *Motion* at ¶ 11.  The Funding Agreement requires, however, "funding for a trust established for the holders of talc claims (a "Talc Trust") *only in connection with a confirmed plan,*" *Motion* at ¶ 9 (emphasis added), but the Motion does not state whether the QSF Trust is being established in connection with a confirmed plan.  Thus, it is unclear if the QSF Trust for which the Motion seeks approval is the final form of the trust for plan

7

purposes or will be replaced or amended as part of a later plan of reorganization. If it is the former, the Court should not approve it unless it contains the United States' requested insert to ensure compliance with the MSP law. If it is not, the United State reserves any and all rights with respect to any talc trust established in connection with a plan that does actually receive, review, and pay claims.

### B. The QSF Trust Improperly Excludes Claims of Government Entities

15. As noted, the QSF Trust specifically excludes from the definition of Talc Claim any claims paid to a government or government entity. The apparent purpose for this exclusion is to preserve the tax deductibility of any such payments. *Motion*, Ex. A at 18 (definition of Talc Claim citing 26 C.F.R. § 1.162-21).[2]

16. As of this filing, the United States is endeavoring to determine whether it may have Talc Claims. Regardless of whether it does, at this early stage of the case, the QSF Trust should not categorically preclude the United States from being able to assert such claims against the QSF Trust. Doing so could effectively dictate the treatment of those claims in the absence of a disclosure statement or a plan and in the earliest stages of this case. Negotiation and consensual action leading to a plan is the surest and most efficient way for a bankruptcy case to progress, particularly a complex one such as this. Accordingly, the Court should not

---

[2] Neither the Motion nor the QSF Trust Agreement disclose who would claim such deductions; however, it would appear to be J&J and New JJCI. *Declaration of John S. Kim in Support of First Day Pleadings* (ECF No. 5) at ¶ 83 (stating that establishment of QSF Trust would "benefit the direct or indirect owners of the Debtor by giving rise to certain tax benefits").

approve the QSF Trust if it excludes the United States' claims from the definition of Talc Claim.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should deny the Motion unless the QSF Trust is modified to include (a) the United States' requested insert regarding MSP claims and (b) the United States' claims within the definition of Talc Claim.

Dated: February 4, 2022

> BRIAN M. BOYNTON
> Acting Assistant Attorney General
> RUTH A. HARVEY
> Director
> MARGARET NEWELL
> Assistant Director
>
> /s/ Matthew J. Troy
> MATTHEW J. TROY
> Senior Trial Counsel
>
> *Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of February 2022, I caused a true and correct copy of the foregoing *Objection* to be filed with the Clerk of the Court using the CM/ECF system, which will generate electronic notification to all CM/ECF participants in these cases.

/s/ Matthew J. Troy
Matthew J. Troy