**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTOR

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| | Hearing Date: March 8, 2022 |

**APPLICATION FOR RETENTION OF ORRICK,
HERRINGTON & SUTCLIFFE LLP AS SPECIAL TALC LITIGATION
APPELLATE COUNSEL, EFFECTIVE AS OF OCTOBER 14, 2021**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1526178169

1. The applicant, LTL Management LLC (the "<u>Debtor</u>"), is the:

   ☐ Trustee:      ☐ Chap. 7      ☐ Chap. 11      ☐ Chap. 13.

   ☒ Debtor:       ☒ Chap. 11     ☐ Chap. 13

   ☐ Official Committee of _____

2. The Debtor seeks to retain the following professional, Orrick, Herrington & Sutcliffe LLP ("<u>Orrick</u>"), to serve as:

   ☐ Attorney for:      ☐ Trustee      ☐ Debtor-in-Possession

   ☐ Official Committee of _____

   ☐ Accountant for:    ☐ Trustee      ☐ Debtor-in-possession

   ☐ Official Committee of _____ _____

   ☒ Other Professional:

   ☐ Realtor           ☐ Appraiser    ☒ Special Counsel

   ☐ Auctioneer        ☐ Other (specify): _____

3. The employment of Orrick is necessary because:

   *Orrick's Expertise*

   The Debtor wishes to retain Orrick as special talc-litigation appellate counsel in this chapter 11 case (the "<u>Chapter 11 Case</u>") because of the experience and knowledge Orrick possesses as a result of its representation of Johnson & Johnson Consumer, Inc. ("<u>Old JJCI</u>"),[2] and now the Debtor, and Johnson & Johnson ("<u>J&J</u>") prior to (and following) the Petition Date. Specifically, Orrick has served as appellate counsel (as well as trial counsel[3]) for Old JJCI, and now the Debtor, and J&J in mesothelioma and ovarian cancer talc-related litigation since 2017. Through its role as appellate (and trial) counsel, Orrick has gained extensive

---

[2] Orrick served as counsel to Old JJCI until it ceased to exist. Old JJCI's engagement of Orrick was allocated to the Debtor in the corporate restructuring that created the Debtor. The terms of Orrick's engagement by Old JJCI were superseded in their entirety by the February 2, 2022 engagement letter (the "<u>Engagement Letter</u>"), except as to Orrick's representation of Old JJCI, and now the Debtor, in talc-related litigation that is stayed by the commencement of the Chapter 11 Case. Any services in these matters will continue on the same terms as such services were provided to Old JJCI. As set forth herein and in the Certification of Robert Loeb, Orrick continues to represent J&J in certain talc-related litigation, as it did prior to the Petition Date.

[3] Orrick currently serves as trial counsel to the Debtor in one currently-stayed talc litigation matter and provides appellate guidance as needed in talc-related litigation matters. Given that these matters are stayed, Orrick expects to provide limited or no services in them.

NAI-1526178169

knowledge regarding the claims against J&J and Old JJCI, and now the Debtor, the factual and scientific defenses to those claims and in particular, the appellate issues that have arisen in those matters. Orrick litigated 16 appeals for J&J and Old JJCI and has provided appellate oversight of numerous talc-related trials. As a result, Orrick is intimately familiar with decades worth of internal historical documents, testing documents, company witness testimony, and an expansive body of epidemiology supporting the safety of talc and how those materials are best presented to appellate courts throughout the country.

Should the Debtor be required to retain counsel in substitution of Orrick, the Debtor, its bankruptcy estate, and other parties in interest would be prejudiced by the time and expense required for substitute counsel to become familiar with the matters in which Orrick is representing the Debtor, particularly the Debtor's appeals of talc claims, and obtain the expertise required to serve the Debtor and its estate in an effective manner.

*Nunc Pro Tunc Retention*

Orrick's *nunc pro tunc* retention to October 14, 2021, the commencement date of the Chapter 11 Case (the "Petition Date") in the Bankruptcy Court for the Western District of North Carolina (which case was subsequently transferred to this Court), is warranted by the facts and circumstances of the Chapter 11 Case. Bankruptcy courts have the "power to authorize retroactive employment of counsel and other professionals under their broad equity power." See Matter of Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986).

Due to the unique circumstances here, Orrick's retroactive retention should be approved. Pursuant to the *Debtor's Motion for an Order Authorizing the Retention and Compensation of Professionals Utilized by the Debtor in the Ordinary Course of Business* [Docket No. 12] (the "OCP Motion") filed on the Petition Date, Orrick was proposed to be retained by the Debtor as an ordinary course professional under the fee limits enumerated therein. Two months later, on December 16, 2021, after the Chapter 11 Case was transferred to this Court, the Court entered an order granting the OCP Motion [Docket No. 849] ("the OCP Order").[4]

Prior to the transfer of the Chapter 11 Case, the automatic stay was lifted at the request of the defendant-talc claimants to permit certain pending appeals to proceed. See *Order Regarding Debtor's Motions for an Order (I) Declaring the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Pro Dkt. 28], ¶ 9; *Order Granting Debtor's Request for Preliminary Injunctive Relief* [Adv. Pro. Case No. 21-03032, Docket No. 102] (the "PI Order"), ¶ 14. In addition, in one of the appeals, prior to the entry of orders lifting the stay, the court indicated that the appeal would proceed, including as to the Debtor, notwithstanding the filing of this Chapter 11 Case.[5]

---

[4]  The OCP Order reflects, among other things, certain changes following discussions with the U.S. Trustee. In particular, pursuant to the OCP Order, although Orrick was subject to separate higher fee caps than those applicable to other ordinary course professionals, those caps were reduced from the limits in the OCP Motion.

[5]  In Olson v. Brenntag et al., Case Nos. 2020-04856, 2020-04860 (N.Y. App. Div.), the Debtor became aware shortly after the Petition Date that the appeal was scheduled for oral argument in November 2021,

-3-

Orrick serves as counsel to the Debtor and J&J in those ongoing appeals, several of which were particularly active in October and November 2021.

Because of the complex nature of the Chapter 11 Case and greater than anticipated activity in the ongoing appeals, Orrick ultimately incurred amounts on account of services following the Petition Date in excess of the fee caps, including the aggregate cap, applicable to Orrick under the OCP Order. Consistent with the terms of the OCP Order, and given that Orrick's services in the talc-litigation appeals are anticipated to be ongoing as a result of the stay having been lifted at the request of certain talc claimants, the Debtor is now seeking to retain Orrick as special counsel under section 327(e) of the Bankruptcy Code. See OCP Order, ¶ 3(h).

4. Orrick has been selected because:

As appellate counsel in the talc-related litigation, Orrick has significant knowledge and experience regarding the issues outlined in response to Question 3 above, and Orrick's services are particularly necessary given the fact that the appeals in which it represents the Debtor are proceeding, as described above.

5. Orrick's services to be rendered are as follows:

The Debtor wishes to retain Orrick as special appellate counsel to permit Orrick to continue to represent the Debtor in certain appeals of the talc litigation as to which the automatic stay has been lifted at the request of certain talc claimants.[6] See PI Order, ¶ 14. The Debtor anticipates that Orrick will perform, among others, the following legal services:

(a) Drafting and filing briefs as required in the appeal proceedings;

(b) Appearing on behalf of the Debtor at oral arguments, hearings, meetings, and other proceedings, as appropriate; and

(c) Assisting the Debtor in any issues or proceedings related to the stay or other matters relating to talc-related claims in non-bankruptcy forums.[7]

Orrick will provide the services described above as special counsel to the Debtor and will not serve as general bankruptcy and reorganization counsel to the Debtor. The Debtor believes that the services Orrick will provide will be complementary and not duplicative of the services to be performed by Jones Day, as general bankruptcy and reorganization counsel, or the other firms retained by the Debtor in this Chapter 11 Case to assist in talc-related matters. The Debtor is mindful of the need to avoid the duplication of legal

---

notwithstanding the commencement of the Chapter 11 Case. As a result, Orrick had to immediately begin intensive work on the appeal, including the drafting of a reply brief and preparation for oral argument.

[6] As noted above, Orrick also will continue to represent the Debtor, as needed, in the stayed talc litigation in which Orrick served as trial counsel or provided appellate guidance prior to the Petition Date.

[7] Given the stay, as set forth above, Orrick expects its services in this regard to be limited.

NAI-1526178169

   services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Orrick's role as special counsel.

6.  The proposed arrangement for compensation is as follows:

  Pursuant to the terms of the Engagement Letter, and subject to the Court's approval of this Application, Orrick intends to: (a) charge for its legal services on an hourly basis in accordance with the ordinary and customary hourly rates in effect on the date services are rendered; and (b) seek reimbursement of actual and necessary out of pocket expenses.

  In addition, to the extent that Orrick represents both the Debtor and J&J in a matter, Orrick will allocate 50% of its fees and expenses incurred in such joint representation to the Debtor and 50% to J&J. In matters in which Orrick represents solely the Debtor or J&J, Orrick will allocate 100% of the fees and expenses to the entity represented.

  Orrick will be compensated at its hourly rates, which are based on the professionals' level of experience. The hourly rates charged by Orrick for this work fall within the following ranges:

| *Billing Category* | *Range* |
|---|---|
| Partners/Of Counsel | $805-$1,750 |
| Associates | $570-$1,025 |
| Paralegals | $225-530 |

  Orrick's hourly rates may change annually in accordance with the terms of the Engagement Letter and Orrick's established billing practices and procedures.

  Orrick will maintain detailed, contemporaneous time records in six minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court District of New Jersey, the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, and any additional procedures that may be established by the Court in the Chapter 11 Case.

7.  To the best of the Debtor's knowledge, Orrick's connection with the Debtor, creditors, any other parties in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, is as follows:

  ☐ None

  ☒ Describe connection: See Certification of Robert Loeb, attached hereto as Exhibit A.

-5-

8. To the best of the Debtor's knowledge, Orrick:

☐ Does not hold an adverse interest to the estate.

☐ Does not represent an adverse interest to the estate.

☐ Is a disinterested person under 11 U.S.C. § 101(14).

☒ Does not represent or hold any interest adverse to the Debtor or the estate with respect to the matter for which Orrick will be retained under 11 U.S.C. § 327(e).

☒ Other; explain: See Certification of Robert Loeb, attached hereto as Exhibit A.

9. If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows: N/A

WHEREFORE, the Debtor respectfully requests authorization to employ Orrick, effective as of October 14, 2021, to render services in accordance with this Application, with compensation to be paid as an administrative expense in such amounts as the Court may determine and allow.

Date: 2/10/2022

/s/ John K. Kim
John K. Kim
Chief Legal Officer

NAI-1526178169