**GIMIGLIANO MAURIELLO &**
**MALONEY, A Professional Association**
Stephen V. Gimigliano
John Maloney
Robin Rabinowitz
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
Tel:  (973) 946-8360
Email:  sgimigliano@lawgmm.com
jmaloney@lawgmm.com
rrabinowitz@lawgmm.com

**SIMPSON THACHER & BARTLETT,**
**LLP**
Andrew T. Frankel
Kathrine A. McLendon (*pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Tel:  (212) 455-2000
Email:  afrankel@stblaw.com
kmclendon@stblaw.com

*Counsel to Travelers Casualty and Surety*
*Company (f/k/a The Aetna Casualty and*
*Surety Company)*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan, U.S.B.J. |
| | Hearing: March 8, 2022 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TRAVELERS CASUALTY & SURETY COMPANY'S MOTION**
**FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**
**TO ALLOW THE NJ COVERAGE ACTION TO PROCEED**

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION AND VENUE ............................................................................................... 3

BACKGROUND ..................................................................................................................... 3

ARGUMENT ........................................................................................................................... 7

    I.   THE AUTOMATIC STAY, EVEN IF APPLICABLE, SHOULD BE
        LIFTED SO THAT THE NJ COVERAGE ACTION MAY PROCEED IN
        STATE COURT ................................................................................................. 7

        A.  The Circumstances of the NJ Coverage Action Favor
            Granting Relief........................................................................................... 7

        B.  Absent Relief From The Stay, Travelers and J&J's
            Other Insurers Would Be Substantially Prejudiced ........................................ 12

        C.  Enforcing The Automatic Stay As To The NJ Coverage
            Action Would Be Contrary To The Policy Goals Of
            The Bankruptcy Code ................................................................................ 14

CONCLUSION.......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*In re Chugach Forest Prods., Inc.*
   23 F.3d 241 (9th Cir. 1994) ................................................................................ 15

*In re Congoleum Corp.*
   No. 03-51524 (Bankr. D.N.J. Feb. 2, 2004) ................................................. 9, 10, 11

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*
   194 B.R. 750 (D.N.J. 1996) .................................................................................. 7

*In re Fischer*
   202 B.R. 341 (E.D.N.Y. 1996) .............................................................................. 11

*In re G-I Holdings, Inc.*
   278 B.R. 376 (Bankr. D.N.J. 2002) ....................................................................... 10

*In re Hagerstown Fiber Ltd. P'ship*
   277 B.R. 181 (Bankr. S.D.N.Y. 2002) ................................................................... 12

*In re John A. Rocco Co., Inc.*,
   No. 10-18799, 2015 WL 1727474 (Bankr. D.N.J. Apr. 13, 2015) ......................... 10

*In re Leatherman*
   No. 18-24818 (Bankr. D.N.J. Apr. 15, 2019) .......................................................... 9

*In re Mid-Atlantic Handling Sys., LLC*
   304 B.R. 111 (Bankr. D.N.J. 2003) ......................................................................... 8

*In re Nat'l Century Fin. Enters.*
   312 B.R. 344 (Bankr. S.D. Ohio 2004) ................................................................... 13

*In re One World Adoption Servs., Inc.*
   571 B.R. 474 (Bankr. N.D. Ga. 2017) .................................................................... 13

*In re R.J. Groover Constr., LLC*
   411 B.R. 460 (Bankr. S.D. Ga. 2008) ..................................................................... 11

*In re Stone Webster, Inc.*
   367 B.R. 523 (Bankr. D. Del. 2007) ....................................................................... 13

*In re Webb*
   2016 WL 2616756 (Bankr. S.D. W. Va. May 4, 2016) .......................................... 12

*In re Wilson*
   116 F.3d 87 (3d Cir. 1997) ..................................................................................... 7

*Maritime Elec. Co. v. United Jersey Bank*
   959 F.2d 1194 (3d Cir. 1991) ................................................................................................ 13

**Statutes**

11 U.S.C. § 362 ............................................................................................................................ 7

**Other Authorities**

H.R. Rep. No. 95-595 (1977) ..................................................................................................... 15

S. Rep. No. 95-989 (1978) ......................................................................................................... 15

## PRELIMINARY STATEMENT

For over two years, Johnson & Johnson ("J&J"), its captive insurer Middlesex Assurance Company ("Middlesex") and Johnson & Johnson Consumer, Inc. ("Old JJCI"; collectively with J&J and Middlesex, the "J&J Defendants"), have been litigating an insurance coverage action with Travelers and other insurers in New Jersey state court. *See Atlanta Int'l Ins. Co., et al. v. Johnson & Johnson, et al.*, MID-L-3563-19 (Law Div.) (the "NJ Coverage Action"). That action involves numerous claims for declaratory relief that seek guidance on a host of complex issues of insurance coverage arising from J&J and Old JJCI's demands for coverage for thousands of talc claims that J&J has been defending for the past five years. It also includes actions brought by the J&J Defendants against the insurer parties. At best, the Debtor[1] may have an indirect financial interest in these claims asserted by non-debtors (the J&J Defendants) against J&J's insurers. Given that the Debtor itself, however, does not appear to have any rights under those policies, nor has it either sought coverage or asserted any such claims against Travelers or J&J's other insurers,[2] it is far from clear whether the automatic stay even applies to the insurer claims in the NJ Coverage Action—and the automatic stay would clearly not apply to claims *against* the insurers. While Travelers does not concede that the automatic stay applies, it is not necessary for the Court to decide that issue because, even if the stay did apply, there is good cause for this Court to lift the automatic stay. The relevant parties will benefit from, and neither the Debtor nor its creditors will

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] Republic Indemnity Company of America, ACE Property and Casualty Insurance Company (f/k/a CIGNA Property & Casualty Insurance Company), Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America, Great Northern Insurance Company, Pacific Employers Insurance Company, and Westchester Fire Insurance Company (including all policies issued by or novated to Westchester Fire Insurance Company including on behalf of Industrial Indemnity Company, or under which Westchester Fire Insurance Company has assumed liability), parties to the NJ Coverage Action, join in this motion.

be prejudiced by, allowing the NJ Coverage Action to proceed to facilitate the orderly resolution of state-law insurance disputes—concerning policies which are not essential to the Debtor's reorganization—in New Jersey state court.

The factors bankruptcy courts consider when evaluating lift-stay motions under Section 362(d)(1) are well settled and underlie a balancing of the equities, measuring prejudice to the debtor against hardship to the movants. The analysis here is straightforward. The NJ Coverage Action will not result in any new monetary claims against the Debtor's estate, and allowing the action to proceed will permit the New Jersey state court to resolve a host of complex state law insurance coverage disputes governed by New Jersey law without burdening this Court or the Debtor's reorganization efforts. The NJ Coverage Action was filed years before the Debtor's bankruptcy and addresses J&J's claims for defense and indemnity, including for talc claims that were fully resolved prepetition. The insurers and the J&J Defendants have significant interests in clarifying the extent to which, if at all, the numerous primary, umbrella, and excess policies provide coverage for talc liabilities, including potentially billions of dollars in coverage issued by J&J's captive insurance subsidiary, Middlesex. Should the NJ Coverage Action be stayed, numerous questions relating to those coverage issues will remain in limbo. If allowed to proceed, however, resolution of the NJ Coverage Action will offer greater clarity regarding J&J's insurance rights, which may inform J&J's involvement in negotiations for the Debtor's plan of reorganization. This Court should therefore find cause to modify the automatic stay, to the extent that it applies, to permit the New Jersey state court to resolve the claims of all parties to the NJ Coverage Action.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

Travelers issued or is alleged to have issued primary general liability and products liability policies to J&J between September 1957 and January 1981.  Travelers also issued or is alleged to have issued excess indemnity (umbrella) and/or excess overlayer indemnity policies to J&J between January 1, 1970 and January 1, 1986.  The Travelers policies contain various terms, conditions and exclusions that define the scope and limits of Travelers' coverage for indemnity and defense costs arising from occurrences as defined in the policies.

As described in the Debtor's first day filings, J&J and its affiliates were first named as defendants in lawsuits alleging injury from exposure to talc as early as the 1980s and continued to be the subject of a small number of talc lawsuits in the 1990s and early 2000s.  *See* Informational Br. of LTL Mgmt. LLC, ECF No. 3 at 45.  Plaintiffs began bringing ovarian cancer claims in 2009, and the number of such cases filed against J&J and its affiliates has increased dramatically over the past decade.  *See id.*

It was not until July 2017 that J&J first provided Travelers with notice of loss for this new wave of claims arising from its or Old JJCI's manufacture and sale of talc-containing products.  In connection with that notice, J&J did not ask Travelers to defend J&J, and has never requested— or even permitted—Travelers to exercise its contractual right to assume the defense of any talc claim.  Since providing its July 2017 notice, J&J has excluded its insurers from participating in settlement negotiations or meaningfully participating in its defense strategies.  According to the Debtor's first day filings, to date J&J and its affiliates have incurred approximately $1 billion in

defense costs and paid approximately $3.5 billion in settlements and adverse verdicts.  *See*
Informational Br. of LTL Mgmt. LLC, ECF No. 3 at 123 n. 465.

In 1970, J&J formed Middlesex as a captive insurance company.  Middlesex was originally
incorporated in Bermuda and later re-domiciled in Vermont.  Middlesex issued numerous primary
general and products liability coverage policies to J&J from 1973 through the present.  In the
period between 1973 and 1985, Middlesex issued numerous primary and excess policies to J&J
with aggregate limits totaling over $138 million.  While LTL has admitted only that Middlesex
"issued policies that cover J&J and the Debtor" in the period from 1973 through 1985, and that
"there is a dispute . . . regarding the applicability, extent of coverage and limits of the Middlesex
policies, in particular with respect to the post-1985 Middlesex policies," *LTL Mgmt. LLC v. Those
Parties Listed On Appendix A*, 21-03032 (MBK), ECF No. 128, at 27 (Dec. 8, 2021), in fact,
Middlesex issued *billions* of dollars in coverage to J&J in the period after 1985.  Travelers contests
the J&J Defendants' attempts to exclude these post-1985 Middlesex policies from responsibility
for J&J's talc liabilities.  In addition, Travelers and other insurers intend to contest the efforts,
dating from as late as October 2018, of J&J and Middlesex (its wholly owned subsidiary) to
retroactively extinguish potentially billions of dollars of Middlesex coverage, apparently in an
effort to shift the costs of its talc liabilities to J&J's other insurers.  *See* Ex. A at 8 (Travelers'
Cross-Claims against the J&J Defendants).

On May 3, 2019, certain insurers[3] (collectively, the "Plaintiff Insurers") filed a complaint
in the New Jersey Superior Court, Middlesex County, Law Division, naming J&J, Old JJCI,

---

[3] Atlanta International Insurance Company (as successor in interest to Drake Insurance Company),
AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania),
AIU Insurance Company, Granite State Insurance Company, The Insurance Company of the State
of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of

Middlesex and dozens of other insurers including Travelers (collectively, the "Insurer Defendants") as defendants and seeking declaratory relief regarding the parties' respective rights and obligations with respect to insurance for J&J and Old JJCI's talc liabilities.  *Atlanta Int'l Ins. Co., et al. v. Johnson & Johnson, et al.,* MID-L-3563-19 (Law Div.).  Both the J&J Defendants and Insurer Defendants filed cross-claims and counterclaims seeking similar declaratory relief to fully determine their respective rights and obligations.

In addition to seeking declaratory relief concerning the apportionment and allocation of defense and indemnity costs amongst the J&J Defendants and the other insurers, Travelers also seeks declarations that it does not owe coverage for voluntary payments, pre-tender costs, punitive damages awards, damages arising from injuries that were expected or intended, talc claims that do not trigger Travelers policies, and claims for which other exclusions and coverage defenses apply, including J&J's failure to cooperate.  The effect of J&J's attempt to exclude thirty years—and potentially billions of dollars—of Middlesex coverage from sharing in the allocation of talc-related defense and indemnity costs, as well as Middlesex's coverage obligations under the numerous additional primary and excess policies it issued, are also among the many significant coverage issues to be decided in the NJ Coverage Action.

The court in the NJ Coverage Action has entered a discovery plan and adjusted it multiple times, and discovery in the case was proceeding apace prior to the filing of the Debtor's chapter 11 petition.  The parties served and responded to extensive document requests and interrogatories and produced tens of millions of pages of documents prior to the deadline for substantial completion of document productions on September 15, 2021.  The court also appointed a Special

---

Pittsburgh, PA, New Hampshire Insurance Company, and Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company).

Discovery Master to resolve any disputes that arise and the parties were in the process of scheduling initial depositions.

On October 18, 2021, J&J filed a Notice of Bankruptcy Filing and Stay of Proceedings informing the parties and the New Jersey court that "LTL Management LLC, a North Carolina limited liability company . . . is now responsible for the talc related claims asserted against Old JJCI and was allocated the insurance rights of Old JJCI" and that "upon the filing of LTL's chapter 11 case, the automatic stay imposed by section 362 of the Bankruptcy Code . . . became immediately effective" to stay the NJ Coverage Action.[4] *See* Ex. B (Letter dated Oct. 18, 2021). On November 15, 2021, the Bankruptcy Court for the Western District of North Carolina issued a preliminary injunction barring talc claimants (but no other parties) from prosecuting claims against J&J, its affiliates, and certain other protected parties including Travelers and the other insurer parties to the NJ Coverage Action. *See* Order, *LTL Mgmt. LLC v. Those Parties Listed on Appendix A to Complaint*, No. 21-03032, ECF No. 102 (Bankr. W.D.N.C. Nov. 15, 2021). The same day, that court ordered this Chapter 11 case to be transferred to the District of New Jersey in the interests of justice and judicial economy. *See* Order, ECF No. 416.

---

[4] The NJ Coverage Action has proceeded without any prejudice to the debtors in the Imerys bankruptcy cases, *In re Imerys Talc Am., Inc., et al.*, No. 19-10289 (Bankr. D. Del.), which involved J&J's former talc suppliers. The Imerys debtors previously sought to enforce the automatic stay to halt the NJ Coverage Action after certain insurers, including Travelers, filed objections to the Imerys Debtors' Disclosure Statements. The parties to the NJ Coverage Action and the Imerys Debtors ultimately consented to the entry of an order lifting the stay, to the extent that it applied, to permit the NJ Coverage Action to proceed. *See* Order, *In re Imerys Talc Am., Inc., et al.*, No. 19-10289, ECF No. 3174 (Bankr. D. Del. Mar. 19, 2021).

## **ARGUMENT**

I.   **THE AUTOMATIC STAY, EVEN IF APPLICABLE, SHOULD BE LIFTED SO THAT THE NJ COVERAGE ACTION MAY PROCEED IN STATE COURT**

Pursuant to Section 362(d)(1) of the Bankruptcy Code, this Court has the authority to grant relief from the automatic stay for cause.[5]  Courts in the Third Circuit employ an equitable balancing test to determine whether to permit litigation to proceed in a non-bankruptcy forum.  *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case.").  Here, all of the relevant circumstances favor granting relief from the automatic stay because staying the NJ Coverage Action will substantially prejudice Travelers and the other insurer parties without furthering any interests of the debtor's estate or any core bankruptcy purpose.

### A.  The Circumstances of the NJ Coverage Action Favor Granting Relief

In considering whether the stay may be lifted for good cause to allow non-bankruptcy litigation to continue in another forum, the court employs a "balancing test in which the interests of the Debtor's estate are weighed against the hardships that will be incurred by the movant."  *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 761 (D.N.J. 1996).  As this Court recently explained, good cause is "an intentionally broad and flexible concept determined on a case-by-case basis." Ex. C, Hrg. Tr. at 85 (Jan. 11, 2022).  The Court may consider a variety of factors when evaluating whether cause exists to modify the stay, including:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for

---

[5] The Court can, but need not, determine whether the stay applies at all.  For purposes of this Motion, Travelers assumes arguendo, without conceding that question and while reserving all rights, that the stay is otherwise applicable.

> defending it; 6) whether the action primarily involves third parties;
> 7) whether litigation in another forum would prejudice the interests
> of other creditors; 8) whether the judgment claim arising from the
> other action is subject to equitable subordination; 9) whether the
> moving party's success in the other proceeding would result in a
> judicial lien avoidable by the debtor; 10) the interests of judicial
> economy and the expeditious resolution of litigation; 11) whether
> the parties are ready for trial in the other proceeding; and 12) impact
> of the stay on the parties and the balance of the harms.

*In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003).  Different factors

may weigh differently depending on the "totality of the circumstances and the policy of the Code

and the competing interests of the parties."  Ex. C, Hrg Tr. at 86 (Jan. 11, 2022).  The "burden of

persuasion rests with the Debtor to show the absence of a cause" to lift the stay.  *Id.*

Here, to the extent they apply, the factors overwhelmingly favor lifting the stay and

allowing the NJ Coverage Action to proceed.[6]  Collectively, these factors support granting relief

from the automatic stay in order to permit the parties to obtain declaratory relief to settle complex

state law insurance disputes primarily between non-Debtors.  Unlike core matters such as the

allowance of claims against the bankruptcy estate and confirmation of a plan, the bankruptcy court

has no special expertise with regard to these state law insurance issues.  The New Jersey state

court—already familiar with the NJ Coverage Action and New Jersey insurance law—can

completely resolve outstanding coverage issues and provide needed clarity regarding the extent of

insurance available to non-debtor J&J without creating any new claims against the estate.[7]  Where

---

[6] Several factors do not apply.  For example, factor three is inapplicable because the NJ Coverage
Action does not involve the Debtor as a fiduciary, factor five does not apply to a dispute between
insurers and a putative claimant to insurance, and factors eight and nine do not apply to a
declaratory judgment suit.

[7] Furthermore, because J&J subsidiary New JJCI is responsible for pursuing any insurance claims
that may be determined to be assigned to the Debtor, the Debtor and its professionals will not be
distracted or burdened by participation in the NJ Coverage Action.  *See LTL Mgmt. LLC v. Those
Parties Listed On Appendix A,* 21-03032 (MBK), ECF No. 135-24, at 6 (Dec. 20, 2021) (Plan of
Divisional Merger, LTL0001331) ("Chenango Two will use commercially reasonable efforts to

there is no prejudice to the Debtor or its creditors, courts routinely find cause to lift the automatic stay. *See, e.g.*, *In re Leatherman*, No. 18-24818, ECF No. 27 (Bankr. D.N.J. Apr. 15, 2019) (noting that "the cases have almost universally held that cause may exist whenever the stay harms the creditor, and lifting the stay will not unjustly harm the debtor or other creditors" and that where "there is no demonstrated prejudice to the Debtor, almost by necessity the means that the balance of hardships favors the movant.").

Allowing the NJ Coverage Action to proceed would also maximize judicial efficiency. Continuing the NJ Coverage Action will preserve the parties' already extensive discovery and permit the numerous complex coverage issues to be decided by the state court that has presided over the case for almost three years.  As a bankruptcy court in this district concluded when considering nearly identical circumstances—namely, a pending prepetition coverage action for declaratory relief brought by an asbestos debtor's insurers, followed by that debtor's counterclaims—"[a]ll parties will benefit from a determination of the coverage issues, and the state court is the most expeditious place to get that determination."  *See* Ex. D at 43, Hrg., *In re Congoleum Corp.*, No. 03-51524 ECF No. 294 (Bankr. D.N.J. Feb. 2, 2004).  Here there is an even stronger case for lifting the stay than in *Congoleum*, where "[t]he question of whether the excess insurers are obligated to provide coverage [was] critical to the feasibility of the plan," *id.*, because the Debtor has stressed that its funding agreement will provide more than sufficient funding to resolve the talc claims, J&J's insurance rights are incidental, at best, to the confirmation of a plan. Nevertheless, and despite the importance of insurance availability to that plan, the *Congoleum* court concluded that the state court coverage action should proceed because "it is not in anyone's

_____

pursue, at Chenango One's cost, coverage under such Chenango Two Policy for such Chenango One Liabilities through negotiation, mediation, arbitration and/or litigation if necessary, and Chenango One will fully cooperate in such efforts.").

best interest to interfere with the state court action," *id.* at 37.  This Court should reach the same

conclusion here.

Further, insurance coverage disputes do not implicate core bankruptcy matters.  *See, e.g.*,

*In re G-I Holdings, Inc.*, 278 B.R. 376, 384–85 (Bankr. D.N.J. 2002) (holding that a coverage

action was not a core proceeding because the insurance proceeds were not "essential to the effort

to reorganize this Debtor."); *In re John A. Rocco Co., Inc.*, No. 10-18799, 2015 WL 1727474, at

*4 (Bankr. D.N.J. Apr. 13, 2015) ("Because the issue of coverage under an insurance policy is a

question of state law that routinely arises outside the context of a bankruptcy case, claims for

insurance coverage are typically considered non-core.").  Indeed, the issues in the coverage action

relate *exclusively* to state-law contract rights and obligations of non-debtor parties, such as whether

J&J or Old JJCI is entitled to coverage for expected or intended injuries and punitive damages paid

prior to the creation of the Debtor and its subsequent bankruptcy petition.  The proper allocation

of defense and indemnity costs to Middlesex similarly does not involve the Debtor, although

rulings on those issues are necessary to resolve open questions as to the financial responsibility of

J&J, Old JJCI, New JJCI, and Middlesex for talc claims asserted against one or more of the J&J

Defendants.  All of these coverage disputes raise complex issues of New Jersey insurance law that

will be most efficiently resolved by the New Jersey state court.  Conversely, delaying resolution

of these non-core claims between non-debtors would do nothing to advance this chapter 11 case.

Stay relief is particularly appropriate here where the parties have already completed

significant discovery and have substantially advanced the state court action.  The parties have been

litigating the NJ Coverage Action for over two and a half years.  The J&J Defendants have

produced over 20 million pages of documents; on top of more than 150,000 pages of documents

produced by the insurers.  Certain third-party discovery has also been served, and (prior to the

filing of the petition) fact discovery was scheduled to be completed in May 2022.  The time and resources expended by the parties and the substantial discovery efforts already completed in the NJ Coverage Action strongly favor lifting the stay.  *See, e.g.*, *In re R.J. Groover Constr., LLC*, 411 B.R. 460, 464 (Bankr. S.D. Ga. 2008) (finding cause to lift the stay in part because the "state court proceeding has been pending for almost three years and much of the discovery has been completed."); *In re Fischer*, 202 B.R. 341, 355 (E.D.N.Y. 1996) (directing the bankruptcy court to lift the stay because the "[prepetition action] has been pending . . . for more than four years, discovery is nearing its completion, and the Court has devoted substantial resources at both the magistrate-judge and district-judge levels").  In sum, the NJ Coverage Action will soon be entering its third year, and allowing the New Jersey state court to focus on the relevant coverage issues while this Court oversees the Chapter 11 process makes the best use of judicial resources.  *See* Ex. D at 40–41, Hrg., *In re Congoleum*, No. 03-51524 (D.N.J. Feb. 2, 2004) (noting that while "resolution of the coverage issues is not exactly imminent . . . in the acknowledgment of the substantial work already done by the state court, I'm going to find that the Movants here have met their initial burden of establishing cause for stay relief.").

Finally, unlike the talc plaintiffs in this chapter 11 case, the Plaintiff Insurers and Defendant Insurers in the NJ Coverage Action assert claims only for declaratory relief—not monetary damages.  Thus, regardless of the outcome of the NJ Coverage Action and regardless of whether an indirect interest in claims by Old JJCI under the policies may be considered property of the estate, the NJ Coverage Action does not risk imposition of any affirmative liability on the Debtor's estate.  And as the Debtor has repeatedly stressed to this Court, J&J's funding agreement with the Debtor is intended to compensate talc creditors regardless of the extent of insurance rights of non-debtors J&J and New JJCI, or even any alleged interest by the Debtor in such insurance recoveries.

*See* Debtor's Br., ECF No. 128 at 106 ("Among other things, the Funding Agreement will ensure funding for a trust in the amount required by a confirmed plan of reorganization, to the extent the Debtor's other assets (including insurance) are insufficient to fund the trust."). The talc claimants themselves acknowledge that insurance coverage for talc claims is, at best, uncertain and the mere potential of coverage does not justify imposition of the automatic stay. *See* TCC II Obj., *LTL Mgmt. LLC v. Those Parties Listed On Appendix A*, 21-03032 (MBK), ECF No. 166, at 13–14 (Dec. 8, 2021) ("Speculation over shared insurance cannot provide a basis for extending the automatic stay."). In these circumstances, the outcome of the NJ Coverage Action will not create any competition among creditors over the Debtor's assets, and there is no need to further protect the estate by requiring the parties to return to this Court to address the enforcement of a judgment. *See In re Webb*, 2016 WL 2616756, at *3 (Bankr. S.D. W. Va. May 4, 2016) (noting that relief from stay was appropriate where "there is no judgment that [the movant] is seeking to enforce against . . . the estate's property."); *see also In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 215 (Bankr. S.D.N.Y. 2002) (lifting the stay to allow counterclaim for declaratory judgment to proceed in arbitration because "this claim, which does not seek affirmative monetary relief against the debtor, is intertwined with the trustee's arbitrable claims").

Because determination of the NJ Coverage Action will fully resolve important insurance coverage issues, will not result in affirmative claims against the estate and will be the most efficient use of judicial resources, the automatic stay (to the extent it even applies) should be lifted to allow the NJ Coverage Action to proceed.

### B. Absent Relief From The Stay, Travelers and J&J's Other Insurers Would Be Substantially Prejudiced

The NJ Coverage Action will resolve disputes over the respective rights and obligations of the J&J Defendants and their insurers that are of substantial concern to all parties. The Debtor—

which does not have rights under the policies and has not itself sought coverage—has asserted that

non-debtors J&J and Old JJCI have already incurred approximately $4.5 billion in combined

defense and indemnity costs for which they seek insurance coverage.  Travelers and the other

insurers require clarity and certainty regarding their alleged obligations with respect to these

extraordinary sums, and J&J, New JJCI, and Middlesex would benefit from such clarity as well.

Staying the NJ Coverage Action will prejudice Travelers and other insurers by allowing this

uncertainty to persist and by denying them the ability to litigate and resolve meritorious coverage

defenses in the proper forum.[8]  In contrast, all parties will benefit from the prompt resolution of

the NJ Coverage Action.

Even if the stay  applied to claims against the J&J Defendants, those parties have asserted

*affirmative* claims against Travelers, the Plaintiff Insurers, and the other Defendant Insurers for

declaratory relief regarding the scope of coverage and for breach of contract.  Thus, even if the

Plaintiff Insurers' and Insurer Defendants' claims were stayed during the pendency of this chapter

11 case, the automatic stay would not apply to such affirmative claims.  *See Maritime Elec. Co. v.*

*United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Judicial proceedings resting on

counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-

case proceedings arising out of claims asserted by the plaintiff are stayed.").  Allowing the J&J

---

[8] Bankruptcy court, of course, is not the proper forum to resolve non-core prepetition state law
insurance contract disputes. *See, e.g.*, *In re Stone Webster, Inc.*, 367 B.R. 523, 529 (Bankr. D. Del.
2007) (noting that an insurance coverage dispute was "a plain breach of contract claim governed
by state law" and finding that "[p]re-petition state-law contract claims are precisely the type of
claim that the Supreme Court held could not be decided by non-Article III judges in Northern
Pipeline"); *In re One World Adoption Servs., Inc.*, 571 B.R. 474, 476 (Bankr. N.D. Ga. 2017)
(finding that an insurance coverage dispute was non-core because neither a declaratory judgment
nor a breach of contract action "invokes a substantive right created by the Bankruptcy Code, is an
administrative-type matter, or is a matter that could arise only in bankruptcy."). This is particularly
the case where, as here, insurance proceeds are not "the linchpin or integral to the reorganization
effort." *In re Nat'l Century Fin. Enters.*, 312 B.R. 344, 354 (Bankr. S.D. Ohio 2004).

Defendants' affirmative claims to proceed while staying reciprocal insurer claims would substantially prejudice Travelers and the other insurers in the action, waste judicial (and party) resources by compelling the rehearing of the issues *seriatim*, and delay the ultimate resolution of complex insurance coverage issues.

Finally, as noted above, the NJ Coverage Action will resolve significant outstanding questions about the relative liability of J&J and its captive insurer (Middlesex) for J&J's insurable liabilities. It is to all parties' advantage that those issues be resolved in addition to determining the extent, if any, of other available insurance coverage, and that they be resolved promptly. While these issues are critical to provide certainty to J&J and its insurers, none of those issues, by the Debtor's own admission, is essential to the Debtor's reorganization. *See, e.g.*, Informational Br. of LTL Mgmt., ECF No. 3, at 4 ("In sum, the Debtor undeniably has more than sufficient funding to pay any legitimate cosmetic talc claims."). Indeed, the Debtor did not mention insurance rights once in its informational brief and has argued that its funding agreement with J&J will fully fund a settlement should the Debtor's assets, which include any such insurance rights that it possesses, prove insufficient. *See* Debtor's Obj., ECF No. 956 at 12 n.21 (explaining that in "in the case of funding a trust," J&J and New JJCI are obligated to provide funds "up to the full value of New JJC" if "the Debtor's other assets are insufficient to provide that funding."). Particularly given the number of policies potentially at issue and the number and complexity of the outstanding insurance coverage issues under New Jersey law, there is no need to hold insurers hostage to their efforts to resolve those issues during the course of these bankruptcy proceedings.

### C. Enforcing The Automatic Stay As To The NJ Coverage Action Would Be Contrary To The Policy Goals Of The Bankruptcy Code

The policy aims behind the automatic stay further support lifting the automatic stay, to the extent that it could even apply at all. Courts have recognized that "[w]hile seemingly broad in

scope, the automatic stay provisions should be construed no more expansively than is necessary to effectuate legislative purpose." *In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 245 (9th Cir. 1994).    And as this Court recently described, the automatic stay is enforced to "preserve two competing core goals of the bankruptcy filing, which is to offer a breathing spell to a debtor to allow for reorganization efforts and at the same time to level the playing field among creditors to ensure [e]quality in process, in opportunity and in distribution."  Ex. C, Hrg. Tr. at 85 (Jan. 11, 2022).  Importantly, Travelers and the other insurers are differently situated from the talc claimants in this case.  Enforcing the stay against further actions by talc claimants serves the purposes of the bankruptcy process and the automatic stay:  "[t]he automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws.  It gives the debtor a breathing spell from creditors. It stops all collection effort, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressure that drove him into bankruptcy."  H.R. Rep. No. 95-595, at 340 (1977); *see also* S. Rep. No. 95-989, at 54 (1978).  Most importantly, the automatic stay places all talc claimants on an equal footing and, according to the Debtor, provides the foundation for an equitable resolution of such claims on equivalent terms that cannot be achieved if individual claimants obtain inconsistent judgments in the tort system.  In contrast to the actions brought by talc claimants to recover damages from the Debtor and its affiliates, the NJ Coverage Action is not a collection effort, nor is the stay necessary to give the Debtor "a breathing spell" from its insurers because the insurers seek no monetary recovery.

As such, extending the automatic stay to the NJ Coverage Action would not advance the equitable treatment of creditors or relieve the Debtor of the financial pressures that drove it into bankruptcy.  Staying the NJ Coverage Action would, however, lead to prejudice and delay and

leave unresolved complex insurance coverage issues arising exclusively under New Jersey state law. Accordingly, the Court should issue an order lifting any automatic stay (to the extent it applies) to permit the NJ Coverage Action to proceed.

## **CONCLUSION**

For the reasons stated herein, this Court should grant Travelers' motion for relief from the automatic stay to allow the NJ Coverage Action to proceed.

Dated:  February 15, 2022

Respectfully submitted,

*/s/ John Maloney*
Stephen V. Gimigliano
John Maloney
Robin Rabinowitz
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
sgimigliano@lawgmm.com
jmaloney@lawgmm.com
rrabinowitz@lawgmm.com

Andrew T.  Frankel
Kathrine A. McLendon (*pro hac vice*)
SIMPSON THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, New York 10017
Tel:  (212) 455-2000
afrankel@stblaw.com
kmclendon@stblaw.com

*Counsel to Travelers Casualty and Surety
Company (f/k/a The Aetna Casualty and Surety
Company)*

17