UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1(b)**

**TRIF & MODUGNO LLC**
Louis Modugno, Esq.
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Telephone:  973-547-3611
Facsimile:  973-554-1220
lmodugno@tm-firm.com

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman (*pro hac vice pending*)
Shaya Rochester (*admitted pro hac vice*)
Terence P. Ross (*pro hac vice pending*)
575 Madison Avenue
New York, New York 10022
sreisman@katten.com
srochester@katten.com
tross@katten.com

**MENDES & MOUNT LLP**
Eileen McCabe (*admitted pro hac vice*)
Stephen Roberts (*admitted pro hac vice*)
750 Seventh Avenue
New York, New York 10019
eileen.mccabe@mendes.com
stephen.roberts@mendes.com

*Attorneys for the New Jersey Coverage Action Plaintiff-Insurers*[1]

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[2] | Chapter 11<br>Case No. 21-30589 (MBK)<br><br>**Hearing Date: March 8, 2022**<br>**Objection Deadline: March 1, 2022** |

---

[1] Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company ("North River"); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company);N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen) (collectively, the "Moving Insurers").

[2] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

151450919

**NOTICE OF MOTION BY THE NEW JERSEY COVERAGE ACTION PLAINTIFF-
INSURERS FOR AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY
DOES NOT APPLY TO THE NEW JERSEY COVERAGE ACTION OR, IN THE
ALTERNATIVE, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY TO
ALLOW THE NEW JERSEY COVERAGE ACTION TO PROCEED**

**PLEASE TAKE NOTICE** that the Moving Insurers, by and through their counsel, shall

move before the Honorable Michael B. Kaplan, Chief Judge, on March 8, 2022, at 10:00 a.m. at

the United States Bankruptcy Court, District of New Jersey, Clarkson S. Fisher U.S. Courthouse,

402 East State Street, Trenton, New Jersey 08608, for the entry of an order (i) confirming that the

automatic stay under Bankruptcy Code section 362(a) does not apply to the New Jersey Coverage

Action or, in the alternative, (ii) granting relief from the stay pursuant to section 362(d) of the

Bankruptcy Code to allow (a) the New Jersey Coverage Action to proceed or, alternatively, (b) the

Moving Insurers to file and litigate, and the New Jersey Superior Court to adjudicate and enter

judgment on, the Moving Insurers' motion for summary judgment in the New Jersey Coverage

Action, and (iii) granting such other and further relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that the Moving Insurers shall rely upon the

*Declaration of Shaya Rochester in Support of New Jersey Coverage Action Plaintiff-Insurers'*

*Motion for an Order (I) Confirming that the Automatic Stay Does Not Apply to the New Jersey*

*Coverage Action or, in the Alternative, (II) Granting Relief from the Automatic Stay to Allow the*

*New Jersey Coverage Action to Proceed* submitted herewith pursuant to D.N.J. LBR 9013-1(a).

**PLEASE TAKE FURTHER NOTICE** that any papers in response to the Motion must

be filed with the Court and served upon the Moving Insurers no later than seven (7) days in advance

of the hearing date pursuant to D.N.J. LBR 9013-2(a)(2).  If opposing papers are not filed and

served within the required time, the Motion shall be deemed uncontested pursuant to D.N.J. LBR

9013-3(d) and an Order may be signed and entered in the Court's discretion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to D.N.J. LBR 9013-3(d) oral

argument may only be presented by a party that has filed opposition to the Motion.

Dated: February 15, 2022

By:    */s/ Louis A. Modugno*
        Louis A. Modugno
        TRIF & MODUGNO LLC
        89 Headquarters Plaza North Tower, Suite 1201
        Morristown, New Jersey 07960
        Email: lmodugno@tm-firm.com

                - and -

        Steven J. Reisman (*pro hac vice pending*)
        Shaya Rochester (*pro hac vice*)
        Terence P. Ross (*pro hac vice pending*)
        KATTEN MUCHIN ROSENMAN LLP
        575 Madison Avenue
        New York, New York 10022
        Email: sreisman@katten.com
             shaya.rochester@katten.com
             tross@katten.com

                - and -

        Eileen McCabe (*pro hac vice*)
        Stephen Roberts (*pro hac vice*)
        MENDES & MOUNT LLP
        750 Seventh Avenue
        New York, New York 10019
        Email: eileen.mccabe@mendes.com
             stephen.roberts@mendes.com

        *Co-Counsel to the Moving Insurers*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

**TRIF & MODUGNO, LLC**
Louis Modugno
89 Headquarters Plaza, Suite 1201
Morristown, New Jersey 07960
lmodugno@tm-firm.com

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman (*pro hac vice pending*)
Shaya Rochester (*admitted pro hac vice*)
Terence P. Ross (*pro hac vice pending*)
575 Madison Avenue
New York, New York 10022
sreisman@katten.com
srochester@katten.com
tross@katten.com

**MENDES & MOUNT LLP**
Eileen McCabe (*admitted pro hac vice*)
Stephen Roberts (*admitted pro hac vice*)
750 Seventh Avenue
New York, New York 10019
eileen.mccabe@mendes.com
stephen.roberts@mendes.com

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No. 21-30589 (MBK) |
| Debtor. | **Hearing Date: March 8, 2022**<br>**Objection Deadline: March 1, 2022** |

## NEW JERSEY COVERAGE ACTION PLAINTIFF-INSURERS' MOTION FOR AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE NEW JERSEY COVERAGE ACTION OR, IN THE ALTERNATIVE, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE <u>NEW JERSEY COVERAGE ACTION TO PROCEED</u>

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. JURISDICTION AND VENUE ...................................................................................... 6

III. RELEVANT FACTUAL BACKGROUND ................................................................... 7

   A. The Moving Insurers Commence the New Jersey Coverage Action .................................. 7

   B. J&J Undertakes the 2021 Corporate Restructuring ......................................................... 12

   C. The Debtor Files for Chapter 11 and Obtains A Preliminary Injunction and Venue
      Is Transferred ................................................................................................................... 13

   D. J&J Advises the Moving Insurers of Its Erroneous Position that the New Jersey
      Coverage Action Is Purportedly Stayed ........................................................................... 15

IV. RELIEF REQUESTED .................................................................................................. 16

V. BASIS FOR RELIEF REQUESTED ............................................................................... 16

   A. The Automatic Stay Does Not Apply to the New Jersey Coverage Action .................... 16

      1. The New Jersey Coverage Action Is Not an Action "Against the Debtor" Nor an
         Attempt to "Recover a Claim Against the Debtor" Under Bankruptcy Code
         Section 362(a)(1) ......................................................................................................... 17

      2. The New Jersey Coverage Action Is Not an Act to Obtain Possession or Exercise
         Control Over Property of the Estate Under Bankruptcy Code Section 362(a)(3) ...... 17

   B. Even if the Automatic Stay Applies to the New Jersey Coverage Action, Cause
      Exists for Relief Under Bankruptcy Code Section 362(d)(1) .......................................... 21

      1. The Balance of Harms Weighs Heavily In Favor of Lifting the Automatic Stay to
         Allow the New Jersey Coverage Action to Proceed .................................................. 23

         a. Regardless of the Outcome, the New Jersey Coverage Action Will Have
            No Impact on the Debtor, its Estate or its Creditors ............................................ 23

         b. A Declaration of Respective Rights and Obligations under the Policies
            Will Provide Clarity—Not Cause Harm—to the Debtor ..................................... 28

         c. The Moving Insurers Will Suffer Significant Hardship If the Stay Is Not
            Lifted .................................................................................................................... 31

         d. The Moving Insurers Will Likely Prevail ............................................................ 33

      2. The *Mid-Atlantic* Factors Likewise Weigh Heavily In Favor of Lifting the
         Automatic Stay to Allow the New Jersey Coverage Action to Proceed .................... 34

      3. The Stay Should Also Be Lifted to Allow the New Jersey Coverage Action to
         Proceed Because the Bankruptcy Court Would Be Required to Abstain From
         Presiding Over Such Litigation Under 28 U.S.C. § 1334(c)(2) ................................. 35

      4. The Court May Lift the Automatic Stay for the Limited Purpose of Permitting
         Discovery on the Middlesex and Allocation Issues and Litigation of the Moving
         Insurers' Summary Judgment Motion ...................................................................... 40

      5. Cause Exists to Justify Waiver of Bankruptcy Rule 4001(a)(3) ............................... 41

VI. WAIVER OF MEMORANDUM OF LAW .................................................................. 41

VII. NO PRIOR REQUEST ................................................................................................. 41

VIII. NOTICE ...................................................................................................................... 42

IX. CONCLUSION .............................................................................................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Colony Ins. Co. v. Vill. at Dadeland Condo. Ass'n*,
    No. 09-22369-CV, 2010 WL 1817038 (S.D. Fla. Apr. 15, 2020) ..........................................29

*Fonseca v. Phila. Hous. Auth. (In re Fonseca)*,
    110 B.R. 191 (Bankr. E.D. Pa. 1990) ...................................................................................33

*G-I Holdings, Inc. v. Hartford Accident & Indem. Co. (In re G-I Holdings, Inc.)*,
    278 B.R. 376 (Bankr. D.N.J. 2002) ......................................................................................37

*Halper v. Halper*,
    164 F.3d 830 (3d Cir. 1999).................................................................................................37

*In re AC&S*,
    No. 02-12687 (Bankr. D. Del. Dec. 8, 2003)....................................................................4, 30

*In re Adelphia Commc'ns Corp.*,
    298 B.R. 49 (S.D.N.Y. 2003)................................................................................................18

*In re Amatex Corp.*,
    107 B.R. 856 (E.D. Pa. 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990) ........................................37

*In re Avaya Inc.*,
    No. 17-10089 (Bankr. S.D.N.Y. Apr. 28, 2017)....................................................................40

*In re Bidermann Indus. U.S.A., Inc.*,
    200 B.R. 779 (Bankr. S.D.N.Y. 1996)..................................................................................17

*In re Burger Boys, Inc.*,
    183 B.R. 682 (S.D.N.Y. 1994)..............................................................................................36

*In re Calkins*,
    BAP No. AZ-17-1284-LBTa, 2019 WL 1594016 (9th Cir. B.A.P. Apr. 9,
    2019) ..................................................................................................................................36

*In re Campanile*,
    No. 17-24902 (JNP), No. 17-24902 (JNP), 2019 WL 968095 (Bankr. D.N.J.
    Feb. 25, 2019), *aff'd sub nom. Eagle One Fed. Credit Union v. Campanile*,
    No. CV 19-284 (RMB), 2020 WL 416182 (D.N.J. Jan. 27, 2020).........................................22

*In re Castlerock Props.*,
    781 F.2d 159 (9th Cir. 1986) ...............................................................................................37

*In re Cicale*,
   2007 WL 1893301 (Bankr. S.D.N.Y. 2007) ...........................................................28

*In re Congoleum Corp.*,
   No. 03-51524 (Bankr. D.N.J. Mar. 22, 2004) ...................................................4, 29

*In re Cont'l Airlines, Inc.*,
   152 B.R. 420 (D. Del. 1993) ..................................................................................33

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*,
   194 B.R. 750 (D.N.J. 1996) ...................................................................................22

*In re Duro Dyne Nat'l Corp.*,
   No. 18-27963 (Bankr. D.N.J. Dec. 19, 2018) ....................................................4, 30

*In re Exide Techs*,
   544 F.3d 196 (3d Cir. 2008)...................................................................................37

*In re G-I Holdings, Inc.*,
   564 B.R. 217 (Bankr. D.N.J. 2016) .......................................................................37

*In re Imerys Talc America, Inc., et al.*,
   Case No. 19-10289 (Bankr. D. Del. Mar. 20, 2020) (LSS) ............................27, 28

*In re Johns-Manville Corp.*,
   31 B.R. 965 (S.D.N.Y. 1983).................................................................................38

*In re Johnson*,
   196 F. App'x 112 (3d Cir. 2006) ...........................................................................22

*In re Kaiser Gypsum Co., Inc.*,
   No. 16-31602 (Bankr. W.D.N.C. Oct. 12, 2017).................................................4, 30

*In re Leatherman*,
   No. 18-24818, (Bankr. D.N.J. Apr. 15, 2019) .......................................................28

*In re: Manley Toys Ltd.*,
   No. 16-15374 (JNP), 2018 WL 1033426 (Bankr. D.N.J. Feb. 14, 2018) ...............17

*In re McGowan*,
   No. 10-12944 (MBK), 2011 WL 2415534 (Bankr. D.N.J. June 15, 2011) .............23

*In re Mid-Atlantic Handling Systems, LLC*,
   304 B.R. 111 (Bankr. D.N.J. 2003) .......................................................................34

*In re Muralo Co., Inc.*,
   Case No. 03-26723 (Bankr. D.N.J. Aug. 20, 2003) (MS) ......................................37

*In re Phar-Mor, Inc. Sec. Litig.*,
  164 B.R. 903 (W.D. Pa. 1994) ........................................................................21

*In re Quigley Co., Inc.*,
  361 B.R. 723 (Bankr. S.D.N.Y. 2007) ........................................................4, 29

*In re Ramex Int'l, Inc.*,
  91 B.R. 313 (E.D. Pa. 1988) ............................................................................7

*In re Rexene Prods. Co.*,
  141 B.R. 574 (Bankr. D. Del. 1992) ...........................................................22, 29

*In re SCO Grp., Inc.*,
  395 B.R. 852 (Bankr. D. Del. 2007) .............................................................38

*In re Spaulding Composites Co., Inc.*,
  207 B.R. 899 (9th Cir. B.A.P. 1997)...............................................................20

*In re St. Clair*,
  No. 08-27884 (MBK), 2011 WL 6888369 (Bankr. D.N.J. Dec. 29, 2011) ............................3

*In re The Score Bd., Inc.*,
  238 B.R. 585 (D.N.J. 1999) ...........................................................................21

*In re Thrive Nat'l. Corp.*,
  605 B.R. 229 (Bankr. D. Utah 2019) ................................................................6

*In re Todd Shipyards Corp.*,
  92 B.R. 600 (Bankr. D.N.J. 1988) ..................................................................22

*In re Tucson Ests., Inc.*,
  912 F.2d 1162 (9th Cir. 1990) .......................................................................40

*In re Wilson*,
  116 F.3d 87, 90 (3d Cir. 1997).......................................................................21

*McCartney v. Integra Nat'l Bank N.*,
  106 F.3d 506 (3d Cir. 1997).............................................................................17

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  399 F.3d 436 (2d Cir. 2005)........................................................................30, 37

*Peerless Ins. Co. v. Rivera (In re Annie's, Inc.)*,
  208 B.R. 313 (D.R.I. 1997)...........................................................................4, 30

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006)..........................................................................39

iv

*Transamerica Ins. Co. v. Keown*,
   451 F. Supp. 397, 403, 406 (D.N.J. 1978) ..............................................................31

**Statutes**

11 U.S.C. § 362(a)(1).......................................................................................................2, 17

11 U.S.C. § 362(a)(3).................................................................................................3, 18, 20

11 U.S.C. § 362(d)(1) ................................................................................................ 4, 6, 21,

11 U.S.C. § 362(g) ............................................................................................................22

28 U.S.C. § 1334(c)(2)..............................................................................................6, 35, 36

**Rules**

Fed. R. Bankr. P. 4001(a)(3)...........................................................................................41

Local Rule 9013-1(b)......................................................................................................41

**Other Authorities**

https://www.marketwatch.com/investing/stock/jnj (last visited Feb. 15, 2022)...........................25

https://www.njcourts.gov/courts/civil/cblp.html ..........................................................38

Jef Feeley, *J&J to Pay More Than $100 Million to End Over 1,000 Talc Suits*,
   BLOOMBERG.COM (Oct. 5, 2020), https://news.bloomberglaw.com/product-
   liability-and-toxics-law/j-j-to-pay-more-than-100-million-to-end-over-1-000-
   talc-suits ......................................................................................................................31

The plaintiff-insurers (the "Moving Insurers")[1] in the action styled *Atlanta International Insurance Company, et al. v. Johnson & Johnson, et al.*, Case No. MID-L-003563-19, currently pending in the Superior Court of New Jersey (the "New Jersey Coverage Action"), hereby file this motion (the "Motion") for an order (i) confirming that the automatic stay does not apply to the New Jersey Coverage Action or, in the alternative, (ii)(a) lifting the automatic stay to allow the New Jersey Coverage Action to proceed or, alternatively, (b) modifying the automatic stay to permit the Moving Insurers to seek certain discovery in the New Jersey Coverage Action and to file and litigate the Summary Judgment Motion (defined below).  In support hereof, the Moving Insurers respectfully represent as follows:[2]

## I.  PRELIMINARY STATEMENT[3]

1.      In May 2019, the Moving Insurers commenced the New Jersey Coverage Action to obtain critical declaratory relief regarding their rights and obligations under certain insurance policies (collectively, the "Policies") issued to Johnson & Johnson ("J&J").  The Moving Insurers commenced the action in response to J&J's assertions that it is entitled to indemnity for "all sums" it may be obligated to pay as a result of its alleged talc liabilities and for

---

[1] The Moving Insurers are: Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company ("North River"); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen).

[2] Republic Indemnity Company of America, a party in the New Jersey Coverage Action, joins the relief requested in this Motion.

[3] Capitalized terms not otherwise defined in the Preliminary Statement have the meanings given to them below.

reimbursement for all costs it has incurred or will incur in the defense of those claims. Accordingly, by the New Jersey Coverage Action, the Moving Insurers seek a judicial determination of the rights and obligations of the parties with regard to coverage for the talc claims. In particular, as set forth in the Moving Insurers' Summary Judgment Motion, J&J has violated the Moving Insurers' rights to control, or at a minimum, participate in, the defense and settlement of such claims.

2.      The Debtor is not a party to the New Jersey Coverage Action, nor has the Debtor sought coverage or made a single claim under the Policies. Nevertheless, in October 2021, shortly after the Debtor filed its Chapter 11 petition, J&J's counsel in the New Jersey Coverage Action sent a short, one-paragraph email to the Moving Insurers' counsel, asserting that the litigation was stayed by virtue of the Debtor's automatic stay. J&J provided no authority or rationale to support this bald assertion, simply stating that "all J&J talc-related litigation matters are now automatically stayed by virtue of section 362 of the Bankruptcy Code."[4] The Moving Insurers do not agree with this position but have filed this Motion to avoid any contention that they have violated the automatic stay.

3.      As this Court well knows, absent extraordinary circumstances, the automatic stay applies to claims only against a debtor. Here, the Debtor is not a party to the New Jersey Coverage Action. As such, the New Jersey Coverage Action clearly is not an "action against the Debtor" nor an attempt to "recover a claim against" the Debtor in contravention of Bankruptcy Code section 362(a)(1). Accordingly, the first potential bar to permitting the New Jersey

---

[4] *See* Email from T. Ladd to E. McCabe, dated Oct. 14, 2021, attached as **Exhibit 1** to the *Declaration of Shaya Rochester in Support of New Jersey Coverage Action Plaintiff-Insurers' Motion For An Order (I) Confirming That The Automatic Stay Does Not Apply To The New Jersey Coverage Action Or, In The Alternative, (II) Granting Relief From The Automatic Stay To Allow The New Jersey Coverage Action To Proceed* (the "Rochester Declaration").

Coverage Action to go forward does not apply.  The second potential bar – Bankruptcy Code section 362(a)(3) – also does not apply because the New Jersey Coverage Action does not seek to "obtain possession" or "exercise control" of estate property. 11 U.S.C. § 362(a)(3). Specifically, the transaction documents underlying the divisional merger that created the Debtor did not allocate any of the Policies to the Debtor.  In fact, the transaction documents, by their express terms, allocated only certain of **Old JJCI's** rights "to make claims" under the Policies. The transaction documents did not give the Debtor the right to make any claims, let alone receive any insurance proceeds, for claims asserted by **J&J**.  J&J itself expressly took this position when it filed its Notice of Bankruptcy Filing and Stay of Proceedings in the New Jersey Coverage Action, stating that "LTL Management LLC, a North Carolina limited liability company . . . is now responsible for the talc related claims asserted against Old JJCI and was allocated the insurance rights of **Old JJCI**…."[5]

4.      Moreover, irrespective of the limited insurance rights allocated to the Debtor in connection with the 2021 Corporate Restructuring, the automatic stay is inapplicable here because the New Jersey Coverage Action does not seek to "obtain possession" or "exercise control" of estate property in contravention of Bankruptcy Code section 362(a)(3).  Rather, the New Jersey Coverage Action seeks only a declaration regarding the parties' respective rights and obligations under the Policies.  Accordingly, because neither section 362(a)(1) nor section 362(a)(3) apply here, the Moving Insurers respectfully request that the Court issue an order confirming that the automatic stay does not apply to the New Jersey Coverage Action.

---

[5] *See* New Jersey Coverage Action, *Notice of Bankruptcy Filing and Stay of Proceedings*, filed October 18, 2021 (the "Notice of Bankruptcy Filing") at 1, attached as **Exhibit 2** to the Rochester Declaration. (emphasis added).

5.      If the Court nonetheless determines that the automatic stay is applicable, the

Moving Insurers submit that the requisite "cause" exists under Bankruptcy Code section

362(d)(1) for the Court to lift the stay to permit the New Jersey Coverage Action to proceed.

Bankruptcy courts in numerous other mass-tort bankruptcies in this and other jurisdictions have

lifted the automatic stay to permit state court insurance coverage litigation to proceed on facts far

less compelling than those present in this case.  *See, e.g.*, *In re Duro Dyne Nat'l Corp.*, No. 18-

27963 (Bankr. D.N.J., Dec. 19, 2018) [Docket No. 350]; *In re Congoleum Corp.*, No. 03-51524

(Bankr. D.N.J., Mar. 22, 2004) [Docket No. 497]; *In re Kaiser Gypsum Co., Inc.*, No. 16-31602

(Bankr. W.D.N.C., Oct. 12, 2017) [Docket No. 669]; *In re Quigley Co., Inc.*, 361 B.R. 723, 743-

45 (Bankr. S.D.N.Y. 2007); *In re AC&S*, No. 02-12687 (Bankr. D. Del., Dec. 8, 2003) [Docket

No. 922]; *Peerless Ins. Co. v. Rivera (In re Annie's, Inc.*), 208 B.R. 313 (D.R.I. 1997).

6.      Here, the balance of the harms particularly favors lifting the stay.  On the one

hand, the Debtor will not be prejudiced if the New Jersey Coverage Action continues.  As noted

above, the Debtor is not a party to the New Jersey Coverage Action, nor has the Debtor sought

any coverage under the Policies.  Moreover, even if the Debtor were a party in the New Jersey

Coverage Action or were seeking coverage under the Policies, the New Jersey Coverage Action

– *regardless of its outcome* – will have no impact on the Debtor, its estate or its creditors.

Specifically, if the Moving Insurers prevail, the Debtor's ability to satisfy its alleged talc

liabilities will be unaffected because, under the Funding Agreement, J&J and New JJCI have

agreed to backstop the Debtor's funding requirements to satisfy the Debtor's talc-related

liabilities and costs.  That obligation is not conditioned on the Debtor's receipt of insurance

payments.  Thus, unlike the debtor in nearly all other mass-tort bankruptcies, which does not

have access to a virtually unlimited source of third-party funding, ***the Debtor in this case does not need insurance proceeds*** to satisfy any of its alleged tort liabilities.

7.        On the other hand, as recognized by the New Jersey Superior Court,[6] the Moving Insurers will suffer substantial hardship if the New Jersey Coverage Action is stayed. ***First***, J&J has already incurred billions of dollars in defense costs, settlements, and adverse verdicts, while simultaneously breaching its obligation under the Policies to give the Moving Insurers the opportunity to control, or at a minimum, participate in, the defense of the Underlying Claims. The Moving Insurers need clarity as to whether, and to what extent, they are obligated to reimburse and indemnify J&J for these substantial amounts. ***Second***, to the extent J&J prevails in the New Jersey Coverage Action, J&J may very well contend that it is entitled to any interest that may be accruing on account of those amounts. The amount of interest that J&J may seek grows each day. ***Third***, the Debtor has indicated on multiple occasions that it wants to enter into global settlement discussions as soon as possible with the TCC and the other constituencies representing talc claimants.[7] As such, the Moving Insurers are at risk and that risk grows each day that they are not permitted to move forward with the New Jersey Coverage Action. Unless and until the New Jersey Superior Court rules that J&J has been in breach of its contractual obligations under the Policies, the Debtor will continue to exclude the Moving Insurers from the

---

[6] *See* New Jersey Coverage Action, Hearing Transcript dated Feb. 21, 2020 at 6:10-11, attached as **Exhibit 3** to the Rochester Declaration.

[7] *See, e.g., Debtor's Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending the Exclusive Period to File a Plan of Reorganization and Solicit Acceptances Thereof* [Docket No. 1127-1] (the "Debtor's Exclusivity Motion"), at 11-12 ("[T]he Debtor desires to commence negotiations with representatives of talc claimants as soon as possible regarding the terms of a consensual plan of reorganization."). At the first day of the hearing on the currently pending Motions to Dismiss the Chapter 11 Case, the Debtor's President, Robert Wuesthoff, similarly testified that the Debtor wishes to engage in mediation as soon as possible after the Court rules on the Motions to Dismiss.

Debtor's negotiations and potential settlements with the talc claimants in violation of the terms and conditions of the Policies.

8.     Finally, a determination of the rights and obligations of the parties under the Policies is necessary and inevitable, particularly in respect of the billions of dollars of claims already asserted by J&J (not Old JJCI, let alone the Debtor). Accordingly, there is no legitimate reason to delay resolution of issues that are already at the summary judgment stage before the court that has overseen the proceedings to date and is best situated to adjudicate the matter. Moreover, this Court would be required in any event to abstain from hearing the coverage dispute under 28 U.S.C. § 1334(c)(2). Multiple bankruptcy courts, including courts within this district, have found that the requisite cause existed to lift the stay after determining that they would have been required to abstain from hearing the underlying litigation. This point weighs in further support of lifting the stay (if it is applicable at all).

9.     For the foregoing reasons, as described in more detail below, the balance of harms weighs heavily in favor of the Moving Insurers and thus sufficient "cause" exists under section 362(d)(1) of the Bankruptcy Code to lift the automatic stay (if it applies at all) to allow the New Jersey Coverage Action to proceed.

## II.  JURISDICTION AND VENUE

10.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. This Chapter 11 case was transferred from the Bankruptcy Court for the Western District of North Carolina (Charlotte Division) (the "WDNC Court") to this Court pursuant to the *Order Transferring Case to District of New Jersey*, entered on November 16, 2021 [Docket No. 416]. The statutory predicates for the relief requested are section 362 of

the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1

of the Local Rules of the United States Bankruptcy Court, District of New Jersey.

### III.  RELEVANT FACTUAL BACKGROUND

**A.  The Moving Insurers Commence the New Jersey Coverage Action**

11.  Since 2009, J&J and its subsidiaries have been sued in thousands of lawsuits that

assert claims for damages allegedly caused by the use of J&J talc products, including exposure to

asbestos allegedly contained in such talc products (the "Underlying Claims").[8]  The Underlying

Claims relate to J&J's manufacture, distribution, marketing, and sales of products containing talc

and/or asbestos, including J&J's Baby Powder and Shower to Shower products.[9]

12.  Beginning in July 2017, J&J sent letters to a number of the Moving Insurers

notifying them of J&J's asserted claims under the Policies and demanding "indemnity for all

sums (including settlement or judgments) it may become obligated to pay in connection with the

talc claims" and "reimbursement of all costs it has incurred, and will incur, in defending those

claims."[10]  Notably, the demand letters were sent only on behalf of J&J, not Old JJCI (defined

below).[11]

13.  Under the Policies, J&J is obligated to assist and cooperate with its insurers in the

defense and investigation of the Underlying Claims.  Specifically, the Policies each have

substantially similar assistance and cooperation provisions (the "Assistance and Cooperation

---

[8] *See* New Jersey Coverage Action, *Second Amended Complaint*, filed June 22, 2020 (the "Second Amended Complaint" or "SAC") ¶ 54, attached as **Exhibit 4** to the Rochester Declaration.

[9] Rochester Decl., Exh. 4 (SAC) ¶ 53.

[10] *See, e.g.*, Letter from T. Ladd to North River, dated July 24, 2017, attached as **Exhibit 5** to the Rochester Declaration; Letter from T. Ladd to AIU Insurance Company, dated July 24, 2017, attached as **Exhibit 6** to the Rochester Declaration.

[11] *See id.*

<u>Provisions</u>") that entitle the Moving Insurers to associate in the defense and control of any claim that involves, or reasonably appears to involve, the Policies.

14.     Moreover, certain of the Moving Insurers' Policies either contain claims control provisions (the "<u>Claims Control Provisions</u>") or incorporate such Claims Control Provisions contained in the underlying policies.  For example, the North River Claims Control Provision requires J&J to allow the insurers to assume full control over the defense and settlement of potential claims:

> It is further understood and agreed that ***Underwriters shall have full control over the defense and settlement of all claims or potential claims under this Policy***, including the self-insured share of the Assured's Limit of Liability. Therefore, upon request of the Underwriters, the Assured shall contribute its self-insured share to any settlement or payment of judgment.
>
> It is further understood and agreed that, in the event there is any conflict between this endorsement and condition H [the Assistance and Cooperation clause], then this endorsement shall supersede condition H in that respect.[12]

15.     Despite these obligations, J&J has only sporadically provided the Moving Insurers with information and has otherwise denied the Moving Insurers' rights to participate in, let alone control, the defense of the Underlying Claims.[13]

16.     In response to the growing number of Underlying Claims and J&J's serial violations of its obligations under the Policies, the Moving Insurers initiated the New Jersey Coverage Action on May 3, 2019, seeking declaratory judgment under the New Jersey Declaratory Judgments Act, N.J Stat. Ann. § 2A:16-50, *et seq.*, as to the respective rights and

---

[12] Rochester Decl., Exh. 4 (SAC) ¶ 84 (emphasis added).

[13] New Jersey Coverage Action, *Plaintiffs' Opposition to Johnson & Johnson's and Johnson & Johnson Consumer, Inc.'s Motion for Stay*, filed on August 1, 2019, at 5-6, attached as **Exhibit 7** to the Rochester Declaration.

obligations of the parties under the Policies.  The Moving Insurers filed an Amended Complaint on May 30, 2019, and the Second Amended Complaint on June 22, 2020.[14]

17.　　By the Second Amended Complaint, the Moving Insurers seek declarations regarding: (a) whether the underlying insurance has been properly exhausted with respect to the Underlying Claims; (b) whether all prerequisites to coverage under the Policies have taken place; (c) whether bodily injuries or personal injuries fall within the coverage and are not subject to a policy exclusion, and whether they took place during the Policies' periods; (d) what trigger of coverage and allocation methodology among the parties applies to defense and indemnity costs for the Underlying Claims; and (e) what claims for indemnity and/or defense costs may be limited or excluded from coverage or barred by public policy.[15]

18.　　The Moving Insurers have argued that J&J's claims under the Policies are improper for a number of reasons, including because J&J has refused to acknowledge, and has blatantly violated, the Claims Control Provisions, which entitle the Moving Insurers to take over the defense and settlement of the Underlying Claims.  Nevertheless, J&J has continued to defend and settle cases and seek defense costs from the Moving Insurers.  Moreover, judgments against J&J and its affiliates, as well as settlements into which J&J has entered, have resulted in liability on account of the Underlying Claims of billions of dollars thus far.[16]

19.　　In addition to non-debtors J&J, Old JJCI, and other insurers, the complaints also named non-debtor Middlesex Assurance Company ("Middlesex")—J&J's "captive insurer" (*i.e.*, a wholly owned subsidiary of J&J)—as a defendant in the New Jersey Coverage Action.  The

---

[14] Rochester Decl., Exh. 4 (SAC) ¶¶ 1-3.

[15] Rochester Decl. Exh. 4 (SAC) ¶ 52.

[16] *See Declaration of John K. Kim in Support of First Day Pleadings* [Docket No. 5] (the "First Day Declaration"), ¶¶ 39-40.

Moving Insurers named Middlesex as a defendant because it issued numerous policies to J&J, including a significant number of primary policies from at least 1970 to 2018, as well as a number of excess policies during that period.  The parties in the New Jersey Coverage Action dispute, among other things, the application and effect of Endorsement 32 that was added to the post-1997 Middlesex Policy USPL9700001 on October 29, 2018, as well as other endorsements. The impact of those endorsements on the allocation of any coverage liability amongst Middlesex, J&J, and J&J's other insurers, including the Moving Insurers, may be significant.  The parties also dispute which of the Middlesex policies and limits should be included in the allocation of any coverage liability.[17]  Prior to the Petition Date (defined below), the Moving Insurers served discovery on Middlesex and allocation-related issues.[18]  As noted, as an alternative form of relief, the Moving Insurers are requesting that this Court grant relief from the automatic stay to allow them to continue taking discovery in connection with these issues related to Middlesex and allocation (the "Middlesex and Allocation Issues").

20.    On May 15, 2020, Travelers Casualty and Surety Company ("Travelers")—an insurer defendant in the New Jersey Coverage Action—filed cross-claims against J&J, Old JJCI and Middlesex, seeking declarations similar to those sought by the Moving Insurers.  For example, Travelers seeks a declaration that Middlesex's primary and excess policies must share

---

[17] *See* New Jersey Coverage Action, *Cross-Cl. of Travelers Casualty and Surety Co. Against Johnson & Johnson, Johnson & Johnson Consumer, Inc. and Middlesex Assurance Co.*, filed on May 15, 2020, attached as **Exhibit 8** to the Rochester Declaration ("Travelers' Cross-Claims").

[18] Although Debtor has argued that the post-1986 Middlesex policies are not relevant to the Debtor's claims because such policies do not appear on the coverage chart that the Debtor prepared in connection with the adversary proceeding seeking entry of the Preliminary Injunction (defined below), the mere fact that the Debtor does not believe those policies to be relevant and omitted them from the chart is not determinative of their importance or the materiality of those policies.  *See Debtor's Omnibus Reply in Support of Motion for an Order (A) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions and (C) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc. Docket No. 146] (the "Debtor's Omnibus Reply in Support of PI Motion"), at 34, n.25.

in the apportionment/allocation of coverage, including Middlesex primary and excess policies issued to J&J both before 1986, as well as those Middlesex primary and excess policies issued to J&J subsequent to 1986 and continuing to December 2018.[19]  With respect to these Middlesex policies, although the Official Committee of Talc Claimants (the "TCC")[20] argues that those policies were exhausted in the fourth quarter of 2018,[21] the Debtor disagrees, noting "no agreement as to allocation of the talc losses across the triggered policy periods has yet been reached such that the limits of the policies at issue [including the Middlesex post-1985 policies] can be properly said to be exhausted (or eroded) by the talc losses, and no court has had the opportunity to make that determination."[22]

21.    As of the Petition Date, the Moving Insurers were prepared to file in the Superior Court of New Jersey Law Division: Middlesex County (the "New Jersey Superior Court") a motion for summary judgment that J&J has breached the Claims Control Provisions (the "Summary Judgment Motion") in accordance with a briefing schedule agreed upon by the parties.  The Moving Insurers have refrained from filing that motion—despite their view that it is not stayed under section 362(a) of the Bankruptcy Code—pending adjudication (or consensual resolution) of the relief sought in this Motion.

---

[19] Rochester Decl. Exh. 8 (Travelers' Cross-Claims).

[20] On November 8, 2021, the WDNC Court entered an order appointing the TCC (the "TCC Appointment Order").  On December 23, 2021, the Office of the United States Trustee for the District of New Jersey (the "UST") filed a notice of reconstituted and amended talc claimants' committee that formed two new talc committees.  *See* Docket No. 965.  At a hearing on January 19, 2022, this Court vacated the notice filed by the TCC.  Accordingly, references to the TCC in this Motion refer to the TCC appointed under the TCC Appointment Order.

[21] *See Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc. Docket No. 142] (the "TCC Objection to PI Motion") at 35, 76.

[22] *See* Debtor's Omnibus Reply in Support of PI Motion at 37 [Adv. Proc. Docket No. 146].

**B.**    **J&J Undertakes the 2021 Corporate Restructuring**

22.    The Debtor, a subsidiary of the ultimate parent, J&J, was formed through a series of intercompany transactions and entity name changes.

23.    In 2015, J&J Consumer Companies, a subsidiary of J&J, merged with an affiliate, which then merged into McNeil-PPC, Inc.  The resulting entity was renamed Johnson & Johnson Consumer Inc. (including all former names and historical forms, "Old JJCI").[23]  According to the Debtor, following these transactions, Old JJCI became responsible for the Underlying Claims.[24]

24.    In 2021, Old JJCI implemented a corporate restructuring (the "2021 Corporate Restructuring"), which was completed on October 12, 2021.  As a result of that restructuring, the Debtor represents that Old JJCI ceased to exist and two new entities were created: (a) the Debtor in this Chapter 11 case and (b) another entity named "Johnson & Johnson Consumer Inc." ("New JJCI").[25]

25.    One "key objective" of the 2021 Corporate Restructuring, according to the Debtor, was to ensure that the Debtor had the "ability to fund the costs of defending and resolving present and future talc-related claims."[26]  To achieve this goal, the Debtor entered into a funding agreement (the "Funding Agreement") between the Debtor, on the one hand, and J&J and New JJCI (on a joint and several basis), on the other hand, "which is in addition to the value of and revenues generated by Royalty A&M, the Debtor's wholly-owned operating subsidiary."[27]  The Funding Agreement "assures that [the Debtor] has the same if not a greater

---

[23] First Day Declaration, ¶ 14 [Docket No. 5].

[24] *Id.* ¶ 15

[25] *Id.* ¶ 16

[26] *Id.* ¶ 21.

[27] *Id.*  According to the Debtor, Royalty A&M is projected to generate approximately $50 million in revenue per year over the next five years.  *Id.* ¶ 26.

ability to fund the costs of defending and resolving current and future talc claims both in state and federal courts and in the bankruptcy court as Old JJCI did."[28]

26.      In addition, J&J and New JJCI have committed to fund a trust that will constitute a "qualified settlement fund" with an aggregate amount of $2 billion for the payment of current and future talc-related claims asserted against or related to the Debtor.[29]

27.      The Debtor has asserted that the funds advanced by J&J and New JJCI "will be dedicated exclusively for use in paying [cosmetic talc] claims" and that they will be immediately available for the Debtor's use as needed to resolve talc-related claims.[30]

## C.    The Debtor Files for Chapter 11 and Obtains A Preliminary Injunction and Venue Is Transferred

28.      On October 14, 2021 (the "Petition Date"), the Debtor commenced the Chapter 11 case (the "Chapter 11 Case") in the WDNC Court to "equitably and permanently resolve all current and future talc-related claims against it through the consummation of a plan of reorganization that includes the establishment of a trust."[31]

29.      On October 21, 2021, the Debtor filed a complaint in the WDNC Court (the "PI Complaint"), thereby commencing an adversary proceeding seeking: (a) a declaration that section 362(a) of the Bankruptcy Code prohibits the commencement or continuation of certain actions by the Defendants (as defined in the PI Complaint) against the Debtor, certain non-debtor affiliates of the Debtor, parties whom the Debtor has indemnified, and certain insurers whose

---

[28] Transcript of Proceedings dated Oct. 20, 2021 at 28:12-16, *In re: LTL Management LLC*, No. 21-30589-JCW (Bankr. W.D.N.C.), attached as **Exhibit 9** to the Rochester Declaration.

[29] First Day Declaration, ¶¶ 28, 81 [Docket No. 5].

[30] First Day Declaration, ¶ 28 [Docket No. 5].

[31] *See Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc.  Docket No. 2], at 4 (the "PI Motion").

policies purportedly cover the Debtor for talc-related liabilities, including the Moving Insurers (each a "Protected Party" and collectively, the "Protected Parties"), while the Chapter 11 Case remains pending, and (b) a preliminary injunction under section 105(a) of the Bankruptcy Code to enjoin the prosecution of actions by Defendants seeking to hold a Protected Party liable for any talc-related claim against the Debtor outside of the Chapter 11 Case.[32]

30.     On October 25, 2021, the Bankruptcy Administrator for the Western District of North Carolina filed a motion to transfer the Chapter 11 Case to this Court (the "Venue Transfer Motion").  On October 26, 2021, the WDNC Court entered the *Order to Appear and Show Cause Why Venue Should Not be Transferred to Another District.*  The Debtor opposed the venue transfer.

31.     The WDNC Court held hearings on the Debtor's motion for preliminary injunctive relief on November 4-5, 2021 and the Venue Transfer Motion on November 10, 2021.

32.     Citing, among other things, the extensive litigation proceeding in New Jersey related to talc liability, the WDNC Court found that the Debtor has the greatest connection to New Jersey and ordered the Chapter 11 Case transferred to this Court.[33]

33.     The WDNC Court also issued a 60-day injunction (the "Preliminary Injunction"), which was further extended by this Court to February 28, 2022.[34]  The Preliminary Injunction prohibits and enjoins **the Defendants named in the PI Complaint** from commencing or

---

[32] *See Debtor's Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or, (II) Preliminarily Enjoining Such Actions and (III) Granting A TRO Pending Final Hr'g* [Adv. Proc.  Docket No. 1].

[33] Transcript of Proceedings dated Nov. 10, 2021 at 127:2-11, 129:24-25-130:1-6, *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000* (*In re: LTL Management LLC*), No. 21-03032-JCW (Bankr. W.D.N.C. Nov. 10, 2021), attached as **Exhibit 10** to the Rochester Declaration.

[34] *Order Granting the Debtor's Request for Preliminary Injunctive Relief*, ¶ 4 [Adv. Proc. Docket No. 102]; *Bridge Order Extending Termination Date of Order Granting the Debtor's Request for Preliminary Injunctive Relief* [Adv. Proc. Docket No. 102].

continuing to prosecute talc-related claims relating to the Debtor against the Protected Parties.[35] Importantly, the term "Defendants" is defined to mean only claimants asserting the Underlying Claims and thus does not include the Moving Insurers.[36]  Accordingly, the New Jersey Coverage Action is ***not*** enjoined by the Preliminary Injunction. The Debtor has expressly acknowledged that fact.[37]

### D.    J&J Advises the Moving Insurers of Its Erroneous Position that the New Jersey Coverage Action Is Purportedly Stayed

34.    Shortly after the Petition Date, J&J's insurance counsel sent to the Moving Insurers' counsel an email purporting to notify them that the New Jersey Coverage Action was subject to the automatic stay.[38]  Subsequently, J&J's insurance counsel clarified its original email, explaining that the Preliminary Injunction sought by the Debtor applied only to the Defendants named in the PI Complaint (and not the Moving Insurers) and that the Preliminary Injunction would not address whether the New Jersey Coverage Action is subject to the automatic stay or should be otherwise enjoined, with all parties reserving their respective rights on such issues. [39]

---

[35] *Order Granting the Debtor's Request for Preliminary Injunctive Relief*, ¶ B [Adv. Proc. Docket No. 102].

[36] *Id.*; *see also* PI Motion, at 1 [Adv. Proc. Docket No. 2].

[37] Debtor's Omnibus Reply in Support of PI Motion, at 1, n.2 [Adv. Proc. Docket No. 146].

[38] Rochester Decl., Exh. 1 (Oct. 14, 2021 T. Ladd Email) ("Effective immediately, all J&J talc-related litigation matters are now automatically stayed by virtue of section 362 of the Bankruptcy Code.").

[39] Email from T. Ladd to E. McCabe, dated Oct. 29, 2021, attached as **Exhibit 11** to the Rochester Declaration.

35.     On November 24, 2021, the Moving Insurers' counsel sent a letter to the Debtor's counsel and J&J's insurance counsel, requesting that the Debtor and J&J stipulate to modify the automatic stay (to the extent it applies) to permit the New Jersey Coverage Action to proceed.[40]

36.     While Debtor's counsel verbally communicated to the Moving Insurer's counsel that the Debtor is not willing to enter into such a stipulation at this time, the Moving Insurers have not received any formal written response as of the date of this filing.   Therefore, the Moving Insurers were left with no choice but to file this Motion.

## IV.  RELIEF REQUESTED

37.     By this Motion, the Moving Insurers seek entry of an order, substantially in the proposed form filed in connection herewith, (i) confirming that the automatic stay does not apply to the New Jersey Coverage Action, or, in the alternative, (ii)(a) lifting the automatic stay to permit the New Jersey Coverage Action to proceed in the New Jersey Superior Court or, alternatively, (b) modifying the automatic stay to permit the Moving Insurers to seek discovery related to the Middlesex and Allocation Issues and to file and litigate, and the New Jersey Superior Court to adjudicate, the Summary Judgment Motion.

## V.  BASIS FOR RELIEF REQUESTED

### A.     The Automatic Stay Does Not Apply to the New Jersey Coverage Action

38.     Section 362(a) of the Bankruptcy Code operates as a stay of, among other things:

(1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding ***against the debtor*** that was or could have been commenced before the commencement of the case under this title, or to ***recover a claim against the debtor*** that arose before the commencement of the case under this title; … and

(3) any act to ***obtain possession of property of the estate*** or of property from the estate ***or to exercise control over property of the estate****….*

---

[40] Letter from K. Scherling to D. Prieto, dated Nov. 24, 2021, attached as **Exhibit 12** to the Rochester Declaration.

11 U.S.C. §§ 362(1), (3) (emphasis added).  The New Jersey Coverage Action is not stayed

under either of these paragraphs.

**1.** **The New Jersey Coverage Action Is Not an Action "Against the Debtor" Nor an Attempt to "Recover a Claim Against the Debtor" Under Bankruptcy Code Section 362(a)(1)**

39.     The J&J entities that are named as defendants in the New Jersey Coverage Action

are non-debtors J&J, Old JJCI, and Middlesex.  The Debtor is not a party.  Moreover, the

Moving Insurers are not seeking to recover any claim against the Debtor in the New Jersey

Coverage Action.  Thus, the New Jersey Coverage Action clearly does not fall within the plain

language of section 362(a)(1) of the Bankruptcy Code.  11 U.S.C. § 362(a)(1) (emphasis added);

*see also McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) ("Although the

scope of the automatic stay is broad, the clear language of Section 362(a) stays actions only

against a 'debtor.'"); *In re: Manley Toys Ltd.*, No. 16-15374 (JNP), 2018 WL 1033426, at *3

(Bankr. D.N.J. Feb. 14, 2018) (explaining that "the [automatic] stay does not apply to actions

against any non-debtors, except for the alter ego and fraudulent transfer actions"); *In re*

*Bidermann Indus. U.S.A., Inc.,* 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996) ("As a general

proposition, the automatic stay is limited to the debtor, and does not apply to actions against non-

debtor third parties.").

**2.** **The New Jersey Coverage Action Is Not an Act to Obtain Possession or Exercise Control Over Property of the Estate Under Bankruptcy Code Section 362(a)(3)**

40.     The New Jersey Coverage Action does not fall within the purview of section

362(a)(3) because it is not an act to obtain possession or exercise control over property of the

Debtor's estate.

41.     As a threshold matter, the Debtor has not established that the Policies are property of its estate.  Instead, it has relied on bald, unsupported assertions that the Policies are "shared"[41] and that the applicable insurance rights were allocated to the Debtor in connection with the 2021 Corporate Restructuring.[42]  But the underlying documentation does not support those assertions. As a result, a threshold element of section 362(a)(3)—that Debtor property is at issue—has not been established.  *See In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 54-55 (S.D.N.Y. 2003) (vacating a bankruptcy court order extending the automatic stay to a coverage action between insurers and non-debtor principals where the court incorrectly "assumed that the proceeds from the [insurance] polices were assets of [the debtor's] estate").

42.     Specifically, the documents underlying the 2021 Corporate Restructuring, by their express terms, provide the Debtor only with Old JJCI's "right to make claims" under insurance policies with respect of "Talc Related Liabilities".[43]  As such, the "Talc Related Insurance Assets" allocated to the Debtor consist only of:

> Insurance Assets.  ***All rights to make claims*** under any and all insurance policies as to which the ***Company*** has rights as an insured, additional insured, successor, beneficiary or otherwise, solely to the extent such policies provide the Company with coverage or a right to coverage for ***Talc Related Liabilities*** (***such right to make claims***, the "Talc Related Insurance Assets").[44]

---

[41] *See, e.g., Debtor's Supplemental Memorandum of Law in Support of Preliminary Injunction Motion* [Adv. Proc. Docket No. 128] (the "Debtor's Supplemental PI Memo"), at 25-26, 38 n.23, 45; Debtor's Omnibus Reply in Support of PI Motion at 12, 32 [Adv. Proc. Docket No. 146].

[42] *See, e.g.,* First Day Declaration, ¶¶ 24, 46 [Docket No. 5].

[43] *See Declaration of Mark W. Rasmussen* [Adv. Proc. Docket No. 135] (the "Rasmussen Decl."), Exh. 1.25, Schedules to the Plan of Divisional Merger by Chenango Zero LLC dated October 12, 2021 (the "Divisional Merger Schedules"), Schedule 5(b)(i), at ¶ (1)(b).

[44] *Id.* (emphasis added).  For the avoidance of doubt, the Moving Insurers reserve all rights at law and in equity on the question of whether the Policies and the right to make claims thereunder can be allocated, assigned or otherwise transferred without the express consent of the Moving Insurers.

43.    The term "Company" is defined in the transaction documents to mean Chenango

Zero LLC, which is the successor to Old JJCI.[45]    The term "Talc Related Liabilities" is defined

in the transaction documents to mean talc-related liabilities of "the Company" – *i.e.,* Old JJCI.[46]

Thus, when read together, the transaction documents provide that the Debtor received only the

rights of Old JJCI to make claims under the Policies in respect of talc-related liabilities of Old

JJCI.  The Policies were not allocated to the Debtor, nor were J&J's rights to make claims under

the Policies allocated to the Debtor.

44.    Consistent    with    the    foregoing    allocation,    the    language    in    the    underlying

documents that describes the insurance-related assets that were allocated to Chenango Two LLC

(the predecessor to New JJCI) is far more expansive.  Specifically, ***all*** insurance policies of Old

JJCI were allocated to New JJCI:

> Insurance.    ***All insurance policies*** of the Company or any other insurance policies
> pursuant to which the Company has rights as an insured, additional insured, successor,
> beneficiary, or otherwise (collectively, the "Chenango Two Insurance Policies"), and all
> rights to make claims under or in respect of the Chenango Two Insurance Policies, in
> each case, except for rights included within Talc Related Insurance Assets.[47]

45.    Accordingly, as a result of the 2021 Corporate Restructuring, all of Old JJCI's

insurance policies and all rights thereunder were allocated to non-debtor New JJCI, except that

Old JJCI's right "to make claims" under such policies for Old JJCI's talc-related liabilities was

allocated to the Debtor.  As noted, J&J itself has expressly acknowledged this allocation.[48]

---

[45] *See* Rasmussen Decl., Exh. 1.24, Plan of Divisional Merger dated October 12, 2021, at 1; First Day
Declaration, ¶ 23 [Docket No. 5].  Chenango Zero LLC, in turn, was divided into two companies pursuant
to the divisional merger: (a) the proverbial BadCo – *i.e.,* Chenango One LLC (the predecessor to the
Debtor) and (b) the proverbial GoodCo – *i.e.,* Chenango Two LLC (the predecessor to New JJCI).  *See id.*

[46] *See* Rasmussen Decl., Divisional Merger Schedules, Schedule 5(c)(i)(1).

[47] *See* Rasmussen Decl., Exh. 1.25, Divisional Merger Schedules, Schedule 5(b)(ii) (emphasis added).

[48] *See* Notice of Bankruptcy Filing.

46.     This distinction between rights of Old JJCI to make claims under the Policies for Old JJCI's alleged talc liabilities (which were allocated to the Debtor) and J&J's rights to make claims under the Policies (which were not allocated to the Debtor) is important because the New Jersey Coverage Action seeks to resolve, among other things, those demands made under the Policies *by J&J*.[49]   Accordingly, since J&J's rights to make claims under the Policies were not allocated to the Debtor, prosecution of the New Jersey Coverage Action does not implicate property of the estate.

47.     Additionally, even if the underlying transaction documents provided the Debtor with a right in the Policies that is implicated by the New Jersey Coverage Action, the automatic stay still would not apply because the New Jersey Coverage Action does not constitute an attempt to "obtain possession" or "exercise control" over the estate property in contravention of Bankruptcy Code section 362(a)(3).  *See In re Spaulding Composites Co., Inc*., 207 B.R. 899, 907-08 (9th Cir. B.A.P. 1997) (finding that state court lawsuit that asked only for a declaration of insurer's liability to two non-debtors under policies issued to both the debtor and the non-debtors did not amount to an exercise of control over property of the estate).  Unlike the Underlying Claims asserted by the talc claimants, the claims asserted by the Moving Insurers in the New Jersey Coverage Action do not seek to liquidate any claims against the Debtor, let alone any monetary relief from the Debtor.  Any declaration made by the New Jersey Superior Court will not affect possession or control over Debtor property; rather it will be only an adjudication of the existence and extent of rights under the Policies.

48.     Furthermore, even if the Debtor has a right in the Policies that is implicated by the New Jersey Coverage Action, and even if prosecution of that litigation will have an effect on the

---

[49] *See supra*, ¶ 12; Exhs. 5-6 to the Rochester Declaration.

availability of insurance proceeds available to the Debtor, the automatic stay still will not be violated because, as set forth above and described in further detail below, the Debtor does not need insurance proceeds to satisfy any of its alleged tort liabilities.  If the Debtor can satisfy its alleged tort liabilities irrespective of the outcome of the New Jersey Coverage Action, prosecution of that litigation does not violate the automatic stay.  *See In re Phar-Mor, Inc. Sec. Litig.*, 164 B.R. 903, 906 (W.D. Pa. 1994) ("[W]hile the actions may have an effect on the availability of insurance proceeds under the [defendant's] policy, the instant situation materially differs from *A.H. Robins* in that the policy here is not an asset of the Debtor, and the Committee has failed to establish that [the defendant] would be unable to satisfy judgments that exceed the insurance coverage.").

49.    For the foregoing reasons, the Moving Insurers respectfully request that the Court enter an order confirming that the New Jersey Coverage Action is not subject to the automatic stay.

**B.    Even if the Automatic Stay Applies to the New Jersey Coverage Action, Cause Exists for Relief Under Bankruptcy Code Section 362(d)(1)**

50.    If the Court determines that the New Jersey Coverage Action is subject to the automatic stay, there is ample "cause" to lift the stay under Bankruptcy Code section 362(d)(1), which provides that relief from the automatic stay "***shall***" be granted for cause.  *See* 11 U.S.C. § 362(d)(1) (emphasis added).  The Bankruptcy Code does not define "cause," which is a broad and flexible concept that must be determined on a case-by-case basis.  *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."); *In re The Score Bd., Inc.*, 238 B.R. 585, 593 (D.N.J. 1999) ("Cause is viewed as a broad and flexible concept.  The court has the flexibility and the discretion to fashion the relief to the

circumstances of the matter.") (internal citations and quotations omitted). There is no rigid test when determining whether "cause" exists to modify an automatic stay. Instead, "when deciding whether sufficient cause exists for lifting the stay, courts must conduct a balancing test in which the interests of the Debtor's estate are weighed against the hardships that will be incurred by the movant." *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 761 (D.N.J. 1996). This Court articulated these same standards when adjudicating a stay relief motion recently filed by a talc claimant.[50]

51.     The burden of proof on a motion to lift the automatic stay is a shifting one. First, the moving party must make a prima facie showing that "cause" exists; once the movant has satisfied its initial burden, ***the burden shifts to the debtor to show that "cause" for relief does not exist***. *See* 11 U.S.C. § 362(g); *In re Johnson*, 196 F. App'x 112, 114 (3d Cir. 2006) (finding that the Bankruptcy Court did not err in lifting the automatic stay where the debtor had not met its burden to show cause did not exist); *In re Todd Shipyards Corp.*, 92 B.R. 600, 602 (Bankr. D.N.J. 1988).

52.     Bankruptcy courts in this Circuit, including this Court, often apply a three-pronged test to determine whether cause exists to grant relief from the stay: "(1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) The probability of the creditor prevailing on the merits." *In re Campanile*, No. 17-24902 (JNP), 2019 WL 968095, at *2 (Bankr. D.N.J. Feb. 25, 2019) (*citing Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Cod.)*, 141 B.R. 574, 576

---

[50] Transcript of Proceedings dated Jan. 11, 2022 at 85-86, *In re: LTL Management LLC*, No. 21-30589 (MBK) (Bankr. D.N.J.), attached as **Exhibit 13** to the Rochester Declaration (stating that cause is "an intentionally broad and flexible concept determined on a case-by-case basis").

(Bankr. D. Del. 1992)), *aff'd sub nom. Eagle One Fed. Credit Union v. Campanile*, No. CV 19-284 (RMB), 2020 WL 416182 (D.N.J. Jan. 27, 2020); *see also In re St. Clair*, No. 08-27884 (MBK), 2011 WL 6888369, at *2 (Bankr. D.N.J. Dec. 29, 2011) (same); *In re McGowan*, No. 10-12944 (MBK), 2011 WL 2415534, at *2 (Bankr. D.N.J. Jun. 15, 2011) (same).

     1.     **The Balance of Harms Weighs Heavily In Favor of Lifting the Automatic Stay to Allow the New Jersey Coverage Action to Proceed**

          a.     **Regardless of the Outcome, the New Jersey Coverage Action Will Have No Impact on the Debtor, its Estate or its Creditors**

     53.     Allowing the New Jersey Coverage Action to proceed will not impact the Debtor's ability to satisfy claims asserted by talc claimants, nor will it impact the Debtor's restructuring or the recoveries of talc claimants in this Chapter 11 Case. Indeed, regardless of the outcome, the New Jersey Coverage Action will have no impact on the Debtor, its estate or its creditors. If the Moving Insurers prevail in the New Jersey Coverage Action, the Debtor's ability to satisfy any talc-related liabilities and costs will be unaffected, given J&J's and New JJCI's joint and several commitment to backstop such obligations pursuant to the Funding Agreement. *See Debtor's Supplemental Memorandum of Law in Support of Preliminary Injunction Motion* [Adv. Proc. Docket No. 128] at 90 ("Among other things, the Funding Agreement will ensure funding for a trust in the amount required by a confirmed plan of reorganization, to the extent the Debtor's other assets (including insurance) are insufficient to fund the trust."). Stated differently, even if the New Jersey Superior Court determines that the Moving Insurers are not required to provide coverage under the Policies, J&J and New JJCI will nonetheless be required to replenish the Debtor's estate (to the extent the estate has any interest in the Policies) to ensure that there are sufficient assets to satisfy the Debtor's alleged tort

liabilities.[51]   Thus, the Debtor in this Chapter 11 Case does not need insurance to satisfy its alleged tort liabilities.

54.     Indeed, the Debtor's counsel, Chief Legal Officer and President, Old JJCI and J&J have each effectively conceded, on multiple occasions, that the J&J enterprise, including the Debtor, does not need insurance coverage to satisfy its alleged talc liabilities.  For example:

- The Debtor has expressly stated that the Funding Agreement was established to "***ensur[e] that the Debtor has at least the same, if not greater, ability to pay the Debtor Talc Claims against Old JJCI than before the 2021 Corporate Restructuring***."[52]   And "significantly," in the words of the Debtor's Chief Legal Officer, the Funding Agreement "imposes ***no repayment obligation*** on the Debtor; it is not a loan."[53]

- The Debtor has emphasized that this case is unique due to the financial backing of the ultimate parent—a company valued at hundreds of billions of dollars.[54]   Arguing that the Funding Agreement is even "better than a guarantee," Debtor's counsel explained that the Funding Agreement "makes available for payment of talc-related claims the full value of New JJCI, both as a result of New JJCI being obligated under the Funding Agreement with no cap, but also because J&J is likewise obligated on a joint and several basis up to the full value of New JJCI."[55]   The Debtor's Chief Legal Officer has testified that New JJCI's fair market value is approximately $60 billion[56] and that J&J is valued at more than $400 billion.[57]

---

[51] While it is true that, under the Funding Agreement, the Debtor must first apply its own assets to satisfy its alleged talc liabilities, the fact remains that, if the Moving Insurers prevail in the New Jersey Coverage Action, there will be no erosion to the Debtor's estate (to the extent it even has an interest in the Policies) nor any impact on the recoveries of creditors because J&J and New JJCI have agreed to backstop the Debtor's funding obligations to satisfy such talc liabilities.  In other words, that the Funding Agreement provides only a backstop and is not a primary source of funding is irrelevant to the question of whether the Debtor will suffer any prejudice if the Moving Insurers prevail.  The Debtor will not suffer any prejudice.  Indeed, if the Moving Insurers prevail, the only parties that will suffer any prejudice are ***non-debtor*** affiliates such as J&J, New JJCI and/or Middlesex.

[52] Debtor's Supplemental PI Memo at 15 (emphasis added) [Adv. Proc. Docket No. 128].

[53] First Day Declaration, ¶ 27 [Docket No. 5].

[54] Rochester Decl., Exh. 9 at 28:12-16 (Hearing Tr, dated Oct. 20, 2021); TCC Objection to PI Motion at 24-25 [Adv. Proc. Docket No. 142].

[55] Rochester Decl., Exh. 9 at 29:20-30:2 (Hearing Tr, dated Oct. 20, 2021).

[56] Transcript of Proceedings dated Nov. 4, 2021 at 250:10-23, *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000 (In re: LTL Management LLC),* No. 21-30532-JCW (Bankr. W.D.N.C), attached as **Exhibit 14** to the Rochester Declaration.

For these reasons, Debtor's counsel represented at a recent hearing that the talc claimants are now in a stronger position than they were before the Chapter 11 filing.[58]

- At another recent hearing, Debtor's counsel represented to the Court and parties in interest: "We don't understand how undercapitalization is even an issue in view of the way the transaction was carried out and the fact that there's a funding agreement….And I would just reiterate again, I dispute this notion of undercapitalization.  I know we're not arguing the merits of any of this today, but the idea that there's some notion of undercapitalization with a transaction like this to me just does not fit."[59]

- The Debtor's Chief Legal Officer testified that J&J did not provide information regarding its insurance policies in litigation involving the Underlying Claims because the insurance proceeds were not needed to satisfy the claims.[60]

- In depositions taken in connection with the Motions to Dismiss the Chapter 11 Case, three different employees of the Debtor have testified that the Funding Agreement is sufficient to cover the Debtor's talc exposure.[61]

- At the hearing on the Motions to Dismiss the Chapter 11 Case, the Debtor's President did not even mention insurance when asked to identify the assets of the Debtor.[62]    Similarly, at that hearing, the Debtor's President testified that the

---

[57] *Id.* at 249:25-250:1-9.   According to Market Watch, as of February 15, 2022, J&J's market capitalization was listed at $441.51 billion, with shares trading at $168.06 per share. https://www.marketwatch.com/investing/stock/jnj (last visited Feb. 15, 2022).

[58] Transcript of Proceedings dated Dec. 15, 2021 at 24-25, *In re: LTL Management LLC*, No. 21-30589 (MBK) (Bankr. D.N.J.), attached as **Exhibit 15** to the Rochester Declaration.

[59] Transcript of Proceedings dated Jan. 3, 2022 at 22, 25, *In re: LTL Management LLC*, No. 21-30589-MBK (Bankr. D.N.J.), attached as **Exhibit 16** to the Rochester Declaration.

[60] Transcript of Proceedings dated Oct. 22, 2021 at 115:1-11; 116:11-117:3, *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000 (In re: LTL Management LLC)*, No. 21-30589-JCW (Bankr. W.D.N.C), attached as **Exhibit 17** to the Rochester Declaration.

[61] *See* Transcript of Deposition of John Kim, October 31, 2021 (the "Kim Tr."), at 132:3-8, attached as **Exhibit 18** to the Rochester Declaration; Transcript of Deposition of Robert Wuesthoff, December 22, 2021 (the "Wuesthoff Tr."), at 171:4–172:2 (LTL's President "thought the two billion [qualified settlement fund] was a great start, and hopefully, not even two billion is needed"), attached as **Exhibit 19** to the Rochester Declaration; Transcript of Deposition of Richard Dickinson, January 26, 2022 (the "Dickinson Tr."), at 88:19–92:20 (stating his belief that LTL will "be able to satisfy its obligations" because JJCI is "a multibillion dollar corporation" and LTL has an "unconditional funding agreement" with JJCI and J&J), attached as **Exhibit 20** to the Rochester Declaration; *Official Committee of Talc Claimants II's Reply in Support of Motion to Dismiss* [Docket No. 1358] at 11.

[62] Mr. Wuesthoff focused only on the Funding Agreement, the Services Agreement and Secondment Agreement.

Debtor's Board did not take into account whether it had insurance to cover the talc claims, or the amount of any such coverage, when the Board decided to put the Debtor into Chapter 11.

- Shortly after the Petition Date, J&J filed a Form 8-K that states: "To demonstrate its commitment to resolving the cosmetic talc cases *and remove any financial objections to the process*, Johnson & Johnson has agreed to provide funding to LTL for the payment of amounts the Bankruptcy Court determines are owed by LTL and will also establish a $2 billion trust in furtherance of this purpose."[63]

- Similarly, J&J and Old JJCI responded to interrogatories regarding available insurance in various state court litigation, stating that the company "*has sufficient assets to satisfy any realistic judgment against it*, and therefore objects to providing further information in response to this Interrogatory" and "the policy underlying the disclosure of insurance information is implicated where such insurance would bear on the issue of a defendant's ability to satisfy a judgment. *Defendants state that they have a reasonable and good faith belief that the above policy concern is unlikely to be implicated in this action*."[64]

- Indeed, in a pleading filed as recently as January 5, 2022, the Debtor doubled down on the prior sworn testimony identified above, stating that "[t]he fact that *J&J and Old JJCI took the position that they were capable of satisfying a judgment or paying a settlement, and therefore objected to further disclosure of insurance information*, does not at all suggest that insurance was not also available (it was and is)."[65]

- The Debtor estimates the fair market value of its interest in Royalty A&M to be approximately $367.1 million as of the Petition Date, and that Royalty A&M will generate approximately $50 million per year over the next five years.[66] Including other assets the Debtor received pursuant to the divisional merger, the Debtor's approximate value is $373.1 million.[67] Accordingly, the Debtor has significant assets to pay its alleged talc liabilities, even before it may need to access funding

---

[63] Johnson & Johnson, Form 8-K, at 33 (October 19, 2021) (emphasis added), attached as **Exhibit 21** to the Rochester Declaration.

[64] *Declaration of Adam C. Silverstein in Support of Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc. Docket No. 142] (the "Silverstein Decl."), Exh. 36, Interrogatory No. 4.1; Silverstein Decl., Exh. 35, Interrogatory No. 4; Silverstein Decl., Exh. 37, at p. 10 (emphasis added).

[65] Debtor's Omnibus Reply in Support of PI Motion at 36-37 [Adv. Proc. Docket No. 146].

[66] *See* First Day Declaration ¶26 [Docket No. 5]; *see also* Informational Br. of LTL Management LLC [Docket No. 3] ("Informational Brief") at 3-4.

[67] *See* First Day Declaration ¶26 [Docket No. 5].

under the Funding Agreement.  And with the Funding Agreement, the Debtor has expressly stated: "[T]he Debtor undeniably has more than sufficient funding to pay any legitimate cosmetic talc claims."[68]

- Indeed, the Funding Agreement expressly states that the Debtor has the "financial capacity sufficient to satisfy its obligations as they become due in the ordinary course of business, ***including any Talc-Related Liabilities***."[69]

- J&J itself has touted its financial ability to satisfy significant talc-related liabilities, moving for relief from the automatic stay in a related Chapter 11 case, *In re Imerys Talc America, Inc.*, No. 19-10289 (Bankr. D. Del.), in order to continue talc claims in the state court tort system.[70]  J&J explained that, "of course, [it] has the financial wherewithal to defend [the] claims and satisfy any successful talc claim in full."

- J&J and New JJCI have committed to advance $2 billion in funds to a trust that will be "dedicated exclusively for use in paying [talc-related] claims" asserted against or related to the Debtor.[71]  Given that J&J and the Debtor "strongly believe" that the $2 billion advance is "substantially in excess of any liability the Debtor should have,"[72] it is clear that receipt of insurance proceeds from the Policies is not necessary to the estate and will not impact creditor recoveries. Indeed, the Debtor has essentially conceded this point in a recent pleading.[73]

55.    Finally, the New Jersey Coverage Action has proceeded without any prejudice to the debtors in the *Imerys* Chapter 11 cases, *In re Imerys Talc Am., Inc.*, et al., No. 19-10289 (Bankr. D. Del.), which cases involve J&J's former talc suppliers.  In that case, the Imerys debtors raised the applicability of the automatic stay to the New Jersey Coverage Action. However, the parties, including each of the Imerys debtors, the Moving Insurers ***and J&J***,

---

[68] Information Brief at 4 [Docket No. 3].

[69] *See* Amended and Restated Funding Agreement (Kim Dec. Annex 2) at ¶ E (emphasis added).

[70] *Johnson & Johnson's Motion Pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1 for Entry of Order Modifying Automatic Stay to Permit J&J to Send Notice Assuming Defense of Certain Talc Claims and Implement Talc Litigation Protocol*, ¶¶ 4, 41, 45, *In re Imerys Talc America, Inc.*, Case No. 19-10289 (Bankr. D. Del. Mar. 20, 2020) (LSS) [Docket No. 1567], attached as **Exhibit 22** to the Rochester Declaration.

[71] First Day Declaration, ¶ 28 [Docket No. 5].

[72] Informational Brief, at 3.

[73] Debtor's Omnibus Reply in Support of PI Motion at 36-37 [Adv. Proc. Docket No. 146].

ultimately entered into a consensual order lifting the automatic stay (to the extent it applied at all) to permit the New Jersey Coverage Action to proceed.[74]

56.     For these reasons, allowing the New Jersey Coverage Action to proceed will not prejudice the Debtor, its ability to satisfy its alleged talc-related liabilities, or the recoveries potentially available to the Debtor's talc claimants.  Where there is no undue prejudice to the Debtor or its creditors, courts routinely find cause to lift the automatic stay.  *See, e.g., In re Leatherman*, No. 18-24818, (Bankr. D.N.J. Apr. 15, 2019) (noting that "the cases have almost universally held that cause may exist whenever the stay harms the creditor, and lifting the stay will not unjustly harm the debtor or other creditors" and that where "there is no demonstrated prejudice to the Debtor, almost by necessity this means that the balance of hardships favors the movant.").[75]

### b.     A Declaration of Respective Rights and Obligations under the Policies Will Provide Clarity—Not Cause Harm—to the Debtor

57.     As discussed, the Moving Insurers are not seeking to liquidate claims nor are they seeking any monetary relief from the Debtor (or any other party) in the New Jersey Coverage Action.  Rather, they seek only a declaration of the parties' respective rights and obligations under the Policies.  Accordingly, the Debtor will suffer no prejudice if the stay is lifted.  A determination of the rights and obligations of the parties under the Policies is necessary and inevitable, and there is no reason to delay resolution of issues that are already pending before the court best situated to adjudicate them.  *See In re Cicale*, No. 05-14462 (AJG), 2007 WL

---

[74] *See Order Resolving the New Jersey Action Insurers' Motion for an Order (I) Confirming That the Automatic Stay Does Not Apply to the New Jersey Action or, in the Alternative (II) Granting Relief From the Automatic Stay to Allow the New Jersey Action to Proceed*, (Mar. 19, 2021) in *In re: Imerys Talc America, Inc.*, No. 19-10289 (Bankr. D. Del. Mar. 19, 2021) [Docket No. 3174], attached as **Exhibit 23** to the Rochester Declaration.

[75] *Letter Decision* (Apr. 15, 2019) in *In re Leatherman*, No. 18-24818, (Bankr. D.N.J. Apr. 15, 2019) [Docket No. 3174], attached as **Exhibit 24** to the Rochester Declaration.

1893301, *1, *4 (Bankr. S.D.N.Y. June 29, 2007) (stay should be lifted because critical issue would need to be addressed regardless of whether stay was lifted).  Moreover, as this Chapter 11 Case is in its infancy and it is unknown how many years will pass before a Chapter 11 plan is confirmed, allowing the New Jersey Coverage Action to proceed will provide clarity to the parties by informing them whether and how much, if any, coverage is available under the Policies.  *Cf. In re Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) (modifying the automatic stay to allow prosecution of a class-action lawsuit against debtor where the claim against the debtor would have to be resolved before confirmation).  Resolution of the insurance coverage issues will help settle the parties' positions and provide them some level of clarity as they determine how to proceed.

58.    Recognizing the importance of such clarity, courts have explained that declaratory judgments like the New Jersey Coverage Action "are appropriately resolved first in order to aid in the early resolution of the insurer's coverage."  *Colony Ins. Co. v. Vill. at Dadeland Condo. Ass'n*, No. 09-22369-CV, 2010 WL 1817038, at *2-3 (S.D. Fla. Apr. 15, 2020).    Courts in numerous other mass-tort bankruptcies have lifted the automatic stay to permit state court coverage litigation to continue post-petition.  For example, in *In re Congoleum Corp.*, this Court lifted the automatic stay, to the extent it was applicable, to allow insurers to proceed with a pre-petition state court insurance declaratory judgment coverage action.  *See, In re Congoleum*, No. 03-51524 (Bankr. D.N.J., Mar. 22, 2004) (insurance coverage litigation proceeded through discovery and to the completion of trial).[76]  In *In re Quigley Co., Inc.*, the court lifted the automatic stay to permit insurers to pursue arbitration of asbestos-related coverage issues,

---

[76] *See Order Concerning Motion for Declaration that Section 362(a) of the Bankruptcy Code is Not Applicable or, in the Alternative, for Relief from the Automatic Stay*,   (Mar. 22, 2004) in *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J., Mar. 22, 2004) [Docket No. 497], attached as **Exhibit 25** to the Rochester Declaration.

concluding that "stay relief will have a greater chance of encouraging a complete resolution of the issues . . . and will promote the interests of judicial economy and the expeditious economical resolution of litigation." 361 B.R. 723, 743-45 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted); *see also In re Duro Dyne Nat'l Corp.*, No. 18-27963 (Bankr. D.N.J., Dec. 19, 2018) (lifting stay to permit claims in a pre-petition insurance coverage action to proceed);[77] *In re Kaiser Gypsum Co., Inc.*, No. 16-31602 (Bankr. W.D.N.C., Oct. 12, 2017) (lifting automatic stay to permit appeals and cross-appeals in an insurance coverage case against the debtor to proceed);[78] *In re AC&S*, No. 02-12687 (Bankr. D. Del., Dec. 8, 2003) (debtors participated in insurance coverage arbitration, district court proceedings and appeal that continued throughout the bankruptcy case);[79] *Peerless Ins. Co. v. Rivera (In re Annie's, Inc.)*, 208 B.R. 313 (D.R.I. 1997) (court held "cause" existed to lift the automatic stay to allow debtor's insurer to proceed with declaratory judgment action regarding insurance coverage dispute); *cf. Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448-49 (2d Cir. 2005) (vacating stay of asbestos-related coverage litigation and concluding that because the debtor was not involved in the stayed underlying lawsuit and the plaintiffs sought to adjudicate the rights of non-debtors only, the adjudication of the claims would have no impact on the debtor's bankruptcy proceedings).

---

[77] *See Order Granting Certain Insurers' Motion for Relief From Stay*, (Dec. 19, 2018) in *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (Bankr. D.N.J., Dec. 19, 2018) [Docket No. 350], attached as **Exhibit 26** to the Rochester Declaration.

[78] *See Order Granting Motion for Relief from Stay to Pursue Appeal of State Court Action*, (Oct. 12, 2015) in *In re Kaiser Gypsum Co., Inc.*, No. 16-31602 (Bankr. W.D.N.C., Oct. 12, 2017) [Docket No. 669], attached as **Exhibit 27** to the Rochester Declaration.

[79] *See* Excerpted Docket of *In re AC&S*, No. 02-12687, at Docket No. 922, *Order Granting Motion of HWS Consulting Group, Inc. for Relief from Automatic Stay*, filed Dec. 8, 2003, attached as **Exhibit 28** to the Rochester Declaration.

### c. The Moving Insurers Will Suffer Significant Hardship If the Stay Is Not Lifted

59.     In contrast to the Debtor, who will not be prejudiced by lifting the stay, the Moving Insurers will suffer significant hardship if the New Jersey Coverage Action is stayed. Indeed, the New Jersey Superior Court has stated that delay of the New Jersey Coverage Action prejudices the Moving Insurers.[80]  *First*, to date, J&J has settled, or agreed to settle, thousands of Underlying Claims and has incurred nearly a billion dollars of defense costs, all the while depriving the Moving Insurers of their contractual rights to defend, control, and settle the Underlying Claims.[81]   J&J has also suffered numerous adverse verdicts at trial.[82]  *Second*, interest on such sums of money is itself exorbitant.  Thus, to the extent that the Moving Insurers are ultimately required to reimburse and indemnify J&J for any portion of these payments, J&J may contend that the Moving Insurers are required to pay interest on such amounts, to the substantial detriment of the Moving Insurers.  *See, e.g., Transamerica Ins. Co. v. Keown*, 451 F. Supp. 397, 403, 406 (D.N.J. 1978).

60.     *Third*, the J&J defendants, including Middlesex, have asserted *affirmative* claims against the various insurers, including the Moving Insurers, for declaratory relief regarding the scope of coverage and for breach of contract.  Thus, even if the Moving Insurers' claims are stayed during the pendency of this Chapter 11 Case, the automatic stay would not apply to such affirmative claims.  *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Judicial proceedings resting on counterclaims and third-party claims asserted by a

---

[80] *See* Rochester Decl. Exh. 3, at 6:10-11 (New Jersey Coverage Action, Hearing Tr, dated Feb. 21, 2020).

[81] *See* First Day Declaration, ¶¶ 38-45 [Docket No. 5]; *see also* Jef Feeley, *J&J to Pay More Than $100 Million to End Over 1,000 Talc Suits*, BLOOMBERG.COM (Oct. 5, 2020), https://news.bloomberglaw.com/product-liability-and-toxics-law/j-j-to-pay-more-than-100-million-to-end-over-1-000-talc-suits.

[82] *See* TCC Objection to PI Motion at 14-15, 19-21 [Adv. Proc. Docket No. 142].

defendant-debtor are not stayed, while same-case proceedings arising out of claims asserted by the plaintiff are stayed.").  Allowing the J&J defendants' affirmative claims to proceed while staying reciprocal insurer claims would substantially prejudice the Moving Insurers and the other insurers in the New Jersey Coverage Action, not to mention waste judicial (and party) resources by compelling the rehearing of the issues *seriatim*, and delay the ultimate resolution of complex insurance coverage issues.

61.    ***Fourth***, continuation of the stay threatens to abrogate the Moving Insurers' rights under the Policies, including their right to determine allocation amongst insurance policies, including the Middlesex policies.  The Moving Insurers have significant concerns that J&J, in conjunction with the Debtor, may be contemplating actions, including settlements entered into in connection with mediation in the *Imerys* Chapter 11 cases, that would potentially compromise their rights as insurers.  To the extent that J&J, as the Debtor's ultimate parent, is engaged in such discussions without involving the Moving Insurers, the insurers are clearly prejudiced by continued delay in the New Jersey Coverage Action.   Even if J&J and the Debtor have not yet engaged in such discussions with the talc claimants, the Debtor has given every indication that the Moving Insurers will be excluded from such discussions.  Indeed, in its opening argument at the hearing on the Motions to Dismiss the Chapter 11 Case, the Debtor's PowerPoint presentation touted the benefits of the Chapter 11 Case by proclaiming that "Plan negotiations will not require participation of non-talc parties."

62.    For the foregoing reasons, the balance of harms clearly weighs in favor of lifting the automatic stay (to the extent it even applies), particularly given that the Debtor will suffer no prejudice if the New Jersey Coverage Action is allowed to go forward.

###### d.    The Moving Insurers Will Likely Prevail

63.    The third factor relevant to the determination of whether cause exists to lift the automatic stay—"whether the movant has some probability of success on the merits in the proposed litigation"—also weighs in favor of the Court permitting the New Jersey Coverage Action to proceed.  *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 425 (D. Del. 1993).  "Even a slightest probability of success on the merits may be sufficient to support lifting an automatic stay." *Id.* at 426; *Fonseca v. Phila. Hous. Auth. (In re Fonseca)*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990) ("Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where, as here, we believe that the decision-making process should be relegated to bodies other than this court.").

64.    The Moving Insurers have a decidedly more than "slight" probability of prevailing in the New Jersey Coverage Action.  Indeed, even the TCC has acknowledged that "there is ample support" for the insurers' arguments in the New Jersey Coverage Action.[83]  For example, the plain terms of the Policies include Claims Control Provisions that give the Moving Insurers contractual rights to control the defense and resolution of the Underlying Claims.  It is undisputed that J&J has proceeded to defend, and in some cases settle, Underlying Claims, without any involvement of the Moving Insurers.

65.    Thus, the Moving Insurers have a strong likelihood of success on that issue, as well as the numerous other coverage defenses raised.  The Moving Insurers should not be stayed

---

[83] *See Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc. Docket No. 142] (the "TCC PI Objection"), at 35.  In a recent pleading, the Debtor challenged the arguments made by the TCC as to why there is ample support for the insurers' arguments in the New Jersey Coverage Action.  *See* Debtor's Omnibus Reply in Support of PI Motion at 33-37 [Adv. Proc. Docket No. 146].  These issues obviously are not before the Bankruptcy Court to decide.  But for the avoidance of doubt, the Moving Insurers reserve all of their rights to respond to the Debtor's arguments on this issue.

from prosecuting the Summary Judgment Motion and the other relief sought in the New Jersey

Coverage Action, particularly when the Debtor has no interest in the outcome of the New Jersey

Coverage Action.

### 2. The *Mid-Atlantic* Factors Likewise Weigh Heavily In Favor of Lifting the Automatic Stay to Allow the New Jersey Coverage Action to Proceed

66.     Some courts in this district have considered the twelve factors identified by this

Court in *In re Mid-Atlantic Handling Systems, LLC* to determine whether to grant stay relief to

permit a litigation to continue:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of connection with or interference with the bankruptcy case; (3) whether the proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of the litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms).

304 B.R. 111, 130 (Bankr. D.N.J. 2003).  As this Court recently observed, a bankruptcy court is

not required to analyze each of these factors and need only consider the relevant factors.[84]

67.     Here, the applicable factors set forth in *Mid-Atlantic* weigh heavily in favor of

granting the relief requested in this Motion:[85]

- "Whether relief would result in a partial or complete resolution of the issues" (factor 1).  The New Jersey Coverage Action will result in a complete resolution

---

[84] Rochester Decl. Exh. 13, at 86:2-13 (Hearing Tr, dated Jan. 11, 2022); *see also In re Mid-Atlantic Handling Systems*, 304 B.R. at 130 ("All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay.")

[85] Several factors do not apply.  For example, factor three is inapplicable because the New Jersey Coverage Action does not involve the Debtor as a fiduciary; factor five does not apply to a dispute between insurers and a putative claimant to insurance; and factors eight and nine do not apply to a declaratory judgment suit.

of the coverage issues between the various insurers and the J&J defendants, including J&J, Old JJCI and Middlesex.

- "lack of connection with or interference with the bankruptcy case" (factor 2). As explained at length, the New Jersey Coverage Action – regardless of its outcome – will not impact the Debtor, its estate or creditors.

- "whether a specialized tribunal with the necessary expertise has been established to hear the cause of action" (factor 4). The New Jersey Superior Court has both the experience and expertise to fully resolve the New Jersey Coverage Action.

- "whether the action primarily involves third parties" (factor 6). The New Jersey Coverage Action involves *only* third parties.

- "whether litigation in another forum would prejudice the interests of other creditors" (factor 7). As explained at length, and as the Debtor and J&J have admitted, the New Jersey Coverage Action will not impact the recoveries of talc claimants.

- "the interests of judicial economy and the expeditious and economical resolution of the litigation" (factor 10). As noted above and described further herein, lifting the stay to allow the New Jersey Coverage Action to proceed will undoubtedly promote judicial economy and the expeditious and economical resolution of the litigation.

- "whether the parties are ready for trial in the other proceeding" (factor 11). While the New Jersey Coverage Action is not yet ready for trial, the litigation is far advanced and the Moving Insurers certainly are ready to file and litigate the Summary Judgment Motion.

- "the impact of the stay on the parties and the balance of harms" (factor 12). As set forth above at length, the balance of the harms clearly weighs in favor of lifting the stay.

### 3. The Stay Should Also Be Lifted to Allow the New Jersey Coverage Action to Proceed Because the Bankruptcy Court Would Be Required to Abstain From Presiding Over Such Litigation Under 28 U.S.C. § 1334(c)(2)

68.     In opposing the Moving Insurers' request, the Debtor might suggest this Court as a forum to litigate the dispute. But that option is not available because this Court would be required to abstain from hearing the dispute under 28 U.S.C. § 1334(c)(2). And as a result, this point weighs in further support of lifting the stay (if it is applicable at all).

69.     Courts, including courts within this district, have considered whether they would be required to abstain from a case when deciding whether cause exists to lift the stay.  *See, e.g.*, *In re: Congoleum Corp.*, No. 03-51524, Transcript of Motion Hearing dated Feb. 2, 2004, at 41 [Docket No. 294] (Bankr. D.N.J.);[86] *see also In re Calkins*, BAP No. AZ-17-1284-LBTa, 2019 WL 1594016, at *4 (9th Cir. B.A.P. Apr. 9, 2019) (noting that abstention to permit pending state court litigation to continue may constitute cause to lift the stay); *In re Thrive Nat'l. Corp.*, 605 B.R. 229, 242 (Bankr. D. Utah 2019) (recognizing that a decision to abstain from hearing a cause of action "may necessitate relief from the automatic stay so that the State Court action can proceed"); *In re Burger Boys, Inc.*, 183 B.R. 682, 688-89 (S.D.N.Y. 1994) (concluding that cause for relief from stay existed in part due to the decision to abstain).

70.     Bankruptcy Court abstention is governed by 28 U.S.C. § 1334(c)(2). That subsection provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

71.     Accordingly, courts must abstain if the following criteria are met: (i) a timely motion is made; (ii) the proceeding is based upon a state law claim or state law cause of action; (iii) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 or "arise in" a case under title 11; (iv) federal courts would not have jurisdiction absent its relation to a bankruptcy case; (v) an action is "commenced" in a state forum of appropriate

---

[86] Transcript of Motion Hearing dated Feb. 2, 2004 in *In re: Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J., Feb. 2, 2004) at 38-41, attached as **Exhibit 29** to the Rochester Declaration.

jurisdiction; and (vi) the action can be timely adjudicated in the state forum.  *See In re Exide Techs*, 544 F.3d 196, 218 n.14 (3d Cir. 2008); *In re G-I Holdings, Inc.*, 564 B.R. 217, 248 (Bankr. D.N.J. 2016).  All six criteria are met here.

72.     ***First,*** this Motion is, without question, timely, and to the extent the Debtor considers initiating an adversary proceeding akin to the coverage action, the Moving Insurers would timely bring a motion to abstain.

73.     ***Second***, the New Jersey Coverage Action involves only state law causes of action involving state law contractual and insurance law issues.   Where an action is governed exclusively by state law, cause to lift the stay exists.  *See In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986) (holding that district court did not abuse its discretion by lifting the automatic stay to give state law claimants a right to have claims heard in state court).

74.     ***Third***, the New Jersey Coverage Action is not a "core" proceeding arising under the Bankruptcy Code.  Whether a proceeding is a "core" proceeding that "arises under" title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked.  *Halper v. Halper*, 164 F.3d 830, 836-37 (3d Cir. 1999).  An insurance dispute is not a statutorily enumerated core proceeding under section 157(b).[87]  Moreover, the

---

[87] Courts have repeatedly held that insurance coverage actions are not "core" proceedings.  *See, e.g.*, *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 450 (2d Cir. 2005) (vacating stay of asbestos-related coverage litigation, finding that claims raised in declaratory judgment action were not core to the bankruptcy proceeding); *G-I Holdings, Inc. v. Hartford Accident & Indem. Co. (In re G-I Holdings, Inc.)*, 278 B.R. 376, 381 (Bankr. D.N.J. 2002) (holding that insurance coverage action was non-core and stating that an environmental coverage action under pre-petition insurance policies "does not invoke a substantive right provided by title 11," and that such a "proceeding also need not have arisen in a Chapter 11 case"); *In re Amatex Corp.*, 107 B.R. 856, 863 (E.D. Pa. 1989) (holding that a Chapter 11 debtor's declaratory judgment action seeking determination of the extent of insurers' liability for asbestos-related claims against debtor was a non-core proceeding), *aff'd*, 908 F.2d 961 (3d Cir. 1990); *In re Ramex Int'l, Inc.*, 91 B.R. 313, 315 (E.D. Pa. 1988) (declaratory judgment action concerning insurance coverage was not a core proceeding); *see also* Transcript of Hearing dated July 28, 2003 in *In re Muralo Co. Inc.*, Case No. 03-26723 (Bankr. D.N.J. July 28, 2003) (MS), at 110-13 ("Muralo Transcript") (insurance coverage action is not a "core proceeding" because it is "not a case that involves a substantive Chapter 11, Title 11

New Jersey Coverage Action was commenced outside the bankruptcy context on the basis of rights arising under state contract and insurance law.  Accordingly, this is not a case that involves a substantive right under Chapter 11 or a statutory right under the Bankruptcy Code, nor is it a case that could only arise in the context of a bankruptcy case.

75.     **Fourth,** because there is not complete diversity among the parties and the action involves no federal question, the New Jersey Coverage Action could not have been commenced in a federal court.[88]

76.     **Fifth**, the plaintiffs properly chose to commence the New Jersey Coverage Action in the New Jersey Superior Court.  All issues regarding coverage under the Policies can and should be determined by the New Jersey Superior Court,[89] which has more specialized knowledge of the state law claims and insurance issues implicated in the New Jersey Coverage Action over which it has been presiding for more than two years.  *See In re Johns-Manville Corp.*, 31 B.R. 965, 972 (S.D.N.Y. 1983) (concluding that all issues regarding the debtor's asbestos insurance coverage should be decided in the pending California state court action, which could determine all issues involving all insurers).  Moreover, relief from the stay is particularly appropriate "if the non-bankruptcy suit involves multiple parties," as here, where more than 40 insurers and other non-debtor corporate entities are party to the New Jersey Coverage Action.  *In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007).

---

Bankruptcy Code, statutory right, nor is it a case that could only arise in the context of a bankruptcy case") (the Muralo Transcript is attached as **Exhibit 30** to the Rochester Declaration).

[88] Rochester Decl., Exh. 4 (SAC), ¶¶ 4-47.

[89] The New Jersey Coverage Action is being heard under the Complex Business Litigation Program, which the New Jersey Supreme Court established to provide a framework for the efficient resolution of complex business and commercial cases raising complex factual and/or legal issues.  *See* https://www.njcourts.gov/courts/civil/cblp.html.

77.    **Sixth,** the facts in this case satisfy the timely adjudication requirement.  This is not a question of which court will resolve the action more quickly, but rather whether adjudication in state court would be consistent with the "needs of the title 11 case."  *Stoe v. Flaherty*, 436 F.3d 209, 219 (3d Cir. 2006).  Here, the New Jersey Coverage Action has been progressing since May 2019 and is far more advanced than the bankruptcy case.  Specifically, prior to the Petition Date, the parties had engaged in and completed significant discovery.  For instance, the parties had served and responded to extensive document requests and interrogatories and produced millions of pages of documents prior to the deadline for substantial completion of document productions on September 15, 2021.  The New Jersey Superior Court had also appointed a Special Discovery Master to resolve any disputes that arise and the parties were in the process of scheduling initial depositions.  Prior to the Petition Date, fact discovery was scheduled to be completed in May 2022, and the Moving Insurers were on the cusp of filing their Summary Judgment Motion regarding the Claims Control Provisions when the Debtor filed its Chapter 11 petition.[90]  The New Jersey Superior Court has extensive knowledge of the facts and the legal issues at issue in the New Jersey Coverage Action and is well-suited to decide the issues more expeditiously.

78.    Indeed, the New Jersey Superior Court has indicated that it intends to move the New Jersey Coverage Action along apace.  On July 10, 2019, J&J filed a motion in the New Jersey Superior Court seeking to stay the New Jersey Coverage Action pending rulings in *Daubert* proceedings in underlying cases pending in other courts.  The New Jersey Superior Court granted J&J's motion, staying the New Jersey Coverage Action until January 17, 2020.  But the New Jersey Superior Court denied J&J's motion to extend the stay further, noting that

---

[90] Rochester Decl., Exh. 12, at 3 (Ltr from K. Scherling to D. Prieto).

the court was "hard pressed" to avoid any continued prejudice or hardship to the [Moving Insurers] if the stay were to continue.[91]  It is reasonable to infer that the New Jersey Superior Court will continue to move the case forward towards resolution if the stay is lifted.

79.    Accordingly, all six factors for mandatory abstention are satisfied, and this Court should find cause to lift the stay (to the extent that the stay applies).

**4.    The Court May Lift the Automatic Stay for the Limited Purpose of Permitting Discovery on the Middlesex and Allocation Issues and Litigation of the Moving Insurers' Summary Judgment Motion**

80.    The Moving Insurers submit that the automatic stay (to the extent it applies at all) should be lifted to permit the New Jersey Coverage Action—full stop.  However, in the event the Court wishes to reserve judgment on that issue or otherwise declines to lift the stay in its entirety with respect to the New Jersey Coverage Action, the Moving Insurers request that the Court lift the stay "partially" to allow the Moving Insurers to continue seeking discovery on the Middlesex and Allocation Issues and to file and litigate, and the New Jersey Superior Court to adjudicate and enter judgment on, the Summary Judgment Motion.  *See In re Tucson Ests., Inc.*, 912 F.2d 1162, 1169 & n.5 (9th Cir. 1990) (noting that the court may "terminate, annul, modify, or condition its stay").  Indeed, courts have modified the automatic stay in cases where the stayed proceeding was poised to move to the disposition of issues, in the interest of judicial economy. *Id.* at 1169; *see also In re Avaya Inc.*, No. 17-10089 (Bankr. S.D.N.Y., Apr. 28, 2017) [Docket No. 479] (lifting stay to permit Texas district court to decide and enter orders on motion to dismiss and motion to transfer venue in pending pre-petition patent infringement case).[92]

---

[91] Rochester Decl., Exh. 3, at 6:10-11 (New Jersey Coverage Action, Hearing Tr, dated Feb. 21, 2020).

[92] *See Order Granting in Part the Motion of Blackberry Limited and Blackberry Corporation Pursuant to 11 U.S.C. § 362(d) for Relief From the Automatic Stay*, in *In re Avaya Inc.*, No. 17-10089 (Bankr. S.D.N.Y, Apr. 28, 2017) [Docket No. 479], attached as **Exhibit 31** to the Rochester Declaration.

81.     Here, the Moving Insurers have already commenced discovery on the Middlesex and Allocation Issues, which are central to the ultimate resolution of the coverage dispute between the various parties.  Moreover, the Moving Insurers were planning to file their Summary Judgment Motion, based upon the limited issues regarding the Claims Control Provisions, the very week that the Debtor commenced its Chapter 11 Case.

### 5.      Cause Exists to Justify Waiver of Bankruptcy Rule 4001(a)(3)

82.     Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." FED. R. BANKR. P. 4001(a)(3).  Pursuant to Local Rule 9013-1(b), the Moving Insurers request that any order entered lifting the automatic stay be effective immediately so that they may proceed with the New Jersey Coverage Action.  As each day passes, interest may be accruing on J&J's known liabilities, which the Moving Insurers may or may not be required to reimburse or indemnify, and there is a risk that J&J may take additional actions that prejudice the Moving Insurers.

## VI.  <u>WAIVER OF MEMORANDUM OF LAW</u>

83.     The Moving Insurers respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal bases upon which the Moving Insurers reply are incorporated herein and the Motion does not raise any novel issues of law.

## VII.  <u>NO PRIOR REQUEST</u>

84.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case.

## VIII.  <u>NOTICE</u>

85.      Notice of this Motion will be given to: (a) counsel for the Debtor; (b) the Office of the United States Trustee for the District of New Jersey; (c) counsel to J&J and the other New Jersey Coverage Action Defendants; (d) counsel to TCC; and (e) any party that has requested electronic notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1.   The Moving Insurers submit that, under the circumstances, no other further notice is required.  A copy of this Motion is available on the website maintained by the Debtor's Claims and Noticing Agent, Epiq, at <u>https://dm.epiq11.com/case/ltl</u>.

[remainder of page intentionally omitted]

## IX.  CONCLUSION

For the reasons stated herein, the Moving Insurers ask this Court to enter an order (i) confirming that the automatic stay under Bankruptcy Code section 362(a) does not apply to the New Jersey Coverage Action or, in the alternative, (ii) granting relief from the stay pursuant to section 362(d) of the Bankruptcy Code to allow (a) the New Jersey Coverage Action to proceed or, alternatively, (b) the Moving Insurers to continue seeking discovery on the Middlesex and Allocation Issues and to file and litigate, and the New Jersey Superior Court to adjudicate and enter judgment on, the Summary Judgment Motion, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: February 15, 2022

*/s/ Louis A. Modugno*
Louis A. Modugno
**TRIF & MODUGNO LLC**
89 Headquarters Plaza North Tower, Suite 1201
Morristown, New Jersey 07960
Email: lmodugno@tm-firm.com

Steven J. Reisman (*pro hac vice pending*)
Shaya Rochester (pro hac vice)
Terence P. Ross (*pro hac vice pending*)
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Email: sreisman@katten.com
        srochester@katten.com
        tross@katten.com

Eileen McCabe (*pro hac vice*)
Stephen Roberts (*pro hac vice*)
**MENDES & MOUNT LLP**
750 Seventh Avenue
New York, New York 10019
Email: eileen.mccabe@mendes.com
        stephen.roberts@mendes.com

*Co-Counsel to the Moving Insurers*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1(b)**

**TRIF & MODUGNO LLC**
Louis Modugno
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
lmodugno@tm-firm.com

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman (*pro hac vice pending*)
Shaya Rochester (*admitted pro hac vice*)
Terence P. Ross (*pro hac vice pending*)
575 Madison Avenue
New York, New York 10022
sreisman@katten.com
srochester@katten.com
tross@katten.com

**MENDES & MOUNT LLP**
Eileen McCabe (*admitted pro hac vice*)
Stephen Roberts (*admitted pro hac vice*)
750 Seventh Avenue
New York, New York 10019
eileen.mccabe@mendes.com
stephen.roberts@mendes.com

*Attorneys for the New Jersey Coverage Action Plaintiff-Insurers*[1]

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>                       Debtor.[2] | Chapter 11<br><br>Case No. 21-30589 (MBK) |

---

[1] Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company ("North River"); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company);N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekaas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen) (collectively, the "Moving Insurers").

152007936

1

**ORDER GRANTING NEW JERSEY COVERAGE ACTION PLAINTIFF-INSURERS'
MOTION TO ALLOW NEW JERSEY COVERAGE ACTION TO PROCEED**

The relief set forth on the following pages, numbered three (3) through four (4), is hereby

**ORDERED.**

---

[2] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George
Street, New Brunswick, New Jersey 08933.

(Page 3)
Debtor:  LTL Management LLC
Case No. 21-30589-MBK
Caption:  Order Granting New Jersey Coverage Action Plaintiff-Insurers' Motion to Allow New Jersey Coverage Action to Proceed

Upon consideration of *New Jersey Coverage Action Plaintiff-Insurers' Motion for an Order (I) Confirming that the Automatic Stay Does Not Apply to the New Jersey Coverage Action or, in the Alternative, (II) Granting Relief from the Automatic Stay to Allow the New Jersey Coverage Action to Proceed* (the "<u>Motion</u>"),[3] filed on February 15, 2022, pursuant to 11 U.S.C. § 362, Federal Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1, and the supporting *Declaration of Shaya Rochester in Support of New Jersey Coverage Action Plaintiff-Insurers' Motion for an Order (I) Confirming that the Automatic Stay Does Not Apply to the New Jersey Coverage Action or, in the Alternative, (II) Granting Relief from the Automatic Stay to Allow the New Jersey Coverage Action to Proceed* and its attached exhibits; and this Court having jurisdiction over the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the relief requested in the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided under the circumstances; and the Court having determined that there is good and sufficient cause for the relief granted in this Order;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

---

[3] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

(Page 4)
Debtor:  LTL Management LLC
Case No. 21-30589-MBK
Caption:  Order Granting New Jersey Coverage Action Plaintiff-Insurers' Motion to Allow New Jersey Coverage Action to Proceed

2.     The automatic stay imposed by 11 U.S.C. § 362(a) does not apply to the action styled *Atlanta International Insurance Company, et al. v. Johnson & Johnson, et al.*, Case No. MID-L-003563-19, currently pending in the Superior Court of New Jersey (the "New Jersey Coverage Action"), including without limitation, all claims, cross-claims and counter-claims asserted therein; provided, that to the extent the automatic stay does apply to the New Jersey Coverage Action, relief from the stay is hereby granted for cause under 11 U.S.C. § 362(d) of the Bankruptcy Code to allow the New Jersey Coverage Action to proceed, including without limitation, all claims, cross-claims and counter-claims asserted therein.

3.     All of the factors for mandatory abstention under 28 U.S.C. § 1334(c)(2) have been established.

4.     The Moving Insurers are authorized to take any action necessary to effectuate this Order.

5.     The fourteen-day stay of the effectiveness of this Order pursuant to Bankruptcy Rule 4001(a)(3) is hereby waived and this Order shall be effective immediately upon its entry.

6.     This Court shall retain jurisdiction with respect to the implementation and interpretation of this Order.