**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**Order Filed on February 16, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In Re: <br><br> LTL Management LLC | Case No.: 21-30589 <br><br> Adv. No.: <br><br> Hearing Date: <br><br> Judge: Michael B. Kaplan |

**STIPULATION AND ORDER REGARDING DISCOVERY PLAN AND ESI PROTOCOL**

The relief set forth on the following page is hereby **ORDERED**.

**DATED: February 16, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No. 21-30589-MBK |
| Debtor. | Judge: Michael B. Kaplan |

**STIPULATION AND ORDER REGARDING**
**DISCOVERY PLAN AND ESI PROTOCOL**

The Debtor LTL Management LLC (the "Debtor"), the Official Committee of Talc

Claimants I ("Committee I"), the Official Committee of Talc Claimants II ("Committee II"),

Arnold & Itkin LLP ("A&I"), and Aylstock, Witkin, Kreis & Overholtz ("AWKO" and together

with the Debtor, Committee I, Committee II, and A&I, the "Parties"), through their respective

counsel of record, hereby stipulate to the following plan governing discovery and protocol for the

exchange of electronically stored information ("ESI"), in connection with this chapter 11 case,

subject to approval by the Court.

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

1. **General Terms**.  The following Agreed Discovery Plan and ESI Protocol ("Discovery Plan") governs discovery, including discovery of hard-copy documents and ESI, in the chapter 11 case, unless this Discovery Plan is modified by the Parties or the Court.  The Parties recognize that this Discovery Plan governs discovery in the chapter 11 case generally, and that the Parties will meet and confer about specific aspects of the Discovery Plan to address the circumstances of particular matters within the chapter 11 case that warrant exceptions to this Discovery Plan.  Such exceptions shall be agreed to in writing or otherwise raised with the Court.  Throughout this Discovery Plan, the Party issuing a request for production shall be referred to as the "Requesting Party" and the Party responding to a request for production shall be referred to as the "Responding Party."

   1.1. **Intent and Scope of Discovery Plan**.  If any provisions of this Discovery Plan conflict with the Parties' actual obligations to produce ESI under applicable rules, this Discovery Plan shall be controlling.  To the extent that the Parties have additional obligations or rights not addressed in this Discovery Plan, the applicable rule or order of the Court shall be controlling.  Nothing in this Order is intended to broaden the scope of any Party's obligations under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the applicable local rules, any order of the Court, or applicable case law.  The Parties will cooperate in good faith through the discovery process in this action and recognize that discovery of ESI is governed by the proportionality standard set forth in Federal Rule of Civil Procedure 26.

   1.2. **Electronic Documents and Data**.  The Parties will cooperate with each other to address good-faith questions regarding what documents are responsive to specific discovery requests.

1.3. **Reservation of Rights**.  The Parties reserve all rights under the Federal Rules of Civil

Procedure, the Federal Rules of Bankruptcy Procedure, the applicable local rules, any

order of the Court, or applicable case law for matters relating to the production of

documents that are not specifically addressed in this Discovery Plan.  The Parties will

meet and confer regarding the production of any category or type of documents not

specifically addressed in this Discovery Plan.

2. **Search and Identification of ESI**.  For each matter for which discovery is sought, the

Parties shall meet and confer to develop reasonable search filters.  The Parties shall use

reasonable efforts to complete this meet-and-confer process as quickly as reasonably

possible, and shall endeavor to complete it within five (5) business days of service of the

discovery requests for the particular matter at issue.  The Parties shall document in a separate

writing the agreements that are reached with respect to the search filters to be applied for the

specific matter for which discovery is sought.  A Responding Party will begin rolling

productions of responsive ESI after the Parties complete negotiations regarding reasonable

search filters.  The Parties will not wait until completing the review of all documents to start

producing documents.

2.1. **Identification of Custodians and Shared Repositories**.  In connection with each

matter for which discovery is sought, the parties will meet and confer about the

individuals whose files are to be searched (each, a "Custodian").  In addition, the Parties

will meet and confer about the sources of non-custodial data that the Parties will search

(*e.g.*, shared repositories, shared databases, and shared drives (each a "Shared

Repository")).  The Requesting Party may identify Custodians and Shared Repositories

that it believes in good faith will likely have discoverable, responsive, non-duplicative

documents or communications.  The Responding Party may in good faith challenge any

Custodians or Shared Repositories identified by the Requesting Party.  The Parties will

negotiate in good faith to reach agreement as to the number and identity of Custodians

and Shared Repositories as soon as reasonably possible.

2.2. **Search Terms**.  In connection with each matter for which discovery is sought, the

parties will meet and confer about reasonable search terms to be applied to the discovery

requests.  The Requesting Party may identify search terms that it believes in good faith

will yield ESI that is responsive to the discovery requests.  The Responding Party will

test the proposed search terms and report back to the Requesting Party information about

the reasonableness of the proposed search terms, including but not limited to the number

of hits each term yielded and the results of sampling the documents that hit on the

proposed search terms.  The Parties will meet and confer in good faith to identify

reasonable and appropriate search terms.

2.3. **Known Responsive Materials**.  The Parties understand that known responsive material

must be produced.  ESI that is known to the Parties, or their Counsel, to be non-

privileged and responsive to a discovery request shall be produced without regard to

whether it was responsive to a search term, of high "relevance" by a TAR text

classification algorithm, or otherwise flagged as potentially responsive by another search

technique, unless Counsel specifically identifies the documents as being withheld

pursuant to a specific objection or Privilege.

2.4. **Discrete Document Collections**.  In connection with each matter for which discovery is

sought, the parties will meet and confer about portions of Parties' documents that

represent discrete document collections, such as substantially relevant folders of ESI

4

specifically segregated by a Party, before or after the commencement of the case, that are substantially relevant to the claims in this case ("Discrete Document Collections"). During the meet-and-confer process, if Discrete Document Collections are identified, the Parties agree that they will be reviewed for responsiveness (subject to appropriate claims of privilege) without regard to whether a given document in the collection is responsive to a search term, of high "relevance" by a TAR text classification algorithm, or otherwise flagged as potentially responsive by another search technique.

2.5. **Additional Custodians and Shared Repositories**.  After the Parties agree on the Custodians and Shared Repositories to be searched, the Parties reserve the right to request searches of additional Custodians and Shared Repositories if it becomes apparent that other Custodians or Shared Repositories likely have non-duplicative responsive documents.  The Parties shall meet and confer regarding such requests prior to any search or production related thereto.  If the Parties are unable to resolve any dispute regarding Custodian or Shared Repository designation, whether concerning number or identity, the Requesting Party may seek relief from the Court.

2.6. **Not Reasonably Accessible ESI**.  The Parties agree that they will work cooperatively on determining what ESI is reasonably accessible and what is not and agree to consider in good faith reasonable requests for information on ESI management in that effort. Electronic documents of limited accessibility may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.  For purposes of this paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

- Data stored in a backup system for the purpose of system recovery or information recovery, including, but not limited to:  disaster recovery

> backup tapes and media; continuity of operations systems; and data or
> system mirrors or shadows.

- Voicemail recordings.

- Mobile devices and ESI or other data stored on mobile devices, including
  smart phones or tablets, not used for business purposes.[2]

- Legacy Data (*e.g.*, data stored on floppy discs).

- Deleted, erased, or overwritten computer files, whether fragmented or
  whole, which were deleted in the regular course of business.

- Data stored in Random Access Memory ("RAM"), cache memory, or in
  temporary or cache files, including internet history, web browser cache,
  and cookie files, wherever located.

- Encrypted data/password protected files, where the key or password
  cannot be ascertained absent extraordinary efforts.

- Data stored on printers, photocopiers, scanners, and fax machines.

- Data stored as server, system, or network logs.

2.7. **Use of Other Review Analytics**.  The Parties may use other reasonable review analytics

or tools, including but not limited to de-duplication, e-mail threading, inclusiveness-only

review and production, and technology-assisted review to streamline the review of ESI,

to the extent that those review analytics and tools are consistent with other provisions in

the Discovery Plan, including provisions relating to the Form of Production (paragraph 3

below).  Those review and analytics tools used by any Party for culling ESI shall be

disclosed to the other Party.

2.8. **Application of Search Methodology**.  The Parties shall meet and confer to develop a

search methodology to be applied to identify and limit the volume of custodial ESI to be

---

[2] For the avoidance of doubt, "mobile devices" does not include laptop computers.  The exclusion of mobile devices not used for business purposes is included in paragraph 2.2 in accordance with the Chief Judge's December 15, 2021 ruling, over the objection of the Official Committee of Talc Claimants' objections regarding the same.

reviewed for responsiveness.  Within five (5) business days after a Party serves a request for production of documents, the Requesting Party shall provide proposed search terms to apply to their search of Custodian files and Shared Repositories as appropriate and attempt to reach agreement as to those search terms.  In the event the identified search terms return an unmanageable volume of ESI for review, the Responding Party reserves the right to propose modifications to the proposed terms and will meet and confer with the Requesting Party regarding such a change.  As specified in this Discovery Plan, the Parties may use certain other search methods and analytics tools to manage the volume of ESI for review.

2.9. **Encrypted Files**.  The Parties shall produce a report of the volume of identified password-protected or encrypted documents contained in a production.  If a password-protected or encrypted document is identified on this provided list or is found during review, Parties will meet and confer to determine whether there are reasonable steps that can be taken to produce the password and/or cure the encryption associated with the document.

2.10.    **De-NISTing**.  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

2.11.    **Proprietary File Types**.  The Parties agree to meet and confer to discuss any operating system or application file information needed to review and access proprietary file types that are not accessible on commercially available operating systems.

2.12.    **Date Range**.  The Parties agree that the search of ESI should be limited to the date range during which relevant information was most likely created or received.  For

the purposes of this Discovery Plan, the date range shall be the same as the date range

agreed to by the Parties in response to discovery requests.

2.13.    **Preservation Obligations**.  Nothing in this Discovery Plan shall affect the

Parties' respective preservation obligations imposed by rule or law.

3.  **Form of Production**.  The Parties agree to produce responsive, non-privileged ESI in the

manner set out in this Discovery Plan.  The Parties agree to take reasonable steps not to

degrade the searchability or legibility of ESI as part of the document review and production

processes.  Additionally, if responsive ESI warrants a format different than those set out

below, the Parties will meet and confer in an effort to agree to a mutually acceptable format.

3.1.  **Format for ESI**.  The Parties shall produce responsive, non-privileged ESI in the format

set out in Exhibit A hereto unless otherwise agreed in writing or ordered by the Court.

3.2.  **Format for Electronically Scanned Hard Copies**.  To the extent practicable, the

Parties shall produce electronically scanned hard-copy documents in the applicable

format set out in Exhibit A unless otherwise agreed in writing or ordered by the Court.

In particular, the Parties shall format such documents with optical character recognition,

or OCR, as described in Exhibit A and include the metadata fields identified in Exhibit

A where that metadata is available.

3.3.  **Family Production**.  The Parties shall produce documents and e-mail communications

as family complete as is reasonably practicable.  The Parties shall not take steps to

dissociate attachments to e-mails or other documents from parent e-mails or documents

even if the attachments are exact duplicates of other documents in the production.

Parent documents and any attachments shall be assigned sequential Bates numbers.  If a

responsive, non-privileged e-mail or document has a privileged attachment, a Party may

replace the attachment with a Bates-numbered slip-sheet indicating that the attachment

was withheld on privilege grounds or may redact the privileged material.  Documents

shall not be withheld or redacted for non-responsiveness if the document or its family

contains responsive information.

3.4. **E-mail Threading**.  The Parties agree that e-mail threading and inclusiveness-only

review and production may be applied to production documents such that only the most

inclusive version of any responsive, non-privileged e-mail chain is produced, provided

that the e-mail-threading process is performed by an e-discovery vendor in a manner

consistent with standard practices in the industry and that all independent responsive,

non-privileged branches of the chain are produced.  If e-mail thread suppression is used,

it will be populated in the EMAIL THREAD ID metadata field.  Further, the use of e-

mail thread suppression will under no circumstances eliminate the ability of the

Receiving Party to identify every custodian who had a copy of the produced document

or e-mail.

3.5. **Global Deduplication**.  The Parties agree that automated document de-duplication may

be applied across ESI identified for review and production such that only one copy of

any responsive, non-privileged document is produced, provided that the de-duplication

process is performed by an e-discovery vendor in a manner consistent with standard

practices in the industry.  Further, de-duplication shall be performed only at the

document family level such that attachments are not de-duplicated against identical

stand-alone versions of such document and vice versa.

3.5.1.  **Related Metadata**.  If a Party opts to apply document de-duplication, that Party

shall include in its production "Other Custodian" metadata or some other field, to

the extent practicable, indicating each Custodian who appears from the available

ESI to have maintained a copy of the produced document in his or her files (where

such copy was removed from production through the de-duplication process).

    3.5.2.   **Metadata Preservation**.  The Parties shall preserve all available metadata fields

      for all ESI collected and searched pursuant to this Discovery Plan.

3.6. **Documents Previously Produced**.  Documents produced by a Party in this Chapter 11

proceeding before this Discovery Plan was finalized can be reproduced by a Party as is

without adhering to the production protocol in this Discovery Plan.  The Parties agree to

meet and confer regarding reasonable requests for additional information related to any

documents produced before entry of this Discovery Plan.

4. **Privilege Logs**.  A Responding Party shall use reasonable measures, consistent with

applicable law, to include information in their respective privilege logs sufficient to permit

the Requesting Party to assess any privilege claims.  Privilege Logs will be produced on a

rolling basis along with the rolling production of responsive documents.  The Parties agree to

the production of Privilege Logs that correspond to the rolling production of volumes and to

not wait to produce a privilege log until the end of the discovery review.  The Parties shall

meet and confer to discuss the manner in which documents withheld on the basis of privilege

will be identified for each particular matter for which discovery is requested and shall raise

any disputes as to the form of privilege log with the Court.

4.1. **Categorical Privilege Logging**.  The Parties shall meet and confer to discuss logging

privileged documents categorically.  Absent agreement, the Parties reserve their rights to

seek relief from the Court.

4.2. **Privilege Log Format**.  Unless (i) the Court orders otherwise or (ii) the Parties agree to do categorical privilege logs or otherwise agree in writing, the Parties shall provide their respective privilege logs consistent with Exhibit B hereto, to the extent possible.

4.3. **Post-Filing Documents**.  The Parties are not required to log any privileged documents, communications, information, trial preparation material, or work product generated after the filing of the petition initiating the case (*i.e.*, October 14, 2021).

4.4. **Privilege Redactions**.  Where requested documents contain responsive information together with privileged or protected information and the privileged or protected information can be redacted by the Responding Party, while preserving for production the responsive information, the Responding Party shall apply such redactions and produce the requested documents.  The word "Redacted", followed by the reason for the redaction shall appear over the redacted portion or portions of such documents.  A metadata field shall indicate that the document contains redactions and the basis for the redaction (*e.g.*, "A/C Privilege").

4.5. **Inadvertent Disclosure**.  Pursuant to Federal Rule of Evidence 502(d), inadvertent disclosure or production of information subject to the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest doctrine or any other privilege or immunity from discovery or disclosure shall not constitute a waiver of, or an estoppel as to any claim of, such privilege, immunity, or protection ("Inadvertent Production").  Any Requesting Party, upon learning that such Inadvertent Production is subject to a claim of privilege or protection, through a communication from the Responding Party, shall destroy or return to the Responding Party such Inadvertent Production no later than ten (10) days from either learning of the Inadvertent Production or receiving a written

request from the Responding party for the return or destruction of such Inadvertent

Production; *provided, however*, that the Requesting Party may have an auto-archived or

otherwise backed-up copy pursuant to its archiving policy and is not otherwise required

to initiate any additional steps to destroy or otherwise compromise its auto-archived

files.  Nothing in this paragraph shall affect any Party's right to file a motion to compel

the production of the Inadvertent Production on the basis that the Inadvertent Production

is not subject to the attorney-client privilege, the work-product doctrine, the joint-

defense or common-interest doctrine or any other privilege or immunity from discovery

or disclosure.  In the event that the Receiving Party determines to challenge the basis for

asserting an Inadvertent Production, the ten-day destruction requirement is stayed until

such a time as the issue can be ruled on by the Court.

4.6. **Reservation of Rights**.  The Parties reserve their rights to notify another Party of an

Inadvertent Production that occurred prior to the entry of this Discovery Plan and to

challenge the basis for asserting such an Inadvertent Production, pursuant to the

procedure set forth in paragraph 4.5 above.

5. **Other Redacted Information**.  Where requested documents contain responsive information

together with other non-privileged information that should be redacted (such as personally

identifying information ("PII"), confidential information, or non-responsive information), the

Responding Party shall apply appropriate redactions and produce the requested documents.

The word "Redacted", followed by the reason for the redaction (*e.g.*, PII, confidentiality,

non-responsive, per agreement of the parties) shall appear over the redacted portion or

portions of such documents.  A metadata field shall indicate that the document contains

redactions and the basis for the redaction.

12

6. **Scope of Discovery**.  Nothing in this Discovery Plan constitutes an agreement regarding the appropriate substantive scope of discovery, the responsiveness of any document or category thereof, or the relevance or admissibility of any document or category thereof.  The Parties reserve all objections as to discoverability, relevance, authenticity, use, and admissibility.

7. **Resolution of Disputes**.  The Parties agree to meet and confer in good faith regarding matters related to the production of ESI set forth in this Discovery Plan, the production of ESI not set forth in this Discovery Plan, and the Parties' obligations, if any, in respect of both.  If a Responding Party determines that it cannot comply with any material aspect of this Discovery Plan, such Party shall promptly inform the Requesting Party why compliance is impracticable.  If the Parties are unable to resolve a dispute concerning interpretation of or compliance with this Discovery Plan or the production of ESI, whether or not pursuant to this Discovery Plan, the Parties shall submit the dispute to the Court for adjudication, provided that the Parties have previously met and conferred regarding the dispute.  Nothing herein shall affect the Parties' respective burdens of proof or persuasion in connection with any motion or dispute submitted for resolution by the Court.

8. **Non-English Documents**.  To the extent that Documents are produced that contain languages other than English, in whole or in part, the Responding Party shall produce each such Document in the original language or languages in which it was written when collected. The Responding Party has no obligation to create a translation of the Documents or any portion thereof but shall provide any translation of the Document or any portion thereof that already exists or that the Responding Party elects to create through machine translation prior to the production of the Document.

9.  **No Waiver**.  Nothing in this Discovery Plan, including any meet-and-confer obligation specified, constitutes a waiver of any privilege or protection available by law, including either Party's attorney-client privilege or the protection afforded to work product and trial preparation materials.

10. **Modifications**.  The Parties may, by agreement, modify any provision in this Discovery Plan.  Further, if the Parties are unable to agree regarding a proposed modification, the Party requesting the modification may seek relief from the Court.

## Exhibit A

The Parties shall produce responsive, non-privileged ESI in the following format unless agreed otherwise or pursuant to an order of Court:

1. ESI should be produced in Concordance, Opticon, or universal format.

2. **Native Format**. All spreadsheet files (*e.g.*, Microsoft Excel, Corel Quattro, etc.), media files (*e.g.*, .wav, .mp3, .aiff, .avi, .mov, .mp4), database files, and presentation (*e.g.*, PowerPoint) shall be produced as native files with TIFF placeholder images. In addition, all word processing files (*e.g.*, Microsoft Word) that have track changes or comments will be produced in native format. All word processing files that do not have track changes or comments will be produced according to paragraph 4 of Exhibit A. The Parties will provide native files, named according to ProdBegDoc, in a separate folder and provide the path to the native file in the DocLink field of the .DAT file. Documents produced in native file format shall be produced in the manner such files were maintained electronically in the ordinary course of business, unless the native file is redacted for an authorized purpose. A placeholder TIFF shall be produced indicating the Bates number of the native file and confidentiality designation, if applicable. In the event any document produced in native format is to be used as an exhibit at deposition, trial or otherwise, the Parties may request that the Party using such exhibit provide the MD5 programmatic hash value of the underlying electronic file from which the exhibit is derived to be provided to all Parties, and such information should be provided promptly.

2.1. **Request for Natives**. The Parties reserve the right to request native files for individual ESI documents produced in TIFF format.

3. **Redactions to Native Format**.  Excel and spreadsheet files will be produced in Native Format with redactions in place using a native file redaction tool.  Any redactions (*e.g.*, privacy, privilege, confidentiality, per agreement of the parties) shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and the REDACTION metadata field shall indicate that the document contains redactions and the basis for the redaction (*e.g.*, "A/C Privilege"). To the extent redactions are necessary in a non-spreadsheet document to be produced in native form, and the ability to remove such redactions cannot practicably be done in native form, the document may be converted to TIFF format, or some comparable image file type, for redaction.  To the extent that such conversion erodes the legibility or significant functionality of a document, the Parties agree to meet and confer in good faith to determine how such document can be produced without those limitations, to the extent practicable, and while still protecting the redacted information.  If a document contains redactions, the producing Party may withhold from the redacted document Load File only the metadata directly associated with the redactions and shall identify all such redactions on the privilege log and further indicate the nature of the privilege asserted.  Where a responsive and non-privileged document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

3.1. All native files that require redactions shall first be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application, all of which shall be evident in the generated TIFF image(s).  Where reasonably possible, any occurrence of

2

date/time auto field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (*e.g.*, date, subject line, etc.) should not be redacted unless the redaction is otherwise authorized.  The production of a document in a redacted form does not affect Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  Parties shall honor reasonable requests to produce redacted documents in other formats where the TIFF image is not reasonably usable.  Redacted versions of documents that contain color in their unredacted form shall be produced in color in JPG format if a Party deems color necessary to understand the document.

4.   **TIFFs**.  Bates-branded, black and white, Group 4, single page TIFF files at 300 dpi, named according to sequential Bates number will be produced for all ESI documents except for those found in Exhibit A Sec. 2. S ingle-page TIFF files will be delivered in unique sequentially numbered folders (*i.e.*, 001, 002, 003) and each folder shall not consist of more than 2,000 images. No image file name shall contain spaces or underscore symbols.  If a document was not produced in color and a Party deems color necessary to understand the document, they may request a color image or native form of that document.  JPG format may be used for pages that require production of color images.  All image files should cross reference to both the log file for Opticon image base (.OPT) and Concordance delimited text file (.DAT).  If a document is more than one page, the unitization of the document and any attachments and/or affixed note shall be maintained as it existed in the original when creating the image file.

5. **TIFF Reference File**. A log file for Opticon image base (.OPT) that lays out the document unitization of each discrete document will be produced.

6. **Embedded Files**. Embedded files, except for images or files embedded in emails or in natively produced files, are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. Where an embedded file is privileged, the parent document shall be produced in TIFF format and not native.

7. **Hard Copy Documents**. Hard-copy or paper documents should be converted to Group IV, single-page TIFF format image files. Parties shall use reasonable efforts to ensure that hard copy paper documents are logically unitized prior to production. Therefore, when scanning or producing paper documents, Parties shall use reasonable efforts to ensure that distinct documents are not merged into a single file or database record, and distinct documents shall not be split into multiple files or database records.

   7.1. **Grouped Hard Copy Documents**. Where a hard-copy document, or a group of documents – such as a folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as a first document in the unitized grouping of the documents. Documents found in such groupings shall be produced with a metadata indicator associating them as family members.

8. **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]") rather than the values for such fields existing at the time the file is processed.

9. **Extracted Text Files**.  For each item of ESI, and any hard-copy or paper document that has been converted to TIFF image file, document level TXT files should be provided in a separate folder and should have file names that are identical to the first TIFF image file of the corresponding images for a document.  To the extent practicable, text from native files should be extracted directly from the native file, except that, where redaction is necessary for a document to be produced in native format, the text file corresponding to such document may be extracted from the OCR of the redacted image file (as opposed to from the native file).  Redactions shall be reflected in the multipage TXT file containing OCR for searching purposes.

10. **Unique IDs**.  Each TIFF image shall have a unique, sequential Bates number.  Each Native file shall have a unique, sequential Bates number applied to the TIFF placeholder indicating that the file has been produced in native format.

11. **Metadata**.  Where available, the Parties shall produce the following metadata fields for all ESI and scanned hard-copy or paper files produced, in an ASCII delimited text file (.DAT), using standard Concordance delimiters:

| Field Name | Field Description | Paper | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X | X |
| All Custodians | Name of all custodian(s) of email(s) or file(s) produced | X | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X | X |

| Field Name | Field Description | Paper | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|---|
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X | X |
| ParentID | Populated for all attachments and indicates the BegBates of the Parent document. | X | X | X |
| From | From field extracted from an email message | | X | |
| Author | Author field extracted from the metadata of a non-email document | | | X |
| To | To field or Recipient extracted from an email message | | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | | X | |
| EmailSubject | Subject line extracted from an email message | | X | |
| Filename | File name — Original name of file as appeared in original location | | | X |
| Title | Title field extracted from the metadata of a non-email document | | | X |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Rcvd, but not both) | | X | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Rcvd, but not both) | | X | |

6

| Field Name | Field Description | Paper | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|---|
| DateTimeCreated | Date and time the file/email was created (mm/dd/yyyy 00:00:00 AM/PM format) | | X | X |
| DateLastModified | The application recorded time on which the document was last modified | | | X |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Rcvd, but not both) | | X | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Rcvd, but not both) | | X | |
| DateTimeMod | Date and time the file/email was last saved (mm/dd/yyyy 00:00:00 AM/PM format) | | X | X |
| NativeLink | Relative path to any files produced in native format | | X | X |
| TextLink (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | X | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X | X |
| Confidentiality Designation (for natively produced documents only, if required) | Confidentiality Designation for natively produced documents | X | X | X |
| Redacted | "Yes," and "True" are both acceptable indicators that the document is redacted. Otherwise, blank. | X | X | X |

7

| Field Name | Field Description | Paper | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|---|
| Redacted Reason | Explanation for Redaction. Text | X | X | X |
| Email Thread ID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification Number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. | | X | |
| TimeZoneUsed | Time zone used to process data during document collection and processing. | | X | X |
| DocExt | File extension of the document. | X | X | X |
| Paper | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. | X | | |
| ImageCount | Total pages in documents | X | X | X |

| Field Name | Field Description | Paper | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|---|
| HasRevisions | "Yes," and "True" are both acceptable indicators that the document has revisions. Otherwise, blank. | | X | X |
| HasComments | "Yes," and "True" are both acceptable indicators that the document has comments. Otherwise, blank. | | X | X |
| HasHiddenText | "Yes," and "True" are both acceptable indicators that the document has hidden text. Otherwise, blank. | | X | X |
| HasHiddenslides | "Yes," and "True" are both acceptable indicators that the document has hidden slides. Otherwise, blank. | | | X |
| HasSpeakerNotes | "Yes," and "True" are both acceptable indicators that the document has speaker notes. Otherwise, blank. | | | X |
| HasHiddenRows | "Yes," and "True" are both acceptable indicators that the document has hidden rows. Otherwise, blank. | | | X |
| HasHiddenColums | "Yes," and "True" are both acceptable indicators that the document has hidden columns. Otherwise, blank. | | | X |

| Field Name | Field Description | Paper | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|---|
| HasHiddenWorksheets | "Yes," and "True" are both acceptable indicators that the document has hidden worksheets. Otherwise, blank. | | | X |
| HasVeryHiddenWorkSheets | "Yes," and "True" are both acceptable indicators that the document has very hidden worksheets. Otherwise, blank. | | | X |
| REPLACEMENT | "Replacement" indicates the image is a replacement for a previously produced image; otherwise, blank. | X | X | X |

**Exhibit B**

A Responding Party shall use reasonable measures, consistent with applicable law, to

include information in their respective privilege logs sufficient to permit the Requesting Party to

assess any privilege claims.  Consistent with this obligation, a Responding Party may provide the

following information, where available, for any document withheld on the grounds of privilege

or protection from disclosure and for any document produced with redactions, to the extent that

providing such information would not waive any privilege or protection.  For clarity, the third

column presents exemplar language simply for purposes of explaining the corresponding fields.

It is not mandatory that the Parties use the exact language in the privilege logs:

| Preferred Field Name | Description | Example |
|---|---|---|
| Parent/Child | Identifying whether a document is the parent document or child document in a family | Parent, Child |
| ProdBegDoc | Start Bates number for redacted documents. | ABC0000 |
| EndAtt ID or ProdEndAtt | End identifier value of last attachment. Bates number for redacted documents. | ABC0503 |
| DocType or File Extension | The file type determined by the file signature (Excel, Word, etc.). | Microsoft Office Word  or .doc |
| Author/From | Who drafted or sent the document or message, as appropriate. | Doe, Jane |
| TO | Email TO recipients. Or those whose received the document, as appropriate. | Mary Smith; Tjones |
| FROM | Email sender (author). | Doe, John |
| CC | Email CC recipients. | Some User |
| BCC | Email BCC recipients. | Johnson, M. |
| Date | The date and time the file was created, or if an email the date and time the email was received by the custodian. | 4/1/2003 8:12:32 AM |
| EmailSubject | Subject line extracted from an email message.  May be | Re: Meeting Minutes |

|  | withheld or redacted to protect information protected from disclosure. |  |
|---|---|---|
| Filename | File name — Original name of file as appeared in original location.  May be withheld or redacted to protect information protected from disclosure. | Meeting Minutes |
| Custodian | The Custodian associated with the item. | Doe, John |
| Other Custodians | All custodians who retained a duplicative copy of the file in their ESI files, to the extent available. | Doe, John; Doe, Jane; Smith, Mary |
| Redacted or Withheld | Identifying whether a document was withheld in its entirety or produced with redactions. | Produced with Redactions Or Withheld Entirely |
| Privilege / Protection Type | Basis for withholding or redacting document. | Attorney-Client Privilege, Trial Preparation Material |
| Privilege / Protection Description | Brief explanation of basis for withholding or redacting document with enough information for Requesting Party to assess claimed basis. | E-mail communication reflecting legal advice provided by in-house counsel on intellectual property matter. |

2

**AGREED AND CONSENTED TO BY**:


*/s/ Mark W. Rasmussen*
JONES DAY
Gregory M. Gordon
Dan B. Prieto
Amanda Rush
Mark Rasmussen
2727 North Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
mrasmussen@jonesday.com

Brad B. Erens (IL Bar No. 06206864)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
E-mail: bberens@jonesday.com

James M. Jones (NY Bar. No. 5522115)
JONES DAY
250 Vesey Street
New York, NY  10281-1047
Telephone: (212) 326-3939
Facsimile: (412) 394-7959
jmjones@jonesday.com

-and-

Paul R. DeFilippo, Esq.
Brad J. Axelrod, Esq.
James N. Lawlor, Esq.
Lyndon M. Tretter, Esq.
Joseph F. Pacelli, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300

*/s/ Jeffrey L. Jonas*
BROWN RUDNICK LLP
David J. Molton, Esq.
Robert J. Stark, Esq.
Jeffrey L. Jonas, Esq.
Michael Winograd, Esq.
Danielle A. D'Aquila, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
dd'aquila@brownrudnick.com
Seven Times Square
New York, NY  10036
Tel: (212) 209-4800
Fax: (212) 209-4801

-and-

Sunni P. Beville, Esq.
sbeville@brownrudnick.com
One Financial Center
Boston, MA  02111
Tel: (617) 856-8200
Fax: (617) 856-8201

-and-

PARKINS LEE & RUBIO LLP
Leonard M. Parkins, Esq.
Charles M. Rubio, Esq.
lparkins@parkinslee.com
crubio@parkinslee.com
Pennzoil Place
700 Milan St., Suite 1300
Houston, TX 77002
Tel: (713) 715-1666

-and-

OTTERBOURG PC
Melanie L. Cyganowski, Esq.
Adam C. Silverstein, Esq.

Fax: (212) 382-0050
pdefilippo@wmd-law.com
baxelrod@wmd-law.com
jlawlor@wmd-law.com
ltretter@wmd-law.com
jpacelli@wmd-law.com

**COUNSEL FOR THE DEBTOR**


*/s/ Katherine E. Charonko*
BAILEY GLASSER LLP
Brian A. Glasser, Esq.
Thomas B. Bennett, Esq.
Katherine E. Charonko, Esq. (pro hac pending)
bglasser@baileyglasser.com
tbennett@baileyglasser.com
kcharonko@baileyglasser.com
105 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103

-and-

COOLEY LLP
Cullen D. Speckhart (pro hac vice pending)
Michael Klein (pro hac vice pending)
Erica J. Richards (pro hac vice to be filed)
Lauren A. Reichardt (pro hac vice to be filed)
Evan M. Lazerowitz
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Fax: (212) 479-6275
cspeckhart@cooley.com
mklein@cooley.com
erichards@cooley.com
lreichardt@cooley.com
elazerowitz@cooley.com

-and-

MASSEY & GAIL LLP
Jonathan S. Massey

Jennifer S. Feeney, Esq.
mcyganowski@otterbourg.com
asilverstein@otterbourg.com
jfeeney@otterbourg.com
230 Park Avenue
New York, NY 10169
Tel: (212) 905-3628
Fax: (212) 682-6104

-and-

GENOVA BURNS LLC
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
mbaker@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126

**PROPOSED CO-COUNSEL FOR THE
OFFICIAL COMMITTEE OF TALC
CLAIMANTS I**

*/s/ John A. Morris*
PACHULSKI STANG
    ZIEHL & JONES LLP
Laura Davis Jones
John A. Morris
Karen B. Dine
Peter J. Keane
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
ljones@pszjlaw.com
jmorris@pszjlaw.com
kdine@pszjlaw.com
pkeane@pszjlaw.com
Tel: (302) 652-4100
Fax: (302) 652-4400

**COUNSEL FOR ARNOLD & ITKIN LLP**

1000 Maine Avenue SW Suite 450
Washington, DC 20024
Main: 202-652-4511
Facsimile: 312-379-0467
Email: jmassey@masseygail.com

-and-

SHERMAN, SILVERSTEIN,
KOHL, ROSE & PODOLSKY, P.A.
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
amoldoff@shermansilverstein.com
rswitkes@shermansilverstein.com

**PROPOSED CO-COUNSEL FOR THE
OFFICIAL COMMITTEE OF TALC
CLAIMANTS II**

_/s/ Robert J. Pfister_____
KTBS Law LLP
Michael L. Tuchin, Esq.
Robert J. Pfister, Esq.
Samuel M. Kidder, Esq.
Nir Maoz, Esq.
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
mtuchin@ktbslaw.com
rpfister@ktbslaw.com
skidder@ktbslaw.com
nmaoz@ktbslaw.com
Tel: (310) 407-4000
Fax: (310) 407-9090

-and-

Offit Kurman, P.A.
Paul J. Winterhalter, Esq. (006961986)
99 Wood Avenue South, Suite 302
Iselin, NJ 08830
pwinterhalter@offitkurman.com
Tel: (267) 338-1370
Fax: (267) 338-1335

**COUNSEL FOR AYLSTOCK, WITKIN,
KREIS & OVERHOLTZ, PLLC**

This Order has been signed electronically.
The judge's signature and court's seal appear
at the top of the Order.

United States Bankruptcy Court