

March 7, 2022

Cullen D. Speckhart
T: +1 202 776 2052
cspeckhart@cooley.com

The Honorable Michael B. Kaplan
United States Bankruptcy Court, District of New Jersey
Clarkson S. Fisher U.S. Courthouse
402 East State Street, Courtroom #8
Trenton, New Jersey 08608

Dear Judge Kaplan:

We write on behalf of the Official Committee of Talc Claimants II ("TCC II") pursuant to the Amended Case Management Order Setting Selection Protocol for Future Talc Claims Representative ("FTCR Protocol Order") [Docket No. 1135].

Pursuant to the FTCR Protocol Order, TCC II sought discovery of each of the FTCR candidates nominated by the Debtor and the Court in order to seek information related to the candidates' experience, qualifications, and disinterestedness (as the term "disinterested" is defined under 11 U.S.C. § 101(14)). As the Court is aware, the discovery process set forth in the FTCR Protocol Order has now expired.

For the reasons stated below, TCC II respectfully moves the Court for the appointment of a separate FTCR to represent future mesothelioma claims. TCC II supports both Ms. Randi Ellis and Professor Eric D. Green as FTCRs in this case, either of whom would be acceptable to TCC II to represent future mesothelioma claims.

TCC II believes that the interests of future claimants would be best served if the Court appoints a separate FTCR dedicated to the representation of future mesothelioma claimants. Given TCC II's upcoming dissolution and reversion to the prior committee structure, TCC II anticipates that this case is likely to proceed with a single, unitary creditors' committee charged with representing the interests of all current talc claimants.[1] Under these circumstances in particular, TCC II and its members believe that the appointment of a separate FTCR, dedicated to future mesothelioma claimants, would serve as an important counter-weight to a unitary creditors' committee and would enhance the overall fairness of the process.

The appointment of future claims representatives serves to protect important due process interests in this highly unusual setting where debtor and its affiliates seek to bind future talc claimants whose identities are unknown, whose diseases have not yet manifested, and who therefore have no voice of their own in these proceedings. *E.g. In re Combustion Eng'g, Inc.,* 391 F.3d 190, 234 n.45, 245 (3d Cir. 2004), as amended (Feb. 23, 2005); H.R. REP. 103-835, 40, 1994 U.S.C.C.A.N. 3340, 3349 (noting the concern in fashioning 11 U.S.C. 524(g) "that full consideration be accorded to the interests of future claimants, who, by definition, do not have their own voice"). The Third Circuit has emphasized that adequate representation of future claimants is fundamental to any scheme for "resolution of future asbestos liability, under bankruptcy or otherwise," holding that "future claimants *must be adequately represented* throughout the process." *Id.* at 245 (emphasis added).

In the context of 524(g), "adequate" representation of future claimants' interests requires the undivided loyalty of a fiduciary. *Combustion Engineering*, 391 F.3d at 237 (explaining that the court

---

[1] Consistent with this Court's order that TCC II should be preserved for purposes of the motion to dismiss and preliminary injunction hearing, TCC II and its constituents will seek to preserve the identity of this official committee for purposes of appeal from this Court's order denying the motion to dismiss.



March 7, 2022
Page Two

"appoint[s] a futures representative to act as a fiduciary for the interests of future claimants"); *In re Duro Dyne Nat'l Corp.*, 2019 WL 4745879, at *7–8 (D.N.J. Sept. 30, 2019) (holding that an FCR must be independent of any other party in interest and "able to act with undivided loyalty to demand holders").  It follows that divergent interests among an FCR's constituents can undermine the FCR's ability to fulfill its fiduciary duties and the fairness of the proceedings, including the due process interests of the future claimants.  These concerns over divergent interests are more acute in the case of an FCR than in the case of representation by a creditors' committee.  Current claimants have the right and the ability to appear on their own behalf, and are not forced to rely on a creditors' committee or other official committee for representation of their individual interests.  In contrast, future claimants are unidentified claimants reliant entirely on the representation of an FCR to ensure that their interests are heard and that their claims will be treated fairly.

Nor have courts required a disabling conflict of interest before they appoint separate representatives.  *See In re Amatex Corp.*, 755 F.2d 1034, 1043 n.8 (3d Cir. 1985) ("We leave to the bankruptcy judge's discretion whether future claimants may have interests that call for the appointment of more than one representative.").  Instead, they have exercised their discretion to appoint separate representatives to adequately represent divergent interests among future claimants.  For example, courts have appointed separate FCRs to represent future claimants injured by different types of toxic agents, *see In re Global Industrial Technologies, Inc.,* No. BR 02-21626-JKF, 2013 WL 587366, at *1, *45 (Bankr. W.D. Pa. Feb. 13, 2013), or future claimants injured in different ways by the same agent.  *See In re W.R. Grace & Co.*, 446 B.R. 96, 132 (Bankr. D. Del. 2011).

Here, the divergent interests of mesothelioma and ovarian cancer claimants likewise call for the appointment of separate FTCRs to protect the legal interest of future mesothelioma victims.  J&J itself recognizes the two categories of claims as distinct and its historical litigation strategies towards them have been markedly different.  *See* Docket No. 1158 ¶¶ 6-13 (and record material cited therein).  For instance, J&J has had a strategy of settling mesothelioma cases at a far higher rate than it has settled ovarian cancer cases.  Hr'g. Tr. Nov. 4, 2021 at 241:22-242:6 (LTL's Chief Legal Officer and former J&J product liability counsel John Kim conceding that J&J settles more mesothelioma than ovarian cancer cases.)  In 2020 and 2021 J&J settled approximately 1,000 talc-related mesothelioma claims—more than twice the number filed.  *Compare* Motion to Dismiss Hearing Ex. 161 (over 1,000 mesothelioma claims settled in 2020 and 2021) *with* LTL Information Br., Oct. 14, 2021 [Docket No. 3] (fewer than 500 mesothelioma claims filed in 2020 and 2021).  During the same period new ovarian cancer claims outpaced settled cases nearly four-fold.  *Compare* Motion to Dismiss Hearing Ex. 161 (5,738 ovarian cancer claims settled in 2020 and 2021) *with* LTL Informational Br. (approximately 22,856 ovarian cancer claims filed in 2020 and 2021).  J&J has continued to insist, in the context of this case, that asbestos simply does not cause ovarian cancer, but J&J does not dispute that asbestos causes mesothelioma.  *See, e.g*., Debtor's Informational Br., Docket No. 3 at 73-75.  J&J has had a different experience at trial in the two categories of cases, with serial losses in mesothelioma cases.  (*See* Expert Report of M. Diaz at 13-14.)  The average amount that J&J has paid to settle mesothelioma cases is substantially greater than the average amount of ovarian cancer settlements: $400,483 as compared to $91,780.  *See* Ex. 161.  In fact, in a global settlement of mesothelioma and ovarian cancer cases between J&J and the Lanier firm, J&J settled 60 mesothelioma cases for $1.2 million per case, as compared to only $100,000 per case for the ovarian cancer cases.  Motion to Dismiss Hearing Ex. 385.  The difference in settlement values is consistent with the different survival rates for mesothelioma and ovarian cancer patients.  Data published by the American Cancer Society show that the five year survival rate for malignant pleural mesothelioma is only 12%, while five year survival rates for the various forms of ovarian cancer range from 49% to 93%.[2]  And also consistent with J&J's differing treatment of the

---

[2]  *See* https://www.cancer.org/cancer/malignant-mesothelioma/detection-diagnosis-staging/survival-statistics.html; https://www.cancer.org/cancer/ovarian-cancer/detection-diagnosis-staging/survival-rates.html.



March 7, 2022
Page Three

two categories of claims, J&J and LTL in-house counsel John Kim emphasized that there are "only hundreds" of mesothelioma claims, and J&J agreed that these claims would "pass through" back into the tort system under J&J's proposed $4-5 billion settlement of all ovarian cancer claims in the *Imerys* bankruptcy. *See* Hr'g Tr. Feb. 16, 2022 at 36:17-37:3.

The disparities between *future* mesothelioma and ovarian cancer claims are still more stark than the differences between current claims. J&J' s settlement strategies have materially reduced the number of pending mesothelioma claims relative to pending ovarian cancer claims. For future claims, mesothelioma cases will not be subject to J&J's current settlement strategy and the ratio of mesothelioma to ovarian cancer claims therefore be greater than the current ratio of cases, while the per claim value will be high.

The fact that mesothelioma claims have historically commanded high values at trial and in settlement with J&J underscores the need for a separate FTCR who is positioned to single-mindedly advocate and emphasize all relevant differences between the two categories of claims. Those differences may include, for example, J&J's own causation arguments that asbestos is not a cause of ovarian cancer, which means that ovarian cancer claims arguably cannot be channeled into a section 524(g) asbestos trust. A single FTCR would struggle to advance such a position consistent with her duties to both classes of constituents.

The importance of a separate FTCR to protect the interest of future mesothelioma claimants is further heightened here by the anticipated absence of a separate official committee comprised of mesothelioma claimants to represent current claimants. Absent an official committee acting as a fiduciary to all current mesothelioma claimants, there will be no representative in these proceedings charged with a duty to single-mindedly advocate for the recognized divergence in interests between mesothelioma and ovarian cancer victims. Appointing a separate FTCR with a single-minded duty to represent mesothelioma victims would therefore act as an important counter-weight to the activities of a unitary creditors' committee. This would enhance the overall fairness of the proceedings, and would ensure that the voice of mesothelioma claimants will not be drowned out in the tide of ovarian cancer claims. Indeed, given the obligation to provide equity between current and future claims, more effective representation of future claimants may serve indirectly to protect the interests of current as well as future mesothelioma claimants.

By this letter, TCC II hereby moves the Court for appointment of a separate FTCR for future mesothelioma claimants (or for such further or other relief as the Court deems appropriate). Both Ms. Randi Ellis and Professor Eric Green have TCC II's support as FTCR to represent future mesothelioma claimants. TCC II respectfully requests that the Court addresses this request for appointment of a separate FTCR for future mesothelioma claimants at the hearing before Your Honor on March 8, 2022.

Sincerely,

*/s/ Cullen D. Speckhart*

Cullen D. Speckhart

CDS