**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004–1(b)

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to Official Committee of Talc Claimants I* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Jeffrey L. Jonas, Esq.<br>Michael Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>jjonas@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Sunni P. Beville, Esq.<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the*<br>*Official Committee of Talc Claimants I* |
| **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan Street, Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel for the*<br>*Official Committee of Talc Claimants I* | **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the*<br>*Official Committee of Talc Claimants I* |

| **GILBERT LLP** | |
| Kami Quinn, Esq. *(pro hac vice pending)*<br>Heather Frazier, Esq. *(pro hac vice pending)*<br>quinnk@gilbertlegal.com<br>frazierh@gilbertlegal.com<br>700 Pennsylvania Avenue SE<br>Suite 400<br>Washington, DC 20003<br>Tel: (202) 772-2200<br>*Proposed Special Counsel for the*<br>*Official Committee of Talc Claimants I* | |
| In re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>    Debtor.[1] | Chapter 11<br><br>Case No.:  21-30589 (MBK)<br><br>Honorable Michael B. Kaplan<br><br>Hearing Date:  March 30, 2022 |

**OFFICIAL COMMITTEE OF TALC CLAIMANTS I'S RESPONSE IN OPPOSITION TO (1) TRAVELERS CASUALTY AND SURETY COMPANY'S MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE NJ COVERAGE ACTION TO PROCEED, D.I. 1488, AND (2) NEW JERSEY COVERAGE ACTION PLAINTIFF-INSURERS' MOTION FOR AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE NEW JERSEY COVERAGE ACTION OR, IN THE ALTERNATIVE, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE NEW JERSEY COVERAGE ACTION TO <u>PROCEED, D.I. 1491</u>**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ................................................................................................... iii

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ....................................................... 2

I.  The NJ Coverage Action ..................................................................................... 2

II.  Johnson & Johnson Corporate Restructuring ..................................................... 3

III.  Bankruptcy Proceedings ..................................................................................... 4

ARGUMENT ................................................................................................................... 6

I.  The Automatic Stay Applies to the NJ Coverage Action .................................. 6

   A.  Application of the Automatic Stay to the NJ Coverage Action Supports the Orderly Rehabilitation of the Debtor ................................................................................... 6

   B.  The Automatic Stay Applies to the NJ Coverage Action Because It Is An "Act to Exercise Control Over Property of the Estate." ............................................... 7

   C.  The Automatic Stay Applies to the NJ Coverage Action Because It Is Fundamentally a Proceeding Against the Debtor. ........................................................................ 12

II.  The Automatic Stay Should Not Be Lifted ...................................................... 13

   A.  The Moving Insurers Have Failed to Show Cause to Lift the Stay. ........................... 14

   B.  Travelers and the Moving Insurers Have Similarly Failed to Show Cause to Lift the Stay Pursuant to the *Mid-Atlantic* Factors. ................................................... 19

   C.  A Partial Stay of the NJ Coverage Action is Insufficient to Protect the Debtor's Asset ................................................................................................................... 21

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACandS, Inc. v. Travelers Cas. & Sur. Co.*,
    435 F.3d 252 (3d Cir. 2006)...................................................................................8, 10

*Allentown Ambassadors, Inc. v. Northeast Am. Baseball, LLC* (*In re Allentown
    Ambassadors, Inc.*),
    361 B.R. 422 (Bankr. E.D. Pa. 2007) ....................................................................8

*Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*,
    682 F.2d 446 (3d Cir. 1982).................................................................................6, 18

*Baldino v. Wilson* (*In re Wilson*),
    116 F.3d 87 (3d Cir. 1997)....................................................................................14

*Colony Ins. Co. v. Vill. at Dadeland Condo. Ass'n*,
    No. 09-22369-CV, 2010 WL 1817038 (S.D. Fla. Apr. 15, 2020) ..........................16

*Eagle One Fed. Credit Union v. Campanile*,
    Nos. 19-8103 (RMB), 19-284 (RMB), 2020 WL 416182 (D.N.J. Jan. 27,
    2020) ......................................................................................................................14

*Estate of Lellock v. Prudential Ins. Co. of Am.*,
    811 F.2d 186 (3d Cir. 1987)..................................................................................8

*First Fid. Bank v. McAteer*,
    985 F.2d 114 (3d Cir. 1993)..................................................................................8, 9

*Harbison–Walker Refractories Co. v. Ace Prop. & Cas. Ins. Co.* (*In re Glob.
    Indus. Techs., Inc.*),
    303 B.R. 753 (Bankr. W.D. Pa. 2004), *vacated in part & modified on other
    grounds*, No. 02–21626, 2004 WL 555418 (Bankr. W.D. Pa. Feb. 3, 2004) .........10

*In re Adelphia Commc'ns Corp.*,
    298 B.R. 49 (S.D.N.Y. 2003).................................................................................8

*In re Anderson*,
    390 B.R. 812 (Bankr. D.S.C. 2007) .......................................................................19

*In re Hagerstown Fiber Ltd. Partnership*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002)....................................................................16

*In re Quigley Co.*,
    361 B.R. 723 (Bankr. S.D.N.Y. 2007)....................................................................16

*In re Pharm-Mor, Inc. Securities Litigation*,
   164 B.R. 903 (W.D. Pa. 1994) ............................................................................11

*In re SCO Grp., Inc.*,
   395 B.R. 852 (Bankr. D. Del. 2007) ...................................................................14

*In re Spaulding Composites Co., Inc.*,
   207 B.R. 899 (B.A.P. 9th Cir. 1997).............................................................10, 11

*In re Telegroup, Inc.*,
   237 B.R. 87 (Bankr. D.N.J. 1999) ......................................................................14

*In re Webb*,
   No. 3:15-bk-30498, 2016 WL 2616756 (Bankr. S.D.W. Va. May 4, 2016) .........16

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013), *and aff'd*,
   532 F. App'x 264 (3d Cir. 2013), *and aff'd*, 729 F.3d 311 (3d Cir. 2013)...............8

*Johns-Manville Corp. v. Asbestos Litig. Grp.* (*In re Johns-Manville Corp.*),
   26 B.R. 420 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984),
   *rev'd in part*, 41 B.R. 926 (S.D.N.Y. 1984) ......................................................13

*Kaiser Grp. Int'l, Inc. v. Kaiser Aluminum & Chem. Corp.* (*In re Kaiser
   Aluminum Corp., Inc.*),
   315 B.R. 655 (D. Del. 2004) ..............................................................................13

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.* (*In re Mid-
   Atlantic Handling Systems, LLC*),
   304 B.R. 111 (Bankr. D.N.J. 2003) ...........................................................19, 20, 21

*McCartney v. Integra Nat'l Bank North*,
   106 F.3d 506 (3d Cir. 1997)................................................................................13

*Mt. McKinley Ins. Co. v. Corning Inc.*,
   399 F.3d 436 (2d Cir. 2005)................................................................................16

*OCA, Inc. v. Johnstown Orthodontic Specialists, Inc.*,
   No. CIV A 04-296J, 2006 WL 2773493 (W.D. Pa. Sept. 25, 2006) .......................18

*Peerless Ins. Co. v. Rivera*,
   208 B.R. 313 (D.R.I. 1997).................................................................................16

*Pension Transfer Corp. v. Beneficiaries Under the Third Amend. to Fruehauf
   Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*,
   444 F.3d 203 (3d Cir. 2006)..................................................................................9

*Plessey Precision Metals, Inc. v. Metal Ctr., Inc.* (*In re Metal Ctr., Inc.*),
   31 B.R. 458 (Bankr. D. Conn. 1983) ....................................................................................13

*Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp.* (*In re Kaiser
   Aluminum Corp.*),
   303 B.R. 299 (D. Del. 2003) ...........................................................................................6, 10

*Schubert v. Lucent Techs. Inc.* (*In re Winstar Commc'ns, Inc.*),
   554 F.3d 382 (3d Cir. 2009) .................................................................................................14

*Stanziale, Jr. v. CopperCom, Inc.* (*In re Conex Holdings, LLC*),
   518 BR 792 (D. Del. 2014) ....................................................................................................9

*Taub v. Taub* (*In re Taub*),
   427 B.R. 208 (Bankr. E.D.N.Y. 2010), *aff'd sub nom In re Taub*, Nos. 10 CV
   5717(RJD), 08 BK 44210(ESS), 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) ....................9

## Statutes

11 U.S.C. §§ 101, *et seq.*.......................................................................................... *passim*

11 U.S.C. § 362.......................................................................................................... *passim*

11 U.S.C. § 541.................................................................................................................8, 9

28 U.S.C. § 1334................................................................................................................16

## Other Authorities

3 Collier on Bankruptcy ¶ 362.03 (15th ed. revised) .....................................................8

H.R. Rep. No. 95–595 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963............................6

The Official Committee of Talc Claimants I (the "TCC I") hereby submits this Opposition to (1) the *Motion for an Order Granting Relief from the Automatic Stay to Allow the NJ Coverage Action to Proceed* [D.I. 1488] (the "Travelers' Motion") of Travelers Casualty and Surety Company's ("Travelers") and (2) the *Motion for an Order (I) Confirming that the Automatic Stay does not Apply to the New Jersey Coverage Action or, in the Alternative, (II) Granting Relief from the Automatic Stay to Allow the New Jersey Action to Proceed* [D.I. 1491] (the "Moving Insurers' Motion," and together with the Travelers' Motion, the "Motions") of New Jersey Coverage Action Plaintiff-Insurers' (the "Moving Insurers"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

The Moving Insurers[2] seek an order that the automatic stay provisions of § 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or the "Code") do not apply to *Atlanta International Insurance Company v. Johnson & Johnson*, MID-L-3563-19 (N.J. Super. Ct., Law Div.) (the "NJ Coverage Action") or, if they do apply, the Moving Insurers and Travelers seek an order lifting the stay to allow the NJ Coverage Action (or portions thereof) to proceed. These requests must be denied.

In light of the Court's rulings on (i) TCC I's and other interested parties' motions to dismiss and (ii) the Debtor's motion for a preliminary injunction, the automatic stay applies to the NJ

---

[2] The Moving Insurers are: Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A.); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company ("North River"); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen).

1

Coverage Action as a proceeding in which property of the estate, certain insurance policies that the Court found are shared by the Debtor and its indirect parent, Johnson & Johnson ("J&J") (such insurance policies, the "Policies"), is at risk of being diminished or eliminated. The Court found that the Policies potentially provide as much as $2 billion of insurance coverage applicable to talc-related claims which therefore, as an asset of the estate, must be preserved for the benefit of creditors.

In the Motions, the Moving Insurers and Travelers contend that the NJ Coverage action has no impact on the Debtor, because the Debtor has no interest in the Policies and, at any rate, the insurers seek only a declaration, not monetary relief. This Court has already determined that the Policies are property of the estate, such that any depletion of the insurance proceeds would reduce the assets available to the bankruptcy estate. And despite the insurers' efforts to characterize it otherwise, an insurer-friendly judgment in the NJ Coverage Action may have the effect of depleting *all* of the insurance proceeds that the Court has found are potentially available to benefit the Debtor's creditors. Preventing precisely this harm is the intended purpose of § 362(a). Indeed, based on the Court's prior rulings, maintaining the automatic stay in this case will avoid the depletion of the Debtor's assets and avoid interference with the orderly rehabilitation of the Debtor, the very purpose for which the automatic stay was designed.

## BACKGROUND AND PROCEDURAL HISTORY[3]

### I.    The NJ Coverage Action

The Moving Insurers and Travelers issued various insurance policies which, as the Court has found, may provide coverage to the Debtor for talc claims (the above-mentioned "Policies").

---

[3] The facts set forth herein are based on the Court's findings in its decisions on the motion to dismiss and for a preliminary injunction, and are recited without prejudice to TCC I's appeals from those decisions. Mem. Op., *In re LTL Mgmt. LLC*, No. 21-30589-MBK (Bankr. D.N.J. Feb. 25, 2022) [D.I. 1572]; Mem. Op., *LTL Mgmt., LLC v.*

On May 3, 2019, the Moving Insurers filed a declaratory judgment action against J&J, Johnson & Johnson Consumer Inc. ("Old JJCI"), and Middlesex Assurance Company (a captive insurance company that is a wholly owned subsidiary of J&J) ("Middlesex") in the Superior Court of New Jersey.  In the NJ Coverage Action, the Moving Insurers sought rulings that the Policies do not require the Moving Insurers to indemnify, defend, or pay defense costs for J&J or Old JJCI with respect to talc claims.  *See* Second Amended Compl. in NJ Coverage Action (June 22, 2020), attached as Ex. 4 to Rochester Decl. in Supp. of Moving Insurers' Motion [D.I. 1491–4].  J&J and Old JJCI, as well as Travelers, who was named as a defendant in the NJ Coverage Action, filed counterclaims and cross-claims seeking declaratory relief to determine the parties' rights and obligations under the Policies.

According to Travelers, as of October 2021, discovery in the NJ Coverage Action was still ongoing, with a fact discovery deadline of May 2022.  Travelers' Mot. at 10–11.

**II.    Johnson & Johnson Corporate Restructuring**

The Debtor in this bankruptcy proceeding is an indirect subsidiary of J&J.  As recounted by this Court, J&J began selling baby powder in 1894, and in 1972 established a formal operating division for its baby care products, which assumed all of J&J's baby care assets and liabilities.  Mem. Op. at 3, *LTL Mgmt. LLC v. Those Parties Listed on Appendix A*, Adv. No. 21-03032 (MBK)[4] [Adv. Proc. D.I. 184] ("Adv. Mem. Op.").  By 2015, nearly all of J&J's baby products were sold by Old JJCI.  *Id.*  Notably, per the Court's findings, Old JJCI assumed responsibility for claims alleging harm – specifically, ovarian cancer and mesothelioma – from use of J&J's talc-

---

*Those Parties Listed on Appendix A to Compl.*, No. 21-03032-MBK (Bankr. D.N.J. Feb. 25, 2022) [Adv. Proc. D.I. 184].

[4] References to additional documents from this adversary proceeding are denoted by [Adv. Proc. D.I.].

containing baby powder as well as another talc-containing J&J product, "Shower to Shower." *Id.*
at 3–4.

Within the last several years, Old JJCI and J&J, as the Court found, have faced an ever-growing number of cases from plaintiffs alleging harm from J&J's talc products. According to the Debtor, the outcomes of these cases vary wildly, with some resulting in dismissals and others in judgments as high as several billion dollars. Mem. Op. at 3–4, 37, *In re LTL Mgmt. LLC*, No. 21-30589-MBK (Bankr. D.N.J. Feb. 25, 2022) [D.I. 1572]. Old JJCI faced mounting costs of investigating and defending these cases, as well as satisfying any judgments obtained by plaintiffs therein. *See id.* at 37 (finding that "[t]he Debtor has estimated that the costs to try a single ovarian cancer claim ranges between $2 million to $5 million" and that "[d]efending just the over 38,000 pending ovarian cancer claims through trial would cost up to $190 billion").

To resolve these growing liabilities, on October 12, 2021, Old JJCI engaged in a divisional merger pursuant to Texas law, which resulted in the elimination of Old JJCI and the formation of two new entities: the Debtor and "New JJCI." *Id.* at 5–7. New JJCI received Old JJCI's operating assets and its business, while the Debtor received Old JJCI's talc-related liabilities, Old JJCI's insurance coverage rights, and certain other assets. *See id.*; *see generally* Adv. Mem. Op. Within days of the merger, the Debtor promptly filed for bankruptcy.

## III.    Bankruptcy Proceedings

On October 14, 2021, two days after its formation, the Debtor filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina (the "WDNC Court"). Voluntary Pet. [D.I. 1]. Shortly after its bankruptcy filing, the Debtor filed an adversary proceeding and motion for preliminary injunction, seeking a ruling from the WDNC Court that the automatic stay provisions of § 362(a) of the Bankruptcy Code apply to talc-related actions against J&J and New JJCI or, in the alternative, for an injunction of such actions. *See*

Debtor's Mot. For an (I) Order Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing [Adv. Proc. D.I. 2]. The WDNC Court granted the motion on a preliminary basis – for a 60-day period – and transferred the proceeding to this Court. *See* Order Granting Debtors' Request for Prelim. Injunctive Relief [Adv. Proc. D.I. 102].

The Debtor then renewed its request before this Court. *See* Debtor's Suppl. Mem. in Supp. of Prelim. Inj. Mot. [Adv. Proc. D.I. 128]. The Moving Insurers filed a limited objection to the Debtor's motion, arguing that the Debtor sought a preliminary injunction only against certain entities – that is, plaintiffs asserting talc claims – which group did not include insurers. Limited Obj. & Reservation of Rights of the N.J. Coverage Action Plaintiff-Insurers [Adv. Proc. D.I. 141]. In its reply in support of its motion, the Debtor made clear that any ruling from the Court regarding an extension of the automatic stay would not apply to claims of the Moving Insurers, reserving its rights with respect to this issue. *See* Debtor's Omnibus Reply in Supp. of Mot. at 1, n.2 [Adv. Proc. D.I. 146]. The Moving Insurers and Travelers subsequently filed the motions at issue here, seeking a ruling from this Court that the automatic stay does not apply to the NJ Coverage Action or, if it does, that the stay should be lifted.

This Court granted the Debtor's motion to extend the automatic stay to talc-related actions against certain non-debtors on February 25, 2022. Notably, this Court found that continued litigation against these non-debtors would potentially deplete insurance coverage which would otherwise be available to the estate and concluded that the Policies are property of the estate. Adv. Mem. Op. at 14, 21–22, 43–44.

## ARGUMENT

**I. The Automatic Stay Applies to the NJ Coverage Action**

### A. Application of the Automatic Stay to the NJ Coverage Action Supports the Orderly Rehabilitation of the Debtor.

In light of the Court's prior rulings, applying the automatic stay to the NJ Coverage Action is consistent with common sense, judicial economy and the purposes of the automatic stay. The automatic stay contemplated by § 362(a) is one of the most fundamental protections afforded by the Bankruptcy Code. *See* H.R. Rep. No. 95–595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97. The "breathing spell" of the automatic stay was designed to "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). Indeed, the automatic stay "specifically applies to actions related to the scope of insurance coverage." *Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp.* (*In re Kaiser Aluminum Corp.*), 303 B.R. 299, 303 (D. Del. 2003).

The stay as applied to the NJ Coverage Action, given the Court's prior rulings, supports these broad purposes and policies underpinning the automatic stay. In contrast, allowing the NJ Coverage Action to proceed would require the Debtor and its estate to either stand aside while other parties determine whether coverage is available under policies the Court found it shared in, or intervene in the NJ Coverage Action in order to protect its assets, distracting the Debtor from its ongoing work in the bankruptcy proceedings. It would further distract J&J, and potentially New JJCI, from their role in resolving the Debtor's bankruptcy. Likewise, were the NJ Coverage Action to proceed, at least TCC I, and potentially other creditor groups that may be beneficiaries

of the insurance rights, would be forced to intervene in the coverage action to protect their potential interests in and recovery from the policies that are a part of the Debtor's Estate and should be available to compensate talc victims.  This would necessarily distract the TCC I from its ongoing work in the bankruptcy and may substantially impair the progress of the bankruptcy.  Instead, the NJ Coverage Action should be stayed in order to allow the Debtor and TCC I to preserve what the Court has found are the Debtor's insurance rights, prevent the dissipation or elimination of an asset found to belong to the estate potentially valued at over $2 billion, and to allow the parties to focus on the bankruptcy proceedings.

Further, preserving the automatic stay with regard to the NJ Coverage Action supports the orderly rehabilitation of the Debtor, to the benefit of the talc victims that are the ultimate beneficiaries of any insurance coverage rights.  The Debtor has made clear its intention to create a trust for the benefit of claimants who have been injured by exposure to talcum powder, and that its insurance rights will be transferred to that Trust, whatever the scope of those rights.  Therefore, it is the Trust and its beneficiaries (the talc victims) that will ultimately benefit from any insurance coverage rights if the Debtor successfully confirms a plan of reorganization.  It defies common sense in light of the Court's prior rulings to allow the NJ Coverage Action to proceed without the input of, and direction by, those who are directly affected by its outcome.

### B.  The Automatic Stay Applies to the NJ Coverage Action Because It Is An "Act to Exercise Control Over Property of the Estate."

Section 362(a)(3) of the Bankruptcy Code applies the automatic stay to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  The "underlying purpose" of § 362(a)(3) is "the preservation of the estate for the benefit of creditors."  *Allentown Ambassadors, Inc. v. Northeast Am. Baseball, LLC* (*In re Allentown Ambassadors, Inc.*), 361 B.R. 422, 439 (Bankr. E.D. Pa.

2007).  As an action which seeks to deprive the Debtor and its estate of what the Court has found

is a substantial asset, to the detriment of the talc-victim creditors, the NJ Coverage Action

undoubtedly falls within the scope of this section.

First, based on the Court's prior rulings, there is no question that the Policies are property

of the estate.  "The interests classified as 'property of the estate' protected by § 362(a)(3) are

defined by 11 U.S.C. § 541," and it "has long been the rule in this Circuit that insurance policies

are considered part of the property of a bankruptcy estate."  *ACandS, Inc. v. Travelers Cas. & Sur.

Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (citation omitted); *First Fid. Bank v. McAteer*, 985 F.2d

114, 116 (3d Cir. 1993); *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir.

1987); *see generally* 3 *Collier on Bankruptcy* ¶ 362.03 (15th ed. revised) ("[T]he prevailing view

is that an insurance policy is property of the estate, protected by the automatic stay of

§ 362(a)(3).").  Insurance policies constitute "valuable property of a debtor, particularly if the

debtor is confronted with substantial liability claims within the coverage of the policy in which

case the policy may well be . . . the most important asset of the debtor's estate."  *In re W.R. Grace

& Co.*, 475 B.R. 34, 149 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013), *and aff'd*, 532 F.

App'x 264 (3d Cir. 2013), *and aff'd*, 729 F.3d 311 (3d Cir. 2013) (alteration in original) (quoting

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986)); *cf. In re Adelphia Commc'ns

Corp.*, 298 B.R. 49, 53–54 (S.D.N.Y. 2003) (D&O insurance policy proceeds are not property of

the estate where debtor had no "legal and equitable interest in the proceeds").

This Court has made that finding, concluding that, "although the extent of shared insurance

coverage is disputed, it remains uncontested that Debtor shares insurance policies – which are

estate property under 11 U.S.C. § 541(a) – with the Protected Parties."  Adv. Mem. Op. at 14.

Further, this Court found that uncertainties as to the existence of coverage and exhaustion "do not

change the fact that the policies are estate property." *Id.* at 43; *Taub v. Taub (In re Taub)*, 427 B.R.

208, 221 (Bankr. E.D.N.Y. 2010), *aff'd sub nom In re Taub*, Nos. 10 CV 5717(RJD), 08 BK

44210(ESS), 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) (the automatic stay applies even if there

is a dispute as to debtor's interest in or claim to the property); *see also Pension Transfer Corp. v.

Beneficiaries Under the Third Amend. to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf

Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006) ("[T]he term 'property' has been construed most

generously and an interest is not outside its reach because it is novel or contingent or because

enjoyment must be postponed. . . .  It is also well established that 'the mere opportunity to receive

an economic benefit in the future' is property with value under the Bankruptcy Code.") (first

quoting *Segal v. Rochelle*, 382 U.S. 375, 379 (1966) and second quoting *In re R.M.L., Inc.*, 92 F.3d

139, 148 (3d Cir. 1996))); *First Fid. Bank v. McAteer*, 985 F.2d 114, 116 (3d Cir. 1993)

("[I]nsurance policies are property of the estate 'even though the policy has not matured, has no

cash surrender value and is otherwise contingent.'" (citation omitted)); *Stanziale, Jr. v.

CopperCom, Inc. (In re Conex Holdings, LLC)*, 518 BR 792, 802 (D. Del. 2014) ("In fact, every

conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,

is within the reach of [section] 541." (alteration in original) (citation omitted)).  The Moving

Insurers' arguments to the contrary are of no moment.  Moving Insurers' Mot. ¶¶ 41–46.

Second, in light of the Court's rulings, the NJ Coverage Action constitutes an act to obtain

possession of or exercise control over property of the estate.  In the NJ Coverage Action, the

Moving Insurers seek a declaration that they owe no duties to defend or indemnify under the

Policies.  Should the Moving Insurers prevail on their claims, the Debtor stands to lose access to

nearly $2 billion in insurance proceeds.  Depriving the estate of such a claimed valuable asset runs

contrary to the purpose of § 362(a)(3) – preserving the estate for benefit of creditors.

"The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." *ACandS, Inc.*, 435 F.3d at 261; *see also Harbison–Walker Refractories Co. v. Ace Prop. & Cas. Ins. Co.* (*In re Glob. Indus. Techs., Inc.*), 303 B.R. 753, 760 (Bankr. W.D. Pa. 2004), *vacated in part & modified on other grounds*, No. 02–21626, 2004 WL 555418 (Bankr. W.D. Pa. Feb. 3, 2004) (a declaratory judgment action against a debtor constitutes an act to exercise control over property of the estate within the meaning of § 362(a)(3), "insofar as it seeks to affect . . . insurance policies which are estate property," and further noting that "[t]he fact that the action does not name Debtor is not dispositive").  The Moving Insurers' argument that the automatic stay does not apply because the NJ Coverage Action does not seek any monetary relief from the Debtor, only a declaratory judgment, ignores this established case law and demonstrates the Moving Insurers' clear intent to deprive the Debtor, and ultimately the talc claimants, of what the Court has found is a potentially multi-billion-dollar insurance asset.[5]  *See, e.g., In re Kaiser*, 303 B.R. at 303.

Finally, the Moving Insurers argue that *even if* the Debtor has a right in the Policies that would be affected by the NJ Coverage Action, the automatic stay does not apply because the Debtor does not need the insurance proceeds to satisfy its talc liability.  Moving Insurers' Mot. ¶ 48.  The Moving Insurers fail to cite any authority holding that an asset found to belong to the estate is only protected by the automatic stay if a debtor cannot obtain funding from another source,

---

[5] Moving Insurers cite *In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 907–08 (B.A.P. 9th Cir. 1997), to argue that the NJ Coverage Action is not an act to exercise control over property of the estate.  Moving Insurers' Mot. ¶ 47.  There, the court found an insurance coverage action was not an attempt to "exercise control over property of the estate" where the lawsuit was "narrowly crafted" and "asked only for a declaration of [the insurer's] liability to two non-debtors."  207 B.R. at 907–08 (emphasis omitted).  Here, unlike in *Spaulding*, a decision in the NJ Coverage Action as to the existence or extent of coverage under the Policies *would* "have an[] effect on [the Debtor's] estate or on [the Debtor's] creditors," *Spaulding*, 207 B.R. at 908, as it would potentially impact the Debtor's rights under the Policies.  The NJ Coverage Action cannot be said to deal *only* with the insurance interests of non-debtors (and may, in fact, deal only with the insurance interests of the Debtor).

or if the Debtor expects to pay its creditors in full.  In support, the Moving Insurers rely on *In re Pharm-Mor, Inc. Securities Litigation*, 164 B.R. 903 (W.D. Pa. 1994), but this does not support their argument.  The insurance policy at issue in *Phar-Mor* was not found to be an asset of the estate and thus was not subject to the automatic stay.  In *Phar-Mor*, the claimants' committee sought to stay third-party claims alleging fraud and violation of securities laws against the debtor's former auditors, Coopers.  Because the debtor also asserted similar claims against Coopers, the claimants' committee, relying on case law where courts had stayed actions that may diminish the debtor's insurance policy, argued that allowing the third-party actions to proceed against Coopers "may result in a dilution of the Debtor's recovery against Coopers." 164 B.R. at 905–06.  The court distinguished *Phar-Mor* from such cases by noting that "the [Coopers'] policy here is not an asset of the Debtor, and the Committee has failed to establish that Coopers would be unable to satisfy judgments that exceed the insurance coverage."  *Id.* at 906.  The court in *Phar-Mor* was concerned with whether the debtors' potential recovery *against Coopers* would be diminished, not whether the Debtor could obtain that same funding from some other source, thereby negating the need for the stay.  And, unlike *Phar-Mor*, the Policies here have been found to be assets of the Debtor's estate.  Adv. Mem. Op. at 14.

Notwithstanding that nothing in the Code conditions the automatic stay on the ability of a Debtor to satisfy its creditors, in this case there has not yet been any estimation of the Debtor's talc liabilities, nor any valuation of the Debtor's assets, such that it is possible to definitively state that any insurance assets will not be necessary to fund the Debtor's reorganization.  Indeed, the Court's hearings on the motion to dismiss clearly demonstrated the uncertainty and wide-ranging possibilities with regard to the Debtor's liability.  Without any assessment of the Debtor's liability, it is impossible to determine at this juncture whether the claimed insurance assets may be required

to satisfy the Debtor's promise to fully and fairly compensate the talc claimants.  The purpose of the automatic stay – preservation of the debtor's estate – is therefore best served here by avoiding depletion of *any* of the Debtor's assets and avoiding any risk of harm to the Debtor and its creditors.

Accordingly, the NJ Coverage Action is and should remain stayed pursuant to § 362(a)(3) of the Code because it constitutes an act to obtain possession of or exercise of control over property found to belong to the estate, namely the Policies.

### C.    The Automatic Stay Applies to the NJ Coverage Action Because It Is Fundamentally a Proceeding Against the Debtor.

The Moving Insurers argue that because J&J, Old JJCI, and Middlesex, and not the Debtor, are the only Johnson & Johnson-related defendants in the NJ Coverage Action, § 362(a)(1) does not apply.  Moving Insurers' Mot. ¶ 39.  However, the Third Circuit has found that the automatic stay applies to non-debtor parties:  (1) where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor, or (2) where stay protection is essential to the debtor's efforts of reorganization.  *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997).  Indeed, the protection of the automatic stay extends to any action or proceeding against an interest of the debtor and the scope of that protection "is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation."  *Kaiser Grp. Int'l, Inc. v. Kaiser Aluminum & Chem. Corp.* (*In re Kaiser Aluminum Corp., Inc.*), 315 B.R. 655, 658 (D. Del. 2004).

Here, this Court has determined that "Old JJCI no longer exists and . . . [the] Debtor assumed its liabilities."  Adv. Mem. Op. at 19.  It is the talc-related liabilities that the Court has found have been transferred to the Debtor which are arguably covered under the Policies.  *Id.* at 42–43, 45.  Old JJCI's rights to the Policies, per the Court's rulings, also now reside with the

Debtors.  As a result, any declaratory judgment addressing the extent of coverage for talc claims under the Policies will in effect be a judgment or finding against the Debtor.  *See Johns-Manville Corp. v. Asbestos Litig. Grp.* (*In re Johns-Manville Corp.*), 26 B.R. 420, 437 (Bankr. S.D.N.Y. 1983) (finding that it was in the interest of "economy, efficiency, and protecting against the possibility of inconsistent interpretations" of insurance coverage to extend the stay, including to state coverage actions), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *rev'd in part*, 41 B.R. 926 (S.D.N.Y. 1984) (lifting automatic stay solely for limited discovery in a collateral case); *Plessey Precision Metals, Inc. v. Metal Ctr., Inc.* (*In re Metal Ctr., Inc.*), 31 B.R. 458, 462 (Bankr. D. Conn. 1983) (to refuse application of the stay where the liability of a nondebtor is imputed to the debtor would defeat the very purpose and intent of § 362(a)(1)).  For these reasons, the automatic stay applies pursuant to § 362(a)(1).[6]

## II.     The Automatic Stay Should Not Be Lifted

Section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the stay "for cause."  11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis.  *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.") (citing *Baldino*, 116 F.3d at 90.)  Travelers and the Moving Insurers have the initial burden of establishing "cause" and, if they fail to do so, the Court should deny relief without requiring any showing whatsoever from

---

[6] Even if the Court finds that neither § 362(a)(1) nor (a)(3) operate to automatically stay the NJ Coverage Action, the Court, based on its prior rulings, should exercise its discretion to enjoin the NJ Coverage Action in its entirety pursuant to § 105.  For all of the reasons provided above, this Court has subject matter jurisdiction to issue such an injunction.  At the very least, the NJ Coverage Action "could conceivably have an[] effect on the estate being administered in bankruptcy," providing "related to" jurisdiction.  *Schubert v. Lucent Techs. Inc.* (*In re Winstar Commc'ns, Inc.*), 554 F.3d 382, 405 (3d Cir. 2009) (citation omitted).

the Debtors.  *In re Telegroup, Inc.*, 237 B.R. 87, 91, 91 n.3 (Bankr. D.N.J. 1999).  Only where the

movant has sufficiently established cause does the burden shift to the Debtor to establish the

absence of cause.  *Id.*  Thus, the burden is on Travelers and the Moving Insurers to establish cause

to grant relief from the stay.  They have failed to establish any such cause.

### A.  The Moving Insurers Have Failed to Show Cause to Lift the Stay.

In determining whether cause to lift the stay exists, this Court considers (1) whether any

great hardship to either the estate or the debtor will result from the continuation of the civil suit;

(2) whether the hardship to the non-bankrupt party "considerably outweighs" the debtor's

hardship; and (3) the probability of the creditor prevailing on the merits.  *See Eagle One Fed.*

*Credit Union v. Campanile*, Nos. 19-8103 (RMB), 19-284 (RMB), 2020 WL 416182, at *5 (D.N.J.

Jan. 27, 2020) (quoting *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 120–21 (Bankr. D. Del.

2015)).  Under this test, Travelers and the Moving Insurers have failed to meet their burden of

proving that cause exists to warrant the lifting of the stay.  Permitting the NJ Coverage Action to

proceed could result in significant prejudice to the Debtor and its estate based on the Court's

findings, whereas it is difficult to imagine how maintaining the stay could possibly result in any

harm to Travelers or the Moving Insurers.

If the stay is lifted, the Debtor and the talc-victim creditors of the Debtor will be forced to

either sit back and watch as J&J litigates the Debtor's insurance rights under the Policies or to

intervene in the action diverting resources from the bankruptcy.[7]  Further, the Debtor will lose the

assistance of its parent company in its reorganization, as J&J is forced to expend time, money, and

---

[7] As noted above, Old JJCI is a defendant in the NJ Coverage Action.  It is unclear, and neither Travelers nor the Moving Insurers addresses, what would happen if the NJ Coverage Action were to resume, given that Old JJCI no longer exists, but presumably, the Debtor must be substituted for the presently non-existent Old JJCI.  It is also inevitable that, given their interests, the talc creditors would seek to intervene in the case.

effort litigating the NJ Coverage Action rather than focusing on the Debtor's bankruptcy.  *See*

Adv. Mem. Op. at 48 (noting that continued litigation against New JJCI and J&J "will hinder

reorganization efforts" and cause "potential disruption . . . to funding of [the] Debtor's trust").  The

talc victims thus face the choice of either diverting valuable resources, including the time and

efforts of its professionals to litigate the NJ Coverage Action, or potentially losing valuable

insurance assets that the Court has found could provide more than $2 billion to talc victims.

Instead, based on the Court's rulings, the Debtor and the talc-victim creditors should be permitted

the breathing room of the automatic stay to resolve any outstanding questions regarding the scope

of the Debtor's rights under the Policies and to determine the best way to recover this asset for the

benefit of the talc creditors.[8]

---

[8] Moving Insurers cite a litany of cases which they claim present "facts far less compelling than those present in this case," Moving Insurers' Mot. ¶ 5, but those cases are readily distinguishable.  *See, e.g.*, *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (Bankr. D.N.J. Dec. 19, 2018) [D.I. 350] (granting stay relief that was to go in effect three months from the date of the order and at a time when the court reasoned that the case would be confirmed); *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. Mar. 22, 2004) [D.I. 497] (granting stay relief on the basis that the bankruptcy court could not determine the issue of coverage more readily and quickly than the state court where the bulk of discovery had concluded, the state court had granted partial summary judgment and made factual findings, and indicated that it would be scheduling the matter for trial in the "near future"); *In re Kaiser Gypsum Co.*, No. 16-31602 (Bankr. W.D.N.C. Oct. 12, 2017) [D.I. 669] (granting stay relief so that a dispute between third-party insurers could proceed on appeal); *In re Quigley Co.*, 361 B.R. 723, 743–45 (Bankr. S.D.N.Y. 2007) (reasoning that lifting the stay in favor of arbitration would not interfere with the administration of the bankruptcy case); *In re AC&S*, No. 02-12687 (Bankr. D. Del. Dec. 8, 2003) [D.I. 922] (granting stay relief for consulting firm when no party objected to such relief); *Peerless Ins. Co. v. Rivera*, 208 B.R. 313 (D.R.I. 1997) (insurer would risk inconsistent verdicts with respect to coverage unless it was permitted to proceed with declaratory judgment action against policyholder, which was on the eve of trial); *see also Colony Ins. Co. v. Vill. at Dadeland Condo. Ass'n*, No. 09-22369-CV, 2010 WL 1817038, at *2–3 (S.D. Fla. Apr. 15, 2020) (addressing the interplay between an insurance coverage case and underlying liability proceeding, entirely outside of bankruptcy); *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448–49 (2d Cir. 2005) (analyzing abstention under 28 U.S.C. § 1334, not applicability of the automatic stay, and concluding that "the adjudication of the claims in this lawsuit will have no direct impact" on the debtor's bankruptcy proceedings).  Travelers also argues that *In re Webb*, No. 3:15-bk-30498, 2016 WL 2616756, at *3 (Bankr. S.D.W. Va. May 4, 2016), shows that there is no harm to the Debtor because there, there was "no judgment that [the movant] is seeking to enforce against . . . the estate's property."  *See* Travelers' Mot. at 12 (alteration in original) (citation omitted).  In *Webb*, however, the litigation involved a new promissory note and deed of trust on an existing debt.  For the reasons set forth above, a declaratory judgment in the insurers' favor in the NJ Coverage Action would deprive the Debtor of what the Court has found is an estate asset even though it is not a monetary judgment.  Finally, Travelers cites *In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181, 215 (Bankr. S.D.N.Y. 2002), where the court permitted an arbitration claim that was "intertwined with the trustee's arbitrable claims" to proceed, which would "allow the arbitrators to resolve all of the arbitrable claims in one proceeding."  Similar circumstances and considerations are not present here.

Travelers and the Moving Insurers argue that the Debtor is not harmed by lifting the stay because any proceeds it does not recover under the Policies will be backstopped by J&J and New JJCI.  Moving Insurers' Mot. ¶¶ 6, 53–56; Travelers' Mot. at 11–12.  However, the Insurers have not cited, nor could they, any support for the proposition that if a Debtor may have sufficient assets to pay its creditors, certain of its obligors can simply "opt out" of being estate property found by the Court by pointing to other obligors.  Insurers cannot simply argue that someone else must pay, or that the Debtor has access to adequate resources, and as such the normal rules around property of the estate do not apply.

In any event, as set forth above, it is not possible at this point to definitively state whether any insurance assets will be necessary to fund the Debtor's reorganization.  Although the Debtor's funding agreement may be substantial, it is not limitless, and the talc victims should not be made to bear the risk of losing the potential value of the Policies to satisfy their claims nor should the talc claimants be required to devote the time and money to the NJ Coverage Action that should rightly be focused on the reorganization.  Accordingly, the Debtor will suffer substantial harm, based on the Court's prior rulings, in the absence of a stay.

In contrast, Travelers and the Moving Insurers will suffer no harm if the automatic stay is left in place.  The Moving Insurers first contend that they are harmed because to date, J&J has incurred substantial defense costs and adverse verdicts and have not permitted the Moving Insurers to defend the underlying talc claims.  Moving Insurers' Mot. ¶ 59.  Moving Insurers point to a harm that, if legally relevant, has *already* occurred and cannot be remedied by the lifting of the automatic stay.  In light of the Court's rulings and the application of the automatic stay to all underlying talc claims, it is unclear how this could "harm" the Moving Insurers in the present or future.  Next, the Moving Insurers argue that *to the extent* they are required to pay any sums under

16

the Policies, J&J *may* contend that they are required to pay interest on such sums.  *Id.*  They later

argue that if the stay remains in place, the Debtor and J&J may engage in settlement discussions

with talc creditors and might exclude the insurers from these discussions.  *Id.* ¶ 61.  Aside from

being purely speculative, this is far from harm.  If the Moving Insurers are required to pay interest

to the Debtor, it will be because this is the amount the Debtor is owed.  Further, if the Moving

Insurers believe that their rights under the Policies have been violated (or as they contend, will be

violated in the future), a continuation of the automatic stay in no way prevents them from raising

this as a defense to coverage when the NJ Coverage Action resumes or in any subsequent

negotiation or coverage action.  Finally, whether or not the NJ Coverage Action moves forward

has no impact on whether or not the insurers are included in settlement discussions with talc

creditors now or in the future.

Travelers and the Moving Insurers also argue that the automatic stay would not apply to

J&J's counterclaims and cross-claims against the insurers, and it would prejudice the insurers to

allow J&J's claims to proceed while staying theirs.  Travelers' Mot. at 13–14; Moving Insurers'

Mot. ¶ 60.  However, as set forth above, § 362(a)(3) of the Bankruptcy Code applies the automatic

stay to "any act to obtain possession of property of the estate or of property from the estate or to

exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Thus, the NJ Coverage Action

should be stayed in its entirety, as any acts by J&J or New JJCI may also reduce any insurance

available for talc creditors.  If J&J or New JJCI were permitted to pursue their claims against

Travelers and the Moving Insurers, the New Jersey court may determine the extent of coverage for

talc claims, which would clearly have the same practical effect on the Debtor.  As thoroughly

discussed above, the Debtor – and its creditors – should not be required to either divert resources

to the NJ Coverage Action or watch as other entities determine its entitlement to coverage under

the Policies, potentially to the detriment of the estate.  *See Assoc. of St. Croix Condo. Owners*,

682 F.2d at 449 (staying the debtor's appeal and opposing party's cross-appeal "[s]ince it would

be unwise in the circumstances of this case, to stay only one of the two appeals before us"); *OCA,*

*Inc. v. Johnstown Orthodontic Specialists, Inc.*, No. CIV A 04-296J, 2006 WL 2773493, at *2

(W.D. Pa. Sept. 25, 2006) (where claims, crossclaims, and counterclaims "hinged on the

interpretation of a written contract," finding "that to allow one set of claims to proceed while

staying the other set of claims would be to disrupt the bankruptcy proceeding in contravention of

§ 362").

        Travelers additionally claims that it and other insurers "require clarity and certainty"

regarding their obligations under the Policies, but fails to explain how the stay deprives them of

such clarity.  Travelers' Mot. at 13–14; *see also* Moving Insurers' Mot. ¶ 7.  To the contrary,

allowing the bankruptcy to proceed may allow the parties to reach a clearer understanding of how

J&J's corporate restructuring may have impacted any insurance rights under the Policies and the

repercussions that this has on the NJ Coverage Action.  At such point that the NJ Coverage Action

does resume, the parties can ensure that *all* entities with an interest in the outcome of the NJ

Coverage Action will be permitted to participate in the litigation.[9]  The automatic stay will preserve

the value of those policy rights in the interim.

        In short, it is difficult to imagine how the insurers are harmed by a stay of the NJ Coverage

litigation given that all talc litigation against their insured is currently stayed and the insurers are

---

[9] The Moving Insurers claim that the New Jersey Superior Court has recognized that they would "suffer substantial hardship" if the NJ Coverage Action is stayed.  Moving Insurers' Mot. ¶¶ 7, 78.  Judge Vignuolo, when analyzing successive requests from J&J to stay the proceeding to obtain the benefit of a *Daubert* ruling by another judge, commented that she was "hard pressed to avoid any continued prejudice or hardship to plaintiff if I were to continue to stay without some logical reason or something to trigger it this time."  Hr'g Tr. 6:10–13 (Feb. 21, 2020), attached as Ex. 3 to Rochester Decl. in Supp. of Motion Insurers' Motion [ D.I. 1491-3].  She may very well decide differently given the dramatic developments in the case since February 2020, and at any rate, a passing comment by Judge Vignuolo is not determinative of the Moving Insurers' harm.

holding onto potentially billions of dollars which may rightfully be owed to the Debtors, and ultimately inure to the benefit of the talc-victims.  On the other hand, as set forth above, the harm to the talc victims is immediate and concrete.  For the reasons set forth above, the balance of harms clearly weighs in favor of allowing the automatic stay to remain in place while the Debtor works to reorganize.[10]

### B. Travelers and the Moving Insurers Have Similarly Failed to Show Cause to Lift the Stay Pursuant to the *Mid-Atlantic* Factors.

Travelers and the Moving Insurers also contend that the factors set forth in *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.* (*In re Mid-Atlantic Handling Systems, LLC*), 304 B.R. 111 (Bankr. D.N.J. 2003), weigh in favor of lifting the stay.  Travelers' Mot. at 7–8; Moving Insurers' Mot. ¶¶ 66–67.  They are mistaken.  The factors set forth in *Mid-Atlantic* are as follows:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.

---

[10] Given that the balance of the harms weighs markedly against the Moving Insurers, the final prong regarding the probability of success on the merits need not be addressed.  *See In re Anderson*, 390 B.R. 812, 815 (Bankr. D.S.C. 2007) (non-moving parties need only prove a likelihood of success on the merits if the balance of the harms decidedly favored the party seeking relief from the stay).

*Mid-Atlantic*, 304 B.R. at 130.   "All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay." *Id.*[11]

Similar to the analysis set forth above, these factors weigh in favor of continuing the stay in order to prevent harm to the Debtor in light of the Court's prior rulings:

- Factor two weighs in favor of staying the NJ Coverage Action; as set forth above, the proceeding will divert resources from and interfere with the bankruptcy case.

- Factor four weighs in favor of a stay, as there is no "specialized tribunal" established to resolve the NJ Coverage Action.

- Factor six weighs in favor of a stay, because the action involves J&J and Old JJCI. This Court has found "that the nondebtor Protected Parties [which includes J&J and Old JJCI] and Debtor enjoy such an identity of interests that a lawsuit asserted talc-related claims against the Protected Parties is essentially a suit against Debtor." Adv. Mem. Op. at 19.  Based on that ruling, this would also be the case in the NJ Coverage Action, which addresses coverage for Old JJCI's – as the Court has found, now the Debtor's – talc-related liabilities, under insurance policies found to be shared between the Debtor and J&J.  *Id.*

- Factor seven weighs in favor of continuing the stay for the reasons set forth above. Continued litigation in the NJ Coverage Action would result in prejudice to the talc-victim creditors.

- Factor ten also weighs in favor of a stay, as judicial economy is best served by allowing the bankruptcy process, at this stage, to move forward expeditiously.

- Factor eleven similarly weighs in favor of continuing the automatic stay, as the parties in the NJ Coverage Action – though more than two years into the proceeding – had not yet even finished fact discovery, let alone prepared for trial.  Summary judgment motions have not yet been filed.

- Finally, factor twelve weighs in favor of a stay, for all of the reasons set forth at length above.

---

[11] Here, factor three does not apply because the NJ Coverage Action does not involve the Debtor as fiduciary; factor five does not apply because the dispute is with the Debtor's insurers; and factors eight and nine will not apply in a declaratory judgment action.

Accordingly, an analysis of the twelve *Mid-Atlantic* factors weighs overwhelmingly in favor of continuing the stay of the NJ Coverage Action.

### C. A Partial Stay of the NJ Coverage Action is Insufficient to Protect the Debtor's Asset.

In the alternative, the Moving Insurers request that this Court partially lift the stay in order to allow discovery and summary judgment motions to proceed before the New Jersey Superior Court. Moving Insurers' Mot. ¶¶ 80–81.[12]  For the reasons set forth throughout this Opposition, this request must be denied. Based on the Court's prior rulings, the resulting harm to the Debtor, its estate, and its creditors from permitting the Moving Insurers to continue seeking discovery, and file and obtain rulings on summary judgment motions, is identical to the harm in lifting the stay completely. It is unwarranted.

## CONCLUSION

WHEREFORE, the Official Committee of Talc Claimants I respectfully requests that the Court deny Travelers Casualty and Surety Company's *Motion for an Order Granting Relief from the Automatic Stay to Allow the NJ Coverage Action to Proceed* [D.I. 1488] and the New Jersey Coverage Action Plaintiff-Insurers' *Motion for an Order (I) Confirming that the Automatic Stay does not Apply to the New Jersey Coverage Action or, in the Alternative, (II) Granting Relief from*

---

[12] The Moving Insurers also argue that the stay should be lifted because "the Debtor might suggest this Court as a forum to litigate the dispute," and this Court would be required to abstain from hearing the dispute. Moving Insurers' Mot. ¶ 68. The TCC I's position is not that this Court should hear the dispute, but rather that the Debtor be allowed a "breathing spell" in order to determine the extent of the Debtor's rights under the Policies. The TCC I takes no position at this time as to the appropriate court to determine the coverage disputes.

*the Automatic Stay to Allow the New Jersey Action to Proceed* [D.I. 1491] and award such other

and further relief as it deems just and proper.

Dated:  March 16, 2022
         Wilmington, Delaware

<div style="margin-left: 40%">

**GENOVA BURNS LLC**

*/s/ Daniel M. Stolz*
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
mbaker@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Tel: (973) 467-2700
Fax: (973) 467-8126

*Local Counsel to Official Committee of Talc Claimants I*

**BROWN RUDNICK LLP**
David J. Molton, Esq.
Robert J. Stark, Esq.
Jeffrey L. Jonas, Esq.
Michael Winograd, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
Seven Times Square
New York, NY  10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Sunni P. Beville, Esq.
sbeville@brownrudnick.com
One Financial Center
Boston, MA  02111
Tel: (617) 856-8200
Fax: (617) 856-8201

</div>

*Co-Counsel for the*
*Official Committee of Talc Claimants I*

**PARKINS LEE & RUBIO LLP**
Leonard M. Parkins, Esq.
Charles M. Rubio, Esq.
lparkins@parkinslee.com
crubio@parkinslee.com
Pennzoil Place
700 Milan Street, Suite 1300
Houston, TX  77002
Tel: (713) 715-1666

*Special Counsel for the*
*Official Committee of Talc Claimants I*

**OTTERBOURG PC**
Melanie L. Cyganowski, Esq.
Adam C. Silverstein, Esq.
Jennifer S. Feeney, Esq.
mcyganowski@otterbourg.com
asilverstein@otterbourg.com
jfeeney@otterbourg.com
230 Park Avenue
New York, NY  10169
Tel: (212) 905-3628
Fax: (212) 682-6104

*Co-Counsel for the*
*Official Committee of Talc Claimants I*

**GILBERT LLP**
Kami Quinn, Esq. *(pro hac vice pending)*
Heather Frazier, Esq. *(pro hac vice pending)*
quinnk@gilbertlegal.com
frazierh@gilbertlegal.com
700 Pennsylvania Avenue SE
Suite 400
Washington, DC 22303
Tel: (202) 772-2200

*Proposed Special Counsel for the*
*Official Committee of Talc Claimants I*