UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1(b)**

**TRIF & MODUGNO LLC**
Louis Modugno
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Telephone:  973-547-3611
Facsimile:  973-554-1220
lmodugno@tm-firm.com

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman
Shaya Rochester (*admitted pro hac vice*)
Terence P. Ross (*admitted pro hac vice*)
50 Rockefeller Plaza
New York, New York 10020
sreisman@katten.com
srochester@katten.com
tross@katten.com

**MENDES & MOUNT LLP**
Eileen McCabe (*admitted pro hac vice*)
Stephen Roberts (*admitted pro hac vice*)
750 Seventh Avenue
New York, New York 10019
eileen.mccabe@mendes.com
stephen.roberts@mendes.com

*Attorneys for the New Jersey Coverage Action Plaintiff-Insurers*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>**Hearing Date: March 30, 2022** |

**NEW JERSEY COVERAGE ACTION PLAINTIFF-INSURERS' OMNIBUS
REPLY IN FURTHER SUPPORT OF MOTION FOR AN ORDER
(I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO
THE NEW JERSEY COVERAGE ACTION OR, IN THE ALTERNATIVE,
(II) GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW
THE NEW JERSEY COVERAGE ACTION TO PROCEED**

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 2

RELEVANT FACTUAL BACKGROUND ...................................................................... 4

ARGUMENT ................................................................................................................... 6

I.      THE AUTOMATIC STAY DOES NOT APPLY TO THE NEW JERSEY COVERAGE ACTION .................................................................................. 7

      A.      Section 362(a)(1) Does Not Apply To The New Jersey Coverage Action. ............ 7

            i.      The New Jersey Coverage Action Is Not An Action "Against the Debtor." ........................................................................................ 7

            ii.      The New Jersey Action Does Not Seek To "Recover A Claim" Against The Debtor. ................................................................. 8

      B.      Section 362(a)(3) Does Not Apply To The New Jersey Coverage Action. ............ 8

II.     EVEN IF THE AUTOMATIC STAY APPLIES, THE DOCTRINE OF MANDATORY ABSTENTION ESTABLISHES CAUSE TO LIFT THE STAY. ........ 12

III.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF LIFTING THE AUTOMATIC STAY. .................................................................................. 15

      A.      The Harm To The Moving Insurers Is Significant. ................................................ 15

      B.      The Debtor's Alleged Harms Do Not Outweigh The Harms To The Moving Insurers. ................................................................................ 17

      C.      Allowing The New Jersey Coverage Action To Proceed Will Benefit— Not Harm—The Debtor. .................................................................. 21

IV.   ALTERNATIVELY, THIS COURT SHOULD LIFT THE AUTOMATIC STAY FOR CERTAIN LIMITED PURPOSES. ...................................................... 22

NOTICE ......................................................................................................................... 24

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*,
666 F.2d 819 (3d Cir. 1981)...........................................................................................18

*Carter-Wallace, Inc. v. Admiral Ins. Co.*,
154 N.J. 312 (1998) .....................................................................................................23

*Criterion Claim Sols. v. Scottsdale Indem. Co.*,
No. 20-6225, 2021 WL 794787 (D.N.J. Mar. 1, 2021) .........................................18

*In re Burger Boys, Inc.*,
183 B.R. 682 (S.D.N.Y. 1994).................................................................................3, 12

*In re Calkins*,
BAP No. 17-1284, 2019 WL 1594016 (9th Cir. B.A.P. Apr. 9, 2019) ..............3, 12

*In re Campanile*,
No. 17-24902, 2019 WL 968095 (Bankr. D.N.J. Feb. 25, 2019) *aff'd sub nom.*
*Eagle One Fed. Credit Union v. Campanile*, No. 19-cv-284, 2020 WL 416182
(D.N.J. Jan. 27, 2020) ...............................................................................................15

*In re Congoleum Corp.*,
No. 03-51524 (Bankr. D.N.J.)..................................................................2, 12, 13, 14

*In re Diocese of Buffalo, N.Y.*,
616 B.R. 10 (Bankr. W.D.N.Y. 2020) ...................................................................14

*In re Duro Dyne Nat'l Corp.*,
No. 18-27963 (Bankr. D.N.I. 2016)..................................................................18, 19

*In re Ehsan*,
579 B.R. 722 (Bankr. D.N.J. 2018) ........................................................................10

*In re Kaiser Gypsum Co., Inc.*,
No. 16-31602 (Bankr. W.D.N.C. 2017)...........................................................18, 19

*In re Quigley Co., Inc.*,
361 B.R. 105 (Bankr. S.D.N.Y. 2007).....................................................................18

*Jones v. ABN AMRO Mortg. Grp., Inc.*,
551 F. Supp. 2d 400 (E.D. Pa. 2008), *aff'd* 606 F.3d 119 (3d Cir. 2010)..................8

*Kennedy v. Weichert Co.*,
  No. A-0395-19T2, 2020 WL 863640 (N.J. Super. Ct. App. Div. Feb. 21,
  2020) ..........................................................................................................................20

*Litton Indus., Inc. v. IMO Indus.*,
  200 N.J. 372 (2009) ...................................................................................................16

*Merchants Mut. Ins. Co. v. Monmouth Truck Equip., Inc.*,
  No. 06-cv-05395, 2008 WL 65109 (D.N.J. Jan. 4, 2008)........................................20

*New Jersey Dep't of Env't Prot. v. Exxon Mobil Corp.*,
  453 N.J. Super. 272 (App. Div. 2018) ...............................................................20, 21

*Owens-Illinois, Inc. v. United Ins. Co.*,
  138 N.J. 437 (1994) ...................................................................................................23

*Rivera v. Alonso*,
  No. 88-cv-5529, 1989 WL 200989 (D.N.J. June 27, 1989)......................................20

*Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp.*,
  303 B.R. 299 (D. Del. 2003).......................................................................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...................................................................................................17

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)..............................................................................................10, 11

**Statutes**

11 U.S.C. § 362(a)(1)........................................................................................2, 7, 8, 9. 24

11 U.S.C. § 362(a)(3)........................................................................................2, 7, 8, 9, 24

11 U.S.C. § 362(d)(1). .....................................................................................2, 12, 13, 24

11 U.S.C. § 541(a) .......................................................................................................9

28 U.S.C. § 1334(c)(2)................................................................................................12

**Rules**

D.N.J. LBR 2002-1......................................................................................................24

Fed. R. Bankr. P. 2002................................................................................................24

N.J. Ct. R. R. 4:33-1....................................................................................................20

N.J. Ct. R. R. 4:33-2....................................................................................................21

The plaintiff-insurers (the "Moving Insurers")[1] in the lawsuit, *Atlanta International Insurance Company, et al. v. Johnson & Johnson, et al.*, Case No. MID-L-003563-19, currently pending in the Superior Court of New Jersey (the "New Jersey Coverage Action"), hereby file this omnibus reply (the "Reply") in further support of the relief requested in their *Motion for an Order (i) Confirming That The Automatic Stay Does Not Apply To The New Jersey Coverage Action Or, In The Alternative, (ii) Granting Relief From The Automatic Stay To Allow The New Jersey Coverage Action To Proceed* [Docket No. 1491] (the "Motion") and in response to the *Debtor's Omnibus Objection to Insurers' Motions for Relief from the Automatic Stay* [Docket No. 1739] (the "Debtor Objection") and the *Official Committee of Talc Claimants I's Response in Opposition to (1) Travelers Casualty and Surety Company's Motion for an Order Granting Relief from the Automatic Stay to Allow the NJ Coverage Action to Proceed, D.I. 1488, and (2) the New Jersey Coverage Action Plaintiff-Insurers' Motion for an Order (I) Confirming that the Automatic Stay does not Apply to the New Jersey Coverage Action or, in the Alternative, (II) Granting Relief from the Automatic Stay to Allow the New Jersey Action to Proceed, D.I. 1491* [Docket No. 1738] (the "TCC I Objection" and, together with the Debtor Objection, the "Objections").[2]

---

[1] The Moving Insurers are: Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company; Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen).

[2] Republic Indemnity Company of America, a party in the New Jersey Coverage Action, joined the relief requested in the Motion.

## PRELIMINARY STATEMENT[3]

1.       The Moving Insurers seek a determination that the automatic stay does not apply to the New Jersey Coverage Action or, in the alternative, relief from the stay to allow the New Jersey Coverage Action to proceed before the Superior Court of New Jersey either in its totality or with respect to certain discrete aspects of that litigation.

2.       As a threshold matter, Section 362(a)(1) and Section 362(a)(3) of the Bankruptcy Code, by their plain terms, do not apply to the New Jersey Coverage Action.  Accordingly, the Moving Insurers respectfully request that the Court hold that the automatic stay does not apply to the New Jersey Coverage Action.

3.       If, however, this Court determines that the automatic stay applies, cause exists to lift the stay under Section 362(d) of the Bankruptcy Code based on the doctrine of mandatory abstention.  In *In re Congoleum*, this Court lifted the automatic stay to allow the debtor's insurers to proceed with their prepetition state court coverage action against the debtor and its affiliates based solely upon a finding that it was required to abstain from the insurance coverage action. *See* Motion, Ex. 29.  The Objections wholly ignore this Court's decision in *Congoleum*.  The Debtor does not deny that this Court must abstain from hearing the New Jersey Coverage Action. Instead, the Debtor contends that the question of mandatory abstention is not relevant to this Court's decision on the Motion.  Debtor Objection ("Debtor Obj."), ¶ 54.[4]  The Debtor argues that the question of mandatory abstention is not relevant because the issue before the Court is when the New Jersey Coverage Action should be heard, not where it should be heard.  *Id.*  That argument is contradicted by this Court's decision in *Congoleum* that found mandatory abstention in and of itself is sufficient cause to lift the automatic stay.  Other courts have reached the same

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[4] TCC I states that it "takes no position at this time as to the appropriate court to determine the coverage disputes."  TCC I Objection ("TCC I Obj.") at 21 n.12.

conclusion. *E.g., In re Calkins*, BAP No. 17-1284, 2019 WL 1594016, at *4 (9th Cir. B.A.P.

Apr. 9, 2019) ("for the Abstention Order to be fully effective, a partial stay lift—or a comfort

order to that effect—was implicitly necessary"); *In re Burger Boys, Inc.*, 183 B.R. 682, 688-89

(S.D.N.Y 1994) (affirming grant of relief from automatic stay and noting the bankruptcy court's

finding that the "Adversary Proceeding was a noncore proceeding from which it was required to

abstain").  Thus, mandatory abstention is not only relevant to the Motion, it is dispositive.

4.      Moreover, the balance of hardships favors lifting the stay.  As discussed in detail

below, if the stay is not lifted, the Debtor and talc claimants will seek to impose a global

settlement upon the Moving Insurers—derived from a mediation in which the Moving Insurers

have not been allowed to participate despite the claims control provisions in the Policies.  J&J

also will contend that the Moving Insurers owe prejudgment interest as a result of the delay in

the New Jersey Coverage Action.  In addition, there is the risk that evidence (particularly third-

party evidence) will be lost while the New Jersey Coverage Action is stayed.

5.      Indeed, delaying resolution of the New Jersey Coverage Action actually

prejudices the Debtor.  Granting relief from the stay will allow the Moving Insurers, at a

minimum, to take critical discovery on, and potentially resolve, the Middlesex and Allocation

Issues, which, as discussed in detail below, could **increase** any potentially available and

responsive insurance coverage limits **by billions of dollars**.  *See* Travelers Casualty & Surety

Company's Motion for Relief from the Automatic Stay [Docket No. 1488-1] ("Travelers' Mot.")

at 2, 5.

6.      Delaying resolution of the New Jersey Coverage Action also prejudices the

Debtor by holding resolution of important insurance coverage issues in abeyance.  If the Debtor

and TCC I expect insurance rights to be part of any global settlement, critical questions around

whether the Debtor is entitled to indemnity and reimbursement for adverse verdicts and settlements, as well as defense costs already incurred by J&J, must be resolved. Otherwise, the insurance component of any global settlement will be premised on assumptions (at best) or outright errors (at worst).[5]

## RELEVANT FACTUAL BACKGROUND

7.      The Moving Insurers commenced the New Jersey Coverage Action in the Superior Court of New Jersey in May 2019 to obtain declaratory relief regarding the rights and obligations of the parties to certain insurance policies (collectively, the "Policies") issued to Johnson & Johnson ("J&J"). The New Jersey Coverage Action seeks a determination, *inter alia*, as to: (a) whether the underlying insurance has been properly exhausted with respect to the Underlying Claims; (b) whether all prerequisites to coverage under the Policies have taken place; (c) whether bodily injuries or personal injuries fall within the coverage and are not subject to a policy exclusion, and whether they took place during the Policies' periods; (d) what trigger of coverage and allocation methodology among the parties applies to defense and indemnity costs for the Underlying Claims; and (e) what claims for indemnity and/or defense costs may be limited or excluded from coverage or barred by public policy. Motion, ¶ 17.

8.      One issue being litigated in the New Jersey Coverage Action is of particular significance here. This relates to the claims control provisions in the Policies (the "Claims Control Provisions"), which provide, for example, that the insurer "shall have full control over the defense and settlement of all claims or potential claims." Motion, ¶ 14. J&J's failure to acknowledge its obligations and the Moving Insurers' rights under the Claims Control Provisions largely prompted the filing of the New Jersey Coverage Action. The Moving Insurers sought

---

[5] The Moving Insurers dispute that insurance should constitute any part of such a global settlement.

and seek a ruling from the Superior Court of New Jersey that J&J has breached the Claims Control Provisions and that J&J is not entitled to insurance coverage for the claims subject to that breach. Furthermore, as J&J knew, the Moving Insurers were planning to file a motion for summary judgment on the Claims Control Provisions issue on the very date that the Debtor filed for Chapter 11.

9. Another issue being litigated in the New Jersey Coverage Action that is of particular significance here is the so-called Middlesex and Allocation Issues. Motion, ¶ 19. On October 29, 2018, J&J's captive insurance company, Middlesex, *post hoc* issued Endorsement No. 32 to one of its policies that, along with certain other endorsements, purport to limit Middlesex's coverage and to shift allocation of coverage among J&J's insurers. *Id.* The New Jersey Coverage Action seeks a declaration as to the validity and/or effect of these endorsements. As the Travelers' Motion notes, if the Moving Insurers prevail on this issue in the New Jersey Coverage Action, there is the potential to increase the insurance coverage limits by billions of dollars in any allocation scenario. *See* Travelers' Mot. at 2, 5.

10. The pleadings filed in the New Jersey Coverage Action also identify other coverage issues which need to be resolved before any determination can be made as to whether there is coverage for the talc claims and, if so, the amount of limits available that are potentially responsive to such claims. These issues will not and cannot be resolved in this Chapter 11 case.

11. The New Jersey Coverage Action is assigned to the Superior Court of New Jersey's Complex Business Litigation Program. This program was created by the New Jersey Judiciary "to serv[e] the needs of New Jersey's vibrant business community and [to] ensur[e] that the courts provide an efficient and effective venue for resolution of business disputes."

*Notice to the Bar – Expansion of Complex Business Litigation Program Resources*," NEW

JERSEY COURTS, available at https://www.njcourts.gov/notices/2019/n190222a.pdf?c=Vaw.

12.    Consistent with this initiative, the New Jersey Coverage Action has moved along

apace.  The parties served an aggregate 105 document requests and had substantially completed

document production in response to those requests before the document production deadline of

September 15, 2021.  These productions included more than a million pages of documents.  The

parties also engaged in extensive motion practice, including a Motion to Stay, a Motion to

Bifurcate, and a Motion to Compel Arbitration.  On July 19, 2021, the Moving Insurers noticed

the depositions of two J&J employees for August 11, 2021 and August 25, 2021.  Although

neither deposition had taken place as of the Petition Date, the Moving Insurers had repeatedly

asked J&J's counsel to schedule these depositions "as soon as possible."  Declaration of Shaya

Rochester ("Rochester Decl."), Ex. 1.  The Moving Insurers also served third-party subpoenas

prior to the Petition Date.  While fact depositions and expert discovery are still on the horizon for

some discrete causes of action, others are ripe for adjudication.  In fact, the Moving Insurers are

ready to file a motion for summary judgment on the Claims Control Provision issue, which could

fully and finally resolve the underlying issue.

## ARGUMENT

13.    As set forth in the Motion and this Reply, the automatic stay does not apply to the

New Jersey Coverage Action and seek from this Court a declaration confirming that the stay

does not apply.  If, however, the Court determines that the automatic stay is applicable, the

Moving Insurers seek to have the stay lifted and have presented sufficient cause to justify such

relief.[6]

---

[6] The Moving Insurers incorporate by reference the arguments set forth in the Motion.

# I.   THE AUTOMATIC STAY DOES NOT APPLY TO THE NEW JERSEY COVERAGE ACTION.

14.      The Debtor and TCC I argue that Sections 362(a)(1) and 362(a)(3) apply here to bring the New Jersey Coverage Action within the automatic stay.  This is incorrect as a matter of law.  Section 362(a) of the Bankruptcy Code provides in pertinent part:

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

11 U.S.C. §§ 362(a)(1), (3).  As discussed below, these provisions, by their plain terms, do not apply to the New Jersey Coverage Action.

## A.      Section 362(a)(1) Does Not Apply To The New Jersey Coverage Action.

### i.      The New Jersey Coverage Action Is Not An Action "Against the Debtor."

15.      The Objections do not dispute that Section 362(a)(1), by its plain terms, limits the application of a stay to the commencement or continuation "of a judicial, administrative, or other action or proceeding **against the debtor**."  11 U.S.C. 362(a)(1) (emphasis added).  Although the Debtor argues that it is a party to the New Jersey Coverage Action, it also admits that is has not been substituted into that proceeding.  *See* Debtor Obj., ¶ 23 (musing that it "would be entitled" to substitution).

16.      In fact, the Debtor cannot become a party to the New Jersey Coverage Action by "stepp[ing] into [Old JJCI's] shoes," as it suggests.  Debtor Obj., ¶¶ 22-23.  Under the Corporate Restructuring crafted by J&J, the Debtor did not simply succeed Old JJCI.  Instead, New JJCI received Old JJCI's operating assets and its business, while the Debtor was saddled with Old

JJCI's talc-related liabilities and certain discrete assets, including the Talc Related Insurance Assets. *See* Divisional Merger Schedules, Schedule 5(b)(i), (ii); *see also* Motion, ¶¶ 22-27. Accordingly, the Debtor is not a mere successor to Old JJCI and cannot be automatically substituted into the New Jersey Coverage Action for Old JJCI.

### ii.    The New Jersey Action Does Not Seek To "Recover A Claim" Against The Debtor.

17.    Section 362(a)(1) further places a stay on "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to **recover a claim** against the debtor that arose" pre-petition. 11 U.S.C. § 362(a)(1). This provision also does not apply here because the New Jersey Coverage Action requests only declaratory judgments interpreting the Policies. Quite simply, either the Debtor and its affiliates have rights under the Policies or they do not. A determination of rights is not recovery on a claim. *See Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008), *aff'd* 606 F.3d 119 (3d Cir. 2010) ("Declaratory judgment is a remedy, not . . . a claim upon which relief may be granted.").

### B.    Section 362(a)(3) Does Not Apply To The New Jersey Coverage Action.

18.    Section 362(a)(3) of the Bankruptcy Code is likewise inapplicable. The Objections ignore the plain language of the statute, which stays any act "to obtain possession of" or "exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The New Jersey Coverage Action does not seek to "obtain possession" or "exercise control over property of the estate." *See* Motion, Section V.A.2. Rather than deplete estate assets, the New Jersey Coverage Action would define what insurance assets, if any, are part of the estate in the first instance. *See* Debtor Obj., ¶ 26; TCC I Obj. at 9-10. Critically, with regard to the Middlesex and Allocation Issues, the New Jersey Coverage Action may potentially expand insurance coverage limits by billions of dollars. Travelers' Mot. at 2, 5.

19.     The Debtor argues that, "[a]lthough styled as a declaratory judgment action, the NJ Coverage Action seeks to adjudicate—and exercise control over—valuable property rights of the Debtor and is stayed by Section 362(a)(3)."  Debtor Obj., ¶ 24.  The New Jersey Coverage Action is styled as a declaratory judgment action **because it is a declaratory judgment action**. The Moving Insurers seek only an adjudication of the existence and extent of rights under the Policies—an exercise in contract interpretation.  The Moving Insurers have not "eviscerate[d] the availability of coverage," if the New Jersey Coverage Action is resolved in their favor.  Debtor Obj., ¶ 26.  A declaration by the Superior Court of New Jersey that certain talc claims are not covered under the Policies means there was no coverage to eviscerate in the first place.  TCC I's argument on this point is equally meritless.  TCC I Obj. at 9 (arguing that if the Moving Insurers prevail, the Debtor will lose nearly $2 billion in insurance proceeds in violation of Section 362(a)(3)).  Again, a declaration that certain talc claims are not covered under the Policies means that there was no $2 billion to "lose."[7]

20.     The Objections also argue that the Court has already found that the Policies are property of the estate, apparently suggesting that either collateral estoppel or *res judicata* applies. This argument is derived from *dicta* in the Court's ruling on the Motion to Extend the Preliminary Injunction [Adv. Proc. Dkt. No. 2], in which the Court stated: "although the extent of shared insurance coverage is disputed, it remains uncontested that Debtor shares insurance policies – which are estate property under 11 U.S.C. § 541(a) – with the Protected Parties." Debtor Obj., ¶ 20 (quoting this Court's analysis of Section 362(a)(1)).  The Policies, however, are not property of the estate.  Under the Corporate Restructuring, the Policies were not allocated

---

[7] In making this argument, the Objections rely on *Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 303 B.R. 299 (D. Del. 2003).  *See* Debtor Obj., ¶ 26; *see also* TCC I Obj. at 6.  *Kaiser*, however, does not articulate any rationale or analysis to substantiate its holding, let alone describe circumstances analogous to the facts here.

to the Debtor.  *See* Motion, ¶¶ 41-46 (explaining how the Policies were allocated to New JJCI under the Corporate Restructuring).  TCC I agreed with that proposition in a pleading it filed on March 23, 2022 after filing its Objection: "any insurance policies available to the Debtor are **not** property of the estate and would **not be depleted** by continuing the litigation at issue" and that the litigation against non-debtors, such as the insurers, "would not (a) impact the Debtor's estate [or] (b) deplete any insurance coverage available to the Debtor."  *Statement of Issues on Appeal and Designation of Record of Items to be Included in the Record on Appeal as to Stay Opinion and Order* [Docket No. 1833] at 4 (emphasis added).  TCC I also states in the same pleading that the Policies are "**non-debtor** insurance policies."  *Id.* (emphasis added).

21.     Moreover, this *dicta* does not bind the Court in deciding the Motion.  As the quoted language from the Court's ruling plainly states, during the Preliminary Injunction litigation, the Debtor and TCC I did not contest whether the Policies were property of the estate. Because the issue as to whether the Policies are estate property "was not actually litigated" in the Preliminary Injunction litigation, there is no collateral estoppel effect upon the Motion.  *See In re Ehsan*, 579 B.R. 722, 728-29 (Bankr. D.N.J. 2018).  As in *Ehsan*, the Moving Insurers did not participate in the motion practice leading to this Court's ruling on the Motion to Extend the Preliminary Injunction and, thus, did not present counter arguments in an adversarial context such that the issue was "actually litigated."[8]

22.     Moreover, this Court's *dicta* does not constitute *res judicata* because it was made in connection with the Motion to Extend the Preliminary Injunction filed in an adversary proceeding to which the Moving Insurers were **not** a party.  *See Taylor v. Sturgell*, 553 U.S. 880,

---

[8] A showing that the issue was not "actually litigated" is dispositive.  *See Ehsan*, 579 B.R. at 727.  The Moving Insurers, however, also contest that this Court's *dicta* regarding the insurance policies is binding because adjudication of the issue was not necessary to resolve the Motion to Extend the Preliminary Injunction.

884 (2008) ("It is a principle of general application in Anglo–American jurisprudence that one is

not bound by a judgment *in personam* in a litigation in which he is not designated as a party").

In *Sturgell*, the United States Supreme Court enumerated six "categories" of exemptions for

when a non-party would be subject to preclusion.  *Id.* at 893.  None of those exemptions applies

here.

23.     The Moving Insurers did not seek to litigate this issue in the adversary proceeding

because the Debtor expressly represented that any holding regarding the preliminary injunction

adversary proceeding would "apply to stay and enjoin the Debtor Talc Claims asserted by the

Defendants only.  **It will not apply to claims of the Objecting Insurers**."  *Debtor's Omnibus*

*Reply in Support of Motion for an Order (I) Declaring That the Automatic Stay Applies to*

*Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III)*

*Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc. D.I. 146], at 1,

n.2 (emphasis added).  In TCC I's own words, "the Debtor made clear that **any ruling from the**

**Court regarding an extension of the automatic stay would not apply to claims of the**

**Moving Insurers**."  TCC I Obj. at 5 (emphasis added).

24.     Finally, the Objections ignore the fact that, under the Corporate Restructuring, the

Debtor may have a right to make talc-related claims under the Policies on behalf of Old JJCI, but

has no right to make such claims on behalf of J&J or New JJCI.  *See* Motion, ¶¶ 41-46.  That

distinction is critical because all of the letters demanding coverage under the Policies were sent

by or on behalf of J&J.  None were sent by or on behalf of Old JJCI.  *See* Motion, ¶ 12.[9]  As

such, to the extent it is determined that J&J is entitled to indemnity and reimbursement for the

---

[9] The Debtor asserts that Old JJCI did in fact assert claims under the Policies against the Moving Insurers.
*See* Debtor Obj., ¶ 22.  The Debtor, however, has not produced a single demand letter sent by or on behalf
of Old JJCI.  In contrast, copies of demands letters sent by J&J are attached as Exhibits 5-6 to the Motion.

approximately $4.5 billion in adverse verdicts, settlements and defense costs incurred before the

Petition Date, any such insurance proceeds paid on account of such claims would go to J&J, not

the Debtor.  As such, the Debtor has no meaningful property interest in the Policies.

## II.   EVEN IF THE AUTOMATIC STAY APPLIES, THE DOCTRINE OF MANDATORY ABSTENTION ESTABLISHES CAUSE TO LIFT THE STAY.

25.    Even if the automatic stay applies to the New Jersey Coverage Action, Section

362(d)(1) of the Bankruptcy Code requires a court to "grant relief from the stay provided under

subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such

stay (1) for cause . . . ."  11 U.S.C. § 362(d)(1).  Cause to lift the stay is established if a

bankruptcy court is required to abstain from hearing a state court proceeding pursuant to 28

U.S.C. § 1334(c)(2).  *E.g., In re: Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J.), Feb. 2, 2004

Hr'g. Tr. at 41 [Docket No. 294] (the "*Congoleum* Hr'g Tr.");[10] *In re Burger Boys, Inc.*, 183

B.R. at 688-89.

26.    Judge Fergurson's decision in *Congoleum* is instructive in this regard.  In that

case, this Court held that "all the factors for mandatory abstention have been established" and,

based on that finding alone, ordered relief from the stay.  *Order Concerning Motion for

Declaration that Section 362(a) of the Bankruptcy Code is Not Applicable or, in the Alternative,

for Relief from the Automatic Stay* in *In re Congoleum Corp.*, Case No. 03-51524 (Bankr. D.N.J.)

[Docket No. 497].[11]  Thus, under *Congoleum*, mandatory abstention constitutes a *per se* showing

that cause exists to lift the automatic stay.  *See also In re Calkins*, BAP No. 2019 WL 1594016,

at *4 ("for the Abstention Order to be fully effective, a partial stay lift–or a comfort order to that

effect–was implicitly necessary"); *In re Burger Boys, Inc.*, 183 B.R. at 688 (affirming the grant

of relief from the stay and favorably noting the bankruptcy court's consideration that the

---

[10] The *Congoleum* Hr'g Tr. is attached as Exhibit 29 to the Motion.
[11] The *Congoleum* Order is attached as Exhibit 25 to the Motion.

"Adversary Proceeding was a noncore proceeding from which it was required to abstain").  As established in the Motion, the New Jersey Coverage Action meets each criteria for mandatory abstention.  Motion, ¶¶ 72-78.  The Objections do not even make any attempt to refute that fact.

27.    The facts of *Congoleum* make it particularly relevant here.  *In Congoleum*, this Court acknowledged "the substantial work already done by the state court."  *Congoleum* Hr'g Tr. at 40.  This Court also recognized that the state court judge was "intimately familiar with the record" and "[c]onversely, [that] it would take this court several months of frantic work just to get to the same page as the parties."  *Id.* at 40-41.  This is the same factual setting as presented here by the New Jersey Coverage Action.

28.    The fact that the New Jersey Coverage Action is not on the cusp of full and final resolution of all issues is irrelevant.[12]  Significantly, *Congoleum* held, "[t]here may be more time and additional litigation" required to resolve the state court action, "but, nothing that the Debtor has presented suggests that this critical question can be determined more quickly and efficiently in the Bankruptcy Court."  *Id.* at 42.

29.    The critical fact here is that the Superior Court of New Jersey is "intimately familiar" with the New Jersey Coverage Action having presided over it for almost three years.  The New Jersey Coverage Action also benefits from the Complex Business Litigation Program, which is specifically "designed to better serve the litigation needs of New Jersey businesses by resolving complex business, commercial and construction cases in an **expedited manner**."  *"Complex Business Litigation Program*," NEW JERSEY COURTS, available at https://www.njcourts.gov/courts/civil/cblp.html  (emphasis added).    Respectfully, as in

---

[12] This is especially true given that the New Jersey Coverage Action is on the cusp of litigating **certain critical** issues, including the Claims Control Provisions issue.

*Congoleum*, it would take this Court "several months of frantic work," if not more, to get up to speed on the record and the issues relevant to the New Jersey Coverage Action.

30.    Rather than contend that there is no mandatory abstention, the Debtor argues that mandatory abstention is irrelevant to application of the automatic stay.  *See* Debtor Obj., Section D.[13]  Completely ignoring *Congoleum*, the Debtor instead cites to *In re Diocese of Buffalo, N.Y.*, 616 B.R. 10 (Bankr. W.D.N.Y. 2020).  *Diocese of Buffalo*, however, is inapposite.  In that case, the Western District of New York, unlike this Court, was presiding over insurance coverage issues in a pending adversary proceeding.  Moreover, the insurance coverage action in the bankruptcy court was at nearly the same procedural posture as the parallel state court action, which had been filed a mere three months earlier.  Given these facts, "the central issue [was] whether a prompt determination of coverage is more likely [] in bankruptcy court or in state court." *Id.* at 13.  In the factual setting of *Diocese of Buffalo*, the bankruptcy court was clearly in a better position to quickly adjudicate the issues.  *Id.*  That is not true here with respect to the New Jersey Coverage Action.

31.    In contrast to *Diocese of Buffalo*, the New Jersey Coverage Action has been pending for almost three years.  During that time, the parties had substantially completed document production; engaged in extensive motion practice; noticed depositions; issued third-party subpoenas; and were on the precipice of filing summary judgment motions when the Debtor filed its Chapter 11 petition.  Even if an adversary proceeding were initiated tomorrow, this Court would be significantly behind the New Jersey Coverage Action, and that adversary proceeding would not benefit from the advantages afforded litigants under the New Jersey Complex Business Litigation Program.  *See* Motion, ¶ 77.

---

[13]  TCC I "takes no position" on this Court's obligation to abstain from the New Jersey Coverage Action, choosing to refrain from arguing the issue.  TCC I Obj. at 21 n.12.

## III.    THE BALANCE OF HARMS WEIGHS IN FAVOR OF LIFTING THE AUTOMATIC STAY.

32.     Should this Court find that the doctrine of mandatory abstention does not provide sufficient cause in and of itself to lift the automatic stay, this Court must undertake a further analysis in which it weighs the balance of harms among the parties.  The Court decides whether "cause" exists by assessing three factors: "(1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) [w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) [t]he probability of the creditor prevailing on the merits."  *In re Campanile*, No. 17-24902, 2019 WL 968095, at *2 (Bankr. D.N.J. Feb. 25, 2019) (citations omitted) *aff'd sub nom. Eagle One Fed. Credit Union v. Campanile*, No. 19-cv-284, 2020 WL 416182 (D.N.J. Jan. 27, 2020).  Under this balancing analysis, it is clear the stay should be lifted because the harm to the Moving Insurers if the stay is not lifted exceeds the harm to the Debtor if it is lifted.

### A.    The Harm To The Moving Insurers Is Significant.

33.     Cause exists to lift the stay based on the harm that would otherwise be inflicted on the Moving Insurers if the stay is not lifted.  *See In re Campanile*, 2019 WL 968095, at *2. Indeed, the Superior Court of New Jersey has already recognized the prejudice caused to the Moving Insurers resulting from a stay in the New Jersey Coverage Action.  *See* Motion, ¶ 7.

34.     *First*, a stay harms the Moving Insurers because they face the risk that the Debtor and talc claimants will try to force upon the Moving Insurers a global settlement—reached in a mediation that excluded the Moving Insurers—before they have obtained a judicial determination regarding the Claim Control Provision issue.  The Debtor misleadingly argues that the Moving Insurers are not harmed by the Debtor's failure to allow them "to 'defend, control, and settle the Underlying Claims' . . . given that the talc litigation currently is stayed."  Debtor

15

Obj., ¶ 49.  The underlying-talc claims that are stayed are the **exact same claims** that the Debtor

now seeks to settle through mediation.  Thus, while these claims may be stayed in civil court,

they are moving towards possible settlement in this Chapter 11 case.  *See Order Establishing*

*Mediation Protocol* [Docket No. 1780].  And, they are doing so without the participation and

consent of the Moving Insurers, despite the Claims Control Provisions.  *See id.* at ¶ 3.

35.    *Second,* the automatic stay harms the Moving Insurers because the J&J parties'

affirmative claims would not be subject to the stay and, thus, could proceed against the Moving

Insurers in the New Jersey Coverage Action.  The Debtor's assertion that it "will not continue

[litigation] while the NJ Coverage Action is stayed" is meaningless.  Debtor Obj., ¶ 49.  Even if

the Debtor were a party to the New Jersey Coverage Action—which it is not—the Debtor cannot

make any commitments or representations on behalf of J&J, Middlesex or any other affiliate that

these entities will stand down on their claims.  Thus, this risk remains.

36.    *Third*, if the J&J parties prevail in the New Jersey Coverage Action, they will

seek to recover prejudgment interest on any amounts owed under the Policies, including for the

period in which the New Jersey Coverage Action is stayed by the filing of this Chapter 11 case.

*See Litton Indus., Inc. v. IMO Indus.*, 200 N.J. 372, 390 (2009) ("[T]he award of prejudgment

interest in a contract case is within the sound discretion of the trial court.")  To be clear, the

Moving Insurers dispute that any potential covered entity is entitled to interest on amounts

allegedly owed and contend that the equities would compel a finding that interest is not

warranted.  J&J, however, will argue otherwise.  Thus, there is a very real risk that a stay here

would expose the Moving Insurers to an increase in costs.  In response, the Debtor and TCC I

argue that an award of interest is "speculative."  Debtor Obj., ¶ 50; TCC I Obj. at 17.  That

argument is meritless.  As the United States Supreme Court has held, the risk of future harm does

not render that harm "speculative." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("intangible injuries can nevertheless be concrete"). Future risks are seldom knowable to a certainty and yet courts regularly consider them.

37.     *Fourth*, a stay of the New Jersey Coverage Action harms the Moving Insurers because there is a likelihood that evidence will be lost or spoiled. It is indisputable that memories fade, documents get lost, and information is destroyed pursuant to document retention policies. This is especially true with respect to third-party entities who are (or will be) the recipient of subpoenas. In fact, on August 23, 2021, the Moving Insurers served a subpoena on third-party Marsh McLennan, and, on September 16, 2021, they served a subpoena on third-party Marsh Management Services, Inc. Responses to both subpoenas remain outstanding.

**B.     The Debtor's Alleged Harms Do Not Outweigh The Harms To The Moving Insurers.**

38.     The substantial prejudice to the Moving Insurers from the automatic stay shifts the burden to the Debtor to demonstrate its harm is more significant. The Debtor and TCC I have failed to meet this burden.

39.     The Debtor alleges that, by allowing the expected or intended injury issue ("E&I Issue") to proceed in the New Jersey Coverage Action, it will be subjected to "risk of collateral estoppel and record taint." Debtor Obj., ¶ 35; *see also id.* at ¶¶ 36-38. No such risk exists because the issues presented in the New Jersey Coverage Action are not the same issues presented in this Chapter 11 case. The New Jersey Coverage Action addresses the extent to which insurance coverage is available for the costs related to defending, litigating, or settling talc claims, if any, and the proper allocation method for any covered claim. These questions exist independent of this Court's adjudication of the underlying-talc claims. Indeed, courts routinely resolve insurance coverage actions seeking declaratory judgment while underlying-tort claims

17

remain pending. *See, e.g., ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981) ("The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement."); *Criterion Claim Sols. v. Scottsdale Indem. Co.*, No. 20-6225, 2021 WL 794787, at *8 (D.N.J. Mar. 1, 2021) (same).   Moreover, in light of the extensive record already developed in the underlying tort actions as to J&J's knowledge, expectations and intentions, any potential issues concerning collateral estoppel or record taint already exist.

40.     The Debtor alleges that the cases cited by the Moving Insurers in support of lifting the stay do not include "assertions by the debtors that issues in the coverage actions were identical to critical issues in the debtors' reorganizations or that resumption of the coverage litigation would place the debtors at risk of suffering collateral estoppel and record taint or adversely impact critical settlement efforts."   Debtor Obj., ¶ 47.   This is inaccurate.   For example, in *In re Quigley Co., Inc.*, 361 B.R. 105 (Bankr. S.D.N.Y. 2007), the Debtor and its corporate parent argued lifting the stay would "divert the scarce resources of [the Debtor] . . . hindering efforts to confirm the Plan and leading to the possibility of inconsistent outcomes . . . ." *Consolidated Response of Quigley Company, Inc. and Pfizer Inc. to (1) Cross-Claims and Counterclaims of Co-Defendant Insurers, (2) Motion by Certain Insurers to Stay Adversary Proceeding and (3) Hartford's Motion to Dismiss or, in the Alternative, Abstain or Stay the Adversary Proceeding*, in *Continental Casualty Company v. Pfizer Inc.*, Adv. Proc. No. 06-01299 [Docket No. 190] at ¶ 19.   Notwithstanding the argument by the debtor that lifting the stay risked inconsistent outcomes, the court lifted the stay.   Similarly, in *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (Bankr. D.N.I. 2016) and *In re Kaiser Gypsum Co., Inc.*, No. 16-31602

(Bankr. W.D.N.C. 2017), the bankruptcy courts granted relief from the automatic stay, even though there was a risk of collateral estoppel or record taint in the parallel state court coverage actions. *Duro Dyne*, at 33, 35-36; *Kaiser Gypsum*, at 9.

41.     Although the Debtor only mentions the E&I Issue in its Objection, the Moving Insurers reiterate that there is no further discovery needed with regard to motion practice as to the Claims Control Provisions issue.  The Moving Insurers had a summary judgment motion ready to file on this issue when the Debtor commenced this Chapter 11 case.  Motion, ¶ 21. Notwithstanding the Debtor's suggestion otherwise, McCarter & English knew on the eve of the Petition Date that the Moving Insurers intended to file the summary judgment motion the next day.  Rochester Decl., Ex. 2.  McCarter & English had even negotiated a briefing schedule for the summary judgment motion. *Id.*

42.     The Objections also assert that the New Jersey Coverage Action will "burden" or "distract[]" the Debtor if permitted to proceed.  Debtor Obj., ¶ 41; TCC I Obj. at 6.  There is no merit to this argument.  The Debtor's lead bankruptcy counsel is not representing any of the J&J parties in the New Jersey Coverage Action.  Jones Day has not even entered an appearance in that case.  A different law firm, McCarter & English, represents the J&J parties in the New Jersey Coverage Action.  Even if the Debtor's lead bankruptcy counsel is called upon to participate occasionally in the New Jersey Coverage Action, that participation should not be a burden given that Jones Day has more than 2,500 attorneys.

43.     TCC I contends that it too would be burdened by having to participate in the New Jersey Coverage Action.  TCC I Obj. at 6-7, 14 n.7.  First, TCC I is not a party to the New Jersey Coverage Action.  Moreover, because TCC I has no standing in the New Jersey Coverage Action, it cannot intervene in that litigation. *New Jersey Dep't of Env't Prot. v. Exxon Mobil*

19

*Corp.*, 453 N.J. Super. 272, 291 (App. Div. 2018) (intervention "is premised upon the putative intervenor's demonstrating that he or she has standing either in the action in chief . . . or to bring an independent action"); *see also Kennedy v. Weichert Co.*, 2020 WL 863640, at *4 (N.J. Super. Ct. App. Div. Feb. 21, 2020) ("those without standing in the first instance are also without sufficient interest to warrant intervention"). TCC I has no standing in the New Jersey Coverage Action because New Jersey law "prohibits actions by a third party against an insurer absent some statutory or contractual provision permitting direct action." *Merchants Mut. Ins. Co. v. Monmouth Truck Equip., Inc.*, No. 06-cv-05395, 2008 WL 65109, at *4 (D.N.J. Jan. 4, 2008) (plaintiff's claim against employer's insurance company fails as a matter of law for lack of standing); *accord Rivera v. Alonso*, No. 88-cv-5529, 1989 WL 200989 (D.N.J. June 27, 1989) ("an injured party generally possesses no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment.").

44.    Moreover, TCC I cannot satisfy the requirements for intervention as of right. Intervention as of right is proper when the intervening party "claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." N.J. Ct. R. R. 4:33-1. TCC I does not have the right to intervene for three reasons. First, it has no interest in the property because the determination of whether the J&J entities can recover insurance coverage will not affect the Debtor's ability to fund a settlement. *See* Motion, Section V.B.1.a. Second, for the same reason, the disposition of the New Jersey Coverage Action would not "as a practical matter impair or impede" TCC I's (alleged) interest. Third, TCC I's alleged interest in the New Jersey Coverage Action is adequately represented by the J&J entities that are parties to the action

because both groups would seek the exact same resolution—a declaration that the Moving Insurers must cover the J&J entities' talc-related costs and liabilities.

45.     TCC I also cannot satisfy the requirements for permissive intervention, which allows an entity to "intervene in an action if the claim or defense and the main action have a question of law or fact in common."  N.J. Ct. R. R. 4:33-2.  Because TCC I has no "claim or defense" against the Moving Insurers, it cannot intervene.  *Exxon Mobil Corp.*, 453 N.J. Super. at 287 ("Under the plain language of these two Rules, intervention is not appropriate unless the putative intervenor can assert its own 'claim or defense.'").

**C.     Allowing The New Jersey Coverage Action To Proceed Will Benefit—Not Harm—The Debtor.**

46.     Lifting the stay to allow the New Jersey Coverage Action to proceed will not harm the Debtor.  The Debtor has admitted that "[a] resolution of the NJ Coverage Action is not essential to a resolution of this Chapter 11 Case."  Debtor Obj., ¶ 48.  In other words, the Debtor concedes that insurance is merely an afterthought.  The Debtor can satisfy its talc-related liabilities irrespective of the outcome in the New Jersey Coverage Action because, under the Funding Agreement, J&J and New JJCI have backstopped the Debtor's funding requirements.  Indeed, the Debtor's key representatives did not identify insurance as an asset of the Debtor, let alone an important asset.  *E.g.*, J. Kim Dep. Tr. (Feb. 1, 2022) at 53:2-21 ("A. Well, LTL's assets . . . include the funding agreement, $6 million in a bank account, RAM which has, you know, an income stream. And those are principally its assets."); R. Wuesthoff Dep. Tr. (Dec. 22, 2021) at 127:16-21 ("Q. Okay. What is the value of LTLs assets today? A. We have six million in the bank account, we have RAM with royalties valued at some $367 million, and we have the service agreement with JJCI and J&J.").  J&J and Old JJCI took the same position in their

interrogatory responses regarding available insurance in various state court litigations in which they refused to answer insurance-related interrogatories. Motion at 26.

47.  Not only will lifting the stay not hurt the Debtor, allowing the New Jersey Coverage Action to proceed will actually benefit it. Resolving the New Jersey Coverage Action would provide clarity to all parties-in-interest as to the available insurance coverage, if any. This could only assist the negotiation of any consensual Chapter 11 plan by resolving coverage issues. Without a resolution of the underlying claims in the New Jersey Coverage Action, any consensual Chapter 11 plan proposed may be premised on potentially inaccurate assumptions regarding any insurance component. Moreover, if the Moving Insurers prevail in the New Jersey Coverage Action on the Middlesex and Allocation Issues, there may be billions of dollars in additional insurance coverage available. *See* Travelers' Mot. at 2, 5.

## IV.  ALTERNATIVELY, THIS COURT SHOULD LIFT THE AUTOMATIC STAY FOR CERTAIN LIMITED PURPOSES.

48.  If this Court finds that the automatic stay applies to the New Jersey Coverage Action and, if it is disinclined to lift the stay in its entirety, the Moving Insurers submit that this Court should lift the stay to permit certain limited proceedings in the New Jersey Coverage Action.

49.  Specifically, the stay should be modified to allow the Moving Insurers:

- To file and litigate a summary judgment motion related to the Claims Control Provision issue in the Policies and for the Superior Court of New Jersey to adjudicate that motion;

- To pursue discovery related to the E&I Issue;

- To pursue third-party discovery, including with respect to the third-party subpoenas already served in the New Jersey Coverage Action; and/or

- To pursue discovery related to the Middlesex and Allocation Issues.

50.     With regard to this last point, the Court should lift the stay to permit discovery on the Middlesex and Allocation Issues to ensure any potential global resolution can be expeditiously implemented.  Although the Moving Insurers maintain that they will prevail in the New Jersey Coverage Action, if they do not, there will inevitably be complex and intricate allocation issues among the various parties, including J&J's share of the loss and Middlesex's contribution for indemnity and defense.  Allocation among responsible insurers will compel an inquiry into the basis of policy limits and years of coverage for both primary and excess liability carriers.  *See Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437 (1994); *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312 (1998).  Accordingly, discovery related to allocation would target the exhaustion of policies, policy limits, insolvencies, gaps in coverage, and other related issues. Middlesex is one of the responsible carriers and, upon information and belief, one with a significant potential percentage of allocation for the later coverage years.   Middlesex may potentially be responsible for billions of dollars of coverage.  Travelers' Mot. at 2, 5.  The Moving Insurers should be entitled to take discovery as to primary and excess insurance in all years Middlesex issued policies, the Middlesex policies, and related amendments, and whether those policies have been exhausted, as J&J asserts.

## NOTICE

51.     Notice of this Reply will be given to: (a) counsel for the Debtor; (b) the Office of the United States Trustee for the District of New Jersey; (c) counsel to J&J and the other New Jersey Coverage Action Defendants; (d) counsel to TCC; and (e) any party that has requested electronic notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1.  The Moving Insurers submit that, under the circumstances, no other further notice is required.  A copy of this Motion is available on the website maintained by the Debtor's Claims and Noticing Agent, Epiq, at https://dm.epiq11.com/case/ltl.

## CONCLUSION

For the foregoing reasons, the Moving Insurers respectfully request the Court to enter an order (i) confirming that the automatic stay under Bankruptcy Code Section 362(a) does not apply to the New Jersey Coverage Action or, in the alternative, (ii) granting relief from the stay pursuant to Section 362(d) of the Bankruptcy Code to allow either the New Jersey Coverage Action to proceed or, alternatively, to allow the Moving Insurers to continue seeking discovery from third parties; to continue discovery related to the Middlesex and Allocation Issues; to continue discovery related to the E&I Issue, and to file and litigate and have the Superior Court of New Jersey adjudicate a summary judgment motion relating to the Claim Control Provisions issue, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: March 25, 2022

/s/ *Louis A. Modugno*
Louis A. Modugno
**TRIF & MODUGNO LLC**
89 Headquarters Plaza North Tower, Suite 1201
Morristown, New Jersey 07960
Email: lmodugno@tm-firm.com

Steven J. Reisman
Shaya Rochester (*pro hac vice*)
Terence P. Ross (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020
Email: sreisman@katten.com
        srochester@katten.com
        tross@katten.com

Eileen McCabe (*pro hac vice*)
Stephen Roberts (*pro hac vice*)
**MENDES & MOUNT LLP**
750 Seventh Avenue
New York, New York 10019
Email: eileen.mccabe@mendes.com
        stephen.roberts@mendes.com

*Co-Counsel to the Moving Insurers*