UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

**Caption in compliance with D.N.J. LBR 9004-1(b)**

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones
Karen B. Dine
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
        kdine@pszjlaw.com
        crobinson@pszjlaw.com
        pkeane@pszjlaw.com

*Counsel to Arnold & Itkin LLP*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor.[1] | |

**ARNOLD & ITKIN'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF REQUEST
FOR CERTIFICATION OF DIRECT APPEAL TO
THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)(2)**

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      Reply To The Debtor's General Contentions ........................................................ 3

II.     Reply To The Debtor's Specific Arguments Regarding Questions Of Law As To
        Which There Is No Controlling Third Circuit Or Supreme Court Decision..................... 6

        A.      Lack Of Controlling Precedent Regarding Certain Legal Issues Governing
                The Determination Of "Financial Distress".......................................................... 6

        B.      Lack Of Controlling Precedent As To The Treatment Of The Relative
                Merits Of The Bankruptcy System And The State/Federal Trial Court
                System For Resolving Mass Tort Claims As A Basis For Finding Good
                Faith In A Mass Tort Defendant's Chapter 11 Filing ........................................ 8

        C.      Legal Issues Relating To The Texas Two-Step/Divisive Merger For
                Which There Is No Controlling Third Circuit Precedent..................................... 10

                1.      Adverse Impact Of The Divisive Merger On Talc Claimant
                        Asbestos Trust Funding Rights.............................................................. 10

                2.      Whether The Transfer Of Substantially All Assets Of A Mass Tort
                        Defendant Away From Tort Creditors Made As Part Of Its
                        Divisive Merger Should Be Treated As A Transfer Made With
                        Actual Intent To Hinder Or Delay Tort Creditors .................................. 12

III.    Response To The Debtor's Specific Arguments Regarding Whether The MTD
        Order Involves A Matter Of Public Importance ............................................................. 13

IV.     Response To The Debtor's Arguments Regarding Whether An Immediate Appeal
        Will Materially Advance The Progress Of This Case ..................................................... 15

V.      The Court's Alternative Holding That It Would Decline To Order Dismissal
        Under § 1112(b)(2) Based On "Unusual Circumstances" Does Not Justify A
        Denial Of Certification For Direct Appeal .................................................................... 16

CONCLUSION................................................................................................................... 21

DOCS_DE:238766.7 05471/002

## TABLE OF AUTHORITIES

**Page**

### CASES

*Camden Ordnance Mfg. Co. of Ark., Inc. v. United States Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*
245 B.R. 794 (E.D. Pa. 2000) .......................................................................... 19, 20

*Fid. Deposit & Discount Bank v. Domiano (In re Domiano)*
442 B.R. 97 (Bankr. M.D. Pa. 2010) ................................................................. 17, 18

*Green v. Howard Family Tr. (In re Green)*
No. NV-15-1349-KiLDo, 2016 Bankr. LEXIS 3963
(B.A.P. 9th Cir. Nov. 9, 2016) .............................................................................. 18

*In re Alston*
756 F. App'x 160 (3d Cir. 2019) ........................................................................... 19

*In re Christian*
804 F.2d 46 (3d Cir. 1986) .................................................................................... 16

*In re Grasso*
497 B.R. 448 (Bankr. E.D. Pa. 2013) .................................................................... 18

*In re McQuillen Place Co., LLC*
609 B.R. 823 (Bankr. N.D. Iowa 2019) ................................................................. 17

*IRS v. Davis*
No. 15-7601 (MAS), 2016 U.S. Dist. LEXIS 84127 (D.N.J. June 28, 2016) ............ 4

*Mumma v. Vara (In re Mann Realty Assocs.)*
No. 1:18-CV-683, 2019 U.S. Dist. LEXIS 168132 (M.D. Pa. Sept. 30, 2019) ............ 18, 19, 20

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*
384 F.3d 108 (3d Cir. 2004) .............................................................................. 7, 9

*Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*
200 F.3d 154 (3d Cir. 1999) ................................................................................... 1

*Schwartz v. Rent-A-Wreck of Am., Inc. (In re Rent-A-Wreck of Am., Inc.)*
596 B.R. 112 (D. Del. 2019) .................................................................................... 7

*Slobodian v. United States IRS (In re Net Pay Solutions, Inc.)*
822 F.3d 144 (3d Cir. 2016) .................................................................................. 13

*Wilmington Tr., N.A. v. Pinnacle Land Grp., LLC (In re Pinnacle Land Grp., LLC)*
No. 17-23339-GLT, 2018 Bankr. LEXIS 2764 (Bankr. W.D. Pa. Sept. 10, 2018) ................ 19

### STATUTES

11 U.S.C. § 1112(b)(2) ..................................................... 16, 17, 18, 19, 20

11 U.S.C. § 1112(b)(2)(A) ............................................................................... 18

11 U.S.C. § 1112(b)(2)(B) ............................................................................... 18

11 U.S.C. § 1112(b)(2)(B)(i) ............................................................... 18

11 U.S.C. § 1112(b)(2)(B)(ii) .............................................................. 18

11 U.S.C. § 1112(b)(4)(A) ................................................................... 17

11 U.S.C. § 1121(e) .............................................................................. 17

11 U.S.C. § 1129(e) .............................................................................. 17

11 U.S.C. § 524(g) ........................................................................ 5, 11, 12

11 U.S.C. § 524(g)(2)(B)(i)(II)–(III) ........................................... 10, 11, 12

28 U.S.C. § 158(d)(2) .................................................................... 3, 13, 14

### <u>OTHER AUTHORITIES</u>

H.R. 4777, the Nondebtor Release Prohibition Act of 2021 ........................................ 15

Press Release, "Congressional Democrats Condemn Johnson & Johnson's
    Declaration of Bankruptcy to Evade Accountability Over Talc Claims," House Comm. on
    Oversight & Reform (Oct. 15, 2021), https://judiciary.house.gov/news/
    documentsingle.aspx?DocumentID=4749 (last visited March 27, 2022)................................. 15

DOCS_DE:238766.7 05471/002

Arnold & Itkin, on behalf of the Movants, submits this reply memorandum of law in response to the Debtor's Omnibus Objection to Motions for Certification of Direct Appeal [D.I. 1835] (the "Objection" or "Obj.") and in further support of Movants' request for certification for direct appeal to the Court of Appeals [D.I. 1720] (the "A&I Request" or "A&I Req.") of the Court's Order [D.I. 1603] (the "MTD Order") denying Movants' Motion to Dismiss [D.I. 766], which Order is based upon the Court's Opinion [D.I. 1572] (the "MTD Opinion").[2]

## PRELIMINARY STATEMENT

1.      In the A&I Request, Movants demonstrated that the MTD Order and the underlying MTD Opinion raise issues that merit direct appeal to the Third Circuit Court of Appeals.  This bankruptcy case implicates, head on and inescapably, the Third Circuit's concern in *SGL Carbon* that the Bankruptcy Code creates a "lure" for corporations facing large scale litigation and massive potential liability that "creates the possibility of abuse which must be guarded against to protect the integrity of the bankruptcy system and the rights of all involved in such proceedings."  *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 169 (3d Cir. 1999) ("*SGL Carbon*").

2.      The appeal of the MTD Order raises important issues of law regarding the extent to which, and circumstances under which, a mass tort defendant may move the resolution of its mass tort liabilities from the state/federal trial court system to the bankruptcy system.  The appeal also raises important issues of law regarding the extent to which a mass tort defendant can use a divisive merger that separates its mass tort liabilities from its business and assets as a form of pre-chapter 11 asset planning in conjunction with a chapter 11 filing to "resolve" its mass tort

---

[2]      Capitalized terms not defined herein have the meaning given to them in the A&I Request.

liabilities.  The resolution of those issues has important implications for tens of thousands, if not hundreds of thousands, of present and future mass tort victims.  There may not be a large number of mass tort cases that end up in the bankruptcy court, but each one involves many thousands of victims.

3.      In the A&I Request, Movants explained how three of the four alternative conditions requiring certification of Movants' appeal from the MTD Order for direct appeal to the Court of Appeals were satisfied.  *First*, Movants demonstrated that the Court's denial of the Motion to Dismiss raised multiple questions of law as to which there are no controlling decisions of the Third Circuit Court of Appeals or the Supreme Court, and Movants described each such issue in detail.  *See* A&I Req. ¶¶ 10, 21–27.  *Second*, Movants showed that the MTD Order involves a matter of public importance.  Not only does this case involve the personal injury and wrongful death claims of tens of thousands of cancer-stricken talc claimants whose lawsuits have been brought to a grinding halt by this chapter 11 case, but the Court's rulings have important implications for tens of thousands of present and future mass tort victims whose state and federal court litigation against those responsible for their injuries may also be brought to a halt, and whose claims may be forced into the bankruptcy system, by chapter 11 filings of mass tort defendants that are modeled on this one.  *See* A&I Req. ¶¶ 11, 28–29.  *Finally*, Movants showed that direct appeal will materially advance the progress of this case by expediting the final resolution of the threshold issue of whether this bankruptcy case can even proceed.  Moreover, if the MTD Order is ultimately reversed and dismissal of this case is ordered by the Court of Appeals, certification for direct appeal will have reduced the costs of this case, the expenditure of time and resources by the parties and the Court in connection with this case, and the impact of this case on tens of thousands of talc claimants whose litigation has been stayed, whose ability to

receive some compensation in settlement of their claims has effectively been suspended, and whose claims have been placed in limbo as a result of the pendency of this case. *See* A&I Req. ¶¶ 12, 30–31.

## ARGUMENT

4.      The following is Movants' response to the challenges to these bases for certification set forth in the Debtor's Objection.[3]

## I.      Reply To The Debtor's General Contentions

5.      The Debtor complains generally that the issues raised by the various parties that made motions to dismiss and have appealed from the MTD Order are issues of fact, not law. *E.g.*, Obj. at 11–13. Previously, however, the Debtor took the inconsistent position that the facts relating to the Motions to Dismiss are materially undisputed, and that the only issue was one of applying the law to those facts.

6.      As the Debtor's counsel told the Court in January:

> [Mr. Gordon:]  Your Honor, I've said this before, but, you know, our view fundamentally -- and I just, you know, we kind of want to make sure this isn't lost sight of -- is that ***there really aren't any facts in dispute that will be relevant to the motion to dismiss***. . . . [F]rom our perspective, this whole exercise is largely a waste of time.

Jan. 6, 2022 Status Conf. Tr. at 24:9–24 (emphasis added).

7.      The Court made a similar observation:

> [The Court:]  All right.  Here's my inclination.  First of all, I agree with debtor's counsel.  I'm familiar with what the issues are going to be as far as the dismissal motion and the hearing that's going to take place in February.  I would be surprised if there are a

---

[3]     The Debtor does not mention, much less dispute, that the denial of a motion to dismiss is a final order for purposes of certifying a direct appeal under 28 U.S.C. § 158(d)(2). *See* Req. ¶¶ 14–17 (describing the authority for the fact that an order denying a motion to dismiss in a bankruptcy case is a final order in the Third Circuit).

substantial number of disputed facts at the end of the day.    I
believe most of the facts are going to be undisputed.

The issue was going to be how the Court applies what went
on in the restructuring transaction to the applicable law, among
other issues.    And I don't necessarily believe the issues that the
Third Circuit cases -- the standards that have been put in place by
the Third Circuit are so broad as to make this more complicated or
warrant more discovery than necessary to lay out for the Court the
appropriate information.

Dec. 7, 2021 Status Conf. Tr. at 18:10–23.

8.    There are very few disputed facts at issue; and none of them are so weighty as to

bear on the legal questions that the uncontested facts raise.    The chronology and documentation

of the 2021 Corporate Restructuring are undisputed.    The terms of the Funding Agreement are

undisputed, as is the fact that the "cap" on J&J's funding obligation under that agreement

established by the "JJCI Value" is approximately $60 billion and growing.    The facts bearing on

Old JJCI's talc payments and litigation over the last several years are materially undisputed.    The

number of pending talc lawsuits is undisputed.    The fact that the cost of future talc litigation is

subject to a wide range of possible outcomes is undisputed.    The resolution of Movants' appeal

will turn largely on the application of the law to these and other undisputed facts, and the

resolution of issues regarding applicable legal standards and the law applicable to those facts —

including issues for which there is no controlling decision of the Third Circuit Court of Appeals

or the Supreme Court.

9.    *IRS v. Davis*, cited by the Debtor (Obj. at 4), demonstrates the significance of this

point.    In that case, Judge Shipp certified the debtor's direct appeal over the IRS's objection that

facts were at issue, on the basis that the bankruptcy court's "decision was not heavily dependent

on the particular facts in the case."    *IRS v. Davis*, No. 15-7601 (MAS), 2016 U.S. Dist. LEXIS

84127, at *7 (D.N.J. June 28, 2016).    Here, the MTD Opinion accorded primacy to an issue that

transcends the particular facts of this case and has broad application to mass tort chapter 11

cases.  The MTD Opinion focused on "a far more significant issue: which judicial system — the

state/federal trial court system, or a trust vehicle established under a chapter 11 reorganization

plan structured and approved by the United States Bankruptcy Court — serves best the interests

of this bankruptcy estate."  MTD Opinion at 12–13.  The Court's view of the relative merits of

the two judicial systems as mechanisms for resolving mass tort claims as a predicate for finding

good faith in a mass tort defendant's chapter 11 filing does not appear to be limited to the

particular facts of this case. *See id.* at 52 ("Given the Court's view that the establishment of a

settlement trust within the bankruptcy system offers a preferred approach to best serve the

interests of injured tort claimants and their families, maybe the gates indeed should be opened.").

10.    Similarly, issues relating to the "good faith" of a chapter 11 filing by a debtor that

is the product of a divisive merger, which form part of the bases for the A&I Request, are issues

of law that do not depend on the particular facts of this case.  Those issues include:

> (i) whether the alleged financial distress of the Debtor's no-longer-existing
> predecessor is relevant to the good faith of the Debtor's chapter 11 filing;

> (ii) whether the fact that a divisive merger effectively eviscerated trust
> funding rights of the predecessor's asbestos claimants under § 524(g) should
> be treated as evidence of a lack of good faith; and

> (iii) whether the transfer of substantially all of the existing assets and non-
> mass tort liabilities of an entity that is the subject of a divisive merger to one
> successor entity, in tandem with a transfer of all of the subject entity's mass
> tort liabilities to a second successor entity as a precursor to the latter's
> chapter 11 filing, is a transfer made with actual intent to hinder or delay the
> predecessor's tort creditors, without a showing of actual prejudice to those
> creditors.

11.    For the same reasons, the Debtor's contentions that (for example) direct appeal is

inappropriate for "fact-bound" orders (Obj. at 5) do not apply here.  Nor does this case require

the interpretation of state law issues. *Id.*  The divisive merger-related issues outlined above,

DOCS_DE:238766.7 05471/002

which pertain to the good faith of a chapter 11 filing by one of two products of a divisive merger, do not turn on issues of state law.  Likewise, although the determination of good faith in a bankruptcy filing may often be a "fact-intensive inquiry" (*see* Obj. at 8), the issues on this appeal largely concern applicable legal standards and the law applicable to undisputed facts.

12.     The appellate issues that underlie the A&I Request are not issues as to the Court's determination of contested facts.  Rather, they are issues of law that pertain to materially undisputed facts.

## II.     Reply To The Debtor's Specific Arguments Regarding Questions Of Law As To Which There Is No Controlling Third Circuit Or Supreme Court Decision

13.     The Debtor raises a number of challenges with respect to Movants' description in the A&I Request of questions of law involved in the MTD Order and MTD Opinion as to which there is no controlling Third Circuit or Supreme Court decision, to which Movants respond serially.

### A.     Lack Of Controlling Precedent Regarding Certain Legal Issues Governing The Determination Of "Financial Distress"

14.     Movants contend that one of the questions raised by this appeal for which there is no controlling precedent in this Circuit is whether, as a matter of law, possible litigation outcomes at some indefinite future time, whose likelihood was not demonstrated, can be sufficient to establish the requisite "financial distress" on the part of the Debtor.  A&I Req. at 13. In response, the Debtor points to Third Circuit precedent that a debtor need not be insolvent to file a chapter 11 case; it need not wait "until business operations are threatened past the breaking point" and "the threat posed to long-term viability by mass torts can create sufficient financial distress."  Obj. at 10–11.  This precedent does not, however, address the issue posed by Movants. Movants do not assert that the Debtor need be insolvent to file a chapter 11 case; given the multi-

6

billion dollar cushion provided by the Funding Agreement, LTL's business operations (whatever they are) were not "threatened past the breaking point;" and no quantitative evaluation of LTL's long-term financial health given the vast funding available to it under the Funding Agreement to address talc claims was ever presented.   Rather, evidence of a "threat" to LTL's long-term viability consisted of possible litigation outcomes.   *See* A&I Req. ¶ 25.   As a result, this case raises the issue of whether certain possible litigation outcomes can be a sufficient basis for a finding of "financial distress."   The Debtor identifies no controlling precedent on this issue.

15.    Movants also contend that another issue relating to "financial distress" involved in the MTD Order for which there is no controlling Third Circuit or Supreme Court decision is whether, as a matter of law, the Court could consider alleged financial distress on the part of Old JJCI, a predecessor, non-debtor entity that no longer exists (and whose business is not owned by the Debtor) as a basis for determining whether this case was filed in good faith.   *See* A&I Req. ¶ 24.   The Debtor contends that the Court's consideration of Old JJCI's alleged financial distress was appropriate.   Obj. at 12–13.   But the Debtor identifies no case law, from the Third Circuit or elsewhere, that allows a court to consider a no-longer-existing non-debtor's financial state in determining whether a *debtor* is in financial distress and filed its chapter 11 case in good faith. Movants believe that case law in this Circuit supports a contrary result, but recognize that there is no controlling circuit-level precedent regarding this issue.   *See* A&I Req. ¶ 24; *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 121 (3d Cir. 2004) ("*Integrated Telecom*"); *Schwartz v. Rent-A-Wreck of Am., Inc. (In re Rent-A-Wreck of Am., Inc.)*, 596 B.R. 112, 118 (D. Del. 2019).

7

**B.     Lack Of Controlling Precedent As To The Treatment Of
The Relative Merits Of The Bankruptcy System And
The State/Federal Trial Court System For Resolving Mass Tort Claims As A
Basis For Finding Good Faith In A Mass Tort Defendant's Chapter 11 Filing**

16.     The Debtor argues that the Court's determination that the bankruptcy system is superior to the tort/jury system for resolving mass tort claims was merely a support for the "bankruptcy purpose" prong of the Third Circuit's test for good faith in filing a chapter 11 case. Obj. at 13–15.  The Court, however, went much farther than that.  After observing that "the general focus must be '(1) whether the petition serves a valid ***bankruptcy purpose*** and (2) whether the petition is filed merely to obtain a tactical litigation advantage,'" the Court went on to characterize as "***a far more significant issue***" the issue of "which judicial system — the state/federal trial court system, or a trust vehicle established under a chapter 11 reorganization plan structured and approved by the United States Bankruptcy Court — serves best the interests of this bankruptcy estate, comprised primarily of present and future tort claimants."   MTD Opinion at 12–13 (emphasis added).  A fair reading of this statement is that the "relative merits" issue is not part of the "bankruptcy purpose" issue, but is a discrete issue that is ***far more important*** than the "bankruptcy purpose" issue.  The Debtor cites no controlling precedent (or any precedent whatever) supporting the Court's unprecedented treatment of the "relative merits of judicial systems" issue as far more significant than the "bankruptcy purpose" issue for evaluating the good faith of a mass tort defendant's chapter 11 filing.  *See* A&I Req. ¶ 23.

17.     In effect, the Court viewed the relative merits of using applicable provisions of the Bankruptcy Code and those of using the state/federal trial court system to resolve mass tort claims as a far more significant issue in determining the good faith of the Debtor's chapter 11 filing than the issues of "bankruptcy purpose" and "tactical litigation advantage" that have historically been the focus of the Third Circuit's "good faith" analysis.  Implicit in this hierarchy

8

of issues is the concept that the benefits of using the provisions of the Bankruptcy Code to resolve mass tort claims can serve as a basis for a finding of good faith, even absent the factors historically considered by the Third Circuit in determining the "bankruptcy purpose" and "tactical litigation advantage" issues.

18.      This approach, however, raises a potential conflict with the decision in *Integrated Telecom*, where the Third Circuit held that the desire to take advantage of a particular provision of the Bankruptcy Code, standing alone, does not establish good faith.  384 F.3d at 128.  The Court of Appeals also suggested that the desire to take advantage of multiple provisions of the Code would not establish good faith either, noting that, "[j]ust as a desire to take advantage of the ***protections*** of the Code cannot establish *bad* faith as a matter of law, that desire cannot establish *good* faith as a matter of law."  *Id.* (bold italics added; other italics in original). Importantly, the Court of Appeals went on to indicate that, while various Code provisions, and the legislative policy underlying those provisions, "have the effect of redistributing value from one interest group to another," those redistributions are not the Code's purpose, and the determination of whether a valid bankruptcy purpose exists must precede consideration of the benefits of various Code provisions.  *Id.* at 128–29.

19.      In the MTD Opinion, the Court addressed *Integrated Telecom* by noting that the Debtor intended "to make use of the Bankruptcy Code as a whole" and that "[a]ll Code sections are not equal in import or impact."  MTD Opinion at 17–18.  This approach, however, raises an issue for which there is no controlling Third Circuit precedent (although *Integrated Telecom* is relevant):  To what extent can the desire to take advantage of multiple provisions of the Bankruptcy Code, or provisions of the Bankruptcy Code that are viewed as being greater in import or impact than others, serve as a basis for a finding of good faith absent a valid

"bankruptcy purpose"?[4]    That issue has important implications for potential future mass tort

chapter 11 cases, each of which would likely affect tens of thousands of mass tort claimants.

### C.    Legal Issues Relating To The Texas Two-Step/Divisive Merger For Which There Is No Controlling Third Circuit Precedent

20.    The Debtor next argues that the Court's determination that the Debtor's use of the

Texas divisive merger statute was not in bad faith involves a question of fact specific to this case.

Obj. at 15–16.  But the facts of the Debtor's use of the Texas Two-Step are not in question; and

those facts raise two issues of law relating to the interplay between divisive mergers and the

good faith determination for which there is no controlling Third Circuit precedent.  *See* A&I

Req. ¶¶ 26–27.  The Debtor's Objection addresses one of those issues (relating to the funding of

asbestos trusts under § 524(g)) but not the other (relating to the intentional fraudulent

conveyance issue).  What is in question as a matter of law (and public importance as well), and

as to which there is no controlling circuit-level precedent, is whether a mass tort defendant's use

of a divisive merger to hive off its mass tort liabilities and place its business assets out of tort

claimants' reach, as a precursor to filing a chapter 11 case to "resolve" those tort claims,

constitutes a transfer made with actual intent to hinder or delay creditors or otherwise constitutes

evidence of a lack of good faith in such a chapter 11 filing.

### 1.    Adverse Impact Of The Divisive Merger On Talc Claimant Asbestos Trust Funding Rights

21.    The Debtor dismisses the issue raised by Movants regarding the adverse impact of

the divisive merger on talc creditors' trust funding rights under § 524(g)(2)(B)(i)(II)–(III) (*see*

---

[4]    The Debtor will no doubt argue that, regardless of the lack of controlling Third Circuit precedent on this issue, the Court in any event found that the Debtor was in financial distress and that this chapter 11 filing would maximize the value of its estate.  On appeal, however, Movants will argue that the findings of financial distress and value maximization were based on the improper application of the law to the facts and were clearly erroneous.  Movants respectfully submit that it is inappropriate to test the certification request on the assumption that the Court of Appeals will rule in the Debtor's favor on all of these issues.

10

A&I Req. ¶ 26) as a mere "micro-issue." Objection at 18. It is nothing of the sort. The legislative history of § 524(g) cited by Movants confirms the centrality of those rights and the trust funding model of *Johns-Manville* to the overall scheme of § 524(g). *See* A&I Req. at 4–5 & n.2. Indeed, even achieving the 75% vote required for § 524(g)'s channeling injunction provisions to apply does not excuse compliance with these trust funding requirements; dissenters can still object if the applicable statutory trust funding requirements are not satisfied.

22.    The Debtor goes on to argue that "the divisive merger did not deprive talc claimants of any 'trust funding rights' that § 524(g) requires, because Debtor is perfectly capable, in a plan, of satisfying the cited requirements." Obj. at 18. The Debtor's pettifogging assertion of arguable technical compliance misses the point: The result of the divisive merger was that instead of having trust funding rights under § 524(g)(2)(B)(i)(II)–(III) with respect to equity in the multi-billion dollar global consumer health business formerly housed in Old JJCI, with earnings of approximately one billion dollars annually (and growing), and the associated potential for appreciation in that equity, talc claimants now have such rights with respect to "equity" in a J&J-fabricated passive royalty stream that generates less than 5% of such earnings. The divisive merger effectively made the right to equity participation in, and participation in the future earnings of, the reorganized debtor as part of the funding of an asbestos personal injury trust meaningless.

23.    The Debtor also suggests that New JJCI could choose to contribute some of its equity and future earnings to provide a source of funding for a plan trust. *See id.* at 19. In light of the planned spinoff of New JJCI, however, this suggestion seems fanciful. More importantly, there is a difference between talc claimants having a ***right*** under § 524(g) to a plan that includes trust funding in the form of equity and future earnings of Old JJCI's global consumer health

11

business, and even a ***right*** (upon the termination of plan exclusivity) to file a plan that requires such equity and future earnings as an element of plan trust funding, as opposed to having to rely on the largesse of J&J and New JJCI in providing such trust funding voluntarily.

24.    In short, this case presents the issue of whether the use of a divisive merger to create a new entity for the purpose of filing a chapter 11 case to invoke § 524(g) to address asbestos-related claims against its predecessor, while structuring the divisive merger in a way that substantially curtails the asbestos creditors' trust funding rights under § 524(g)(2)(B)(i)(II)– (III), should have been treated as evidence of bad faith.  Regardless of how that issue is ultimately resolved, there is certainly no controlling Third Circuit precedent on the issue. Moreover, this issue has important implications for the future use of divisive mergers or equivalent restructurings as a precursor to the filing of an asbestos chapter 11 case.  Even if such cases may be few in number, each is likely to affect many thousands of asbestos personal injury claimants.

> **2.      Whether The Transfer Of Substantially All Assets Of A
> Mass Tort Defendant Away From Tort Creditors Made
> As Part Of Its Divisive Merger Should Be Treated As A Transfer
> Made With Actual Intent To Hinder Or Delay Tort Creditors**

25.    An additional issue of law raised by the divisive merger that Movants are raising on appeal, and for which there is no controlling Third Circuit or Supreme Court precedent, is whether, as a matter of law, the transfer of substantially all of Old JJCI's assets and business to New JJCI as part of the divisive merger in contemplation of the Debtor's chapter 11 filing, to eliminate direct access by Old JJCI's talc creditors to those assets and that business to satisfy their claims, was a transfer made with actual intent to hinder or delay Old JJCI's talc creditors, regardless of actual prejudice to talc creditors.  *See* A&I Request ¶ 27.  The Debtor's Objection

12

addresses that issue only in passing in a footnote (Obj. at 16 n.15), calling it (incorrectly) an issue of fact.

26.    The underlying facts of the transfer, however, are not in dispute.  Moreover, because the Court found that talc creditors were not prejudiced by the divisive merger (*see* MTD Opinion at 42), the "intent to hinder or delay creditors" claim raises the legal issue of whether actual prejudice to creditors must be shown in order to establish that a transfer was made with actual intent to hinder or delay creditors.  Although Movants believe that there is precedent to support the position that prejudice to creditors need not be shown, there appears to be no controlling Third Circuit or Supreme Court decision on that point.

## III.    Response To The Debtor's Specific Arguments Regarding Whether The MTD Order Involves A Matter Of Public Importance

27.    The Debtor's argument that the MTD Order does not involve any matter of public importance (Obj. at 19–23) lacks merit.  At the outset, as noted in the A&I Request, the "matters of public importance" criterion is separate from the "questions of law/no controlling decision" criterion of 28 U.S.C. § 158(d)(2).  A&I Req. ¶ 19.  The determination of whether the "matters of public importance" criterion has been satisfied cannot be a mere recapitulation of the determination of whether the "questions of law/no controlling decision" criterion has been satisfied, as otherwise the former would be mere surplusage.  *See Slobodian v. United States IRS (In re Net Pay Solutions, Inc.)*, 822 F.3d 144, 153 (3d Cir. 2016).

28.    The parties agree that to qualify as a matter of public importance, the appeal must "transcend the litigants and involve a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case."  A&I Req. at 18; Obj. at 20.  The Debtor asserts that "[h]owever important this case is to the parties and their friends and allies, that does not give the Dismissal Opinion 'public importance' within the meaning of

13

§ 158(d)(2)." Obj. at 23. That assertion simply ignores an overarching issue of law raised by the MTD Order and the Court's focus on the relative merits of the tort system and bankruptcy system for resolving mass tort claims, which has major implications for tens (if not hundreds) of thousands of tort victims and for mass tort defendants who may use this case as a model for their own strategy: To what extent can a bankruptcy court's view of the superiority of the bankruptcy system over the tort system for resolving tort claims serve as an independent basis for finding that a mass tort defendant's chapter 11 case is filed in good faith?

29.    The Debtor's assertion also ignores the fact that the issue of whether a divisive merger can be used to hive off a mass tort defendant's liabilities from its business and assets as a precursor to such a chapter 11 filing likewise has important implications for many thousands of mass tort victims other than those in this case. The divisive merger in this case follows the same basic pattern as those in four other asbestos chapter 11 cases filed since 2017, with those debtors represented by the same law firm that represents the Debtor in this case, and one can expect future attempts by mass tort defendants to follow this same template. The Debtor cannot seriously contend that the issues relating to the divisive merger that will comprise part of Movants' appeal do not transcend the parties.

30.    The Third Circuit's approval or disapproval of the divisive merger paradigm employed in this case will undoubtedly influence and affect other companies facing mass tort liability, whether asbestos-related or not. A&I Req. ¶ 6. Although the Court did not view it as likely that many debtors would resort to the use of a "Texas Two-Step" in conjunction with a chapter 11 filing by one of the entities created by such a restructuring to attempt to address mass tort claims (*see* MTD Opinion at 52–53), each such case (as in this case) is likely to involve tens

14

of thousands of mass tort victims. It is hard to imagine a bankruptcy decision that has the potential to affect more human beings, all of them innocent mass tort victims.

31.     This case also has important ramifications for bankruptcy policy. J&J's use of the Texas Two-Step has become a new "Exhibit A" to H.R. 4777, the Nondebtor Release Prohibition Act of 2021, pending now in Congress. *See* Press Release, "Congressional Democrats Condemn Johnson & Johnson's Declaration of Bankruptcy to Evade Accountability Over Talc Claims," House Comm. on Oversight & Reform (Oct. 15, 2021), https://judiciary.house.gov/news/documentsingle.aspx?DocumentID=4749 (last visited March 27, 2022). A Third Circuit decision in this case would undoubtedly inform policymakers' consideration of the bill.

## IV.    Response To The Debtor's Arguments Regarding Whether An Immediate Appeal Will Materially Advance The Progress Of This Case

32.     The Debtor argues that the parties seeking certification of the MTD Order for direct appeal "cannot show anything extraordinary or urgent here to justify bypassing the standard appellate process." Obj. at 25. This argument reflects the Debtor's callous indifference to the substantial harm that the extended pendency of this case resulting from an intermediate level of appellate review will inflict on tens of thousands of talc claimants if the Court of Appeals ultimately reverses the MTD Order and directs dismissal of this case, but that ruling (and the resulting dismissal) is delayed by an intermediate level of appeal.

33.     The pendency of this case has brought all talc-related litigation against the Debtor and its non-debtor affiliates, including J&J, to a grinding halt. Although the Court might at some point terminate the stay of talc litigation against non-debtors, that possibility seems speculative at best. Meanwhile, no talc claimant will receive a penny of compensation. Although Old JJCI and J&J had made payments to thousands of talc claimants to settle their claims prior to this chapter 11 filing, no such payments will be made while this chapter 11 case is pending. If the Court of

Appeals ultimately reverses the MTD Order and directs the dismissal of this case, prolonging the pendency of this case through the process of an intermediate level of appellate review will prove to have been unnecessarily harmful to talc claimants.  In addition, if the MTD Order is ultimately reversed, and dismissal ordered, by the Court of Appeals, the substantial time, money, and effort expended during the additional period of delay resulting from an intermediate level of appeal will have been wasted.  A&I Req. at 19–20 (citing *In re Christian*, 804 F.2d 46, 48 (3d Cir. 1986)).

**V.    The Court's Alternative Holding That It Would Decline To Order Dismissal Under § 1112(b)(2) Based On "Unusual Circumstances" Does Not Justify A Denial Of Certification For Direct Appeal**

34.    The Debtor accuses Movants of failing to "grapple" with the Court's alternative holding — set forth in a footnote (MTD Opinion at 13 n.8) — that, even if this chapter 11 case was not filed in good faith, "unusual circumstances" exist under § 1112(b)(2) to preclude dismissal.  Obj. at 26.  According to the Debtor, this holding makes the issues relating to the good faith finding, and the reasons for certifying a direct appeal respecting any of those issues, "effectively moot, as any Third Circuit ruling would likely be dicta." *Id.*  Implicit in this argument is the assumption that, because a finding of "unusual circumstances" is "fact-intensive," affirmance on that alternative ground is essentially a foregone conclusion. *See id.* This brazen assumption is terribly flawed, however, because the Court's reliance on § 1112(b)(2) as an alternative basis for denying dismissal is subject to two legal challenges, each of which makes affirmance on this alternative ground highly questionable at best.

35.    To begin with, the Court failed to make all of the findings that are statutorily required in order for § 1112(b)(2) to apply.  Section 1112(b)(2) provides in pertinent part that:

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing

16

that converting or dismissing the case is not in the best interests of creditors and the estate, ***and*** the debtor or any other party in interest establishes that —

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; ***and***

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) —

> (i) for which there exists a reasonable justification for the act or omission; and

> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (emphasis added).  The Court did not make (and could not, on the record before it, make), the findings required by § 1112(b)(2)(A) and (B).

36.    "Section 1112(b) utilizes a burden shifting approach in Chapter 11 cases where conversion or dismissal has been requested." *Fid. Deposit & Discount Bank v. Domiano (In re Domiano)*, 442 B.R. 97, 107 (Bankr. M.D. Pa. 2010).  If a court finds cause to dismiss a case, then "the burden shifts to the objecting party to show 'unusual circumstances' such that conversion or dismissal is not in creditors' best interest, ***along with other facts***."   *In re McQuillen Place Co., LLC*, 609 B.R. 823, 829 (Bankr. N.D. Iowa 2019) (emphasis added).  The party opposing dismissal where cause has been found for dismissal must demonstrate that "(1) there are 'unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate'; (2) 'there is a reasonable likelihood that a plan will be confirmed' within a 'reasonable period of time'; (3) the grounds for cause are not under Section 1112(b)(4)(A); and (4) the grounds for cause include an act or omission for which there is a 'reasonable justification' and that will be 'cured within a reasonable period of time.'"

*Mumma v. Vara (In re Mann Realty Assocs.)*, No. 1:18-CV-683, 2019 U.S. Dist. LEXIS 168132, at *11 (M.D. Pa. Sept. 30, 2019).

37.     Here, the Court did not make the additional findings that the statute requires in order to deny dismissal based on "unusual circumstances."  To begin with, the Court could not have made, and did not make, the findings required by § 1112(b)(2)(B)(i) and (ii).  The threshold requirement under § 1112(b)(2)(B), that the grounds for dismissal include an act or omission "other than under paragraph (4)(A)," was satisfied, as the ground identified in the cited paragraph is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  The Court could not, however, and did not make the findings required under clauses (B)(i) and (B)(ii).  Movants sought to dismiss this case on the grounds that it was not filed in good faith.  As such, under § 1112(b)(2)(B)(i) and (ii), the Court would have been required to make the nonsensical finding that the Debtor's bad faith was (i) reasonably justified and (ii) capable of being cured.  "[F]iling a petition in bad faith could never be reasonably justified or curable, no matter what plan Debtors could now propose." *Green v. Howard Family Tr. (In re Green)*, No. NV-15-1349-KiLDo, 2016 Bankr. LEXIS 3963, at *33 (B.A.P. 9th Cir. Nov. 9, 2016).  Accordingly, as a matter of law, the Court could not decline to dismiss this case on the basis of § 1112(b)(2), and the Debtor's "mootness" argument is itself moot.

38.     Moreover, the Court's alternative holding also failed to address the requirement of § 1112(b)(2)(A).  A party opposing dismissal must "show [dismissal] would not be in the best interest of the estate and its creditors ***and*** that there is a reasonable likelihood that a plan will be confirmed."  *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013) (emphasis added); *In re Domiano*, 442 B.R. at 107 ("Generally, unusual circumstances require a showing that there is a

reasonable likelihood that a Chapter 11 plan will be confirmed within a reasonable period of time."); *Wilmington Tr., N.A. v. Pinnacle Land Grp., LLC (In re Pinnacle Land Grp., LLC)*, No. 17-23339-GLT, 2018 Bankr. LEXIS 2764, at *20 (Bankr. W.D. Pa. Sept. 10, 2018) ("[T]he unusual circumstances exception only applies if . . . there is a reasonable likelihood that a plan will be confirmed within a reasonable time . . . .").

39.     Here, the footnote in the MTD Opinion stating that unusual circumstances exist in this case did not include the statutorily required finding that the Debtor (or any other party in interest) had established a reasonable likelihood that a plan will be confirmed within a reasonable period of time.  Nor was there an evidentiary basis in the record to support such a finding.  Based on the failure (and likely inability) to make a number of statutorily required findings, affirmance on the basis of "unusual circumstances" is not so far assured as to render moot the issues relating to the good faith finding that form a basis for certifying this appeal for direct appeal to the Court of Appeals.

40.     Moreover, the "unusual circumstances" holding raises a second issue of law: Whether the Court's view of the relative merits of the tort system and the bankruptcy system for resolving mass tort claims can be sufficient to invoke § 1112(b)(2), where the creditors' view of what is in their best interests starkly differs from that of the Court.

41.     "[T]he focus under § 1112(b)(2) is on unusual circumstances establishing whether dismissal would be *in the best interests of creditors and the estate*, rather than those of the debtor." *In re Alston*, 756 F. App'x 160, 165 (3d Cir. 2019) (emphasis in original).  "[C]reditors are the 'best judge of their own interests.'"  *In re Mann Realty Assocs.*, 2019 U.S. Dist. LEXIS 168132, at *21 (quoting *Camden Ordnance Mfg. Co. of Ark., Inc. v. United States Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 802 (E.D. Pa. 2000)).  In *In re Mann*

DOCS_DE:238766.7 05471/002

*Realty Associates*, the case was converted where the debtor requested the appointment of a chapter 11 trustee but creditors "overwhelmingly supported conversion." *Id.* at *23; *see also In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. at 802 (finding that the case should be converted where creditors preferred conversion to the debtor's requested dismissal).

42.     The parties seeking dismissal of this chapter 11 case included both official committees, acting as fiduciaries for all talc claimants, and thousands of individual talc claimants through their own counsel.  Talc claimants made overwhelmingly clear their desire to preserve their jury trial rights and pursue their claims outside of the bankruptcy system.   Despite widespread creditor support for dismissal, the Court concluded that bankruptcy was preferable to the state and federal tort system for resolving mass tort claims and better for talc claimants.  The issue of law this conflict presents is whether the Court's view of what is in creditors' best interests should prevail over a contrary view on the part of those creditors themselves for purposes of applying § 1112(b)(2).

43.     Based on the foregoing, it is presumptuous for the Debtor to assume that the likelihood of affirmance on the "unusual circumstances" ground is so far assured that the appellate issues surrounding the "good faith" determination are likely to become moot.

20

## <u>CONCLUSION</u>

For the reasons and based on the authorities set forth above and in the Request, the MTD

Order should be certified for direct appeal to the Third Circuit Court of Appeals.

Dated:  March 28, 2022                    **PACHULSKI STANG ZIEHL & JONES LLP**

By:      */s/ Colin R. Robinson*

Laura Davis Jones
Karen B. Dine
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      kdine@pszjlaw.com
      crobinson@pszjlaw.com
      pkeane@pszjlaw.com

*Counsel for Arnold & Itkin LLP*