**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**OFFIT KURMAN, P.A.**
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:	(267) 338-1370
Facsimile:	(267) 338-1335
E-mail:	pwinterhalter@offitkurman.com

**KTBS LAW LLP**
Michael L. Tuchin, Esq. (*pro hac vice*)
Robert J. Pfister, Esq. (*pro hac vice*)
Samuel M. Kidder, Esq. (*pro hac vice*)
Nir Maoz, Esq. (*Pro Hac Vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:	(310) 407-4000
Facsimile:	(310) 407-9090
Email:	mtuchin@ktbslaw.com
	rpfister@ktbslaw.com
	skidder@ktbslaw.com
	nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br><br>                Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>                Defendants. | Adv. Proc. No.: 21-3032 (MBK) |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**REPLY OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf of more than three thousand holders of talc personal injury claims, files this reply in further support of its motion for certification of direct appeal [Docket No. 1713 & Adv. Docket No. 206] (the "Motion") and in response to the *Debtors Omnibus Objection to Motions for Certification of Direct Appeal* [Docket No. 1835 & Adv. Docket. No. 0221] (the "Objection").[2]

### I. INTRODUCTION

These appeals present a paradigm case for certification under 28 U.S.C. § 158(d)(2). Although the Objection seeks to portray the Orders as a "fact-bound" application of well-settled law to the "particulars of this case," "important [only] to the parties to it," Objection at 23, the reality is that the rulings issued by this Court go to the very core of the bankruptcy system and its relationship to the broader civil justice system, grappling with questions that "have been the subject of academic, judicial, and policy debates for years." MTD Opinion at 13. The legal issues bound up in this case are of paramount importance to personal injury victims, companies facing mass tort litigation, the trial courts hearing their cases, and the bankruptcy courts that will confront these issues in copycat cases if the Orders do indeed "open the floodgates."

### II. ARGUMENT

Section 158(d)(2) was enacted to facilitate Circuit-level review of "appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation." *Weber v.*

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion. AWKO joins the other filed and to-be-filed replies to the Objection and adopts and incorporates the arguments made therein to the extent consistent with the Motion and this Reply.

*U.S.*, 484 F.3d 154, 158 (2d Cir. 2007). The Objection focuses primarily on the "no controlling decision" prong of the statute, characterizing alternative grounds for direct certification ("matters of public importance" and matters that may "materially advance the progress of the case") as mere "secondary provisions." Objection at 3. This is contrary to the plain language of the statute, which is written in the disjunctive, such that the presence of even one basis for certification is sufficient. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike § 1292(b), which permits certification only when three enumerated factors suggesting importance are all present, § 158(d)(2) permits certification when any one of several such factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals."). The appeals at issue here amply satisfy three of the grounds for direct appeal.

A.  **This Appeal Presents Novel Legal Issues**

The gravamen of the Objection is that direct certification is unwarranted because the Orders do not break any new legal ground. According to the Debtor, they merely "apply[] settled law to a particular factual scenario." Objection at 2. It is true that the general standards regarding dismissal "for cause" are well-settled in the Third Circuit. *See, e.g.*, MTD Opinion at 12 ("All parties acknowledge that the general focus must be "(1) whether the petition serves a valid bankruptcy purpose and (2) whether the petition filed merely to obtain a tactical litigation advantage."' (quoting *15375 Mem'l Corp. v. BEPCO, L.P. (In re 15375 Mem'l Corp.)*, 589 F.3d 605, 618 (3d Cir. 2009))). But those broad principles do not directly answer the fundamental legal question presented in this appeal: whether the divisional merger strategy adopted by J&J is a legitimate and effective way to "globally resolve [tort liability] through a chapter 11 reorganization without subjecting the entire … enterprise to a bankruptcy proceeding." MTD Opinion at 5 (internal quotation marks omitted).

If the law were as well-settled and straightforward as the Debtor contends it is, there would have been no need for this Court to pen a 56-page MTD Opinion. *Cf. In re Tribune Media Co.*, 2016 WL 1451161, at *3 (D. Del. Apr. 12, 2016) ("A 'controlling decision' of the Third Circuit for the purposes of § 158(d)(2)(A)(i) is one that admits of no ambiguity in resolving the issue." (citation and internal quotations omitted)). Indeed, even the Debtor acknowledges that this case implicates "'novel issues' of good faith and the 'Texas Two Step.'" Objection at 7 (quoting Judge Whitley's *Order Transferring Case [Etc.]* [Docket No. 416]).

Although the Objection repeatedly invokes the mantra that direct certification is inappropriate because the Orders are "fact-bound" and "fact-intensive," *see* Objection at 2, 5, 8, 10, 11, 16, 23, 26, 28, the essential facts are not in dispute: all parties agree that J&J orchestrated a divisional merger to assign Old JJCI's talc-related liabilities to the Debtor and ferry those liabilities into bankruptcy. The Court upheld that strategy as a legitimate use of the bankruptcy laws, without regard to any factual idiosyncrasies of this case. *See, e.g.*, MTD Opinion at 51 ("With respect to the now infamous 'Texas Two-Step,' the Court finds nothing inherently unlawful or improper with application of the Texas divisional merger scheme in a manner which would facilitate a chapter 11 filing for one of the resulting new entities.").

In addition to the overarching legal question of whether J&J's strategy is within the legitimate scope of the bankruptcy laws, these appeals present numerous novel legal sub-issues, as set forth in the Motion and the certification motions filed by other appellants. Among them is the "challenging and interesting issue," MTD Opinion at 28, of whether the Debtor can satisfy 11 U.S.C. § 524(g)(2)(B)(i)(I) given that it had not been "named" in any asbestos lawsuit as of the petition date. The Debtor argues that this question is premature because it "would be one for later, at plan confirmation, *if* the proposed plan is under § 524(g)." Objection at 17 (emphasis in

original). Yet the stated purpose of this bankruptcy case is to confirm a plan that provides for a channeling injunction and a settlement trust. *See, e.g.*, MTD Opinion at 9, 50. Satisfying every part of section 524(g), including § 524(g)(2)(B)(i)(I), will be necessary to achieve that goal, and dismissal is warranted if that objective is facially unlawful. The Debtor attempts to elide the "named defendant" problem by resorting to Rule 25(c) of the Federal Rules of Civil Procedure. *See* Objection at 17; *see also* MTD Opinion at 29. As laid out in the Motion, however, whether Rule 25(c) can cure a debtor's failure to meet the exacting standard of section 524(g), especially in light of the Rules Enabling Act, has never been addressed by the Third Circuit or any other court.

**B.    The Appeals Involve Matters of Public Importance**

The Orders involve matters of exceptional public importance and directly impact the lives of countless individuals—not only the lives of talc claimants and J&J employees, consumers, and vendors, but also the lives of countless tort victims, employees, consumers, and vendors of other multinational enterprises facing mass tort litigation. The Court, in its MTD Opinion, noted that "maybe the [flood]gates indeed should be opened" to allow others to employ similar tactics. MTD Opinion at 52. Whether such floodgates will be opened and create sweeping change to the bankruptcy system may well rest on the Third Circuit's resolution of this appeal.

The Debtor gives short shrift to the public importance factor, acknowledging that this case "has proven newsworthy," Objection at 21, but claiming that the legal issues are "important for the parties to" this case and no one else, *id.* at 23. That is simply untrue. Since the filing of this case, the legal issues presented in the appeals have been debated in Congress, the press, and academic literature not only because of their impact on talc claimants, but because of the potential for this case to usher in sweeping change to the American legal system. *Cf.* MTD

5

Opinion at 48 (noting "the attention this case is receiving from the public, media, government regulators, policy makers").

C.  **Resolution by The Third Circuit Will Materially Advance This Case**

Confirmation of a plan in this case would require at least 75% creditor approval. As of today, the creditor body has almost uniformly opposed the Debtor on every issue in this case. Definitive appellate guidance will facilitate mediation and may enhance the prospect of the parties reaching agreement on a consensual plan.[3] To keep this case in limbo while these appeals grind through the District Court on their way to an inevitable Third Circuit appeal would substantially delay the prospect of confirmation of any plan and would even further delay payments to talc claimants. *Cf. In re Nortel Networks Inc.*, 2016 WL 2899225, at *5 ("obtaining a decision from the Third Circuit as soon as possible would likely materially advance" the proceeding because, among other things, "it [was] essentially certain that one or more parties would be dissatisfied with whatever decision [the] Court would render and would, therefore, press a further appeal").

## III.  CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion and the certification requests filed by other appellants, AWKO respectfully requests that this Court certify a direct

---

[3] The Debtor argues that the alleged issues in these appeals are moot because of an alternative holding in the MTD Opinion regarding Bankruptcy Code section 1112(b)(2). *See* Objection at 26. This argument fails to take into account, and the MTD Opinion seemingly overlooked, the fact that section 1112(b)(2) cannot override dismissal or conversion unless there are findings that: (1) "there is a reasonable likelihood that a plan will be confirmed within the timeframes established" in the Bankruptcy Code; and (2) "the grounds for converting or dismissing the case … will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2). The Court made no such findings and fixed no such time for the Debtor to "cure" its bad faith filing (nor did it elaborate on whether or how the Debtor could possibly "cure" the "grounds for converting or dismissing the case" if such grounds were found to be present).

appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C § 158(d)(2).

DATED: March 28, 2022               Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
Paul J. Winterhalter
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:       pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:        mtuchin@ktbslaw.com
              rpfister@ktbslaw.com
              skidder@ktbslaw.com
              nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*