| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**COOLEY LLP**<br>Cullen D. Speckhart (pro hac vice pending)<br>Michael Klein (pro hac vice pending)<br>Erica J. Richards (pro hac vice to be filed)<br>Lauren A. Reichardt (pro hac vice to be filed)<br>Evan M. Lazerowitz<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>       mklein@cooley.com<br>       erichards@cooley.com<br>       lreichardt@cooley.com<br>       elazerowitz@cooley.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>105 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>       tbennett@baileyglasser.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Proposed Co-Counsel to the Official Committee of Talc Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>100 Main Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>       amoldoff@shermansilverstein.com<br>       rswitkes@shermansilverstein.com<br><br>*Proposed Local Counsel to*<br>*the Official Committee of Talc Claimants II* | |

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan, U.S.B.J., Chief |
| | Ref. Dkt. No. 954, 1111 |

**SECOND SUPPLEMENTAL CERTIFICATION BY CONOR P. TULLY IN SUPPORT OF APPLICATION FOR RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS AND THE OFFICIAL COMMITTEE OF TALC CLAIMANTS II
<u>EFFECTIVE DECEMBER 13, 2021</u>**

I, Conor P. Tully, being of full age, certify as follows:

1. I am a senior managing director at FTI Consulting, Inc., a public corporation whose common stock is listed on the New York Stock Exchange and is traded under the symbol "FCN". FTI Consulting, Inc., has numerous wholly-owned subsidiaries as set forth on Exhibit 21.1 to FTI Consulting, Inc.'s most recent 10-K for the fiscal year ended December 31, 2021, filed with the United States Securities and Exchange Commission on February 24, 2022, a copy of which is available here: https://ir.fticonsulting.com/static-files/201364c2-6d2b-4af1-8024-6d6496dfff10 (together with its wholly owned subsidiaries, "<u>FTI</u>").

2. I submit this certification (the "<u>Second Supplement</u>") to further supplement the disclosures made in the certification[1] in support of the application [Dkt. No. 954] (the "<u>Application</u>") to retain FTI as financial advisor to the Official Committee of Talc Claimants of LTL Management LLC and the first supplemental certification [Dkt. No. 1111] (the "<u>First Supplement</u>"). I have reviewed and agree with the statements in the Certification and the First Supplement, and both are incorporated herein by reference. This Second Supplement provides additional disclosures and, except as expressly stated herein, does not supersede the disclosures of

---

[1] *Certification of Matthew Diaz in Support of Application for Retention of FTI Consulting, Inc. as Financial Advisor to the Official Committee of Talc Claimants Effective December 13, 2021* [Dkt. No. 954-1] (the "<u>Certification</u>").

2

connections set forth in the Application, the Certification, or the First Supplement.

3. On November 8, 2021, prior to transferring venue of the above-captioned chapter 11 case (the "Case") to the United States Bankruptcy Court for the District of New Jersey, the United States Bankruptcy Court for the Western District of North Carolina entered an order appointing the Official Committee of Talc Claimants (the "Original Committee") [Dkt. No. 355]. On December 23, 2021, the United States Trustee for Region 3 docketed a *Notice of the United States Trustee's Filing of Reconstituted and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II* [Dkt. No. 965] (the "Notice of Reconstituted Committees"). The Notice of Reconstituted Committees effectively divided the membership of the Original Committee into two committees—the Official Committee of Talc Claimants I ("TCC I"), consisting of ovarian cancer claimants, and the Official Committee of Talc Claimants II ("TCC II," and together with the Original Committee, the "Committee"), consisting of mesothelioma claimants—and appointed additional members to each such committee. FTI was originally retained by the Original Committee as its financial advisor, but since the filing of the Notice of Reconstituted Committees, FTI has been retained as the financial advisor for TCC II. FTI seeks approval of its retention by both the Original Committee and TCC II, provided that, absent further Court order, FTI shall only perform services, at any given time, for either the Original Committee or TCC II, and not both. FTI anticipates that it will only perform future work for the Original Committee if TCC II is disbanded, the Original Committee is reinstated, and the Original Committee seeks to use FTI as its financial advisor going forward.

4. On January 13, 2022, the Court entered an *Order Authorizing Interim Retention of FTI Consulting, Inc. as Financial Advisor to the Official Committee of Talc Claimants II Effective*

3

*December 13, 2021* [Dkt No. 1134] (the "Interim Retention Order"), pursuant to which the Court authorized FTI's retention as financial advisor of TCC II on an interim basis.

5. On January 20, 2022, the Court entered its *Memorandum Opinion* [Dkt No. 1212] (the "Original Committee Reinstatement Decision"), whereby the Court indicated that it would enter an order (i) striking the Notice of Reconstituted Committees without prejudice, (ii) disbanding TCC I and TCC II formed under the Notice of Reconstituted Committees, and (iii) reinstating the Original Committee. During subsequent hearings, the Court has delayed the effective date of the Original Committee Reinstatement Decision.

6. The Application has been objected to by the Debtors [Dkt. No. 1087] and by the Office of the United States Trustee (the "US Trustee") [Dkt No. 1108] (collectively, the "Retention Objections"). Since the filing of the Retention Objections, FTI has engaged in good faith discussions with the Debtors and the US Trustee to provide additional information, or to establish additional protocols to mitigate the risk of duplication of work by professionals for the Committee. This Second Supplement is submitted to address the objections and concerns raised in the Retention Objections and in subsequent conversations with the US Trustee.

7. Notwithstanding anything to the contrary in the Application, the Certification, or the First Supplement, the scope of FTI's services will include the following:

    a. Reviewing financial related disclosures required by the Court, including but not limited to, the Schedules of Assets and Liabilities, the Statement of Financial Affairs, Rule 2015.3 Reports of Financial Information on Entities in Which a Chapter 11 Estate Holds a Controlling or Substantial Interest, and Monthly Operating Reports;

    b. Preparing analyses required to assess the Debtor's funding and other intercompany agreements with Johnson & Johnson and Johnson & Johnson Consumer, Inc. and any other proposed financing;

    c. Assessing and monitoring of the Debtor's and its non-Debtor subsidiary's

4

      short-term cash flow, liquidity, and operating results;

d. Reviewing the Debtor's and its non-Debtor subsidiary's analysis of core business assets, valuation of those assets, and the potential disposition or liquidation of non-core assets;

e. Reviewing the Debtor's cost/benefit analysis with respect to the affirmation or rejection of various executory contracts and leases;

f. Reviewing any tax issues associated with, but not limited to, claims trading, preservation of net operating losses, refunds due to the Debtor, plans of reorganization, and asset sales;

g. Reviewing other financial information prepared by the Debtor and its non-Debtor subsidiary, including, but not limited to, cash flow projections and budgets, business plans, cash receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which Court approval is sought;

h. Attending, assisting, and preparing materials related to due diligence sessions, discovery, depositions, negotiations, mediations, and other relevant meetings, and assisting in discussions with the Debtor, the Committee, any futures claimant's representative appointed in these cases, Johnson & Johnson and/or its subsidiaries, the US Trustee, other parties in interest, and their respective professionals;

i. Evaluating, analyzing, and performing a forensic review of avoidance actions, including fraudulent conveyances and preferential transfers;

j. Evaluating any pre-petition transactions of interest to the Committee;

k. Assisting in the prosecution of Committee responses/objections to the Debtor's and other parties of interest's motions and pleadings, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee;

l. Assistance in the review and/or preparation of information and analysis necessary for the confirmation of a plan and related disclosure statement in these Chapter 11 proceedings;

m. Assistance in the development and implementation of communications strategies, including digital insights and development, with various stakeholders including, but not limited to, messaging related to the talc powder claims and any plan confirmation, estimation, and/or trust process; and

        n.        Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary that are consistent with the role of a financial advisor, consistent with the disclosures made by FTI and any investment bank retained by the Committee, and in a manner designed to avoid duplication of services provided by the two firms or other professionals in this proceeding.

8. Since being retained in this case, FTI has coordinated and will continue to coordinate with the members and other advisors of the Committee in an effort to avoid duplication of services, including establishing reasonable procedures or protocols for communication among advisors with respect to the performance of services in connection with the Case. Further, FTI recognizes that it and any investment bank retained by the Committee may perform services from different perspectives relating to the same general topics set forth above. In order to avoid duplication of services with any investment bank or other professionals retained by the Committee, the following system shall be implemented to determine the distribution of work relating to the bankruptcy case and related proceedings. *First*, a small group of senior advisors from FTI and any investment bank retained by the Committee (each, a "Committee Investment Banker") shall confer to determine work strategy and tasks, in consultation with the Committee's counsel, the Committee members, and their designated representatives. *Second*, FTI and the Committee Investment Banker will coordinate responsibility for completing any applicable task. *Third*, to the extent any work product related to a task is relevant to the other's work or advice for the Committee, such work product shall be shared with FTI or the Committee Investment Banker, as applicable, so that both FTI or the Committee Investment Banker have the benefit of the other's relevant analysis and work product.

9. Based on additional questions and feedback from the US Trustee, FTI hereby makes the following additional disclosures:

        a.        As described in the Certification and the First Supplement, FTI has a practice group which has provided non-advisory trial-related services

("Trial Support Services"), including the preparation of graphics and other exhibits and providing certain hosting and courtroom technology services, to Johnson & Johnson and various affiliates (collectively, "J&J") in connection with matters involving talc and non-talc-related litigation. FTI has only one current engagement with J&J with respect to talc related Trial Support Services (the "Open Trial Support Services Engagement"), and FTI (i) has not incurred any revenue in connection with such engagement, and (ii) is not presently working on such engagement. The underlying litigation with respect to the Open Trial Support Services Engagement is currently subject to the automatic stay. FTI will not provide any services or perform any work in connection with the Open Trial Support Services Engagement, while FTI is providing financial advisory services to the Committee. No professional of FTI who provided services to J&J, including the Open Trial Support Services Engagement, will provide financial advisory services to the Committee. Further, the Trial Support Services group will not perform services for the Debtor or J&J in connection with the Case, including but not limited to, the pending mediation involving open disputes with respect to the Case.

b.   Compass Lexecon, LLC ("Compass Lexecon") is a wholly owned subsidiary of FTI. Over the past five (5) years, Compass Lexecon has been engaged by J&J in several matters. Except for the "Legacy Engagement" disclosed in the Certification, none of the services provided by Compass Lexecon to J&J relate to talc. Neither the Debtor nor J&J have engaged Compass Lexecon to provide any services related to the Debtor or this Case. The Committee is not currently seeking to retain Compass Lexecon and it will not be retained absent further approval from the Court. FTI will not utilize the services of Compass Lexecon or its employees in connect with its engagement by the Committee without seeking further approval from the Court.

c.   FTI is providing certain advisory services in connection with various environmental litigation matters, which are unrelated to talc, for Cyprus Amax Minerals Company ("Cyprus Amax"). In addition, FTI's Forensic and Litigation Consulting group was hired by counsel to Cyprus Amax to provide privileged consulting services in connection with the following adversary proceeding, *Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc. v. Cyprus Amax Minerals Company and Cyprus Mines Corporation*, Adv. Pro. No. 19-50115-LSS (Bankr. D. Del.) (the "Cyprus Insurance Litigation"). FTI professionals have not billed any time on this matter since September 2021. None of the FTI professionals who have provided services in connection with the Cyprus Insurance Litigation (the "FTI Cyprus Amax Professionals") have provided or will provide services to the Committee in this Case, and FTI will implement an ethical wall between the FTI Cyprus Amax Professionals and the professionals providing services to the Committee. Neither J&J nor the

7

      Debtor are a party to the Cyprus Insurance Litigation.

   d. FTI is providing strategic communication services and non-advisory data collection, processing and hosting services for Imerys S.A.

   e. FTI inadvertently listed Imerys Talc America, Inc. ("Imerys Talc") in the First Supplement as a current client of FTI. Imerys Talc is not a current client of FTI.

   f. None of the professionals performing work for the Committee is providing services for J&J on talc or non-talc matters.

   g. During each of the past five (5) years, FTI's revenue from J&J is less than 1% of FTI's revenue.

10. Based on the Certification, the First Supplement, and this Second Supplement, to the best of my knowledge, FTI does not hold or represent any interest adverse to the estate, and therefore believes it is eligible to represent the Original Committee or TCC II, as applicable, under Bankruptcy Code section 1103(b).

I certify under penalty of perjury that the above information is true and correct to the best of my knowledge, information, and belief.

Date: March 29, 2022       */c/ Conor P. Tully*
                Conor P. Tully