UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: jeffrey.m.sponder@usdoj.gov
lauren.bielskie@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>Hearing Date: _____, 2022 at ___ _.m.<br><br>Honorable Michael B. Kaplan, Chief Judge |

**UNITED STATES TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO FED. R. BANKR. P. 9023 AND 9024 SEEKING RELIEF WITH RESPECT TO THE ORDER ESTABLISHING MEDIATION PROTOCOL**

Andrew R. Vara, the United States Trustee for Region Three (the "U.S. Trustee"), by his undersigned counsel, hereby moves the Court, pursuant to Fed. R. Bankr. P. 9023 and 9024, for reconsideration of the *Order Establishing Mediation Protocol* ("Mediation Order") (Dkt. 1780) to further clarify the scope of the confidentiality provisions and their applicability to a 9019 motion and/or proposed plan.  In support thereof, the U.S. Trustee states as follows:

**PRELIMINARY STATEMENT**

1.  Upon further review and consideration, the U.S. Trustee requests an addition to the Mediation Order to make clear that nothing therein, and in particular the confidentiality provisions,

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

1

affects the statutory or case law obligations imposed on a settlement or plan proponent. Regardless of the terms of the Mediation Order, settlement terms must still be approved under Rule 9019 and the settlement proponents still bear the burden of satisfying the *Martin* factors. *See In re Martin*, 92 F.3d 389, 392 (3d Cir. 1996). In addition, any plan proponent must meet the disclosure obligations set forth in Bankruptcy Code sections 1125 and 1129. Amendments to the Mediation Order are necessary here to provide clarity as to what the confidentiality provisions cover and to make clear that nothing therein prevents the parties from making, or excuses their failure to make, all necessary disclosures required when seeking court approval of, and meeting their evidentiary burdens regarding, any settlement or in connection with the plan confirmation process. These amendments will ensure transparency in the process, instill public confidence in the bankruptcy system and will maintain the integrity of the plan confirmation process.

## JURISDICTION

2.  Under 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. This oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See, e.g.*, *In re United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003) (holding that U.S. Trustees "protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings"); *U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" that goes beyond mere pecuniary interest); *see also* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 88 (1977), *reprinted in 1978 U.S.C.C.A.N. 5963, 6049* (stating that U.S. Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").

## BACKGROUND

**A. LTL's Bankruptcy Case**

3. On October 14, 2021, LTL Management, LLC (the "Debtor")[2], filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "N.C. Court"). *See Certification of Lauren Bielskie, Esq., in Support of the Motion* ("Bielskie Cert") at ¶ 1.

4. On November 16, 2021, the N.C. Court entered an order transferring venue of this case to the District of New Jersey (the "Venue Order"). *See* Bielskie Cert. at ¶ 2.

5. Various parties filed motions to dismiss the chapter 11 case as a bad faith filing. On February 25, 2022, after a week-long trial, the Court issued a Memorandum Opinion denying the Motions to Dismiss. *See id.* at ¶ 3.

**B. Mediation Order**

6. During the next Omnibus hearing, which occurred on March 8, 2022, Debtor's counsel announced an agreement was reached with TCC I to name the Honorable Joel Schneider (Ret.) and Gary Russo, Esq. as co-mediators. *See id.* at ¶ 4. The Debtor and TCC I further advised they would work on a mediation protocol. *See id.* TCC II asked for additional time to vet the proposed mediators and the opportunity to provide input on the protocol. *See id.* During the

---

[2] LTL is an indirect subsidiary of Johnson & Johnson ("J&J"), one of the world's largest consumer products companies. *See* Bielskie Cert. at fn 2. On October 12, 2021, J&J's corporate subsidiary Johnson & Johnson Consumer Inc. ("Old JJCI") engaged in a Divisional Merger and a series of related transactions in order to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old JJCI enterprise to a bankruptcy proceeding" (the "Divisional Merger"). *See id*. The assets and liabilities of Old JJCI were allocated between the Debtor and New JJCI. The Debtor solely assumed all of Old JJCI's talc liabilities and was allocated the following principal assets: (i) approximately $6 million in cash, (ii) Old JJCI's equity interest in Royalty A&M, and (iii) Old JJCI's rights under the Funding Agreement. Substantially all of Old JJCI's other assets and liabilities were assigned to New JJCI. *See id.*

hearing the Court authorized the appointment of Messrs. Schneider and Russo as co-mediators, without prejudice to others subsequently raising issues with the appointments. *See id*. The Court also scheduled a telephonic hearing for March 16, 2022, to discuss the parties' efforts to develop a mediation protocol. *See id*.

7. On March 10, 2022, TCC II, by letter to the Court, advised that it had no objection to the proposed co-mediators. *See* Bielskie Cert. at ¶ 5.

8. Prior to the March 16, 2022 telephonic hearing, the proposed mediation protocol was not provided to all parties in interest. *See id*. at ¶ 6. Neither counsel for the Aylstock firm nor the U.S. Trustee received it. *See id*. Judge Kaplan started the March 16, 2022 conference by noting that a mediation protocol had been submitted in advance of the hearing and announced there was one change made due to the co-mediators' concerns regarding confidentiality. *See id*. Judge Kaplan read the provision aloud before hearing from any parties on the protocol. *See id*.

9. Without having seen the proposed mediation protocol, counsel for the U.S. Trustee advised that while there was no *per se* objection to a confidentiality provision, the U.S. Trustee was concerned about the broad language and wanted clarity as to whether it would preclude the U.S. Trustee from receiving updates or status of the mediation from the parties. *See id*. at ¶ 7. Judge Kaplan stated that he did not envision a problem with the U.S. Trustee receiving information and stated a provision could be added to the order. *See id*. The matter was marked "Order to be Submitted." *See id*.

10. After the March 16th conference, counsel for TCC I circulated a revised form of order setting forth a proposed mediation protocol. *See* Bielskie Cert. at ¶ 8. This was the first time the U.S. Trustee saw the proposed mediation protocol. *See id*. The proposed order did not include a paragraph for providing information to the U.S. Trustee. *See id*.

4

11.     Various communications occurred on March 17, 2022, regarding the form of order. *See id*. at ¶ 9.  Counsel for the U.S. Trustee circulated proposed language regarding the U.S. Trustee's ability to seek the status of the mediation process from the parties. *See id*. Mr. Russo responded via email with questions for the U.S. Trustee. *See id*. TCC I circulated a revised order after 10:00 p.m., and noted the order would be submitted to chambers by 10:00 a.m. the next day absent further comments. *See id*.

12.     In light of the 10:00 a.m. deadline, counsel for the U.S. Trustee and Mr. Russo spoke on Friday, March 18, 2022, at 8:45 a.m. regarding the ability of the U.S. Trustee to seek status updates from the parties. *See* Bielskie Cert. at ¶ 10.  After 9:00 a.m. TCC I circulated a further revised order and stated the mediators were to submit the final version to chambers once they signed off.  *See id*.

13.     Unbeknownst to the parties, the Court entered the Mediation Order at 9:12 a.m. *See id*. at ¶ 11.  As relevant here, the Mediation Order provides that D.N.J. LBR 9019-1 and 9019-2 and all confidentiality and privilege provisions therein, as well as the terms of the Mediation Order will govern the mediation process.  *See id*.  The Mediation Order includes a broad confidentiality provision:

> The undersigned Mediation Party hereby agrees that (1) their participation in the mediation, (2) everything said by any Mediation Party during, respecting or related to the mediation, (3) the fact that mediation is taking place, (4) any other Mediation Party's participation in the mediation, (5) the date, time or place of the mediation, (6) statements made by the Mediators or any Mediation party in, during or related to the mediation, (7) who is participating or has participated in the mediation, (8) all documents, letters, emails, reports, analyses and the like prepared for, distributed during, or utilized in connection with or related to the mediation shall not, without the express written authorization of the mediators, be disclosed, summarized or described by any Mediation party to any person(s) orally, in open Court, in any court pleading, in any press release or in any public statement or other form of communication.

*See id.*

14. The only carve-out from this provision is in paragraph 4.l., which provides that nothing in the Mediation Order prohibits a Mediation Party from "disclosing its own work product or underlying documents[.]" *See id*. at ¶ 12. As defined in the Order, the "Mediation Parties" are (i) the Debtor and its affiliates; (ii) the TCC I; (iii) TCC II; and (iv) any Court-appointed Future Talc-Claimants Representative(s). *See id.*

## ARGUMENT

15. Amendments to the Mediation Order are necessary to clarify what paragraph 4.k. covers and to make clear that nothing therein prevents the parties from making, or excuses their failure to make, all necessary disclosures required when seeking court approval of any settlement terms or in connection with the plan confirmation process. The Debtor and any other plan proponent or settling party must still meet all applicable evidentiary burdens.

16. At the close of its opinion on the Motion to Dismiss, the Court noted that "there is a need for independent scrutiny of possible claims while the case progresses through the appointment of a Future Talc Claims Representative, mediation and towards the plan formulation process." *In re LTL Mgmt., LLC*, 2022 WL 596617, *25 (Bankr. D.N.J. Feb. 25, 2022). The U.S. Trustee is concerned that the strict confidentiality provisions in the Mediation Order could be misconstrued or misused to prevent independent scrutiny and necessary disclosures and transparency regarding the treatment of claims, handling of causes of action including fraudulent conveyances, or the plan formulation process. Key decisions concerning the claims process and valuation of estate causes of action stemming from prepetition activities by J&J may remain hidden as the case progresses. Such result would undermine any success achieved through mediation if parties did not receive sufficient information to establish trust in the fairness of the proposals.

6

**A. The U.S. Trustee Seeks Relief Under Fed. R. Bankr. P. 9023 and 9024**

17.     Fed. R. Civ. P. 59 applies to this case pursuant to Fed. R. Bankr. P. 9023. Under Rule 59(e), a judgment may be altered or amended upon a showing of: (1) an intervening change in the law; (2) the availability of new evidence that was not available when the court rendered its judgment; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Cafe ex re. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). To prevail, a party must show pertinent facts or case law that the Court may have overlooked. *See Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998).

18.     A motion to reconsider under Rule 9023 should not permit a party to reargue matters already argued and disposed or to relitigate a point of disagreement. *See In re Scott-DiClemente*, 463 B.R. 308, 310 (Bankr. D.N.J. 2012). Nevertheless, "[i]n exercising its discretion in ruling on a motion for reargument or reconsideration, the Court must keep an open mind . . . the Court should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct clear legal error." *See id., quoting Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990).

19.     Fed. R. Civ. P. 60, made applicable by Fed. R. Bankr. P. 9024, allows a party to seek relief from a court judgment or order "when applying it prospectively is no longer equitable" or for "any other reason that justifies relief." Fed. R. Civ. Proc. 60 (b)(5) & (6). Rule 60(b) motions are "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *See Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991). Respectfully, such circumstances are present here.

20.     Fed. R. Civ. P. 60(b)(6) acts as a "catch-all provision" and authorizes courts to relieve a party from a final judgment for "any other reason that justifies relief." *See Budget Blinds,*

*Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). Fed. R. Civ. P. 60(b)(6) relief requires "extraordinary circumstances." *See id*. "Rule 60(b)(6) exists so that courts may vacate judgments whenever such action is appropriate to accomplish justice, in situations that are not addressed by the other five clauses of Rule 60(b)(6)." *See id*. at 254 (internal citations and quotation marks omitted). To meet the standard of demonstrating exceptional circumstances, a movant must show "that without relief from the judgment, an 'extreme' and 'unexpected' hardship will result.'" *See id*. at 255 (*quoting Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)).

21.   The U.S. Trustee submits that the concerns raised herein were not considered during the short review period before the Mediation Order was entered. If the Mediation Order is not amended, it may be used as a vehicle by the Mediation Parties (which include non-Debtor affiliates such as J&J and New JJCI) to shield settlement terms from public scrutiny. Clarification that all parties must still disclose the salient facts and terms of any settlement reached should prevent future debate and make clear that any settlement will still be judged publicly under the standards of Rule 9019 and the Third Circuit's *Martin* factors and that any proponent must still provide adequate information in connection with a proposed plan.

22.   Otherwise, the ability of creditors in this case to protect their rights may be threatened. Further, the transparency of the bankruptcy process may be threatened and there will be a chilling effect on public confidence not only in the fairness of any settlement resulting from the mediation, but in the bankruptcy process. The Court should not allow the terms of the Mediation Order to dictate prosecution of the case after a settlement is reached. The Debtor should not be hamstrung in fulfilling its duties under the Code and creditors, along with other parties in interest, should not be precluded from receiving sufficient information. This would create an extreme and unexpected hardship and result in a manifest injustice to all stakeholders.

23. Based on the foregoing, the U.S. Trustee requests that the Court modify or amend the Mediation Order to address these points under either Fed. R. Civ. P. 59(e) or 60(b)(6).

**B. The Relief Requested is Consistent with Section 107**

24. Pursuant to Section 107(a) of the Bankruptcy Code, filings made in a bankruptcy case are "public records and open to examination by an entity at reasonable times without charge." *See* 11 U.S.C. § 107(a).

25. Section 107(b) allows the Court to protect trade secrets; "confidential research, development, or commercial information"; and "scandalous or defamatory matter." *See* 11 U.S.C. § 107(b). No such basis exists in the Mediation Order.

26. It is clear that the courts of this country recognize a general right to inspect and copy public record and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *accord Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780-81 (3d Cir. 1994) (recognizing "a right of access to judicial proceedings and judicial records," and that "this right of access is 'beyond dispute'") (*citation omitted*). Courts "have recognized a strong presumption of public access to court records . . . . This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard 'the integrity, quality, and respect in our judicial system.'" *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) (citations omitted); *see also In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) ("A Court's ability to limit the public's right to access remains an extraordinary measure that is warranted only under rare circumstances as 'public monitoring is an essential feature of democratic control.'" (*citations omitted*).

27. If the Mediation Order is not amended, it could have the effect of keeping confidential the settlement terms, results, and other information needed to make an informed

9

decision on a 9019 motion or the confirmability of a plan. In other words, the Mediation Order may result in "sealing" future pleadings. Such an effect should not be permitted under Section 107.

### C. Relief Requested is Consistent with Rule 9019

28. When considering a future settlement, the Court must apply Rule 9019 and the "*Martin* factors." *See In re Martin*, 92 F.3d at 392. These include the probability of success, likely collection difficulties, complexity of the litigation and its expense, inconvenience and delay, and the interests of creditors. *Id.* The Court also considers if the settlement reaches the lowest level of reasonableness. Parties in interest, such as creditors, have the right to challenge whether the settlement does in fact meet those factors.

29. If the information relating to a settlement is prohibited from being disclosed because of the Mediation Order, there is no means by which parties in interest may consider if the settlement is fair, reasonable and in the best interests of the estate. Further, the public has the right to information on the handling of an estate's assets and the manner in which they are being administered.

### D. Relief Requested is Consistent with 11 U.S.C. §§ 1125 and 1129

30. Section 1125(a) of the Bankruptcy Code requires a plan proponent to provide "adequate information." 11 U.S.C. § 1125(a)(1). "Adequate information" means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]" *Id.*

31. At the most basic level, if a settlement is part of a proposed plan, pursuant to 11 U.S.C. § 1125(a), the disclosure statement should have a description of the settlement and should attached a copy of the settlement agreement.

32. At confirmation, Section 1129 requires the Debtor and/or a plan proponent to meet certain requirements including voting on the plan. Creditors cannot be required to vote on a plan that does not provide sufficient information on the terms of a crucial component of a plan, which in this case would be any settlement agreement resulting from mediation.

## CONCLUSION

WHEREFORE, for all the reasons set forth above, the U.S. Trustee respectfully requests that the Court enter an amended mediation order and grant such other relief as the Court deems equitable and just.

                                                  Respectfully submitted,

                                                  ANDREW R. VARA
                                                  UNITED STATES TRUSTEE
                                                  REGIONS 3 & 9

                                            By:    */s/ Jeffrey M. Sponder*
                                                             Jeffrey M. Sponder
                                                             Trial Attorney

Dated: March 30, 2022