UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WOMBLE BOND DICKINSON (US) LLP**
Ericka F. Johnson (NJ #032162007)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
(302) 252-4337
ericka.johnson@wbd-us.com

*Counsel for Ad Hoc Committee of States*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT, LLC,<br><br>Debtor.[2] | Case No.: 21-30589 (MBK)<br><br>Chapter: 11<br><br>Requested Hearing:  April 12, 2022, 10:00 a.m.<br><br>Hon. Michael B. Kaplan |

### MOTION OF THE AD HOC COMMITTEE OF STATES HOLDING CONSUMER PROTECTION CLAIMS SEEKING RELIEF WITH RESPECT TO THE ORDER ESTABLISHING MEDIATION PROTOCOL

The Ad Hoc Committee of States Holding Consumer Protection Claims (the "Ad Hoc Committee of States"),[3] by its undersigned counsel, Womble Bond Dickinson, LLP, hereby moves (the "Motion") the Court, pursuant to Fed. R. Bankr. P. 9023 and 9024, for reconsideration of the Order Establishing Mediation Protocol (Dkt. 1780) ("Mediation Order"), and in support thereof, respectfully states as follows:

---

[2]    The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[3]    The Ad Hoc Committee of States is in the process of forming and the member states may be modified through the filing of an amended Notice of Appearance or other applicable filing.  The current members of the Ad Hoc Committee of States ("Member States") are:  Alabama, Alaska, Arkansas, Arizona, Colorado, Connecticut, Delaware, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, Washington, D.C., West Virginia and Wisconsin.

## PRELIMINARY STATEMENT

1. The forty (40) member states and one district of the Ad Hoc Committee of States collectively hold consumer protection claims that are significant, encompassing civil penalties that, based on the statutory maximum per violation, could in principle run into the trillions of dollars. These claims are independent of, and in addition to, any claims available to individual users of talc products or claims of state or governmental entities that are not Member States. The significance of the Member States' claims and the injunctive relief with respect to talc-containing products that will need to be resolved require direct involvement of the Ad Hoc Committee of Member States and participation in any discussions or negotiations related to resolution of the Debtor's bankruptcy case, including any potential plan.

2. The Mediation Order, in its current form, makes such participation in the plan process extremely difficult if not impossible. Pursuant to Fed. R. Civ. P. 59 and 60, made applicable to this case by Fed. R. Bankr. P. 7023 and 7024, respectively, the Ad Hoc Committee of States requests that the Mediation Order be modified to limit the scope of the mediation to matters only affecting the parties referred to mediation. The current scope, which includes formulation of a plan, is improper given that only one constituent class has been referred to mediation with the Debtor and such referral is under overreaching confidentiality provisions that undercut the openness by which the bankruptcy process should be conducted.

## JURISDICTION

3. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. The Ad Hoc Committee of States currently represents (40) member states and one district. The Member States hold claims for monetary and injunctive relief against LTL Management LLC (the "Debtor") based upon the Debtor's representation that it is a successor to liabilities of Johnson & Johnson Consumer Inc., arising from multiple violations of applicable state consumer protection laws in connection with the sale of talc-containing products (the "Consumer Protection Claims"). These claims have been the subject of a multi-state investigation of Johnson & Johnson Consumer, Inc. and its ultimate parent, Johnson & Johnson Inc., both repeat offenders of the consumer protection laws.

5. The Debtor commenced this case on October 14, 2021 (the "Petition Date") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "N.C. Court"). The N.C. Court entered an order transferring venue of this case to the District of New Jersey on November 16, 2021.

6. On February 25, 2022, this Court denied motions filed by various parties to dismiss this case as a bad faith filing.

### The Mediation Order Is Entered Without Notice to Creditor Constituencies

7. Notice of entry of the Mediation Order was without proper due process. There was no notice to affected parties, which includes all interested parties in this case, of the Mediation Order or of a hearing on the same.

8. The only docketed notice of the Mediation Order was in a letter filed by the Official Committee of Talc Claimants II ("TCC II"). Specifically, on March 10, 2022, TCC II filed a letter with the Court (Dkt. 1694) indicating that the Court had appointed the Honorable Joel Schneider (Ret.) and Gary Russo, Esq. (together, the "Co-Mediators") as co-mediators at a

hearing on March 8, 2022, without prejudice to the rights of TCC II to challenge their appointment.[4] TCC II's letter further indicated that a mediation protocol would be discussed at a hearing scheduled for March 16, 2022. This hearing was not noticed and the Court's website was not updated to include this hearing date or time.

9. The Debtor did not file its proposed mediation protocol with the Court or otherwise make it available to the public prior to the hearing on March 16, 2022 or prior to its entry on March 18, 2022.

### The Mediation Order is All-Encompassing

10. The Mediation Order is extremely broad, appointing the Co-Mediators to mediate

> a comprehensive resolution of issues in the Case (the "Mediation Issues") which includes, without limitation, a chapter 11 plan, and all matters related to the estimation and plan treatment of personal injury claims against the estate related to talc or talc-containing products.

Mediation Order, ¶ 2.

11. The Mediation Order designates four (4) parties to be the "Mediation Parties" to, presumably, negotiate the ultimate objective of the entire bankruptcy case – the terms of a chapter 11 plan. The Mediation Order did not include any other stakeholders. By the terms of the Mediation Order, only the Debtor and its affiliates, the Official Committee of Talc Claimants I ("TCC I"), TCC II and any Court-appointed Future Talc-Claimants Representative would be privy to plan negotiations with the Co-Mediators.

12. In addition to limiting the constituencies designated to participate in a mediation intended to shape the final outcome of the bankruptcy case, the Mediation Order has the unintended consequence of making it extremely difficult if not impossible for any party other

---

[4] The *Notice of Agenda of Matters Scheduled For Hearing On March 8, 2022 At 10:00 a.m.* [Dkt. No. 1630] did not include any reference to the selection of co-mediators or consideration of a mediation protocol.

than the Mediation Parties to negotiate meaningfully about a plan. The Mediation Order requires each Mediation Party to agree that:

> (1) their participation in the mediation, (2) everything said by any Mediation Party during, respecting or relating to the mediation, (3) the fact that mediation is taking place, (4) any other Mediation Party's participation in the mediation, (5) the date, time or place of the mediation, (6) statements made by the Mediators or any Mediation party, in, during or related to the mediation, (7) who is participating or has participated in the mediation, (8) all documents, letters, emails, reports, analyses and the like prepared for, distributed during or utilized in connection with or related to the mediation shall not, <u>without the express written authorization of the mediators</u>, be disclosed, summarized or described by any Mediation party to any person(s) orally, in open Court, in any court pleading, in any press release or in any public statement or other form of communication.

Mediation Order, ¶ 4(k). Any plan will be a comprehensive, integrated structure and no constituency's claim can be addressed in a vacuum without prejudicing such constituency's rights. Without the ability to discuss context, global resolutions, or any terms under consideration, the Mediation Parties will be unable to negotiate the terms of a plan with other parties.

13. In addition, the breadth of the confidentiality provisions creates the appearance that the mediation will be cloaked in complete secrecy, the antithesis of the bankruptcy process. Permitting the Co-Mediators to file status reports under seal compounds the unfortunate impression that creditors (other than those represented by the Mediation Parties) will be kept in the dark until a plan is presented to them, by which time it will be too late for constituencies to negotiate their own treatment. Mediation Order ¶ 4(i).

14. The Mediation Order further appears to contemplate that the Co-Mediators, the Mediation Parties and their representatives may participate in *ex parte* discussions with the Court. Mediation Order, ¶ 4(h) ("The Co-Mediators are permitted, in their discretion, to speak, *ex parte* with the Court and/or the individual Mediation Parties and/or their representatives about

5

the Mediation Issues."). The Mediation Order should be refined to clarify that *ex parte* discussions with the Court are not permitted.

## ARGUMENT

15. Fed. R. Civ. P. 59, made applicable to this case by Fed. R. Bankr. P. 9023, permits alteration or amendment of a judgment upon a showing of (a) an intervening change in the law, (2) the availability of new evidence that was not available when the court rendered its decision, or (3) the need to correct a clear error of law or fact, or to prevent a manifest injustice. *See Max's Seafood Café ex re. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

16. The Third Circuit has not established a precise definition for "clear error of law or fact" or for "manifest injustice," but it has stated that "the focus is on the gravity and overtness of the error" and the error must be "one that is of least some importance to the larger proceedings." *In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) (affirming Bankruptcy Court's reconsideration and modification of prior order).

17. Fed. R. Civ. P. 60, made applicable to this case by Fed. R. Bankr. P. 9024, similarly authorizes a court to relieve a party from an order or proceeding based upon mistake, inadvertence, "when applying it prospectively is no longer equitable" or any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1), (b)(5) and (b)(6).

18. As this Court recognized when it declined to dismiss the case, "[t]he Bankruptcy Code requires full transparency of all assets, liabilities and financial conduct through scheduling and reporting." *In re LTL Management, LLC*, 2022 WL 596617 at *22 (Bankr. D.N.J. Feb. 25, 2022). There is no question that this is a complex case for which mediation is appropriate. However, in order to be successful, "any mediation must be fair to all parties and protective of due process." *In re Diocese of Buffalo*, 634 B.R. 839, 844 (Bankr. W.D.N.Y. 2021). Establishing

a mediation protocol from the outset that is fair and comports with due process will preserve the public trust in the judicial system and the outcome of this case.

19. The Ad Hoc Committee of States is without question a major constituency in this case. In light of the nature of the claims held by the Member States, the participation of the Ad Hoc Committee of States in a consensual plan process would be highly beneficial to the administration of the Debtor's estate. The Mediation Order was entered without proper notice to parties affected by it and the Ad Hoc Committee of States respectfully requests that the Court reconsider such order.

20. Specifically, the Ad Hoc Committee respectfully requests that the scope of the Mediation Order be limited to resolution only of the claims of the parties represented by the Mediation Parties. The Mediation Order should further be modified to limit the confidentiality provisions in a manner that enables parties in interest to participate meaningfully in the bankruptcy case without hindering the Debtor's ability to openly discuss and negotiate with its creditor body potential plan provisions and treatment of other claims. Finally, the Mediation Order should clarify that *ex parte* discussions with the Court are not permitted.

## CONCLUSION

WHEREFORE, for the reasons set forth above and as may be raised at a hearing on this Motion, the Ad Hoc Committee of States requests entry of an Order (1) limiting the scope of the Mediation Order to resolution of the claims of those individuals and entities represented by the Mediation Parties, (2) modifying the confidentiality provisions of the Mediation Order to permit an open plan process, and (3) specifying that *ex parte* discussions with the Court are not permitted, and (4) granting such other and further relief as may be just and proper.

Dated: April 1, 2022

*/s/ Ericka F. Johnson*
Ericka F. Johnson (NJ #032162007)

Womble Bond Dickinson (US) LLP
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
(302) 252-4320
ericka.johnson@wbd-us.com