| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) <br><br> **LATHAM & WATKINS LLP** <br> Adam S. Ravin <br> 1271 Avenue of the Americas <br> New York, New York 10020-1401 <br> Telephone:  (212) 906-1200 <br> Facsimile:  (212) 751-4864 <br> E-mail: adam.ravin@lw.com <br><br> - and - <br><br> Jeffrey E. Bjork (admitted *pro hac vice*) <br> Kimberly A. Posin (admitted *pro hac vice*) <br> Amy C. Quartarolo (admitted *pro hac vice*) <br> 355 South Grand Avenue, Suite 100 <br> Los Angeles, California 90071-1560 <br> Telephone:  (213) 485-1234 <br> Facsimile:  (213) 891-8763 <br> E-mail:  jeff.bjork@lw.com <br>         kim.posin@lw.com <br>         amy.quartarolo@lw.com <br><br> *Counsel for Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc.* | |
| In re: <br><br> LTL MANAGEMENT LLC, <br><br>                Debtor.[1] | Chapter 11 <br><br> Case No.: 21-30589 (MBK) <br><br> Judge:  Michael B. Kaplan <br><br> Hearing Date: April 12, 2022 |

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George  Street, New Brunswick, New Jersey 08933.

**THE IMERYS DEBTORS' LIMITED OBJECTION TO MOTION BY
NON-PARTY MOVANTS DANIEL EDLEY AND ROGER EDLEY FOR
AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY AND
PRELIMINARY INJUNCTION DO NOT APPLY TO AN INTENDED
PUTATIVE CLASS ACTION TO BE FILED AGAINST JOHNSON AND JOHNSON
AND OTHER NONDEBTOR DEFENDANTS, OR, IN THE ALTERNATIVE, (II)
GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE
INTENDED PUTATIVE CLASS ACTION TO PROCEED**

Imerys Talc America, Inc. ("**Imerys Talc America**"), Imerys Talc Vermont, Inc. ("**Imerys Talc Vermont**") and Imerys Talc Canada Inc. ("**Imerys Talc Canada**" and, collectively with Imerys Talc America and Imerys Talc Vermont, the "**Imerys Debtors**") hereby file this limited objection (the "**Limited Objection**") to the *Motion by Non-Party Movants Daniel Edley and Roger Edley for an Order (I) Confirming that the Automatic Stay and Preliminary Injunction Do Not Apply to an Intended Putative Class Action to be Filed Against Johnson and Johnson and Other Nondebtor Defendants, or, in the Alternative, (II) Granting Relief From the Automatic Stay to Allow the Intended Putative Class Action to Proceed* [Docket No. 1722][2] (the "**Motion**") filed by Daniel Edley and Roger Edley ("**Movants**"). In support of the Limited Objection, the Imerys Debtors, by and through their undersigned counsel, respectfully represent as follows:

### BACKGROUND

A.   **Overview of the Imerys Debtors**

1.   In 1989, Cyprus Mines Corporation ("**Cyprus Mines**") purchased 100% of the stock of Windsor Minerals, Inc. ("**Windsor**") from Johnson & Johnson ("**J&J**").[3]  In 1992, Cyprus

---

[2]   "Imerys Docket No." is a reference to the docket in the Imerys Chapter 11 Cases (as defined below).

[3]   Additional factual background concerning the Imerys Debtors, including their business operations and the events leading to the filing of the Imerys Chapter 11 Cases, is set forth in detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings* [Imerys Docket No. 10], which was filed on the Imerys Petition Date (as defined herein), and in the *Disclosure Statement for Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Imerys Docket No. 2853].

2

Mines and its affiliates transferred such stock and all other assets in their then-existing talc business to a newly-formed subsidiary, Cyprus Talc Corporation ("**CTC**"), resulting in Windsor becoming a wholly-owned subsidiary of CTC.  Pursuant to a contemporaneous Agreement of Transfer and Assumption, dated June 5, 1992, RTZ America, Inc. (later known as Rio Tinto America, Inc.) purchased 100% of the stock of CTC from Cyprus Mines.  In 1992, CTC was renamed Luzenac America, Inc.

2.    In 2011, Mircal S.A. – an affiliate of the Imerys Debtors – entered into an agreement with Rio Tinto America, Inc. to purchase the stock of the Rio Tinto Group's talc operations, including Windsor (the "**2011 Purchase**").  Pursuant to that stock acquisition, Mircal S.A. exercised its right to cause Imerys Minerals Holding Limited (UK) to acquire the outstanding shares of Luzenac America, Inc.  At the same time, Mircal S.A. acquired the stock of Luzenac, Inc. from another member of the Rio Tinto Group, QIT Fer & Titane, Inc.  Luzenac America, Inc., Luzenac, Inc., and Windsor subsequently changed their names to Imerys Talc America, Imerys Talc Canada, and Imerys Talc Vermont, respectively.

3.    In the years following the 2011 Purchase, an increasing number of talc-related claims alleging personal injuries caused by exposure to talc mined, processed, or distributed by the Imerys Debtors were filed against one or more of the Imerys Debtors.  By early 2019, the Imerys Debtors had been sued by approximately 14,650 claimants seeking damages for personal injuries allegedly caused by the Imerys Debtors' talc.  As a result of the foregoing, on February 13, 2019 (the "**Imerys Petition Date**"), the Imerys Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") commencing cases for relief (the "**Imerys Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**").  The Imerys Chapter 11

Cases are being jointly administered in *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS). The Imerys Debtors – including Imerys Talc Vermont (formerly known as Windsor) – remain debtors and debtors-in-possession in the Imerys Chapter 11 Cases.

**B.    The Motion and Complaint**

4.    On March 14, 2022, Movants filed the Motion which, among other things, seeks to lift or modify the automatic stay that pertains to Debtor LTL Management LLC to permit Movants to file a putative class action against J&J. Movants purport to have claims against J&J for "fraud, fraudulent concealment, and fraud upon the courts in its defense of past asbestos personal injury lawsuits arising from exposure to industrial talc . . . mined, milled, and manufactured by its subsidiary, ***Windsor Minerals, Inc.***" *See* Motion at 2 (emphasis added). By the proposed complaint (the "**Complaint**"),[4] Movants seek:

> declaratory, equitable, and legal remedies and relief for thousands of asbestos claimants, who previously sued and whose cases were dismissed against J&J, its wholly owned subsidiary, Windsor Minerals, Inc. ("Windsor"), and/or any third-parties alleged to be legally responsible for Windsor's industrial talc ("Responsible Third Party"), ***for asbestos personal injury damages caused by exposure to industrial talc products mined, milled, sold, and distributed prior to January 6, 1989, by Windsor or its corporate predecessor***.

*See* Complaint ¶ 1 (emphasis added).

5.    The purported basis for such relief, is, among other things, that "J&J . . . falsely represented to courts and litigants that no evidence ever existed indicating that J&J/Windsor Industrial Talc contained asbestos." *Id.* at ¶ 3. In support of these allegations, Movants directly rely on alleged misrepresentations made by principals of Windsor/Imerys Talc Vermont relating to a lack of asbestos in Windsor/Imerys Talc Vermont talc. For example, the Complaint cites to

---

[4]    The Complaint is attached to the Motion as <u>Exhibit A</u>.

4

(i) a 1987 affidavit signed by Windsor's president, (ii) decisions of the Windsor board, and (iii) letters to and from directors and officers of Windsor. *Id.* at 2, ¶¶ 37, 76.[5] Thus, the fraud alleged in the Complaint is based, at least in part, on the actions of officers, directors, and employees of Windsor/Imerys Talc Vermont.

6. Although Windsor/Imerys Talc Vermont is not named as a defendant in the Complaint, the relief sought in the Complaint is dependent on allegations that exposure to Windsor/Imerys Talc Vermont talc caused asbestos-related personal injuries and that officers and directors of Windsor/Imerys Talc Vermont made material misrepresentations as to whether Windsor/Imerys Talc Vermont talc contained asbestos.

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

7. Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of," among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy case]." *See* 11 U.S.C. § 362(a)(1). The automatic stay becomes effective immediately upon the filing of a bankruptcy petition with respect to almost any action against a debtor and property of the debtor's estate, and continues in effect until the earliest of (a) the closing of the case; (b) dismissal of the case; or (c) the granting or denial of a discharge.

---

[5] Despite being asked repeatedly to do so in compliance with its indemnification obligations, J&J never defended any talc-related claims asserted against any of the Imerys Debtors following J&J's divestiture of Windsor/Imerys Talc Vermont in 1989. Thus, to the extent the Complaint relies on purported misrepresentations made directly by J&J after 1989, J&J was not authorized to speak on behalf of Imerys Talc Vermont with respect to such claims.

11 U.S.C. §§ 362(a), (c)(2)(A)–(C); *see also Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006).

8.  The automatic stay in the Imerys Chapter 11 Cases became effective on the Imerys Petition Date and parties continue to be barred from commencing or continuing any prepetition cause of action against any of the Imerys Debtors without further order of the Delaware Bankruptcy Court lifting or modifying the automatic stay.  While a court may grant relief from the stay for "cause," the party seeking such relief bears the burden to affirmatively move for and make a *prima facie* case for such relief.  *See, e.g., Del. Trust Co. v. Energy Future Intermediate Holding Co. (In re Energy Future Holdings Corp.)*, 533 B.R. 106, 117 (Bankr. D. Del. 2015).  Absent such relief being sought and granted, the automatic stay remains in full effect.

9.  Although the Complaint does not name Windsor/Imerys Talc Vermont as a defendant, the Complaint, if permitted to proceed, would ultimately and necessarily implicate Windsor/Imerys Talc Vermont by requiring a court to make findings and determinations with respect to the talc mined by Windsor/Imerys Talc Vermont, as well as its historical operations and conduct.[6]  Furthermore, at least certain of the alleged fraudulent statements described in the Complaint were made by officers or employees of Windsor/Imerys Talc Vermont and are intended to be used as purported evidence by Movants to support the veracity of their claims that exposure to Windsor/Imerys Talc Vermont talc caused asbestos-related personal injuries.  Complaint at 2, ¶¶ 37, 76.  The *Tenth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America,*

---

[6] The Complaint acknowledges a potential issue with the stay imposed in the Imerys Chapter 11 Cases by stating that it is not "asserting, directly or indirectly . . . [a]ny legal or equitable claim for relief or remedy against . . . Imerys Talc America ("Imerys").  This lawsuit is also not seeking, directly or indirectly, any damages, equitable relief, or declaratory judgment against Cyprus or Imerys." Complaint ¶ 20.  Of course, this statement overlooks the fact that the Complaint directly implicates Windsor/Imerys Talc Vermont and is premised on alleged misconduct by Windsor/Imerys Talc Vermont.  Moreover, it refers only to Imerys Talc America and is silent with respect to Imerys Talc Vermont.

6

*Inc. and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (the "**Imerys Plan**") [Imerys Docket No. 4099] filed in the Imerys Chapter 11 Cases seeks to address precisely these types of claims – "Talc Personal Injury Claims." *See* Imerys Plan § 1.1.236.[7] Accordingly, the filing of the Complaint by Movants – which directly implicates Windsor/Imerys Talc Vermont talc and attributes allegedly fraudulent statements to Windsor/Imerys Talc Vermont – would constitute a direct action against Imerys Talc Vermont and an action to recover a claim against Imerys Talc Vermont in violation of the automatic stay imposed in the Imerys Chapter 11 Cases. *See In re Bennett*, 528 B.R. 273, 279 (Bankr. E.D. Pa. 2015) ("The automatic stay is intended to cast a wide net and is applied broadly to effectuate its purposes.") (citing *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998)); *accord In re Linear Elec. Co., Inc.*, 852 F.3d 313, 317 (3d Cir. 2017) ("In general, we interpret the breadth of the stay broadly."); *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 327 (3d Cir. 1990) ("The scope of the automatic stay is undeniably broad."); *see also In re Colonial Realty,* 980 F.2d 125, 131-32 (2d Cir. 1992) ("Section 362(a)(1) provides that actions 'against the debtor' *or* 'to recover a claim against the debtor' are subject to the automatic stay. The latter category must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage.").

10.     Furthermore, claims against J&J arising from the facts alleged in the Complaint – *i.e.*, tainted talc from Windsor/Imerys Talc Vermont and misrepresentations made by Windsor/Imerys Talc Vermont directors and officers – may give rise to alter ego claims against J&J (or similar derivative theories of liability) on the part of Windsor/Imerys Talc Vermont. *See*

---

[7]    Talc Personal Injury Claim is defined in the Imerys Plan as "any Claim and any Talc Personal Injury Demand against one or more of the Debtors . . . including, without limitation any claims directly or indirectly arising out of or relating to: (a) any products previously mined, processed, manufactured, sold . . . and/or distributed by the Debtors or any other Entity for whose conduct the Debtors have or are alleged to have liability, but in all cases only to the extent of the Debtors' liability. . . ."

Complaint ¶¶ 35-36, 40. The alter ego claims against J&J existed as of the commencement of the Imerys Chapter 11 Cases, are property of the Windsor/Imerys Talc Vermont estate, and can only be brought by the Imerys Debtors for the benefit of their estates. Any attempt by the Movants to pursue these causes of action is an attempt to "exercise control over property of the estate" in violation of the automatic stay under section 362(a)(3) of the Bankruptcy Code. *See In re Emoral, Inc.,* 740 F.3d 875, 879 (3rd Cir. 2014) ("The 'estate,' as defined in the Bankruptcy Code, includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' This includes causes of action, which are considered property of the bankruptcy estate 'if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law.'") (internal citations omitted); *see also In re Mee Apparel, LLC*, No. CV 15-5697 (FLW), 2016 WL 3535805, at *7 (D.N.J. June 28, 2016) ("Bankruptcy law is clear that such generalized claims belong to the bankruptcy estate and may only be pursued by the trustee. This rule, and its application to the alter-ego claims of [appellants], comports with the fundamental policy of avoiding the rush to judgment favoring certain creditors over others that would be common to many, if not all, of the creditors of the Debtors in this case. Therefore, these [alter ego claims] are appropriately classified as 'general' claims belonging to the bankruptcy estate.") (internal citations omitted).

11. Even if this Court were to grant the relief requested by Movants pursuant to the Motion, the Imerys Debtors respectfully submit that Movants would also be required to seek relief from the automatic stay in the Imerys Chapter 11 Cases to file the Complaint. In the interests of efficiency and to avoid motion practice in the Imerys Chapter 11 Cases that may ultimately be unnecessary should this Court deny the Motion, the Imerys Debtors have not yet raised this issue with the Delaware Bankruptcy Court. However, the Imerys Debtors reserve all rights with respect

to the automatic stay, and, if necessary, will seek relief from the Delaware Bankruptcy Court for any actual or anticipated violation of the automatic stay associated with the Complaint and Movants' proposed putative class action.

## CONCLUSION

12. For the reasons set forth above, filing and prosecution of the Complaint by Movants would constitute a violation of the stay imposed in the Imerys Chapter 11 Cases. The Imerys Debtors reserve all rights, claims, defenses and remedies, including but not limited to the right to assert any claims for actual damages, including costs and attorneys' fees and, in appropriate circumstances, punitive damages pursuant to section 362(k) of the Bankruptcy Code, arising from any stay violation or otherwise.

|  |  |
|---|---|
| Dated: April 5, 2022<br>Wilmington, Delaware | */s/Adam S. Ravin*<br><br>**LATHAM & WATKINS LLP**<br><br>Adam S. Ravin<br>1271 Avenue of the Americas<br>New York, New York 10020-1401<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>E-mail: adam.ravin@lw.com<br><br>- and -<br><br>Jeffrey E. Bjork (admitted *pro hac vice*)<br>Kimberly A. Posin (admitted *pro hac vice*)<br>Amy C. Quartarolo (admitted *pro hac vice*)<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071-1560<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>E-mail: jeff.bjork@lw.com<br>         kim.posin@lw.com<br>         amy.quartarolo@lw.com<br><br>*Counsel for Imerys Talc America, Inc., Imerys Talc Vermont Inc., and Imerys Talc Canada Inc.* |