**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>**Hearing Date and Time:**<br>April 12, 2022 at 10:00 a.m. |

**DEBTOR'S OBJECTION TO MOTION FOR AN ORDER
CONFIRMING THAT THE AUTOMATIC STAY AND PRELIMINARY
INJUNCTION DO NOT APPLY TO AN INTENDED PUTATIVE CLASS
ACTION OR (II) GRANTING RELIEF FROM THE AUTOMATIC STAY**

LTL Management LLC (the "Debtor") hereby files this objection to the *Motion by*

*Non-Party Movants Daniel Edley and Roger Edley for an Order (I) Confirming That the*

*Automatic Stay and Preliminary Injunction Do Not Apply to an Intended Putative Class Action*

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1529036936

*To Be Filed Against Johnson and Johnson and Other Nondebtor Defendants, or, in the Alternative, (II) Granting Relief from the Automatic Stay to Allow the Intended Putative Class Action to Proceed* [Dkt. 1722] (the "Motion") filed by Cohen, Placitella & Roth, P.C. ("Cohen Placitella") on behalf of David Edley and Roger Edley (together, the "Movants"). In support of this objection, the Debtor respectfully represents as follows:

### Preliminary Statement

Since the outset of this chapter 11 case (the "Chapter 11 Case"), the Cohen Placitella firm has sought a "seat at the table" in connection with talc-claim settlement negotiations. At the November 4, 2021 hearing before the North Carolina bankruptcy court concerning appointment of an official talc claimants committee (the "TCC"), Cohen Placitella lawyer, Chris Placitella made the firm's pitch to be appointed to the TCC,[2] touting his firm's "unique" ability to "bridge the gap" between the various other law firms under consideration, having litigated both ovarian cancer and mesothelioma talc cases. See Tr. of 11/4/21 Hr'g, at 49:5-9 attached hereto as Exhibit A. Notwithstanding this request, Cohen Placitella's client was not appointed to the TCC.

After the North Carolina court transferred the Chapter 11 Case to this Court, the Office of the United States Trustee (the "U.S. Trustee") filed a notice purporting to divide and reconstitute the TCC into the Official Committee of Talc Claimants I ("TCC I") and the Official Committee of Talc Claimants II ("TCC II").[3] No Cohen Placitella client was appointed to either

---

[2] As a technical matter, Cohen Placitella was seeking appointment of its client, Joseph McGovern, to the TCC, although that distinction was not always respected. As counsel noted: "I've heard a lot about statistics and the number of claimants and I would just promise the Court that *if appointed to the Committee, along with Mr., to help Mr. McGovern*, I will never forget that statistics are people with the tears wiped away." Id. at 49:13-17 (emphasis added).

[3] See *Notice of the United States Trustee's Filing of Reconstituted and Amended: (I) Notice of Appointment of Official Committee of Talc Claimants I; and (II) Notice of Appointment of Official Committee of Talc Claimants II* [Dkt. 965] (the "Reconstitution Notice").

-2-

committee. In response, Mr. Placitella wrote a letter to the Court [Dkt. 1084] seeking either a role as a "liaison between the two committees" or else, if the Court determined to reinstate the TCC—as it ultimately did[4]—appointment to the TCC. Neither the U.S. Trustee nor this Court offered Cohen Placitella any official role in this Chapter 11 Case.

Now, in the wake of its repeated, failed efforts to secure an official role with any of the committees in these proceedings, Cohen Placitella has filed the Motion. The Motion ostensibly is asserted on behalf of certain settling plaintiffs who formerly filed asbestos personal injury claims (collectively, the "Industrial Talc Claims") against the Debtor's parent, Johnson & Johnson ("J&J"), or other entities, arising from the claimants' alleged exposure to industrial talc mined, milled and manufactured by J&J subsidiary, Windsor Minerals, Inc. Motion, 1-3. The Motion seeks a "comfort order" from the Court permitting Cohen Placitella to commence a putative class action proceeding (the "Class Action") against J&J and other nondebtor John/Jane Doe defendants asserting claims of fraud, fraudulent concealment and fraud upon the courts in J&J's defense of the Industrial Talc Claims. Id. In the alternative, if the Court were to find that the Class Action is subject to either (i) the automatic stay of section 362(a) of title 11 of the United States Code (the "Bankruptcy Code") or (ii) the preliminary injunction entered by this Court on March 7, 2022 (together, the "Stay/Injunction"),[5] then the Motion seeks relief from the Stay/Injunction to allow the Class Action to proceed. Id.

---

[4] On January 26, 2022, the Court entered an order [Dkt. 1273] striking the Reconstitution Notice and reinstating the TCC, effective as of March 9, 2022. On March 7, 2022, TCC II filed a motion [Dkt. 1645] seeking authorization that it be permitted to continue to exist solely for purposes of pursuing appeals of certain of the Court's orders. By an order entered on March 31, 2022 [Dkt. 1923], the Court denied that motion.

[5] See *Order (I) Declaring that Automatic Stay Applies to Certain Actions Against Non-Debtors and (II) Preliminarily Enjoining Certain Actions* [Dkt. 1635].

-3-

NAI-1529036936

Together, the Motion and draft complaint attached as Exhibit A thereto (the "Class Action Complaint") constitute a thinly veiled effort by Cohen Placitella to interfere with the Debtor's reorganization efforts at this critical point and to exert leverage over the direction of this Chapter 11 Case by drafting around the Stay/Injunction established by the Court. Although the Class Action Complaint purports to assert claims relating solely to industrial talc exposure (which liabilities were not assumed by the Debtor), both the Motion and Class Action Complaint are replete with baseless legal theories, false factual allegations and junk science drawn directly from the cosmetic talc cases, the litigation of which in a separate forum would materially prejudice the Debtor's reorganization efforts. As a result, if Cohen Placitella files the Class Action Complaint, the Debtor intends promptly to seek injunctive relief from this Court prohibiting continuation of that proceeding.

But injunctive relief from this Court should not be necessary. The contemplated Class Action is subject to the automatic stay in effect in the chapter 11 cases of Imerys Talc Vermont, Inc. ("Imerys Vermont") and its affiliated debtors Imerys Talc America, Inc. ("Imerys America") and Imerys Talc Canada, Inc. ("Imerys Canada" and, collectively with Imerys Vermont and Imerys America, "Imerys"), pending in the Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), Case. No. 19-10289 (the "Imerys Chapter 11 Cases"). As more fully described below, Windsor Minerals, Inc., the entity that mined, milled and manufactured the talc that allegedly gave rise to the Industrial Talc Claims that are the subject of the putative Class Action is Imerys Vermont. Cohen Placitella has not sought or obtained relief from stay in the Imerys Chapter 11 Cases and this Court should not effectively authorize the firm to proceed with litigation that will both interfere with the Debtor's efforts to

reorganize in this Chapter 11 Case and violate the automatic stay in the Imerys Chapter 11 Cases.

The Motion should be denied.

**Relevant Background**

I. **The Class Action Complaint Relies on the Same Misleading Allegations, Evidence, and Testimony Presented In the Cosmetic Talc Litigation**

1. The Class Action Complaint purports to address only "industrial talc products mined, milled, sold, and distributed prior to January 6, 1989, by Windsor or its corporate predecessor." See Class Action Complaint, 4. But in describing so-called evidence of asbestos contamination in this industrial talc, Cohen Placitella simply recycles the very same misleading allegations, evidence and testimony used against Johnson & Johnson Consumer Inc. ("Old JJCI") and J&J in the cosmetic talc litigation.

2. The allegations in the Class Action Complaint are virtually identical to allegations previously raised against Old JJCI and J&J in the cosmetic talc litigation. In December 2020, for example, plaintiffs' lawyers in the multidistrict litigation, In re Johnson & Johnson Talcum Powder Products, MDL No. 16-2738 (D.N.J.) (the "MDL") sought, for the second time, leave to amend the master complaint to add the very facts and allegations that are the subject of the Class Action Complaint. See *Plaintiffs' Motion For Leave To Amend Plaintiffs' First Amended Master Long Form Complaint*, attached hereto as Exhibit B. Cohen Placitella is one of the law firms representing plaintiffs in the MDL.[6] The factual allegations asserted in the Class Action Complaint and those asserted in the proposed Second Amended Complaint in the MDL in 2020 are nearly identical. Both complaints allege that J&J knew of the

---

[6] See Cohen Placitella Participation Request, 1 ("I currently serve as the court appointed plaintiff's liaison counsel to Chief Judge Wolfson in the [MDL].").

-5-

presence of asbestos by the 1970s, proceeded to lie to courts and litigants about that asbestos for nearly 40 years, destroyed relevant evidence and used testing methods designed to report negative results for the presence of asbestos—all in order to secure the dismissal of certain lawsuits. Compare December 22, 2020 Proposed Plaintiffs' Second Amended Master Long Form Complaint and Jury Demand at 28, 32, 44-50, 57, 59-61, attached hereto as Exhibit C to Class Action Complaint, 16-22, 27-31, 35-41.[7]

3.  In addition to recycling allegations from the MDL, the Class Action Complaint purports to rely on evidence elicited in the cosmetic talc cases. For example, the Class Action Complaint cites to more than *a dozen* transcripts of witnesses appearing on behalf of Old JJCI and/or J&J in prior cosmetic talc litigation (see, e.g., Exs. 2, 4, 6, 20, 29, 30, 35, 46, 47, 49, 50, 54, 89), more than *fifty* documents produced and used in prior cosmetic talc matters against Old JJCI and J&J (see, e.g., Exs. 5, 7, 8-10, 12-19, 21-28, 31, 32, 43, 45, 53, 55, 58-88, 90), as well as a series of summary demonstratives used extensively by plaintiffs' trial counsel in those actions (see, e.g., Fig. 1).

4.  Just as plaintiffs have in cosmetic talc proceedings, the Class Action plaintiffs strive to mislead, including by: (a) misinterpreting historic documents in an effort to conjure up the presence of asbestos in the talc at issue; (b) identifying as asbestos minerals that are not asbestos; (c) citing to discredited test results that were proven inaccurate; (d) mischaracterizing testing results for non-product samples; (e) ignoring basic principles of asbestos testing methods to criticize J&J's testing methods and allege asbestos contamination;

---

[7]  Further examination of the two complaints reveals numerous other similarities, including headings, allegations, arguments and the evidence relied upon. Moreover, the 2020 attempt to amend the master complaint in the MDL did not reflect new factual allegations or novel theories of liability. By that time, plaintiffs' attorneys in the cosmetic talc litigation had already extensively explored each of the legal theories set out in the Class Action Complaint and all of the alleged evidence underlying those theories.

-6-

NAI-1529036936

and (f) mischaracterizing testimony of expert witnesses. The Class Action Complaint thus simply repackages the very same misleading arguments purportedly demonstrating the presence of asbestos in talc from Imerys Vermont mines that have been raised and refuted time and time again in cosmetic talc litigation, all in a transparent and improper attempt to find a pretext to evade the stay attaching to cosmetic talc litigation against Old JJCI and J&J.

## II. The Class Action Complaint Is Subject to the Imerys Stay

5. The only entity alleged to have mined and sold the industrial talc referenced in the Class Action Complaint is Windsor Minerals, Inc., which is Imerys Vermont, one of the debtors in the Imerys Chapter 11 Cases. Prior to 1989, Imerys Vermont was a subsidiary of J&J. On January 6, 1989, J&J sold the stock of Windsor Minerals, Inc. to Cyprus Mines Corporation ("Cyprus") pursuant to a stock purchase agreement (the "1989 SPA"). The stock of Imerys Vermont subsequently changed hands a few more times,[8] and Imerys Vermont is currently an indirect subsidiary of the French conglomerate, Imerys S.A.

6. Imerys filed the Imerys Chapter 11 Cases in the Delaware Bankruptcy Court on February 13, 2019.[9] Cyprus filed a separate chapter 11 case in the Delaware Bankruptcy Court on February 11, 2021.[10] On July, 27, 2021, Imerys commenced an adversary proceeding in the Imerys Chapter 11 Cases (the "Imerys Adversary Proceeding") against J&J and Old JJCI, alleging that they owe indemnity to Imerys Vermont for any talc-related liability

---

[8] These transactions are described in greater detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings,* In re Imerys Talc America, Inc., Case No. 19-10289 (Bankr. D. Del. Feb. 13, 2019) [Dkt. 10] ¶¶ 12–13.

As stated in the Class Action Complaint, J&J acquired Imerys Vermont (formerly known as Eastern Magnesia TalcCo., Inc.) in 1965 and changed its name to Windsor Minerals, Inc. in 1967. Class Action Complaint, at ¶¶ 29, 34.

[9] In re Imerys Talc America, Inc., Case No. 19-10289 (Bankr. D. Del).

[10] In re Cyprus Mines Corporation, Case No. 21-10398 (Bankr. D. Del).

-7-

pursuant to the 1989 SPA and certain supply agreements (the "Imerys Vermont Indemnity Claim").[11]  Imerys has suggested that the Imerys Vermont Indemnity Claim may be Imerys Vermont's largest asset, asserting it is worth "billions of dollars in potential liability."[12]  The official committee of tort claimants appointed in the Imerys Chapter 11 Cases (the "Imerys TCC"), in which Cohen Placitella participates on behalf of a client,[13] filed a motion to intervene in the Imerys Adversary Proceeding.[14]  J&J and Old JJCI disputed the allegations in the Imerys Adversary Proceeding and asserted defenses to the Imerys Vermont Indemnity Claim.[15]  There has been no activity in the Imerys Adversary Proceeding since the filing of this Chapter 11 Case.

7.  The filing of the Class Action Complaint would violate the automatic stay in the Imerys Chapter 11 Cases for two separate and independent reasons:  (a) the claims asserted in the Class Action Complaint are claims against Imerys Vermont; and (b) the Class Action Complaint seeks to control property of Imerys Vermont's estate.  As such, Cohen Placitella cannot pursue the Class Action Complaint against J&J, Imerys Vermont or Imerys without an appropriate order of the Delaware Bankruptcy Court, which it has not sought.

8.  Although the Class Action Complaint names J&J (and not specifically Imerys Vermont), artful pleading cannot change the fact that the claims therein ultimately are

---

[11] *Complaint by Imerys Talc America, Inc., Imerys Talc Vermont, Inc. against Johnson & Johnson, Johnson & Johnson Consumer Inc.*, Imerys Talc America, Inc., et al., v. Johnson & Johnson (In re Imerys Talc America, Inc.), Case No. 19-10289, Adv. No. 21-51006 (Bankr. D. Del. July 27, 2021) [Dkt. 1].

[12] Id. at ¶ 3.

[13] *Notice of Appointment of Official Committee of Tort Claimants*, In re Imerys Talc America, Case No. 19-10289 (Bankr. D. Del. March 5, 2019) [Dkt. 132] (indicating that Nicole Matteo is a member represented by Cohen Placitella).

[14] *Motion of the Official Committee of Tort Claimants to Intervene in an Adversary Proceeding*, Imerys Talc America, Inc., et al., v. Johnson & Johnson, Case No. 19-10289, Adv. No. 21-51006 (Bankr. D. Del. July 27, 2021) [Dkt. 2].

[15] *Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Motion to Dismiss the Claims in the Adversary Complaint*, Imerys Talc America, Inc., et al., v. Johnson & Johnson (In re Imerys Talc America, Inc.), Case No. 19-10289, Adv. No. 21-51006 (Bankr. D. Del. Sept. 21, 2021) [Dkt. 56].

-8-

asserted against Imerys Vermont. Indeed, the Motion is clear that the fraud and fraudulent concealment alleged in the Class Action Complaint arise from exposure to industrial talc that was "mined, milled and manufactured by [J&J's] subsidiary, Windsor Materials, Inc. [i.e., Imerys Vermont]." Motion at 2. Moreover, the alleged misrepresentations set forth in the Class Action Complaint were statements made by directors and officers of, or individuals involved in key decision making at, Imerys Vermont. The Class Action Complaint thus seeks to liquidate the amount of damages claimed to be incurred by the Plaintiffs as a result of Imerys Vermont's alleged fraud relating to its underlying liability for industrial talc exposure.

9. Accordingly, although the Class Action Complaint does not yet name Imerys Vermont as a separate defendant, it is clearly an "action to recover a claim against a debtor," the pursuit of which is specifically prohibited by section 362(a)(1) of the Bankruptcy Code. See 11 U.S.C. § 362(a)(1) (staying "the commencement . . . of a judicial . . . action . . . against the debtor . . ., or to recover a claim against the debtor that arose before the commencement of the case under this title"); see also McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 510 (3d Cir. 1997) ("[C]ourts have applied the automatic stay protection to nondebtor third parties . . . where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'") (internal citations omitted); In re Colonial Realty, 980 F.2d 125, 131-23 (2d Cir. 1992) (recognizing that section 362(a)(1)'s reference, not just to actions "against the debtor," but also to actions "to recover a claim against the debtor" "must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage"); In re A.H. Robins Co. Inc. (A.H. Robins Co. v. Aetna), 828 F.2d 1023, 1024-25

NAI-1529036936

(4th Cir. 1987) (describing the Court's previous finding "that a stay was authorized under 11 U.S.C. § 362(a)(1) because there was such identity between the debtor (Robins) and the third-party defendant (Aetna) that a judgment against Aetna would in effect be a judgment against Robins."). It is also an "act to . . . assess . . . a claim against the debtor" in violation of section 362(a)(6) of the Bankruptcy Code. See 11 U.S.C. § 362(a)(6).

10. In addition, the Class Action Complaint seeks to "exercise control over property of the estate" in violation of section 362(a)(3) of the Bankruptcy Code. Because the Class Action Complaint alleges harm based on talc mined by Imerys Vermont, any claim against J&J arising from the alleged facts must be based on an argument either that (a) J&J is an alleged alter ego of Imerys Vermont (or is liable for the acts of Imerys Vermont based on similar veil piercing theories), or (b) J&J is an alleged indemnitor of Imerys Vermont.[16] Indeed, in a separate industrial talc complaint that Cohen Placitella filed against J&J in November 2021, but did not serve on J&J, Cohen Placitella was clear about its theory of liability against J&J relating to Imerys Vermont industrial talc, noting that J&J is liable "[i]ndividually and as successor to and by assumption of liabilities of [Imerys Vermont]."[17] Both of these types of claims against J&J (alter ego and indemnity) are property of the Imerys Vermont estate, and the pursuit of such claims is, therefore, an attempt to exercise control over property of the estate. See In re Emoral, Inc., 740 F.3d 875, 879 (3rd Cir. 2014) ("The 'estate,' as defined in the Bankruptcy Code, includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' This includes causes of action, which are considered property of the bankruptcy estate 'if

---

[16] To be clear, J&J disputes any liability in respect to such claims.

[17] Hollish vs. BASF Catalysts, LLC, Docket No. L-006802-21 (N.J. Super. Ct. Law Div. Nov 29, 2021). When the Debtor learned of this filing in March 2022 and confronted Mr. Placitella about the Imerys stay violation, he confirmed he would not pursue the complaint against J&J while the LTL stay is in effect.

NAI-1529036936

the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law.'") (internal citations omitted); Harrison v. Soroof Int'l, Inc., 320 F. Supp. 3d 602, 628 (D. Del. 2018) ("Having found that [plaintiff's] alter ego claim is property of the bankruptcy estate under Section 541(a)(1), the automatic stay of Section 362(a)(3) is clearly implicated.").

### Argument

11. The Motion provides no statutory basis for its primary request that the Court issue an order confirming that the Stay/Injunction would not apply to the filing of the Class Action Complaint. Presumably, the Movants intend that the Court issue such an order pursuant to its general equitable powers provided for by section 105(a) of the Bankruptcy Code. Section 105(a) provides in relevant part that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).[18]

12. Under the circumstances, the Debtor submits that it is neither necessary nor appropriate for the Court to issue an order effectively authorizing Cohen Placitella's contemplated filing of the Class Action Complaint. For all the reasons summarized above, the Class Action Complaint constitutes nothing more than a collateral attack on this Chapter 11 Case, recasting false and misleading allegations derived from stayed cosmetic talc claims into claims relating to representations made in connection with Industrial Talc Claims for the sole purpose of litigating the allegations in another forum and undermining the Debtor's settlement

---

[18] The Movants discuss section 105 at length in connection with their irrelevant and incorrect attempt to persuade the Court that—contrary to the Court's existing rulings in this Chapter 11 Case—section 105 cannot be used to extend the automatic stay to nondebtor entities in appropriate circumstances. See Motion, 17-22. They fail, however, to offer section 105(a), or any other provision of the Bankruptcy Code, as a basis for the relief they request.

NAI-1529036936

efforts. The evidence is neither new nor unique. There is no sign at all of a specially tailored Industrial Talc Claim. It is simply Cohen Placitella's repackaging of the very same complaint, using all the same repeat evidence, that counsel proposed using in the MDL.

13. The substantial overlap in allegations, evidence, and testimony presents a significant risk of prejudice to the Debtor's estate in the event that Cohen Placitella is permitted to prosecute the Class Action Complaint in another forum. If the Class Action Complaint moves forward, a different court will review the very same evidence that is the subject of the cosmetic talc claims that have been stayed in these proceedings, potentially leading to divergent rulings on identical issues. These rulings could create an evidentiary taint with respect to core issues in this Chapter 11 Case. For that reason, the Debtor intends to seek appropriate relief from this Court to preserve the integrity of these proceedings in the event that Cohen Placitella files the Class Action Complaint.

14. Courts in other proceedings have recognized that this sort of potential prejudice supplies grounds for an injunction. In re DBMP LLC, No. 20-30080, 2021 WL 3552350 at *41 (W.D.N.C. Aug. 11, 2021) (litigating the same claims outside of the bankruptcy "would undermine the purposes of chapter 11 and section 524(g) to resolve all such current and future claims in a fair and equitable manner through a chapter 11 plan"); In re Bestwall, 606 B.R. 243, 256 (Bankr. W.D.N.C. 2019); In re Johns-Manville Corp., 40 B.R. 219, 224-25 (S.D.N.Y. 1984); W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 386 B.R. 17, 34-35 (Bankr. D. Del. 2008).. As one court put it, "once a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding" involving the debtor regardless of whether the debtor "was a party to the record on which the initial testimony was taken." Johns-Manville, 40 B.R. at 225. The same concern arises for other

evidence: "Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time." Id. Regardless of what the parties to the other proceeding might "stipulate, the thousands of other claimants and cross claimants who are after [the debtor's] assets, would be entitled to use the product of such discovery." Id.

15. But, whether or not the claims asserted in the Class Action Complaint are now or will in the future be enjoined in this Chapter 11 Case, they unequivocally are subject to the automatic stay in the Imerys Chapter 11 Cases because they ultimately are asserted against the Imerys debtors and seek to exercise control over property of their estates.

16. The Debtor therefore requests that the Court decline to enter an order granting any of the relief requested in the Motion because it would undermine these proceedings by sanctioning state-court litigation of the exact same claims at the heart of this Chapter 11 Case. Any other outcome would merely encourage Cohen Placitella and other plaintiffs' firms to continue their efforts to derail this Chapter 11 Case by sidestepping the stay and injunctive relief granted by this Court and impede the Debtor's ability to achieve a successful reorganization in this case.

## Conclusion

17. For all the reasons set forth herein, the Debtor respectfully requests that the Court (a) deny the Motion and (b) grant the Debtor such other and further relief as the Court may deem proper.

NAI-1529036936

Dated: April 5, 2022

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (*pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*