UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGION 3
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:	jeffrey.m.sponder@usdoj.gov
	lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>LTL Management LLC,[1]<br><br>Debtor. | : Case No. 21-30589 (MBK)<br>:<br>: Chapter 11<br>:<br>: The Honorable Michael B. Kaplan, Chief Judge<br>:<br>: Hearing Date:  April 12, 2022 @ 10:00 a.m. |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
APPLICATION FOR RETENTION OF DUCERA PARTNERS LLC
AS INVESTMENT BANKER FOR THE OFFICIAL COMMITTEE OF TALC
<u>CLAIMANTS II EFFECTIVE DECEMBER 31, 2021</u>**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), by his undersigned counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), respectfully submits this objection ("Objection") to the *Application for Retention of Ducera Partners LLC as Investment Banker for the Official Committee of Talc Claimants II Effective as of December 31, 2021* (the "Application") (Dkt. 1708), and respectfully represents as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## JURISDICTION

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts." *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this Objection.

## BACKGROUND AND RELEVANT FACTS

**A.    Bankruptcy Case.**

4. On October 14, 2021, LTL Management, LLC (the "Debtor"), filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "N.C. Court").

5. On October 28, 2021, a Motion to Appoint an Official Committee of Talc Claimants was filed by the Office of the United States Bankruptcy Administrator.[2] (*See* Dkt. 227). On November 8, 2021, the North Carolina bankruptcy court entered an order appointing an Official Committee of Talc Claimants (hereinafter referred to as the "Initial Committee"). (*See* Dkt. 355).

---

[2] The Western District of North Carolina is not part of the United States Trustee system, and as a result no United States Trustee participated in this case prior to its transfer to this Court. *See* 28 U.S.C. § 581.

6. On November 16, 2021, the N.C. Court entered an order transferring venue of this case to the District of New Jersey. (*See* Dkt. 416).

7. On December 23, 2021, the U.S. Trustee filed the Notice of Filing of Reconstituted and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I ("TCC I"); and (ii) Notice of Appointment of Official Committee of Talc Claimants II ("TCC II") (the "Notice"). (*See* Dkt. 965). Seven members of the Initial Committee remained on TCC I and were joined by two additional members (Ms. Carl and Ms. Ellison). (*See* Dkt 965-1). The remaining four members of the Initial Committee became part of TCC II and were joined by three additional members (Ms. Tollefson and Messrs. Plotkin and Sosa). (*See* Dkt. 965-2).

8. On January 3, 2022, Debtor filed a Motion for an Order Determining that the United States Trustee's Notice of "Reconstituted and Amended" Talc Claimants Committee is Invalid and Reinstating that Committee (the "Debtor's Committee Motion"). (*See* Dkt. 1047). Similarly, on January 5, 2022, Arnold & Itkin filed a Motion for an Order Vacating Appointment of Second Official Committee of Talc Claimants and Addition of New Committee Members (the "Arnold & Itkin Committee Motion" and together with the Debtor's Committee Motion, the "Committee Motions"). (*See* Dkt. 1067).

9. During a January 19, 2022 hearing, the Court rendered an oral decision granting the Committee Motions, and striking the U.S. Trustee's Notice without prejudice. The Court held that the Notice issued by the U.S. Trustee on December 23, 2021 was procedurally flawed and void. On January 20, 2022 the Court issued a Memorandum Opinion memorializing its ruling. (*See* Dkt. 1212).

10. A subsequent Order entered by the Court on January 26, 2022 provided that TCC I and TCC II, appointed pursuant to the U.S. Trustee's Notice, shall remain in "full force and effect" until March 8, 2022. (*See* Dkt. 1273 at ¶ 5).

11. TCC II's status was discussed during the March 8, 2022 omnibus hearing. Initially the Court allowed TCC II's continued existence until April 12, 2022 for the limited purposes of filing appeals and seeking the appointment of a second future claimants representative. (*See* Transcript of March 8, 2022 Hearing at p. 26). In response to concerns that other issues may arise during that month on which it would be appropriate for TCC II to comment, the Court decided TCC II would exist until April 12, 2022 to appear "on all matters," but the Court implored them "to limit the matters." (*Id.*)

    **B.**    **TCC II Retention Applications.**

12. On December 22, 2022, the Initial Committee filed an application to retain FTI Consulting, Inc. ("FTI") as Financial Advisor ("FA"). On January 11, 2022, a Supplemental Certification was filed requesting Court approval for FTI to be retained as FA for TCC II. (*See* Dkt. 1111). On January 13, 2022, the Court approved FTI's retention as TCC II's FA on an interim basis. (*See* Dkt. 1134).

13. On January 6 and 7, 2022, TCC II filed several applications to retain legal counsel. (*See* Dkts. 1079, 1080 and 1091). Those applications were also approved by the Court. (*See* Dkts. 1606, 1682 and 1683).

14. On March 11, 2022, three days after it had been scheduled to go out of existence, TCC II filed the Application to Retain Ducera Partners LLC ("Ducera") as Investment Banker *nunc pro tunc* to December 31, 2021. (*See* Dkt. 1708). Section 9 of the attached Engagement Letter required that TCC II seek Court approval of Ducera on an expedited basis. (*See id.*)

Nowhere is a reason given for why the Application was filed more than sixty days after Ducera's purported engagement and three days after TCC II was originally to have gone out of existence.[3]

15. Ducera was to provide "General Investment Banking Services" and "Transaction Services" for TCC II. (*See* Dkt. 1708, ¶¶ 5 (A) and (B)). In return, for the first four months Ducera would receive a flat monthly fee of $400,000 and thereafter would be paid $300,000 per month, plus expenses and an indemnity provided by the Debtor. (*Id.* at ¶6).

16. Ducera did not appear as an expert or fact witness during the Motion to Dismiss trial held the week of February 14, 2022. TCC II did not submit an expert report from Ducera in connection with the Motion to Dismiss. During a February 2, 2022 telephonic conference, the Court made clear that TCC I and II combined could submit a total of 2 expert reports. Those reports were generated by FTI (retained by TCC II) and Houlihan Lokey Capital, Inc. ("Houlihan") (retained by TCC I). (*See* Dkt. 1244).

## LAW, ANALYSIS AND ARGUMENT

**A. TCC II has not Met the Third Circuit's Strict Standard for *Nunc Pro Tunc* Relief Which Requires a Showing of the Existence of "Extraordinary Circumstances".**

17. The Court should deny approval of the *nunc pro tunc* relief as TCC II failed to provide any information supporting the *nunc pro tunc* request. TCC II was able to file timely retention applications for counsel and the necessary paperwork to retain FTI as its FA. Why Ducera was not addressed until after TCC II was scheduled to go out of existence is never adequately explained.

18. *Nunc pro tunc* relief is an equitable remedy that is left to the discretion of the court. *See Weil v. Markowitz*, 898 F.2d 198, 200 (D.C. Cir. 1990) (noting that the issue of whether to

---

[3] The January 2022 Monthly Invoice for Cooley LLP, lead counsel for TCC II, reflects time was spent during that month on Ducera's retention. (*See* Dkt. 1765).

grant *nunc pro tunc* relief is best left to the discretion of the court). Black's Law Dictionary defines *nunc pro tunc* as relief that has a retroactive legal effect. This discretion is not without parameters.

19. The Third Circuit unequivocally established the "extraordinary circumstances" standard for approval of *nunc pro tunc* employment. *In re Arkansas Co.*, 798 F.2d 645 (3d Cir. 1986) and *In re F/S Airlease II, Inc.*, 844 F2d. 99 (3d Cir. 1988), *cert. denied*, 488 U.S. 852, 102 L.Ed.2d 110, 109 S. Ct. 137 (1988). The Third Circuit stated that the determination of what constitutes "extraordinary circumstances" requires consideration of various factors:

> such as whether the applicant or some other person bore the responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*In re Arkansas Co.*, *supra*, at 650.

20. The Third Circuit has held that a circumstance must be outside of the control of the applicant before it can be deemed "extraordinary." *See, e.g.*, *In re Arkansas Co.*, 798 F.2d at 649-50. Circumstances created by the applicant's negligence are not sufficient to justify retroactive relief. *Id.* at 650.

21. It should also be noted that equitable arguments such as the fact that work may have already been performed or may even have benefitted the estate have been rejected by the Third Circuit. *Cf., In re F/S Airlease*, 844 F.2d at 108.

22. Here, neither Ducera or TCC II provide any basis to allow *nunc pro tunc* relief to December 31, 2021.

### B. TCC II has not Met its Burden of Establishing that Ducera's Retention is Reasonable.

23.  There is no evidence that Ducera's retention benefited, or will benefit, the tort claimants or the bankruptcy estate when, at this juncture, no sale or transaction services are necessary. Paragraph 5 of the Application describes Ducera's services as follows:

> (A) General investment banking services, including (i) familiarizing itself with the business, operations, financial condition, and capital structure of the Debtor and its non-debtor affiliates; (ii) assisting with the review of, and advising Counsel in connection with, TCC II's litigation efforts relating to the Debtor and non-debtor affiliates, including preparation of TCC II witnesses, review of discovery documents, assistance at hearings, depositions, and other meetings, and other litigation support (collectively, the "Litigation"); (iii) evaluating from a financial perspective any proposed Transaction of the Litigation, including the nature, form, and duration of consideration, actions undertaken (or scheduled to be undertaken) by the Debtor to effectuate such a resolution, and assist with an assessment of insurance coverage and indemnification rights; (iv) assessing the ability of the Debtor to contribute to a Transaction involving the Litigation, as well as the exposure, if any, of any legacy owners of the Debtor; (v) assisting with analyzing and evaluating alternative potential Transaction scenarios and strategic alternatives available to the Debtor and their potential impact on the Litigation; (vi) assisting with the assessment of the Debtor's liquidity and uses of liquidity and with identifying potential sources of financing in connection with future transactions; (vii) provide deposition and hearing testimony, as necessary, relating to matters on which Ducera has been engaged to perform its investment banking services, including expert testimony and, (viii) providing such other investment banking services as may be agreed upon by Ducera, Counsel and TCC II.
>
> (B) Transaction Services, including: (i) assisting with the evaluation, arrangement, structuring, negotiation, and effectuation of a Transaction; (ii) analyzing the Debtor's financial liquidity and evaluate alternatives to improve such liquidity in connection with a Transaction; and, (iii) providing any other investment banking services as are customary for similar transactions and as may be mutually agreed upon by Ducera and TCC II.

(*See* Dkt. 1708).

24.  There are many reasons why these services are not necessary at this stage of the case or as of December 31, 2021.  First, the Debtor has not retained the services of an investment banker, nor has it proposed bid procedures for a sale of some or all of the Debtor's assets.  Based on the type of assets held by the Debtor, it is highly doubtful such a sale will be proposed.

25. Second, other retained professionals are providing many of the services listed in the Ducera Application. For instance, Ducera will assess insurance coverage and indemnification rights and the exposure of "legacy" owners. (*See* Dkt. 1708, ¶¶ 5 (A) (iii) and (iv)). In the first instance these are legal issues, and the ability of TCC II's legal counsel to handle such subjects was at least in part the reason for their retention.

26. In addition, already retained FA FTI has the capacity to perform many of the other listed Ducera services.[4] FTI's retention includes: preparing analyses required to assess the Debtor's funding and other intercompany agreements with Johnson & Johnson and Johnson & Johnson Consumer, Inc. and any other proposed financing; reviewing the Debtor's and its non-Debtor subsidiary's analysis of core business assets, valuation of those assets, and the potential disposition or liquidation of non-core assets; and assisting in the prosecution of Committee responses/objections to the Debtor's and other parties of interest's motions and pleadings, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee . (*See* Dkt. 954. ¶¶ 5 (b),(d) and (k)). Further, a Ducera expert report was never produced and Ducera was not offered by TCC II as an expert.

27. Finally, due to TCC II's status, the Court should not approve Ducera's retention. This objection will be considered on the same date TCC II ceases to exist. For the reasons set forth above, *nunc pro tunc* relief should not be granted. Therefore, the Court should focus only on services from Ducera starting on March 11, 2022, the Application filing date. By that time, the Motions to Dismiss had been decided and the Court had set April 12, 2022, as the end date for

---

[4] Further, it is the U.S. Trustee's understanding that once TCC I and TCC II dissolve, the Initial Committee, which will then be in existence, will retain the services of both FTI and Houlihan. The U.S. Trustee reserves all rights with respect to the final retention of these two firms.

TCC II.  There were no investment banking or transaction services needed by TCC II during this one-month period.

28. Accordingly, TCC II has not demonstrated that Ducera's engagement will provide a "tangible, identifiable, and material benefit" to the bankruptcy estates.  Based on this lack of benefit and the capabilities of other professionals retained by TCC II, Ducera's retention is unnecessary and should not be approved.

29. The U.S. Trustee reserves and any all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion, or seek any other relief deemed appropriate and necessary and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.  The U.S. Trustee also reserves all rights to review and object to Ducera's fee application(s).

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the Application in its entirety and grant such other and further relief that is deemed just and equitable.

        Respectfully submitted,

        ANDREW R. VARA
        UNITED STATES TRUSTEE
        REGIONS 3 & 9

        By:   */s/ Jeffrey M. Sponder*
              Jeffrey M. Sponder
              Trial Attorney

        By:   */s/ Lauren Bielskie*
              Lauren Bielskie
              Trial Attorney

Dated:  April 6, 2022