<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**GOLOMB SPIRT GRUNFELD, P.C.**
Richard Golomb, Esq.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
(215) 985-9177
rgolomb@golomblegal.com
*Counsel for Claimant Brandi Carl*

</td></tr>
<tr><td>

In re:

LTL MANAGEMENT, LLC,[1]

                Debtor.

</td></tr>
</table>

Chapter 11

Case No.:  21-30589 (MBK)

Honorable Michael B. Kaplan

**Hearing Date and Time:
April 12, 2022 at 10:00 am**

### MOTION OF CLAIMANT BRANDI CARL FOR APPOINTMENT TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS

Claimant Brandi Carl, by and through her undersigned counsel, respectfully submits this Motion (the "Motion") for entry of an order, substantially in the form submitted herewith (the "Proposed Order"), permitting Ms. Carl to remain as a member of the Official Committee of Talc Claimants ("TCC") after the Official Committee of Talc Claimants I ("TCC I") and Official Committee of Talc Claimants II ("TCC II") are disbanded on April 12, 2022. In support of the Motion, Ms. Carl respectfully states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the U.S. District Court for the District of New Jersey, dated September 18, 2021.

---

[1] The last four digits of Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 1102(a)(4) of the

Bankruptcy Code.

### FACTUAL AND PROCEDURAL BACKGROUND

4.      The Debtor commenced this bankruptcy on October 14, 2021 by filing a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court

for the Western District of North Carolina.

5.      On October 15, 2021, the U.S. Bankruptcy Administrator in North Carolina

solicited submissions for interested creditors to be considered for membership on a committee of

talc claimants.

6.      It is important to note that the process for appointing a creditor committee is

different in North Carolina compared to almost all other states.

7.      Unlike the U.S. Trustee in New Jersey and other states, the Bankruptcy

Administrator in North Carolina does not interview any prospective claimants or their counsel.

8.      After collecting applications for less than two weeks, on October 28, 2021, the

Administrator filed a Motion to Appoint an official committee of talc claimants consisting of

eleven proposed members. D.I. 227.

9.      On November 1, 2021, Claimant Brandi Carl (not included in the Bankruptcy

Administrator's original eleven) filed a Motion seeking to be included as a member of the Official

Committee of Talc Claimants. *See* Motion of Brandi Carl in Opposition to Appointment of Talc

Claimants Committee in U.S. Bankruptcy Court, W.D. N.C., attached hereto at Ex. 1.

10.     At a hearing on November 4, 2021 regarding the Official Committee, the Honorable

J. Craig Whitley heard from a number of claimants, including the undersigned counsel for Brandi

Carl, regarding the composition of the Committee. *See* Transcript of Proceedings Before The Honorable J. Craig Whitley, U.S. Bankruptcy Judge, Nov. 4, 2021, W.D. N.C., Charlotte Div., Case No. 21-30589, excerpts attached hereto at Ex. 2.

11.     Judge Whitley understood the importance of appointing a committee early, but he acknowledged his own lack of understanding about how the committee should be comprised. *See* Transcript at 26-28.

12.     For example, Judge Whitley stated: "I don't think I'm going to be in a position [today] to talk about the underlying tort claims themselves. I'm not sure I know enough at this juncture to say whether there should be a 50-50 representation or something else between the diseases." *See id.* at 27.

13.     Ultimately, Judge Whitley decided to approve the TCC as proposed by the Administrator so that the group could start working, but he stated that the formation was "… without prejudice to consider this further either by me or by another court and to consider addition, deletions, changes, whatever is appropriate under the circumstances… and I may add one or two of you later on, maybe more, who knows." *See id.* at 62-63.

14.     On November 8, 2021, on Motion of the Administrator, the N.C. Bankruptcy Court formally entered the Talc Committee Appointment Order [D.I. 355], which granted the Administrator's Motion and appointed the TCC, as requested by the Administrator.

15.     Clearly, based on his comments at the November 4, 2021 hearing, Judge Whitley intended to leave open any final decision about the makeup of the TCC. *See* Transcript at 28 ("[W]e could basically reserve decision and if we have to get into the fight of the composition or whether there should be two committees or all those other things, we could put that off a little bit."); *id.* at 63 (stating that he was approving the TCC "on a preliminary basis").

16.     In fact, Judge Whitley anticipated that a successor judge who inherited the case from him would be the one to closely scrutinize the requisite composition of the committee. *See id.* at 63 ("I will just hold this decision [regarding committee makeup] until after the venue [motion] and then if need be, I will put it on for further consideration and . . . if there is a successor judge, then I'll leave it in their hands as to whether to change the composition.").

17.     At a hearing on November 10, 2021, Judge Whitley granted the motion to transfer venue to New Jersey, which was finalized by order dated November 16, 2021. D.I. 416.

18.     On November 23, 2021, after the bankruptcy case was transferred to New Jersey, the Office of the United States Trustee sent notification to Claimants asking about interest in serving on the committee of Talc Claimants.

19.     Thereafter, Ms. Carl sought appointment to the Committee. She was vetted and interviewed, as was her counsel, and her application was granted on December 24, 2021. *See* D.I. 965, *Notice of the U.S. Trustee's Filing of Reconstituted and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II* (the "UST Notice").

20.     On Jan. 3, 2022, the Debtor filed a Motion Objecting to the UST Notice, and specifically the existence of two committees. D.I. 1047.

21.     On January 19, 2022, following a hearing, the Court granted the Debtor's Motion and ordered that the two committees be disbanded and the original TCC be reinstated at a future date. D.I. 1212 and 1273.

22.     At a hearing on March 8, 2022, the Court issued a bench order extending the deadline to April 12, 2022 for when the original TCC will be reinstated.

23.     When TCC I and TCC II are disbanded on April 12, 2022, and the original TCC is reconstituted, Ms. Carl will no longer be a member of the TCC.

## ARGUMENT

24.     This motion is filed pursuant to 11 U.S.C. § 1102(a)(4) because a change in membership of the TCC will be necessary to ensure adequate representation among Ovarian Cancer ("OC") Claimants, Mesothelioma ("Meso") Claimants, and Lien Holder ("LH") Claimants and because the cohort of OC Claimants will be unbalanced geographically.

### A.     The TCC Should be Balanced by Disease Type

25.     When reconstituted on April 12, 2022, the TCC will have six (6) OC Claimants, four (4) Meso Claimants, and one (1) LH Claimant.

26.     Among the pending cases in litigation, there are over 38,000 OC cases and just over 400 Meso cases.

27.     Thus, as has already been pointed out by the Debtor, Meso Claimants will be grossly over-represented on the TCC because they will represent 1% of cases, but 36% of the TCC. *See* D.I. 1047 at 2.

28.     For voting purposes, the number of committee members should remain an odd number, therefore if the Court grants this motion and appoints Ms. Carl to the TCC, the Court should also appoint one additional member.

29.     With two additional OC members, the Committee will consist of eight (8) OC Claimants, four (4) Meso Claimants, and one (1) LH Claimant, which still provides Meso Claimants overrepresentation on the TCC, but more fairly represents the constituency of the litigation compared to the current committee makeup.

30.     Based on what is now known about the underlying litigation, to ensure adequate representation under 11 U.S.C. § 1102(a), the supplemental member, in addition to Ms. Carl, should be another OC Claimant.

**B.      The TCC Should Have New Jersey State Representation**

31.     There are four primary constituencies of OC cases: (1) Federal MDL in NJ, (2) California State, (3) Missouri State, and (4) New Jersey State. However, when the TCC is reconstituted, only the first three constituencies will be adequately represented on the TCC.

32.     The appointment of Ms. Carl to the TCC is necessary to cure this deficiency and ensure adequate representation.

33.     Ms. Carl is a bellwether plaintiff from New Jersey State litigation who has persistently sought to represent the Debtor's unsecured creditors in both North Carolina and New Jersey.

34.     Ms. Carl was first diagnosed with OC in 2012 at the age of 36. She lives in Pennsylvania and her case is pending in New Jersey State court. For years, she has served in a fiduciary role gaining extensive experience representing the interests of other N.J. plaintiffs.

35.     Ms. Carl's counsel, Richard Golomb, Esq., has filed lawsuits on behalf of 1,096 women and their estates against J&J as a result of genital talc use causing OC. Nearly one thousand of those cases are filed in New Jersey State Court and the remaining one hundred are pending in the Federal MDL in NJ. In addition, the undersigned serves as co-lead counsel on behalf of the nearly 1,500 women who have filed suit in New Jersey State Court. This group of cases is second only to the Federal MDL in total cases filed.

36.     Allowing Ms. Carl to remain on the TCC after April 12, 2022 will ensure adequate representation for OC Claimants from New Jersey State Court, who will otherwise go unrepresented.

37.     Pursuant to sections 105(a) and 1102(a)(4) of the Bankruptcy Code, Claimant seeks entry of the Proposed Order permitting Ms. Carl to remain as a member of the TCC after TCC I and TCC II are disbanded on April 12, 2022.

## BASIS FOR RELIEF REQUESTED

38.     Section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "This section has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

39.     Section 1102(a)(4) of the Bankruptcy Code authorizes this Court to "order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure the adequate representation of creditors or equity security holders." 11 U.S.C. § 1102(a)(4).

40.     At the time the Original TCC was formed in North Carolina, the Honorable J. Craig Whitley, stated that the formation was "… without prejudice to consider this further either by me or by another court and to consider addition, deletions, changes, whatever is appropriate under the circumstances… and I may add one or two of you later on, maybe more, who knows." *See* Transcript, Ex. 2, at 62-63.

41.    Before her appointment to TCC I, Ms. Carl was thoroughly vetted by the UST to be a member of the TCC. She was chosen as an appropriate representative of the interests of creditors because of her status as a bellwether plaintiff and leading fiduciary for OC Claimants.

42.    With the addition of Ms. Carl, the TCC will more adequately represent the interests of Claimants for multiple reasons.

43.    Without Ms. Carl, the TCC will lack a committee member to adequately represent the interests of New Jersey claimants. This gap should be filled by Ms. Carl because New Jersey is the biggest group of state court cases with nearly 1,500 total.

44.    Other regions that have fewer total cases—including California and Missouri—are adequately represented on the TCC.

45.    Ms. Carl is ideally suited and well positioned to serve on the TCC and represent New Jersey claimants.

46.    Ms. Carl is an experienced fiduciary who was one of the first to file suit in N.J. in 2014 and she has a long history of representing the interests of N.J. claimants who have suffered and died from OC.

47.    Ms. Carl was chosen as a lead plaintiff for the *Kemp* hearings regarding experts in New Jersey.

48.    Ms. Carl was selected as an initial bellwether plaintiff and was scheduled for trial.

49.    Importantly, Ms. Carl successfully appealed the trial court's exclusion of her causation experts, a ruling that benefited all N.J. talc plaintiffs. *See Carl v. Johnson & Johnson*, 237 A.3d 208, 464 N.J. Super. 446 (N.J. Super. 2020), *certification denied by* 245 N.J. 144 (2021).

50.    Ms. Carl is a nurse, and therefore she has literally served in a dual support system role for other women injured by J&J's baby powder products, both as nurse and plaintiff.

51.    This is one of the largest bankruptcies in the history of the United States and it is worthy of expansion to ensure adequate representation. The reinstated TCC will be unbalanced because Meso Claimants will be over-represented. To provide adequate representation, the Court should grant the instant motion and appoint Ms. Carl as a member of the TCC. Doing so will make the proportion of members representing OC Claimants more representative of the litigation caseload.

52.    Since her appointment to TCC I in December 2021, Ms. Carl and her counsel have worked tirelessly and collaboratively with the other members of TCC I and their counsel. Ms. Carl and her representatives have been actively involved in crucial substantive strategy decisions related to the Motion to Dismiss, Debtor's Preliminary Injunction Motion, and the upcoming Mediation, including direct talks with the Co-Mediators. Ms. Carl's and her counsel's contributions to the smooth functioning of TCC I have been instrumental, and their continued involvement is essential.

53.    Another reason that the Court should grant the instant Motion is because it will minimize any further disruption to the proceedings and ensure a smooth transition when TCC I and TCC II are disbanded. This will benefit all claimants and ensure adequate representation going forward.

## CONCLUSION

54.    For all of the foregoing reasons, Claimant Brandi Carl respectfully requests that the Court enter an order permitting Ms. Carl to remain as a member of the Official Committee of Talc Claimants after the Official Committee of Talc Claimants I and Official Committee of Talc Claimants II are disbanded on April 12, 2022.

Dated: April 8, 2022

Respectfully submitted,

**GOLOMB SPIRT GRUNFELD, P.C.**

By: /s/ *Richard Golomb*
Richard Golomb, Esq.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-985-9177
Fax: 215-985-4169
Email: rgolomb@golomblegal.com

*Attorney for Claimant Brandi Carl*