UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGION 3
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:  jeffrey.m.sponder@usdoj.gov
         lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 21-30589 (MBK) |
| LTL Management LLC,[1] | Chapter 11 |
| Debtor. | The Honorable Michael B. Kaplan, Chief Judge |
| | Hearing Date:  April 12, 2022 @ 10:00 a.m. |

**RESPONSE OF THE UNITED STATES TRUSTEE TO THE VARIOUS MOTIONS FOR APPOINTMENT TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), by his undersigned counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), respectfully submits this response ("Response") to: (i) *Motion of Claimant Shirleeta Ellison for Appointment to the Official Committee of Talc Claimants* (Dkt. 1963) ("Ellison Motion"); (ii) *Motion of Claimant Brandi Carl for Appointment to the Official Committee of Talc Claimants* (Dkt. 2018) ("Carl Motion"); (iii) *Motion of Aylstock, Witkin, Kreis & Overholtz, PLLC for an Order Regarding the Composition of the Official Committee of Talc Claimants* (Dkt. 2029) ("Aylstock Motion"); (iv) *Motion of Claimant Giovanni Sosa for an Order Appointing Mr. Sosa*

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

*to the Official Committee of Talc Claimants* (Dkt. 2041) ("Sosa Motion"); and (v) *Motion of Claimant Evan Plotkin for Order Appointing Mr. Plotkin to the Official Committee of Talc Claimants* (Dkt. 2043) ("Plotkin Motion" and collectively, the "Motions"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

After this case was transferred from North Carolina to New Jersey, the U.S. Trustee reconstituted the Official Committee of Talc Claimants ("Original Committee") that had been appointed by the Court in North Carolina—a jurisdiction where the United States Trustee Program does not operate—and appointed an Official Committee of Talc Claimants I ("TCCI") and an Official Committee of Talc Claimants II ("TCCII")[2] pursuant to section 1102(a)(1). The U.S. Trustee effectively split the Original Committee into two committees, TCCI and TCCII, and added five new members between them, including Shirleeta Ellison, Brandi Carl, Giovanni Sosa, and Evan Plotkin. The Debtor and another party moved the Court to invalidate the U.S. Trustee's decision, relief that this Court granted, reinstating the Original Committee effective April 12th. The practical effect of this ruling was to remove Ms. Ellison, Ms. Carl, Mr. Sosa, and Mr. Plotkin and one other from serving on any official committee in this case.

Ms. Ellison, Ms. Carl, Mr. Sosa, and Mr. Plotkin now seek a court order directing that they be appointed to the soon-to-be reinstated Official Committee. Having previously determined that these individuals would be capable and effective fiduciaries for the creditors represented by TCCI and TCCII, the U.S. Trustee has not changed his assessment. But if the Court determines that the Committee it ordered be reinstated is not adequately representative, section 1102(a)(4) does not

---

[2] The U.S. Trustee selected nondescript names for the committees for privacy purposes. Other parties have identified the committees' constituencies—one represents ovarian cancer claimants, the other mesothelioma claimants. *See* Dkt. 1047, 1067 & 1084.

2

authorize the Court to direct the appointment of any particular creditor; rather, the U.S. Trustee appoints committee members consistent with the Court's factual findings about how the committee is not adequately representative. Thus, the U.S. Trustee takes no issue with the movants' good faith desire to continue their service on an official committee in this case or with the challenge to its composition, but he does object to the very specific relief requested based on his responsibility to faithfully enforce the Code as written by Congress.

Although the procedural posture of the Aylstock motion is different from the other motions in that it does not ask the Court to appoint any one creditor, the U.S. Trustee takes issue with the alternative relief requested by Aylstock to the extent it invites the Court to "directly modify" the Original Committee. Such action would run afoul of section 1102 because it is the U.S. Trustee that appoints committee members upon the Court's finding that a committee is not adequately represented.

## JURISDICTION

1.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Response.

2.      Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3.   Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this Response.

## BACKGROUND AND RELEVANT FACTS

**A. LTL's Bankruptcy Case and Appointment of a Committee**

4.   On October 14, 2021, LTL Management LLC[3] ("Debtor"), filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina (the "NC Court").  *See* Dkt. 1.

5.   On October 28, 2021, the United States Bankruptcy Administrator ("BA") filed a *Motion to Appoint an Official Committee of Talc Claimants* ("BA's Committee Motion").  *See* Dkt. 227.[4]

6.   On November 8, 2021, the NC Court entered an *Order Appointing the Official Committee of Talc Claimants* ("NC Committee Order"), which appointed the Original Committee, comprising the eleven members proposed by the BA.  *See* Dkt. 355.  The NC Committee Order stated the BA's Committee Motion is granted "without prejudice to further consideration of the Response Seeking Additions and the Composition/Timing Objections by this or any court with jurisdiction."  *See id*.

7.   On November 16, 2021, the NC Court entered an *Order Transferring Case to the District of New Jersey*.  *See* Dkt. 416.

8.   On December 23, 2021, the U.S. Trustee filed the *Notice of Filing of Reconstituted*

---

[3] The Debtor is an indirect subsidiary of Johnson & Johnson (J&J), one of the world's largest consumer products companies.  *See* Dkt. 5 at ¶ 9.

[4] The Western District of North Carolina is not part of the United States Trustee system, and as a result no United States Trustee participated in this case prior to its transfer to this Court. *See* 28 U.S.C. § 581.

*and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II* (the "U.S. Trustee Appointment Notice"), creating two separate committees. *See* Dkt. 965. Seven members of the Original Committee became part of TCCI, joined by two additional members (Brandi Carl and Shirleeta Ellison).[5] *See* Dkt. 965-1. The remaining four members of the Original Committee became part of TCCII, joined by three additional members (Evan Plotkin, Giovanni Sosa and Katherine Tollefson).[6] *See* Dkt. 965-2.

9. On January 3, 2022, the Debtor filed *a Motion for an Order Determining that the United States Trustee's Notice of "Reconstituted and Amended" Talc Claimants Committee is Invalid and Reinstating that Committee* ("Debtor's Committee Motion"). *See* Dkt. 1047. Similarly, on January 5, 2022, Arnold & Itkin filed a *Motion for an Order Vacating Appointment of Second Official Committee of Talc Claimants and Addition of New Committee Members* ("Arnold & Itkin Committee Motion" and together with the Debtor's Committee Motion, the "Committee Motions"). *See* Dkt. 1067.

10. During a January 19, 2022, hearing, the Court rendered an oral decision granting the Committee Motions and striking the U.S. Trustee Appointment Notice without prejudice. The Court held that the Notice issued by the U.S. Trustee on December 23, 2021, was procedurally flawed and void. On January 20, 2022, the Court issued a Memorandum Opinion memorializing its ruling. *See* Dkt. 1212. The Court ruled that the U.S. Trustee had no authority to reconstitute the Original Committee because, among other reasons, the U.S. Trustee had not moved to vacate

---

[5] To be clear, Ms. Ellison and Ms. Carl were not members of the Original Committee established through the NC Committee Order.

[6] Likewise, Mr. Plotkin and Mr. Sosa were not members of the Original Committee established through the NC Committee Order.

5

the NC Committee Order. *Id.* at page 9.

11. A subsequent Order entered by the Court on January 26, 2022, provided that TCCI and TCCII, appointed pursuant to the U.S. Trustee Appointment Notice, shall remain in "full force and effect" until March 8, 2022 (the "January 26, 2022 Order"). *See* Dkt. 1273 at ¶ 5.

12. TCCII's status was discussed during the March 8, 2022, omnibus hearing. Initially the Court allowed TCCII's continued existence until April 12, 2022, for the limited purposes of filing appeals and seeking the appointment of a second future claimants representative. (*See* Transcript of March 8, 2022, Hearing at p. 26). In response to concerns that other issues may arise during that month on which it would be appropriate for TCCII to comment, the Court decided TCCII would exist until April 12, 2022, to appear "on all matters." *Id*.

13. TCCII's status was again discussed at the March 30, 2022, omnibus hearing. The Court denied TCCII's request to continue in existence past April 12, 2022, in any capacity. *See* Dkt. 1923. TCCI and TCCII will cease to exist on April 12, 2022, and the Original Committee will be reinstated.

    **B.**    **Ellison Motion and Carl Motion – TCCI Claimants**

14. Ms. Ellison, through her Motion filed on April 4, 2022, seeks an order permitting her to "remain" a member of the Original Committee after TCCI and TCCII cease to exist. *See* Dkt. 1963. Ms. Ellison relies on sections 105(a) and 1102(a)(4) of the Bankruptcy Code for the relief requested. *See id.* Ms. Ellison was the first of the claimants to file a motion under section 1102(a)(4).

15. The Ellison Motion sets forth the following points:

    a. Ms. Ellison, a New Jersey resident, did not submit a questionnaire form for committee consideration when the case was venued in North Carolina;

6

b. Judge Whitley held the final decision as to the individuals on the Committee open under the unique circumstances of the case;

c. After venue was changed to New Jersey, and after the U.S. Trustee provided questionnaire forms, Ms. Ellison submitted a completed questionnaire to the U.S. Trustee for consideration;

d. The U.S. Trustee selected Ms. Ellison for appointment to TCCI as part of the reconstitution and amendment of the Original Committee;

e. Prior to the addition of Ms. Ellison, no member of the Original Committee was a resident of New Jersey, where the bankruptcy case and underlying MDL are pending;

f. Ms. Ellison appropriately increases the number of committee members diagnosed with ovarian cancer as opposed to mesothelioma;

g. Ms. Ellison, an African American woman, helps to further diversify the committee, which she asserts is relevant because of the Debtor's historical marketing efforts;

h. Ms. Ellison and her counsel at Motley Rice LLC have worked tirelessly and collaboratively as a member of TCCI; and

i. Ms. Ellison's "appointment and ability to continue as a member of the [Original Committee] will minimize any further disruptions to these ongoing proceedings".

*See id.*

16. On April 8, 2022, Ms. Carl, also a member of TCCI, filed a motion similar to the Ellison Motion. *See* Dkt. 2018. Ms. Carl also asks to "remain" a member of the Original Committee. *See id.* In addition to the above general points made in the Ellison Motion, Ms. Carl also states "she has a long history of representing the interests of N.J. claimants[,]" was "chosen as a lead plaintiff for the *Kemp* hearings regarding experts in New Jersey[,]" and "was selected as an initial bellwether plaintiff and was scheduled for trial." *See id.*

C. **Sosa Motion and Plotkin Motion – TCCII Claimants**

17. On April 9, 2022, both Mr. Sosa and Mr. Plotkin, members of TCCII, filed motions

7

similar to the Ellison Motion. *See* Dkt. Nos. 2041 and 2043.

18. Mr. Sosa also asks to "remain" a member of the Original Committee. *See* Dkt. No. 2041. Mr. Sosa states he is a Canadian claimant who will "ensure adequate representation for foreign claimants." *See id*.

19. Mr. Plotkin likewise asks to "remain" a member of the Original Committee. *See* Dkt. No. 2041. Mr. Plotkin states he "has spent his life involved in complex commercial transaction and served previously as the chairman on an official committee of creditors[.]" *See id*.

    **D.**    **Aylstock Motion**

20. On April 8, 2022, Aylstock filed its motion, seeking to have the Original Committee composition changed to include more ovarian cancer claimants. *See* Dkt. 2029. While not asking the Court to appoint a particular claimant, Aylstock advises that three of its clients – Helen Sampson, Janine Jaloway, and Mary Kirschman – "are ready, willing, and able to serve." *See id*.

21. Aylstock posits that the issue of whether the Original Committee is properly balanced has never been addressed. *See id*. Aylstock argues that the Original Committee is imbalanced because while ovarian cancer claimants make up 99% of the creditor body, they only make up 60% of the Original Committee, while mesothelioma claimants, making up 1% of the creditor body, make up 40% of the Original Committee. *See id*.

22. Given the procedural posture of the case, Aylstock asks the Court, pursuant to section 105(a), to either modify the NC Appointment Order and appoint a specific creditor or creditors to the Original Committee or, pursuant to section 1102(a)(4), direct the U.S. Trustee "to modify the composition of the Committee to ensure adequate representation of ovarian cancer claimants." *See id*.

23. All of the Motions were filed on shortened time.

## LAW, ANALYSIS AND ARGUMENT

24. The U.S. Trustee's Response on this matter is not meant to thwart or criticize the desire of the claimants to participate in this case. Quite the contrary, as the Motions point out, the U.S. Trustee selected Ms. Ellison, Ms. Carl, Mr. Sosa and Mr. Plotkin for appointment as part of the U.S. Trustee's prior decision to amend and reconstitute the Original Committee into two committees and increase membership on each committee after determining that they would be capable and effective fiduciaries for all of the creditors represented by TCCI and TCCII. The U.S. Trustee's assessment of these individuals (and committee composition) has in no way changed.

25. But it is the U.S. Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See In re Columbia Gas Systems, Inc.,* 33 F.3d at 295-96. Further it is the responsibility of the U.S. Trustee to shield the Court from the administrative tasks related to committees. *In re Victory Markets, Inc.,* 196 B.R. 1 (Bankr. N.D.N.Y. 1995).

**A. The Relief Requested in the Motions Cannot Be Granted Because Section 1102(a)(4) Does Not Permit the Court to Direct the Appointment of A Particular Creditor**

26. Section 1102(a)(4) provides, as relevant here:

> On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders.

11 U.S.C. § 1102(a)(4).

27. As a threshold matter, to satisfy the requirements of section 1102(a)(4), the movants must meet their burden to show that a change to the Original Committee "is necessary to ensure adequate representation[.]" 11 U.S.C. § 1102(a)(4). The U.S. Trustee is not taking a position on

this issue but leaves the movants to their proofs.[7] But it would be unusual for this Court to find that the Committee it ordered be reinstated does not satisfy the statutory standard of adequate representation. (To be fair, the earlier motions did not present the issue of adequate representation for adjudication, and that omission was one basis for the U.S. Trustee's objection).

28. In the event the movants establish that the Original Committee's membership should be changed to ensure adequate representation, the specific relief requested by Ms. Ellison, Ms. Carl, Mr. Sosa, and Mr. Plotkin (appointment of a particular claimant) cannot be granted. This request ignores the plain language of the statute and the fundamental division of adjudicative and administrative functions between the courts and the U.S. Trustee program.[8]

---

[7] Only the Aylstock Motion directly states that the Original Committee is not adequately representative. The Aylstock Motion, however, makes this conclusion because the 60/40 split of ovarian to mesothelioma claimants is not equivalent to the number of ovarian cancer claimants as compared to mesothelioma claimants. But this does not address the counterargument TCCII has made throughout this case – that despite the difference in the number of ovarian cancer claimants and mesothelioma claimants, mesothelioma claims "tend to have a higher rate of success and yield large verdicts." *See e.g.*, Dkt. 1158.

[8] Between 1978 and 1986, the power to appoint and modify a committee rested with the bankruptcy court (except in those districts participating in the U.S. Trustee pilot program). *In re Victory Markets, Inc.*, 196 B.R. at 3. But the 1986 amendments, which established the U.S. Trustee system on a permanent, nationwide basis (except for North Carolina and Alabama), withdrew the authority of bankruptcy courts to appoint or modify committees and vested authority in the U.S. Trustee:

> [T]he 1986 Act repealed Code § 1102(c) which had expressly granted courts the authority to add to and delete from the creditors' committee. The U.S. Trustee, pursuant to the 1986 Act, was endowed with the authority to appoint a creditors' committee . . . and the courts were relieved of their authority to affect the composition of the same upon a finding of inadequate representation.

*Id*. at 4 (citations omitted). Part of the impetus for the comprehensive revamping of the bankruptcy system was Congress's desire to bifurcate judicial from administrative functions that could raise conflict of interest issues:

> After the adoption of the Code in 1978, Congress recognized that requiring courts to appoint creditors' committees was an administrative burden which should be shifted entirely to the U.S. Trustee. It also became apparent that by shifting the responsibility of appointing creditors' committees to the U.S.

29. Section 1102(a)(4) does not authorize the court itself to appoint a committee member; it may only order the U.S. Trustee to do so. As stated by one leading commentator:

> The court's authority to adjust committee membership is not unfettered. With the one exception noted below, the court may order a change in the composition of a committee only if the court determines that doing so is necessary to ensure adequate representation of creditors or equity security holders. It should be noted that the court will not appoint any replacement committee members. The court will order the United States trustee to change membership on the committee but appointment of replacement members is still a decision that will be made by the United States trustee.

7 COLLIER ON BANKRUPTCY ¶ 1102.07 (16th ed.).

30. Pursuant to section 1102(a)(4), the Court performs an adjudicative function by determining, upon request, whether an official committee is adequately representative, and if it is not, by making factual findings about how the representation is inadequate. If the court finds a change is necessary, the U.S. Trustee will perform his historical, administrative function to reconstitute the committee's membership. If Congress intended courts to perform the administrative function of naming or removing individual committee members, it could easily have said so. It did not. Instead, the statute provides that the courts may only "order the United States Trustee to change the membership." This phrase would be unnecessary if the courts were to perform both the judicial function of determining if there is adequate representation and the administrative function of naming specific creditors to a committee.

31. The U.S. Trustee recognizes that the procedural posture of the Aylstock Motion is different from the other motions in that it does not ask the Court to appoint any one creditor.

---

Trustee, Congress could avoid any questions as to the court's neutrality in the bankruptcy process when deciding disputes between its hand-picked committee and other parties in interest.

*Id.* at 3-4, citing H.R. Rep. No. 764, 99th Cong., 2d Sess. 18 (1986); *see In re Sharon Steel Corp.*, 100 B.R. 767, 773 (Bankr. W.D. Pa. 1989) (citing legislative history).

However, the Aylstock Motion does argue that if the Court determines modification of the Original Committee is necessary, the Court could "directly modify" the Original Committee and appoint additional members. *See* Dkt. 2029. The U.S. Trustee submits that if relief from the NC Appointment Order is granted, section 105(a) does not permit the Court to perform the administrative function of appointing a particular creditor, or creditors, as that is a function preserved for the U.S. Trustee under section 1102(a)(4).

32. Moreover, the general but limited authority conferred by section 105 cannot override the specific provisions governing committee modification under section 1102(a)(4). As the Supreme Court has repeatedly held, general statutory authorizations cannot swallow specific statutory prescriptions: statutory "prescriptions [can] not be avoided by relying upon a general provision of the [Bankruptcy] Act [of 1898] authorizing bankruptcy courts to 'make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of [the] Act.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46, 649 (2012) (*citing D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 206 (*quoting* Bankruptcy Act of 1898, § 2(15), 30 Stat. 546)). The Supreme Court reaffirmed this principle yet again in *Law v. Siegel*, 571 U.S. 415, 421 (2014). In exercising the general authority conferred by section 105, "a bankruptcy court may not contravene specific statutory provisions." *Id.*

33. Therefore, it is respectfully submitted that in ruling on the Motions the Court may at most determine if membership changes are necessary to ensure adequate representation.[9] If the

---

[9] This interpretation is consistent with the origins of section 1102(a)(4). In considering predecessor legislation to BAPCPA, the National Bankruptcy Review Commission ("NBRC") recommended that section 1102 be amended to provide for judicial review of committee structure. The NBRC responded to concerns about a renewed court role in committee selection with a statement that "the U.S. Trustee would remain responsible for the actual appointment of committee members."

12

movants are successful in proving the Original Committee is not adequately representative, the statutorily mandated relief is an order directing the U.S. Trustee to change the membership to the extent the Court determines that the Original Committee lacks adequate representation, not an order appointing any particular claimant to the Original Committee.[10]

### B. The Relief Requested by Ms. Ellison, Ms. Carl, Mr. Sosa and Mr. Plotkin Does not Address this Court's Prior Order

34. In the second instance, the precise relief requested—to "remain" a member of the Original Committee—cannot be granted because Ms. Ellison, Ms. Carl, Mr. Sosa and Mr. Plotkin were never members of the Original Committee. As set forth by the Court in its January 20, 2022, Memorandum Opinion, the NC Committee Order "previously establishe[d] a single official talc claimants committee and fixe[d] it[s] composition by identifying members by name" and that Order became the law of the case. *See* Dkt. 1212. Ms. Ellison, Ms. Carl, Mr. Sosa and Mr. Plotkin were not named in the NC Committee Order.

35. Although the U.S. Trustee contended that his actions with respect to forming TCCI and TCCII clearly fell within his statutory authority, this Court disagreed and struck the U.S. Trustee Appointment Notice as procedurally flawed and void. Because it was a "Transferee Court," this Court found it was without power to modify or vacate a transferor judge's order without adequate justification. *See id.*, at pages 7-8 (citing cases).

36. Applying that analysis here, the movants must provide adequate justification for this Court to modify the NC Committee Order. Although the Aylstock Motion concludes that the

---

NBRC, Final Report, p. 501 (Oct. 20, 1997) available at http://govinfo.library.unt.edu/nbrc/index.html.

[10] To be clear, depending on the Court's factual findings regarding adequate representation, the U.S. Trustee would certainly consider the movants for appointment as well as any other creditors effectively removed from TCCI and TCCII as a result of this Court's prior order.

60/40 split of ovarian to mesothelioma claimants does not adequately represent the creditor body because it is not equivalent to the number of ovarian cancer claimants as compared to mesothelioma claimants, the Aylstock Motion does not address how this is "adequate justification"[11] to vacate the transferor judge's order as set forth in the Court's January 20, 2022, Memorandum Opinion. The other motions do not address the standards at all. It would be helpful if the movants supplement their Motions either before or at the hearing to address this issue.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the specific relief sought in the Motions directing the appointment of any particular creditor and/or asking the Court to appoint claimants as opposed to ordering the U.S. Trustee to do so, and grant such other and further relief that is deemed just and equitable.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By:  /s/ Jeffrey M. Sponder
Jeffrey M. Sponder
Trial Attorney

By:  /s/ Lauren Bielskie
Lauren Bielskie
Trial Attorney

Dated: April 11, 2022

---

[11] Again, counsel for TCCII argued on several occasions that despite the difference in the number of ovarian cancer claimants and mesothelioma claimants, mesothelioma claims "tend to have a higher rate of success and yield large verdicts." *See e.g.*, Dkt. 1158.