FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

| | |
|---|---|
| LTL Management, LLC,<br>                Debtor. | Case No. 21-30589 (MBK) |
| LTL Management, LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>San Diego County Employees Retirement Association, Individually and on Behalf of All Others Similarly Situated,<br><br>                Defendants. | Adv. Pro. No. 22-01073 (MBK)<br><br>Chapter 11<br><br>Hearing Date:  April 12, 2022 |

*All Counsel of Record*

## MEMORANDUM OPINION

This matter comes before the Court by way Debtor's bankruptcy case (Case No. 21-30589) and subsequent adversary proceeding (Adv. Pro. No. 22-01073) and motion  ("Motion") (ECF No. 2 in Adv. Pro. No. 22-01073)[1] filed by Plaintiff LTL Management, LLC ("LTL" or "Debtor") seeking an Order (I) Preliminarily Enjoining the Prosecution of the Securities Class Action and (II) Granting a Temporary Restraining Order Pending a Final Hearing.  The Court has fully

---

[1] Unless otherwise specified, all ECF Nos. will refer to docket entries in the Adversary Proceeding, Adv. Pro. No. 22-01073.

considered the submissions of the parties and the arguments set forth on the record at a hearing

held on April 12, 2022.  For the reasons set forth below, the Court grants Debtor's Motion and

resolves the adversary proceeding in favor of Debtor without prejudice to revisiting the

continuation of the preliminary injunction at a later date as discussed herein.  The Court issues the

following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[2]

## I.      Venue and Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended

September 18, 2012, referring all Bankruptcy cases to the Bankruptcy Court.  As explained in

detail below, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and

(G). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     Background

On October 14, 2021, LTL filed a voluntary petition for chapter 11 relief in the United

States Bankruptcy Court for the Western District of North Carolina (the "North Carolina

bankruptcy court"). *Petition*, ECF No. 1 in Case No. 21-30589.  LTL is an indirect subsidiary of

Johnson & Johnson ("J&J") and traces its roots back to Johnson & Johnson Baby Products,

Company, a New Jersey company incorporated in 1970 as a wholly owned subsidiary of J&J.

*Declaration of John K. Kim in Support of First Day Pleadings* ("*Kim Decl.*") ¶¶ 9-10, ECF No. 5

in Case No. 21-30589. A thorough discussion of the history of J&J and its talc products can be

found in this Court's February 25, 2022 Opinion Denying the Motions to Dismiss and the Court

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such.
Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

will not repeat that information here. *See In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022). In relevant part, as the result of intercompany transactions, one of J&J's corporate subsidiaries, Johnson & Johnson Consumer Inc. ("Old JJCI") assumed responsibility for all claims alleging that J&J's talc-containing products caused ovarian cancer and mesothelioma. *Kim Decl.* ¶¶ 10-14, 15, 32, ECF No. 5 in Case No. 21-30589.

On October 12, 2021, Old JJCI engaged in a series of transactions (the "2021 Corporate Restructuring") through which it ceased to exist and two new companies, LTL and Johnson & Johnson Consumer Inc. ("New JJCI"), were formed. *Kim Decl.* ¶ 16, 22-23, ECF No. 5 in Case No. 21-30589. The alleged purpose of this restructuring was to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old JJCI enterprise to a bankruptcy proceeding." *Id.* at ¶ 21. As a result of the restructuring, LTL assumed responsibility for all of Old JJCI's talc-related liabilities. *Id.* at ¶¶ 16, 24. Through the restructuring, LTL also received Old JJCI's rights under a funding agreement (the "Funding Agreement"). *Id.* at ¶ 24. Under the Funding Agreement, J&J and New JJCI are obligated to pay, *inter alia*, "any and all costs and expenses" LTL incurs during its bankruptcy case, "including the costs of administering the Bankruptcy Case" to the extent necessary. *Funding Agreement* 6, *Annex 2 to Declaration of John K. Kim in Support of First Day Pleadings*, ECF No. 5 in Case No. 21-30589.

LTL filed for bankruptcy under chapter 11 in the Western District of North Carolina on October 14, 2021. *Decl. of John K. Kim* ¶2, ECF No. 4. One week later, Debtor initiated an adversary proceeding (the "Talc Adversary Proceeding"), seeking declaratory and injunctive relief against plaintiffs who had filed federal and state actions against Debtor's affiliates and other

entities for talc-related claims. *Complaint*, ECF No. 1 in Adv. Pro. No. 21-03032. By way of the Talc Adversary Proceeding, the Debtor sought an order declaring that the automatic stay applies to those actions against nondebtors or, in the alternative, to enjoin such actions and grant a temporary restraining order pending a final hearing. Debtor simultaneously filed a motion requesting a preliminary injunction enjoining the prosecution of actions outside of the chapter 11 case on account of the same talc claims that exist against the Debtor in the chapter 11 case. *Motion*, ECF No. 2 in Adv. Pro. No. 21-03032. Ultimately, the case was transferred to the District of New Jersey, and Debtor supplemented its initial brief and amended and restated its arguments in support of the relief sought to reflect Third Circuit precedent. Several interested parties opposed the motion. Additionally, two separate parties filed motions to dismiss the underlying bankruptcy, alleging it had been filed in bad faith. *See* ECF Nos. 632 & 766 in Case No. 21-30589. The Court heard arguments on the motion for preliminary injunction in the Talc Adversary Proceeding contemporaneously with arguments on pending motions to dismiss the bankruptcy during evidentiary hearings held on February 14-18, 2022. Shortly thereafter, on February 25, 2022, the Court denied the motions to dismiss in the underlying bankruptcy case and granted the motion for preliminary injunction in the Talc Adversary Proceeding. *See In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022) (denying motions to dismiss); *In re LTL Mgmt., LLC*, No. 21-30589, 2022 WL 586161 (Bankr. D.N.J. Feb. 25, 2022) (granting preliminary injunction).

Debtor then commenced the instant adversary proceeding (the "Adversary Proceeding") on March 7, 2022 against San Diego County Employees Retirement Association ("SDCERA"). *Complaint*, ECF No. 1. Simultaneously therewith, Debtor filed a motion (the "Motion") (ECF No.

2) requesting injunctive relief.  The Adversary Proceeding and Motion seek to enjoin the continued prosecution of a securities action (the "Securities Action") pending in the United States District Court for the District of New Jersey against certain non-debtor individuals and affiliates of the Debtor. *See Hall v. Johnson & Johnson*, No. 3:18-cv-01833 (D.N.J.).  The defendants in the Adversary Proceeding are members of a putative plaintiff class in the Securities Action consisting of individuals who purchased J&J stock during the period from February 22, 2013, through December 13, 2018 (the "Securities Claimants").  SDCERA is the lead plaintiff for that putative plaintiff class.  Debtor argues that the claims asserted in the Securities Action overlap with issues at the heart of the claims being resolved in the bankruptcy proceeding (the "Talc Claims").  Accordingly, Debtor asserts that continuation of the Securities Action will impair its ability to resolve the Talc Claims in the chapter 11 bankruptcy case.

The Securities Claimants oppose the Motion and posit that the Debtor relies on a single basis for its motion: "record taint."  The Securities Claimants assert that there exists no precedent for an injunction premised solely on the possibility of record taint.  Moreover, the Securities Claimants contend that continued litigation does not pose a risk of record taint and that the Debtor has not met its burden of demonstrating that an injunction is warranted.

## III.   Discussion

### A.  The Securities Action

Prior to addressing the merits of the Motion, a brief discussion of the Securities Action is warranted to provide context to the parties' arguments.  The Securities Action was filed in 2018 and remains pending against J&J and four former J&J executives (the "Securities Defendants")

for alleged violations of § 10(b) of the Securities Exchange Act of 1934.  In order to prove their claims in the Securities Action, the Security Claimants must satisfy—among other things—a "falsity" element and demonstrate that the Securities Defendants made material misrepresentations or omissions that concealed material facts from investors.  Specifically, the Securities Claimants intend to prove that:

> (1) J&J had been repeatedly informed over a span of decades that its talc products had tested positive for asbestos, but engaged in a fraudulent scheme to conceal that from the public and regulators; (2) J&J attempted to find ways to remove asbestos from talc; (3) J&J purposely avoided the use of testing methods that could detect any asbestos present in its talc, and instead used methods that could not detect trace or sub-trace amounts of asbestos in talc; (4) J&J influenced and manipulated regulators and scientists to protect its flagship product, Johnson's Baby Powder, and J&J's reputation; (5) J&J admitted internally that "we cannot say 'always'" when it came to its talc being asbestos-free, even while Securities Defendants told investors that J&J's talc was "always" asbestos-free; and (6) J&J admitted internally that cosmetic talc did not actually have a "long history of safe use" "for over 100 years," which Securities Defendants falsely told investors.

*Securities Claimants' Opp'n* 13, ECF No. 46 (citing *J&J v. Hall*, ECF No. 33 in Case No. 18-cv-01833).[3]  The discovery the Securities Claimants seek, thus, relates to these allegations.

After filing for bankruptcy, Debtor did not immediately request to halt the Securities Action.  Instead, the parties proceeded with discovery for approximately five months before Debtor filed the instant Adversary Proceeding.  Since the date the bankruptcy petition was filed, the Securities Claimants have conducted more than 20 depositions in the Securities Actions.  According to the Securities Claimants, "there is little fact discovery left to conduct in the Securities

---

[3] The Securities Claimants' Opposition also mentions a seventh allegation: "(vii) J&J recognized internally that much of the science concerning talc safety, including some studies Securities Defendants cited publicly, was actually 'not as definitive or supportive and could be interpreted as suggesting a causal effect' between talc and ovarian cancer." *Securities Claimants' Opp'n* 5-6, ECF No. 46.

Action." *Securities Claimants' Opp'n* 8, ECF No. 46. Counsel for the Securities Claimants represented during the hearing on April 12, 2022 that the remaining discovery will be comprised mostly of expert discovery and dispositive motion practice.

### B. Authority and Standard for Extension of Stay to Nondebtors

The Court discussed its authority to stay litigation against nondebtor third parties in its Opinion granting a preliminary injunction in the Talc Adversary Proceeding. *See In re LTL Management, LLC*, No. 21-30589, 2022 WL 586161, at *4-5 (Bankr. D.N.J. Feb. 25, 2022). The Court will not repeat that lengthy discussion and, instead, incorporates it by reference. In sum, the Court concludes that § 362(a), § 105(a), or a court's inherent powers can each serve as independent bases for extension of a stay to nondebtor third parties. Nevertheless, because certain courts in this circuit still view the source of authority to extend the automatic stay as an open-ended question, this Court will utilize the same three-step inquiry outlined in its prior decision to address the instant Motion. Namely, a bankruptcy court's extension of a stay to a nondebtor third party is appropriate where: (1) the bankruptcy court has jurisdiction to issue the injunction; (2) the stay is properly extended to the nondebtor(s) under § 362(a); and (3) an injunction under § 105(a) is warranted. *In re LTL Mgmt., LLC*, 2022 WL 586161, at *5 (citing *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 102 (E.D. Pa. 2010)) (other citations omitted).

### 1. Subject Matter Jurisdiction

Debtor's moving brief cites only § 105(a) as a basis for the requested relief. *Motion*, ECF No. 2. Accordingly, the Securities Claimants contend that this Court lacks subject matter jurisdiction to enjoin the Securities Action. *See Securities Claimants' Opp'n* 29-32, ECF No. 46.

Indeed, as the Securities Claimants point out, a request for an injunction under § 105(a) cannot—by itself—create jurisdiction. *See In re W.R. Grace & Co.*, 591 F.3d 164, 170–71 (3d Cir. 2009) (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004)) (holding that, because § 105(a) does not provide an independent source of federal subject matter jurisdiction, a court must establish that it has subject matter jurisdiction prior to issuing an injunction under § 105(a)). However, the Securities Claimants do not properly apply the test for jurisdiction and their position fails to appreciate the practical implications of continued litigation in the Securities Action.

"Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), as amended (Mar. 17, 2006) (citing 28 U.S.C. § 1334(b) and *In re Combustion Eng'g, Inc.*, 391 F.3d at 225 (citations omitted)). "The first three categories are considered 'core' proceedings, whereas the fourth category, 'related to' proceedings, are considered 'non-core' proceedings." *In re E. Orange Gen. Hosp., Inc.*, 587 B.R. 53, 71 (D.N.J. 2018) (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004)). A bankruptcy court has the power to hear, decide and enter final orders and judgments in the first three categories of proceedings. 28 U.S.C. §157(b)(1); *In re Roggio*, 612 B.R. 655, 660 (Bankr. M.D. Pa. 2020).

A proceeding "arise[s] under" the Bankruptcy Code when the Bankruptcy Code creates the cause of action or provides the substantive right being invoked. *Stoe v. Flaherty*, 436 F.3d at 217. A proceeding "arise[s] in" a case when it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Id.* at 216 (quoting *United States Trustee v. Gryphon at the Stone*

*Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999) and explaining that a proceeding arises in a bankruptcy case if it has "no existence outside of the bankruptcy").  Finally, "a claim falls within the bankruptcy court's 'related to' jurisdiction if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009) (internal quotations and citations omitted); *see also In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009).  "What will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis." *In re W.R. Grace & Co.*, 591 F.3d at 174 n.9.

In their Opposition, the Securities Claimants broadly assert—without further discussion— that "[t]he Securities Action does not 'arise in' or 'arise under' the Bankruptcy Code." *Securities Claimants' Opp'n* 30, ECF No. 46.  The Court disagrees and concludes that this is a core proceeding because the relief sought "arises in" and "arises under" the Bankruptcy Code. Although Debtor's moving brief does not expressly cite § 362 of the Bankruptcy Code, the Debtor requested a temporary stay of the Securities Action to "preserve and effectuate the **automatic stay**[.]" *Debtor's Brief* 19, ECF No. 2 (emphasis added).  The automatic stay is codified in § 362(a) of the Bankruptcy Code and, thus, is "a substantive right provided by the Bankruptcy Code." *In re Roggio*, 612 B.R. 655, 660) (Bankr. M.D. Pa. 2020).  Because the instant proceeding invokes a substantive right under the Bankruptcy Code and is a proceeding that, by its nature, could arise only in the context of a bankruptcy case, the Court determines that it is a core proceeding over which this Court can exercise jurisdiction.  This determination is consistent with this Court's jurisdictional ruling in the Talc Adversary Proceeding as well as the district court's ruling on the

9

motion to withdraw the reference of that case. *See In re LTL Management, LLC*, No. 21-30589 (MBK), 2022 WL 586161, at *6 (Bankr. D.N.J. Feb. 25, 2022); *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*, No. 21-cv-20252 (FLW), 2022 WL 190673, at *4 (D.N.J. Jan. 21, 2022) (acknowledging that "other courts have concluded that motions to extend an automatic stay and injunction to non-debtor third parties pursuant to sections 362 and 105 qualify as 'core' proceedings" and concluding that "the Adversary Proceeding is a 'core' proceeding").

The Court further finds that, at a minimum, it also has "related to" jurisdiction. The Court pressed this jurisdictional issue during the hearing on April 12, 2022 and referenced the Securities Claimants' allegations in the Securities Action, which allege—among other things—that J&J knew of the unsafe existence of asbestos in their product and took actions to conceal that information. The Court questioned whether those allegations, if proven, would have an impact on the punitive damage awards for the Talc Claims, liability for which the Debtor in this bankruptcy has assumed. The Court additionally asked whether those allegations were relevant to, and would have an impact on, the expected or intended benefit of insurance policies, which policies the Court previously determined were property of the bankruptcy estate.

Counsel for the Securities Claimants' did not deny the potential impact that those allegations could have on Debtor's talc-related liability or its insurance coverage. Instead, Counsel focused on Debtor's delay in filing the instant Adversary Proceeding and reiterated its argument that the possibility of record taint in this case is too speculative to serve as a basis for jurisdiction. Counsel further argued that record taint—on its own—cannot serve as a basis for "related to" jurisdiction.

As an initial matter, the Court concludes that the Securities Claimants do not give enough weight to the possibility of record taint. Regardless, the Court determines that the Securities Claimants' argument misses the point. The Securities Claimants maintain that "related to" jurisdiction does not exist because "the outcome of the Securities Action will not bind LTL or determine any rights or liabilities relating to it." *Securities Claimants' Opp'n* 31, ECF No. 46. However, the "related to" jurisdiction inquiry does not turn solely on "record taint" or whether the ruling in the Securities Action will affirmatively bind Debtor or determine its liabilities in the talc-related actions. Rather, the inquiry focuses on whether the Securities Action could conceivably have any effect on the administration of Debtor's bankruptcy estate. *See In re Winstar Commc'ns, Inc.*, 554 F.3d at 405; *see also In re W.R. Grace & Co.*, 591 F.3d at 172 (discussing "related to" jurisdiction in terms of the impact on the bankruptcy proceedings).

Here, the allegations in the Securities Action concern what J&J knew about asbestos in its talc products, when they knew this information, and what actions they took in the wake of learning this information. Any findings regarding these allegations will certainly impact claims valuation, estimation, and resolution by addressing matters that go to the basis and size of the awards—both compensatory and punitive. Continued prosecution of the Securities Action could also conceivably strengthen defenses to insurance coverage for the Talc Claims. Debtor's insurance claims are property of the estate and, if the Securities Claimants are successful in establishing Debtor's fraud in the Securities Action, the insurers' defenses to those insurance coverage claims will be enhanced. Additionally, continued litigation would certainly impair ongoing mediation efforts and negotiations within this bankruptcy. Finally, continuation of the Securities Action

would further drain resources and divert attention away from the bankruptcy. Because of the impact that the Securities Action could have on Debtor's bankruptcy estate, Debtor would—at least—monitor the ongoing litigation. Moreover, J&J is both a defendant in the Securities Action and an obligor under the Funding Agreement that is critical to the bankruptcy case. Thus, continuation of the Securities Action would potentially disrupt the flow of funds and resources— including time and energy—that could otherwise be devoted to the reorganization effort. *See, e.g. In re MCSi, Inc.*, 371 B.R. 270, 271–72 (S.D. Ohio 2004) (*quoting Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y.1999). These considerations, taken together, provide an adequate basis for this Court to find that the Securities Action is sufficiently "related to" the underlying bankruptcy to confer subject matter jurisdiction.

### 2.  The Automatic Stay Under § 362(a)

The Court must next examine whether extension of the stay to nondebtors is appropriate in given the circumstances. During the hearing on April 12, 2022, Counsel for the Securities Claimants pointed out that the Debtor did not indicate anywhere in its papers what subsection of § 362(a) is to be protected or effectuated by this § 105 injunction request. In response to the Court's questioning, Counsel for the Securities Claimants further argued that § 362(a)(3) is inapplicable here. That subsection provides that

> a petition filed under section 301, 302, or 303 of this title . . . operates as a stay applicable to all entities, of—
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(3).

Relying on the Third Circuit's decision in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), Counsel for the Securities Claimants argue that Debtor's allegation that future discovery in the Securities Action might taint the record of the chapter 11 case is too amorphous and speculative to warrant protection under § 362(a)(3).  Again, the Court disagrees.  This analysis mirrors the jurisdictional analysis previously discussed—particularly, the Court's findings regarding related-to jurisdiction.  Those same considerations supporting subject matter jurisdiction also support the conclusion that § 362(a)(3)'s protection is applicable to the nondebtor Security Defendants in the Securities Action.

Further, the Third Circuit has recognized that § 362(a)'s protection is applicable to nondebtors where "unusual circumstances" exist. *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L.Ed.2d 177 (1986)); *see also In re Philadelphia Newspapers, LLC*, 423 B.R. at 104.  The Securities Claimants contend that those "unusual circumstances" are absent here because there exists no identity of interests between Debtor and the Securities Defendants and because Debtor has no indemnification obligations. *Securities Claimants' Opp'n* 26-29, ECF No. 46.  Indeed, when deciding to extend the stay to nondebtors in the Talc Adversary Proceeding, the Court considered the identity of interests between the parties and Debtor's contractual indemnification obligations.  However, this Court also explained that "a critical factor in deciding whether to extend the stay is the potential adverse impact on a debtor's estate and prospect of reorganization." *In re LTL Management, LLC*, No. 21-30589 (MBK), 2022 WL 586161, at *9; *see also In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa.

13

2009) (explaining that unusual circumstances exist warranting extension of the stay to nondebtors when: "(i) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization").   As set forth above, the Court concludes that continuation of the Securities Action will impact the Debtor's reorganizational efforts by—among other things—affecting claims valuation and estimation, strengthening insurance defenses, and hindering mediation efforts.   Accordingly, the Court finds that "unusual circumstances" exist warranting extension of § 362(a)(3)'s automatic stay protection to the nondebtor third parties.

### 3.   § 105(a) Injunction

Pursuant to § 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).   "The issuance of an injunction under section 105(a) is governed by the standards generally applicable to the issuance of injunctive relief in non-bankruptcy contexts." *In re Philadelphia Newspapers, LLC*, 423 B.R. at 105.   In determining whether a preliminary injunction is appropriate, the Court considers the following factors:

> (1) whether the movant has shown a reasonable probability of success on the merits;
> (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*McTernan v. City of York, Pa.,* 577 F.3d 521, 527 (3d Cir. 2009) (quoting *United States v. Bell,* 414 F.3d 474, 478 n.4 (3d Cir. 2005)); *see also* ADP, Inc. v. Levin, No. 21-2187, 2022 WL

14

1184202, at *1 (3d Cir. Apr. 21, 2022) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176

(3d Cir. 2017), as amended (June 26, 2017)).  "A preliminary injunction is an 'extraordinary

remedy, which should be granted only in limited circumstances.' " *Kos Pharmaceuticals Inc. v.*

*Andrex Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Instant Air Freight Co. v. C.F. Air*

*Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).

### a.  Success on the Merits

"In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's

ability to successfully reorganize." *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D.

Pa. 2011) (quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986)

(explaining reasonable likelihood of success in terms of a successful reorganization)).  Here—

although the success of Debtor's reorganization is still speculative at this early stage—there is

nothing in the record to suggest that Debtor does *not* have a reasonable likelihood of

reorganization.  To the contrary, Debtor has explained its strategy for reorganization and has

already executed a Funding Agreement which will aid in the reorganization process, a Future Talc

Claims Representative and Mediators have been selected, and the parties are moving forward with

the mediation process.  Moreover, to demonstrate a reasonable likelihood of success, a movant

need only show the prospect or possibility that he or she will succeed, and need not prove same

with certainty. *See Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human*

*Servs.*, 724 F.3d 377 (3d Cir. 2013) (Jordan, J., dissenting) *rev'd and remanded sub nom. Burwell*

*v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) (collecting

cases).  Debtor has met its burden here.

### b. Irreparable Injury

As to the second factor, the Court determines that Debtor is likely to suffer irreparable injury without relief.  As previously explained, continued litigation in the Securities Action will have an adverse impact on the bankruptcy estate by hindering mediation efforts, impacting claims the valuation and estimation procedures, and strengthening insurance defense arguments against coverage—all of which will impair reorganization efforts and drain resources and time.  The Securities Claimants devote much of their Opposition to this factor and argue that Debtor failed to establish this element for two reasons.  First, Securities Claimants assert that the risk of harm—in the form of "record taint"—is nonexistent or is, at best, speculative.  Second, the Securities Claimants maintain that Debtor has not demonstrated that the harm is "immediate" or "imminent." The Court will address each argument in turn.

As to the issue of "record taint," the Court simply disagrees with the Securities Claimants' position regarding the possibility that it will harm Debtor.  The Securities Claimants' primary argument is that the possibility of record taint is too speculative to warrant extension of the automatic stay.  The Court rejects this argument for the reasons previously discussed.  In the Court's view, the harm resulting from continued prosecution of the Securities Action is more certainty than conjecture.  Nevertheless, even assuming that the possibility of record taint is just that—a possibility—case law indicates that the mere *possibility* of harm can be sufficient to warrant extension of the automatic stay.

The Third Circuit recently stated that "[t]he law . . . is clear in this Circuit: In order to demonstrate irreparable harm the plaintiff must demonstrate *potential* harm which cannot be

16

redressed by a legal or an equitable remedy following a trial." *ADP, Inc. v. Levin*, No. 21-2187, 2022 WL 1184202, at *2 (3d Cir. Apr. 21, 2022) (citing *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 407–08 (3d Cir. 2021) (other citations omitted). Moreover, in *In re W.R. Grace & Co.*, the Third Circuit addressed the *possibility* of harm—in the form of collateral estoppel—within the context of a bankruptcy case. Specifically, plaintiffs in a non-bankruptcy lawsuit argued that the debtor would not be disadvantaged by continuation of the lawsuit because collateral estoppel would not later apply to the debtor in any subsequent litigation. The Third Circuit explained that the absence of a particular harm—in that case, collateral estoppel—has never been adopted "as the test for preventing actions from proceeding against third parties when the debtor is protected by the automatic stay. Rather, courts employ a broader view of the potential impact on the debtor." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004). This broader view generally requires courts to consider "whether the litigation 'could interfere with the reorganization of the debtor.' " *Id.* (citing *In re A.H. Robins Co.,* 828 F.2d 1023, 1025 (4th Cir. 1987)); *see also In re Johns–Manville,* 26 B.R. 420, 436 (Bankr. D.N.Y. 1983) (instructing that stay should be extended when continued litigation "would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to formulate a plan of reorganization"). Accordingly, this Court will not view the absence of "record taint" as an indicator that the Securities Action should proceed. Instead, this Court takes a broader view of the potential impact on Debtor and, for reasons discussed, determines that Debtor has satisfied its burden of showing the potential harm that

continued litigation of the Securities Action could cause to its reorganizational efforts in this bankruptcy.

This Court further clarifies that the mere risk of a potentially adverse impact on a debtor's bankruptcy can be sufficient to support a preliminary injunction.  This finding is consistent with this Court's ruling in the Talc Adversary Proceeding and is supported by case law.  In granting the preliminary injunction in the Talc Adversary Proceeding, this Court held that "the risk that litigation against the [nondebtor third parties] could result in adverse consequences for Debtor— such as record taint—weighs in favor of extending the automatic stay." *In re LTL Mgm't, LLC*, 2022 WL 586161, at *16.  Additionally, in *In re W.R. Grace & Co.* the Third Circuit acknowledged that it was unclear whether the debtor would be adversely affected by collateral estoppel. Nonetheless, the circuit court cautioned that the plaintiff's theory that the debtor would not suffer an adverse impact should not be tested at the debtor's peril. *In re W.R. Grace & Co.*, 115 F. App'x at 570.  Here, the Court will not test the Securities Claimants' theory that Debtor will not be harmed by continued litigation in the Securities Action at Debtor's peril.

Further, in *In re Lyondell Chemical Co.*, a litigant argued that the irreparable harm alleged was too speculative and, thus, was an insufficient basis for a preliminary injunction. *See In re Lyondell Chem. Co.,* 402 B.R. 571 (Bankr. S.D.N.Y. 2009).  In considering both the *substance* of the potential threat and the *probability* that the threat would come to fruition, Judge Gerber concluded that he "must give great weight to the *injury to protect against*, as contrasted to the certainty of the threat." *Id.* at 591 (emphasis in original).  He further explained that

> So long as injunctive relief is warranted by due consideration of the balance of hardships (and other factors, such as the severity of the injury to be avoided, and

public interest concerns), I do not believe that uncertainty as to the probability of the damage should disable a judge from acting. Protecting the estate from such grievous injury is in my view not just permissible; it's my job.

*Id.*

While the opinion in *In re Lyondell Chemical* is not binding, this Court nevertheless finds it persuasive.  In determining whether to grant a preliminary injunction in this case, this Court affords significant weight to the harms that could befall the Debtor—including a complicated and drawn out claims valuation process, a hindered mediation, and weakened insurance coverage claims.

The Securities Claimants also assert that there is no possibility of record taint because there already exists an "extensive public record . . . regarding asbestos in J&J talc products and their association with various types of cancer." *Security Claimants' Opp'n* 19, ECF No. 46.  The Security Claimants cite to a 2018 *Reuter's* article in support of this argument.  Debtor explained during the hearing on April 12, 2022 that it vehemently disputes the veracity of the *Reuter's* article and the accuracy of other public media reports on these issues.  The Court determines that the "extensive public record" represents various unproven positions on issues currently in dispute in pending litigations, and does not carry with it the same persuasive weight or prejudicial impact as sworn testimony or affirmative findings in a court of law.  Thus, even accepting that an "extensive public record" exists, as Securities Claimants allege, it does not extinguish the potential harms that continued litigation could inflict.

The Court next analyzes the Securities Claimants' argument that the requisite harm must be "imminent" or "immediate" to warrant injunctive relief.  Counsel for the Securities Claimants

emphasized this point during oral argument and the Securities Claimants' brief cites several cases in support of this position. The Court agrees that the irreparable harm test implies some measure of time sensitivity. To impose an injunction based on purported harms far in the future would cut against a large body of case law and the Third Circuit's instruction that preliminary injunctions should be granted only in limited circumstances. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 *Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm* (3d ed.) (cited with approval in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008)) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury."); *Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018).

The Securities Claimants emphasize the immediacy requirement because they rely heavily on the fact that Debtor delayed five months after filing for bankruptcy before filing the instant Adversary Proceeding. During that five-month period, the parties took more than 20 depositions of former J&J executives and other third-parties, and Debtor actively participated in document exchange. In the Securities Claimants' view, the Debtor's delay and active participation in the discovery process in the Securities Action after filing for bankruptcy undermines any argument of harm if the requested relief is not granted.

Debtor does not deny the five-month time frame but insists it did not delay. Debtor explains that it waited until after this Court ruled on the pending motion to dismiss the underlying bankruptcy case and the preliminary injunction motion in the Talc Adversary Proceeding because a contrary ruling on either of those motions could have rendered any relief related to the Securities

Action moot or unavailable.  Indeed, Debtor filed the instant Adversary Proceeding approximately one week after this Court ruled on the other matters.

Debtor concedes that it proceeded with discovery in the Securities Action after it filed for bankruptcy.  However, Debtor contends that as discovery progressed during that five-month period, it "increasingly targeted the Talc Claims, talc safety, the Debtor's prepetition restructuring and the Chapter 11 case." *Debtor's Reply* 8, ECF No. 47.  Further, Debtor states that "expert discovery will be critical to the Securities Claimants' ability to establish the falsity of the talc-safety representations at issue. . . . The Securities Claimants will thus have to develop and present expert evidence going directly to whether the talc products were contaminated with asbestos or cause cancer[.]" *Id.* at 9.  Debtor explains that this shift in discovery focus to talc safety issues and the impending expert discovery into talc safety issues prompted the need for injunctive relief.  Thus, Debtor asserts there was no undue delay.  The Court agrees.

From a practical standpoint, it made sense for Debtor to await the outcome of the motions to dismiss in the main bankruptcy case and the preliminary injunction ruling in the Talc Adversary Proceeding.  Additionally, the refined discovery requests highlighted the overlap in factual issues and the potential impact that the Securities Action could have on the Talc Claims and the pending bankruptcy.  The Securities Claimants contend that Debtor argued in the Securities Action that the chapter 11 bankruptcy was not relevant to the Securities Action.  However, that position is not inconsistent with Debtor's request for a preliminary injunction.  While the chapter 11 bankruptcy case may not be relevant to the Securities Action, the reverse is not necessarily true.  As detailed earlier, prosecution of the Securities Action—especially given the narrowing focus of discovery

into third-parties' knowledge and actions regarding talc safety—can impact Debtor's reorganization.

The Securities Claimants also contend that—to the extent "record taint" is a risk—it will not harm Debtor because the Securities Action will not be tried until mid-2023, at the earliest. *Securities Claimants' Opp'n* at 16-18, ECF No. 46. The Securities Claimants state that the few remaining depositions and the expert discovery can be deemed confidential to prevent a public record. Further, the Securities Claimants explain that expert discovery has been stayed, so there will be no "direct overlap" with Talc Claims issues that could affect this bankruptcy. As an initial matter, the Court disagrees with the Securities Claimants' allegation that "[t]here is no risk of 'record taint' from a confidential record." *Id.* at 17. As Debtor points out, confidentiality designations often change throughout the course of a litigation. Moreover, a document's designation as "confidential" in one litigation does not prevent its discovery in other matters.

Additionally, although the Court is hopeful, it does not share the Securities Claimants' optimism regarding the timeline of this case. The Securities Claimants essentially assert that—because expert discovery is presently stayed and the trial will not occur until mid-2023—the bankruptcy case will be resolved before expert discovery begins and/or before a "public record" is created via a trial in the Securities Action. However, one need only look to similar chapter 11 bankruptcies to understand the speed at which large cases like this tend to proceed. By way of example, the Court points to the *Imerys* bankruptcy case—which was filed in 2019 in the Bankruptcy Court for the District of Delaware and is yet to confirm a plan—and the *Duro Dyne* bankruptcy case—which was filed as a pre-packaged bankruptcy before this Court, but took more

22

than two years to confirm a plan. *See Imerys Talc America, Inc.*, Case No. 19-10289 (Bankr. D. De.) (filed Feb. 13, 2019); *Duro Dyne National Corporation*, Case No. 18-27963 (Bankr. D.N.J.) (filed Sept. 7, 2018 and confirmed Oct. 23, 2020). This Court remains committed to its promise to apply an appropriate amount of pressure on all parties to push this case toward a speedy resolution. However, the Court cannot ignore the possibility that the complex issues involved in this bankruptcy will drag the case out, increasing the likelihood that expert discovery in the Securities Action—and even trial—would commence while a plan is still being negotiated in this bankruptcy case. Given the impact that continued litigation in the Securities Action could have on the reorganization process, this factor weighs in favor of extending the stay to the nondebtor Securities Defendants.

In so ruling, the Court expressly rejects the arguments made in footnote eight of the Securities Claimants' Opposition. *Securities Claimants' Opp'n* 10 n.8, ECF No. 46. In that footnote, the Securities Claimants assert that the holding in *In re W.R. Grace & Co.* is not controlling and that the irreparable harm inquiry requires this Court to ask something other than whether the Securities Action could interfere with Debtor's reorganization or diminish its ability to formulate a plan of reorganization. While arguing that "[t]his is *not* the Third Circuit standard for establishing irreparable harm for an injunction[,]" the Securities Claimants do not clarify what *is* the proper standard—instead only suggesting that it is something "much higher, as set forth above." *Id.* (emphasis added). The Court has examined the cases cited by the Securities Claimants in the section immediately preceding the footnote and finds no guidance. Indeed, several of the cases are district court cases and, as such, are not binding on this Court. *See Jurista v. Amerinox*

23

*Processing, Inc.*, 492 B.R. 707 (D.N.J. 2013); *Cobalis Corp. v. Cornell Cap. Partners, LP*, No. 2:11-CV-04716 DMC, 2011 WL 4962188 (D.N.J. Oct. 18, 2011).  Further, each district court case cites a different circuit decision—neither of which addresses preliminary injunctions in the bankruptcy context, and one of which is a non-binding out-of-circuit decision.  *See Jurista*, 492 B.R. 707 (citing *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006) (declining to find irreparable harm in patent case because movant had not shown that he could not be compensated by monetary damages); *Cobalis Corp.*, 2011 WL 4962188 at *3-4 (citing *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (holding that inability to satisfy money judgment can constitute "irreparable harm" to satisfy second prong of test for preliminary injunction).  The Third Circuit cases cited in the Security Claimants' brief likewise do not involve a bankruptcy proceeding or provide precise guidance as to the exact type of harm that must be shown to warrant injunctive relief precluding litigation against third parties while a bankruptcy is pending. *See Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (affirming denial of preliminary injunction in zoning case where movant had not shown more than potential for purely economic injury); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (examining irreparable harm in context of trade secret dispute).

This Court acknowledges certain Third Circuit decisions—one of which is cited in the Securities Claimants' brief—that state that a "risk" of harm is insufficient to establish irreparable harm for purposes of the test for injunctive relief. *See Campbell Soup*, 977 F.2d at 91; *Cont'l Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980).  However, those cases specifically deal with confidential business information or trade secrets and stand for the

proposition that there must be evidence of a direct threat to reveal information before a preliminary

injunction can issue—the mere possibility that confidential information could be exposed is

insufficient to establish irreparable harm. *See Campbell Soup*, 977 F.2d at 91 (holding that "[a]

threat of disclosure [of trade secrets] may establish immediate irreparable harm" but "a risk of

irreparable harm is not enough") (internal quotations and citations omitted);[4] *Cont'l Group*, 614

F.2d at 358 ("Risk of harm if information is inadvertently disclosed, however, is not sufficient to

satisfy the standard for granting a preliminary injunction."). Indeed, a more recent unpublished

Third Circuit case further suggests that, in the context of litigation involving trade secrets, a

movant must introduce evidence that another party intends to use the movant's trade secrets to

satisfy the irreparable harm prong of the preliminary injunction test. *See Par Pharm., Inc. v. QuVa*

*Pharma, Inc.*, 764 F. App'x 273, 279 (3d Cir. 2019).

Ultimately, the Court finds that the cases cited by the Securities Claimants are both dated

and factually distinguishable, and should not be used as the test for whether irreparable harm is

established under the circumstances of this case. This is not an action involving trade secrets.

Therefore, this Court is more aptly guided by recent Third Circuit authority, which establishes that

the irreparable harm prong of the test for injunctive relief can be satisfied by a showing of *potential*

harm or the *risk* of harm. *See ADP, Inc. v. Levin*, 2022 WL 1184202, at *3 (citing *Adams v.*

*Freedom Forge Corp.*, 204 F.3d 475, 488 n.13 (3d Cir. 2000) (collecting cases)). The Court is

---

[4] The quote in *Campbell Soup* stating that "[e]stablishing a risk of irreparable harm is not enough," can be traced
back to the Third Circuit's decision in *Cont'l Group*, 614 F.2d at 358. The quoted language in *Campbell Soup* is
taken directly from another Third Circuit decision: *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).
That case analyzed irreparable injury in the specific context of a breach of contract action and cited *Cont'l Group* for
the proposition that risk is insufficient to establish irreparable harm.

mindful that a movant must provide some basis for that risk and/or must offer some reason establishing that the potential harm is a real possibility.  However, so long as a movant's showing rises above the level of pure speculation, the irreparable harm prong may be satisfied. *See ADP, Inc. v. Levin*, 2022 WL 1184202, at *3 (stating that a movant may be entitled to a preliminary inunction if movant demonstrates that "the risk of future harm [is] anything other than speculative").  Debtor has made such a showing here.

Additionally, the Court recognizes the unique context in which this preliminary injunction is sought.  In analyzing Debtor's request, the Court looks to the Third Circuit's decision in *In re W.R. Grace & Co.* and the decisions of its sister courts that have answered the specific question of whether to grant preliminary injunctions in the context of a bankruptcy.  While those cases are not binding, they are analogous and persuasive.  Further, in a subsequent appeal in the W.R. Grace & Co. bankruptcy, the Third Circuit cited with approval its earlier "broader view of the potential impact on the debtor," in a published opinion. *In re W.R. Grace & Co.*, 386 B.R. 17, 35 (Bankr. D. Del. 2008) (citing *In re W.R. Grace & Co.*, 115 F. App'x at 570).  In conducting its analysis, the circuit court specifically "t[ook] into account the *risks* of collateral estoppel and record taint" as well as other potential impacts on the debtor and the bankruptcy estate. *Id.* (stating that allowing state-court litigation to proceed "*could* subject the Debtors to additional fixed and liquidated indemnity claims") (emphasis added).

In sum, the Court recognizes that the alleged irreparable harm cannot be too remote—in terms of time—or too speculative—in terms of likeliness to occur.  As stated previously, to hold otherwise would contradict developed case law and the Third Circuit's instruction that preliminary

26

injunctions should be granted only in limited circumstances.  Nevertheless, this Court concludes

that the test for whether irreparable harm has been demonstrated in the context of a bankruptcy

case should encompass a broader view of the impact on the debtor and can take into account risks

of negative consequences.

### c.  Harm to Nonmoving Party

The Court must also consider whether granting preliminary relief will result in even greater

harm to the nonmoving party—here, the Securities Claimants.  The Court determines that it will

not.  Indeed, the only harm that will come to the Securities Claimants is a temporary delay in

prosecution of their claims.  The Securities Action has been pending since 2018 and, by the

Securities Claimants' own estimates, will not be ready for trial for another year and a half.  Given

that the Securities Claimants have already prepared for a five-year timeline on this case, the Court

cannot find that additional delay of the Securities Action will be so detrimental to their claims as

to warrant continued prosecution at the risk of derailing the chapter 11 case.  Further, the Court

determines that the Securities Claimants will suffer no greater harm in terms of delay than the

plaintiffs in the Talc Claims, who also have been stayed to allow mediation and reorganization

efforts to play out.

### d.  Public Interest

As to the fourth factor, the Court concludes that granting the preliminary injunction would

be in the public interest.  As detailed in this Court's Opinion Denying the Motions to Dismiss, this

Court holds no doubts that claim resolution through the bankruptcy process is in the public interest.

*See In re LTL Mgmt., LLC*, 637 B.R. 396.  A settlement trust benefits claimants—whose time is

valuable and may be limited due to their illness—by streamlining the claim recovery process. Additionally, a bankruptcy trust protects the needs of future talc claimants. Certainly, the chapter 11 bankruptcy and resolution of Talc Claims are of paramount public import. While investor confidence and the value of a forum to expediently resolve investor claims are likewise important, those considerations are not paramount to the interests of the public in addressing the needs of the talc claimants.

Finally, the Court wishes to address the public policy concerns that underlie every decision made in this case. Indeed, as explained above and emphasized in this Court's prior opinions, the Debtor's reorganization and the uniform, timely, and equitable resolution of the Talc Claims for the benefit of injured parties—existing and future—are at the forefront of this Court's mind. One can imagine the cruel irony if this Court were to allow the securities claims to proceed while tort claims must wait. The Court cannot stomach such unfairness and the talc claimants should not have to endure it. Injured investors will not be compensated for their financial losses while injured people are made to wait.

## IV.    Conclusion

For the reasons set forth above, the Court concludes that "unusual circumstances" are present warranting an extension of the automatic stay to the Protected Parties under § 362(a)(3). To the extent § 362(a) does not serve as an independent basis for extension of the stay to nondebtor parties, the Court determines that a preliminary injunction under § 105(a) extending the automatic stay is appropriate. The Court, thus, grants Debtor's Motion and resolves the instant adversary proceeding in Debtor's favor. However, as with the resolution of the Talc Adversary Proceeding,

28

the Court concludes that taking measures in smaller steps is prudent.  The Court will revisit continuation of the automatic stay on June 29, 2022, which is the date the Court intends to revisit the preliminary injunction in the Talc Adversary Proceeding.  Debtor is directed to submit a proposed form of Order consistent with this Opinion.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: April 29, 2022