UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGION 3
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:    jeffrey.m.sponder@usdoj.gov
           lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No. 21-30589 (MBK) |
| LTL Management LLC,[1] | Chapter 11 |
| Debtor. | The Honorable Michael B. Kaplan, Chief Judge |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION FOR RETENTION OF HOGAN LOVELLS US LLP AS SPECIAL COUNSEL, EFFECTIVE AS OF APRIL 4, 2022**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), by his undersigned counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), respectfully submits this objection ("Objection") to the *Debtor's Application for Retention of Hogan Lovells US LLP, Effective as of April 4, 2022* (the "Application") (Dkt. 2240), as special counsel for LTL Management LLC (the "Debtor"), and respectfully represents as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## JURISDICTION

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts." *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this Objection.

## BACKGROUND AND RELEVANT FACTS

4. On October 14, 2021, LTL Management LLC ("Debtor"), filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina (the "NC Court"). *See* Dkt. 1.

5. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code.

6. On October 21, 2021, the Debtor initiated an adversary proceeding with the filing of a Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or, (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing ("PI Action"). *See* Adv. Pro. 21-3032, Dkt. 1.

7. On November 8, 2021, the NC Court entered an order appointing the Official Committee of Talc Claimants ("Committee").[2] *See* Dkt. 355.

8. On November 16, 2021, the North Carolina bankruptcy court entered an Order transferring venue of this case to the District of New Jersey. *See* Dkt. 355.

### A. Motions to Dismiss and Appeals

9. On December 1, 2021, the Committee filed a Motion to Dismiss LTL's case as a bad faith filing ("Committee Motion to Dismiss"). *See* Dkt. 632.

10. On December 9, 2021, Arnold & Itkin LLP ("A&I"), on behalf of approximately 7,000 talc personal injury claimants, filed a motion to dismiss the chapter 11 case as a bad faith filing ("A&I Motion to Dismiss"). *See* Dkt. 766.

11. On December 22, 2021, the Debtor filed its Objection to the Committee and A&I Motions to Dismiss. *See* Dkt. 956.

12. On December 29, 2021, Aylstock, Witkin, Kreis & Overholtz PLLC ("Alystock"), on behalf of thousands of talc personal injury claimants, filed its Motion to Dismiss Bankruptcy Case and Joinder in Related Filings ("Aylstock Motion to Dismiss", and collectively with the Committee Motion to Dismiss and A&I Motion to Dismiss, the "Motions to Dismiss"). *See* Dkt. 1003.

13. From February 14, 2022, to February 18, 2022, the Court held a trial on the Motions to Dismiss and PI Action.

---

[2] While the U.S. Trustee filed a *Notice of Filing of Reconstituted and Amended (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II*, creating two separate committees ("TCCI" and "TCCII", respectively), the Committee, as originally formed, has been reconstituted as of April 12, 2022, and all references to "the Committee" herein, unless otherwise specified, are references to the Committee as appointed by the NC Court.

3

14. On February 25, 2022, the Court issued a Memorandum Opinion denying the Motions to Dismiss. *See* Dkt. 1572. On March 2, 2022, the Court entered an Order Denying the Motions to Dismiss for the reasons set forth in the opinion. *See* Dkt. 1603.

15. Also on February 25, 2022, the Court issued a Memorandum Opinion in the PI Action extending the automatic stay and preliminary injunction to June 29, 2022, subject to further extensions. *See* Adv. Pro. No. 21-3032, Dkt. 184. On March 4, 2022, the Court entered an Order in the PI Action consistent with its opinion. *See* Adv. Pro. No. 21-3032, Dkt. 187.

16. Timely Notices of Appeal were filed by TCCI, TCCII, Aylstock and A&I (collectively, the "Appellants") regarding the Motions to Dismiss Memorandum Opinion. *See* Dkts. 1651, 1654, 1696, and 1710. Timely Notices of Appeal were also filed by TCCI, TCCII, and Aystock regarding the PI Action Memorandum Opinion. *See* Adv. Pro. No. 21-3032, Dkts. 189, 190, and 201.

17. In response to motions by the Appellants, on April 4, 2022, the Court certified its decisions for direct review by the Third Circuit. *See* Dkt. 1955.

18. On May 11, 2022, the Third Circuit granted the Appellants' petitions for direct review over the Debtor's opposition.

### B. Debtor's Special Counsel Retention Application.

19. On May 4, 2022, the Debtor filed an Application seeking to retain Hogan Lovells US LLP ("Hogan Lovells") as special counsel to "render appellate litigation services to the Debtor in connection with the Appeals during the Chapter 11 Case, including, without limitation, defending the Appeals on behalf of the Debtor and advising the Debtor and its restructuring advisors in connection with the Appeals." *See* Dkt. 2240.

20. More specifically, it is anticipated that Hogan Lovells will: (a) advise the Debtor concerning appellate procedures including motion practice, stays, briefing on the merits, and other matters related to the Appeals; (b) advise the Debtor concerning strategic considerations in connection with the Appeals including formulation and drafting of appellate arguments; (c) prepare on behalf of the Debtor all necessary and appropriate motions, merits briefing, responses, notices and other relevant pleadings to be filed in connection with the Appeals; (d) prepare for and appear on behalf of the Debtor in any hearings, oral arguments or other proceedings as may be required; (e) advise the Debtor and its professionals concerning the status of the Appeals; and (f) perform all other necessary and appropriate appellate litigation services in connection with the Appeals for or on behalf of the Debtor, as requested by the Debtor. *See id*.

21. The Application is supported by the Certification of Neal Kumar Katyal, a partner with Hogan Lovells. *See id*. The disclosed hourly rate for partners at Hogan Lovells is between $950 and $2,465, for counsel is between $910 and $1,735, for associates is between $605 and $1,055, and for paralegals is between $275 and $550. *See id*. Based on subsequent email exchanges with Debtor's counsel, Mr. Katyal's hourly rate that will be charged for representing the Debtor is $2,465.

22. To date, the Court has approved the retention of seven (7) law firms to represent the Debtor.[3] The retained law firms include nationally recognized Jones Day, Skadden Arps Slate Meager & Flom LLP ("Skadden"), Weil, Gotshal & Manges LLP ("Weil"), King & Spaulding, LLP and Shook Hardy & Bacon, LLP. *See* Dkts 1855, 1736, 1752, 859, and 860, respectively. In addition, the Court approved Debtor's retention of Orrick, Harrington & Sutcliffe, LLP ("Orrick") as special appellate counsel. *See* Dkt 1993.

---

[3]  This does not include Debtor's law firms that filed Ordinary Course Professional Declarations.

5

23. Hogan Lovells hourly rates for partners, by comparison to the Debtor's other professionals in this case, is significantly higher. Jones Day's fee range for partners and of counsel is $1,000 to $1,450. *See* Dkt. 541. The highest hourly rate billed by Jones Day in its most recent Monthly Fee Statement, December 2021,[4] is $1350 – more than $1,100 less an hour than the highest proposed fee for Hogan Lovells. *See* Dkt. 1350. Skadden's hourly range for partners is $900 to $1,875. *See* Dkt. 832. Based on Skadden's First Interim Fee Application, the highest hourly rate billed so far is $1,195. *See* Dkt. 1779. Weil's hourly range for partners is $1,150 to $1795. *See* Dkt. 552. Based on Weil's First Interim Fee Application, the highest hourly rate billed so far is $1,579.60. *See* Dkt. 1870. Orrick has already been retained as Debtor's special appellate counsel and its hourly range for of counsel and partners is $805 to $1750. *See* Dkt. 1456.

## LAW, ANALYSIS AND ARGUMENT

24. 11 U.S.C. § 327(e) provides that the trustee, or debtor-in-possession, with court approval, "may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to employed."

25. 11 U.S.C. § 328(a) further provides that the trustee, or debtor-in-possession, with court approval, "may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent basis." The Court should determine the reasonableness of the terms at the retention stage. *See Zolfo, Cooper & Co. v*

---

[4] Jones Day has not yet filed it First Interim Fee Application.

6

*Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995), *citing In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 856 n.35 (3d Cir. 1994).

26. The Debtor has not established that the retention of Hogan Lovells is in the best interest of the estate or on reasonable terms.

***The Debtor Did Not Establish that Retention of Hogan Lovells is in the Best Interest of the Estate***

27. One of the requirements of Section 327(e) is that employment be in the best interest of the estate. The Debtor already has an extensive team of professionals, including seven law firms. This includes Jones Day, described in its own application as "one of the largest law firms in the world, with a national and international practice, [with] substantial experience in all aspects of the law[.]" *See* Dkt. 541. Its website boasts "A 'deep bench of experienced appellate lawyers with a strong Supreme Court pedigree', 'noted for handling high value business law cases' and many 'Supreme Court victories.'" *See* www.jonesday.com. The Debtor's legal team also includes Skadden, which "serves clients in every major financial center globally" and whose website details the involvement of Skadden's Mass Torts, Insurance and Consumer Litigation Group in "significant complex tort and consumer fraud litigations" with "experienced litigators who have defended cases on every level" including having "served as appellate counsel in landmark cases in many state and federal appellate courts." *See* www.skadden.com.

28. Both Jones Day and Skadden led the Debtor through months of discovery, significant motion practice and a week-long trial on the Motions to Dismiss and PI Action, prevailing on all arguments before the bankruptcy court. Both Jones Day and Skadden are intimately familiar with the Debtor's case, the underlying state court litigation, and the issues on appeal. Both firms tout themselves for their strong appellate practice groups.

29. The Debtor has not established that bringing in yet another law firm at this time would be in the best interest of the estate when the Debtor already employs Jones Day, Skadden and numerous other law firms with appellate experience, such as Orrick.

### *The Debtor Did Not Establish that Retention of Hogan Lovells is on Reasonable Terms*

30. One of the requirements of Section 328(a) is employment be on reasonable terms. In addition to already having skilled counsel, both Jones Day and Skadden – prominent firms with a national and international presence – have fees that are significantly lower than the hourly rate that will be charged for Mr. Katyal's time. Mr. Katyal's hourly rate is $2,465, which is over $1,100 more than the highest hourly fee charged by Jones Day attorneys and over $1,200 more than the top fee charged by Skadden attorneys thus far in this case. Further, despite including the range of fees for counsel and associates, there is no staffing plan provided with the Application to explain if Mr. Katyal intends to be the primary billing attorney or if attorneys at lower rates will do a significant portion of the work.[5] Accordingly, the Debtor and the applicant have not established that the terms are reasonable.

31. While a party's "choice of counsel . . . is entitled to great deference[,]" *In re Enron Corp.*, 2002 WL 32034346, at *4 (Bankr. S.D.N.Y. May 23, 2022), it is not without bounds. Simply put, based on the expertise of Debtor's approved law firms, and in particular Jones Day and Skadden, and the significantly lower rates charged by both firms, there is no need for the Debtor's estate to bear the additional financial burden that will result from the retention of Hogan Lovell to defend the Appeals.

---

[5] Although Debtor's counsel advised that Mr. Katyal would delegate appropriately, more clarification and specifics would be required in a Supplemental Certification.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the Application in its entirety at this time and grant such other and further relief that is deemed just and equitable.

          Respectfully submitted,

          ANDREW R. VARA
          UNITED STATES TRUSTEE
          REGIONS 3 & 9

By:   */s/ Jeffrey M. Sponder*
       Jeffrey M. Sponder
       Trial Attorney

By:   */s/ Lauren Bielskie*
       Lauren Bielskie
       Trial Attorney

Dated: May 20, 2022