| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter, Esquire (006961986)<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Telephone:     (267) 338-1370<br>Facsimile:      (267) 338-1335<br>E-mail:          pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin, Esq. (*pro hac vice*)<br>Robert J. Pfister, Esq. (*pro hac vice*)<br>Samuel M. Kidder, Esq. (*pro hac vice*)<br>Nir Maoz, Esq. (*pro hac vice*)<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Telephone:     (310) 407-4000<br>Facsimile:      (310) 407-9090<br>Email:            mtuchin@ktbslaw.com<br>                        rpfister@ktbslaw.com<br>                        skidder@ktbslaw.com<br>                        nmaoz@ktbslaw.com<br><br>*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>                              Debtor. | Chapter 11<br><br>Case No.:   21-30589 (MBK)<br><br>Judge:       Michael B. Kaplan<br><br>Hearing:    July 26, 2022 |

**RESPONSE OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC IN OPPOSITION TO ESTIMATION REQUEST IN DEBTOR'S STATUS REPORT**

Consistent with the Court's direction at the omnibus hearing on June 14, 2022, Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), by and through its undersigned counsel, respectfully submits this response in opposition to the request for estimation under Bankruptcy

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

1

Code section 502(c) that is embedded in *Debtor's Statement of Proposed Next Steps in Chapter 11 Case* [Docket No. 2473] ("Status Report").[2]

1.  The Debtor's Status Report presents estimation as a mandatory exercise. *See* Status Report at 5–6 (headed "Absent Agreement, Estimation is Mandatory"). But the statute mandates estimation *only* in the circumstance where "fixing or liquidating" a claim is necessary for – and yet would unduly delay – the administration of the bankruptcy case:

> (c)  There shall be estimated for purpose of allowance under this section –
>
> (1)  any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2)  any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c). Accordingly, a basic threshold question is whether "the administration of the case" actually necessitates "the fixing or liquidation" of any particular claim or group of claims. *Id*. If no such fixing or liquidation is required to administer the bankruptcy case, then there is no need for estimation.[3]

2.  The Debtor sidesteps this threshold issue, essentially assuming that the case cannot proceed to the plan stage without a judicial estimate of the Debtor's aggregate liability on account of talc-related personal injury and wrongful death claims. *See, e.g.*, Status Report at 3 (framing the "primary, underlying dispute among the parties – and the central issue in this case" as the Debtor's aggregate liability). That is not true. The TCC has indicated that it is prepared to

---

[2]  AWKO joins and incorporates by reference all oppositions to the Debtor's request for estimation proceedings filed by other parties in interest to the extent consistent herewith.

[3]  Thus, for example, the Debtor does not seek to estimate any individual claims, notwithstanding that each individual tort claim is unliquidated. There is simply no need to "fix[] or liquidat[e]" each such claim in order to "administ[er] … the case," *id.*, so estimation of individual claims is not mandatory.

2

propose a plan under which such claims can be settled or determined post-confirmation by a trust, with non-settling claimants' jury trial rights fully preserved, and that no estimation is required. Such a plan would likely garner overwhelming creditor support. Nothing prevents the Debtor from proposing such a plan, too.

3.     Why, then, is the Debtor proposing estimation now – before any plan is on the table – and for what purpose will the estimation be used? Consistent with the limitations imposed by the Judicial Code, *see* 28 U.S.C. §§ 157(b)(2)(B) & (O), the Debtor purports to disclaim any intent to use estimation "for purposes of determining distributions to claimants." Status Report at 3. Yet at the same time, the Debtor appears to argue that a judicial estimate of aggregate liability will set an upper limit to the amount the must be funded under a section 524(g) trust. *See* Status Report at 14–15 (asserting that "to confirm a plan, the claimants would have to prove that they are not receiving more than the allowed amount of their claims" – by which the Debtor apparently means the estimated aggregate liability). If that indeed is the Debtor's game plan, then the Debtor is effectively seeking estimation for purposes of distribution in the form of an aggregate liability cap that will necessarily limit the distributions available to claimants from a section 524(g) trust. That is a misuse of section 502(c).[4]

---

[4] *See, e.g.*, *In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 220–21 (Bankr. D. Or. 2006) (rejecting the debtor's request that the court "estimate in the aggregate the amounts of the present [tort claims] for the purported purpose of confirmation and voting," when in fact the debtor "intends to use the estimation, along with estimation of other present tort claims, to put an upper limit on the amount it will pay on all of the tort claims, while discharging any actual liability in excess of the estimated amount"); *In re Dow Corning Corp.*, 211 B.R. 545, 569–70 (Bankr. E.D. Mich. 1997) (rejecting a similar attempt to use "an estimation of the aggregate value of all personal injury claims for purposes of feasibility," when the real goal was to transform that estimate "into a discharge of unsatisfied personal injury claims via § 1141(d)"). *Cf. Butner v. United States*, 440 U.S. 48, 56 (1979) (bankruptcy courts "should take whatever steps are necessary to ensure that [a creditor] is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued"); *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) (section 502(c) "is not a mechanism for reducing the amount of a debtor's liability").

4. Judge Wallace's opinion in *In re North American Health Care, Inc.*, 544 B.R. 684 (Bankr. C.D. Cal. 2016), is instructive in this regard. The otherwise solvent and profitable debtors in that case filed bankruptcy to address personal injury or wrongful death tort claims. *Id.* at 684–86. The debtors sought to impose an estimation protocol under which the claims would be estimated for all purposes – including for distribution, by the district court on report and recommendation if necessary. *Id.* at 687. After considering what was necessary to administer the bankruptcy case, as well as the express preservation of jury trial rights in bankruptcy, *see id.* at 690 (citing 28 U.S.C. § 1411(a)), Judge Wallace determined that estimation would ***only*** be used to assess feasibility – and the aggregate estimate would not cap or limit the debtors' ultimate liability to the claimants, which would be adjudicated via jury trial post-confirmation:

> The estimated aggregate amount will not be any kind of a cap on eventual distributions by the Debtors to the tort claimants. The Court envisions that any order confirming a plan of reorganization will contain a provision whereby the tort claims that have not previously been resolved (through mediation or otherwise) are not discharged under 11 U.S.C. § 1141(d) but instead will be liquidated in amount through trials in state court or federal district court (or settled in such courts).

*Id.* at 690.[5]

5. At this stage of the proceedings, it is impossible to tell what if any legitimate purpose would be served by estimation. If and to the extent a proposed plan necessitates quantification of the Debtor's aggregate liability, the Court can consider estimation at the

---

[5] Judge Wallace reasoned that estimation "is by its very nature a second-best method of arriving at the amount of an unliquidated wrongful death/personal injury claim." *Id.* at 689. He likened it to the task of trying to ascertain "the number of marbles in a large glass jar," which could be accomplished either by taking the marbles out and counting them (the equivalent of actually liquidating a claim via "a jury trial in a state court or a federal district court") versus merely looking at the jar and making an educated guess as to its contents (the equivalent of estimating a claim under section 502(c)). *Id.* "Even if the person who makes the estimation is skilled and experienced in estimating the number of marbles in a glass jar, the result of the estimation is likely to be less accurate … than taking out the marbles one by one and counting them." *Id.*

appropriate time and for the precise purpose necessary given that plan's terms. This does not merely delay an inevitable estimation. Instead, it ensures that any estimation process is tailored and appropriate for the purpose it will serve. For example, unliquidated claims generally must be estimated for purposes of voting, but standard practice in mass tort bankruptcies is to estimate all claims at $1 each. Such estimates are appropriate to the task at hand (determining eligibility to vote), and go no further than necessary – hence they may save substantial time and party and judicial resources. Debtors are unlikely to contest that each claim is worth at least $1 (and thus each creditor is entitled to vote), and claimants are unlikely to insist on a precise estimate of the amount of their claim (so long as all claims are estimated at the same $1 amount).

6.  Here, depending on the plan that is proposed, the Court may only be required to estimate whether the Debtor's aggregate liability is below a particular dollar threshold (*e.g.*, $60 billion), such as for purposes of assessing feasibility under section 1129(a)(11). An estimation trial at which the sole question is whether the Debtor's aggregate liability is less than $60 billion would be far different than an estimation trial at which the Court is being asked to arrive at an exact dollar figure. There is no need to embark down the lengthy and complicated estimation path proposed in the Status Report – with at least a year of proceedings involving extensive and hotly contested scientific matters, designed to arrive at a precise estimate of the Debtor's aggregate liability – if a judicial estimate of aggregate liability is not necessary to resolve any issue ultimately before the Court.[6]

---

[6] *Cf. Morse v. Frederick*, 551 U.S. 393, 431 (2007) (concurring opinion) (describing the "cardinal principle of judicial restraint" as "if it is not necessary to decide more, it is necessary not to decide more"); *Whitehouse v. Illinois Cent. R.R. Co.*, 349 U.S. 366, 372–73 (1955) ("These are perplexing questions. Their difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case.").

For the foregoing reasons, AWKO respectfully opposes the untethered-to-any-plan request for estimation under Bankruptcy Code section 502(c) that is embedded in the Debtor's Status Report.

DATED:  July 15, 2022

Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
_____
Paul J. Winterhalter
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:	(267) 338-1370
Facsimile:	(267) 338-1335
E-mail:	pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**

Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister  (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:	(310) 407-4000
Facsimile:	(310) 407-9090
Email:	mtuchin@ktbslaw.com
	rpfister@ktbslaw.com
	skidder@ktbslaw.com
	nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*