**Exhibit D**

# MEALEY'S™
# Asbestos Bankruptcy Report

## Where Are They Now, Part Five:
## An Update On Developments In Asbestos-Related Bankruptcy Cases

by
*Mark D. Plevin, Esq.*
*Leslie A. Davis, Esq.*
and
*Noah S. Bloomberg, Esq.*

*Crowell & Moring LLP*
*Washington, DC*

A commentary article reprinted from the March 2009 issue of Mealey's Asbestos Bankruptcy Report



Exhibit D    Page 3 of 4

Vol. 8, #8  March 2009                                                                                          MEALEY'S Asbestos Bankruptcy Report

Plan B, the bankruptcy court deferred ruling on two other issues: whether Plan A could also be confirmed; and whether the assignment of debtors' insurance rights to the § 524(g) trust was permissible. While the ruling on Plan A was pending, debtors, Cooper, and Pneumo Abex agreed that any distribution to Cooper and Pneumo Abex pursuant to their proofs of claim would be deferred.

"Plan B" went effective on December 27, 2007.[77] On September 20, 2008, the bankruptcy court ruled that Plan A would not be confirmed. The court held that the injunctions that would be given to Cooper and Pneumo Abex under Plan A were not necessary to Federal-Mogul's successful reorganization, because the court had already confirmed Plan B, and that Plan A would improperly release Cooper and Pneumo Abex from independent liabilities that were not derivative of debtors' liability.[78]

The court also ruled against the insurers on the assignability issue.[79] The insurers' appeal to the district court has been fully briefed. The district court heard oral argument on November 12, 2008 but has not ruled.[80]

**G-I Holdings**. During the first seven years of its bankruptcy case, filed in 2001, G-I Holdings, Inc. vigorously disputed its alleged asbestos liability, resulting in extensive litigation in the bankruptcy court between G-I and its asbestos claimants. G-I challenged both the validity of the asbestos claims against it and the extent of its alleged liability.[81] Given the significant dispute between G-I and the asbestos claimants as to the total amount of asbestos claims that G-I would be required to pay, the parties and the bankruptcy court agreed that no Chapter 11 plan could be proposed or confirmed until the court estimated the aggregate amount of G-I's asbestos liability.[82] The parties have been litigating estimation-related issues since 2002.[83]

Before the estimation was completed, G-I resolved its disputes with the asbestos constituencies, resulting in the proposal of a joint plan of reorganization on August 21, 2008.[84] Shortly thereafter, the United States Trustee moved for the appointment of an examiner, arguing that the plan improperly treats unsecured asbestos creditors more favorably than unsecured non-asbestos creditors.[85] The bankruptcy court denied that motion,[86] but the hearing on confirmation of the plan, originally scheduled to take place in early April, 2009, has been postponed indefinitely while the plan proponents work to amend the plan.[87]

**Global Industrial Technologies, Inc. (GIT) / North American Refractories Corp. (NARCO)**. On November 13, 2007, the U.S. Bankruptcy Court for the Western District of Pennsylvania confirmed the joint plan of reorganization that GIT and NARCO had filed on December 28, 2005.[88] Several insurers appealed confirmation of the plan,[89] arguing, *inter alia*, that the plan could not lawfully be confirmed because it assigned insurance policies to the § 524(g) trust without insurer consent, including policies issued to non-debtor Honeywell, Inc. in which debtors had no interest, and because certain insurers were denied standing to participate in the confirmation hearing based on the bankruptcy court's finding that the plan was "insurance neutral" and adequately preserved the insurers' rights and defenses under their policies. On July 25, 2008, the district court affirmed the bankruptcy court's confirmation order, finding that the insurers' rights would not be affected by the plan given its "insurance neutrality" provisions and because the bankruptcy court did not err in ruling that the Bankruptcy Code preempted provisions in the insurers' policies prohibiting assignment of the policies without the insurers' consent.[90]

**Johns-Manville Corp**. Although it has been more than two decades since the U.S. Bankruptcy Court for the Southern District of New York confirmed the plan of reorganization in the Johns-Manville case, disputes concerning the scope of the injunction entered in that case with respect to asbestos claims still continue. Earlier this decade, asbestos claimants began asserting lawsuits against certain of Johns-Manville's insurers, including Travelers, alleging that the insurers had engaged in unfair settlement practices by settling asbestos claims for too little given the insurers' alleged knowledge of the dangers of asbestos.

In August, 2004, the bankruptcy court entered an order approving settlements reached between Travelers and certain asbestos claimants, and clarifying that the injunction contained in the 1988 confirmation order precluded such direct claims against Travelers because it barred all persons from commencing lawsuits against settling insurers for the purpose of directly or indirectly recovering payment of, on, or with respect

the bankruptcy case should be dismissed because it no longer served any Chapter 11 purpose.[107] The bankruptcy court's ruling denying the insurers' motion[108] was affirmed by the district court.[109] Certain insurers then appealed to the Third Circuit, which on October 23, 2008 affirmed, holding on the limited record before it that a bankruptcy case that seeks to maximize recoveries to all of a debtor's creditors is an acceptable use of the Bankruptcy Code and does not constitute "bad faith."[110]

Skinner's case is once again before the U.S. Bankruptcy Court for the Western District of Pennsylvania, which conducted a hearing on February 4, 2009 concerning whether to approve Skinner's disclosure statement regarding its Chapter 11 plan filed in May, 2006. During that hearing, the bankruptcy court stated that it had several threshold concerns regarding Skinner's proposed plan that must be resolved before the court would move forward with any hearing on the disclosure statement. No new hearing date has yet been set regarding Skinner's proposed disclosure statement and plan.

**W.R. Grace**. From the first days of its bankruptcy case, filed in 2001, Grace has fiercely contested the extent of its alleged liability for asbestos claims and, like the debtor in G-I Holdings, sought to use the bankruptcy court as a forum for contesting the validity of asbestos claims against it. In November, 2004, Grace filed a proposed plan of reorganization and disclosure statement that provided for the payment of all allowed asbestos claims against it in full, to a cap of over $2 billion. Grace's asbestos creditors vehemently objected to the 2004 plan, arguing that Grace significantly underestimated the value of its aggregate asbestos liability and, thus, asbestos claims would not receive payment in full as proposed in the plan.

On September 11, 2006, the U.S. Bankruptcy Court for the District of Delaware ruled that it would have to conduct (i) an estimation of Grace's asbestos liability and (ii) a valuation of Grace's assets and liabilities, before any plan could be proposed and confirmed.[111] Significant litigation ensued between Grace and the asbestos constituencies as the parties prepared for the estimation hearing.[112]

On July 26, 2007, the bankruptcy court entered an order terminating Grace's exclusive period in which to file a plan of reorganization and solicit acceptances thereof, finding that Grace had had sufficient time in which to control negotiations with its asbestos creditors and to propose and confirm a feasible plan, yet had failed to do so, and that terminating exclusivity would facilitate moving Grace's bankruptcy case to conclusion by changing the negotiation dynamic.[113] On November 5, 2007, the official committee of asbestos claimants and the future claimants' representative filed a competing plan of reorganization.[114] As the time for the estimation hearing grew closer, Grace and the asbestos constituencies reached agreement on the terms of a joint plan of reorganization, which was filed on September 19, 2008.[115]

Although Grace reached a resolution of its disputes with the asbestos claimants regarding a plan, it lost the support of its official committee of unsecured creditors, which had been a co-proponent of the 2004 plan, because the amended plan does not provide for the payment of post-petition interest on unsecured claims at the applicable default rate.[116] Several other parties, including certain asbestos claimants whose injuries allegedly arise solely from Grace and entities whose liability for asbestos claims is allegedly derivative of Grace's liability, have also objected to the amended plan.[117] In February, 2009, Grace filed a further amended plan.[118] The hearing on whether to confirm the amended joint plan is scheduled to be heard in two phases. The hearing on Phase I issues, including whether the amended joint plan affects Grace's insurers' rights and insurer standing to litigate non-insurance plan issues, and impairment issues pertaining to lenders under Grace's pre-petition credit facilities, is scheduled for June 22-25, 2009.[119] The hearing on Phase II issues, including the objections of asbestos claimants from Libby, Montana and of parties classified as Indirect Asbestos Claimants under the plan, is scheduled for September 8-11, 2009.[120]

3.  **New Developments: Emerging Themes In Asbestos Bankruptcy Litigation**

Asbestos-related bankruptcy litigation has matured from the aspect of all parties involved in these cases – debtors, asbestos claimants, insurers, and non-asbestos creditors. As these cases have progressed, we have seen certain issues arise time and time again, albeit without definitive resolution in some instances. We discuss some of these issues below.