Marc E. Wolin, Esq.
mwolin@saiber.com
John M. August, Esq.
jaugust@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401

-and-

Joseph D. Satterley, Esq.
jsatterley@kazanlaw.com
Denyse F. Clancy, Esq.
dclancy@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000

*Counsel for Anthony Hernandez Valadez*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LTL MANAGEMENT LLC, | : | Case No. 21-30589 |
| | : | |
| Debtor. | : | **Hearing Date and Time:** |
| | : | July 26, 2022 at 10 a.m. |

**REPLY OF ANTHONY HERNANDEZ VALADEZ IN SUPPORT OF OBJECTION TO
CONTINUING THE PRELIMINARY INJUNCTION TO NON-DEBTORS**

3176664.2

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ........................................................................................................3

       I.      Mr. Valadez's Pericardial Mesothelioma Will Soon Take His Life. .......................3

       II.     Mr. Valadez's Only Known Exposure to Asbestos Was from Johnson's Baby Powder ...........................................................................................................5

       III.    Given Mr. Valadez's Failing Health, the State Court Will likely Expedite His Case to Trial. ......................................................................................................6

DISCUSSION .................................................................................................................................6

       I.      Allowing Mr. Valadez to Prosecute His Case Aids in Mediation Efforts and Estimation. ...........................................................................................................7

       II.     Modifying the PI Order Ensures That Mr. Valadez's Case Is Heard During His Lifetime. ............................................................................................................8

       III.    Modifying the PI Order Allows Mr. Valadez to Gather and Preserve Evidence. ...............................................................................................................10

       IV.    Modifying the PI Order Has No Adverse Effect on Debtor and Non-Debtors. ..................................................................................................................12

CONCLUSION ............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In Re: All Seasons Resort, Inc.*,
  79 B.R. 901 (C.D. Cal. 1987) ....................................................................................................3, 12

*In re Bestwall LLC*,
  606 B.R. 243 (Bankr. W.D.N.C. 2019) (no trust has been established since
  debtor sought Chapter 11 protection in 2017) ........................................................................10

*Fox v. Superior Court*,
  21 Cal.App.5th 529 (Cal. App. 1st Dist. 2018)........................................................................10

*Gold v. Johns-Manville Sales Corp.*,
  723 F.2d 1068 (3d Cir. 1983)................................................................................................2, 11

*Matter of Henry*,
  173 B.R. 878 (Bankr. D.N.J. 1993) ............................................................................................9

*Landis v. North Amer. Co.*,
  299 U.S. 247 (1936)................................................................................................................2, 11

*Looney v. Superior Court*,
  16 Cal.App.4th 521 (Cal. App. 2d Dist. 1993) .......................................................................2, 9

*In re Mid-Atlantic Handling Sys., LLC*,
  304 B.R. 111 (Bankr. D.N.J. 2003) ................................................................................... *passim*

*In re Pittsburgh Corning Corp.*,
  BR 00-22876 JKF, 2013 WL 2299620 (Bankr. W.D. Pa. May 24, 2013)................................9

*Warren v. Schecter*,
  57 Cal.App.4th 1189 (Cal. App. 2d Dist. 1997) .....................................................................10

**Statutes**

11 U.S.C. § 502(e)(1)(B) ...............................................................................................................3, 12

Bankruptcy Code section 362 ...........................................................................................................9

California Code of Civil Procedure § 36 ..............................................................................2, 6, 8, 9

California Code of Civil Procedure § 36(a)...................................................................................10

California Code of Civil Procedure § 36(c)(1) ................................................................................8

California Code of Civil Procedure § 36(f) ................................................................................10

**Other Authorities**

Seventh Amendment ....................................................................................................................9

Anthony Hernandez Valadez in the above-captioned case, by and through his counsel Kazan, McClain, Satterley & Greenwood, A Professional Law Corporation, and local counsel Saiber LLC, hereby submits this reply ("Reply") in support of his objection to continuing the Preliminary Injunction entered in this matter [Dkt. 1635] (the "PI Order") against non-debtors Johnson & Johnson ("J&J") and retailers Albertsons Companies, Inc., Lucky Stores, Inc., Safeway Inc., Save Mart Supermarkets, Target Corporation, and Walmart Inc. (collectively, "Retailers").[1]

## INTRODUCTION

1.  Mr. Valadez requests that this Court modify the PI Order to allow his case to proceed to trial in the Superior Court of California, County of Alameda (the "State Court") against J&J and the Retailers (collectively, "Non-Debtors"). Contrary to the arguments of Debtor LTL Management LLC ("Debtor"), the unique claims of Mr. Valadez, a 23-year-old mesothelioma patient who has less than five months to live and whose only known exposure to asbestos was through Johnson's Baby Powder talc, heavily favor the modification of the PI Order.

2.  *First*, allowing Mr. Valadez's case to proceed in State Court aids in mediation efforts and estimation. Debtor steadfastly denies that Johnson's Baby Powder ever contained asbestos or asbestiform fibers. Mr. Valadez and other claimants have substantial evidence to the contrary. Given the parties' divergent positions, a jury trial on these issues in Mr. Valadez's case will aid the interest of creditors because it will assist in mediation efforts and help establish an estimation mechanism if and when a trust is created. This will occur well before June 2023, which is the date Debtor believes its proposed protracted estimation process will conclude, because

---

[1] In support of this Reply, Mr. Valadez also submits the Declaration of Joseph Satterley ("Satterley Decl.") and incorporates his moving and reply papers filed in support of his Motion for an Order Granting Relief from the Preliminary Injunction ("Motion to Lift Stay"), filed under Docket Nos. 2348 and 2469, respectively.

Mr. Valadez's case will proceed to trial on an expedited basis, as California Code of Civil Procedure section 36 requires.

3. **_Second_**, modifying the PI Order ensures that Mr. Valadez's case is heard during his lifetime. It is undisputed that Mr. Valadez has less than five months to live and had no sources of exposure to asbestos other than from Johnson's Baby Powder. Further, Mr. Valadez's case is pending in State Court, which routinely handles asbestos talc cases and affords dying plaintiffs an expedited trial setting. The Debtor omits these key facts from its responsive filing and merely lumps Mr. Valadez with other Enjoined Talc Claimants. As a result, Debtor argues that a protracted estimation process that will conclude by June 2023 prevents Mr. Valadez's case from languishing in State Court and on appeal for several years. This is wrong because Debtor ignores the facts. This is also improper because whether "cause" exists to modify the PI Order is a fact-driven analysis based on "'***the totality of the circumstances in each particular case***.'" *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 129-130 (Bankr. D.N.J. 2003) (emphasis added). And the totality of the circumstances here warrants modification of the PI Order so that Mr. Valadez is allowed to see his case completed while he is still alive. *Looney v. Superior Court*, 16 Cal.App.4th 521, 532, fn. 12 (Cal. App. 2d Dist. 1993).

4. **_Third_**, modifying the PI Order allows Mr. Valadez to gather and preserve critical evidence in support of his claims against Non-Debtors. "A stay of indefinite duration in the absence of pressing need is [an] abuse of discretion." *Landis v. North Amer. Co.*, 299 U.S. 247, 254-255 (1936). Here, the clear damage to Mr. Valadez is "the hardship of being forced to wait for an indefinite and…a lengthy time before [his] causes are heard." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983). Mr. Valadez is dying from the very disease that has led to the filing of his Motion to Lift Stay and this Reply. The PI Order bars Mr. Valadez from starting his

3176664.2                                    2

personal-injury action, including discovering, preserving, and compelling the production of critical evidence and testimony for the future. This creates irreparable injury because of the risk of lost evidence due to the passage of time. Hence, this Court should modify the PI Order because it seriously impairs Mr. Valadez's efforts to obtain and preserve evidence, whether from Non-Debtors or third parties.

5. *Fourth,* modifying the PI Order does not adversely affect Debtor or Non-Debtors. Debtor **concedes** that modifying the PI Order has no adverse effect on Non-Debtors. As to Debtor, modifying the PI Order likewise does not adversely affect it because Mr. Valadez is pursuing claims against Non-Debtors only, which is a "well-settled" basis for "granting relief from the automatic stay for 'cause'" *In re Mid-Atlantic*, 304 B.R. at 130. And any claimed indemnification between Debtor and any Non-Debtor has no impact on Debtor's reorganization because the indemnification "would be treated like any pre-petition, unsecured claim." *In Re: All Seasons Resort, Inc.*, 79 B.R. 901, 905 (C.D. Cal. 1987); 11 U.S.C. § 502(e)(1)(B). In contrast, continuing the PI Order will irreparably harm Mr. Valadez because he will be dead by the time this bankruptcy case is resolved.

6. Debtor's reliance on generalities, rather than facts specific to Mr. Valadez's claims against Non-Debtors, is legally and factually flawed. Accordingly, Mr. Valadez requests that this Court deny any further extension of the PI Order so that he may proceed with litigating his claims against Non-Debtors, and for such other relief to which he is entitled.

**FACTUAL BACKGROUND**

**I.    Mr. Valadez's Pericardial Mesothelioma Will Soon Take His Life.**

7. Mr. Valadez is 23 years old and suffering from pericardial mesothelioma. [Dkt. 2348-13, at ¶¶ 6, 12.]

8. Pericardial mesothelioma is aggressive cancer with a grave prognosis that is universally fatal. [Dkt. 2348-13, at ¶¶ 6, 12.] Both of Mr. Valadez's treating physicians at Stanford University Hospital have opined that there is substantial medical doubt that he will be alive beyond late November or early December 2022. [Dkt. 2348-13 at ¶ 13; Dkt. 2469-3 at ¶¶ 4-7.]

9. The mesothelioma and any treatments related to it have caused Mr. Valadez severe physical and mental suffering. [Dkt. 2348-1 at ¶¶ 12-17.] Physically, Mr. Valadez experienced nausea/vomiting, loss of appetite, severe chest pain and tightness, anemia, persistent food regurgitation, shortness of breath, discomfort, fatigue, mouth sores, nonproductive cough, body aches, and chronic back pain. [Dkt. 2348-9 at ¶ 9; Dkt. 2348-13 at ¶¶ 7-9, 14; Dkt. 2469-3 at ¶¶ 5, 10.] Mentally, the mesothelioma has caused Mr. Valadez great anxiety and depression. [Dkt. 2348-9 at ¶ 9; Dkt. 2348-10 at ¶ 10; Dkt. 2348-13 at ¶ 10; Dkt. 2469-3 at ¶¶ 9, 14.]

10. To date, Mr. Valadez has undergone two cycles of chemotherapy, cardiac surgery, and two cycles of immunotherapy. [Progress Notes 7/15/22, Exh. A to Satterley Decl.] His various hospital admissions total 28 days. [*Id.*] His oncologic history for June and July 2022 is as follows:

| Date(s) | Description of Treatment/Course |
| --- | --- |
| May 31-June 4, 2022 | Hospital admission at Stanford Cancer Center because of shortness of breath caused by worsening effusions. Mr. Valadez is not able to undergo thoracentesis. He also experienced catatonia and was treated with Ativan and Amantadine. |
| June 7, 2022 | Was admitted to the emergency department for shortness of breath. CT scan showed "**worsening findings**" because of "larger and more complex bilateral loculated pleural effusions, right pleural fluid more loculated," and multiple loculated pericardial masses." |
| June 11-20, 2022 | Hospital admission at Stanford Cancer Center for shortness of breath. "No further interventions from thoracic surgery available for loculated pleural effusions." Mr. Valadez's doctors had a "detailed conversation" with him "**regarding overall poor prognosis**," "goals of care," and "palliative medicine." |
| June 24, 2022 | The second cycle of immunotherapy is administered. |

| Date(s) | Description of Treatment/Course |
|---|---|
| July 15, 2022 | Third cycle or immunotherapy. Mr. Valadez's treating oncologist, Dr. Mohana Roy, said that this dose was given at the request of the family. However, she was not optimistic about further treatment: "if worsening clinical status beyond this, **I do not think further cancer-directed treatment would make sense**." |

[*Id.* at 2-4, 9 (emphasis added).]

**II.     Mr. Valadez's Only Known Exposure to Asbestos Was from Johnson's Baby Powder**

11.     Since birth on September 23, 1998, Mr. Valadez had virtually lifelong, daily exposures to Johnson's Baby Powder talc. [Dkt. 2348-9 at ¶¶ 4-5; Dkt. 2348-10 at ¶¶ 3-6.]

12.     Both Mr. Valadez and his mother, Anna Camacho, attest that they do not recall any circumstance in which they would have been in or around any dusty environments other than through their use of Johnson's Baby Powder. [Dkt. 2348-9 at ¶ 7; Dkt. 2348-10 at ¶ 9.]

13.     Mr. Valadez's treating oncologist, Dr. Mohana Roy, took his social history. [Dkt. 2469-3 at ¶ 9.] Dr. Roy noted that Mr. Valadez's mother "reports using large amounts of baby powder (Johnson and Johnson) in [Mr. Valadez's] childhood." [*Id.* and Exh. F thereto.] Dr. Roy also stated that there are "no other exposures to hair salon products, chemicals in labs," and "no clear asbestos exposure" from attending school "in an old building." [*Id.*]

14.     According to his genetic testing results, Mr. Valadez's mesothelioma was not caused by any genetic defect. [Dkt. 2469-3 at ¶ 8.]

15.     Dr. Dean Felsher, a professor at the Stanford University School of Medicine and presently the school's Associate Chief in the Division of Oncology, along with Mr. Valadez's treating physicians at Stanford University Hospital, are of the opinion that prior exposure to asbestos, including those found in Johnson's Baby Powder, causes pericardial mesothelioma. [Dkt. 2348-13 at ¶ 18; Dkt. 2348-15 at ¶ 9; Dkt. 2469-3 at ¶¶ 15-17.]

16. Hence, the undisputed evidence before this Court is that the legal cause of Mr. Valadez's asbestos-caused pericardial mesothelioma stems from his use and others' use of Johnson's Baby Powder, as opposed to alternative exposures to asbestos or a genetic defect.

**III. Given Mr. Valadez's Failing Health, the State Court Will likely Expedite His Case to Trial.**

17. On June 15, 2022, pursuant to this Court's order, Mr. Valadez filed his complaint in State Court. [6/14/22 Tr. at 139:2-16; Complaint, Exh. B to Satterley Decl.]

18. Each of the Non-Debtors was served with the summons and complaint. [Proofs of Service of Summons and Complaint on Non-Debtors, Exh. C to Satterley Decl.]

19. If this Court lifts the stay and allows Mr. Valadez to prosecute his claims against Non-Debtors in State Court, then Mr. Valadez would promptly move for a preferential trial setting under California Code of Civil Procedure section 36 and request a trial date less than 120 days from the date of the order granting preference. [Dkt. 2469-1 at ¶¶ 8-11.]

20. Based on California law and the experience of Mr. Valadez's counsel litigating asbestos cases in State Court, it is virtually certain that the asbestos judge will grant Mr. Valadez's motion for preference because of the undisputed, clear, and convincing evidence that there is substantial medical doubt of his survival beyond six months. [Dkt. 2469-1 at ¶¶ 8-11.]

## DISCUSSION

21. The PI Order, filed on March 7, 2022, allows Mr. Valadez to "seek relief from any of [its] provisions…for cause shown." [Dkt. 1635 at ¶ 7.]

22. Since the PI Order was filed, the parties now have more information on the speed by which Debtor and J&J intend to resolve the bankruptcy case. About three months after the PI Order was filed, Debtor proposed that the parties engage in a "two-phase" estimation process that would run now through June 2023, including a year of discovery and a two-week trial to make

"findings" regarding Debtor's liability to talc claimants, including Mr. Valadez. [Dkt. 2473 at 7-12.] As noted on the record, this Court is "prepared to take any reasonable steps to process any settlement that could be reached, and move forward with a consensual plan if there were agreement." [7/6/22 Tr. at 5:6-13.] For several reasons lifting the stay imposed by the PI Order on Mr. Valadez's case is a viable solution to give value to the claim of other talc claimants, to propel this case forward from the stasis it is in presently, and protect Mr. Valadez's constitutional right to a jury trial.

I. **Allowing Mr. Valadez to Prosecute His Case Aids in Mediation Efforts and Estimation.**

23. Debtor argues that there "is no basis to modify the PI Order" even if the parties are at an impasse during the mediation process. [Dkt. 2631 at 10-11.] According to Debtor, only a protracted estimation process will promote the prospects for settlement. [Dkt. 2726 at ¶ 1.] Debtor is wrong.

24. A jury trial in Mr. Valadez's case will assist in mediation efforts and help establish an estimation mechanism. The parties dispute the asbestos content of Johnson's Baby Powder. On the one hand, Mr. Valadez in his Motion to Lift Stay submitted substantial evidence showing how J&J's knowledge and conduct exposed him to carcinogenic asbestos found in Johnson's Baby Powder. [Dkt. 2348-1 at 6-25 and evidence cited therein.] In response, Debtor calls this evidence "misleading" and "conjured up." [Dkt. 2429 at 6.] As a result of the parties' divergent positions, a jury trial on these issues will aid the interest of creditors because it will assist in mediation efforts and help establish an estimation mechanism if and when a trust is created. As the court recognized in *Mid-Atlantic*, "permitting the state court action to proceed would not prejudice Mid-Atlantic's creditors since resolution of the issues before the state court must be addressed and damages, if

3176664.2        7

any, fixed so that the extent of creditors' claims are known." *In re Mid-Atlantic*, 304 B.R. at 130-131.

25. Further, the resolution of Mr. Valadez's case will occur well before Debtor's target date of June 2023 for the conclusion of the estimation process. Unlike other state and federal courts, California statutorily affords dying plaintiffs like Mr. Valadez a preferential trial setting. Cal. Code Civ. Proc. § 36. The undisputed, clear, and convincing medical evidence shows that there is substantial medical doubt about Mr. Valadez's survival beyond November or December 2022. [Dkt. 2348-13, at ¶ 18; Dkt. 2469-3 at ¶ 17.] Mr. Valadez has filed and served Non-Debtors with the summons and complaint. [Exhs. B and C to Satterley Decl.] If this Court modifies the PI order and allows Mr. Valadez's case to proceed in State Court, Mr. Valadez will immediately move for a preferential trial setting to occur no later than 120 days (if not less) from the date of the order granting preference. Cal. Code. Civ Proc. § 36(c)(1).

**II.  Modifying the PI Order Ensures That Mr. Valadez's Case Is Heard During His Lifetime.**

26. Debtor omits from its response any mention of the unique circumstances of Mr. Valadez's case. This is misleading and improper. Indeed, Debtor omits from its response the undisputed fact that Mr. Valadez's personal-injury action against Non-Debtors involves a young mesothelioma plaintiff who has less than five months to live and had no sources of exposure to asbestos other than from Johnson's Baby Powder. [Dkt. 2348-9 at ¶¶ 2-7; Dkt. 2348-10 at ¶¶ 2-9; Dkt. 2348-13 at ¶¶ 2-13, 16-18; Dkt. 2348-15 at ¶¶ 2-9; Dkt. 2348-11 at ¶¶ 14-28; Dkt. 2649-3 at ¶¶ 2-14, 16-17.] Mr. Valadez also has filed suit in California, which is a state that statutorily entitles dying plaintiffs like him to an expedited and preferential trial setting under Code of Civil Procedure section 36. Thus, Debtor's attempt to lump Mr. Valadez with the 430 mesothelioma claimants and 38,000 ovarian cancer claimants does not withstand scrutiny.

27. By claiming that Mr. Valadez's case is not meaningfully different from any other talc case against Non-Debtors, Debtor then argues that Mr. Valadez's case will take "years to complete." [Dkt. 2631 at ¶ 30.] This argument lacks merit for several reasons.

28. First, Debtor ignores that the "cause" showing required under section 362 of the Bankruptcy Code and referenced in the PI Order is a fact-driven analysis. The "Bankruptcy Code does not define the term 'for cause,' leaving courts to 'consider what constitutes cause based on ***the totality of the circumstances in each particular case***.'" *In re Mid-Atlantic*, 304 B.R. at 129-130 (emphasis added). Indeed, the "term 'cause' is viewed by many courts as a 'broad and flexible concept'" and a "bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause." *Id.*, citing *In re Rosen*, 208 B.R. 345, 356 (D.N.J.1997). Thus, Debtor's argument is contrary to established case law that this Court must determine "cause" under the PI Order on a case-by-case basis. *Matter of Henry*, 173 B.R. 878, 882 (Bankr. D.N.J. 1993).

29. Second, Debtor omits from its response that there is substantial medical doubt of Mr. Valadez's survival beyond November or December 2022. [Dkt. 2348-13 at ¶ 18; Dkt. 2469-3 at ¶ 17.] In addition to his federal and state constitutional right to a jury trial, Mr. Valadez also has a statutory right under California Code of Civil Procedure section 36 to participate in his case before he dies or becomes incapacitated and to have his case heard during his lifetime. *Looney,* 16 Cal.App.4th at 532, fn. 12. Even assuming arguendo that a properly drafted and approved reorganization plan somehow preserves Mr. Valadez's Seventh Amendment jury rights, it is all but assured that Mr. Valadez will not be alive by the time the Third Circuit resolves the appeal of the PI Order and this Court establishes a trust. See, e.g., *In re Pittsburgh Corning Corp.*, BR 00-22876 JKF, 2013 WL 2299620, at *2 (Bankr. W.D. Pa. May 24, 2013) (13 years for trust to be

established); see also *In re Bestwall LLC*, 606 B.R. 243 (Bankr. W.D.N.C. 2019) (no trust has been established since debtor sought Chapter 11 protection in 2017).

30. Third, modifying the PI Order would result in more expedited treatment and recovery of Mr. Valadez's claims in State Court and on appeal. As previously discussed, dying plaintiffs, like Mr. Valadez, are entitled to a trial date "not more than 120 days from" the date of the order granting preference. Cal. Code Civ. Proc. § 36(f). The rationale for granting calendar preference to certain litigants applies equally to appellate proceedings. *Warren v. Schecter*, 57 Cal.App.4th 1189, 1198 (Cal. App. 2d Dist. 1997).

31. Thus, if this Court modifies the PI Order and allows Mr. Valadez's case to proceed in State Court, Mr. Valadez's case will be set for trial by November or December 2022, if not earlier. Because Mr. Valadez's two treating doctors have provided undisputed, clear, and convincing medical evidence that raises substantial medical doubt about his survival beyond November or December 2022 [Dkt. 2348-13, at ¶ 18; Dkt. 2469-3 at ¶ 17], it would be an abuse of discretion for the State Court to deny his request for a preferential trial. *See, e.g., Fox v. Superior Court,* 21 Cal.App.5th 529, 535-536 (Cal. App. 1st Dist. 2018) (holding that denial of the plaintiff's motion for preference under California Code of Civil Procedure section 36(a) was an abuse of discretion because of the plaintiff's uncontroverted health status). Further, the State Court is very familiar with asbestos talc cases about Johnson's Baby Powder and has already ruled on numerous motions in limine and page-and-line designations of key witnesses that the parties typically file in such cases. [Dkt. 2348-2 at ¶ 12.] Accordingly, modifying the PI Order is warranted.

**III.    Modifying the PI Order Allows Mr. Valadez to Gather and Preserve Evidence.**

32. The PI Order also precludes Mr. Valadez from obtaining and preserving evidence. For example, the treating hospitals refuse to release Mr. Valadez's pathology blocks for testing

absent a court order or subpoena. [Dkt. 2348-2 at ¶ 11.] The blocks are needed for tissue digestion, which helps prove the cause of Mr. Valadez's mesothelioma because they may confirm the presence in his tissues of asbestos, talc, and other talc-associated mineral particles commonly found in Johnson's Baby Powder. [Dkt. 2348-21 at ¶ 19.] Also, Mr. Valadez cannot compel witnesses to testify about facts pertinent to his claims against Non-Debtors.

33.  "A stay of indefinite duration in the absence of pressing need is [an] abuse of discretion." *Landis,* 299 U.S. at 254-255. Here, the clear damage to Mr. Valadez is "the hardship of being forced to wait for an indefinite and…a lengthy time before [his] causes are heard." *Gold,* 723 F.2d at 1076. As the Third Circuit recognized in *Gold,* "we cannot ignore the fact that plaintiffs and crucial witnesses are dying, often from the very diseases that have led to these actions. We are not persuaded that the hardship imposed on defendants by proceeding to trial without Johns-Manville or our legitimate interest in judicial economy is sufficient to force these plaintiffs to forbear until the bankrupt defendants emerge from the reorganization proceedings. The defendants may be seriously inconvenienced by the resumption of the actions against them; under the standard announced in *Landis*, however, the balance of hardship weighs in favor of the injured plaintiffs." *Id.*

34.  The reasoning in *Gold* is equally applicable here. The PI Order prevents Mr. Valadez from prosecuting his personal-injury action and collecting critical evidence and testimony for the future. This creates irreparable injury because of the risk of lost evidence due to the passage of time. Accordingly, the PI Order seriously impairs Mr. Valadez's efforts to obtain and preserve evidence, whether from Non-Debtors or third parties. Without an active personal-injury action, Mr. Valadez cannot compel the production of evidence and testimony.

**IV.  Modifying the PI Order Has No Adverse Effect on Debtor and Non-Debtors.**

35.  Debtor **concedes** that modifying the PI Order has no adverse effect on Non-Debtors. [Dkt. 2429 at 15, fn. 14 (Mr. Valadez's "focus on the alleged lack of adverse effect on the Non-Debtors is beside the point. In considering the [Motion to Lift Stay], the focus is on the irreparable harm that would result to the Debtor if the stay were to be lifted.").]

36.  Modifying the PI Order also has no adverse effect on Debtor. First, Mr. Valadez is pursuing claims against Non-Debtors only, which is a "well-settled" basis for "granting relief from the automatic stay for 'cause'" *In re Mid-Atlantic*, 304 B.R. at 130. Second, any valid indemnification between Debtor and any Non-Debtor has no impact on Debtor's reorganization because the indemnification "would be treated like any pre-petition, unsecured claim." *In Re: All Seasons*, 79 B.R. at 905; 11 U.S.C. § 502(e)(1)(B).

## CONCLUSION

37.  For the reasons and based on the authorities set forth above, Mr. Valadez respectfully requests that this Court modify the PI Order so he may prosecute his personal-injury action against Non-Debtors in State Court, and for such other relief to which he is entitled.

Respectfully submitted:

KAZAN, McCLAIN, SATTERLEY &
GREENWOOD, A Professional Law Corporation

- and -

SAIBER LLC
*Counsel for Anthony Hernandez Valadez*

By:   /s/ John M. August
       JOHN M. AUGUST

DATED: July 19, 2022