UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1(b)**

**TRIF & MODUGNO LLC**
Louis Modugno
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Telephone:  973-547-3611
Facsimile:  973-554-1220
lmodugno@tm-firm.com

**KATTEN MUCHIN ROSENMAN LLP**
Steven J. Reisman
Shaya Rochester (*admitted pro hac vice*)
Terence P. Ross (*admitted pro hac vice*)
50 Rockefeller Plaza
New York, New York 10020
sreisman@katten.com
srochester@katten.com
tross@katten.com

**MENDES & MOUNT LLP**
Eileen McCabe (*admitted pro hac vice*)
Stephen Roberts (*admitted pro hac vice*)
750 Seventh Avenue
New York, New York 10019
eileen.mccabe@mendes.com
stephen.roberts@mendes.com

*Attorneys for the New Jersey Coverage Action Plaintiff-Insurers*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>**Hearing Date: July 26, 2022** |

**NEW JERSEY COVERAGE ACTION PLAINTIFF-INSURERS' SUPPLEMENTAL
REPLY IN FURTHER SUPPORT OF MOTION FOR AN ORDER
(I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO
THE NEW JERSEY COVERAGE ACTION OR, IN THE ALTERNATIVE,
(II) GRANTING RELIEF FROM THE AUTOMATIC STAY TO ALLOW
THE NEW JERSEY COVERAGE ACTION TO PROCEED**

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is
501 George Street, New Brunswick, New Jersey 08933.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTUAL BACKGROUND.............................................................................. 6

ARGUMENT ............................................................................................................................. 7

I.     THE BALANCE OF HARMS WEIGHS IN FAVOR OF LIFTING THE AUTOMATIC STAY. ........................................................................................... 8

     A.     The Harm To The Moving Insurers Is Significant................................................ 8

     B.     The Estate's Alleged Harm Does Not Outweigh The Significant Harms To The Moving Insurers........................................................................................... 10

     C.     Lifting the Automatic Stay Will Benefit—Not Harm—The Debtor. ................... 13

II.     ALTERNATIVELY, THIS COURT SHOULD LIFT THE AUTOMATIC STAY FOR CERTAIN LIMITED PURPOSES. ........................................................ 14

NOTICE ................................................................................................................................... 16

CONCLUSION........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACandS, Inc. v. Aetna Cas. & Sur. Co.,*
    666 F.2d 819 (3d Cir. 1981)..................................................................................................15

*Criterion Claim Sols. v. Scottsdale Indem. Co.,*
    No. 20-6225, 2021 WL 794787 (D.N.J. Mar. 1, 2021) ..........................................................15

*In re Campanile,*
    No. 17-24902, 2019 WL 968095 (Bankr. D.N.J. Feb. 25, 2019), *aff'd sub nom.*
    *Eagle One Fed. Credit Union v. Campanile*, No. 19-cv-284 (RMB), 2020 WL
    416182 (D.N.J. Jan. 27, 2020) ...............................................................................................8

*In re MCSi, Inc.,*
    371 B.R. 270 (S.D. Ohio 2004) .............................................................................................13

*In re Metal Center, Inc.,*
    31 B.R. 458 (Bankr. D. Conn. 1983) .....................................................................................13

*In re Quigley Co., Inc.*,
    361 B.R. 105 (Bankr. S.D.N.Y. 2007)...................................................................................13

*In re Quigley Co., Inc.*,
    361 B.R. 723 (Bankr. S.D.N.Y. 2007)...................................................................................13

*In re Thors,*
    No. 15-17602(JNP), 2017 WL 3314236 (Bankr. D.N.J. June 29, 2017)................................10

*Litton Indus., Inc. v. IMO Indus.,*
    200 N.J. 372 (2009) ...............................................................................................................10

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984)...................................................................................................12

*Queenie, Ltd. v. Nygard Int'l,*
    321 F.3d 282 (2d Cir. 2003)...................................................................................................12

**Statutes**

11 U.S.C. § 362(d)(1) ................................................................................................................. 8

**Other Authorities**

*Notice to the Bar – Expansion of Complex Business Litigation Program
   Resources*  NEW JERSEY COURTS,
   https://www.njcourts.gov/notices/2019/n190222a.pdf?c=Vaw..................................................6

The plaintiff-insurers (the "Moving Insurers")[1] in the lawsuit, *Atlanta International Insurance Company, et al. v. Johnson & Johnson, et al.*, Case No. MID-L-003563-19, currently pending in the Superior Court of New Jersey (the "New Jersey Coverage Action"), hereby file this supplemental reply (the "Supplemental Reply") in further support of the relief requested in their *Motion for an Order (i) Confirming That The Automatic Stay Does Not Apply To The New Jersey Coverage Action Or, In The Alternative, (ii) Granting Relief From The Automatic Stay To Allow The New Jersey Coverage Action To Proceed* [Docket No. 1491] (the "Motion")[2] and their *Reply in Further Support of Motion for an Order (i) Confirming That The Automatic Stay Does Not Apply To The New Jersey Coverage Action Or, In The Alternative, (ii) Granting Relief From The Automatic Stay To Allow The New Jersey Coverage Action To Proceed* [Docket No. 1866] (the "Reply").[3]

## PRELIMINARY STATEMENT

1.      On March 30, 2022, this Court carried the Motion to the June 14, 2022 hearing date to provide a "***short*** stay to allow the bankruptcy mediation process to move forward." March 30, 2022 Hr'g. Tr. at 65:12-13 (emphasis added).[4]  The hearing on the Motion was then further

---

[1] The Moving Insurers are: Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company; Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen).

[2] Republic Indemnity Company of America, a party in the New Jersey Coverage Action, joined the relief requested in the Motion.

[3] The Moving Insurers hereby incorporate by reference the Motion and the Reply.

[4] *See also Order Regarding Motions of New Jersey Coverage Action Plaintiff-Insurers and Travelers Casualty and Surety Company to Allow New Jersey Coverage Action to Proceed* [Docket No. 2023].

adjourned on two more occasions.[5]  First, at the Court's request to "trust the process" of mediation and to give the mediation additional time to play out, the parties agreed to further adjourn the hearing to July 6, 2022.[6]  Second, due to a scheduling conflict for the Court, the Court further adjourned the hearing to July 26, 2022.[7]  In all, since the original hearing on the Motion on March 30, 2022, the Debtor and J&J have been afforded a breathing spell of more than 100 days to broker a settlement through mediation with the TCC, FTCR and other constituencies in this Chapter 11 case.[8]  Those mediation sessions, however, have not resulted in a settlement, and to the contrary, the mediation has now reached an "impasse," as the Court itself has acknowledged.  *See* July 6, 2022 Hr'g. Tr. at 4:9.

2.      The lack of progress in the mediation is critical to evaluating the Moving Insurers' renewed request to lift the automatic stay to allow the New Jersey Coverage Action to go forward. In its March 30, 2022 decision to carry the Motion, the Court noted that in its view the "paramount" concern in the Chapter 11 case was the ongoing mediation and that allowing the New Jersey Coverage Action to proceed could harm that mediation.  *See* March 30, 2022 Hr'g. Tr. At 65:1-17 (Court stating that ordering a short stay of the New Jersey Coverage Action would allow "all

---

[5] In fact, the hearing on the Motion was adjourned on three occasions.  The original hearing on the Motion scheduled on March 8, 2022 was adjourned – at the Debtor's request – to March 30, 2022.  *See Stipulation and Agreed Order Regarding Adjournment of New Jersey Coverage Action Plaintiff-Insurers' Motion for an Order (I) Confirming That the Automatic Stay Does Not Apply to the New Jersey Coverage Action or, in the Alternative, (II) Granting Relief From the Automatic Stay to Allow the New Jersey Coverage Action to Proceed* [Docket No. 1592].

[6] *See New Jersey Coverage Action Plaintiff-Insurers' Statement and Reservation of Rights Regarding the Motion for an Order (i) Confirming That The Automatic Stay Does Not Apply To The New Jersey Coverage Action Or, In The Alternative, (ii) Granting Relief From The Automatic Stay To Allow The New Jersey Coverage Action To Proceed* [Docket No. 2430]; *see also* Court docket entry dated June 8, 2022 (adjourning the hearing on the Motion to July 6, 2022).

[7] *See Order Adjourning Matters* [Docket No. 2609]; *see also Agreed Order Extending Deadline for Written Submissions Related to Certain Insurers' Lift Stay Motions* [Docket No. 2640].

[8] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

counsel involved including the co-mediators, to focus on something that this Court views as being paramount").

3.       At the same time, however, the Court noted that staying the New Jersey Coverage Action until June 2022 would give the Court and other parties in interest "a sense of whether there will be a negotiated resolution." *See id.* at 66:3-7. The Court was correct in this regard. We now know that it is highly unlikely that there will be negotiated resolution anytime soon in this Chapter 11 case. *See, e.g.,* July 6, 2022 Hr'g. Tr. at 4:9-10 (Court noting that "we've reached an impasse in getting a consensus among the parties" to the mediation); *Opposition of Aylstock, Witkin, Kreis & Overholtz, PLLC to Continuation of Preliminary Injunction and Stay of Actions Against Non-Debtors* (the "AWKO Opposition"), at 3 [Docket No. 2568] ("[T]here does not appear to be any realistic prospect of a swift resolution and conclusion to this bankruptcy case. Indeed, the Debtor all but concedes that it will not be able to confirm a consensual plan any time soon, having proposed estimation proceedings that will continue through at least June 2023.").

4.       Given the lack of progress in the mediation and the unlikelihood of a negotiated resolution in the Chapter 11 case in the foreseeable future, the Court's "paramount" basis for ordering a "short" stay – *i.e.*, to allow certain parties to focus on the mediation – no longer exists. As such, the Court should allow the New Jersey Coverage Action to resume. Indeed, the Motion, filed on February 15, 2022, has been now pending with this Court for more than five months. Had the Motion been granted back in March 2022, the parties to the New Jersey Coverage Action could have fully briefed at least one of the summary judgment motions ripe for adjudication in the coverage litigation.

5.       Against this factual backdrop and based on the current realities of this Chapter 11 case, the Moving Insurers respectfully submit that the balance of harms weigh in favor of lifting

the automatic stay to allow the New Jersey Coverage Action to go forward.  More specifically,

there are at least five harms that the Moving Insurers will continue to incur if the New Jersey

Coverage Action remains stayed:

- First and foremost, keeping the automatic stay in place deprives the Moving Insurers of their contractually bargained for rights under the Policies' claims control provisions (the "Claims Control Provisions"), which provide, for example, that the insurers "shall have full control over the defense and settlement of claims or potential claims."  Motion, ¶ 14.  Despite these Claims Control Provisions, the Moving Insurers **have been excluded from all of the mediation sessions** with the Debtor, J&J, the TCC and FTCR, and have had only a few nominal meetings with the mediators.  To the extent that the Moving Insurers continue to be excluded from those mediation sessions, J&J will continue to breach the Claims Control Provisions and, as such, the claims subject to that breach will not be entitled to coverage.

- Second, keeping the automatic stay in place increases the risk that the Debtor, J&J, the TCC and FTCR (or a subset of the foregoing parties) will seek to impose a global settlement upon the Moving Insurers, despite the fact that many coverage issues will still need to be resolved by the New Jersey Superior Court in the New Jersey Coverage Action.  The risk of such a settlement being imposed on the Moving Insurers is not theoretical, given that the Moving Insurers have been excluded from all the mediation sessions among those parties to date.

- Third, the TCC is demanding all discovery produced by the Moving Insurers in the New Jersey Coverage Action and, in response, the Debtor and J&J intend to produce all written discovery requests and responses to and from each party in the New Jersey Coverage Action.  It is grossly unfair and prejudicial to the Moving Insurers that they are being forced to respond to discovery demands in the Chapter 11 case, but at the same time, are stayed from seeking their own discovery in the New Jersey Coverage Action.

- Fourth, the longer the automatic stay remains in place, the longer the duration for which J&J may contend that the Moving Insurers owe prejudgment interest for the delay in resolving the New Jersey Coverage Action, should J&J be successful in that litigation.

- Fifth, as the months continue to pass, evidence—and, in particular, third-party evidence—will be lost without allowing discovery to advance in the New Jersey Coverage Action.

6.    Separately, allowing the New Jersey Coverage Action to go forward will **benefit**—

not harm—the Debtor and its estate.  Specifically, granting relief from the stay will allow the

Moving Insurers to, at a minimum, take critical discovery on, and potentially resolve, the issues

relating to trigger, allocation and Middlesex (the "Middlesex Issues"), which could *increase* any

available and responsive insurance coverage limits.  *See* Travelers Casualty & Surety Company's

Motion for Relief from the Automatic Stay [Docket No. 1488-1] ("Travelers' Mot.") at 2, 5.  The

availability of coverage from Middlesex may also impact any potential future settlement.

7.      Allowing the New Jersey Coverage Action to go forward also benefits the Debtor

and its estate because doing so would expedite resolution of important insurance coverage issues

that must be resolved.  If, for example, the Debtor, J&J, the TCC and FTCR (or a subset of the

foregoing parties) want insurance rights to be part of a global settlement, critical and intricate

issues regarding any potential indemnity or reimbursement for adverse verdicts and settlements,

and defense costs, including those already incurred by J&J, as well the issues attendant to the

Claims Control Provisions, must be resolved by the New Jersey Superior Court.  Otherwise, the

insurance component of any global settlement will be premised on assumptions (at best) or outright

errors (at worst).[9]  Furthermore, even if insurance plays no role in this Chapter 11 case, the

insurance coverage issues in the New Jersey Coverage Action will still need to be resolved.

Accordingly, in any scenario, these coverage issues must be resolved and, thus, the stay should be

lifted to allow the New Jersey Coverage Action to proceed.

8.      In the event that this Court is not inclined to grant the Motion in full, the Moving

Insurers respectfully submit that this Court apply its own reasoning at the May 24, 2022 hearing

and "be open to argument and suggestions on all of these issues" and embrace "some creativity"

by lifting the stay in part.  May 24, 2022 Hr'g. Tr. at 5:6-10.  Issues regarding the Claims Control

Provisions and related issues are ripe for adjudication.  The Middlesex Issues can move along

---

[9] The Moving Insurers dispute that insurance should constitute any part of such a global settlement.

apace, and there would certainly be no burden to the Debtor in this regard if this Court is inclined

to allow the TCC to obtain discovery on the Middlesex Issues.  *See* Letter dated July 15, 2022 to

Court from TCC special insurance counsel.  [Docket No. 2719].  As such, if the Court is not

inclined at this time to lift the automatic stay in *toto*, the Court should lift the stay in part to allow

certain discrete issues in the New Jersey Coverage Action to proceed forward.

### RELEVANT FACTUAL BACKGROUND[10]

9.     The New Jersey Coverage Action seeks declaratory relief regarding the rights and

obligations of the parties to certain insurance policies (collectively, the "Policies") issued to

Johnson & Johnson ("J&J"), including (i) whether underlying insurance policies have been

properly exhausted; (ii) whether all prerequisites to coverage have been met; (iii) whether the

requested coverage is subject to any exclusions; (iv) what allocation methodology applies to

defense and indemnity costs; and (v) what claims are subject to adjustments in the interest of public

policy.  *See* Motion, ¶ 17; Reply, ¶ 7.

10.     The New Jersey Coverage Action is assigned to the Superior Court of New Jersey's

Complex Business Litigation Program, which "ensur[es] that the courts provide an efficient and

effective venue for resolution of business disputes."  *Notice to the Bar – Expansion of Complex*

*Business   Litigation   Program   Resources*," New Jersey Courts, available at

https://www.njcourts.gov/notices/2019/n190222a.pdf?c=Vaw.  The New Jersey Coverage Action

has advanced accordingly.  *See* Reply ¶ 12.  For instance, the Moving Insurers served third-party

subpoenas prior to the Petition Date and are ready to file a motion for summary judgment on issues

regarding the Claims Control Provisions.

---

[10] The Moving Insurers refer this Court to the Motion and Reply for a complete recitation of the relevant
factual background.

11.     As noted, the Claims Control Provisions provide, among other things, that the applicable Moving Insurer "shall have full control over the defense and settlement of all claims or potential claims."  Motion, ¶ 14; Reply, ¶ 8.  Prior to the Petition Date, J&J breached the Claims Control Provisions by settling numerous talc-related claims without any involvement by the Moving Insurers.  Since the Petition Date, the J&J entities have continued to breach the Claims Control Provisions by excluding the Moving Insurers from numerous mediation sessions.   The New Jersey Coverage Action seeks a ruling that no coverage is available for any talc-related claims subject to these breaches.

12.     The New Jersey Coverage Action also seeks a declaration regarding the effect, if any, of J&J's captive insurance company, Middlesex's, Endorsement No. 32.   Among other endorsements, Endorsement No. 32 was executed *post-hoc* in an attempt to reduce Middlesex's potentially available limits.

13.     On May 16, 2022, this Court entered its *Amended Order Establishing Mediation Protocol* [Docket No. 2300].   Under Paragraph 3 of that Order, certain insurers, including the Moving Insurers, are named as "Mediation Parties".   Despite being Mediation Parties, the Moving Insurers have been excluded from all of the mediation sessions among the Debtor, J&J, the TCC and FTCR, and have had only a few nominal meetings with the mediators.

## ARGUMENT

14.     As set forth in the Motion, the Reply and this Supplemental Reply, the Court should lift the automatic stay because the balance of the harms weighs in favor of lifting the stay.[11]

---

[11] For the reasons articulated in the Motion and the Reply, the Moving Insurers dispute that the automatic stay applies to the New Jersey Coverage Action.  In light of the Court's ruling that the stay applies, however, the Moving Insurers focus this Supplemental Reply on the balance of the harms.  *See* March 30, 2022 Hr'g. Tr. at 63-64.

## I. THE BALANCE OF HARMS WEIGHS IN FAVOR OF LIFTING THE AUTOMATIC STAY.

15. Section 362(d)(1) of the Bankruptcy Code requires a court to grant relief from the stay "such as by terminating, annulling, modifying, or conditioning such stay for cause . . ." 11 U.S.C. § 362(d)(1). The Court decides whether "cause" exists by assessing three factors: "(1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) [w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) [t]he probability of the creditor prevailing on the merits." *In re Campanile*, No. 17-24902, 2019 WL 968095, at *2 (Bankr. D.N.J. Feb. 25, 2019) (citations omitted) *aff'd sub nom. Eagle One Fed. Credit Union v. Campanile*, No. 19-cv-284, 2020 WL 416182 (D.N.J. Jan. 27, 2020); *see also* March 30, 2022 Hr'g. Tr. at 64:1-4 ("the automatic stay applies. . . the more apt question is whether or not there is cause for stay relief. And primarily the Court is looking [at] weighing the respective harms.").

16. Under this balancing analysis, it is clear the stay should be lifted because the harm to the Moving Insurers if the stay is not lifted exceeds the harm to the Debtor's estate if it is lifted.

### A. The Harm To The Moving Insurers Is Significant.

17. As set forth above, there are five specific harms that the Moving Insurers will incur if the stay is not lifted.

18. *First*, subsequent to the Court's decision to carry the Motion to June 14, 2022 and then again to July 26, 2022, the J&J entities have continued to breach the Claims Control Provisions. In contravention of these Claims Control Provisions and despite the Moving Insurers' continued objections, the J&J entities have not fulfilled their contractual obligation to give the Moving Insurers full control over the defense and settlement of all claims or potential claims.

Indeed, the Moving Insurers have been excluded from all of the mediation sessions among the Debtor, J&J, the TCC and FTCR.

19.     *Second*, the automatic stay harms the Moving Insurers by creating the risk that the Debtor, J&J, the TCC, FTCR and other constituents in this Chapter 11 case (or a subset of the foregoing parties) will try to force a global settlement on the Moving Insurers *before* critical insurance coverage issues have been resolved, including a judicial determination regarding the Claim Control Provisions issue.  The New Jersey Superior Court is the proper forum to resolve that critical, threshold issue and should be tasked with doing so before the Moving Insurers are goaded to contribute to any settlement.  Extrapolating upon the lack of progress in the mediation, there will be ample time for the New Jersey Superior Court to "pick off various issues, small and large, and prioritize while the process goes forward" to encourage a resolution.  *See* May 24, 2022 Hr'g. Tr. at 4:12-16 (providing the mediators with guidance on how best to expedite a mediated resolution).

20.     *Third*, the TCC is demanding all discovery produced by the Moving Insurers, and the Debtor and J&J intend to produce written discovery requests and responses to and from each party in the New Jersey Coverage Action.  As a threshold matter, the TCC's request, which furthers the Debtor's counterclaims in the New Jersey Coverage Action, arguably violates the Bankruptcy Code's automatic stay.  March 30, 2022 Hr'g. Tr. at 65:18-23 ("Under the Third Circuit decision in *St. Croix*,  [Debtor's counterclaims] are stayed as well because the underlying action is against the debtor and, therefore, I would be disinclined to grant stay relief to allow counterclaims to go forward at the same time so as to not prejudice the insurers."); *id.* at 42:14-22 (Debtor's counsel conceding that J&J's counterclaims against the Moving Insurers in the New Jersey Coverage Action are subject to the automatic stay).  But, irrespective of any violation of the automatic stay,

it is grossly unfair and prejudicial to the Moving Insurers that they are being forced to respond to discovery demands, but at the same time, are stayed from seeking their own discovery in the New Jersey Coverage Action.

21.    *Fourth*, if the J&J parties prevail in the New Jersey Coverage Action, they may attempt to recover prejudgment interest on any amounts owed under the Policies. *See Litton Indus., Inc. v. IMO Indus.*, 200 N.J. 372, 390 (2009) ("[T]he award of prejudgment interest in a contract case is within the sound discretion of the trial court."). This could include a request for interest during the time in which the New Jersey Coverage Action was stayed. *See* Reply, ¶ 36. Thus, a continuation of the automatic stay could make the Moving Insurers liable for increased costs outside of the Moving Insurers' control.[12]

22.    *Fifth*, a continuation of the stay harms the Moving Insurers because there is a likelihood that evidence relevant to the New Jersey Coverage Action will be lost or spoiled. *See* Reply, ¶ 37. This is especially true with respect to third-party entities who are (or will be) the recipient of subpoenas. *Id.*

**B.    The Estate's Alleged Harm Does Not Outweigh The Significant Harms To The Moving Insurers.**

23.    The substantial prejudice to the Moving Insurers from the continuation of the automatic stay shifts the burden to the Debtor to demonstrate its harm is more significant. *See In re Thors*, No. 15-17602(JNP), 2017 WL 3314236, at *3 (Bankr. D.N.J. June 29, 2017) ("the movant has the initial burden to show that relief is appropriate, but the Debtor has the ultimate

---

[12] To be clear, the Moving Insurers dispute that any potential covered entity is entitled to interest on amounts allegedly owed and contend that the equities would compel a finding that interest is not warranted. J&J, however, may very well argue otherwise.

burden of proof to show that the protections of the automatic stay should remain in place"). The Debtor has failed to meet this burden.

24.     As noted above, at the March 30, 2022 hearing, the Court explained that, in its view, the "paramount" concern in the Chapter 11 case was the ongoing mediation among the Debtor, J&J, the TCC and FTCR, and that allowing the New Jersey Coverage Action to go forward could harm their mediation. *See* March 30, 2022 Hr'g. Tr. at 65:1-17. At the same time, however, the Court noted that by staying the New Jersey Coverage Action for another 90 days, the Court and other parties in interest would "get a sense of whether there will be a negotiated resolution." *See id.* at 66:3-7.

25.     With the benefit of hindsight, we now know that a negotiated resolution in this Chapter 11 case in the foreseeable future is highly unlikely. *See, e.g.,* July 6, 2022 Hr'g. Tr. at 4:9-10 (Court noting that "we've reached an impasse in getting a consensus among the parties" to the mediation); June 14, 2022 Hr'g. Tr. at 144:10-11 (Debtor's own lead counsel "recogniz[ing] that there's a ways to go" with respect to the mediation); *The Official Committee of Talc Claimants' Status Report Dated June 10, 2022*, at 8  [Docket No. 2465] ("Regrettably, little has occurred in these 8 months that brings the injured claimants closer to  recovering just compensation for their damages."); AWKO Opposition, at 3 ("[T]here does not appear to be any realistic prospect of a swift resolution and conclusion to this bankruptcy case. Indeed, the Debtor all but concedes that it will not be able to confirm a consensual plan any time soon, having proposed estimation proceedings that will continue through at least June 2023.").

26.     In short, there is no reasonable chance of a negotiated resolution any time soon in this Chapter 11 case. As such, the Court's paramount basis for ordering a short stay of the New Jersey Coverage Action at the March 30, 2022 hearing – *i.e.*, to allow certain parties to focus on

the mediation – no longer exists.  Stated in terms of the balancing test, the fundamental prejudice articulated by the Court that the estate would suffer if the stay were lifted does not exist or, at a minimum, has been significantly diminished by the fact that the mediation has not been successful thus far.

27.    In its Objection to the Motion filed in March, the Debtor advanced a separate argument regarding the alleged prejudice it would face if the stay were lifted.  Specifically, the Debtor alleged that it would be subjected to "risk of collateral estoppel and record taint" if the expected or intended injury issue ("E&I Issue") proceeds in the New Jersey Coverage Action. Debtor Obj., ¶ 35; *see also id.* at ¶¶ 36-38.  That argument, however, is foreclosed by both the facts and the law.  The issues pending in the New Jersey Coverage Action are distinct and should be decided by the New Jersey Superior Court simultaneously with this Chapter 11 case.  The New Jersey Coverage Action concerns the applicable coverage, if any, for talc-related claims against J&J, as well as issues informing the proper allocation among any responsible insurers.  Reply, ¶¶ 7-9.  The New Jersey Coverage Action does not seek to resolve the merits of the underlying talc-related claims.

28.    Moreover, even if there were a risk of collateral estoppel and record taint, such risk would not constitute a sufficient basis to stay the New Jersey Coverage Action.  *See, e.g., Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984) ("Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor.  Since Manville is not a party to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel."); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) ("We have not located any decision applying the stay to a nondebtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential

12

effect of an adverse decision."); *In re Quigley Co., Inc.*, 361 B.R. 105 (Bankr. S.D.N.Y. 2007) (lifting the automatic stay despite the Debtor's position that lifting the stay would lead to the possibility of inconsistent outcomes); *In re MCSi, Inc.*, 371 B.R. 270, 275 (S.D. Ohio 2004) (holding that risk of record taint is not a sufficient basis for staying litigation against non-debtors); *In re Metal Center, Inc.*, 31 B.R. 458, 463 (Bankr. D. Conn. 1983) (same); *see also* Reply, ¶ 40 (citing additional authority).

### C.    Lifting the Automatic Stay Will Benefit—Not Harm—The Debtor.

29.    The Debtor also overlooks the fact that lifting the automatic stay to allow the New Jersey Coverage Action to proceed will benefit, not harm, the Debtor and its estate.  In order to understand the extent, if any, to which any insurer must provide coverage for the underlying claims, the parties need a resolution of the issues pending in the New Jersey Coverage Action, including the issues attendant to the Claims Control Provisions.  *See In re Quigley Co., Inc.*, 361 B.R. 723, 743-45 (Bankr. S.D.N.Y. 2007) (finding that lifting the automatic stay "will have a greater chance of encouraging a complete resolution" because the pending litigation will clarify whether and to what extent insurance proceeds are available to fund a global settlement). Otherwise, the parties will agree to a settlement based on potentially inaccurate assumptions regarding any insurance component.

30.    Indeed, that the TCC is demanding all discovery produced in the New Jersey Coverage Action demonstrates that the TCC is investigating whether insurers are required to provide coverage for claims settled in this Chapter 11 case.  The answer to that question cannot be resolved if the New Jersey Coverage Action remains stayed.  Moreover, that the TCC is making these discovery demands in the context of the mediation demonstrates that allowing the New Jersey Coverage Action to proceed could in fact advance the mediation.

31.     Furthermore, irrespective of whether the Debtor and the talc claimant constituencies seek to include insurance rights in any mediation and/or global settlement, the bottom-line is that the insurance coverage issues pending in the New Jersey Coverage Action will need to be resolved.  Given that reality, it simply does not make any sense to further stay the resolution of those coverage issues.

32.     Lastly, any alleged harm to the Debtor is belied by its admission that "[a] resolution of the NJ Coverage Action is not essential to a resolution of this Chapter 11 Case."  Debtor Obj., ¶ 48; *see also Declaration of Adam C. Silverstein in Support of Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (I) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Proc. Docket No. 142-13], Exh. 1, Transcript of Proceedings dated Oct. 22, 2021 at 116:20-118:3, *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000 (In re: LTL Management LLC)*, No. 21-30589-JCW (Bankr. W.D.N.C) (testimony of Mr. Kim: "Don't worry. We have plenty of money to satisfy these judgments.  And so our insurance isn't relevant.").  If, in the Debtor's view, it can satisfy its talc-related liabilities irrespective of the outcome in the New Jersey Coverage Action, then there is no reason to hold resolution of that litigation in abeyance.  Reply, ¶ 46.

## II.     ALTERNATIVELY, THIS COURT SHOULD LIFT THE AUTOMATIC STAY FOR CERTAIN LIMITED PURPOSES.

33.     If this Court is disinclined to lift the stay in its entirety, the Moving Insurers submit that this Court should invoke its "own responsibility . . . to move the case forward . . . [with] some creativity" by lifting the stay to permit certain limited proceedings in the New Jersey Coverage

Action.  May 24, 2022 Hr'g. Tr. at 5:6-10.  Specifically, the stay should be modified to allow the Moving Insurers to pursue:

- the Middlesex Issues;

- the Claims Control Provision issue in the Policies and related issues;

- resolution of the E&I Issue, including summary judgment; and/or

- third-party discovery, including with respect to the third-party subpoenas already served in the New Jersey Coverage Action.

34.    The Middlesex Issues are integral to the New Jersey Coverage Action and are relevant to this Chapter 11 case such that a "determination much in advance" of a settlement is important.  *See, e.g., ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981) ("The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement."); *Criterion Claim Sols. v. Scottsdale Indem. Co.*, No. 20-6225, 2021 WL 794787, at *8 (D.N.J. Mar. 1, 2021) (same).  Specifically, Middlesex contracted to provide the J&J entities with insurance coverage for its talc liabilities, and as such, Middlesex may potentially be responsible to cover a significant amount of claims.  Travelers' Mot. at 2, 5.  Thus, lifting the stay to permit discovery targeting the primary and excess insurance in all years that Middlesex issued policies, the Middlesex policies, and related amendments, and whether those policies have been exhausted, as J&J asserts, may ultimately increase the value of the Debtor's estate.  Reply, ¶ 50.

35.    As this Court reminded the parties, "it's incumbent upon the estate professionals, as well as the estate fiduciaries, the Committee members, to recognize that they have obligations. . . [and] the value in working for the estate as a whole, as opposed to individualized interests."

May 4, 2022 Hr'g. Tr. at 30:11-23.  All estate fiduciaries should see the potential value in this endeavor and support the Moving Insurers.

36.     Further, permitting discovery on the Middlesex Issues will bolster the parties' ability to implement any potential global resolution by providing greater clarity into the proper allocation, if any, among responsible insurers.  Reply, ¶ 50.

37.     Notably, the Moving Insurers would not be starting from square one if this Court lifts the stay to allow the Moving Insurers to pursue discovery concerning the Middlesex Issues. Before the Petition Date, the Moving Insurers served discovery directly on Middlesex, as well as on third parties likely to have Middlesex-related information, including Middlesex's managing agent.  The Moving Insurers would resume pursuing this discovery and would propound discovery related to the requests already served.

## NOTICE

38.     Notice of this Supplemental Reply will be given to: (a) counsel for the Debtor; (b) the Office of the United States Trustee for the District of New Jersey; (c) counsel to J&J and the other New Jersey Coverage Action Defendants; (d) counsel to the TCC; (e) counsel to the FTCR; and (f) any other party that has requested electronic notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1.  The Moving Insurers submit that, under the circumstances, no other further notice is required.  A copy of this Motion is available on the website maintained by the Debtor's Claims and Noticing Agent, Epiq, at https://dm.epiq11.com/case/ltl.

*[remainder of page intentionally omitted]*

## CONCLUSION

For the foregoing reasons, the Moving Insurers respectfully request the Court to enter an order (i) granting relief from the stay pursuant to Section 362(d) of the Bankruptcy Code to allow either the New Jersey Coverage Action to proceed or, alternatively, to allow the Moving Insurers to continue seeking discovery from third parties, to pursue the Middlesex Issues and Claims Control Provision issue in the Policies and related issues, and to pursue resolution of the E&I Issue, including summary judgment, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: July 19, 2022

*/s/ Louis A. Modugno*
Louis A. Modugno
**TRIF & MODUGNO LLC**
89 Headquarters Plaza North Tower, Suite 1201
Morristown, New Jersey 07960
Email: lmodugno@tm-firm.com

Steven J. Reisman
Shaya Rochester (*pro hac vice*)
Terence P. Ross (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020
Email: sreisman@katten.com
      srochester@katten.com
      tross@katten.com

Eileen McCabe (*pro hac vice*)
Stephen Roberts (*pro hac vice*)
**MENDES & MOUNT LLP**
750 Seventh Avenue
New York, New York 10019
Email: eileen.mccabe@mendes.com
      stephen.roberts@mendes.com

*Co-Counsel to the Moving Insurers*