Marc E. Wolin, Esq.
mwolin@saiber.com
John M. August, Esq.
jaugust@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401

-and-

Joseph D. Satterley, Esq.
jsatterley@kazanlaw.com
Denyse F. Clancy, Esq.
dclancy@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000

*Counsel for Audra Johnson*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LTL MANAGEMENT LLC, | : | Case No. 21-30589 |
| | : | |
| Debtor. | : | **Hearing Date and Time:** |
| | : | July 26, 2022 at 10 a.m. |

**REPLY OF AUDRA JOHNSON IN SUPPORT OF OBJECTION TO CONTINUING THE
<u>PRELIMINARY INJUNCTION TO NON-DEBTORS</u>**

3176834.1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................4

    I.    It Is Undisputed That Ms. Johnson Is Afflicted with Peritoneal Mesothelioma. ........................................................................................................4

    II.    Presently, Ms. Johnson Has Breathing Difficulties and Lacks the Means to Treat Them. ..................................................................................................4

    III.    Ms. Johnson's Only Known Exposure to Asbestos Was from Johnson's Baby Powder. ............................................................................................................5

    IV.    Given Her Health, Ms. Johnson May Move to Expedite Her Case to Trial. ...........6

DISCUSSION .........................................................................................................................6

    I.    Allowing Ms. Johnson to Prosecute Her Case Aids in Mediation Efforts and Estimation. ..............................................................................................................7

    II.    Modifying the PI Order Ensures That Ms. Johnson's Case Is Heard During Her Lifetime. ..........................................................................................................8

    III.    Modifying the PI Order Allows Ms. Johnson to Gather and Preserve Evidence. ..............................................................................................................10

    IV.    Modifying the PI Order Has No Adverse Effect on Debtor and Non-Debtors. ................................................................................................................11

CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re: All Seasons Resort, Inc.*,
  79 B.R. 901 (C.D. Cal. 1987) ....................................................................................3, 12

*In re Bestwall LLC*,
  606 B.R. 243 (Bankr. W.D.N.C. 2019) (no trust has been established since
  debtor sought Chapter 11 protection in 2017) ...........................................................9

*Gold v. Johns-Manville Sales Corp.*,
  723 F.2d 1068 (3d Cir. 1983)....................................................................................2, 11

*Matter of Henry*,
  173 B.R. 878 (Bankr. D.N.J. 1993) ...........................................................................9

*Landis v. North Amer. Co.*,
  299 U.S. 247 (1936)....................................................................................2, 10, 11

*Looney v. Superior Court*,
  16 Cal.App.4th 521 (Cal. App. 2d Dist. 1993) ...................................................2, 9

*In re Mid-Atlantic Handling Sys., LLC*,
  304 B.R. 111 (Bankr. D.N.J. 2003) .............................................................. *passim*

*In re Pittsburgh Corning Corp.*,
  BR 00-22876 JKF, 2013 WL 2299620 (Bankr. W.D. Pa. May 24, 2013) ...............9

*Warren v. Schecter*,
  57 Cal.App.4th 1189 (Cal. App. 2d Dist. 1997) ...................................................10

**Statutes**

11 U.S.C. § 502(e)(1)(B) ............................................................................3, 12

Bankruptcy Code section 362 ...................................................................................9

California Code of Civil Procedure § 36 .........................................................2, 6, 8, 9

California Code of Civil Procedure § 36(c)(1) ........................................................8

California Code of Civil Procedure § 36(f) ...........................................................10

COBRA...........................................................................................................5

**Other Authorities**

Seventh Amendment ................................................................................................................9

Audra Johnson in the above-captioned case, by and through her counsel Kazan, McClain, Satterley & Greenwood, A Professional Law Corporation, and local counsel Saiber LLC, hereby submits this reply ("Reply") in support of her objection to continuing the Preliminary Injunction entered in this matter [Dkt. 1635] (the "PI Order") against non-debtors Johnson & Johnson ("J&J") and retailers The Vons Companies, Inc., Safeway Inc., Ralphs Grocery Company, Target Corporation, Foot Locker Specialty, Inc., and Mac Frugal's Bargains . Close-Outs Inc. (collectively, "Retailers").[1]

## INTRODUCTION

1.     Ms. Johnson requests that this Court modify the PI Order to allow her case to proceed to trial in the Superior Court of California, County of Alameda (the "State Court") against J&J and the Retailers (collectively, "Non-Debtors"). Contrary to the arguments of Debtor LTL Management LLC ("Debtor"), the claims of Ms. Johnson, a single mother afflicted with terminal mesothelioma whose only known exposure to asbestos was through Johnson's Baby Powder talc, heavily favor the modification of the PI Order.

2.     *First*, allowing Ms. Johnson's case to proceed in State Court aids in mediation efforts and estimation. Debtor steadfastly denies that Johnson's Baby Powder ever contained asbestos or asbestiform fibers. Ms. Johnson and other claimants have substantial evidence to the contrary. Given the parties' divergent positions, a jury trial on these issues in Ms. Johnson's case will aid the interest of creditors because it will assist in mediation efforts and help establish an estimation mechanism if and when a trust is created. This will occur well before June 2023, which is the date Debtor believes its proposed protracted estimation process will conclude, because

---

[1] In support of this Reply, Ms. Johnson also submits her declaration ("Johnson Decl.") and the Declaration of Joseph Satterley ("Satterley Decl."). She also incorporates her moving and reply papers filed in support of her Motion for an Order Granting Relief from the Preliminary Injunction ("Motion to Lift Stay"), filed under Docket Nos. 2349 and 2470, respectively.

Ms. Johnson's case will proceed to trial on an expedited basis, as California Code of Civil Procedure section 36 requires.

3. *Second*, modifying the PI Order ensures that Ms. Johnson's case is heard during her lifetime. It is undisputed that Ms. Johnson has mesothelioma and had no sources of exposure to asbestos other than from Johnson's Baby Powder. She now suffers from breathing difficulties that preclude her from doing the most basic of tasks. She will continue to experience them in the foreseeable future unless she undergoes extensive and expensive surgery that she cannot afford. Further, Ms. Johnson's case is pending in State Court, which routinely handles asbestos talc cases and affords dying plaintiffs an expedited trial setting. The Debtor omits these key facts from its responsive filing and merely lumps Ms. Johnson with other Enjoined Talc Claimants. As a result, Debtor argues that a protracted estimation process that will conclude by June 2023 prevents Ms. Johnson's case from languishing in State Court and on appeal for several years. This is wrong because Debtor ignores the facts. This is also improper because whether "cause" exists to modify the PI Order is a fact-driven analysis based on "'***the totality of the circumstances in each particular case***.'" *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 129-130 (Bankr. D.N.J. 2003) (emphasis added). And the totality of the circumstances here warrants modification of the PI Order so that Ms. Johnson is allowed to see her case completed while she is still alive and able to participate. *Looney v. Superior Court*, 16 Cal.App.4th 521, 532, fn. 12 (Cal. App. 2d Dist. 1993).

4. *Third*, modifying the PI Order allows Ms. Johnson to gather and preserve critical evidence in support of her claims against Non-Debtors. "A stay of indefinite duration in the absence of pressing need is [an] abuse of discretion." *Landis v. North Amer. Co.*, 299 U.S. 247, 254-255 (1936). Here, the clear damage to Ms. Johnson is "the hardship of being forced to wait for an indefinite and…a lengthy time before [her] causes are heard." *Gold v. Johns-Manville Sales*

*Corp.,* 723 F.2d 1068, 1076 (3d Cir. 1983). Ms. Johnson is suffering from the very disease that has led to the filing of her Motion to Lift Stay and this Reply. The PI Order bars Ms. Johnson from starting her personal-injury action, including discovering, preserving, and compelling the production of critical evidence and testimony for the future. This creates irreparable injury because of the risk of lost evidence due to the passage of time. Hence, this Court should modify the PI Order because it seriously impairs Ms. Johnson's efforts to obtain and preserve evidence, whether from Non-Debtors or third parties.

5.     ***Fourth,*** modifying the PI Order does not adversely affect Debtor or Non-Debtors. Debtor **concedes** that modifying the PI Order has no adverse effect on Non-Debtors. As to Debtor, modifying the PI Order likewise does not adversely affect it because Ms. Johnson is pursuing claims against Non-Debtors only, which is a "well-settled" basis for "granting relief from the automatic stay for 'cause'" *In re Mid-Atlantic*, 304 B.R. at 130. And any claimed indemnification between Debtor and any Non-Debtor has no impact on Debtor's reorganization because the indemnification "would be treated like any pre-petition, unsecured claim." *In Re: All Seasons Resort, Inc.*, 79 B.R. 901, 905 (C.D. Cal. 1987); 11 U.S.C. § 502(e)(1)(B). In contrast, continuing the PI Order will irreparably harm Ms. Johnson because she may not be alive by the time this bankruptcy case is resolved.

6.     Debtor's reliance on generalities, rather than facts specific to Ms. Johnson's claims against Non-Debtors, is legally and factually flawed. Accordingly, Ms. Johnson requests that this Court deny any further extension of the PI Order so that she may proceed with litigating her claims against Non-Debtors, and for such other relief to which she is entitled.

**FACTUAL BACKGROUND**

**I.      It Is Undisputed That Ms. Johnson Is Afflicted with Peritoneal Mesothelioma.**

7.      Ms. Johnson is 55 years old and a single mother to her 15-year-old daughter Marley. [Dkt. 2349-8 at ¶ 2.]

8.      On September 17, 2021, Ms. Johnson was diagnosed with peritoneal mesothelioma. [Johnson Decl. at ¶ 3.]

9.      On December 8, 2021, Ms. Johnson underwent tumor debulking with HIPEC. [Johnson Decl. at ¶ 4.] During this procedure, cancer was removed from Ms. Johnson's diaphragm. [*Id.*] That procedure has caused several complications that have worsened Ms. Johnson's quality of life. [*Id.* at ¶¶ 4-5.]

10.     Malignant mesothelioma is a terminal and aggressive cancer. [Dkt. 2349-10 at ¶ 180.] The interval between diagnosis and death is often short. [*Id.*] The risk of adverse effects, including death, the probability that severe complications of treatment will occur, and the likelihood of opportunistic infections or unexpected rapid tumor progression, is very high. [*Id.*] Mesothelioma is incurable and any treatment or surgery related to it is merely palliative. [*Id.*]

**II.     Presently, Ms. Johnson Has Breathing Difficulties and Lacks the Means to Treat Them.**

11.     For the last three years, Ms. Johnson was a loan processor for Sprout Mortgage LLC ("Sprout"). [Johnson Decl. at ¶ 2.] She relies on her employer's health insurance to cover her mesothelioma-related treatments and care. [*Id.* at ¶¶ 2-9.]

12.     On July 6, 2022, Sprout abruptly shut its doors and Ms. Johnson was laid off. [Johnson Decl. at ¶ 11.] She was caught off-guard by the announcement, which was held one day before payday. [*Id.*] Ms. Johnson also learned that her health insurance was retroactively

terminated effective May 2022. [*Id.*] She cannot afford any Continuation of Health Coverage, or COBRA, because it is too expensive. [*Id.*]

13. Because she lacks health insurance, Ms. Johnson cannot undergo much-needed surgery to correct her elevated or paralyzed diaphragm. [Johnson Decl. at ¶ 10.] This issue stems from complications related to her HIPEC surgery and has caused Ms. Johnson to experience breathing difficulties that have negatively impacted her daily activities. [*Id.* at ¶¶ 4-8 and Exhs. A-B thereto.] For example, Ms. Johnson can barely walk one block and constantly needs oxygen to breathe or otherwise recover. [*Id.* at ¶ 8.] Ms. Johnson's breathing issues impair her ability to care for Marley or participate in her activities. [*Id.*] In addition to her breathing difficulties, Ms. Johnson experiences symptoms related to her mesothelioma, including dry cough, decreased mobility, trouble sleeping, increased fatigue, body pain, and extreme chest pressure. [*Id.*]

14. Ms. Johnson's surgery was scheduled for July 20, 2022. [Johnson Decl. at ¶ 12.] Because she lacks health insurance, Ms. Johnson cannot undergo surgery and her breathing difficulties will continue for the foreseeable future. [*Id.*]

**III.    Ms. Johnson's Only Known Exposure to Asbestos Was from Johnson's Baby Powder.**

15. Ms. Johnson had virtually lifelong, daily exposures to Johnson's Baby Powder talc. [Dkt. 2349-8 at ¶¶ 4-5.] She often used Johnson's Baby Powder because it was effective in combating sweat and odors. [*Id.* at ¶ 6.] She went through at least two bottles of Johnson's Baby Powder per month.[*Id.*] She purchased Johnson's Baby Powder from Retailers. [*Id.*]

16. Ms. Johnson's bottle of Johnson's Baby Powder contained asbestos and asbestiform talc. [Dkt. 2349-16 at ¶¶ 27-28.] Specifically, Ms. Johnson's container of Johnson's Baby Powder had 3,240,000 asbestiform talc fibers per gram of talc powder, and with heavy liquid sample preparation, and analyzed by TEM, showed a chrysotile concentration of 210,000 bundles

per gram. [*Id.* at ¶ 27.] When bought new, Ms. Johnson's 9-ounce bottle of Johnson's Baby Powder would have had 8,300,000,000 talc fibers and 54,000,000 chrysotile bundles. [*Id.*]

17. Ms. Johnson attests that she does not recall any circumstance in which she would have been in or around any dusty environments other than through her use of Johnson's Baby Powder. [Dkt. 2349-8 at ¶ 9.]

18. Hence, the undisputed evidence before this Court is that the legal cause of Ms. Johnson's asbestos-caused mesothelioma stems from her use and others' use of Johnson's Baby Powder, as opposed to alternative exposures to asbestos.

**IV.    Given Her Health, Ms. Johnson May Move to Expedite Her Case to Trial.**

19. On June 15, 2022, pursuant to this Court's order, Ms. Johnson filed her complaint in State Court. [6/14/22 Tr. at 139:2-16; Complaint, Exh. A to Satterley Decl.]

20. Each of the Non-Debtors was served with the summons and complaint. [Proofs of Service of Summons and Complaint on Non-Debtors, Exh. B to Satterley Decl.]

21. If this Court modifies the PI Order and lifts the stay to allow Ms. Johnson to prosecute her claims against Non-Debtors in State Court, then Ms. Johnson may move for a preferential trial setting under California Code of Civil Procedure section 36 and request a trial date within 120 days from the date of the order granting preference. [Dkt. 2470-1 at ¶¶ 8-10.]

## DISCUSSION

22. The PI Order, filed on March 7, 2022, allows Ms. Johnson to "seek relief from any of [its] provisions…for cause shown." [Dkt. 1635 at ¶ 7.]

23. Since the PI Order was filed, the parties now have more information on the speed by which Debtor and J&J intend to resolve the bankruptcy case. About three months after the PI Order was filed, Debtor proposed that the parties engage in a "two-phase" estimation process that would run now through June 2023, including a year of discovery and a two-week trial to make

"findings" regarding Debtor's liability to talc claimants, including Ms. Johnson. [Dkt. 2473 at 7-12.] As noted on the record, this Court is "prepared to take any reasonable steps to process any settlement that could be reached, and move forward with a consensual plan if there were agreement." [7/6/22 Tr. at 5:6-13.] For several reasons lifting the stay imposed by the PI Order on Ms. Johnson's case is a viable solution to give value to the claim of other talc claimants, to propel this case forward from the stasis it is in presently, and protect Ms. Johnson's constitutional right to a jury trial.

**I.    Allowing Ms. Johnson to Prosecute Her Case Aids in Mediation Efforts and Estimation.**

24.    Debtor argues that there "is no basis to modify the PI Order" even if the parties are at an impasse during the mediation process. [Dkt. 2631 at 10-11.] According to Debtor, only a protracted estimation process will promote the prospects for settlement. [Dkt. 2726 at ¶ 1.] Debtor is wrong.

25.    A jury trial in Ms. Johnson's case will assist in mediation efforts and help establish an estimation mechanism. The parties dispute the asbestos content of Johnson's Baby Powder. On the one hand, Ms. Johnson in her Motion to Lift Stay submitted substantial evidence showing how J&J's knowledge and conduct exposed her to carcinogenic asbestos found in Johnson's Baby Powder. [Dkt. 2349-1 at 10-17 and evidence cited therein.] In response, Debtor calls this evidence "misleading" and "conjured up." [Dkt. 2429 at 6.] As a result of the parties' divergent positions, a jury trial on these issues will aid the interest of creditors because it will assist in mediation efforts and help establish an estimation mechanism if and when a trust is created. As the court recognized in *Mid-Atlantic*, "permitting the state court action to proceed would not prejudice Mid-Atlantic's creditors since resolution of the issues before the state court must be addressed and damages, if

3176834.1                                              7

any, fixed so that the extent of creditors' claims are known." *In re Mid-Atlantic*, 304 B.R. at 130-131.

26. Further, the resolution of Ms. Johnson's case will occur well before Debtor's target date of June 2023 for the conclusion of the estimation process. Unlike other state and federal courts, California statutorily affords terminally ill plaintiffs like Ms. Johnson a preferential trial setting. Cal. Code Civ. Proc. § 36. Ms. Johnson has filed and served Non-Debtors with the summons and complaint. [Exhs. A and B to Satterley Decl.] If this Court modifies the PI order and allows Ms. Johnson's case to proceed in State Court, Ms. Johnson may move for a preferential trial setting to occur no later than 120 days from the date of the order granting preference. Cal. Code. Civ Proc. § 36(c)(1).

## II. Modifying the PI Order Ensures That Ms. Johnson's Case Is Heard During Her Lifetime.

27. Debtor omits from its response any mention of the unique circumstances of Ms. Johnson's case. This is misleading and improper. Indeed, Debtor omits from its response the undisputed fact that Ms. Johnson's personal injury action against Non-Debtors involves a single mother suffering from mesothelioma who had no sources of exposure to asbestos other than from Johnson's Baby Powder. [Dkt. 2349-8 at ¶¶ 2-17.] Also, an analysis of Ms. Johnson's container of Johnson's Baby Powder shows that it contained asbestiform minerals. [Dkt. 2349-16 at ¶¶ 26-30.] Ms. Johnson has filed suit in California, which is a state that statutorily entitles terminally ill plaintiffs like her to an expedited and preferential trial setting under Code of Civil Procedure section 36. Thus, Debtor's attempt to lump Ms. Johnson with the 430 mesothelioma claimants and 38,000 ovarian cancer claimants does not withstand scrutiny.

28.     By claiming that Ms. Johnson's case is not meaningfully different from any other talc case against Non-Debtors, Debtor then argues that Ms. Johnson's case will take "years to complete." [Dkt. 2631 at ¶ 30.] This argument lacks merit for several reasons.

29.     First, Debtor ignores that the "cause" showing required under section 362 of the Bankruptcy Code and referenced in the PI Order is a fact-driven analysis. The "Bankruptcy Code does not define the term 'for cause,' leaving courts to 'consider what constitutes cause based on *the totality of the circumstances in each particular case*.'" *In re Mid-Atlantic*, 304 B.R. at 129-130 (emphasis added). Indeed, the "term 'cause' is viewed by many courts as a 'broad and flexible concept'" and a "bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause." *Id.*, citing *In re Rosen*, 208 B.R. 345, 356 (D.N.J.1997). Thus, Debtor's argument is contrary to established case law that this Court must determine "cause" under the PI Order on a case-by-case basis. *Matter of Henry*, 173 B.R. 878, 882 (Bankr. D.N.J. 1993).

30.     Second, Debtor makes no mention of Ms. Johnson's health and the myriad of complications she has been experiencing because of her mesothelioma. In addition to her federal and state constitutional right to a jury trial, Ms. Johnson also has a statutory right under California Code of Civil Procedure section 36 to participate in her case before she dies or becomes incapacitated and to have her case heard during her lifetime. *Looney,* 16 Cal.App.4th at 532, fn. 12. Even assuming arguendo that a properly drafted and approved reorganization plan somehow preserves Ms. Johnson's Seventh Amendment jury rights, it is all but assured that Ms. Johnson will not be alive by the time the Third Circuit resolves the appeal of the PI Order and this Court establishes a trust. See, e.g., *In re Pittsburgh Corning Corp.*, BR 00-22876 JKF, 2013 WL 2299620, at *2 (Bankr. W.D. Pa. May 24, 2013) (13 years for trust to be established); see also *In*

*re Bestwall LLC*, 606 B.R. 243 (Bankr. W.D.N.C. 2019) (no trust has been established since debtor sought Chapter 11 protection in 2017).

31. Third, modifying the PI Order would result in more expedited treatment and recovery of Ms. Johnson's claims in State Court and on appeal. As previously discussed, terminally ill plaintiffs, like Ms. Johnson, are entitled to a trial date "not more than 120 days from" the date of the order granting preference. Cal. Code Civ. Proc. § 36(f). The rationale for granting calendar preference to certain litigants applies equally to appellate proceedings. *Warren v. Schecter*, 57 Cal.App.4th 1189, 1198 (Cal. App. 2d Dist. 1997).

32. Thus, if this Court modifies the PI Order and allows Ms. Johnson's case to proceed in State Court, Ms. Johnson may promptly move for a preferential trial setting. Further, the State Court is very familiar with asbestos talc cases about Johnson's Baby Powder and has already ruled on numerous motions in limine and page-and-line designations of key witnesses that the parties typically file in such cases. [Dkt. 2349-2 at ¶ 12.] Accordingly, modifying the PI Order is warranted.

### III.    Modifying the PI Order Allows Ms. Johnson to Gather and Preserve Evidence.

33. The PI Order also precludes Ms. Johnson from obtaining and preserving evidence. For example, the treating hospitals refuse to release Ms. Johnson's pathology blocks for testing absent a court order or subpoena. [Dkt. 2349-2 at ¶ 11.] The blocks are needed for tissue digestion, which helps prove the cause of Ms. Johnson's mesothelioma because they may confirm the presence in her tissues of asbestos, talc, and other talc-associated mineral particles commonly found in Johnson's Baby Powder. [Dkt. 2349-14 at ¶¶ 14-19.] Also, Ms. Johnson cannot compel witnesses to testify about facts pertinent to her claims against Non-Debtors.

34. "A stay of indefinite duration in the absence of pressing need is [an] abuse of discretion." *Landis*, 299 U.S. at 254-255. Here, the clear damage to Ms. Johnson is "the hardship

of being forced to wait for an indefinite and…a lengthy time before [her] causes are heard." *Gold,* 723 F.2d at 1076. As the Third Circuit recognized in *Gold,* "we cannot ignore the fact that plaintiffs and crucial witnesses are dying, often from the very diseases that have led to these actions. We are not persuaded that the hardship imposed on defendants by proceeding to trial without Johns-Manville or our legitimate interest in judicial economy is sufficient to force these plaintiffs to forbear until the bankrupt defendants emerge from the reorganization proceedings. The defendants may be seriously inconvenienced by the resumption of the actions against them; under the standard announced in *Landis*, however, the balance of hardship weighs in favor of the injured plaintiffs." *Id.*

35. The reasoning in *Gold* is equally applicable here. The PI Order prevents Ms. Johnson from prosecuting her personal-injury action and collecting critical evidence and testimony for the future. This creates irreparable injury because of the risk of lost evidence due to the passage of time. Accordingly, the PI Order seriously impairs Ms. Johnson's efforts to obtain and preserve evidence, whether from Non-Debtors or third parties. Without an active personal-injury action, Ms. Johnson cannot compel the production of evidence and testimony.

**IV.    Modifying the PI Order Has No Adverse Effect on Debtor and Non-Debtors.**

36. Debtor **concedes** that modifying the PI Order has no adverse effect on Non-Debtors. [Dkt. 2429 at 15, fn. 14 (Ms. Johnson's "focus on the alleged lack of adverse effect on the Non-Debtors is beside the point. In considering the [Motion to Lift Stay], the focus is on the irreparable harm that would result to the Debtor if the stay were to be lifted.").]

37. Modifying the PI Order also has no adverse effect on Debtor. First, Ms. Johnson is pursuing claims against Non-Debtors only, which is a "well-settled" basis for "granting relief from the automatic stay for 'cause'" *In re Mid-Atlantic*, 304 B.R. at 130. Second, any valid indemnification between Debtor and any Non-Debtor has no impact on Debtor's reorganization

because the indemnification "would be treated like any pre-petition, unsecured claim." *In Re: All Seasons*, 79 B.R. at 905; 11 U.S.C. § 502(e)(1)(B).

## CONCLUSION

38. For the reasons and based on the authorities set forth above, Ms. Johnson respectfully requests that this Court modify the PI Order so she may prosecute her personal-injury action against Non-Debtors in State Court, and for such other relief to which she is entitled.

Respectfully submitted:

KAZAN, McCLAIN, SATTERLEY & GREENWOOD, A Professional Law Corporation

- and -

SAIBER LLC
*Counsel for Audra Johnson*

By:  /s/ John M. August
     JOHN M. AUGUST

DATED: July 19, 2022