# Exhibit A

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**06/15/2022 at 03:40:11 PM**
By: Cheryl Clark,
Deputy Clerk

1  Joseph D. Satterley (C.S.B. #286890)
       jsatterley@kazanlaw.com
2  Denyse F. Clancy (C.S.B. #255276)
       dclancy@kazanlaw.com
3  Ian A. Rivamonte (C.S.B. #232663)
       irivamonte@kazanlaw.com
4  KAZAN, McCLAIN, SATTERLEY & GREENWOOD
   A Professional Law Corporation
5  Jack London Market
   55 Harrison Street, Suite 400
6  Oakland, California 94607
   Telephone:  (510) 302-1000
7  Facsimile:   (510) 835-4913

8  Attorneys for Plaintiff

9           SUPERIOR COURT OF CALIFORNIA

10              COUNTY OF ALAMEDA

11  AUDRA JOHNSON,                          Case No.  22CV012814

12           Plaintiff,                     **COMPLAINT FOR PERSONAL INJURIES**

13      v.                                  **DEMAND FOR JURY TRIAL**

14  JOHNSON & JOHNSON;

15  FOOT LOCKER SPECIALTY, INC.,
    formerly known as F.W. WOOLWORTH
16  CO.;

17  MAC FRUGAL'S BARGAINS . CLOSE-
    OUTS INC., formerly known as PIC 'N'
18  SAVE CORPORATION;

19  RALPHS GROCERY COMPANY;

20  SAFEWAY INC., individually, and as
    successor-in-interest, parent, alter ego, and
21  equitable trustee of THE VONS
    COMPANIES, INC.;
22
    TARGET CORPORATION;
23
    THE VONS COMPANIES, INC.; and
24
    FIRST DOE through ONE-HUNDREDTH
25  DOE,

26           Defendants.

27

28  //

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

3152983.3

**EXHIBIT A**

## **GENERAL BACKGROUND AND OTHER ALLEGATIONS**

### **I.**

**The Plaintiff:** Audra Johnson is the physically injured Plaintiff. Her mesothelioma was caused by exposures to asbestos, asbestiform fibers, and asbestiform talc – collectively referred to herein as asbestos – for which Defendants bear responsibility.

### **II.**

**The Defendants:** All Defendants are listed in the case caption. The true names of the Defendants sued as DOE's are unknown to Plaintiff. Each Defendant was the agent, employee, or joint venturer of its co-defendants, and was acting in the full course and scope of the agency, employment, or joint venture.

### **III.**

**Alternate Entities:** All Defendants are individually liable for their own defective products and wrongful conduct; and some Defendants are liable for the defective products and wrongful conduct of their alternate entities. Each such Defendant is liable for the torts of each of its alternate entities because:

- there were express or implied agreements between the companies to transfer and assume the liabilities;

- the transactions between the companies amounted to a consolidation or merger;

- the purchasing company is a mere continuation of the seller;

- the transfer of assets to the purchasing company was for the fraudulent purpose of escaping liability for the seller's debts;

- strict products liability was transferred because (i) there was a virtual destruction of Ms. Johnson's remedies against the original manufacturer caused by the successor's acquisition of the business, (ii) the successor has the ability to assume the original manufacturer's risk-spreading role, and (iii) it is fair to require the successor to assume responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business; and

- the companies are alter egos because (i) there is such a unity of interest, ownership, and business operations between the companies that their separate personalities do not in reality exist, and (ii) there would be an inequitable result if the torts in question were treated as those of one company alone.

/ / /

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

The identities of the Defendants and their alternate entities are as follows:

| Defendant | Alternate Entity |
| --- | --- |
| FOOT LOCKER SPECIALTY, INC. | F.W. WOOLWORTH CO. |
| MAC FRUGAL'S BARGAINS . CLOSE-OUTS INC. | PIC 'N' SAVE CORPORATION |
| SAFEWAY INC. | THE VONS COMPANIES, INC. |

## IV.

**The Products:** For many years, Defendants and/or their predecessors have manufactured, sold, distributed, designed, formulated, developed standards for, prepared, processed, assembled, tested, listed, certified, marketed, advertised, packaged and/or labeled, and/or otherwise placed into the stream of commerce products that contain asbestos, asbestiform fibers, and/or asbestiform talc.

## V.

**Knowledge of Asbestos Hazards:** The following facts are illustrative, but not exhaustive, of the evolution of the knowledge of the health hazards of asbestos and what was known and knowable to Defendants:

1. Health hazards from asbestos exposure were identified in the 1890s. During this time, the Lady Inspector of Factories in Great Britain noted that individuals working with asbestos were suffering various lung injuries.

2. Defendants since the early 1900s possessed medical and scientific data that raised concerns regarding the presence of asbestos in talcum powder and that demonstrated the existence of health hazards to those exposed to asbestos-containing talcum powder products. Talc is a hydrous magnesium silicate, an inorganic material that is mined from the earth. Talc is used in the manufacture of goods such as paper, plastic, paint and coatings, rubber, food, electric cable, ceramics, and cosmetics. In its loose form and as used in consumer powder products, talc is known as "talcum powder."

3. Geologists and mining companies, including Defendants, have long known that the deposits in the earth that are associated with talc are also associated with the formation of asbestos. Asbestos is a commercial and legal term, rather than a geological or scientific term, referring to six now-regulated magnesium silicate minerals that occur in fibrous form, including the serpentine mineral chrysotile, and the amphibole minerals actinolite, anthophyllite, tremolite, amosite, and crocidolite. The United States Geological Survey on Commercial Talc production in 1965, as well as those dating back to the 1800s in the United States, note the presence of tremolite, anthophyllite, and chrysotile commonly among those minerals found within talc deposits.

4. As early as the 1920s, the term "asbestosis" was used to describe pulmonary fibrosis caused by asbestos exposure. Case reports in Great Britain and the

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

United States detailed asbestosis in various workers.

5.   By 1929, lawsuits for disability related to exposure to asbestos were filed against Johns Manville.

6.   In the late 1930s, case reports were published addressing the relationship between asbestos and cancer.

7.   Several reports, studies, and guidelines published as early as the 1930s, including California's Dust, Fumes, Vapors, and Gases Safety Orders, all recognized that asbestos is a dust which creates health hazards, and that certain precautions are required to mitigate human exposure to dust. Such measures include, but are not limited to, using water to suppress the dust at its source, as well as providing those who might be exposed to dust with adequate ventilation, showers, and changing facilities. These same measures that were recommended to protect workers from asbestosis in the 1930s would also have substantially reduced the risk that bystanders, household members, and other persons would contract mesothelioma from inhaling asbestos-containing dust that those who worked with and around asbestos and asbestos-containing products carried into their households on their person and personal effects. Defendants, and each of them, knew or should have known that anyone, including household members of those who used asbestos-containing products were at risk of developing an asbestos-related disease after inhaling dust from such asbestos-containing products.

8.   In 1931, the United Kingdom allowed workers to receive compensation for asbestosis.

9.   In March of 1933, Waldemar C. Dreesen of the United States Public Health Service reported to the National Safety Council the results of a study conducted among tremolite, talc, and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45 percent talc and 45 percent tremolite, and the National Safety Council stated, "[t]he results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers."

10.   As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicate of magnesium."

11.   In the September 1935 issue of National Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

12.   In 1936, California's Division of Industrial Safety issued Safety Orders establishing the standard of care for work with asbestos.

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

13.    Also in 1936, Illinois enacted legislation recognizing asbestosis as a compensable occupational disease under its Occupational Disease Act.

14.    By the 1940s, asbestos carcinogenicity was noted in reviews in fields of industrial medicine, cancer research, and pneumoconiosis.

15.    In 1946, the American Conference of Governmental Industrial Hygienists established a maximum allowable concentration for occupational exposure.

16.    During the 1940s and 1950s, asbestos hazards were discussed in popular magazines, including Scientific American (January 1949) and Newsweek (May 15, 1950), as well as the Encyclopedia Britannica (1952). On April 7, 1959, the Los Angeles Times and Wall Street Journal reported that California health officials did additional research linking asbestos with cancer. Following a number of subsequent reports in the New York Times, Paul Brodeur published a series of articles in the New Yorker.

17.    In addition, beginning in the 1940s and 1950s, it was recognized that individuals who worked with asbestos materials, as well as those who did not work directly with asbestos products but only had relatively brief or intermittent exposures to asbestos products, could develop fatal asbestos diseases.

18.    In 1955, Richard Doll published a study linking asbestos to lung cancer.

19.    In 1960, Chris Wagner published a study linking asbestos to mesothelioma.

20.    DEFENDANT JOHNSON & JOHNSON started selling Johnson's Baby Powder in the late 1800s. As the parent company, JOHNSON & JOHNSON made Johnson's Baby Powder until 1978, when a new subsidiary corporation, Johnson & Johnson Consumer Inc., was formed. Both JOHNSON & JOHNSON and Johnson & Johnson Consumer Inc. shared with each other all of their health-and-safety information about the talc products. Throughout this Complaint, DEFENDANT JOHNSON & JOHNSON is referred to as "J&J."

21.    In the 1950s and 1960s, J&J contracted with the Battelle Laboratory in Ohio to examine its talc for the presence of dangerous minerals. Battelle reported back to J&J and William Ashton, a J&J managerial employee, that J&J's talc had tremolite, fibrous tremolite, and fibrous talc. J&J thus had knowledge for many decades that J&J's talc was dangerous to breathe.

22.    In the early 1960s, Dr. Irving Selikoff engaged in studies of groups of asbestos workers. By 1965, he had conducted various studies, published several articles, conducted special scientific symposia, been interviewed by the New York Times, and organized the international conference on the "Biological Effects of Asbestos" under the auspices of the renowned New York Academy of Sciences. The results of these presentations were published in Volume 132 of the Annals of the New York Academy of Sciences published in 1965.

23.    In 1966, J&J knew of published medical and scientific articles that warned it that breathing talc could lead to asphyxiation and death in infants. J&J knew that this information could hurt its baby products franchise and chose not to warn about the dangers of breathing talc for many decades.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

24. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[a]ll of the 22 talcum products analyzed have a...fiber content...averaging 19%. The fibrous material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits...Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al., *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Am. Ind. Hyg. Assoc. J. 350 (1968).]

25. In 1969, product-liability lawsuits were brought against asbestos manufacturers. Under the Walsh Healy Act, federal contractors with contracts of more than $10,000 were required to adhere a workplace standard of no more than 12 fibers per cubic centimeter of air.

26. In April 1969, J&J medical doctor, Dr. Timothy Thompson, wrote that J&J should consult the law department for potential litigation arising out of breathing tremolite. This J&J medical doctor specifically discussed the risk of cancer and other diseases from inhalation of needle-like tremolite.

27. In 1970s, J&J knew of the risk of ovarian cancer and never warned regarding any type of cancer. Ovarian cancer occurs via inhalation and translocation of the asbestiform minerals in the body. J&J failed to warn of all cancer risks, including mesothelioma.

28. In early 1970s, J&J submitted false information to the federal Food and Drug Administration ("FDA") claiming J&J's products did not have asbestos in them when J&J had internal documents demonstrating its submission was false. J&J and other companies jointly convinced the FDA to not regulate the issues of asbestos in talc. The FDA allowed the talc industry to self-regulate regarding the health impact of breathing talc.

29. J&J claims to have had a facility since the early 1970s to retain samples of each batch of its talc for future analysis. J&J has destroyed those samples and all underlying testing data including photographs, Transmission Electron Microscopy grids, Energy Dispersive X-ray Spectroscopy grids, and Selected Area (Electron) Diffraction grids.

30. In the 1970s, J&J worked jointly with other companies, including members of the Cosmetic, Toiletry & Fragrance Association ("CTFA"), to adopt a testing method that would not find the asbestos in their talc. That method, known as the J4-1, was adopted by the industry in 1976.

31. In the 1970s, J&J misled physicians and nurses into believing that J&J's product was safe and falsely telling them in mailings that there was no asbestos in Johnson's Baby Powder.

32. In 1970, OSHA established the first Federal guidelines for workplace asbestos exposure, which took effect in 1971. J&J management employees worked to keep fibrous talc and asbestiform minerals in their product from being regulated by OSHA.

33. In 1971, J&J met with scientists at Mt. Sinai Hospital in New York who warned J&J of the risk of asbestos in its products and the risk of disease.

J&J knew that fibrous talc and asbestos from talc translocated through the body after inhalation and were found in the ovaries of women.

34. In 1971, the Colorado School of Mines advised J&J managerial employee, Robert S. Russell, that there is fibrous tremolite and actinolite (asbestos), and fibrous talc in J&J samples submitted to them. Later in the mid-1970s, J&J agents and employees, including Mr. Russell, obtained, with his knowledge, used Johnson's Baby Powder in a study on live babies, thereby exposing these babies to risk of disease.

35. In 1972, the American Conference of Governmental Industrial Hygienists listed asbestos as a carcinogen.

36. In 1974, J&J employee, Dr. Fuller, told the FDA that the risk of *any* harm would be reason to take J&J's talcum powder off the market. Dr. Fuller and J&J did not live up to their promise to the FDA and falsely reassured the FDA for decades J&J's product was safe.

37. A 1976 follow-up study conducted by researchers at Mt. Sinai concluded that "[t]he presence in these products of asbestiform anthophyllite and tremolite, chrysotile, and quartz indicates the need for a regulatory standard for cosmetic talc...We also recommend that evaluation be made to determine the possible health hazards associated with the use of these products." [Rohl, A.N., et al., *Consumer Talcums and Powders: Mineral and Chemical Characterization*, 2 J. Toxicol. Environ. Health 255 (1976).] The results of the Mount Sinai study were soon picked up and reported by both the New York Times and the Washington Post that same year. The study and subsequent newspaper articles listed explicitly popular consumer cosmetic talcum powders as containing high percentages of asbestos.

38. In the early 1970s, the FDA began an inquiry into whether to regulate and require warnings on consumer talcum powder products. Defendants, who were part of an exclusive lobbying and advocacy group representing companies engaged in the cosmetic products industry, repeatedly conspired and worked in concert to block efforts to label and warn consumers regarding the dangers associated with cosmetic talcum powder products.

39. In the 1970s and 1980s, J&J employee, William Ashton, knowing that fibrous talc and asbestos was dangerous, worked to keep J&J's product from being subject to any industry standards, including joining the American Society for Testing and Materials, and insuring J&J's product would not be subject to scrutiny by the scientific community.

40. In the 1970s and 1980s, J&J continued to mislead the public by engaging in an anti-warning marketing campaign to tell consumers that J&J's product was "pure" and would "protect" the user of the product. The marketing campaign consisted of print, radio, and television advertisements to falsely reassure the public about the safety of talc.

41. In 1983, Anthony and Mary Rose Gambino sued J&J for injuries Mr. Gambino sustained from his use of Johnson's Baby Powder talc. J&J did nothing to preserve evidence of the talc samples it was allegedly testing from the early 1980s forward.

42. In 1991, J&J knew that Dr. Alice Blount published on the presence of

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**Kazan, McClain, Satterley & Greenwood**

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607

(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

asbestos in its Johnson's Baby Powder. Dr. Blount told J&J several times in the 1990s and yet J&J did nothing to warn Ms. Johnson or other end users of the dangerous associated with J&J's product.

43.    J&J in the 1990s continued its pattern and practice of marketing talcum powder as safe despite knowing of the "cancer linkage." In 1992, J&J knew its major opportunities would be to market to minorities, but also knew the major obstacles would be the inhalation risk and cancer linkage.

44.    J&J were in charge of worldwide testing of talc to determine how much asbestos was in each talc. They created a testing scheme to appear like there was no asbestos in their talc. However, they knew the testing methods used were inadequate and would not detect the asbestos in the talc.

45.    J&J engaged in a pattern and practice of not warning the public through 2018 when its Chief Executive Officer, Alex Gorsky, falsely told American consumers that J&J's talcum products have always been free of asbestos.

All Defendants failed to place any warning on their products or ever disclose the fact that these products contained asbestos, asbestiform fibers, and/or asbestiform talc at any point, up to and including present day, despite the clear hazard and direct information that their products *did* contain asbestos, asbestiform fibers, and asbestiform talc.

## VI.

**Additional Allegations as to J&J:** The following facts are illustrative, but not exhaustive, of J&J's wrongful conduct.

J&J knew that the needle-like shape of asbestos fibers, found in some talc deposits, makes the fibers causative of mesothelioma. And J&J knew that babies inhaled the talc, at variable levels, whenever Baby Powder was applied. J&J therefore understood that if its talc contained asbestos, and if that fact were publicized, it would be bad for J&J's business and reputation.

To avoid the risk of end-users' asbestos exposures, J&J always had the option to use cornstarch, instead of talc, as its Baby Powder's active ingredient. However, J&J waited until 1980 to start selling a cornstarch version alongside the talc version. Thereafter, J&J advertised that its cornstarch version was the "safest powder you can use on your baby." J&J never warned anyone about the asbestos content of its talc.

Despite admittedly knowing that its talc Baby Powder contained toxic asbestos from at least the 1960s through the 2000s, J&J concealed or otherwise misrepresented that fact from its products' consumers, including Ms. Johnson. In part, J&J engaged in the following acts and

omissions:

1.   J&J lied to the FDA about the presence of asbestos in the talc used in J&J's products, including Johnson's Baby Powder. J&J hid these results and, in some cases, asked that these results be altered or destroyed. For example, in January 1974, J&J's managing agents Dr. R. Fuller, Dr. G. Hildick-Smith, and Dr. W. Nashed met with the FDA regarding "Talc/Asbestos." In that meeting, J&J promoted its Johnson's Baby Powder as the "best talc available," despite knowing the talc's asbestos content. J&J also falsely claimed to the FDA that "substantial asbestos can be allowed safely in a baby powder." J&J further assured the FDA that, if studies showed that the talc was unsafe, J&J "will not hesitate to take it off the market." J&J never took its Johnson's Baby Powder off the market despite knowing that the product contained asbestos. J&J, itself and through the CTFA, also withheld original documents and reports identifying asbestos in its talc and talc-containing products, like Johnson's Baby Powder, and instead falsely reported to the FDA there was no asbestos. After providing this false information to the FDA, the CTFA, including J&J, met privately and congratulated themselves on the "success" of the "presentations" to the FDA, and agreed that they should not bind themselves to having to further update the FDA. Despite its admission that asbestos is a carcinogen, J&J never suggested—or revealed—to the FDA any asbestos in its Johnson's Baby Powder or talc products, including the list of positive asbestos findings in its talc ore, talc, and products throughout the decades.

2.   In or around 1978, J&J and other members of the CTFA destroyed evidence showing positive findings of asbestos in round-robin testing of J&J and other manufacturers' consumer talcum products for asbestos content. The FDA initially proposed regulating the cosmetic talc industry. However, J&J and other members of the CTFA contended that they should be able to self-regulate. As a result, the FDA had no authority to "go into [J&J's] files"; it was up to J&J to voluntarily provide information to the FDA. Because the cosmetic talc industry was self-regulating, the CTFA rejected the FDA's proposal to have CTFA disclose the results of CTFA's respective periodic monitoring for asbestos. At J&J's direction, the CTFA was instructed to "[d]estroy your copy of the table" containing the results of the CTFA Task Force on Round Robin Testing of Consumer Talcum Products for Asbestiform Amphibole Minerals.

3.   J&J fraudulently labeled and advertised its Johnson's Baby Powder as being pure and protective of health, and free of asbestos fibers. J&J maintained the trust of mothers and other consumers who used its Johnson's Baby Powder products through print advertisements and other methods. In the 1940s, J&J emphasized that doctors and nurses preferred Johnson's Baby Powder because of its effectiveness and alleged purity. J&J described the product as the "purest." J&J also directly promoted its baby powder to medical personnel. J&J provided samples for doctors to distribute. A 1965 brochure for doctors claimed that the powder was safe and had medical benefits. The bottle itself even said, "Purest Protection." Another version of the bottle said, "Good for baby, Good for you." However, J&J well knew that its Johnson's Baby Powder was not pure because it contained asbestos. J&J also knew that its Johnson's Baby Powder provided no medical protection or any other medicinal value.

4.   J&J and its officers, directors, and managing agents including, but not

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

limited to, Bill Ashton, Dr. R. Fuller, Dr. Gavin Hildick-Smith, Dr. Al Goudie, Dr. W. Nashed, and members of J&J's Talc Advisory Group, kept from or otherwise misrepresented to the public test results showing the presence of asbestos and asbestiform fibers in its talcum products, including Johnson's Baby Powder. For example, in or around October 1972, Dr. Nashed stated to Dr. Goudie that he "thought tremolite was mistakenly identified in view of similarity to Na [sodium] sesquicitrate!" Dr. Goudie replied, "There are trace quantities present confirmed both by McCrone & Bill Ashton. Levels are extremely low but occasionally can be detected optically. *This is not new.*" In or around June 1973, the University of Minnesota lab reported to J&J that its Shower to Shower talc powder contained "1/100th of 1 percent asbestos," as shown by electron microscopy, both in the material from J&J and from Dr. Lewin's sample. Shortly thereafter, J&J and the McCrone lab authored their own report in which they misquoted the University of Minnesota lab's report by using misleading ellipses that concealed the asbestos findings. In its November 1974 letter to a concerned consumer in California, J&J (i) falsely claimed that it used only the "purest talc available," (ii) described contrary articles as "sensational and scary," and (iii) claimed to be "highly ethical and responsible" because its products were safe.

## VII.

**The Exposures:** Ms. Johnson was born on January 30, 1967. She was exposed to asbestos, asbestiform fibers, and asbestiform talc through her and her family's use of Johnson & Johnson talc powder products. Ms. Johnson used and purchased Defendants' talc powder products in California and elsewhere. Ms. Johnson was exposed to Defendants' asbestos, asbestiform fibers, and asbestiform talc in California because Defendants (i) marketed and sold their talc products in California, and (ii) engaged in asbestos-related conduct that occurred in California.

## VIII.

**Venue:** Venue is proper in Alameda County because certain Defendant(s) reside in Alameda County. Specifically, Alameda County is the headquarters and principal place of business of Defendants SAFEWAY INC. and THE VONS COMPANIES, INC.

## IX.

**The Harm:** Ms. Johnson has malignant mesothelioma caused by her exposures to asbestos, asbestiform fibers, and asbestiform talc. The mesothelioma has caused, and will cause, Ms. Johnson to experience physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, emotional distress, and other similar harm. And the mesothelioma will continue to inflict these harms on Ms. Johnson

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

3152983.3

1   in the future, ceasing only when it causes her untimely death.

2        Plaintiff incorporates by reference all of the above-mentioned allegations to each of the

3   liability theories set forth below and reserve the right to conform this Complaint to proof later

4   ascertained.

5   **FIRST CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY**

6   **I.**

7        **Design Defect:** All Defendants, and the 1st through 100th Doe Defendants, have for many

8   years, manufactured, sold, distributed, designed, formulated, developed standards for, prepared,

9   processed, assembled, tested, listed, certified, marketed, advertised, packaged and/or labeled,

10  and/or otherwise placed into the stream of commerce, products containing asbestos, asbestiform

11  fibers, and/or asbestiform talc. First, these Defendants' products were defective and unsafe for

12  their intended purpose and foreseeable use in that when used, handled, mixed, or otherwise

13  disturbed, said products would result in the release, and therefore inhalation, of hazardous and

14  dangerous asbestos fibers, asbestiform fibers, and/or asbestiform talc by exposed persons,

15  including Ms. Johnson. Second, each product did not perform as safely as an ordinary consumer

16  would have expected it to perform when used or misused in an intended or reasonably foreseeable

17  way, because each product caused hazardous asbestos, asbestiform fibers, and/or asbestiform talc

18  to become airborne. Third, Ms. Johnson developed mesothelioma. Fourth, each product's failure

19  to perform safely was a substantial factor in causing Ms. Johnson's mesothelioma.

20  **II.**

21       **Failure-to-Warn Defect:** All Defendants, and the 1st through 100th Doe Defendants, are

22  strictly liable for their products' failure-to-warn defects. First, these Defendants and/or their

23  predecessors have for many years, manufactured, sold, distributed, designed, formulated,

24  developed standards for, prepared, processed, assembled, tested, listed, certified, marketed,

25  advertised, packaged and/or labeled, and/or otherwise placed into the stream of commerce,

26  products containing asbestos, asbestiform fibers, and/or asbestiform talc. Second, each product

27  had potential risks that were known or knowable in light of the scientific and medical knowledge

28  that was generally accepted in the scientific community at the time of design, manufacture, label,

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1 distribution, and sale. Third, the potential risks presented a substantial danger when each product

2 was used or misused in an intended or reasonably foreseeable way, because each product caused

3 hazardous asbestos, asbestiform fibers, and/or asbestiform talc to become airborne. Fourth,

4 ordinary consumers would not have recognized the potential risks. Fifth, these Defendants failed

5 to adequately warn or instruct of the potential risks. Sixth, Ms. Johnson developed mesothelioma.

6 Seventh, the lack of sufficient warnings or instructions was a substantial factor in causing

7 Ms. Johnson's mesothelioma.

8 <center>**SECOND CAUSE OF ACTION FOR NEGLIGENCE**</center>

9 <center>**I.**</center>

10 **General Negligence:** All Defendants, and the 1st through 100th Doe Defendants, are

11 liable for their general negligence. First, Defendants failed to use reasonable care to prevent harm

12 to others, because they caused hazardous asbestos, asbestiform fibers, and/or asbestiform talc to

13 become airborne. Second, Defendants unreasonably acted and failed to act. They acted in ways

14 that a reasonably careful person would not do in the same situation, and failed to act in ways that a

15 reasonably careful person would do in the same situation. Third, Ms. Johnson developed

16 mesothelioma. Fourth, each Defendant's general negligence was a substantial factor in causing

17 Ms. Johnson's mesothelioma.

18 <center>**II.**</center>

19 **Negligent Design, Manufacture, Supply, Testing, Packaging, and Labeling of**

20 **Products:** All Defendants, and the 1st through 100th Doe Defendants, are liable for their

21 negligent design, manufacture, marketing, supply, testing, packaging, and labeling of products

22 containing asbestos, asbestiform fibers, and/or asbestiform talc. First, these Defendants designed,

23 manufactured, sold, distributed, formulated, developed standards for, prepared, processed,

24 assembled, tested, listed, certified, marketed, advertised, packaged and/or labeled, and/or

25 otherwise placed into the stream of commerce, products containing asbestos, asbestiform fibers,

26 and/or asbestiform talc. Second, these Defendants were negligent in manufacturing, selling,

27 distributing, developing standards for, processing, assembling, testing, certifying, marketing,

28 advertising, packaging and/or labeling, and/or otherwise placing into the stream of commerce,

1    products containing asbestos, asbestiform fibers, and/or asbestiform talc because they caused

2    hazardous asbestos, asbestiform fibers, and asbestiform talc to become airborne. They failed to use

3    the amount of care that a reasonably careful person would use in similar circumstances to avoid

4    exposing others to a foreseeable risk of harm. Third, Ms. Johnson developed mesothelioma.

5    Fourth, each Defendant's negligence was a substantial factor in causing Ms. Johnson's

6    mesothelioma.

7                                               **III.**

8         **Negligent Failure to Warn about Products:** All Defendants, and the 1st through 100th

9    Doe Defendants, are liable for their negligent failure to warn about their products. First, these

10   Defendants designed, manufactured, marketed, distributed, packaged, labeled, and sold products

11   containing asbestos, asbestiform fibers, and/or asbestiform talc. Second, these Defendants knew or

12   reasonably should have known that each product was dangerous or was likely to be dangerous

13   when used or misused in a reasonably foreseeable manner, because each product caused hazardous

14   asbestos, asbestiform fibers, and/or asbestiform talc to become airborne. Third, these Defendants

15   knew or reasonably should have known that users would not realize the danger. Fourth, these

16   Defendants failed to adequately warn of the danger or instruct on the safe use of each product.

17   Fifth, a reasonably careful person under the same or similar circumstances would have warned of

18   the danger or instructed on the safe use of each product. Sixth, Ms. Johnson developed

19   mesothelioma. Seventh, each Defendant's negligent failure to warn or instruct was a substantial

20   factor in causing Ms. Johnson's mesothelioma.

21                                              **IV.**

22        **Negligent Failure to Recall and Retrofit Products:** All Defendants, and the 1st through

23   100th Doe Defendants, are liable for their negligent failure to recall and retrofit their products.

24   First, these Defendants designed, manufactured, marketed, distributed, packaged, labeled, and sold

25   products containing asbestos, asbestiform fibers, and/or asbestiform talc. Second, these

26   Defendants knew or reasonably should have known that each product was dangerous or was likely

27   to be dangerous when used in a reasonably foreseeable manner, because each product caused

28   hazardous asbestos, asbestiform fibers, and/or asbestiform talc to become airborne. Third, these

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    Defendants became aware of this defect after each product was sold. Fourth, these Defendants

2    failed to recall and retrofit each product. Fifth, a reasonably careful person under the same or

3    similar circumstances would have recalled and retrofitted each product. Sixth, Ms. Johnson

4    developed mesothelioma. Seventh, each Defendant's negligent failure to recall and retrofit each

5    product was a substantial factor in causing Ms. Johnson's mesothelioma.

6    **THIRD CAUSE OF ACTION FOR FRAUD**

7    **I.**

8        All Defendants, and the 1st through 100th Doe Defendants, are liable for fraud, including

9    fraudulent misrepresentation, fraudulent concealment, conspiracy to commit fraudulent

10    misrepresentation, and conspiracy to commit fraudulent concealment, as set forth herein.

11    **II.**

12        **Fraudulent Misrepresentation:** Defendants are liable for their fraudulent

13    misrepresentations.

14        First, each Defendant, via its employees, agents, advertisements, or any other authorized

15    person or document, represented that certain facts were true when they were not. The specific

16    identities of these employees, agents, advertisements, or any other authorized person or document

17    are maintained in Defendants' records. Such records remain in the exclusive control of Defendants

18    pursuant to their respective document-retention policies. While she does not currently know the

19    specific advertisements or names of the employees, agents, or any other authorized person who

20    made the representations, Plaintiff will have access to this information once discovery has

21    commenced and will be able to specifically name the advertisement as well as the employee,

22    agent, or any other authorized person.

23        Second, Defendants represented that the products they manufactured, supplied, or specified

24    for use were not hazardous to humans. These representations were made before and during the

25    years that Ms. Johnson and her family purchased and were exposed to asbestos from Defendants'

26    talc powder products. Such representations were made either directly to Ms. Johnson and her

27    family, or to a third party intending and reasonably expecting that the substance of those

28    representations would be repeated to Ms. Johnson and her family.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    Third, Defendants knew that the representations were false when they made them, or they

2    made the representations recklessly and without regard for their truth.

3    Fourth, Defendants intended that Ms. Johnson and her family, and/or the same class of

4    persons as Ms. Johnson and her family, rely on the representations or their substance.

5    Fifth, Ms. Johnson and her family reasonably relied on Defendants' representations or the

6    substance of these representations.

7    Sixth, Ms. Johnson developed mesothelioma.

8    Seventh, Ms. Johnson and her family's reliance on those representations was a substantial

9    factor in causing Ms. Johnson's mesothelioma.

10    **III.**

11    **Fraudulent Concealment (Nondisclosure):** Defendants are liable for their fraudulent

12    concealment (nondisclosure).

13    First, each of the Defendants made affirmative statements that were so misleading (e.g.,

14    misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a

15    specific relationship or transaction as between Defendants and Ms. Johnson. Specifically,

16    Defendants stated that their products could be used safely while concealing they were in fact lethal

17    because they contain and release asbestos fibers, asbestiform fibers, and asbestiform talc.

18    Second, Defendants (i) had exclusive knowledge of material facts not known to

19    Ms. Johnson (as set forth above), (ii) actively concealed these material facts from Ms. Johnson,

20    (iii) made partial representations but also suppressed material facts, as set forth above, and

21    (iv) made factual representations, but did not disclose facts which materially qualified those

22    representations. Such nondisclosures included Defendants representing their products as safe when

23    used as intended and as fit for the particular purpose for which they were marketed, while not

24    disclosing the facts that these products contained asbestos, asbestiform fibers, and asbestiform talc

25    that would become airborne during the intended and foreseeable use of the products, rendering

26    them dangerous and unfit for their intended purpose.

27    Third, each Defendant entered into a relationship and/or a transaction with Ms. Johnson

28    sufficient to give rise to a duty to disclose. For example, Ms. Johnson used or otherwise

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1  encountered Defendants' products that were purchased either directly from Defendants and

2  Defendants' authorized dealer or supplier, or any other entity upon which Defendants derived a

3  direct monetary benefit directly from Ms. Johnson's purchase and use of the products. As for

4  another example, Defendants directly advertised their products to those in California and

5  elsewhere, as a symbol of freshness, cleanliness, and purity. Defendants advertised and marketed

6  this product as the "purest protection," the beacon of "freshness" and "comfort," eliminating

7  friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable,

8  and "clinically proven gentle and mild." Defendants compelled men and women through

9  advertisements to dust themselves with this product for a wide variety of reasons, including the

10  elimination of odors. Defendants knew that users would use the talcum powder as a dry shampoo

11  and it would release substantial asbestiform minerals into user's breathing zone. Defendants

12  derived direct monetary benefit from these individuals' use of these products because Ms. Johnson

13  decided to use or purchase Defendants' products.

14       Fourth, Ms. Johnson did not know of the concealed facts.

15       Fifth, Defendants intended to deceive Ms. Johnson by concealing the facts, and/or by

16  making certain representations without disclosing additional facts that would have materially

17  qualified those representations.

18       Sixth, had the omitted information been disclosed, Ms. Johnson reasonably would have

19  behaved differently.

20       Seventh, Ms. Johnson developed mesothelioma.

21       Eighth, each Defendant's concealment was a substantial factor in causing Ms. Johnson's

22  mesothelioma.

**IV.**

24       **Conspiracy to Commit Fraudulent Misrepresentation:** Plaintiff hereby incorporates by

25  reference the allegations above in this Third Cause of Action as if fully stated herein.

26       Defendants are liable for their conspiracy to commit fraudulent misrepresentation. First,

27  Defendants were aware that their conspirators, which included all co-defendants and others,

28  planned to commit fraudulent misrepresentation against Ms. Johnson and her family, and/or the

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

same class of persons as Ms. Johnson and her family. Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed. Third, Ms. Johnson developed mesothelioma. Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Ms. Johnson's mesothelioma.

**V.**

**Conspiracy to Commit Fraudulent Concealment (Nondisclosure):** Plaintiff hereby incorporates by reference the allegations above in this Third Cause of Action as if fully stated herein. Defendants are liable for their conspiracy to commit fraudulent concealment. First, Defendants were aware that their conspirators, which included all co-defendants and others, planned to commit fraudulent concealment against Ms. Johnson and her family, and/or the same class of persons as Ms. Johnson and her family. Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed. Third, Ms. Johnson developed mesothelioma. Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Ms. Johnson's mesothelioma.

**VI.**

**Knowledge of Hazards:** At all times pertinent hereto, Defendants, including 1st through 100th Doe Defendants, owed Ms. Johnson a duty, as provided for in Civil Code sections 1708, 1709, and 1710, to abstain from injuring her person, property, or rights. In violation of that duty, Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Ms. Johnson. Such acts and omissions consisted of acts falling within Civil Code section 1710, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact of that which was not true, which the Defendants had no reasonable ground for believing it to be true, and (iii) the suppression of facts when a duty existed to disclose it, as more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Ms. Johnson's rights as provided for in the aforementioned code sections.

Defendants have known and possessed of the true facts (consisting of medical and scientific data, and other knowledge) which clearly indicated that the materials and products

Kazan, McClain, Satterley & Greenwood

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607

(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    referred to herein were and are hazardous to the health and safety of Ms. Johnson, and others

2    similarly situated. In addition to the allegations set forth in this Third Cause of Action, Defendants

3    engaged in the following acts and omissions:

4    1.    Did not label any of the aforementioned asbestos-containing materials and
         products as to the hazards of such materials and products to the health and
5         safety of Ms. Johnson, and others in their position using these products
         when the knowledge of such hazards was existing and known to
6         Defendants, and each of them, since 1924. By not labeling such materials as
         to their said hazards, Defendants, and each of them, caused to be suggested
7         as a fact to Ms. Johnson that it was safe for her to use such materials, when
         in fact these things were not true and Defendants did not believe them to be
8         true.

9    2.    Suppressed information relating to the danger of using the aforementioned
         materials by requesting the suppression of information to Ms. Johnson and
10        the general public concerning the dangerous nature of the aforementioned
         materials to all persons, including users, bystanders and household
11        members, by not allowing such information to be disseminated in a manner
         which would give general notice to the public and knowledge of the
12        hazardous nature thereof when Defendants were bound to disclose such
         information.

13

14   3.    Sold the aforementioned products and materials to the public, including
         Ms. Johnson, and others in California and other states without advising
15        them of the dangers of use of such materials and to those persons'
         household members, when Defendants knew of such dangers, as set forth
16        herein and above, and had a duty to disclose such dangers. Thus,
         Defendants caused to be positively asserted to Ms. Johnson, and the public
17        that which was not true and which Defendants had no reasonable ground for
         believing it to be true, in a manner not warranted by the information
18        possessed by said Defendants, and each of them, of that which was and is
         not true, to wit, that it was safe for Ms. Johnson to use such materials and
         that it did not pose a risk of harm.

19

20   4.    Suppressed and continue to suppress from everyone, including
         Ms. Johnson, medical, scientific data, and knowledge of the accurate results
21        of studies including, but not limited to, Waldemar C. Dreesen of the United
         States Public Health Service's 1933 report to the National Safety Council
22        the results of a study conducted among tremolite, talc and slate workers.
         The study indicated that the talc was a hydrous calcium magnesium silicate,
23        being 45 percent talc and 45 percent tremolite, and the National Safety
         Council stated "[t]he results of the study seemed to indicate a relationship
24        between the amount of dust inhaled and the effect of this dust on the lungs
         of the workers." As early as 1934, the National Safety Council was
25        publishing information stating that "a cause of severe pulmonary injury is
         asbestos, a silicate of magnesium." In the September 1935 issue of National
26        Safety News, an article entitled *No Halfway Measures in Dust Control* by
         Arthur S. Johnson reported lowered lung capacity resulting from
27        "asbestosis" and "similar conditions" that developed "from exposure to
         excess of many mineral dusts relatively low in free silica content." The
28        article further noted that claims for disabilities from workers who alleged
         exposure to "clay, talc, emery, and carborundum dusts" had "claims

prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

5.  Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of danger to users of the aforementioned products and materials for and on behalf of Defendants, and each of them, thereby misleading Ms. Johnson to their prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Ms. Johnson at this time.

6.  Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina. This information was disseminated through the ATI and other industry organizations to all other Defendants, and each of them, herein. Between 1942 and 1950, Defendants, and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as fact that which is not true and disseminated other facts likely to and did mislead Ms. Johnson for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not giving Ms. Johnson the true facts concerning such knowledge of danger, when Defendants were bound to disclose it.

7.  Failed to warn Ms. Johnson and others similarly situated regarding the nature of Defendants' talcum products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[a]ll of the 22 talcum products analyzed have a…fiber content…averaging 19%. The fibrous material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits…Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al., *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Am. Ind. Hyg. Assoc. J. 350 (1968).] Defendants failed to warn Ms. Johnson and others similarly situated that their talcum products are, among other things, dangerous when breathed and causes pathological effects without noticeable trauma, although Defendants possessed knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Kazan, McClain, Satterley & Greenwood

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

8.      Concealed from Ms. Johnson, and others similarly situated the true nature of their exposure, the fact that Defendants knew that exposure to respirable asbestos meant that Ms. Johnson would inhale this asbestos, significantly increasing her risk of developing asbestosis, lung cancer, and mesothelioma; that Ms. Johnson that had in fact been exposed to respirable asbestos; that the materials to which Ms. Johnson was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn her of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

9.      Failed to provide information to the public at large and buyers, users and physicians of Ms. Johnson for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose, and treat individuals coming into contact with asbestos, in that the materials to which Ms. Johnson had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons including Ms. Johnson as to the dangers and risk of harm to which they were exposed.

10.     Affirmatively misrepresented that asbestos-containing products were safe to use and handle, when Defendants knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Ms. Johnson did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce Ms. Johnson to be present in a dangerous environment and to cause her to remain unaware of the true facts, all in violation of Civil Code section 1710.

## BASIS FOR PUNITIVE DAMAGES

**Malice, Oppression, or Fraud:** Ms. Johnson hereby incorporates by reference the allegations of all causes of action as if fully stated herein. Defendants, including 1st through 100th Doe Defendants, are liable for punitive damages because they engaged in the conduct that caused Ms. Johnson's harm with malice, oppression, or fraud.

First, Defendants committed malice in that they acted with intent to harm when they caused Ms. Johnson's exposures to asbestos, asbestiform fibers, and/or asbestiform talc, and because their conduct was despicable and was done with a willful and knowing disregard of the rights and safety of others.

Second, Defendants committed oppression in that their conduct was despicable and subjected Ms. Johnson to cruel and unjust hardship in knowing disregard of her rights.

Third, Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Ms. Johnson and with reckless disregard for whether their fraud would harm Ms. Johnson.

The conduct of Defendants constituting malice, oppression, or fraud was committed, authorized, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

## **PRAYER FOR DAMAGES**

Plaintiff prays for judgment for:

1.    All economic and non-economic compensatory damages in excess of $25,000;

2.    Punitive damages according to proof;

3.    Pre- and post-judgment interest;

4.    Costs of suit; and

5.    Such other relief as is fair, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 15, 2022

KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation

By: _____
       Joseph D. Satterley

Attorneys for Plaintiff

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

# Exhibit B

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* *FOR COURT USE ONLY*

Ian A. Rivamonte, Esq.| SBN: Bar No.232663
KAZAN,MCCLAIN,SATTERLEY & GREENWOOD
55 Harrison Street Suite 400  Oakland, CA 94607

TELEPHONE NO.: (510) 302-1000 | FAX NO. (510) 835-4913 | E-MAIL ADDRESS
ATTORNEY FOR *(Name):* Plaintiff: AUDRA JOHNSON

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
07/06/2022 at 02:30:40 PM
By: Andrei Gospel,
Deputy Clerk

**Superior Court of California, County of Alameda**

STREET ADDRESS: 1225  FALLON STREET
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: AUDRA JOHNSON
DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al.

CASE NUMBER:
22CV012814

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: Johnson |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **CIVIL CASE COVER SHEET ADDENDUM; NOTICE OF OF CASE MANAGEMENT CONFERENCE; LETTER TO JUDGE LEE REGARDING COMPLAINT**

3. a. Party served *(specify name of party as shown on documents served):*
   **FOOT LOCKER SPECIALTY, INC., formerly known as F.W. WOOLWORTH CO.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **CT Corporation System, Registered Agent by serving Sarai M. - Process Specialist & Authorized Agent**
   **Age: 31-35 | Weight: 121-140 Lbs | Hair: Black | Sex: Female | Height: 5'7 - 6'0 | Eyes: Green | Race: Latino**

4. Address where the party was served:  **330 N Brand Blvd Ste 700**
   **Glendale, CA 91203-2336**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **6/24/2022** (2) at *(time):* **9:30 AM**

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* ☐ or ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/SF98579

**EXHIBIT B**

PETITIONER: AUDRA JOHNSON

RESPONDENT: **JOHNSON & JOHNSON, et al.**

22CV012814

---

c. ☐ **by mail and acknowledgment of receipt of service.**  I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                                   (2) from *(city):*

(3) ☐ with two copies of the  *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of  *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of **FOOT LOCKER SPECIALTY, INC., formerly known as F.W. WOOLWORTH CO.**

under the following Code of Civil Procedure section:

☑ 416.10 (corporation)                    ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)            ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
☐ 416.50 (public entity)                  ☐ 415.46 (occupant)
                                          ☐ other:

7. **Person who served papers**

a. Name:  **Dion Jones - Nationwide Legal, LLC REG: 12-234648**

b. Address:  **1625 Clay Street 4th Floor  Oakland, CA 94612**

c. Telephone number:  **(510) 444-4690**

d. **The fee** for service was: **$ .00**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

(i) ☐ owner     ☐ employee     ☑ independent contractor.

(ii) Registration No.: **2013128925**

(iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/24/2022**

**Nationwide Legal, LLC**
**1625 Clay Street 4th Floor**
**Oakland, CA 94612**
**(510) 444-4690**
**www.nationwideasap.com**

_____
                    **Dion Jones**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

**POS-050/EFS-050**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO: 286,890<br>NAME: JOSEPH D. SATTERLEY<br>FIRM NAME: KAZAN, McCLAIN, SATTERLEY & GREENWOOD, A Profesional Law Corp.<br>STREET ADDRESS: 55 Harrison Street, Suite 400<br>CITY: Oakland                              STATE: CA      ZIP CODE: 94607<br>TELEPHONE NO.: 510- 302-1000          FAX NO. :<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name):  PLAINTIFF | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>07/06/2022 at 02:28:42 PM<br>By: Andrel Gospel,<br>Deputy Clerk |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS:  1225 FALLON STREET<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:     Oakland, CA 94612<br>BRANCH NAME:  Rene C. Davidson Courthouse | |
| PLAINTIFF/PETITIONER: AUDRA JOHNSON | CASE NUMBER:<br>22CV012814 |
| DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, ET AL. | JUDICIAL OFFICER: |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT: |

1.  I am at least 18 years old.
    a.  My residence or business address is *(specify):*
        1609 JAMES M. WOOD BLVD., LOS ANGELES, CA 90015

    b.  My electronic service address is *(specify):*
        NWLPROCESS@NATIONWIDELEGAL.COM

2.  I electronically served the following documents *(exact titles):*
    Summons; Complaint; Alternate Dispute (ADR) Package; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum; Notice of
    Case Management Conference; Letter to Judge Jo-Lynne Q. Lee

    ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3.  I electronically served the documents listed in 2 as follows:
    a.  Name of person served:  JOHNSON & JOHNSON

    On behalf of *(name or names of parties represented, if person served is an attorney):*

    b.  Electronic service address of person served *:*
        serviceofprocess@its.jnj.com

    c.  On *(date):*  6/28/2022

    ☒ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
    *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: 6/28/2022

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Anthony Iavarone
_____            ►
(TYPE OR PRINT NAME OF DECLARANT)                          (SIGNATURE OF DECLARANT)

Page 1 of 1

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-050/EFS-050 [Rev. February 1, 2017] | **PROOF OF ELECTRONIC SERVICE**<br>**(Proof of Service/Electronic Filing and Service)** | Cal. Rules of Court, rule 2.251<br>*www.courts.ca.gov* |

SF98578

Ian A. Rivamonte, Esq.| SBN : Bar No. 232603
KAZAN,MCCLAIN,SATTERLEY & GREENWOOD
55 Harrison Street Suite 400  Oakland, CA 94607

TELEPHONE NO.: (510) 302-1000 | FAX NO. (510) 835-4913 | E-MAIL ADDRESS
ATTORNEY FOR (Name):  Plaintiff:

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
07/08/2022 at 03:26:52 PM
By: Andrel Gospel,
Deputy Clerk

**Superior Court of California, County of Alameda**
STREET ADDRESS: 1225  FALLON STREET
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: AUDRA JOHNSON
DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al.

CASE NUMBER:
22CV012814

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: Johnson |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):*  CIVIL CASE COVER SHEET ADDENDUM; NOTICE OF CASE MANAGEMENT CONFERENCE; LETTER TO JUDGE LEE REGARDING COMPLAINT

3. a.  Party served *(specify name of party as shown on documents served):*
      **MAC FRUGAL'S BARGAINS . CLOSE-OUTS INC., formerly known as PIC 'N' SAVE CORPORATION**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      CSC Lawyers Inc., Registered Agent, by placing documents in a designated CSC basket - in the presence of Ikea 'Doe' (names are not divulged), CSC Employee.
      Age: 40 | Weight: 200 | Hair: Black | Sex: Female | Height: 5'6" | Eyes: N/A | Race: African American

4. Address where the party was served: 251 Little Falls Dr
   Wilmington, DE 19808-1674

5. I served the party *(check proper box)*
   a. ☑ by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 6/27/2022    (2) at *(time):* 8:27 AM

   b. ☐ by substituted service. On *(date):* at *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*                                        or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
**POS010-1/SF98580**

c. ☐  **by mail and acknowledgment of receipt of service.**  I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on  *(date):*                            (2) from  *(city):*

    (3) ☐  with two copies of the  *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.
          *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐  **by other means**  *(specify means of service and authorizing code section):*

    ☐   Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐  as an individual defendant.
b. ☐  as the person sued under the fictitious name of  *(specify):*
c. ☐  as occupant.
d. ☑  On behalf of **MAC FRUGAL'S BARGAINS . CLOSE-OUTS INC.,** formerly known as **PIC 'N' SAVE CORPORATION**
    under the following Code of Civil Procedure section:

    ☑  416.10 (corporation)             ☐  415.95 (business organization, form unknown)
    ☐  416.20 (defunct corporation)      ☐  416.60 (minor)
    ☐  416.30 (joint stock company/association)  ☐  416.70 (ward or conservatee)
    ☐  416.40 (association or partnership)    ☐  416.90 (authorized person)
    ☐  416.50 (public entity)            ☐  415.46 (occupant)
                                  ☐  other:

7. **Person who served papers**
   a. Name:  **Selena Cabrera - Nationwide Legal, LLC REG: 12-234648**
   b. Address:  **1625 Clay Street 4th Floor  Oakland, CA 94612**
   c. Telephone number:  **(510) 444-4690**
   d. **The fee** for service was: **$ 343.00**
   e. **I am:**

    (1) ☑  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐  registered California process server:
       (i) ☐  owner    ☐  employee    ☐  independent contractor.
       (ii)  Registration No.:
       (iii) County:

8. ☑  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

    Date: **6/27/2022**

**N**  **Nationwide Legal, LLC**
**1625 Clay Street 4th Floor**
**Oakland, CA 94612**
**(510) 444-4690**
**www.nationwideasap.com**

                                               *Selena Cabrera*

| **Selena Cabrera** | ▶ | *(SIGNATURE)* |
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | | |

**POS-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): *FOR COURT USE ONLY*

Ian A. Rivamonte, Esq | SBN: Bar No.232663
KAZAN,MCCLAIN,SATTERLEY & GREENWOOD
55 Harrison Street Suite 400   Oakland, CA 94607

TELEPHONE NO.: (510) 302-1000 | FAX NO. (510) 835-4913 | E-MAIL ADDRESS

ATTORNEY FOR *(Name):* Plaintiff: AUDRA JOHNSON

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
07/06/2022 at 02:30:40 PM
By: Andrei Gospel,
Deputy Clerk

Superior Court of California, County of Alameda

STREET ADDRESS: 1225  FALLON STREET
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: AUDRA JOHNSON
DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al.

CASE NUMBER:

22CV012814

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|
| | Johnson |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☑ Summons

   b. ☑ Complaint

   c. ☑ Alternative Dispute Resolution (ADR) package

   d. ☑ Civil Case Cover Sheet

   e. ☐ Cross-Complaint

   f. ☑ other *(specify documents):* **CIVIL CASE COVER SHEET ADDENDUM; NOTICE OF OF CASE MANAGEMENT CONFERENCE; LETTER TO JUDGE LEE REGARDING COMPLAINT**

3. a. Party served *(specify name of party as shown on documents served):*

   **RALPHS GROCERY COMPANY**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   **CSC-Lawyers Incorporating Service, Registered Agent by serving Jean Bautista - Customer Service Liaison & Authorized Agent**

   Age: 27 | Weight: 190 Lbs. | Hair: Brown w/highlights | Sex: Female | Height: 5'6" | Eyes: Brown | Race: Asian

4. Address where the party was served:  **2710 Gateway Oaks Dr Ste 150N**
   **Sacramento, CA 95833-3502**

5. I served the party *(check proper box)*

   a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **6/24/2022**  (2) at *(time):* **10:07 AM**

   b. ☐ **by substituted service.** On *(date):*  at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):*  **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/SF98581

PETITIONER: **AUBRA JOHNSON**

RESPONDENT: **JOHNSON & JOHNSON, et al.**

22CV012814

---

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*   (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of **RALPHS GROCERY COMPANY**
under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

a. Name: **Douglas Fitzgerald - Nationwide Legal, LLC REG: 12-234648**

b. Address: **1625 Clay Street 4th Floor  Oakland, CA 94612**

c. Telephone number: **(510) 444-4690**

d. **The fee** for service was: **$ .00**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

(i) ☐ owner   ☐ employee   ☑ independent contractor.

(ii) Registration No.: **2021-03**

(iii) County: **Sacramento**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/24/2022**

**N**

**Nationwide Legal, LLC**
**1625 Clay Street 4th Floor**
**Oakland, CA 94612**
**(510) 444-4690**
**www.nationwideasap.com**

---

**Douglas Fitzgerald**   ▶

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

---

POS-010

Case 21-30589-MBK Doc 2739-2 Filed 07/19/22 Entered 07/19/22 17:26:34 Desc
EXHIBIT B TO SATTERLEY DECLARATION Page 31 of 36

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Ian A. Rivamonte, Esq. SBN, Bar No.232663<br>KAZAN,MCCLAIN,SATTERLEY & GREENWOOD<br>55 Harrison Street Suite 400 Oakland, CA 94607<br><br>TELEPHONE NO.: (510) 302-1000 \| FAX NO.: (510) 835-4913 \| E-MAIL ADDRESS<br>ATTORNEY FOR *(Name):* Plaintiff: AUDRA JOHNSON | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>**06/22/2022 at 03:00:09 PM**<br>By: Lynn Wiley,<br>Deputy Clerk |

**Superior Court of California, County of Alameda**
STREET ADDRESS: 1225 FALLON STREET
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: AUDRA JOHNSON<br>DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al. | CASE NUMBER:<br>22CV012814 |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Johnson |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **CIVIL CASE COVER SHEET ADDENDUM; NOTICE OF CASE MANAGEMENT CONFERENCE; LETTER TO JUDGE LEE REGARDING COMPLAINT**

3. a. Party served *(specify name of party as shown on documents served):*
   **SAFEWAY INC., individually, and as successor-in-interest, parent, alter ego, and equitable trustee of THE VONS COMPANIES, INC.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **CT Corporation System, Registered Agent by serving Daisy Montenegro - Process Specialist & Authorized Agent**

   **Age: 31-35 \| Weight: 181-200 Lbs \| Hair: Black \| Sex: Female \| Height: 5'7 - 6'0 \| Eyes: Brown \| Race: Latino**

4. Address where the party was served: **330 N Brand Blvd Ste 700**
   **Glendale, CA 91203-2336**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **6/22/2022**  (2) at *(time):* **12:30 PM**

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
   *(date):* from *(city):*  **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/SF98270 |

PETITIONER: AUBRA JOHNSON

RESPONDENT: **JOHNSON & JOHNSON, et al.**

22CV012814

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):* (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of **SAFEWAY INC., individually, and as successor-in-interest, parent, alter ego, and equitable trustee of THE VONS COMPANIES, INC.**

under the following Code of Civil Procedure section:

☑ 416.10 (corporation)
☐ 416.20 (defunct corporation)
☐ 416.30 (joint stock company/association)
☐ 416.40 (association or partnership)
☐ 416.50 (public entity)

☐ 415.95 (business organization, form unknown)
☐ 416.60 (minor)
☐ 416.70 (ward or conservatee)
☐ 416.90 (authorized person)
☐ 415.46 (occupant)
☐ other:

7. **Person who served papers**

a. Name: **Dion Jones - Nationwide Legal, LLC REG: 12-234648**

b. Address: **1625 Clay Street 4th Floor  Oakland, CA 94612**

c. Telephone number: **(510) 444-4690**

d. **The fee** for service was: **$ .00**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

(i) ☐ owner    ☐ employee    ☑ independent contractor.

(ii) Registration No.: **2013128925**

(iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/22/2022**

**N**
**Nationwide Legal, LLC**
**1625 Clay Street 4th Floor**
**Oakland, CA 94612**
**(510) 444-4690**
**www.nationwideasap.com**

▶

_____
**Dion Jones**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number, and address):* *FOR COURT USE ONLY*
Ian A. Rivamonte, Esq | SBN: Bar No.232663
KAZAN,MCCLAIN,SATTERLEY & GREENWOOD
55 Harrison Street Suite 400   Oakland, CA 94607

TELEPHONE NO.: (510) 302-1000 | FAX NO. (510) 835-4913 | E-MAIL ADDRESS
ATTORNEY FOR *(Name):* Plaintiff: AUDRA JOHNSON

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
07/06/2022 at 02:33:57 PM
By: Andrel Gospel,
Deputy Clerk

Superior Court of California, County of Alameda
STREET ADDRESS: 1225  FALLON STREET
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: AUDRA JOHNSON
DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al.

CASE NUMBER:
22CV012814

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: Johnson |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **CIVIL CASE COVER SHEET ADDENDUM; NOTICE OF OF CASE MANAGEMENT CONFERENCE; LETTER TO JUDGE LEE REGARDING COMPLAINT**

3. a. Party served *(specify name of party as shown on documents served):*
   **TARGET CORPORATION**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **CT Corporation System, Registered Agent by serving Sarai M. - Process Specialist & Authorized Agent**
   **Age: 31-35 | Weight: 121-140 Lbs | Hair: Black | Sex: Female | Height: 5'7 - 6'0 | Eyes: Green | Race: Latino**

4. Address where the party was served:  **330 N Brand Blvd Ste 700**
   **Glendale, CA 91203-2336**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **6/24/2022** (2) at *(time):* **9:30 AM**

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* ☐ or a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/SF98582

PETITIONER: AUDRA JOHNSON

RESPONDENT: **JOHNSON & JOHNSON, et al.**

22CV012814

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date)*:                                   (2) from *(city)*:

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.
   *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☑ On behalf of **TARGET CORPORATION**
   under the following Code of Civil Procedure section:

   ☑ 416.10 (corporation)                    ☐ 415.95 (business organization, form unknown)
   ☐ 416.20 (defunct corporation)            ☐ 416.60 (minor)
   ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
   ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
   ☐ 416.50 (public entity)                  ☐ 415.46 (occupant)
                                             ☐ other:

7. **Person who served papers**
   a. Name: **Dion Jones - Nationwide Legal, LLC REG: 12-234648**
   b. Address: **1625 Clay Street 4th Floor  Oakland, CA 94612**
   c. Telephone number: **(510) 444-4690**
   d. **The fee** for service was: **$ .00**
   e. I am:

   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ registered California process server:
       (i) ☐ owner   ☐ employee   ☑ independent contractor.
       (ii) Registration No.: **2013128925**
       (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/24/2022**

**N**

**Nationwide Legal, LLC**
**1625 Clay Street 4th Floor**
**Oakland, CA 94612**
**(510) 444-4690**
**www.nationwideasap.com**

_____
**Dion Jones**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):   *FOR COURT USE ONLY*

Ian A. Rivamonte, Esq. SBN: Bar No. 232663
KAZAN,MCCLAIN,SATTERLEY & GREENWOOD
55 Harrison Street Suite 400   Oakland, CA 94607

TELEPHONE NO.: (510) 302-1000 | FAX NO. (510) 835-4913 | E-MAIL ADDRESS

ATTORNEY FOR (Name): Plaintiff: AUDRA JOHNSON

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**06/22/2022 at 03:01:38 PM**
By: Tania Pierce,
Deputy Clerk

**Superior Court of California, County of Alameda**
STREET ADDRESS: 1225  FALLON STREET
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: AUDRA JOHNSON
DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al.

CASE NUMBER:
22CV012814

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: Johnson |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **CIVIL CASE COVER SHEET ADDENDUM; NOTICE OF CASE MANAGEMENT CONFERENCE; LETTER TO JUDGE LEE REGARDING COMPLAINT**
3. a. Party served *(specify name of party as shown on documents served):*
   **THE VONS COMPANIES, INC.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **CT Corporation System, Registered Agent by serving Daisy Montenegro - Process Specialist & Authorized Agent**
   **Age: 31-35 | Weight: 181-200 Lbs | Hair: Black | Sex: Female | Height: 5'7 - 6'0 | Eyes: Brown | Race: Latino**

4. Address where the party was served:   **330 N Brand Blvd Ste 700**
   **Glendale, CA 91203-2336**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive service for the party (1) on *(date):* **6/22/2022**   (2) at *(time):* **12:30 PM**
   b. ☐ **by substituted service.** On *(date):*   at  *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*   **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/SF98272

PETITIONER: **RUBRA JOHNSON**

RESPONDENT: **JOHNSON & JOHNSON, et al.**

22CV012814

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date)*:      (2) from *(city)*:

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of **THE VONS COMPANIES, INC.**

under the following Code of Civil Procedure section:

☑ 416.10 (corporation)
☐ 416.20 (defunct corporation)
☐ 416.30 (joint stock company/association)
☐ 416.40 (association or partnership)
☐ 416.50 (public entity)

☐ 415.95 (business organization, form unknown)
☐ 416.60 (minor)
☐ 416.70 (ward or conservatee)
☐ 416.90 (authorized person)
☐ 415.46 (occupant)
☐ other:

7. **Person who served papers**

a. Name: **Dion Jones - Nationwide Legal, LLC REG: 12-234648**

b. Address: **1625 Clay Street 4th Floor Oakland, CA 94612**

c. Telephone number: **(510) 444-4690**

d. **The fee** for service was: **$ .00**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

    (i) ☐ owner ☐ employee ☑ independent contractor.

    (ii) Registration No.: **2013128925**

    (iii) County: **Los Angeles**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **6/22/2022**

**Nationwide Legal, LLC**
**1625 Clay Street 4th Floor**
**Oakland, CA 94612**
**(510) 444-4690**
**www.nationwideasap.com**

_____
**Dion Jones**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)