Marc E. Wolin, Esq.
mwolin@saiber.com
John M. August, Esq.
jaugust@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401

-and-

Joseph D. Satterley, Esq.
jsatterley@kazanlaw.com
Denyse F. Clancy, Esq.
dclancy@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000

*Counsel for Kristie Lynn Doyle*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LTL MANAGEMENT LLC, | : | Case No. 21-30589 |
| | : | |
| Debtor. | : | **Hearing Date and Time:** |
| | : | July 26, 2022 at 10 a.m. |

**REPLY OF KRISTIE LYNN DOYLE IN SUPPORT OF OBJECTION TO CONTINUING
THE PRELIMINARY INJUNCTION TO JOHNSON & JOHNSON**

Kristie Lynn Doyle in the above-captioned case, by and through her counsel Kazan, McClain, Satterley & Greenwood, A Professional Law Corporation, and local counsel Saiber LLC, hereby submits this reply ("Reply") in support of her objection to continuing the Preliminary Injunction entered in this matter [Dkt. 1635] (the "PI Order") against non-debtor Johnson & Johnson ("J&J").[1]

**INTRODUCTION**

1. Ms. Doyle is an active member of the Talc Claimant Committee and the widow of decedent Daniel Doyle. The survivorship and wrongful-death action brought by her and her son (collectively, "Plaintiffs") has been pending in the Superior Court of California, County of Santa Clara (the "State Court") since August 2018 and has been ready for trial since September 2021. However, the September 2021 trial date was vacated because of the automatic stay as to Debtor LTL Management LLC ("Debtor") and the resulting PI Order.

2. Ms. Doyle requests that this Court modify the PI Order to allow Plaintiffs' case to proceed to trial against J&J. If this Court modifies the PI Order and allows Plaintiffs' case to proceed in State Court, then the State Court is ready to set the case for trial in either September or October 2022.

3. Contrary to Debtor's arguments, Plaintiffs' claims for the wrongful death of Mr. Doyle heavily favor the modification of the PI Order.

4. *First*, allowing Plaintiffs' case to proceed in State Court aids in mediation efforts and estimation. Debtor steadfastly denies that Johnson's Baby Powder ever contained asbestos or asbestiform fibers. Plaintiffs and other claimants have substantial evidence to the contrary. Given the parties' divergent positions, a jury trial on these issues in Plaintiffs' case will aid the interest

---

[1] In support of this Reply, Ms. Doyle also submits the Declaration of Joseph Satterley ("Satterley Decl.").

3176889.1                                                  2

of creditors because it will assist in mediation efforts and help establish an estimation mechanism if and when a trust is created. This will occur well before June 2023, which is the date Debtor believes its proposed protracted estimation process will conclude, because Plaintiffs' case is ready for trial and the State Court is prepared to set a trial date in September or October 2022. Thus, if this Court modifies the PI Order, it is highly likely that the trial of Plaintiffs' case concludes before the end of 2022—several months before Debtor's June 2023 target date for the conclusion of estimation proceedings.

5.  *Second*, modifying the PI Order is necessary to permit Plaintiffs' case against J&J to be concluded in State Court. "Significantly, relief from the stay may be granted when it is 'necessary to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial.'" *In re Mid-A. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003). Here, it is undisputed that Plaintiffs' case is ready for trial against J&J. Further, the State Court is ready to assign Plaintiffs' case to trial and will give it "priority" because it has been reset multiple times. Debtor omits these key facts from its responsive filing and merely lumps Ms. Doyle with other Enjoined Talc Claimants. As a result, Debtor argues that a protracted estimation process that will conclude by June 2023 prevents Ms. Doyle's case from languishing in State Court and on appeal for several years. This is wrong because Debtor ignores the facts. This is also improper because whether "cause" exists to modify the PI Order is a fact-driven analysis based on "'***the totality of the circumstances in each particular case***.'" *In re Mid-Atlantic*, 304 B.R. at 129-130 (emphasis added). And the totality of the circumstances here warrants modification of the PI Order so that Ms. Doyle is allowed to see her case completed.

6.  *Third*, modifying the PI Order does not adversely affect Debtor or J&J. Debtor **concedes** that modifying the PI Order has no adverse effect on J&J. As to Debtor, modifying the

PI Order likewise does not adversely affect it because Ms. Doyle and her son are pursuing claims against J&J only, which is a "well-settled" basis for "granting relief from the automatic stay for 'cause'" *In re Mid-Atlantic*, 304 B.R. at 130. And any purported indemnification that Debtor may have against a party in Plaintiffs' case has no impact on Debtor's reorganization because the indemnification "would be treated like any pre-petition, unsecured claim." *In Re: All Seasons Resort, Inc.*, 79 B.R. 901, 905 (C.D. Cal. 1987); 11 U.S.C. § 502(e)(1)(B). In contrast, the clear damage to Ms. Doyle and her son is "the hardship of being forced to wait for an indefinite and…a lengthy time before [her] causes are heard." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983).

7. Debtor's reliance on generalities, rather than facts specific to Ms. Doyle's claims against J&J, is legally and factually flawed. Accordingly, Ms. Doyle requests that this Court deny any further extension of the PI Order so that she may proceed with the trial of Plaintiffs' claims against J&J, and for such other relief to which she is entitled.

**FACTUAL BACKGROUND**

**I.    In August 2018, Ms. Doyle and Her Husband Filed Suit in State Court for His Asbestos Exposure and Resulting Mesothelioma.**

8. In June 2018, Mr. Doyle was diagnosed with epithelial/sarcomatoid mesothelioma, an incurable and inevitably fatal cancer. [Personal Injury Complaint, Exh. A to Satterley Decl. at 4:3-4.] Mr. Doyle was only 47 years old at the time of his diagnosis. [*Id.* at 3:17.]

9. On August 27, 2018, Mr. Doyle and Ms. Doyle were the named plaintiffs in a personal injury action filed in State Court. [Exh. A to Satterley Decl.] They alleged that "[a]t all times since his birth on November 29, 1970, Mr. Doyle was exposed to asbestos through his and his family members' personal, daily use of Johnson & Johnson's asbestos-containing talc powder products." [*Id.* at 3:17-25.]

10. On December 27, 2018, Mr. Doyle died from mesothelioma. [Satterley Decl. at ¶ 7.] As a result, the trial date was vacated. [*Id.*] Mr. Doyle is survived by Ms. Doyle and his son Ethan Doyle. [Amended Complaint, Exh. B to Satterley Decl. at 2:3-8.]

**II.    In March 2019, Ms. Doyle Filed an Amended Complaint and Alleged Survivorship and Wrongful Death Claims Against J&J.**

11. On March 8, 2019, the State Court granted Ms. Doyle's motion to file an amended complaint naming her and her son as plaintiffs, and to allege claims for survivorship and wrongful death against J&J. [Satterley Decl. at ¶ 8 and Exh. B thereto.]

**III.    The Underlying Asbestos Action Has Been Ready for Trial Since September 2021.**

12. On August 9, 2019, the State Court set Plaintiffs' case for a jury trial on May 11, 2020. [Satterley Decl. at ¶ 9.] However, because of the COVID-19 pandemic, the State Court vacated the trial date. [*Id.*]

13. On April 6, 2021, Plaintiffs' case was set for trial on September 7, 2021. [Satterley Decl. at ¶ 10.] Fact discovery closed and was completed on or around July 9, 2021. [*Id.* at ¶ 11.] Expert depositions were completed. [*Id.* at ¶ 12.] Except for J&J's review of certain SEM stubs in Plaintiffs' possession, all expert discovery has been completed. [*Id.*]

14. On August 27, 2021, Plaintiffs and J&J appeared before Judge Sunil Kulkarni in State Court for a Mandatory Settlement Conference. [Satterley Decl. at ¶ 13.] The parties were unable to resolve the matter. [*Id.*]

15. During late August and early September 2021, the parties filed and served their motions in limine and oppositions thereto, as well as page-and-line designations. [Satterley Decl. at ¶ 14.]

16. Plaintiffs' case was awaiting a trial assignment and would have proceeded to trial but for J&J and Debtor's filing in State Court of the Notice of Bankruptcy Filing and Reservation of Rights. [Satterley Decl. at ¶ 15.] As a result, the trial date was vacated for the third time. [*Id.*]

**IV.  The State Court Is Ready to Set Plaintiffs' Case for Trial in Either September or October 2022.**

17. On November 2, 2021, the State Court held a trial-setting conference to discuss how this bankruptcy case affects Plaintiffs' claims against J&J. [Satterley Decl. at ¶ 16.] After considering the parties' arguments, the State Court set Plaintiffs' case for a jury trial on April 11, 2022. [*Id.*]

18. On April 15, 2022, Judge Amber Rosen was assigned to try Plaintiffs' case. [Satterley Decl. at ¶ 17.] After learning that this Court will revisit the PI Order on June 29, 2022, the trial date was vacated for the fourth time. [*Id.*] Judge Rosen set a Status Conference on July 14, 2022. [*Id.*]

19. The Status Conference proceeded on July 14, 2022, with Plaintiffs and J&J appearing through their respective counsel of record. [7/14/22 Tr., Exh. C to Satterley Decl. at 2:1-3:7.] After updating the State Court with the status of this case, including the upcoming July 26th omnibus hearing, the State Court mentioned that it was prepared to set Plaintiffs' case for trial on either September 13, 20, or 27, 2022. [*Id.* at 4:14-6:17, 7:14-19.] Further, if the case returns to State Court one month after the July 26th omnibus hearing, the trial date would likely be in October 2022. [*Id.* at 7:14-19.] Finally, Plaintiffs' case has "priority" status because it has been reset multiple times. [*Id.* at 8:15-24.]

## DISCUSSION

20. The PI Order, filed on March 7, 2022, allows Ms. Doyle to "seek relief from any of [its] provisions…for cause shown." [Dkt. 1635 at ¶ 7.]

21. Since the PI Order was filed, the parties now have more information on the speed by which Debtor and J&J intend to resolve the bankruptcy case. About three months after the PI Order was filed, Debtor proposed that the parties engage in a "two-phase" estimation process that would run now through June 2023, including a year of discovery and a two-week trial to make "findings" regarding Debtor's liability to talc claimants, including Ms. Doyle. [Dkt. 2473 at 7-12.] As noted on the record, this Court is "prepared to take any reasonable steps to process any settlement that could be reached, and move forward with a consensual plan if there were agreement." [7/6/22 Tr. at 5:6-13.] For several reasons lifting the stay imposed by the PI Order on Ms. Doyle's case is a viable solution to give value to the claim of other talc claimants, to propel this case forward from the stasis it is in presently, and protect Ms. Doyle's constitutional right to a jury trial.

### I. Allowing Plaintiffs to Try Their Case Aids in Mediation Efforts and Estimation.

22. Debtor argues that there "is no basis to modify the PI Order" even if the parties are at an impasse during the mediation process. [Dkt. 2631 at 10-11.] According to Debtor, only a protracted estimation process will promote the prospects for settlement. [Dkt. 2726 at ¶ 1.] Debtor is wrong.

23. A jury trial in Plaintiffs' case will assist in mediation efforts and help establish an estimation mechanism. The parties dispute the asbestos content of Johnson's Baby Powder. As a result of the parties' divergent positions, a jury trial on these issues will aid the interest of creditors because it will assist in mediation efforts and help establish an estimation mechanism if and when a trust is created. As the court recognized in *Mid-Atlantic*, "permitting the state court action to proceed would not prejudice Mid-Atlantic's creditors since resolution of the issues before the state court must be addressed and damages, if any, fixed so that the extent of creditors' claims are known." *In re Mid-Atlantic*, 304 B.R. at 130-131.

24. Further, the resolution of Ms. Doyle's case will occur well before Debtor's target date of June 2023 for the conclusion of the estimation process. But for the PI Order, Plaintiffs' case would have proceeded to trial by as early as September 2022. The State Court is ready to promptly set Ms. Doyle's case for trial if and when this Court modifies the PI order and allows Ms. Doyle's case to proceed in State Court. Hence, it is likely that Ms. Doyle's case will be complete before the end of 2022—several months before Debtor's June 2023 target date for the conclusion of estimation proceedings.

II. **Modifying the PI Order Allows Ms. Doyle to Conclude Plaintiffs' Case Against J&J in State Court.**

25. Debtor omits from its response any mention of the unique circumstances of Plaintiffs' case. This is misleading and improper. Indeed, Debtor omits from its response the undisputed fact that Plaintiffs' case has been pending since August 2018 and ready for trial since September 2021. Thus, Debtor's attempt to lump Ms. Doyle with the 430 mesothelioma claimants and 38,000 ovarian cancer claimants does not withstand scrutiny.

26. By claiming that Plaintiffs' case is not meaningfully different from any other talc case against J&J, Debtor then argues that Plaintiffs' case will take "years to complete." [Dkt. 2631 at ¶ 30.] This argument lacks merit for two reasons.

27. First, Debtor ignores that the "cause" showing required under section 362 of the Bankruptcy Code and referenced in the PI Order is a fact-driven analysis. The "Bankruptcy Code does not define the term 'for cause,' leaving courts to 'consider what constitutes cause based on ***the totality of the circumstances in each particular case***.'" *In re Mid-Atlantic*, 304 B.R. at 129-130 (emphasis added). Indeed, the "term 'cause' is viewed by many courts as a 'broad and flexible concept'" and a "bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause." *Id.*, citing *In re Rosen*, 208 B.R. 345, 356 (D.N.J.1997). Thus, Debtor's

argument is contrary to established case law that this Court must determine "cause" under the PI Order on a case-by-case basis. *Matter of Henry*, 173 B.R. 878, 882 (Bankr. D.N.J. 1993).

28. Second, Debtor makes no mention that Plaintiffs' case is ready for trial and would result in more expedited treatment and recovery of Plaintiffs' claims in State Court. Indeed, all pre-trial motions and page-and-line designations have been filed, fact discovery is complete, a mandatory settlement was completed without resolution, and expert discovery will be complete once J&J obtains SEM stubs from Plaintiffs. [Satterley Decl. at ¶¶ 10-14.] "Significantly, relief from the stay may be granted when it is 'necessary to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial.'" *In re Mid-A. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003). Under *Mid-Atlantic*, the fact that Plaintiffs' case is ready for trial warrants modification of the PI Order.

### III. Modifying the PI Order Has No Adverse Effect on Debtor and J&J.

29. Debtor **concedes** that modifying the PI Order has no adverse effect on J&J. [*See* Dkt. 2429 at 15, fn. 14 (the claimant's "focus on the alleged lack of adverse effect on the J&J is beside the point. In considering the [Motion to Lift Stay], the focus is on the irreparable harm that would result to the Debtor if the stay were to be lifted.").]

30. Modifying the PI Order also has no adverse effect on Debtor. First, Plaintiffs are pursuing claims against J&J only, which is a "well-settled" basis for "granting relief from the automatic stay for 'cause'" *In re Mid-Atlantic*, 304 B.R. at 130. Second, any purported indemnification that Debtor may have against a party in Plaintiffs' case has no impact on Debtor's reorganization because the indemnification "would be treated like any pre-petition, unsecured claim." *In Re: All Seasons*, 79 B.R. at 905; 11 U.S.C. § 502(e)(1)(B).

31. "A stay of indefinite duration in the absence of pressing need is [an] abuse of discretion." *Landis v. North Amer. Co.*, 299 U.S. 247, 254-255 (1936). Here, the clear damage to

Ms. Doyle and her son is "the hardship of being forced to wait for an indefinite and…a lengthy time before [their] causes are heard." *Gold,* 723 F.2d at 1076.

## CONCLUSION

32. For the reasons and based on the authorities set forth above, Ms. Doyle respectfully requests that this Court modify the PI Order so Plaintiffs may prosecute their claims against J&J in State Court, and for such other relief to which she is entitled.

    Respectfully submitted:

    KAZAN, McCLAIN, SATTERLEY & GREENWOOD, A Professional Law Corporation

    - and -

    SAIBER LLC
    *Counsel for Kristie Lynn Doyle*

    By:   /s/ John M. August
           JOHN M. AUGUST

DATED: July 19, 2022