UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:    jeffrey.m.sponder@usdoj.gov
    lauren.bielskie@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>LTL MANAGEMENT LLC,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>Hearing Date: November 16, 2022 at 10 am<br><br>Honorable Michael B. Kaplan, Chief Judge |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS CONFIRMING PROCEDURES FOR THE REIMBURSEMENT OF EXPENSES INCURRED BY COMMITTEE MEMBER REPRESENTATIVES**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), by and through his undersigned attorneys, hereby submits this objection to the Motion of the Official Committee of Talc Claimants Confirming Procedures for the Reimbursement of Expenses Incurred by Committee Member Representatives (the "Motion") (Dkt. 3111) and in support of his Objection states as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## I. PRELIMINARY STATEMENT

1. The basis of the Motion is the unsupported factual allegation that the individual Talc Claimants Committee (the "TCC") members are unable to perform their committee duties. Due to this alleged inability, purportedly each of the members has designated a representative to act on his or her behalf. The law, however, is clear—if a TCC member is unable to perform his or her duties, the remedy is to replace that member, not have them decide who will act in their stead or delegate their committee membership to another person.

2. Ten of the eleven TCC members (the "Individual Members") are individuals asserting personal injury claims related to their use of or exposure to (or that of a deceased relative) talc supplied by a predecessor of the Debtor.[2] Four of the ten Individual Members assert claims as estate representatives of deceased claimants (the "Estate Members").[3] The TCC members are the actual creditors of the Debtor's estate, and as members of the TCC they have been charged with the duty to represent the interests of all personal injury claim holders. They have not been given the power to discharge their fiduciary duties by delegating them to another.

3. Section 503(b)(3)(F) of the Bankruptcy Code allows reimbursement of reasonable costs incurred by actual TCC members in connection with performance of their committee duties. It does not allow reimbursement of costs incurred by a member's proxy.

## II. JURISDICTION

4. This Court has jurisdiction to hear and determine this Objection.

---

[2] The eleventh member is Blue Cross Blue Shield of Massachusetts.

[3] The four Estate Members are Kristie Doyle, Darlene Evans, William Henry and Tonya Whetsel. They do not personally suffer from injuries allegedly caused by exposure to talc powder.

5. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. And under 28 U.S.C. § 586(a)(3)(A), the U.S. Trustee is charged with reviewing and commenting on applications for compensation and reimbursement under 11 U.S.C. § 330 and objecting when the U.S. Trustee considers it appropriate. *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 842 (3d Cir. 1994). Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See In re Columbia Gas Systems, Inc.*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and the issues raised in this Objection. Indeed, the U.S. Trustee is statutorily empowered to review and object to fee and cost requests. 28 U.S.C. § 586(a)(3). *See also, In re Busy Beaver Building Centers, Inc.*, 19 F.3d at 842-43 (Debtors often do not object to their own counsel's fees because the fees often come out of creditor recoveries—not the reorganized debtor's assets—or because the debtor is not inclined to object to the fees of attorneys who made it possible for the debtor to stay in business. Creditors often do not object to fee applications as a perceived professional courtesy or for fear of retaliation); *In re Armstrong World Industries, Inc.*, 366 B.R. 278, 281 n.2 (D. Del. 2007) (same).

### III. FACTUAL AND PROCEDURAL HISTORY

**A. Tort Claimants Committee**

7. On October 14, 2021, LTL Management, LLC (the "Debtor"), filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "N.C. Court").

8. On October 28, 2021, a Motion to Appoint an Official Committee of Talc Claimants was filed by the Office of the United States Bankruptcy Administrator.[4] (*See* Dkt. 227). On November 8, 2021, the N.C. Court entered an order appointing an eleven (11) member TCC. (*See* Dkt. 355). The order did not contain the home addresses for the Individual Members. Rather, the order noted they could be reached through the third-party counsel representing them in connection with their claims against the Debtor.[5]

9. On November 16, 2021, the N.C. Court entered an order transferring venue of this case to the District of New Jersey. (*See* Dkt. 416).

10. Due to the pandemic, after the case was transferred to this Court, all hearings have been conducted remotely via Court Solutions or Zoom. Even after this Court began conducting in-person hearings, remote attendance has always been available. On occasion this Court still conducts status conferences solely via Zoom or Court Solutions.[6]

11. On December 9, 2021, the Court entered an *Order Establishing Procedures for the Allowance of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* (the "Interim Compensation Order"). (*See* Dkt. 761). Pursuant to paragraph 7 of the Interim Compensation Order, TCC members may "submit statements of expenses **(excluding third-party counsel expenses of individual Committee members)** and supporting

---

[4] The Western District of North Carolina is not part of the United States Trustee system, and as a result no United States Trustee participated in this case prior to its transfer to this Court. *See* 28 U.S.C. § 581.

[5] The N.C. Order listed the 11 chosen members and noted they could be contacted in "care of" identified lawyers and law firms. The order did not use the word "represented" as suggested by the TCC. *See* Motion, ¶10. The Notice filed by the U.S. Trustee listed "counsel" for an appointed member, and also did not use the word "represented." *Id.* at ¶¶ 12 and 13; and Dkt. 965.

[6] By way of example, the October 25, 2022, Status Conference was conducted solely via Zoom.

vouchers to the Committee's counsel, which counsel will collect and submit the Committee members' requests for reimbursement in accordance with the Compensation Procedures." (*Id.*) (emphasis added).

**B. Motion**

12. In September 2022, the TCC filed six expense statements (the "Statements") for five third-party firms representing Individual Members, one of whom was an Estate Member. (*See* Dkts. 2962 – 2965, 2985, 3020 and 3072). The covered time periods ran generally from the Fall of 2021 through the Spring of 2022. A total of over $190,000 was sought as reimbursement for multiple attorneys to attend zoom hearings in person and unidentified meetings. None of the expenses were incurred by an Individual Member.

13. On September 16, 2022, the Statements were withdrawn without prejudice. (*See* Dkt. 3049).[7]

14. The Motion was filed by the TCC on October 4, 2022. The TCC alleges that the Individual Members "have each been permitted to designate a representative to appear and act on their behalf as necessary and to keep the member fully apprised of matters for which the member is unable to attend personally." (*See* Motion, ¶1). The "Representatives" (an undefined term used in the Motion) allegedly "serve an important role assisting the Individual Members in the

---

[7] The TCC inaccurately claims the U.S. Trustee objected to the Statements "absent an Order expressly authorizing such reimbursement." *Id. at* ¶ 18. TCC counsel was advised by counsel for the U.S. Trustee that the reimbursement of expenses sought by way of the Statements was not permitted under the Bankruptcy Code, Local Rules or the Interim Compensation Order entered in this case.

performance of their duties as committee members by, among other acts, participating in and attending hearings before the Court." (*See Id.* at ¶2).[8]

15. The TCC seeks a court order "expressly providing the Representatives permission to seek the reimbursement of their non-legal expenses incurred as the representatives for the Individual Members." *See Id.* at ¶4. The expenses will relate to the Representatives carrying out the "committee obligations of Individual Members….." S*ee Id.* at ¶22.

## IV. ARGUMENT

### A. The Individual Members Must be Capable of Performing Their Fiduciary Duties

16. Each of the TCC Individual Members has a fiduciary duty to represent talc personal injury creditors. "Among the duties assumed by Committee members are ''fiduciary dut[ies] of undivided loyalty and impartial service to all creditors.'' *In re Pierce,* 237 B.R. 748, 758 (Bankr. N.D.Cal.1999) (citation omitted). "If a member of a committee is unwilling or unable, due to conflicts of interest or any other reason, to exercise his or her fiduciary obligations, the UST should take the steps necessary to remove that member from the committee." *Id.*

17. The TCC asserts that that the Court Orders appointing the TCC indicate that each of the Individual Members has appointed a Representative. (Motion, ¶2). An order that states an individual may be contacted through his or her counsel, as opposed to identifying his or her personal home address, phone number and email address, does not equate to the Court approving appointed Representatives to carry out an Individual Member's duties.

---

[8] The Motion does not address the difference between a "Representative" and the multiple Court approved TCC professionals that are charged with the responsibility to act on behalf of the TCC by, *inter alia*, appearing at hearings, keeping the members well advised and representing the interests of the TCC and its constituents. In this Case, ten (10) professionals currently submit fee applications in connection with the services they provide on behalf of the TCC.

18. The TCC also claims that the Individual Members (as in other mass tort bankruptcy cases) "have each been permitted to designate a representative to appear and act on their behalf as necessary and to keep the member fully apprised of matters for which the member is unable to personally attend." (*Id.* at ¶1). There is no factual or legal basis for the claim that this is an allowed process in mass tort cases. Nor is there any support for the idea that this Court has in fact allowed this conduct.

19. The TCC further claims that the "Representatives" (all of whom are personal injury counsel not only for the Individual Member but also for numerous other personal injury claimants) "have been appointed to represent" the Individual Members and to assist them in carrying out their obligations. (*Id.* at ¶22). To the extent, however, that any TCC members need advice and assistance, they are to turn to the multiple Court-approved TCC professionals, all charged with the responsibility to act on behalf of the TCC by, *inter alia*, appearing at hearings, keeping the members well advised and representing the interests of the TCC and its constituents. In this Case, ten (10) professionals currently submit fee applications in connection with the services they provide on behalf of the TCC. This Court, through the retention orders approving TCC professionals, has authorized those firms to act and appear on behalf of the TCC and its members and to keep them well apprised when the member cannot attend.

20. This Court has continued to make hearings available electronically to all interested parties, including Individual Members who may not want to travel. Between the presence of TCC professionals and the ability to engage in the hearings in real time, the Individual Members should be able to personally fulfill their fiduciary duties as TCC members. The Individual Members may also participate in meetings, wherever they are held, via telephone conferences or various interactive programs such as Zoom or Court Solutions.

21. The Delaware Bankruptcy Court in the related *Cyprus Mines* case emphasized the need for personal injury claimants on a creditor's committee to recognize they have the same responsibilities and duties as do committee members in other types of bankruptcy cases. *In re Cyprus Mines Corporation,* 2021 WL 2105427 (Bankr. D. Del. May 18, 2021). "While they may be assisted by their individual counsel, committee members cannot abdicate their role in favor of their counsel and their counsel do not sit 'by proxy' or otherwise on creditor committees." *Id.* at *4. If a committee member does not want to take on the fiduciary duty "or cannot subsequently fulfill it, he should not ask to serve on the committee or should resign." *Id.* at *4 and *5.

22. The same is true here. If Individual Members are still not able to fulfill their fiduciary responsibilities through interaction with the TCC professionals and the use of the multiple means of electronic participation, they should inform the U.S. Trustee and the Court of such circumstances, in order that the possible need for replacing such Individual Member can be properly considered.[9]

**B. No Legal Basis for the Relief Sought Exists**

23. The authority for payment of committee member expenses is found in section 503(b)(3)(F) of the Bankruptcy Code, which provides a committee member may be reimbursed for expenses "incurred in the performance of the duties of such committee." There is no authority in the Bankruptcy Code for payment of expenses incurred by personal counsel or a representative of a committee member.

24. Section 503(b)(4) of the Bankruptcy Code allows as an administrative expense reimbursement of actual and necessary expenses incurred by an attorney representing parties

---

[9] In addition, to the extent personal attendance by a TCC member is necessary, as claimed in the Motion, there is no evidence presented that any Individual Member, and in particular any Estate Members, have been unable to attend or otherwise discharge their duties as TCC members.

identified in sections 503(b)(3)(A) – (E). Notably, subsection (F), which refers to committee members, is not included in section 503(b)(4). Accordingly, professional fee expenses of individual committee members—as opposed to those of retained committee professionals—are not allowed as administrative expenses pursuant to sections 503(b)(3)(F) and 503 (b)(4). *See In re Lehman Brothers Holdings, Inc.,* 508 B.R. 283, 290 (S.D.N.Y. 2014) ("the structure of §503(b)(3) and (4) glaringly exclude professional fee expenses for official committee members."). The "[s]tatutory history confirms this omission was intentional." *Id.*

25.  Before 2005, committee members could recover personal attorney fees incurred in connection with their committee duties. Section 503(b)(4) had permitted "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection." 11 U.S.C. § 503(b)(4) (2000) (amended 2005). As committee members' expenses were allowed by section 503(b)(3)(F), their attorney fees for committee-related work were recoverable under the pre-BAPCPA text of Section 503(b)(4). *See First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 403 (3d Cir. 1999) ("Although we acknowledge that the plain language of § 503(b)(4) presents serious tension with the scheme for retention of professionals by the committee as a whole created by § 1103, it is insufficient reason to justify failure to follow the unambiguous directive contained in the language of § 503. Accordingly, we leave any redrafting of the statute in Congress' hands.").

26.  The 2005 amendment of Section 503(b)(4) added specific references to subparagraphs (A), (B), (C), (D) and (E) of section 503(b)(3). The added references make clear that committee members are not entitled to reimbursement as an administrative expense for fees or expenses of their personal professionals. 4 COLLIER ON BANKRUPTCY ¶ 503.LH[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed). *See also In re Adelphia Commc'ns Corp.*, 441 B.R. 6,

12 (Bankr. S.D.N.Y. 2010) ("Sections 503(b)(3)(D) and 503(b)(4) provide express authority for the payment of a <u>nonfiduciary</u> creditor or equity security holder's fees.") (emphasis added). *See also* Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. (2005) at 142, *reprinted in* 2005 U.S.C.C.A.N. 88, 201 ("Section 1208 of the Act amends section 503(b)(4) of the Bankruptcy Code to limit the types of compensable professional services rendered by an attorney or accountant that can qualify as administrative expenses in a bankruptcy case. Expenses for attorneys or accountants incurred by individual members of creditors' or equity security holders' committees are not recoverable . . . ."). Thus, post-BAPCPA, official committee members may not recover any attorney fees or attorney expenses. Identifying counsel as "representatives" is simply an attempt at an end-run around the statutory provisions.

27. The Interim Compensation Order correctly reflects the law.[10] TCC members may receive reimbursement for reasonable and necessary expenses incurred in carrying out their fiduciary duties. Third-party counsel are not permitted to recover such expenses pursuant to the 2005 changes to the Bankruptcy Code. There is no ambiguity. The TCC's belated attempt to have the Court reconsider the Interim Compensation Order is without legal or factual support. There are no "appointed representatives" as none are provided for under the Bankruptcy Code or orders of this Court. Further, TCC members may not abdicate their fiduciary roles to another.

---

[10] As support, the TCC points to payment practices in *In re Bestwall, LLC,* Case No. 17-31795 (Bankr. W.D. N.C.) (Motion, ¶28) and to an order entered in *Aearo Technologies LLC,* Case No, 22-02890 (Bankr. S.D. Ind.). Practices in those courts are not binding here, particularly when the Code itself does not allow it. Moreover, no committee member has sought expense reimbursement for a representative in Aearo, and thus the issue of whether reimbursement is permissible in that case has not yet been directly raised or decided.

Document    Page 11 of 11

## V. RESERVATION OF RIGHTS

28. Notwithstanding the foregoing, to the extent the Court approves the Motion, the U.S. Trustee reserves any and all rights to review and object to any expense reimbursement filed in this case pursuant to section 503(b)(3)(F) or any other provision of the Bankruptcy Code, or any theory under which any "representative" or counsel submits such requests.

## VI. CONCLUSION

29. The U.S. Trustee respectfully requests that this Court deny the Motion and grant such other relief as this Court deems fair and just.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By:  */s/ Jeffrey M. Sponder*
Jeffrey M. Sponder
Trial Attorney

By:  */s/ Lauren Bielskie*
Lauren Bielskie
Trial Attorney

Dated: November 3, 2022