**GIBBONS P.C.**
Robert K. Malone
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
rmalone@gibbonslaw.com
*Co-Counsel for the State of New Mexico*
*and State of Mississippi*

-and-

**MASSEY & GAIL LLP**
Jonathan S. Massey (admitted *pro hac vice*)
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
(202) 652-4511
jmassey@masseygail.com
*Co-Counsel for the State of New Mexico*
*and State of Mississippi*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br>　　　　　　　Debtor. | Chapter 11<br><br>Case No.:  21-30589 (MBK)<br><br>Judge:  Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF NEW MEXICO, *ex rel.*<br>HECTOR H. BALDERAS, Attorney General,<br>and STATE OF MISSISSIPPI, *ex rel.* LYNN<br>FITCH, Attorney General,<br>　　　　　　　Defendants. | Adv. Pro. No.: 22-01231 (MBK) |

## MOTION OF STATES OF NEW MEXICO AND MISSISSIPPI FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 7

I.      The Opinion and Order Involve Matters of Public Importance. ............................ 8

II.     Certification Will Materially Advance the Progress of the Case. ......................... 13

III.    The Opinion and Order Involve Questions of Law for Which There Are No
        Controlling Decisions from the Third Circuit or Supreme Court. ........................ 14

        A.      The Question of the Source of Authority to Extend the Automatic Stay
                Generally and Specifically to Non-Debtor Joint Tortfeasors Is Worthy
                of Certification. ......................................................................................... 14

        B.      The Question of Whether a Bankruptcy Court May Extend Stay Relief
                Under Section 362(a) Against Police Power Actions Protected By
                Section 362(b)(4) Is Worthy of Certification. ........................................... 16

        C.      The Question of the Legal Standards Governing Section 105(a)
                Injunctions Against State Police Power Actions Is Worthy of
                Certification. .............................................................................................. 19

        D.      Whether the Bankruptcy Code Abrogates State Sovereign Immunity
                With Respect to Section 105(a) Injunctions Against State Police Power
                Actions Is Worthy of Certification. ........................................................... 25

CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*,
  527 U.S. 706 (1999) ............................................................................................................... 25

*Bond v. United States*,
  572 U.S. 844 (2014) ................................................................................................................. 9

*Brennan v. Poritz*,
  198 B.R. 445 (D.N.J. 1996) ............................................................................................ 22, 23

*Brock v. Morysville Body Workds, Inc.*,,
  829 F.2d 383 (3d Cir. 1987) ................................................................................ 10, 16, 18, 19

*Bullard v. Blue Hills Bank*,
  575 U.S. 496 (2015) ................................................................................................................. 7

*City & Cnty. of San Francisco v. PG&E Corp.*,
  433 F.3d 1115 (9th Cir. 2006) ............................................................................................... 10

*Ctr. Virginia Cmty. College v. Katz*,
  546 U.S. 356 (2006) ............................................................................................................... 26

*E.E.O.C. v. Hall's Motor Transit Co.*,
  789 F.2d 1011 (3d Cir.1986) ................................................................................................. 17

*Extraction Oil & Gas, Inc.*,
  No. 20-cv-1412, 2021 WL 3722229 (D. Del. Aug. 23, 2021) ............................................... 13

*Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*,
  471 U.S. 707 (1985) ................................................................................................................. 9

*In re 1820-1838 Amsterdam Equities, Inc.*,
  191 B.R. 18 (S.D.N.Y. 1996) ................................................................................................. 21

*In re Aearo Techs.*,
  No. 22-50059 (Bankr. S.D. Ind. Aug. 26, 2022 ..................................................................... 15

*In re Bankr. Appeal of Allegheny Health, Educ. & Rsch. Found.*,
  252 B.R. 309 (W.D. Pa. 1999) ....................................................................................... 10, 21

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004 .................................................................................................... 20

*In re Compton Corp.*,
  90 B.R. 798 (N.D. Tex. 1988) ............................................................................................... 21

*In re Essar Steel Minn. LLC*,
  No. 19-cv-397 (LPS), 2020 WL 3574743 (D. Del. July 1, 2020) .............................................. 8

*In re First All. Mortg. Co.*,
  264 B.R. 634 (C.D. Cal. 2001) ...................................................................................... 21, 22, 24

*In re Imerys Talc America, Inc.*,
  No. 19-10289 (Bankr. D. Del.) ................................................................................................ 15

*In re LTL Management, LLC*,
  637 B.R. 396 (Bankr. D.N.J. 2022) .......................................................................................... 1

*In re LTL Management, LLC*,
  638 B.R. 291 (Bankr. D.N.J. 2022) .......................................................................................... 1

*In re LTL Management, LLC*,
  640 B.R. 322 (Bankr. D.N.J. 2022) .......................................................................................... 6

*In re Mallinckrodt PLC*,
  Adv. Pro. No. 20-50850 (Bankr. D. Del. Nov. 25, 2020) ................................................... 12, 17

*In re Mystic Tank Lines Corp.*,
  544 F.3d 524 (3d Cir. 2008) .................................................................................................... 17

*In re Nortel Networks Corp.*,
  No. 09-10138(KG), 2010 WL 1172642 (Bankr. D. Del. Mar. 18, 2010) ................................... 8

*In re Nortel Networks, Inc.*,
  2016 WL 2899225 (D. Del. May 17, 2016) .............................................................................. 13

*In re Nortel Networks, Inc.*,
  669 F.3d 128 (3d Cir. 2011) ................................................................................................ 3, 17

*In re Olympia Holding Corp.*,
  161 B.R. 524 (M.D. Fla. 1993) ................................................................................................ 21

*In re Purdue Pharma L.P.*,
  Adv. Pro. No. 19-08289 (RDD) (Bankr. S.D.N.Y. Oct. 18, 2019) ..................................... 12, 17

*In re Purdue Pharma L.P.*,
  No. 19-10941 (S.D.N.Y. Aug. 11, 2020) .................................................................................. 12

*In re Qimonda AG*,
  470 B.R. 374 (E.D. Va. 2012) .................................................................................................... 8

*In re TK Holdings, Inc.*,
  No. 17-11375, Adv. Pro. No. 17-50880 (BLS) (Bankr. D. Del. Aug. 23, 2017) ..................... 12

*In re Tribune Media Co.*,
No. 15-1116-GMS, 2016 WL 1451161 (D. Del. Apr. 12, 2016) ................................................ 8

*In re Venoco LLC*,
998 F.3d 94 (3d Cir. 2021) ................................................................................................ 25, 26

*In re W.R. Grace & Co.*,
412 B.R. 657 (D. Del. 2009) ....................................................................................... 11, 12, 17

*In re Wolf Fin. Group, Inc.*,
No. 94B44009 (JLG), 1994 WL 913278 (Bankr. S.D.N.Y. Dec. 15, 1994) ........................... 21

*Lombardo v. Pa., Dept. of Public Welfare*,
540 F.3d 190 (3d Cir. 2008) .................................................................................................... 26

*Matter of Commonwealth Oil Refining Co.*,
805 F.2d 1175 (5th Cir. 1986) ............................................................................................ 21, 22

*Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*,
474 U.S. 494 (1986) ................................................................................................................ 9, 18

*New Orleans Gaslight Co. v. Drainage Comm'n of New Orleans*,
197 U.S. 453 (1905) ...................................................................................................................... 9

*Ohio v. Kovacs*,
469 U.S. 274 (1985) ...................................................................................................................... 3

*Penn Terra Ltd. v. Dept. of Env't Res.*,
733 F.2d 267 (3d Cir. 1984) ............................................................................................... passim

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) ...................................................................................................................... 26

*United States v. Nicolet, Inc.*,
857 F.2d 202 (3d Cir. 1988) ........................................................................................................ 17

*United States v. Wheeling-Pittsburgh Steel Corp.*,
818 F.2d 1077 (3d Cir. 1987) ...................................................................................................... 17

*Weber v. U.S. Trustee*,
484 F.3d 154 (2d Cir. 2007) ........................................................................................................ 13

**Statutes**

11 U.S.C. § 105(a) ................................................................................................................. passim

11 U.S.C. § 106(a) ......................................................................................................................... 25

11 U.S.C. § 106(a)(1) ................................................................................................................. 7, 25

11 U.S.C. § 1519(d) .................................................................................................... 10

11 U.S.C. § 1521(d) .................................................................................................... 10

11 U.S.C. § 362(a) ................................................................................................ passim

11 U.S.C. § 362(a)(3) .................................................................................................. 10

11 U.S.C. § 362(b) ...................................................................................................... 23

11 U.S.C. § 362(b)(4) .......................................................................................... passim

11 U.S.C. § 524(g) ...................................................................................................... 20

28 U.S.C. § 1334(b) ...................................................................................................... 5

28 U.S.C. § 1452(a) .................................................................................................... 10

28 U.S.C. § 158(d)(2)(A) ..................................................................................... 7, 8, 23

28 U.S.C. § 158(d)(2)(B) ..................................................................................... 1, 7, 23

28 U.S.C. § 959(b) ...................................................................................................... 10

Miss. Code Ann. § 75-24-9 ........................................................................................... 9

N.M. Stat. Ann. § 57-12-8 ............................................................................................. 9

N.M. Stat. Ann. § 8-5-2(B) ........................................................................................... 9

N.M. Stat. Ann. §§ 30-44-1 (1978) .............................................................................. 9

N.M. Stat. Ann. §§ 44-9-1 (1978) ................................................................................ 9

N.M. Stat. Ann. §§ 57-15-1 (1978) .............................................................................. 9

**Other Authorities**

1978 U.S. Code Cong. & Admin. News 5838 .............................................................. 18

1978 U.S. Code Cong. & Admin. News 5963, 6135 .................................................... 19

1978 U.S. Code Cong. & Admin. News 6299; S. Rep. No. 95-989 (1977) ................. 18

H.R. Rep. No. 595, 95th Cong., 2d Sess. 175 .............................................................. 19

H.R. Rep. No. 95-595 (1977) ....................................................................................... 18

https://www.factsabouttalc.com .................................................................................. 24

The State of New Mexico and the State of Mississippi ("the States"), by and through their undersigned counsel, respectfully move under 28 U.S.C. § 158(d)(2)(B) and Bankruptcy Rule 8006 for certification of direct appeal to the U.S. Court of Appeals for the Third Circuit the Order of October 27, 2022 granting the Debtor's motion for preliminary injunction (Dkt. 33) ("Stay Order") (see Declaration of Robert K. Malone dated November 3, 2022 ("Malone Decl.") at ¶ 3, Ex. A) and the October 4, 2022, Memorandum Opinion (Dkt. 31) ("Stay Opinion") (see Malone Decl. at ¶ 4, Ex. B) (collectively, the "Stay Opinion and Order"), and in support thereof state as follows:

## INTRODUCTION

This Court should certify the Stay Opinion and Order for direct appeal to the Third Circuit. They involve multiple issues of overriding public importance and questions of law as to which there are no controlling Third Circuit or Supreme Court decisions.  Certification would also materially advance the progress of the case by avoiding an immediate appellate proceeding in the district court on fundamental issues that will ultimately be decided by the Third Circuit.

This Court is familiar with the statutory standards for certifying direct appeals to the Third Circuit, which the Court previously applied to certify the now-pending appeals (Nos. 22-2003, *et al.* (3d Cir.) ("Creditors' Appeal")) of its orders denying the motions to dismiss the bankruptcy[2] and granting a preliminary injunction against talc claimants in the Talc Adversary Proceeding.[3] The same approach is appropriate here.

The States brought consumer protection actions ("State Actions") against Johnson & Johnson, Inc. ("J&J"), Johnson & Johnson Consumer Inc. ("Old JJCI"), and others.  The State Actions allege deceptive and unfair trade practices, false advertising, and related consumer fraud

---

[2] *In re LTL Management, LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022).
[3] *In re LTL Management, LLC*, 638 B.R. 291 (Bankr. D.N.J. 2022).

claims.  They do not assert talc-related personal injury claims or other types of causes of actions that might be part of the "res" of the Debtor's bankruptcy estate.

States have fundamental sovereign interests in enforcing their regulatory powers to protect consumers, which the Bankruptcy Code does not displace.  Congress recognized those interests in section 362(b)(4) of the Code, which specifically carves out state police powers from the automatic stay, as this Court recognized in its Stay Opinion (at 31–32).  Section 362(b)(4) provides for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police or regulatory power."  11 U.S.C. § 362(b)(4). Because Congress has expressly authorized States to enforce their police powers even against debtors that have filed for bankruptcy, a fortiori States should be permitted to enforce those powers against non-debtors like J&J.

There is no controlling Supreme Court or Third Circuit precedent upholding the power of a bankruptcy court to grant stay relief against state consumer protection actions enforcing state regulatory authority.  In fact, the Third Circuit has repeatedly permitted such actions to proceed against debtors in bankruptcy.  In *Penn Terra Ltd. v. Dept. of Env't Res.*, 733 F.2d 267 (3d Cir. 1984), for example, the Third Circuit reversed a bankruptcy court stay order preventing a state agency from enforcing state environmental laws against a debtor.  The Court of Appeals pointed to section 362(b)(4) and explained that "[t]he police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter."  *Id*. at 273.  "Where important state law or general equitable principles protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession."  *Id.*  The Supreme Court approvingly cited *Penn Terra* for the proposition that "[t]he

2

automatic stay provision does not apply to suits to enforce the regulatory statutes of the State."

*Ohio v. Kovacs*, 469 U.S. 274, 283 n. 11 (1985). *See also In re Nortel Networks, Inc.*, 669 F.3d

128, 140 (3d Cir. 2011) ("We have held that regulatory proceedings related to environmental

hazards, health and safety violations, and employment discrimination all fall within the police

power exception to the automatic stay.") (citing cases).

Nor is there binding Third Circuit or Supreme Court precedent on the standard governing

the issuance of an injunction under 11 U.S.C. § 105(a) against States exercising their police power

to protect public health and safety.  This Court applied the same injunction standard it has used in

cases involving private persons, even though States are fundamentally different from private

litigants, and even though state sovereignty is a significant consideration weighing heavily against

(and, according to some courts, entirely foreclosing) injunctive relief against police power actions.

The questions presented are of paramount importance.  The power of States to enforce

consumer protection laws against debtors in bankruptcy, as well as against non-debtor related

parties, is vital to ensuring public health and safety.  Staying state consumer protection regulatory

actions thwarts the ability of States to vindicate this important interest.  Moreover, the factors cited

by this Court in holding that the State Actions adversely impact the Debtor's reorganization could

be cited in most, if not virtually all, product liability, environmental, and similar bankruptcies.

Under that reasoning, the Bankruptcy Code would improperly have the effect of stripping States

of their sovereign police powers to protect their citizens in a wide swath of cases.  That would run

contrary to Congress' purpose in enacting section 362(b)(4) and render the provision largely

meaningless.

The Stay Opinion and Order present purely legal questions of state sovereign authority and

bankruptcy law.  There are no material issues of disputed fact.  An intermediate appeal to the

district court would only cause delay.  Given the health and safety concerns implicated here, prompt resolution of the States' authority to prosecute their Actions is imperative.

In addition, there are practical reasons for certifying a direct appeal.  Certification will place fundamental legal questions before the Third Circuit, affording it the option of resolving those questions in a timely fashion if it wishes to do so.  To be sure, the Third Circuit's decision in the pending Creditors' Appeal could moot this adversary proceeding.  But unless this Court certifies this appeal directly to the Third Circuit, the appellate court will lack the opportunity to decide whether to grant review and resolve these fundamental questions promptly, without an intervening district court appeal.

## BACKGROUND

On March 3, 2020, the State of New Mexico filed its First Amended Complaint against J&J, Old JJCI, and various Bausch entities (the "NM Action").  Adv. Dkt. No. 2-2 at 1.  The NM Action asserts violations of the New Mexico Unfair Practices Act, the New Mexico False Advertising Act, and "other common law and equitable causes of action" based on the "Defendants' wrongful marketing, sale and promotion of Defendants' asbestos-containing talcum powder products."  *Id.* at 2 ¶ 1.  The NM Action asserts claims "exclusively under the laws of the State of New Mexico," and the claims "are brought solely by the State and are wholly independent of any claims that individual consumers may have against Defendants."  *Id.* at 3 ¶¶ 2–3; *see also id.* at 7 ¶ 20 ("exclusively state law claims against Defendants").  The NM Action asserts that the Defendants "made false statements to [New Mexico consumers and] the general public" (*id,* at 9 ¶ 24), while "possess[ing] medical and scientific data that raised concerns regarding the presence of carcinogens" in talc products."  *Id.* at 10 ¶ 24.

On August 22, 2014, the State of Mississippi filed its Complaint, seeking—among other things—injunctive relief and civil penalties against J&J and Old JJCI (and against various Bausch

4

entities that have since settled the claims against them) (the "MS Action").  *See* Adv. Dkt. No. 2-3

at 2 ¶ 3.  The MS Action asserts violations of the Mississippi Consumer Protection Act, specifically

that the "Defendants engaged in misrepresentations and omissions in connection with the labeling,

advertisements, promotion, marketing, and sale of their Talc Products."  *Id.* at 2 ¶¶ 1, 5.  The MS

Action brings claims exclusively under the laws of the State of Mississippi.  *Id*. 3 ¶ 6.  The

Complaint expressly "disclaims any federal remedies," "does not assert any [federal] claim for

relief," and makes clear that its claims "are brought solely by the State and are wholly independent

of any claims that individual users of the Talc Products may have against Defendants."  *Id.* ¶¶ 7–

8; *see also id*. at 4 ¶ 10 ("This is a matter of grave public concern in which the State, as

representative of the public, has an interest apart from that of the individuals affected.").  The MS

Action alleges that, while "Defendants promote and market the Talc products as a means to

maintain freshness and cleanliness," "numerous studies" have revealed a possible "link" between

talcum powder and cancer.  *Id.* at 7 ¶ 24.  Thus, "Defendants purposely procured and disseminated

false, misleading, and deceptive information regarding the safety of the Talc Products."  *Id.* at 30

¶ 93.

By Order of October 27, 2022, this Court granted Debtor's motion for preliminary

injunction and enjoined the States from continuing to prosecute the State Actions pursuant to both

11 U.S.C. § 362(a) and 11 U.S.C. § 105(a).  In its Stay Opinion, this Court found "core," "arising

under," and "arising in" jurisdiction under 28 U.S.C. § 1334(b) because "Debtor's Motion

unquestionably implicates § 362(a), which is a substantive right under the Code."  Stay Opinion

at 13.  Further, the Court found "related to" jurisdiction because "continued prosecution of the

claims asserted in the State Actions could conceivably impact the administration of the bankruptcy

case."  *Id.* at 15.

This Court next held that extension of the automatic stay was appropriate under § 362(a). The Court acknowledged that the State Actions qualify as state police power actions exempt from the automatic stay under § 362(b)(4), up to the point of collecting civil penalties, but held that it could nevertheless extend the automatic stay to the State Actions under section 362(a): "While the statute makes clear that the '**filing** of a petition . . . does not operate as a stay' to the State Actions, nothing in the statute prevents a court from imposing or extending the stay under § 362(a) subsequent to the filing." *Id.* at 31–32 (emphasis in original).

This Court also held that an injunction under § 105(a) was appropriate. *Id.* at 33–44. It found that the Debtor had met its burden of demonstrating success on the merits, which this Court interpreted as requiring a showing of reasonable likelihood of successful reorganization. *Id.* at 34–35. This Court next applied the same standard of irreparable injury as it applied in the Securities Adversary Proceeding, *In re LTL Management, LLC*, 640 B.R. 322 (Bankr. D.N.J. 2022), explaining that "the test for whether irreparable harm has been demonstrated in the context of a bankruptcy case should encompass a broader view of the impact on the debtor and can take into account risks of negative consequences." Stay Opinion at 36 (quoting 640 B.R. at 341). This Court found that "continued litigation in the State Actions will have an adverse impact on the bankruptcy estate by hindering mediation efforts, impacting the claims liquidation and estimation processes, and possibly strengthening insurance defendants against coverage." *Id.* The Court also found that "Debtor has indemnification obligations for any talc-related liability under the 2021 Corporate Restructuring and the 1979 Agreement." *Id.* at 17.

With respect to harm to the nonmoving party, the Court found "minimal harm or prejudice to the States." *Id.* at 38. The Court was "skeptical" of the States' assertions otherwise, given

"omnipresent advertisements by the plaintiffs' bar, alerting consumers of the risks associated with continued use of talc products." *Id*.

The Court also found that a preliminary injunction would be in the public interest. *Id*. at 39–44. It held that state sovereign immunity was abrogated by 11 U.S.C. § 106(a)(1). *See id.* 40. The Court acknowledged that "[t]hese are valid public safety concerns that weigh against the injunctive relief sought" but concluded that "a temporary delay in resolution of the consumer protection claims is far outweighed by the potential adverse impact on administration of this bankruptcy." *Id.* at 42–43.

## ARGUMENT

28 U.S.C. § 158(d)(2)(A)–(B) "allows a broader range of interlocutory decisions [from bankruptcy courts] to make their way to the courts of appeals." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015). Sections 158(d)(2)(A)–(B) provide that this Court "shall" certify a direct appeal to the Third Circuit if it finds that any of the following four factors is present:

(1) the order "involves a question of law as to which there is no controlling decision of the [Third Circuit] or of the Supreme Court";

(2) the order "involves a matter of public importance";

(3) the order "involves a question of law requiring resolution of conflicting decisions"; or

(4) "an immediate appeal from the . . . order . . . may materially advance the progress of the case."

*Id.* § 158(d)(2)(A); *see also In re Essar Steel Minn. LLC*, No. 19-cv-397 (LPS), 2020 WL 3574743, at *3–4 (D. Del. July 1, 2020). "Certification is mandatory where a single condition is satisfied under 28 U.S.C. § 158(d)(2)(B)." *In re Tribune Media Co.*, No. 15-1116-GMS, 2016 WL 1451161, at *4 (D. Del. Apr. 12, 2016).

In this case, three factors are met: the Stay Opinion and Order involve matters of paramount public importance, as well as questions of law as to which there is no controlling decision. Further, an immediate appeal would materially advance the progress of the case because an appeal to the Third Circuit is inevitable, and an intermediate appeal to the district court would only delay ultimate resolution of the issues. All parties excerpt the Debtor also agreed that allowing the States' cases to proceed would materially advance resolution of the underlying bankruptcy case as well.

## I.    The Opinion and Order Involve Matters of Public Importance.

Certification is mandatory where the matter on appeal "involves important legal issues or important practical ramifications." *In re Qimonda AG*, 470 B.R. 374, 386 (E.D. Va. 2012). As this Court observed in certifying the Creditors' Appeal, "the questions, not necessarily legal questions, must transcend the litigants and involve legal questions which implicate the public and developing jurisprudence." Malone Decl. at ¶ 5, Ex. C, Mar. 30, 2022 Hr'g. Tr. ("3-30-22 Tr.") at 74:22–25; *see also In re Nortel Networks Corp*., No. 09-10138 (KG), 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010) (matter is of public importance if the issue on appeal "transcend[s] the litigants and involve[s] a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case").

Here, the "public importance" factor is easily met. The authority of States to use their police powers to protect public health and welfare is a matter of undeniable public importance. The regulation of health and safety is "primarily, and historically, a matter of local concern." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc*., 471 U.S. 707, 719 (1985). Courts have long recognized that "the public health and welfare is one of the most important purposes for which the police power can be exercised." *New Orleans Gaslight Co. v. Drainage Comm'n of New Orleans*, 197 U.S. 453, 460 (1905).

8

The NM Action seeks to enforce the New Mexico Unfair Practices Act and related statutes[4] whose purpose is the protection of the "public interest."  N.M. Stat. Ann. § 57-12-8; *see also* N.M. Stat. Ann. § 8-5-2(B) (authorizing the NM Attorney General to "prosecute . . . all actions and proceedings . . . in which the state may be a party or interested when, in his judgment, the interest of the state requires such action").  The MS Action similarly seeks to enforce the Mississippi Regulation of Business for Consumer Protection Act and secure appropriate relief "in the public interest."  Miss. Code Ann. § 75-24-9.

In *Penn Terra*, the Third Circuit observed that the police power embodies the "main bulwark of protection" by which governments protect their citizens, and "its abrogation is therefore a serious matter."  733 F.2d at 273.  "[T]he background principle that Congress does not normally intrude upon the police power of the States is critically important."  *Bond v. United States*, 572 U.S. 844, 863 (2014).

Congress has enacted a comprehensive scheme to ensure there is no federal bankruptcy interference with state police power actions, underscoring the importance of the questions presented.  "It is clear from the legislative history [of section 362(b)(4)] that one of the purposes of this exception is to protect public health and safety."  *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986).  In 1998, Congress strengthened the police power exception in section 362(b)(4) by "broadening the reach of the exception to include the automatic stay of acts designed to 'obtain possession of property of the estate or of property from the estate or to exercise

---

[4] New Mexico also sued to enforce the New Mexico Medicaid Fraud Act, N.M. Stat. Ann. §§ 30-44-1 (1978) *et seq.*; the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 44-9-1 (1978) *et seq.*; and the New Mexico False Advertising Act, N.M. Stat. Ann. §§ 57-15-1 (1978) *et seq.*

control over property of the estate.'" *In re Bankr. Appeal of Allegheny Health, Educ. & Rsch. Found.*, 252 B.R. 309, 323 (W.D. Pa. 1999) (quoting 11 U.S.C. § 362(a)(3)).

Section 362(b)(4) works in tandem with 28 U.S.C. § 1452(a), which makes state-court police power actions non-removable to federal court and thereby provides an additional protection against interference with state police power actions. *See City & Cnty. of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123 (9th Cir. 2006) ("The language of the police and regulatory power exceptions in the automatic stay context and in the removal context is virtually identical, and the purpose behind each exception is the same. Section 1452 and 11 U.S.C. § 362(b)(4) were designed specifically to work in tandem.") (internal quotation marks and citation omitted). 28 U.S.C. § 959(b), which requires that a debtor operate in compliance with state laws, also evidences Congress's intent that state consumer protection laws would continue to be enforced in bankruptcy. Further, Chapter 15 prohibits bankruptcy courts from enjoining "a police or regulatory act of a governmental unit" in granting relief upon recognition of a foreign proceeding. 11 U.S.C. § 1521(d); *see also id.* § 1519(d) (prohibiting such an injunction prior to a ruling on the recognition petition). Congress' comprehensive scheme confirms the importance of the questions here.

Certification is warranted for the further reason that the Stay Opinion and Order will affect proceedings far beyond this case. Every State has consumer protection laws, such as deceptive trade practices and false advertising statutes, that it uses to protect its citizens. And the same analysis that governs *state* police power actions governs *federal* regulatory enforcement actions. *See Brock v. Morysville Body Workds, Inc.,*, 829 F.2d 383, 387 n.5 (3d Cir. 1987).

The Order's rationale calls into question the ability of all levels of governmental entities to enforce regulatory laws against debtors (and related non-debtors) in bankruptcy. For example, this Court opined that whether Johnson's Baby Powder presents potential health risks is a common

10

issue between the State Actions and personal injury tort claims. Stay Opinion at 19-21. Even accepting (*arguendo*) the Court's premise, potential health and safety risks will be present in virtually all products liability or environmental bankruptcies. Using that factor to thwart state enforcement actions would turn section 362(b)(4) on its head. It is precisely when public health and safety is threatened that state police power actions are most necessary.

Similarly, this Court opined that State Actions alleging "knowing and intentional" misconduct could affect insurance coverage. *Id.* at 16. But virtually all debtors in products liability and environmental bankruptcies have insurance coverage. The same is true of this Court's reasoning that the State Actions could affect "ongoing mediation efforts and negotiations within this bankruptcy case" and "drain resources and divert attention away from the bankruptcy," *id.* at 21; that reasoning could be used in essentially all bankruptcies. The Stay Opinion and Order therefore have serious implications for the ability of any governmental entity to enforce regulatory laws against debtors (and related non-debtors) in bankruptcy.

Although other bankruptcy courts have granted stay relief against governmental regulatory enforcement actions, those decisions were more limited in scope and reasoning and turned on special considerations absent here. For example, in *In re W.R. Grace & Co.*, 412 B.R. 657 (D. Del. 2009), the court recognized that a section 105(a) injunction would interfere with the exercise of state police powers and therefore deemed it a "close call as to whether or not an injunction is appropriate." *Id.* at 666. The court relied on three factors not present here to tip the balance: (1) the underlying bankruptcy litigation had been pending for 8 years; (2) because the State had failed to timely file its claim, it would not recover any funds directly from the debtor; and (3) the State would not be able to recover any funds from the debtors' former officers. *Id.*

In *Mallinckrodt*, the order staying state police power actions was by consent.[5]  In *Purdue*, the injunction of government actions was largely by agreement, although originally contested,[6] and the district court's order related to a single case pending in Tennessee state court seeking damages and then only to the extent that the case was proceeding against a former officer of Purdue.[7]

In *In re TK Holdings, Inc. (Takata)*, No. 17-11375, Adv. Pro. No. 17-50880 (Bankr. D. Del.), the debtor had already proposed a plan (unlike Debtor here) to recall defective airbags under the supervision of the National Highway Traffic Safety Administration ("NHTSA"), which had already ordered a mandatory recall (unlike this case).  In addressing the police power actions of two States and a territorial government, the bankruptcy court acknowledged that section 105(a) injunctions against State actions face "a heavy burden" and that "a bankruptcy court should be chary of interfering with the exercise of a sovereign entity's police and regulatory power."[8] Recognizing, however, that the debtor's reorganization was an essential component of the recall scheme administered by the NHTSA, the court granted a short-term injunction for 90 days.  Thus, none of the prior orders by other bankruptcy courts enjoining state police power actions resemble the Stay Order in this case.

This Court has already recognized the landmark nature of this case and the national attention it has received.  3-30-22 Tr. at 75:4-8 ("[C]learly this goes beyond the litigants . . . .

---

[5] *In re Mallinckrodt PLC*, Adv. Pro. No. 20-50850, Dkt. 170, at 6 ¶ 3 (Bankr. D. Del. Nov. 25, 2020).

[6] *In re Purdue Pharma L.P.*, Adv. Pro. No. 19-08289 (RDD), Dkt. 89, at 4 n.2 (Bankr. S.D.N.Y. Oct. 18, 2019) (noting that the overwhelming majority of States "are not enjoined pursuant to this Order, but voluntarily consent to abide by the terms of this Order").

[7] Decision and Order Affirming the Bankruptcy Court's Preliminary Injunctions, *In re Purdue Pharma L.P.*, No. 19-10941, Dkt. 29 (S.D.N.Y. Aug. 11, 2020).

[8] Transcript of Hearing at 22:21-23:2, *In re TK Holdings, Inc.*, No. 17-50880 (Bankr. D. Del. Aug. 16, 2017).

[T]his impacts decisions and restructurings or potential restructurings beyond what's being litigated in this court."). The potential impact on the States' authority to protect public health and safety warrants certification directly to the Third Circuit.

## II.    Certification Will Materially Advance the Progress of the Case.

Certification is appropriate where ultimate resolution in the Court of Appeals is inevitable and where intermediate appeal to the district court would be only a way station on that journey. That is precisely the situation here: this Court's ruling resolving the adversary proceeding against the States implicates fundamental questions of state authority and sovereignty that demand appellate resolution. Where a bankruptcy court's ruling "will essentially determine the result of future litigation, the parties adversely affected by the ruling . . . will not give up until [it] becomes clear . . . that the ruling has the approval of the court of appeals." *Weber v. U.S. Trustee*, 484 F.3d 154, 158 (2d Cir. 2007). Because eventual "appellate review by the Third Circuit is inevitable, . . . having such review sooner rather than later may well result in materially advancing the progress of these cases." *In re Nortel Networks, Inc.*, 2016 WL 2899225, at *5 (D. Del. May 17, 2016); *see also Extraction Oil & Gas, Inc.*, No. 20-cv-1412, 2021 WL 3722229, at *6 (D. Del. Aug. 23, 2021) (certifying a direct appeal because "[a]ny ruling [] ma[de] [would] almost certainly be appealed to the Third Circuit").

This Court's reasoning in certifying the Creditors' Appeal to the Third Circuit is equally applicable here: "It seems senseless to me for issues that are going to be pursued, I have from every indication as far as possible up to the Circuit, if not beyond, that to have the parties expend the time, energy and funds . . . on an intermediate level appeal doesn't serve any purpose. It delays the progress of the case." 3-30-22 Tr. at 72:3-10. Certification is similarly appropriate here.

13

### III.    The Opinion and Order Involve Questions of Law for Which There Are No Controlling Decisions from the Third Circuit or Supreme Court.

This case presents at least four specific questions of law for which there are no controlling

Third Circuit or Supreme Court decisions:

(1)    The source of authority for extending the automatic stay generally and more specifically to non-debtor joint tortfeasors.

(2)    Whether a bankruptcy court may extend stay relief under section 362(a) against police power actions that the court itself has held are protected by section 362(b)(4).

(3)    The legal standards governing section 105(a) injunctions against state police power actions.

(4)    Whether the Bankruptcy Code abrogates state sovereign immunity with respect to section 105(a) injunctions against state police power actions.

### A.    The Question of the Source of Authority to Extend the Automatic Stay Generally and Specifically to Non-Debtor Joint Tortfeasors Is Worthy of Certification.

In the Talc Adversary Proceeding, this Court noted a disagreement among courts regarding

whether section 362(a) is an independent basis for extension of the automatic stay to non-debtor

entities, or whether a court must also rely on section 105(a) (or the court's inherent powers) in

extending the stay.  The Court noted that "until the Third Circuit provides clearer guidance, this

issue remains unsettled."  638 B.R. at 301.  In certifying the Creditors' Appeal, this Court

explained that "the source of authority to extend the automatic stay generally and specifically to

non-debtor joint tortfeasors hasn't been addressed on point by the Circuit.  I personally believe the

*McCartney* decision [106 F.3d 506 (3d Cir. 1997)] does address the issues, but I certainly have no

problem allowing the Circuit to refine their analysis."  3-30-22 Tr. at 74:3-7.  In the Stay Opinion,

14

this Court again recognized that "certain courts in this circuit still view the source of authority to extend the automatic stay as an open-ended question."  Stay Opinion, at 8.[9]

This Court's decision to grant certification of its order in the Talc Adversary Proceeding was vindicated by the Third Circuit's evident interest in the source-of-authority issue at oral argument in the Creditors' Appeal on September 19, 2022.  The Court of Appeals repeatedly asked about jurisdiction for the stay relief.  Malone Decl. at ¶ 6, Ex. D., Tr. Oral Arg., Nos. 22-2003, *et al.*, at 24:5–6 (Judge Restrepo: "What do we do with the stay? Did the bankruptcy court exceed its jurisdiction?"); *id.* at 25:9–10 (Judge Fuentes: "What's the usual way that you would argue that there is jurisdiction?"); *id.* at 25:21–23 (Judge Ambro: "[I]s it core jurisdiction or is it by virtue of arising under or arising in? Or is it related to jurisdiction?"); *id.* at 86:20–23 (Judge Restrepo questions Debtor's counsel on jurisdiction).  Judge Ambro commented that bankruptcy courts often "glide over some of the jurisdictional issues" in extending stay relief.  *Id.* at 98:13–14.

This case presents the same jurisdictional issue presented in the Creditors' Appeal, in even starker relief.  In this case, there is a very serious question whether section 362(a) is available as a basis for extending stay relief against state police power actions, as discussed in Part III-B, *infra*. The Debtor's motion relied on section 105(a), not section 362(a), and took the position that this Court need not reach the section 362(a) issue.  Stay relief in previous cases (which has been more limited than the relief granted here) has relied on section 105(a) rather than section 362(a).  *See* Part III-B, *infra*.

---

[9] Judge Silverstein recently held that "*McCartney* . . . is consistent with the view that the automatic stay . . . only applies to litigation against a debtor."  *In re Imerys Talc America, Inc.*, No. 19-10289, Dkt. 5031, at 13 (Bankr. D. Del.); *see also In re Aearo Techs.*, No. 22-50059, Dkt. 143, at 22 (Bankr. S.D. Ind. Aug. 26, 2022) ("declin[ing] . . . to extend §362(a)(1) to" non-debtor 3M).

Accordingly, this case presents not only the same source-of-authority question before the

Third Circuit in the Creditors' Appeal—whether the extension of injunctive relief to non-debtors

is available under section 362(a) alone or whether a court must also rely on section 105(a) or its

inherent powers—but also the question whether, if section 362(b)(4) precludes the extension of

section 362(a) injunctive relief against state police power actions, the court can rely on section

362(a) at all.  In short, there is no controlling authority as to the proper statutory basis for stay

relief in a state police power action.

This Court has correctly observed that the source-of-authority issue cannot "be brushed

aside as semantics."  638 B.R. at 301.  That question should be certified to the Third Circuit.

### B. The Question of Whether a Bankruptcy Court May Extend Stay Relief Under Section 362(a) Against Police Power Actions Protected By Section 362(b)(4) Is Worthy of Certification.

This Court held that it could extend the section 362(a) automatic stay to the State Actions

because § 362(b)(4)'s exception is limited to the "filing" of the bankruptcy petition and does not

bar a court from subsequently imposing or extending the stay.  Stay Opinion at 31, 33.  There is

no controlling Third Circuit or Supreme Court precedent authorizing the extension of the section

362(a) stay in such circumstances—i.e., after a finding that the lawsuits to be enjoined qualify as

state police power actions entitled to section 362(b)(4) protection.  Although the Third Circuit has

opined in dicta that section 362(b)(4) does not prohibit a bankruptcy court from issuing a section

105(a) injunction, *see, e.g., Brock*, 829 F.2d at 387 & n.5; *Penn Terra*, 733 F.2d at 273, the Court

of Appeals has never upheld the extension of the section 362(a) stay to a police power action.

Indeed, the Debtor cited no such case—from any court.  The authorities cited by the Debtor

involved relief only under section 105(a), not section 362,[10] and the Debtor's motion sought relief only under section 105(a), not section 362.

The reasoning of the Stay Order would confer the protection of section 362(b)(4) with one hand but take it away with the other. Yet the Third Circuit has taught that section 362(b)(4) should "be construed broadly, and no unnatural efforts be made to limit its scope. . . . Congress should not be assumed . . . to have been miserly in its refund of that power to the States." *Penn Terra*, 733 F.2d at 273. "[T]he automatic stay provision should, whenever possible, be read in favor of the States." *Id.*; *see also In re Nortel Networks*, 669 F.3d at 140 (reiterating that section 362(b)(4) "should itself be construed broadly, and no unnatural efforts be made to limit its scope") (quoting *Penn Terra*, 733 F.2d at 273). The Third Circuit has repeatedly given section 362(b)(4) a robust reading, applying section 362(b)(4) to find a wide range of state regulatory actions immune from the automatic stay of section 362.[11] The Third Circuit's emphasis on a broad reading of section

---

[10] *See, e.g., In re W.R. Grace*, 412 B.R. at 664–65 (holding that bankruptcy court's injunction was not sustainable under section 362, in light of section 362(b)(4), but affirming injunction under section 105(a)); *In re TK Holdings, Inc.*, No. 17-11375, Adv. Pro. No. 17-50880 (BLS), Dkt. 63 (Bankr. D. Del. Aug. 22, 2017) (relying solely on related-to jurisdiction under section 105); *In re TK Holdings, Inc.*, No. 17-11375, Adv. Pro. No. 17-50880 (BLS), Dkt. 64-3 at 22 (Bankr. D. Del. Aug. 23, 2017) ("We are proceeding under the assumption that the matters that were initiated by these state entities are, in fact, police and regulatory actions that are exempted from the automatic stay under Section 362(b)(4)."); *In re Mallinckrodt PLC*, Adv. Pro. No. 20-50850, Dkt. 170, at 6 (Bankr. D. Del. Nov. 25, 2020) ("Nothing herein constitutes a determination as to whether any of the Covered Actions is subject to the automatic stay pursuant to section 362 of the Bankruptcy Code, and this Order is issued solely pursuant to section 105 of the Bankruptcy Code."); *In re Purdue Pharma L.P.*, Adv. Pro. No. 19-08289 (RDD), ECF No. 89 (Bankr. S.D.N.Y. Oct. 18, 2019) (same).

[11] *See In re Mystic Tank Lines Corp.*, 544 F.3d 524, 527 (3d Cir. 2008) ("[A]n action by a governmental unit attempting to fix damages for violation of, inter alia, an environmental law is not stayed under the automatic stay."); *United States v. Nicolet, Inc.*, 857 F.2d 202, 209 (3d Cir. 1988) (section 362(b)(4) permits the fixing of penalties "up to and including *entry* of a money judgment" for violations of state law); *United States v. Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077, 1086 (3d Cir. 1987) ("Congress expressly provided that the automatic stay provisions of the Bankruptcy Code do not apply when the government is seeking to enforce its police or regulatory power."); *E.E.O.C. v. Hall's Motor Transit Co.*, 789 F.2d 1011, 1014 (3d Cir.1986) (employment

362(b)(4) in the States' favor is not consistent with extending section 362(a) stay relief after the filing of the bankruptcy petition.

The Third Circuit has interpreted section 362(b)(4) as precluding extension of section 362(a) even where the lawsuits sought to be enjoined would directly affect the debtor and (in this Court's words) "impact property of the bankruptcy estate."  Stay Opinion at 33.  For example, in *Penn Terra*, the district court found that although the State "ostensibly" undertook the action to enforce its environmental laws, "the effect of the action, in light of the disparity between the costs and funds available to do the reclamation work, was to collect a money judgment against Penn Terra; the purpose was not only to enforce a regulation, but to exhaust the debtor's assets."  733 F.2d at 270 (citation omitted).  Under the Stay Opinion's reasoning, such an impact could have justified extension of the section 362(a) automatic stay.  Yet the Third Circuit applied section 362(b)(4) to foreclose section 362(a) stay relief.

Similarly, in *Brock*, 829 F.2d 383, the Third Circuit upheld the enforcement of OSHA orders requiring the debtor to abate its violations of health and safety laws, even though the court noted that "[r]emedying the stated violations will undoubtedly require Morysville to spend money, perhaps considerable sums, thereby significantly affecting the finances of the distressed corporation."  *Id*. at 388.  The Third Circuit rejected these financial impacts as a basis for granting stay relief under section 362(a):

> We are mindful of the position in which this conclusion may place financially distressed businesses. Although protected by the automatic stay from enforcement

discrimination action brought by Equal Employment Opportunity Commission); *see also Midlantic Nat'l Bank*, 474 U.S. at 504 ("'[W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.") (quoting H.R. Rep. No. 95-595, p. 343 (1977), 1978 U.S. Code Cong. & Admin. News 6299; S. Rep. No. 95-989, p. 52 (1977), 1978 U.S. Code Cong. & Admin. News 5838).

of direct money judgments, [] companies that have sought bankruptcy protection are not automatically insulated from orders to abate, which may have as great or greater financial consequences than direct money judgments. Nevertheless, an entity that operates in a regulated sphere is obliged to comply with the relevant regulations; otherwise, it must exit the field.

*Id.* at 389.  Hence, there is no controlling Third Circuit or Supreme Court precedent upholding the power of a bankruptcy court to extend stay relief under section 362(a) against police power actions protected by section 362(b)(4).

> C.      **The Question of the Legal Standards Governing Section 105(a) Injunctions Against State Police Power Actions Is Worthy of Certification.**

The Third Circuit has opined in dicta that, even where police power actions are exempt from the section 362(a) automatic stay, "case-by-case relief is available to bankrupt debtors through § 105(a)." *Id.* at 387 n.5.  In *Penn Terra*, the Third Circuit noted that, "in some individual situations, the exercise of State power, even for the protection of the public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted."  733 F.2d at 273.

But the Third Circuit has not fully elaborated how the standards for a section 105 injunction should be applied in the context of a state action enforcing its regulatory authority.  In *Brock*, for example, the Third Circuit warned that "the court will be required to examine the State actions more carefully, and with a view to protecting the legitimate interests of the State as well as of the estate, before it may enjoin actions against the debtors or the estate."  829 F.2d at 387 n.5 (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 175, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6135).

In *Penn Terra*, the Third Circuit quoted the House and Senate Reports referring to "the usual rules for the issuance of injunctions."  733 F.2d at 273.  But the Court of Appeals also stressed the need for "[p]roper respect" "for the independent sovereignty of the several States."  *Id.*  It

opined that "if, in a particular case," "latitude in favor of State regulatory powers" "results in an impermissible dilution of federal bankruptcy policy, then the bankruptcy court may always issue an injunction tailored to fit those circumstances." *Id.* at 274.

Moreover, the Third Circuit has not authoritatively analyzed the language of section 105(a) in the context of police power actions. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the *provisions of this title*." 11 U.S.C. § 105(a) (emphasis added). Section 362(b)(4) is one of the "provisions of this title" that section 105(a) is meant to carry out. The Third Circuit has not had the opportunity to decide whether the language of section 105(a) means that it may not be used to evade or circumvent section 362(b)(4), which is a more specific provision of the Bankruptcy Code that is counter to the requested relief.[12]

In the absence of controlling authority from the Third Circuit and the Supreme Court, courts have taken different approaches. Some courts have flatly held that section 105 may not be used to enjoin State police power actions that are exempt from the automatic stay under section

---

[12] *Cf. In re Combustion Eng'g, Inc.*, 391 F.3d 190, 233–34 (3d Cir. 2004) (holding that section 105(a) cannot be employed to evade 11 U.S.C. § 524(g) by extending a channeling injunction where the requirements of section 524(g) have not been met).

362(b)(4).[13]   Judge Whitley's injunction in this case did not stay the State Actions, even under

section 105.[14]

"Some courts have taken the position that even more caution than usual should be exercised

when entertaining the prospect of enjoining a proceeding which Congress has exempted from

operation of section 362(a)'s automatic stay." *In re Bankr. Appeal of Allegheny Health, Educ. &*

*Rsch. Found.*, 252 B.R. at 331−32.  "[T]he existence of a viable exception to the automatic stay

should at least *inform* the Bankruptcy Court's decision of whether to enjoin a proceeding subject

---

[13] *See In re 1820-1838 Amsterdam Equities, Inc*., 191 B.R. 18, 21 (S.D.N.Y. 1996) (holding that section 105 does not give authority to circumvent the exceptions to the automatic stay); *In re Wolf Fin. Group, Inc*., No. 94B44009 (JLG), 1994 WL 913278 at *9−11 (Bankr. S.D.N.Y. Dec. 15, 1994) (denying injunctive relief under section 105(a) as to SEC and New Jersey securities actions and noting that a stay would undermine public policy goals concerning the enforcement of securities laws); *In re Olympia Holding Cor*p., 161 B.R. 524, 529 (M.D. Fla. 1993) (reversing section 105 injunction of agency proceedings because the proceedings were not in violation of the Bankruptcy Code); *In re Compton Corp*., 90 B.R. 798, 807 (N.D. Tex. 1988) (reversing section 105 injunction of governmental proceedings against the debtor and holding that four-factor test for section 105 was inapplicable: "Having concluded that the [agency] proceeding is not only consistent with the provisions of the Code but indeed expressly exempted from automatic stay via subsections 362(b)(4) and (b)(5), it can hardly be said that section 105 was employed in the instant case to carry out the Code's provisions."); *see also Matter of Commonwealth Oil Refining Co*., 805 F.2d 1175, 1190 (5th Cir. 1986) (reversing injunction and stopping short of deciding whether "there will []ever be a case" where a bankruptcy court may issue a section 105 to enjoin state proceedings exempt from automatic stay); *In re First All. Mortg. Co.*, 264 B.R. 634, 652 n.18 (C.D. Cal. 2001) ("The Court notes that it has some doubts as to whether § 105 truly authorizes an injunction of an otherwise excepted regulatory or police powers action. . . . The plain language of the bankruptcy code certainly does not suggest that § 105 creates an exception to the regulatory and police powers exception.  It appears that the sole authority for using § 105 in this way is a few comments in the legislative history.").

[14] Order Granting the Debtor's Request for Preliminary Judgment, LTL Management, LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000 (In re LTL Management, LLC), Adv. Pro. No. 21-3032 Dkt. 102 (Bankr. W.D.N.C. Nov. 15, 2021) ("The relief granted herein, including any relief granted under this Order under section 105 of the Bankruptcy Code," does not restrict the rights of "any governmental unit" and "all such rights are hereby preserved.") (emphasis added).

to an exception recognized by section 362(b), as Congress has conducted its balance of interests with regard to exempt proceedings." *Id.* at 332 (emphasis in original).[15]

In *Brennan v. Poritz*, 198 B.R. 445 (D.N.J. 1996), a district court in this Circuit reversed a section 105(a) injunction against a state police power action as an abuse of discretion, explaining that the bankruptcy court improperly applied "'the general standards applicable to a request for injunctive relief.'" *Id.* at 451 (citation omitted). Instead, the bankruptcy court should have engaged in a "threshold determination" of the "limited appropriate circumstances" in which a section 105(a) order might be permissible in a state police power action. *Id.* *Brennan* explained that the threshold determination should focus on the language of section 105(a), which "restrains the bankruptcy court's discretionary authority to issue § 105 injunctive relief, as the statute specifically states that any action taken under § 105 must be designed to carry out the provisions of the bankruptcy code." *Id.* at 450. The court added that "[b]ecause the bankruptcy code expressly exempts state actions brought under state police or regulatory powers from the automatic stay, it is only in rare cases that a § 105 injunction of a police power exercise will 'carry out' the code's provisions." *Id.* *Brennan* rejected the bankruptcy court's expressed concern that "too many demands might be placed on the debtor and his professionals during the early stages of his bankruptcy and that effective management of the bankruptcy might be disrupted." *Id.* at 453. *Brennan* opined that "these considerations do not rise to the level of irreparable harm. If such circumstances were taken to constitute irreparable harm, the police powers exception to the

---

[15] There are questions regarding other aspects of the legal standard governing section 105(a) injunctions against state police power actions. For example, "[s]ome courts require the applicant to show a likelihood of success in reorganizing, while others hold that the relevant focus is other actions or proceedings." *In re First All. Mortg. Co.*, 264 B.R. at 653. *See Matter of Commonwealth Oil Refining Co.*, 805 F.2d at 1189-90 (holding that the relevant focus of the inquiry is the likelihood of success in the non-bankruptcy action).

automatic stay, 11 U.S.C. § 362(b), would be severely undermined, as in every bankruptcy proceeding a debtor will be burdened by the time and expense of defending against a state regulatory action." *Id.*

The difference between this Court's approach in the Stay Opinion and the district court's decision in *Brennan* reflects the absence of controlling Third Circuit and Supreme Court authority. In contrast to *Brennan*, the Stay Opinion applied the same standard for section 105(a) relief as the Securities Adversary Proceeding, a case involving private parties rather than state police power actions. Stay Opinion at 36 ("The Court incorporates the framework utilized in the Securities Action by reference and employs the same analysis here."). The district court in *Brennan* took an entirely different approach.

Although the test for certification under sections 158(d)(2)(A)−(B) does not require a showing that the absence of controlling authority is outcome-determinative, in this case there are strong reasons to conclude that applying a different legal standard for section 105(a) relief would have led to a different outcome. For example, the irreparable harm test applied in the Stay Opinion "encompass[es] a broader view of the impact on the debtor and can take into account risks of negative consequences." *Id.* at 36 (quoting 640 B.R. at 341). *See also id.* (State Actions "could impact Debtor's ongoing negotiations"); *id.* ("possibly strengthening insurance defendants against coverage"). Such mere "risks of negative consequences" may not suffice under a heightened legal standard properly reflecting the sovereign interests of the States.

In addition, the Court's finding that the State Actions are "inextricably intertwined" (*id.* at 20) with creditor tort claims may not survive under a heightened legal standard, either. The gravamen of the State Actions is that the defendants misrepresented the uses, benefits, and qualities of talc products and misrepresented that the products met certain standards, when they did not.

23

Unlike tort claimants, who must prove that the defendants' products caused their specific cancers and injuries, the States need show only that the defendants made misrepresentations when marketing the products. The two kinds of actions are fundamentally different.

Similarly, this Court found that the States would face "minimal harm or prejudice" from a section 105(a) injunction because of "omnipresent advertisements by the plaintiffs' bar, alerting consumers of the risks associated with continued use of talc products." *Id*. at 38. This Court also determined that the risk of harm to unsuspecting residents of the States is outweighed by the benefits of the bankruptcy process. *Id*. at 43. Yet these considerations fall within the heart of the States' police and regulatory powers, which are designed to protect public health and safety. In the States' view and in keeping with both the letter and the spirit of section 362(b)(4), State Attorneys General, not the federal judiciary, must make the relevant decisions regarding consumer health and safety. The Attorneys General must consider that thousands or even millions of consumers may still have talc-containing products in their homes, while Debtor and its affiliates continue to maintain publicly that the products are safe.[16] The Third Circuit should decide whether the pertinent determinations should be left to the States in their sovereign capacities or instead should be made by the bankruptcy courts. As one court has noted, "the hardship to the governmental units of not being allowed to proceed with their actions in their chosen forums includes harms different in character from the harms normally considered on motions for injunctions under § 105." *In re First All. Mortg.*, 264 B.R. at 659. "The point is that it is the governmental units charged with enforcing consumer protection laws, governmental units that are responsive to the political will of the people, that should be the ones to make the choice, not the bankruptcy court." *Id.*

---

[16] *See* https://www.factsabouttalc.com.

Certification of the legal standards governing section 105(a) injunctions against state police power actions is therefore appropriate.

### D. Whether the Bankruptcy Code Abrogates State Sovereign Immunity With Respect to Section 105(a) Injunctions Against State Police Power Actions Is Worthy of Certification.

State sovereign and Eleventh Amendment immunity prevent a State from being haled into federal court as a defendant in a proceeding (like this Adversary Proceeding) to which it did not consent. *Alden v. Maine*, 527 U.S. 706, 722-27 (1999).[17]  In the Stay Opinion, this Court held that, by enacting 11 U.S.C. § 106(a)(1), Congress abrogated state sovereign immunity with respect to section 105(a) injunctions against state police power actions.  Stay Opinion at 40.  But there is no controlling Third Circuit or Supreme Court precedent on that question.

In *In re Venoco LLC*, 998 F.3d 94 (3d Cir. 2021), the Third Circuit held that sovereign immunity did not bar an adversary complaint seeking to recover compensation from a State for the alleged taking of debtors' refinery.  But *Venoco* did not involve a state police power action, and the Court of Appeals did not suggest its ruling applied categorically to all section 105(a) proceedings—quite the contrary.  *See id.* at 105–06 ("We do not offer a one-size-fits-all test because claims and proceedings in bankruptcy are varied and fact specific."); *id.* at 108 ("Our holding is limited . . . .").

Nor did the Third Circuit suggest that section 106(a) abrogates sovereign immunity for all section 105(a) proceedings.  The adversary proceeding in *Venoco* was brought pursuant to section 105.  *See* 998 F.3d at 100.  If the Court of Appeals believed that section 106(a) categorically abrogated immunity for every section 105(a) proceeding, it would not have needed to undertake

---

[17] For the avoidance of doubt, the States re-assert that they do not consent to this Court's jurisdiction in this adversary proceeding regarding the State Actions, and they do not consent to have the State Actions tried in the Bankruptcy Court.

its lengthy exegesis of the Supreme Court's decision in *Ctr. Virginia Cmty. College v. Katz*, 546 U.S. 356 (2006), or to distill three specific factors to govern the sovereign immunity inquiry in bankruptcy cases. *See Venoco,* 998 F.3d 104–06. It could simply have pointed to section 106(a).

There is no controlling Third Circuit or Supreme Court decision on whether state police power actions meet the factors articulated in *Katz* and distilled in *Venoco*. There is no controlling authority on whether state police power actions "decide[] and affect[] interests in the res, the property of the debtor and its estate," in the way that turnover actions, fraudulent transfer actions, and contract disputes do. *Venoco*, 998 F.3d at 105. Nor is there controlling authority on the second factor cited in *Venoco*: whether police power actions have a "broader effect on the equitable distribution of the debtor's property." *Id.* With respect to that factor, *Venoco* cited the example of an automatic stay violation—raising uncertainty of how the second factor should be applied regarding state police power actions, where Congress has enacted an express exception to the automatic stay in section 362(b)(4). In short, certification is appropriate to enable the Third Circuit to decide whether the Bankruptcy Code abrogates state sovereign immunity with respect to section 105(a) injunctions against state police power actions.[18]

State sovereign and Eleventh Amendment immunity are so fundamental to our system of government that denials of them warrant immediate interlocutory review. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 147 (1993); *Lombardo v. Pa., Dept. of Public Welfare*, 540 F.3d 190, 193–94 (3d Cir. 2008). This principle is an important factor separately warranting direct certification in this case.

---

[18] The third factor cited in *Venoco* refers to the effect of discharge orders and deadlines to file claims. 998 F.3d at 105.

## CONCLUSION

This Court should certify the Stay Opinion and Order for direct appeal to the U.S. Court of

Appeals for the Third Circuit.

DATED: November 3, 2022

Respectfully submitted,

**GIBBONS P.C.**
Robert K. Malone
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
rmalone@gibbonslaw.com
*Co-Counsel for the State of New Mexico*
*and State of Mississippi*

By: */s/ Robert K. Malone*
    Robert K. Malone

-and-

**MASSEY & GAIL LLP**
Jonathan S. Massey (admitted *pro hac vice*)
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
(202) 652-4511
jmassey@masseygail.com
*Co-Counsel for the State of New Mexico*
*and State of Mississippi*