**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Jeffrey L. Jonas, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>jjonas@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Sunni P. Beville, Esq.<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of Talc Claimants* |
| **BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>*Co-Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of Talc Claimants* |

7268641.1

| PARKINS & RUBIO LLP<br>Lenard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinsrubio.com<br>crubio@parkinsrubio.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel for the Official Committee of Talc Claimants* | MASSEY & GAIL LLP<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Special Counsel for the Official Committee of Talc Claimants* |
|---|---|
| In re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>                         Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Honorable Michael B. Kaplan<br><br>Hearing: **December 20, 2022 at 10:00 a.m.** |

### REPLY OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS IN FURTHER SUPPORT OF ITS MOTION CONFIRMING PROCEDURES FOR THE REIMBURSEMENT OF EXPENSES INCURRED BY COMMITTEE MEMBER <u>REPRESENTATIVES</u>

The Official Committee of Talc Claimants (the "TCC") in the above captioned case (the "Case"), by and through its undersigned counsel, hereby respectfully submits this reply in further support of the *Motion of the Official Committee of Talc Claimants for Order Confirming Procedures for the Reimbursement of Expenses Incurred by Committee Member Representatives* [Dkt. No. 3111] (the "Motion").[1]

### **INTRODUCTION**

1.   In their respective objections (the "UST Objection" and the "Debtor's Objection,"

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Motion. Contrary to the US Trustee's assertion (UST Objection at ¶ 14), the term "Representative" was defined on the first page of the Motion.

1

7268641.1

respectively) [Dkt. Nos. 3254, 3445], the US Trustee and the Debtor misconstrue and overreact to the relief requested in the Motion. The Motion simply seeks an order confirming that Representatives of the members of the TCC[2] are permitted to submit applications for reimbursement of their non-legal (*e.g.,* transportation and lodging) expenses incurred in this Case—nothing more. This request is consistent with both the Bankruptcy Code and ordinary bankruptcy practice, and thus, should be approved.

2. There is no question that Section 503(b)(3)(F) of the Bankruptcy Code permits committee members to be reimbursed for expenses that are incurred in connection with the performance of their committee duties (UST Objection at ¶ 3; Debtor's Objection at 4), and that reimbursement of precisely the same kinds of expenses that are the subject of the Motion (*i.e.*, non-legal expenses) have been approved in other cases (UST Objection at ¶ 27 n.10; Debtor's Objection at 4 n. 11).

3. Nevertheless, the US Trustee asserts that because such non-legal expenses were incurred by Representatives who duly (and openly) have been serving at the request and on behalf of TCC members, rather than by the TCC members themselves, the request for reimbursement somehow reflects an "abdicat[ion]" by TCC members of their fiduciary duties and is prohibited by the Bankruptcy Code (UST Objection at ¶ 27). The US Trustee is wrong both as a matter of fact and law. Notably, the US Trustee previously vetted the members of the TCC specifically with and through their personal counsel. The US Trustee has known since the transfer of venue of this Case to this Court that the members' personal counsel have been serving as Representatives, with the limited proxies, of the members. The members of the TCC have fulfilled their duties in this Case

---

[2] While the term "TCC" is used throughout for ease of reference, the request in the Motion also encompasses the same relief with respect to the non-legal expenses of Representatives of the members of any other statutory committee appointed in this Case, including TCC I and TCC II.

2

7268641.1

to date, despite, in many cases, challenging personal circumstances, and will continue to do so going forward.  The Motion gives rise to no contrary suggestion, and the US Trustee's interpretation of the Motion as implicating any defalcation of duty by the TCC members is utterly unfounded.  The TCC respectfully submits that the TCC and its constituents have been materially aided by the in-person presence of Representatives of the TCC members at various hearings, mediations and meetings, and that permitting the reimbursement of their *non-legal expenses* not only does not contravene the Bankruptcy Code, but is consistent with ample precedent and is eminently reasonable under the circumstances.

4. Nor does the Debtor's stated concern over the potential amount or nature of any Representatives' expenses for which reimbursement may be sought in the future provide a basis to deny the Motion.  Any such reimbursement requests (and none are currently before the Court) at all times will be subject to (a) the "actual, necessary" standard set forth in the statute, as determined in the sound discretion of the Bankruptcy Court, (b) the right of parties-in-interest to object, and (c) other specific restrictions or limitations that the TCC would be willing to discuss.  In short, the Debtor's main objection can be readily addressed, including on consent, without categorically denying the relief sought by the Motion.

5. The TCC respectfully asserts that the Motion should be granted in its entirety.

## ARGUMENT

### A. The Members of the TCC Are Capable of Fulfilling, and Are Fulfilling, Their Fiduciary Duties

6. The US Trustee characterizes the TCC's request to reimburse certain travel and lodging expenses of the Representatives in this Case as an admission of its members' "abdicat[ion]" of their fiduciary duties to the estate, and goes as far as to suggest possibly replacing those members.  Viewing the Motion as such is distorted and wholly unwarranted.

7. As the Court has recognized, the TCC is "functioning well" and its Individual Members[3] are fulfilling their duties under trying circumstances. *See* 5/4/22 Hearing Tr., annexed to the accompanying Declaration of Melanie L. Cyganowski, ("Cyganowski Decl.") as Ex. 1, at 30:9-32:16. With respect to the six Individual Members who are currently living with a cancer diagnosis, certain of them are undergoing chemotherapy or other treatment regimens, while others among them are in remission. These six Individual Members are also experiencing varying degrees of physical pain and suffering, and some have partial physical disabilities related to their cancer. The prognosis and life expectancy for each of them varies as well, and each of them lives with the inherent uncertainty of, and emotional toll from, not knowing precisely when their lives may be cut short by cancer. With respect to the four Individual Members who are not themselves living with a cancer diagnosis, each of them nevertheless suffers from the loss of a family member who died from cancer.

8. Notwithstanding the foregoing hardships, each Individual Member has faithfully and diligently fulfilled his or her fiduciary duties with respect to TCC membership, including remote attendance at meetings and hearings. At this time, each Individual Member remains physically and mentally capable of, and committed to, fulfilling such fiduciary duties going forward, despite the Individual Members' request that Representatives appear in person on their behalf at various hearings and meetings. Neither the US Trustee nor the Debtor has put forth any evidence to establish otherwise.

---

[3] The TCC consists of eleven members, 10 of whom are individuals (the "Individual Members"). Six of the Individual Members assert claims against the Debtor related to their own personal injuries, while four Individual Members assert claims against the Debtor related to personal injuries suffered by deceased family members. The personal injury claims asserted by Individual Members against the Debtor relate to either ovarian cancer (six TCC members, including two members asserting claims on behalf of a deceased family member) or mesothelioma (four TCC members, including two members asserting claims on behalf of a deceased family member).

4

7268641.1

### B. The US Trustee Has Previously Vetted the Involvement of the Representatives of the Members of the TCC

9. The US Trustee's suggestion that the Motion somehow triggers a new concern regarding the previously unknown involvement of the Representatives in this Case is baseless. *See, e.g.*, UST Objection at ¶ 17. The US Trustee, much like the Bankruptcy Administrator in North Carolina before it, has long known of the involvement of the Representatives—and not merely from the references to each of the Representatives in the Appointment Order, which the US Trustee incorrectly implies were solely for purposes of not having to disclose each TCC member's personal address, phone number and email address. *See* UST Objection at ¶ 17. Rather, the US Trustee has been fully aware of the existence and nature of the participation of the Representatives—as more than just postal boxes for the TCC members—and indeed has approved of such participation from the outset. It is only now, a year after the fact, that the US Trustee has decided to take issue with the Representatives' participation in this Case, based solely on the routine request of the TCC to seek confirmation from the Court that the Representatives' reasonable non-legal expenses may be reimbursed.

10. On November 23, 2021, the US Trustee sent a letter to the TCC's counsel, asking eight questions to be posed to each of the personal attorneys, *i.e.*, the Representatives, for each of the members of the TCC (in their capacity as members of the Original Committee).[4] *See* Cyganowski Decl., ¶ 3. In early December 2021, the personal attorneys for each of the Individual Members—*i.e.,* the Representatives—sent letters to the US Trustee with their written responses to the US Trustee's questions. *Id*. at ¶ 4. Included as attachments to these response letters (with one

---

[4] On November 8, 2021, the current TCC members were appointed as members of the Original Committee pursuant to the Appointment Order. *See* Dkt. No. 355.

exception)[5] was a copy of a then newly executed proxy specifically granting authority to the Individual Member's personal attorney to vote and act for his or her client in accordance with the TCC's bylaws, subject at all times to the Individual Member's retention of the ultimate decision on how to vote on any particular matter. *Id*. Apparently satisfied with the responses (including the proxies) received from the Representatives, on December 23, 2021, the US Trustee filed the Committee Reconstitution Notice, which, while reconstituting the Original Committee into two separate committees (TCC I and TCC II), included each of the Individual Members as members of either TCC I or TCC II, and identified each such member's personal counsel.[6] *See* Dkt. No. 965.

11. Nothing material has changed since late December 2021[7] with regard to the participation of personal counsel acting as a Representative for the Individual Members in this Case. As a result, it is inexplicable why the matter presented in the Motion (permission to seek reimbursement of the Individual Members' Representatives' non-legal expenses) now somehow raises questions by the US Trustee regarding Individual Members' ability to fulfill their fiduciary duties. Regardless, the US Trustee's implications and innuendo are off base.

---

[5] The response letter from counsel for TCC member Patricia Cook (Weitz and Luxenberg, PC) did not include a separate proxy agreement, but referenced the authority contained in counsel's retention agreement. *Id*. at ¶ 4 n. 2.

[6] Thereafter, on January 26, 2022, this Court entered the Reinstatement Order reinstating the current members of the TCC effective as of March 9, 2022, without prejudice to the US Trustee's (or any party-in-interest's) right to move for relief with respect to the Appointment Order and/or the appointment of an additional claimants' committee or additional committee members. *See* Dkt. No. 1273. On March 1, 2022, the US Trustee filed a letter to this Court confirming that it would not be filing a motion for relief with respect to the Appointment Order. *See* Dkt. No. 1596.

[7] In fact, certain of the Representatives submitted separate proxies earlier, to the Bankruptcy Administrator in connection with their selection to the Original Committee. *See* Cyganowski Decl., at ¶ 5.

### C. The Relief Sought by the Motion Does Not Contravene the Bankruptcy Code, Is Supported by Precedent, and Is Reasonable

#### 1. Sections 503(b)(3)(F) and 503(b)(4) of the Bankruptcy Code Do Not Prohibit Reimbursement of the Representatives' Non-Legal Expenses

12. The US Trustee and the Debtor do not dispute that, under Section 503(b)(3)(F) of the Bankruptcy Code, Individual Members are entitled to the reimbursement of their actual and necessary expenses incurred in the performance of the duties of the TCC.

13. Rather, the Debtor's Objection speculates that any such expenses that may be sought by the Representatives will be excessive. That is pure conjecture, as no requests are currently before the Court. The Debtor also bemoans the amount of fees and expenses charged by the TCC's professionals, but the Debtor's complaints are irrelevant to the Motion, which addresses solely the right to (not the amount of) reimbursement of Individual Members' Representatives' non-legal expenses. There has been no assertion by either the Debtor or the US Trustee that the nature of the expenses that may be sought if the Motion is approved is duplicative of the types of expenses sought by any other party in this case.[8]

14. Moreover, the UST Objection is based on a faulty premise—namely, that the Motion seeks the reimbursement of "professional fee expenses of individual committee members" as an "end run" around Section 503(b)(4) of the Bankruptcy Code. *See* UST Objection, at ¶¶ 23-27. To be clear, that is not what the Motion seeks.

---

[8] Beyond being irrelevant, the Debtor's assertions are misleading and based on faulty comparisons, including, among other issues, disparate time frames, omitting the fact that there were two committees for a period of time, and importantly, not including on the Debtor's side the multiple ordinary course law firms and J&J's stable of attorneys. Further, the Debtor's contentions are absurd considering that this Case, and its attendant process and expense, is entirely of J&J's creation, is being funded by J&J, and is being imposed by J&J on its creditors over their strenuous objection, and further that J&J, a company with a market capitalization of close to a half a trillion dollars, is realizing very significant savings on defense costs during the pendency of this Case.

7

7268641.1

15. Even a cursory review of the nature of the expenses sought in the cases that the US Trustee cites in support of its position demonstrates that those cases are inapposite and do not preclude the relief sought in the Motion. Those cases address, both pre- and post-BAPCPA, the question of whether a committee member may be reimbursed for attorneys' *fees* paid or incurred by the member to their personal counsel. In *In re Lehman Brothers Holdings, Inc.*, 508 B.R. 283 (S.D.N.Y. 2014), committee members sought, as part of a plan of reorganization, the reimbursement of approximately $26 billion worth of attorneys' fees for professional services rendered to individual committee members by their own personal attorneys, separate from and in addition to the professionals hired by the committee. *See Lehman*, 508 B.R. at 287. Likewise, in *First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394 (3d Cir. 1999), a pre-2005 opinion from the Court of Appeals for the Third Circuit that the US Trustee cites for an explication of the prior state of the law that was changed by BAPCPA, what was being sought was reimbursement of attorneys' fees a committee member paid for the professional services of its personal counsel. *See First Merchants*, 198 F.3d at 396.

16. These cases are readily distinguishable. Here, the TCC does not seek the reimbursement of attorneys' fees paid or incurred by Individual Members for professional services rendered by their personal counsel. Such attorneys' fees are expressly excluded from constituting reimbursable administrative expenses under both Section 503(b)(4) and the Interim Compensation Order. *See Lehman*, 508 B.R. at 290 (explaining that Section 503(b)(4) "excludes *professional fee* expenses—that is, the cost of hiring lawyers or accountants—from the expenses it authorizes.") (emphasis in original); Interim Compensation Order, at ¶ 7 (excluding "third-party counsel expenses of individual Committee members" from the statements of expenses that may be

8

submitted).[9]  What the TCC seeks by the Motion is entirely different:  reimbursement of certain of the Representatives' *non*-legal expenses—*i.e.*, travel costs, lodging, and the like—of the type for which the committee members on whose behalf the Representatives act are entitled to obtain reimbursement under Section 503(b)(3)(F).  *See Worldwide Direct, Inc.*, 259 B.R. 56, 63 (Bankr. D. Del. 2001) ("Travel expenses for committee members to attend committee meetings or court hearings are necessary for the functioning of the committee and are normally reimbursable. Therefore, we will allow reimbursement for travel expenses, to the extent that the cost was not more than would have been incurred if [the committee member], instead of its counsel, made the trip to the Committee meeting or hearing.").[10]  These expenses have been incurred by the Representatives on behalf of the Individual Members in connection with the performance of activities related solely to the normal functioning of the TCC, such as making an in-person appearance at a hearing or other meeting, not for any legal services provided by any Representative to an Individual Member.  As such, the expenses for which reimbursement is sought are actual, necessary expenses incurred in the performance of the duties of the TCC within the meaning of Section 503(b)(3)(F).[11]

---

[9] The legislative history behind the bill that eventually became the public law that added Section 503(b)(3)(F) likewise reflects that the concern was with excluding attorneys' fees in the ordinary sense of that term—*i.e.*, compensation for services rendered—and not the non-legal expenses at issue on the Motion. *See* H.R.Rep. No. 103-835 at 39, 103d Cong., 2nd Sess. (1994), U.S.Code Cong. & Admin. News 1994, pp. 3340, 3348 ("This section of the bill amends section 503(b) of the Bankruptcy Code to specifically permit members of Chapter 11 committees to receive court-approved reimbursement of their actual and necessary expenses. *The new provision would not allow the payment of compensation for services rendered by or to committee members.*") (footnote omitted) (emphasis added).

[10] While *Worldwide Direct* was decided prior to the addition of Section 503(b)(4), its analysis is equally applicable here.

[11] For the same reasons, the relief sought by the Motion is not precluded by other cases, whether pre- or post-BAPCPA, that have denied the reimbursement of fees of attorneys for professional services rendered to an individual committee member, *see, e.g.*, *In re Firstplus Fin., Inc.*, 254 B.R. 888 (Bankr. N.D. Tex. 2000), nor does it create any tension with Section 1103(a) of the Bankruptcy Code, *see First Merchants*, 198 F.3d at 403.  In addition, reimbursement of such non-legal expenses as are the subject of the Motion that would otherwise be reimbursable to committee members themselves does not raise the same concerns of duplication and drain on estate assets as the reimbursement of attorneys' fees paid by committee members to their individual counsel.

17. *McDow v. Official Committee of Equity Sec. Holders of Criimi Mae Inc.*, 247 B.R. 146 (D. Md. 1999), is instructive. There, an equity committee filed a motion seeking, in relevant part, a declaration that any expense incurred by the committee members to purchase an insurance policy that would indemnify the members for their acts, errors and omissions in the performance of their statutory duties would be an allowed administrative expense under Section 503(b)(3)(F). *See McDow*, 247 B.R. at 148. In affirming the bankruptcy court's determination that the cost of purchasing the policy for the equity committee was allowed under Section 503(b)(3)(F), the court rejected the Office of the Unites States Trustee's hyper-technical interpretation of Section 503(b)(3)(F) that only expenses incurred "in the performance of" committee duties, as distinguished from those incurred "in connection with" the performance of committee duties or in anticipation of a failure to fulfill those duties, were allowable. *See id*. at 150-51. Instead, according to the court: "There is no basis in the language of subsection (F) or its legislative history for distinguishing between specific kinds of committee member expenses. If the expense would not have been incurred but for an individual's service on a section 1102 committee, it may be reimbursable under section 503(b)(3)(F)." *See id*. at 151 (citation omitted).

18. The same reasoning pertains here. There is no basis upon which to distinguish between expenses for which an Individual Member is entitled to be reimbursed in his or her own name and the very same type of expenses incurred by a Representative duly acting on that member's behalf, especially in a case like this involving Individual Members who are fighting, or whose family member recently died from, potentially terminal illnesses. Regardless of the challenges an Individual Member may be confronting, an Individual Member may also request their Representative to be present on their behalf. Because the out-of-pocket expenses of an Individual Member are reimbursable, such expenses of a Representative present at an Individual

Member's request should be treated the same.  Indeed, courts in this Circuit have recognized that "special circumstances" may justify the attendance by a committee member's personal counsel at events such as committee meetings on behalf of the committee member and that such attendance would be necessary for the functioning of the committee. *See Worldwide Direct*, 259 B.R. at 62.  Such special circumstances are present here.

### 2. Reimbursement of Committee Member Counsel Non-Legal Expenses is Consistent With, and Supported By, Ample Precedent

19. Notably, neither the US Trustee nor the Debtor cite to a single case in which the types of expenses that are the subject of the Motion have been denied.  In fact, as both the US Trustee and the Debtor acknowledge, but attempt to downplay, the Motion is not made on a blank slate.  Indeed, the relief sought by the Motion is neither unprecedented nor unsupported by legal authority as the US Trustee and the Debtor contend; to the contrary, it is supported by ample precedent.

20. The reimbursement of non-legal expenses incurred by law firms on behalf of committee members such as those incurred by the Representatives and requested by the TCC here has been regularly sought and approved in other Chapter 11 cases, including in *this* Circuit with the approval of the *same* US Trustee and notwithstanding language in interim compensation procedures orders that is *identical or nearly identical* to the language contained in the Interim Compensation Order.  Examples abound:

- ***In re TK Holdings Inc. ("Takata"),* Case No. 17-11375 (Bankr. D. Del.)** – In *Takata*, much like here, the interim compensation procedures order provided that "[e]ach member of each of the Committees is permitted to submit statements of expenses (excluding third-party counsel hourly and other fees of individual Committee members) in connection with service on the Committees…." *See* [Dkt. No. 331].  Counsel for the official committee of unsecured tort claimant creditors filed, on behalf of "Tort Committee Members or their designated representatives," two applications for reimbursement for expenses incurred by multiple individual members' representatives. *See* [Dkt. Nos. 945, 2884].  Notably, with respect to the first application, the US Trustee *did not* categorically object to the requested

11

7268641.1

reimbursement of individual committee members' representatives' expenses or seek withdrawal of the applications. Rather, the US Trustee provided informal comments requesting reductions, which were agreed upon, resulting in an order, in the form of which was agreed by the US Trustee, approving the reimbursement as reduced. *See* [Dkt. Nos. 2041, 2046]. A certificate of no objection, with no order required, was filed for the second application, which also requested reimbursements for multiple representatives. *See* [Dkt. No. 3093].

- *In re Specialty Prods. Holding Corp., et al.*, **Case No. 10-11780 (Bankr. D. Del)** – Similarly involved an interim compensation procedures order that provided that "[e]ach member of a Committee is permitted to submit statements of expenses (excluding counsel fees and expenses of individual Committee members)…." *See* [Dkt. No. 339]. There were no less than four interim requests for reimbursement [Dkt. Nos. 1143, 2994, 3765, 5318] and one final request for reimbursement [Dkt. No. 5428] filed on behalf of members of the Official Committee of Asbestos Personal Injury Claimants seeking the reimbursement of expenses incurred by individual members' representatives. The fee examiner filed responses that called for certain reductions, but did not categorically object to the reimbursements. *See* [Dkt. Nos. 1672, 3131, 3778, 5346, 5428]. Neither the US Trustee nor the debtors, represented by the same law firm representing the Debtor in this Case, filed any response or objection. Notably, the Court (Honorable Laurie Selber Silverstein, who also presides over *Cyprus Mines Corporation*, Case No. 21-10398 (Bankr. D. Del.), cited by the US Trustee and the Debtor) entered an order approving the expenses requested on a final basis. *See* [Dkt. No. 5507].

- *In re Energy Future Holdings Corp.*, **Case No. 14-10979 (Bankr. D. Del.)** – Also involved an interim compensation procedures order that provided that "[e]ach member of any official committee formed by the U.S. Trustee is permitted to submit statements of expenses incurred in the performance of the duties of the committee (excluding third-party counsel expenses of individual committee members)…." *See* [Dkt. No. 2066]. Multiple interim applications for reimbursement were filed seeking reimbursement of expenses incurred by individual members' representatives [Dkt. Nos. 3358, 3691, 4560], and elicited no formal objection, even from the same US Trustee [Dkt Nos. 3564, 3937, 4735].

- *In re The Flintkote Co.*, **Case No. 04-11300 (Bankr. D. Del.)** – Again, involved an interim compensation procedures order that permitted committee members to submit expense statements, excluding "Committee member counsel expense." *See* [Dkt. No. 183]. The committee had nine individual claimants, each represented by a law firm. *See* [Dkt. No. 54]. Numerous interim applications for reimbursement were filed seeking reimbursement of expenses incurred by individual members' representatives [Dkt. Nos. 697, 898, 1251, 1393, 1624, 1800], and the fee examiner had only minor comments [Dkt. Nos. 941, 1208, 1554, 1845, 2210, 2380]. The US Trustee, for its part, did not file any response or objection. Interim orders were entered approving the applications [Dkt. Nos. 1187, 1404,

12

1817, 1993, 2254, 2442], and the expenses were ultimately approved on a final basis [Dkt. Nos. 9266, 9298, 9330].[12]

- *In re Tronox Inc., et al.*, **Case No. 09-10156 (Bankr. S.D.N.Y.)** – Another interim compensation procedures order that permitted committee members to submit expense statements, "excluding individual Committee Members' counsel expenses)." *See* [Dkt. No. 218]. Multiple interim applications were filed seeking reimbursement of committee members' representatives' expenses, including the expenses of a law firm representative for the single individual committee member. *See* [Dkt. Nos. 475, 793, 1363]. In two responses filed by the US Trustee in that case, the US Trustee stated it had no objection to the reimbursement of the Committee members. *See* [Dkt. Nos. 890, 1478]. The interim orders reflect the allowance of expenses *in full* [Dkt. Nos. 574, 908, 1508], and the expenses were also approved on a final basis [Dkt. Nos. 2662, 2848].

- *In re Bestwall, LLC*, **Case No. 17-31795 (Bankr. W.D.N.C.)** – Like the others, involved an interim compensation procedures order that permitted committee members "to submit statements of expenses (excluding third-party counsel expenses of individual [committee] members…." *See* [Dkt. No. 132]. Numerous interim applications were filed seeking reimbursement of expenses incurred by individual members' representatives [Dkt Nos. 329, 462, 695, 821, 902, 1135], and each was approved by the court without objection [Dkt Nos. 387, 520, 740, 842, 954, 1342], including by the debtor, which was represented by the same law firm representing the Debtor in this Case.

21. Neither the US Trustee nor the Debtor has offered any reason to depart from this precedent. Nor should the TCC (and the Representatives) be penalized merely because it filed the Motion in an abundance of caution. Indeed, the Motion should be granted in favor of the flat-out denial of any and all reimbursement advocated by the US Trustee and the Debtor, particularly given that the expenses sought are non-legal in nature, are the kind of out-of-pocket expenses typically approved for committee members under Section 503(b)(3)(F), are not duplicative, and are necessary in view of the committee's constituency.

---

[12] In *Flintkote*, a request was also made for expenses incurred prior to the formation of the committee [Dkt. No. 423] but the fee examiner recommended the disapproval of such expenses [Dkt. No. 743], which recommendation was reflected in the court's interim order [Dkt. No. 845]. Significantly, the Motion does not seek permission to seek reimbursement of expenses incurred prior to the TCC's formation.

13

7268641.1

### 3. Reimbursement of the Representatives' Non-Legal Expenses is Reasonable in This Case

22. Entitlement to reimbursement of the Representatives' non-legal expenses is reasonable and should be approved in this Case for a few additional reasons.

23. <u>First</u>, the Representatives work very closely with the Individual Members and have the requisite permission to exercise authority for such members. That dynamic renders the Representatives, while in that role, agents of the members *subject* at all times to the members' retention of the ultimate decision-making power. The proxies executed by most Individual Members, which were shared with the US Trustee, make that relationship crystal clear. In view of the Representatives' confirmation, as requested by the US Trustee, that the TCC members are fully aware of their fiduciary duties and the salient terms of any proxy in place between a TCC member and his or her Representative were disclosed to the US Trustee a year ago, the *Cyprus Mines* court's concerns are, at the very minimum, mitigated here.

24. <u>Second</u>, the Representatives' involvement is not duplicative of Individual Member involvement, nor is it duplicative of TCC counsel's role. The Representatives bring a wealth of unique knowledge and experience to this Case that is instrumental to making the TCC (and its counsel) function effectively and efficiently.[13] The Representatives' involvement is important in several respects, including, among other things, assisting the Individual Members in the performance of their duties as committee members by participating in and attending committee meetings, meetings with third parties (including those appointed in this case, such as the estimation

---

[13] It goes without saying that the TCC plays a critical role in this Case. As the authority upon which the US Trustee relies recognizes, official committees of unsecured creditors are "one of the key players in the Chapter 11 bankruptcy process." *See Lehman*, 508 B.R. at 287. The committee is usually comprised of the holders of the largest claims and "works with the debtor to administer the case, to investigate claims, and—most importantly—to write the Chapter 11 reorganization plan," which plan is "at the heart of the Chapter 11 process" and "controls how the estate's assets will be disbursed—in other words, who gets paid and how much." *Id.*

7268641.1

expert), mediation sessions and hearings before the Court that may be impossible, impractical or inconvenient for the Individual Members to attend in person themselves. Several of the meetings attended by the Representatives were called at the request of other parties in the case, such as the estimation expert and mediators, and the Representatives' attendance was invaluable and necessary. While the TCC does not seek reimbursement of the Representatives' legal fees in connection with their professional services as personal counsel to the Individual Members or for their time spent at these in-person events, the Representatives should be reimbursed for non-duplicative, out-of-pocket expenses incurred on behalf of Individual Members that would otherwise be reimbursable to committee members themselves.

25. <u>Third</u>, the Representatives' expenses for which reimbursement will be sought are hardly excessive in the context of this Case. By any measure (whether total assets and liabilities, number of creditors, number of related litigations, number of professional firms involved, or any other potentially relevant metric), this Case is a very large chapter 11 case. It is also contentious.

26. The UST Objection and the Debtor's Objection both take issue with the specific amount of reimbursements previously sought. *See* UST Objection at ¶ 12; Debtor's Objection at 2-3. However, no specific amount is currently being requested. The previously filed expense requests were withdrawn without prejudice. For this reason, the expenses referenced in the UST Objection and the Debtor's Objection are not in issue on the Motion.

27. The UST Objection further takes issue with incurrence of expenses "for multiple attorneys to attend zoom hearings in person and unidentified meetings." UST Objection at ¶ 12. To provide context to the "unidentified meetings" referenced by the US Trustee, there have been (and continue to be) a number of instances where in-person attendance at certain hearings or meetings is not only appropriate but necessary, even when the hearings or meetings offer a remote

15

participation option. By way of example, there were several mediation sessions at which certain Representatives attended in person, presumably (and understandably) to facilitate productive settlement discussions. More recently, the Court-appointed expert has held a number of meetings with TCC professionals and Representatives to discuss, among other things, estimation and related issues. Certain Representatives attended these meetings in person as well, while others attended remotely. Representative participation at these meetings is critical in order to make the sessions as productive and efficient as possible, given the voluminous data and scientific and technical issues that are implicated.

28. Given the stakes and considerations at issue, discouraging in-person participation of TCC Individual Members' Representatives by flatly refusing to consider reimbursement of their non-legal expenses would be, as the saying goes, "penny wise and pound foolish." This is particularly true given that the Bankruptcy Court retains the power to ensure, in the exercise of its sound discretion, that only those expenses that are (a) demonstrably incurred in the performance of the duties of the committee and (b) actual and necessary are subject to reimbursement. *See First Merchants*, 198 F.3d at 403.

29. The Interim Compensation Order requires the filing and service of requests for reimbursement of expenses, and an opportunity to object, to the extent specific expenses might not be properly reimbursable. The proposed order on the Motion would leave this unchanged. If any particular expense is inappropriate or excessive, the US Trustee, the Debtor, and others will have the opportunity to object. Further, the TCC stands willing to discuss specific limitations on the reimbursement of the Representatives' expenses, including limiting reimbursement of expenses to those of one attorney per TCC member per hearing or meeting.

30. In sum, the TCC respectfully submits that reimbursement of the non-legal expenses

of the Representatives is not prohibited by the Bankruptcy Code, but rather is permissible, is supported by precedent, and is reasonable under the circumstances of this Case.

## Conclusion

31. For the foregoing reasons, the Court should grant the relief requested in the Motion in its entirety and such further relief as the Court deems just and proper.

Dated: December 16, 2022

Respectfully Submitted,

**THE OFFICIAL TALC CLAIMANTS COMMITTEE**

Respectfully submitted,

**GENOVA BURNS, LLC**

**/s/ _Daniel M. Stolz_**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Tel: (973) 533-0777
Fax: (973) 467-8126

*Local Counsel to the Official Talc Claimants Committee*