| |
|---|
| **UNITED STATES BANKRUTPCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption In Compliance with D.N.J. LBR 9004-1(b)**<br><br>Albert Togut, Esq. (admitted *pro hac vice*)<br>Frank A. Oswald, Esq.<br>Brian F. Shaughnessy, Esq. (admitted *pro hac vice*)<br>**TOGUT, SEGAL & SEGAL LLP**<br>One Penn Plaza, Suite 3335<br>New York, NY 10119<br>Tel:  (212) 594-5000<br>E-Mail: altogut@teamtogut.com<br>          frankoswald@teamtogut.com<br>          bshaughnessy@teamtogut.com<br><br>*Counsel to Kenneth R. Feinberg*<br>*as the Court's Estimation Expert* |

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor.[1] | Honorable Michael B. Kaplan |

**OBJECTION OF THE COURT-APPOINTED ESTIMATION EXPERT
TO MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC'S
MOTION TO DISQUALIFY KENNETH R. FEINBERG AS
RULE 706 EXPERT AND TO TERMINATE ESTIMATION**

TO THE HONORABLE MICHAEL B. KAPLAN
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Kenneth R. Feinberg, Esq., not individually but in his capacity as the estimation expert appointed by the Court pursuant to Federal Rule of Evidence 706 (the "Estimation Expert"), by his attorneys Togut, Segal & Segal LLP acting on his behalf, respectfully submits this objection (the "Objection") to the motion [Docket

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

No. 3553] (the "Motion")[2] filed by Maune Raichle Hartley French & Mudd, LLC ("Maune Raichle") seeking to disqualify the Estimation Expert and to terminate estimation, and respectfully states:

## PRELIMINARY STATEMENT

1. In reading the Motion filed by the Maune Raichle law firm, it would seem that the interests of the law firm are different than the interests of its clients. The 61 Maune Raichle clients deserve our empathy and the Court's Estimation Expert will never lose sight of that fact. The arguments that follow are not directed in any way at them.

2. The Motion is so ridiculous it is hard to take it seriously. Its focus is on obtaining discovery, and its attack on the Court's Estimation Expert is a means to that end. Everything Maune Raichle has filed or said in this bankruptcy case seeks the same thing. They attack the case and everything about it.

3. They say they will never settle but intimate in certain of their filings that they have not gotten a settlement offer and will not until the Debtor or J&J is facing an imminent trial. That is why they want the case dismissed. One has to wonder if this law firm wants the settlement data from J&J to better fashion their "ask."

4. The Court in selecting Kenneth Feinberg as its Estimation Expert chose the most eminent mass tort case expert in the Country. He has been at the epicenter of huge cases and has competently handled complex, contentious problems and gotten good results. As the saying goes, "He's seen it all." He is widely respected, and deservedly so. The Court believes the Estimation Expert is the right person for the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

2

task he is now tackling.

5. As shown below, Maune Raichle is being fast and loose with the facts. This is not the first time it has done so in a bankruptcy case, and it has been sanctioned for its conduct.[3]

6. What follows rebuts the arguments made, and shows why the instant Motion should be denied.

## OBJECTION

**A.    The Motion is an Improper Attempt to Re-Litigate the Appointment Order**

7. The Motion repeats many of the same arguments that the Court has already rejected when it overruled Maune Raichle's objections to estimation and entered the Appointment Order, which Maune Raichle readily admits. *See* Motion ¶¶ 15-17; *see also* Appointment Order ¶ 13 ("The Court has considered and overruled all objections filed in response to the Court's Motion, unless otherwise addressed herein."). Despite that the Appointment Order is different in many material respects from the proposed order that was submitted by the parties, no one—including Maune Raichle—appealed the Appointment Order or sought reconsideration of it.

8. Maune Raichle argues that the Estimation Expert should not be permitted to have confidential *ex parte* communications with any parties. *See* Motion ¶¶ 6 & 15. But Maune Raichle has already made that same argument—not once, but twice—to this Court, and lost. <u>First</u>, when the Court requested that the parties provide

---

[3] In *In re Bestwall LLC*, the Bankruptcy Court for the Western District of North Carolina found Maune Raichle in contempt for (a) failing to comply with a court order requiring completion of an asbestos-claimants' questionnaire and (b) filing and continuing to prosecute a lawsuit against the debtor in Illinois district court. The bankruptcy court sanctioned Maune Raichle $402,817.70 to compensate the debtor for the fees and expenses it incurred in defending the Illinois lawsuit and for prosecuting contempt proceedings. *See In re Bestwall LLC*, No. 3:21-cv-00510-RJC, 2022 WL 4001967, at *1 (W.D.N.C. Aug. 31, 2022) (dismissing appeal of contempt orders for lack of jurisdiction).

3

input on the Estimation Expert's appointment, Maune Raichle "objected" to the Estimation Expert's ability to have confidential *ex parte* communications.  *See Maune Raichle Hartley French & Mudd, LLC's Response to the Court Proposing Kenneth R. Feinberg as Rule 706 Expert*, filed on August 9, 2022 [Docket No. 2847] (the "Maune Raichle Initial Response") at 1 ("MRHFM ***does object*** to treating any communications or documents shared between Mr. Feinberg and any party as 'confidential.'") (emphasis in original). Second, when the TCC submitted a proposed order approved by it, the Debtor, the FCR, and the U.S. Trustee [Docket No. 2851-1] (the "Proposed Order"), Maune Raichle, again, "***strenuously object[ed]***" to the provisions permitting confidential *ex parte* communications with the Estimation Expert.  *See Maune Raichle Hartley French & Mudd, LLC's Supplemental Response to the Court Proposing Kenneth R. Feinberg as Rule 706 Expert*, filed on August 10, 2022 [Docket No. 2856] at 2 (emphasis added).  Despite Maune Raichle's protestations, the Court approved paragraph 4 of the Appointment Order, which adopts the Proposed Order's corresponding provision ***verbatim***.  *See* Appointment Order ¶ 4 (providing that "[a]ll parties, including the Co-Mediators, may have confidential *ex parte* communications with [the Estimation Expert].").

9. Maune Raichle also suggests—and argued explicitly before—that it should have access to all information provided to the Estimation Expert ***before*** he issues the Rule 706 Report.  *See generally* Motion ¶¶ 30-37; *see also* Maune Raichle Initial Response at 2 ("All parties are entitled to this information and the bases for his opinions well before he completes his report or testifies in court.").  Again, the Proposed Order submitted by the parties said otherwise, which was substantially adopted by the Court in the Appointment Order.  *Compare* Proposed Order ¶ 4(b) ("Any facts or data communicated to the Estimation Expert that he considers or relies upon in forming his opinions in the Rule 706 Expert shall be provided to all Parties simultaneously ***and be***

4

*subject to discovery following the filing of the Rule 706 Report with the Court.*")
(emphasis added) *with* Appointment Order ¶ 3(e) ("Subject to the applicable rules of discovery, Rule 706(b) and any applicable orders of the Court, **subsequent to the unsealing of the report**, all parties in interest shall retain the right to take any discovery in connection with the Rule 706 Report . . . .") (emphasis added).[4]

B. **The Estimation Expert is Discharging His Duties in Accordance with the Appointment Order**

10. The Estimation Expert has been diligently performing all of the tasks expected of him to complete the Rule 706 Report. Among other things, the Estimation Expert has been (a) preparing to estimate the volume and value of relevant claims, (b) retaining and working with his counsel and his own expert, (c) gathering information from the parties and the law firms representing claimants, and (d) meeting with the parties and discussing with them their views and positions. *See* November 17, 2022 Letter [Docket No. 3330]; December 20 Hearing Transcript at 3:10-16:11.

11. The fact that the Estimation Expert is exercising his discretion, in accordance with the Appointment Order, to have confidential *ex parte* communications with the parties, including the Co-Mediators, should come as no surprise to Maune Raichle. The Estimation Expert made clear in his filings with the Court in advance of his appointment that he proposed "several confidential meetings" with "interested participants." July 19, 2022 Letter [Docket No. 2791-1] (the "July 19 Letter") at 1 (emphasizing that "I would provide a full and fair opportunity for all interested participants, and their experts, to be a part of this proposed [estimation] process."); *see also Declaration of Kenneth R. Feinberg for Appointment as Court Expert*, filed on August 11,

---

[4] The Appointment Order's provisions regarding discovery *after* the report is unsealed is consistent with Rule 26, which is expressly referenced in the Appointment Order and is discussed in greater detail in Part C below.

5

2022 [Docket No. 2861] (the "Affidavit") ¶ 2 ("If appointed, I anticipate an extensive and intensive series of separate confidential meetings with all interested parties . . . . I would provide a full and fair opportunity for all interested parties, and their experts, to be part of this process.").

12. After his appointment, Maune Raichle asked that the Estimation Expert exercise his discretion and cease engaging in confidential *ex parte* communications with the parties. *See Notice of Maune Raichle Hartley French & Mudd, LLC's First Submission to Mr. Kenneth Feinberg Court Appointed Expert*, filed on August 26, 2022 [Docket No. 2935]. The Estimation Expert conducted a comprehensive Zoom meeting with Clay Thompson, Esq. of Maune Raichle on September 21, 2022, and respectfully declined to end *ex parte* communications with the various parties citing the powers granted to the Estimation Expert under the Appointment Order.

13. Maune Raichle also argues that the Estimation Expert is improperly acting like a mediator because he is actively coordinating with the Co-Mediators and has said that the Rule 706 Report may not be issued if the parties can first reach a settlement. Motion ¶¶ 2, 60-64. Both of these accusations miss the mark.

14. The Estimation Expert is not a mediator and has expressly stated so in his filings in this and other courts. *See* July 19 Letter at 2 ("It is important to emphasize that I would not be acting as a mediator, currently my ongoing role in other recent bankruptcies . . . . In this current bankruptcy, the Court has already appointed a group of qualified mediators. I would not be replicating their work."); Affidavit ¶ 8 ("I understand that my duty here is to the Court, and not to any particular party. Nor am I to act as a mediator . . . . My role here is expressly limited to my assignment as a Court-

6

appointed, Rule 706 Estimation Expert.").[5]

15. But more importantly, the Appointment Order expressly allows him to communicate with the parties "*including the Co-Mediators*." Appointment Order ¶ 4(b) (emphasis added). The interplay between the ongoing estimation and mediation processes and the Court's desire for a settlement was an important part of the Court's appointment of its own expert. *See* July 28 Hearing Transcript at 5:13-17 ("I remain hopeful that fixing an estimate of the aggregate volume and liability of the claims, both present and future, will facilitate the plan negotiation process and, hopefully, even settlement in advance of that through continued mediation efforts."); *id.* 13:4-8 (providing that "upon completion of the report, but before it is considered by the Court for adoption, the ***parties will be directed to participate in an in-person mandatory mediation session*** . . . to be scheduled and arranged by our current co-mediators.") (emphasis added); *id.* at 13:4-12 (encouraging the parties to engage with the Co-Mediators and "expect[ing] continued good faith efforts in this regard"). The Appointment Order reflects this interplay by requiring the Rule 706 Report be filed under seal and provided to the parties, including the Co-Mediators, before it is presented to the Court for consideration. *See* Appointment Order ¶ 3(c). After the report is filed under seal, the Court, the Co-Mediators, and the other parties will schedule all-hands mediation sessions. The Court's goal is a settlement, as it has made clear. That is always the goal in bankruptcy.[6] Thus, the Estimation Expert's statements

---

[5] *See also* October 18, 2022 Letter from Mr. Feinberg to the U.S. Bankruptcy Court for the District of Delaware, *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (Bankr. D. Del. Oct. 19, 2022) [Docket No. 1337] (the "Cyprus Letter") ("I emphasize that my role in LTL Management, LLC is that of a 'Court-Appointed Expert,' not a Mediator."); *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Oct. 19, 2022) [Docket No. 5171] ("Imerys Letter") (same).

[6] "[C]ompromises are favored because they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re NII Holdings, Inc.*, 536 B.R. 61, 98 (Bankr.

7

at the December 20 Hearing about the timing and process for a settlement after the Rule 706 Report is filed under seal is not of his own making, but of the Court's directive.

16. Finally, we must address that Maune Raichle calls into question the Estimation Expert's integrity and credibility, which he does not take lightly. The Estimation Expert's statement at the December 20 Hearing that "[e]verybody has said, this is no secret, they would rather settle the case" (December 20 Hearing Transcript at 15:2-4) was not made out of whole cloth. The Estimation Expert has not spoken to all 40,000 claimants, and of course, Maune Raichle appeared and spoke at the December 20 Hearing to state its position that it will not be part of a "global resolution for Maune Raichle's clients in this or any other two step;" yet Maune Raichle contradicts itself by having said it would like to engage in settlement discussions with J&J and affiliated parties about their specific claims if the preliminary injunction were lifted to allow them to do so. December 20 Hearing Transcript at 20:24-21:20; *see also* Motion ¶ 78. There is no basis to use the Estimation Expert's statement to disqualify him.

C. **Maune Raichle's Discovery Arguments are Both Premature and Meritless**

17. Maune Raichle argues that "*all* materials submitted to Mr. Feinberg" and "*all* communications between Mr. Feinberg and any party must be discoverable," not just the materials that the Estimation Expert relies upon or considers in writing his Rule 706 Report. Motion ¶ 35 (emphasis in original). This argument fails for three independent reasons.

18. First, as a threshold matter, Maune Raichle's discovery arguments are all premature. As stated in the Appointment Order, the right of a party "to take any

---

S.D.N.Y. 2015) (internal citations and quotations omitted); *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2019 WL 3294684, at *6 (Bankr. S.D.N.Y. July 19, 2019) ("Courts favor resolving disputes through settlements") (citing *In re Chemtura Corp.*, 439 B.R. 561, 596 (Bankr. S.D.N.Y. 2010) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged.") (footnote omitted).

8

discovery in connection with the Rule 706 Report" will be triggered only "subsequent to the unsealing of the report," which obviously cannot occur before the report itself is written and submitted to the Court. *See* Appointment Order ¶ 3(c)-(e). The Estimation Expert is still in the process of receiving information from, and conducting interviews with, the relevant parties. There is no report yet, and thus no opinions, facts, or data to discover. Maune Raichle, and all other parties, will get their chance to conduct appropriate discovery of the Estimation Expert and his report *after* the report is issued and unsealed, but not before then.

19. Second, Maune Raichle concedes that discovery of the information it really cares about—the *ex parte* communications between the Estimation Expert and *e.g.*, the Debtor, the TCC, the co-Mediators—is precluded under the Appointment Order. Motion ¶ 50 ("Here, the parties are not only having *ex parte* meetings with Mr. Feinberg, but these meetings are *confidential* and not subject to discovery") (emphasis in original); *see id.* ¶ 55 ("[N]one of this is discoverable.") (emphasis omitted). And Maune Raichle is correct in that admission. *See* Appointment Order ¶ 4(a) ("[C]onfidential communications shall not be disclosed to any other party, shall not be subject to discovery in this or any other proceeding, and shall not be memorialized in a written record or transcript.").

20. Third, Maune Raichle's position that everything submitted to a Rule 706 expert should be discoverable is inconsistent with both Rule 706 and Rule 26. Nowhere in Rule 706's directive that "the expert must advise the parties of any findings the expert makes," as Maune Raichle argues, is it "implicit" or "explicit" that all materials received by a Rule 706 expert should be discoverable. *See* Motion ¶ 35. Indeed, Maune Raichle cites no authority actually supporting this proposition, and

9

there is none.[7] Rule 706 is silent on the topic of what discovery a court-appointed expert must provide other than a deposition. Thus, it is Rule 26, as made clear in the Appointment Order, that governs the scope of discovery with respect to the Estimation Expert. *See* Appointment Order ¶ 2 ("[T]he Rule 706 Report shall comply in all respects with Federal Rule of Civil Procedure 26(a)(2)(B) . . . .").

21. Rule 26(a)(2)(B) requires that a testifying expert provide a written report containing, among other things, "a complete statement of all opinions the witness will express" and "the facts or data considered by the witness in forming them." F.R.C.P. 26(a)(2)(B).[8] Rule 26 thus limits discovery of an expert to only those non-privileged documents and communications that are relevant to the scope of that expert's report. *See, e.g.*, *Graco v. PMC Global, Inc.*, No. 08-1304, 2011 WL 666056, at * (D. N.J. Feb. 14, 2011) (party "entitled to all relevant discovery regarding the facts/data considered, reviewed or relied upon for the development, foundation, or basis of" expert report). Accordingly, to the extent that Maune Raichle intends to seek production of information provided to, but not considered by, the Estimation Expert in drafting his Rule 706 Report, such information will not be discoverable.

---

[7] Maune Raichle's citation to *In re Joint E. & S. Districts Asbestos Litig.*, 830 F. Supp. 686, 694 (E.D.N.Y. 1993) actually supports the Estimation Expert's position. As the Motion admits, in that case, the court held that "[a] Rule 706 expert witness . . . is subject to the requirements of advance notice and opportunity for testing that apply to all evidence in civil cases," such that "[w]hen the expert is directed to issue a report the court will rely on, 'the parties ***must be afforded the opportunity to evaluate the report and test its validity***." In *Joint E. & S. Districts Asbestos Litigation*, the court required the Rule 706 expert to file its report and provided for a one-month review period prior to the report being submitted to the court for consideration at a hearing, with the expert subject to deposition and cross-examination. 830 F.Supp. at 694. Here, the Appointment Order similarly provides that the Estimation Expert will be subject to deposition and cross-examination and preserves the rights of all parties to object to the admissibility to the Estimation Expert's opinions, conclusions or findings set forth in the Rule 706 Report at any hearing. Appointment Order ¶ 4(d).

[8] Rule 26(a)(2)(B) provides that any written report by an expert "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."

22. Moreover, Maune Raichle's complaint that it lacks access to the substance of various parties' advocacy in meetings with the Estimation Expert is unwarranted. *See* Motion ¶ 37. The Appointment Order states that "any written submissions provided to the Estimation Expert shall be made available to all parties and shall be subject to discovery." Appointment Order ¶ 4(b). But this will happen only "[a]fter the unsealing of the Rule 706 Report." *Id.* Maune Raichle will have to wait, like everyone else.

23. After the Rule 706 Report is issued, the Estimation Expert will make available all of the materials he considered in drafting the report, consistent with the Appointment Order, Rule 26, and Rule 706. He will also make himself subject to deposition-related discovery. Maune Raichle's rights to seek such discovery, contest the scope of such discovery, and challenge any portion of the Rule 706 report will thus be preserved. *See* Appointment Order ¶ 3(d)-(e).

**D.    There is No Basis to Disqualify the Estimation Expert**

24. Maune Raichle argues, without identifying any relevant facts in light of the legal standards discussed below, that the Court should exercise its power to disqualify the Estimation Expert. Motion ¶¶ 38-42. These arguments are all re-packaged complaints about the estimation process and the Appointment Order that have already been addressed above.

25. The Court appointed the Estimation Expert as its expert pursuant to Rule 706, which permits the court to "appoint any expert that the parties agree on and ***any of its own choosing***" who consents to act. F.R.E. 706(a) (emphasis added). Courts have recognized "the inherent power of a trial court to appoint an expert under proper circumstances . . . to aid it in the just disposition of a case." *Scott v. Spanjer Bros., Inc.*, 298 F.2d 928, 930-31 (2d Cir. 1962). Doing so allows the court to "seek impartial

11

assistance in order to enlighten the jury and himself on issues which have become confused because of partisanship in presentation." *Id.* In *In re Joint Eastern & Southern Districts Asbestos Litigation*, Judges Lifland and Weinstein jointly recognized the important role that Rule 706 experts play in mass tort cases:

> The work of such experts is especially critical in dealing with complex mass tort problems such as the instant case. The dilemma presented here is typical of these exceptional cases: the epidemiological and other scientific questions are complex and riven with uncertainties and interdependent variables; the number of persons affected runs in the hundreds of thousands; the courts cannot proceed toward a just and equitable result without some reasonably firm data projecting the numbers and volume of the claims at issue and all parties have strong and conflicting interests in the character of that data. These factors, alone and in combination, point to the necessity of neutral, expert assistance under the auspices of the court.

830 Supp. 686, 694 (S.D.N.Y. & E.D.N.Y. 1993).

26. Nearly all of the decisions cited by Maune Raichle regarding the standards to disqualify an expert witness relate to a litigant's expert and not the Court's expert under Rule 706. *See* Motion ¶¶ 38-39.[9] Rather, the few decisions cited by Maune Raichle involving Rule 706 experts and the need for "neutrality" support the Estimation Expert's continued appointment because he is a neutral party, with no conflicts of interest, and has no "axe to grind." *See* Motion ¶ 40 (quoting *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 665 (7th Cir. 2002)). That is precisely the reason

---

[9] *See U.S. ex rel Cherry Hill Convalescent, Center, Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 248-49 (D.N.J. 1994) (discussing standards to disqualify a party's expert for conflicts of interest); *Koch Refining Co. v. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996) (same); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277-78 (S.D. Ohio 1988) (same); *In re Ambassador Group, Inc. Litig.*, 879 F. Supp. 237, 241 (E.D.N.Y. 1994) (same); *Cordy v. Sherman-Williams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994) (same); *First Niagara Risk Management, Inc. v. Folino*, 317 F.R.D. 23, 29 (E.D. Pa. 2016) (same). All of these decisions involved some aspect of "side-switching" where an expert had represented multiple parties in a litigation and allegedly violated its "duty of independence, "duty to maintain confidentiality," and/or attorney-client privilege with its client—facts that are not present here.

12

the Court appointed him as a "neutral witness" as opposed to the "warring experts" retained by the parties. Motion ¶ 40.

27. The Court's appointment of the Estimation Expert follows a process where the Estimation Expert disclosed his potential connections to parties in this chapter 11 case (*see* Affidavit). As set forth in these filings, the Estimation Expert is a neutral party and does not have any conflicts of interest that would prohibit him from serving as the Estimation Expert, question his loyalties to the Court or suggest any bias towards any of the parties. In any event, no parties, including Maune Raichle, challenged the Estimation Expert's neutrality or connections at the time of his appointment when they had the opportunity, or now—as the Motion does not even allege that the Estimation Expert is not neutral.

28. Maune Raichle's complaints repeated in the Motion are about this bankruptcy case and estimation, each of which have already been overruled by the Court. Maune Raichle has made it clear it is contesting this bankruptcy case in any way, shape or form, and at whatever cost or disruption it causes. In doing so, they have also made clear they will contest the Estimation Expert's findings no matter what they say. *See* Motion ¶ 8 ("Mr. Feinberg's estimate—which will be wrong whatever the number . . . ."). Instead of completing the estimation process, Maune Raichle asserts a baseless "disqualification" argument in a not-so-well disguised attempt to go back to the tort system to litigate where—as this Court has noted—the "vast majority suffering from illness in the existing backlog of cases will not see a penny of recovery for years." *In re LTL Management, LLC*, 637 B.R. 396, 412 (Bankr. D.N.J. 2022). The Court should reject Maune Raichle's complaints once again as it did before.

13

## **CONCLUSION**

**WHEREFORE**, it is respectfully submitted that the Court (a) deny the Motion and (b) grant such other and further relief as is just and proper.

Dated: January 11, 2023
      New York, New York

      TOGUT, SEGAL & SEGAL LLP
      On behalf of KENNETH R. FEINBERG, ESQ.
      *Court Appointed Estimation Expert*
      By:

      */s/ Albert Togut*
      Albert Togut (admitted *pro hac vice*)
      Frank A. Oswald, Esq.
      Brian F. Shaughnessy, Esq. (admitted *pro hac vice*)
      One Penn Plaza, Suite 3335
      New York, New York 10119
      Telephone: (212) 594-5000