**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)
ATTORNEYS FOR DEBTOR

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30589 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>**Hearing Date and Time:**<br>February 14, 2023 at 10:00 a.m. |

**DEBTOR'S OBJECTION TO SUPPLEMENTAL FILING**
**IN SUPPORT OF MOTION SEEKING RELIEF FROM THE**
**PRELIMINARY INJUNCTION AND CERTAIN RELATED RELIEF**

LTL Management LLC, the debtor in the above-captioned case (the "Debtor"),

files this objection to the *Memorandum of Law in Support of Supplemental Filing by Movant*

*Anthony Hernandez Valadez in Support of his Motion for an Order Granting Relief From the*

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

*Automatic Stay and Preliminary Injunction, Filed on May 24, 2022, and Status Report* [Dkt 3698] (the "Supplement") filed on behalf of Anthony Hernandez Valadez (the "Movant").[2]

## Objection

The Movant again seeks an order from the Court lifting the automatic stay and granting relief from the PI Order.[3] The basis for this renewed request is the recent decision by a panel of the Third Circuit ruling that the Chapter 11 Case should be dismissed. See In re LTL Mgmt., LLC, 2023 WL 1098189 (3d Cir. Jan. 30, 2023) (the "Panel Opinion"). But the Panel Opinion, which the Debtor believes contains fundamental errors and should be reversed, has not yet resulted, and may never result, in the dismissal of this Chapter 11 Case. Indeed, today, the Debtor will file a petition for rehearing and rehearing en banc. Accordingly, it remains premature to modify the stay and PI Order to permit the Movant to move forward while all other similarly situated claimants remain stayed and enjoined. In fact, granting the relief requested would set a precedent that could lead potentially thousands of other claimants to seek similar relief, which, if granted, would result in an effective dismissal of this case before any dismissal mandate issues. In addition, the Debtor would be forced to prepare experts, identify witnesses, and appear for trial even though it is not at all clear that the Chapter 11 Case will be dismissed. While the Debtor is sympathetic towards the Movant and his medical condition, there is no basis for permitting his case to move forward at this time. For the reasons set forth below, the Movant's supplemental request should be denied.

---

[2] The Debtor previously objected to the relief requested by the Movant in the *Debtor's Omnibus Obj. to Anthony Hernandez Valadez's and Audra Johnson's Mots. Seeking Relief From the Prelim. Inj. and Certain Related Relief* [Dkt. 2429] (the "Debtor's Objection"). Capitalized terms not otherwise defined herein have the meanings given to them in the Debtor's Objection or the Supplement, as appropriate.

[3] Unlike the Movant's prior request, the Movant seeks to name the Debtor and New JJCI (which never sold talc products and, by operation of law, has no talc liability) in his pending State Court action and proceed to trial within 60 days from February 9, 2023 (the current placeholder trial date set in the State Court action). See Supp. ¶ 4.

## I. The Panel Opinion Is Not a Basis to Modify the Automatic Stay and the PI Order at This Time.

1. The Movant asserts that the issuance of the Panel Opinion compels the Court to lift the stay and modify the PI Order. See, e.g., Supp. ¶¶ 2, 6, 8, 9. But the Panel Opinion is not yet operative—and will not become so (if ever) until the Third Circuit issues a mandate or certified judgment directing this Court to dismiss this case.[4] Under the Federal Appellate Rules, no mandate can issue until 7 days after the time to file a petition for rehearing expires (e.g. February 13, 2023) or 7 days after entry of an order denying a (a) petition for panel rehearing, (b) petition for rehearing en banc or (c) motion for stay of mandate, whichever is later.[5] Until a mandate or certified judgment directing dismissal issues, this Court lacks jurisdiction to dismiss the Chapter 11 Case.[6] And, as the Movant acknowledges, the Debtor has appellate options, see id. at ¶ 42, including filing a petition for rehearing and seeking a stay of the issuance of the mandate.[7] Later today, the Debtor will in fact file a petition for rehearing and rehearing en banc on the basis that the Panel Opinion contravenes Supreme Court and Third Circuit precedent, and disregards section 524(g) of the Bankruptcy Code. The Chapter 11 Case

---

[4]   See Fed. R. App. P. 41. And, if the mandate does issue and this Court enters an order dismissing the Chapter 11 Case, the Movant's request will be moot.

[5]   See Fed. R. App. P. 35(c) ("A petition for a rehearing en banc must be filed within the time prescribed by Rule 40 for filing a petition for rehearing."); Fed. R. App. P. 40(a)(1) ("Unless the time is shortened or extended by order or local rule, a petition for panel rehearing may be filed within 14 days after entry of judgment."); Fed. R. App. P. 41(b) ("The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. The court may shorten or extend the time by order.").

[6]   See Roudabush v. Bitener, 2016 WL 3466092, at *2 (D.N.J. June 22, 2016) (A mandate or certified judgment's issuance "returns jurisdiction to" the lower court). The Movant incorrectly suggests that this Court already has been directed to dismiss the Chapter 11 Case but has failed to do so. See, e.g., Supp. ¶ 43.

[7]   See supra n. 4; see also Fed. R. App. P. 41(d) (providing procedure for seeking stay of mandate).

remains pending and the Supplement should be denied for the same reason the Movant's initial motion was denied.

## II. There Is No Other Basis to Lift the Stay or Grant Relief From the PI Order.

2. The Movant cavalierly claims that "given the Third Circuit's order directing this Court to dismiss this case, there is no need for Movant to wait until that act occurs because of the upcoming February 9, 2023, trial date in State Court and his declining health."[8] Supp. ¶ 43. But, in fact, the Chapter 11 Case has not been dismissed.[9] Because the case remains pending, substantially the same bases that supported the Court's initial ruling continue to support maintaining a stay of the Movant's claims.

3. First, granting relief to the Movant will unfairly permit the Movant to pursue his talc claims while all the other thousands of similarly situated claimants remain subject to the automatic stay and the PI Order. See Debtor's Obj. § I. The Movant is one of thousands of claimants who allege the same type of claims against the Debtor, and there is no basis to treat the Movant differently.[10] See id. The Movant should not be permitted to advance his interests at

---

[8] Notably, the February 9, 2023 trial date in State Court has always been a placeholder date and, given that the Panel Opinion was only recently issued on January 30, 2023, it seems unlikely that trial would have been expected to take place on February 9, 2023. Supp. ¶ 27.

[9] Movant's counsel cites and relies upon but ignores a critical part of the Court's comment at the July 28, 2022 hearing. The Court stated it did not want to "slow down the progress" of the case in the event "the Third Circuit does reverse [this Court's] decision **and** this case is dismissed." See July 28, 2022 Hr'g Tr. 20:23-21:3 (emphasis added). As discussed herein, the Chapter 11 Case has not yet been dismissed and it may never be—the Movant's claims should remain stayed.

[10] The Movant heavily relies upon comments of the Court made in connection with granting limited stay relief to the Movant. But the Court itself clarified that its intent in granting limited relief was to preserve evidence and "[t]o ensure the integrity of the trial from an evidentiary standpoint and also to allow the plaintiff to enter the queue, so to speak, to be able to place itself in a position where, depending upon how the Circuit rules, it could move forward expeditiously as opposed to months and months later, or being placed at the end of a queue, given that it's a recent complaint being filed. That was the sole limit and extent of the relief I granted. And that's the limit of what I'm prepared to do. I didn't want to be placed in a position **where I'm choosing between plaintiffs on who gets to go first and who gets to move and have their day in court first, whose condition warrants it over others**." Sept. 14, 2022 Hr'g Tr. 12:7-19 (emphasis added). The Court's goals of preserving evidence and permitting the Movant to "enter the queue" have been achieved. Permitting the Movant to proceed with trial would again place the Court in the position of having to choose between plaintiffs and "who gets to go first."

-4-

the expense of the Debtor, this reorganization case, and thousands of similarly situated claimants.[11]

4. Lifting the stay and the PI Order as to the Movant also would establish a precedent incentivizing potentially thousands of other similarly situated claimants to seek similar relief in a case-by-case fashion, at a time when the Debtor is focusing its attention and resources on exploring all available options in the wake of the Panel Opinion. While its Chapter 11 Case remains pending, and during this critical time, the Debtor should not be abruptly forced to re-enter the tort system on an expedited, prejudicial time frame or litigate myriad, piecemeal stay relief motions. See also Debtor's Obj. ¶¶ 14-15.

### III. Application of the Mid-Atlantic Factors Does Not Support the Movant's Request.

5. Upon consideration of the applicable Mid-Atlantic factors,[12] as set forth below and in the Debtor's Objection, ¶¶ 19-34, it is clear that the Movant's request should be denied, especially given the balance of harms and the prejudice to other claimants.

#### A. Impact of the Stay and PI Order on the Parties and the Balance of the Harms.

6. The Movant asserts that he is irreparably harmed by the PI Order and maintenance of the automatic stay because (a) the stay and the PI Order deprive him of his right to have his claims tried during his lifetime, (b) the stay and the PI Order preclude him from prosecuting his claims, including against the Debtor, and (c) there is no need to maintain the stay

---

[11] As a result, litigation of the Movant's claim in the State Court could potentially prejudice other similarly situated claimants who are currently stayed from pursing their own claims, making this Mid-Atlantic factor weigh in favor of not lifting the stay and the PI Order. See also Debtor's Obj. ¶ 31; In re Mid-Atlantic Handling Sys., LLC, 304 B.R. 111 (Bankr. D.N.J. 2003).

[12] The other Mid-Atlantic factors—whether the other proceeding involves the debtor as a fiduciary, whether the judgment claim arising from the other action is subject to equitable subordination, and whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor—are not relevant and are not analyzed herein.

-5-

or the PI Order given the Panel Opinion. Supp. ¶¶ 43-46. But for the reasons set forth herein regarding the Panel Opinion and in the Debtor's Objection, ¶¶ 20-22, 24, none of these arguments provides a basis for granting relief from the automatic stay or the PI Order.

7. First, claimants' jury trial rights are not impaired by the Chapter 11 Case. Any Seventh Amendment jury rights would remain intact under a properly drafted and approved plan.

8. Second, there is no guarantee that lifting the stay and the PI Order would result in a more expedited recovery for the Movant. As an initial matter, the Movant may receive no recovery. In addition, even if a jury awards a recovery, the Movant would likely face substantial delays due to appeals. Moreover, even if the stay and PI Order would cause a delay beyond what may occur in litigation in the tort system, courts have found that "mere delay is insufficient to prevent the issuance of an injunction." See In re Bestwall LLC, 606 B.R. 243, 257 (Bankr. W.D.N.C. 2019); In re W.R. Grace & Co., 386 B.R. 17, 35 (Bankr. D. Del. 2008) (finding that delay of compensation for asbestos claimants and potential loss of witness testimony did not outweigh potential harm to reorganization efforts). Similarly, because the delay caused by the filing of a chapter 11 case and the automatic stay affects all claimants, such delay alone is insufficient to justify relief from the protections the automatic stay affords to the Debtor. See W.R. Grace & Co., 386 B.R. at 35-36 (stating that court denied requests for relief from the automatic stay because the delays caused by bankruptcy proceedings "affect all 'asbestos victims'" and the "diversion of time, effort and resources that would be required" if the actions proceeded would only further delay the reorganization process); see also In re Hunt, 521 B.R. 479, 483 (Bankr. M.D. Pa. 2014) ("The fact that a debtor effectively put creditors on hold and delayed the pursuit of state law claims is simply the result of filing bankruptcy and the

automatic stay under § 362(a)."). For the same reasons here, possible delay, by itself, is insufficient to justify granting relief from the PI Order or the automatic stay.

9. Third, any uncertainty regarding the duration of the Chapter 11 Case (or the PI Order) does not weigh in favor of lifting the stay. As set forth below, the PI Order remains pending before the Third Circuit. That fact likely divests this Court of the ability to grant the relief requested by the Supplement. If a mandate to dismiss is issued, the relief requested by the Movant will become moot. Conversely, if no mandate to dismiss issues, the Debtor's case will remain pending and its ability to reorganize under section 524(g) should be preserved.

10. By contrast to the lack of harm to the Movant in maintaining the stay and the PI Order, lifting the stay and injunction would result in substantial harm to the Debtor, including, as described below, potentially irretrievable damage to its prospects to reorganize. The balance of the harms, therefore, weighs in favor of maintaining the automatic stay and the PI Order.

### B. Whether Relief Would Result in a Partial or Complete Resolution of the Issues.

11. The relief requested would not result in a complete resolution of issues. Rather, any resolution of the Movant's claims outside of the Chapter 11 Case, which remains pending, would threaten and potentially eviscerate the Debtor's ability to successfully reorganize and would distract the Debtor at a time when the Debtor is devoting its resources and attention, in a compressed time frame, to pursuing all available options to achieve a successful global resolution of claims, notwithstanding the Panel Opinion. There is simply no meaningful basis to distinguish the Movant's claims from the thousands of other pending talc claims against the Debtor. Accordingly, lifting the stay as requested by the Movant will not completely resolve the

issues presented by this Chapter 11 Case. Rather, it will foster efforts to pursue piecemeal litigation and serial presentation of the same issues over and over again in different courts around the country. See Jan. 11, 2022 Hr'g Tr. 89:7-9 ("This Court determines that the continued prosecution of claims by movant would lead to piecemeal litigation of the same issues in different courts"). This factor weighs against lifting the stay and the PI Order.

### C.    Lack of Any Connection to or Interference with the Chapter 11 Case.

12.    The Movant summarily argues that lifting the stay and PI Order to permit his claims to move forward would not interfere with the Chapter 11 Case given the Panel Opinion.[13] Supp. ¶¶ 50-51. But the Debtor's reorganization case remains pending and the PI Order and the automatic stay remain in place. As explained above, prosecution of talc claims would distract the Debtor from focusing on its efforts to achieve a successful resolution of this case and likely lead to a tidal wave of piecemeal litigation that will doom the Debtor's ability to reorganize in this Court. A failure to maintain the stay would result in the very irreparable harm the PI Order and the automatic stay are intended to avoid. This factor weighs against granting the relief requested by the Movant.[14]

### D.    Whether a Specialized Tribunal With the Necessary Expertise Has Been Established to Hear the Causes of Action.

13.    The Debtor does not dispute that the Superior Court of California has the expertise to hear the Movant's personal injury causes of action. However, as set forth above, this factor does not distinguish the Movant's claims from the Debtor's myriad other talc claims. The

---

[13]    The Movant incorrectly suggests that consideration of the Debtor's appellate rights, including a stay, is premature because no such request has been filed. But the deadline to file a petition for rehearing is today and a petition in fact will be filed. It is simply improper to pretend, as the Movant does, that this Chapter 11 Case is no longer pending.

[14]    For these same reasons, the Movant's request to waive the requirements of Fed. R. Bankr. P. 4001(a)(3), Supp. ¶ 42, should be denied.

Chapter 11 Case remains pending and is the only proceeding in which the Debtor can achieve a global and equitable resolution of its talc-related claims. Unless or until this case no longer exists, this factor weighs against granting the relief sought by the Movant.

### E. Whether the Debtor's Insurer Has Assumed Full Responsibility for Defending the Movant's Claims.

14. As set forth in the Debtor's Objection, ¶ 29, the Debtor shares insurance policies—which are estate property under 11 U.S.C. § 541(a)—with the Protected Parties. Litigation against the Debtor or the Protected Parties could deplete available insurance coverage. Id.; see also Jan. 11, 2022 Hr'g Tr. 89:21-23 ("And of course we go back to the risks of eroding the available insurance to the extent it's -- to the extent there is insurance so available."). Although J&J and Old JJCI tendered talc-related claims to the third-party insurers, to date none of those insurers has acknowledged its coverage obligations or defended Old JJCI or J&J. First Day Decl. ¶ 53. Moreover, the Debtor's insurance coverage is subject to aggregate limits and could be eroded. Debtor's Obj. ¶ 29. As a result, this factor also weighs against granting the relief requested by the Movant.

### F. Whether the Actions Primarily Involve Third Parties.

15. Unlike the Movant's prior request, the Supplement seeks to lift the stay as to the Debtor and New JJCI. See Supp. ¶ 45. Because the Movant now seeks to file suit directly against the Debtor, it cannot seriously be argued that the Movant's action primarily involves third parties. Additionally, it is inappropriate to modify either the stay or the PI Order as to New JJCI, an entity that never sold talc products and, by operation of law, has no talc liability. Pursuant to the corporate restructuring that created both the Debtor and New JJCI, the Debtor became solely responsible for Old JJCI's liabilities arising from talc-related claims against it (other than claims for which the exclusive remedy is provided under a workers' compensation

-9-

statute or similar laws). See First Day Decl. ¶ 24. Therefore, any talc-related action against New JJCI would necessarily have to be based on fraudulent transfer, alter ego, successor liability or similar "derivative" claims, which remain property of the Debtor's estate.[15]

16. Further, as set forth in the Debtor's Objection, litigation against any of the non-debtor Protected Parties would seek to adjudicate claims that "involve the same products, same time periods, same alleged injuries, and same evidence as claims against Debtor" and the Debtor's indemnification obligations to non-debtors, including the Debtor's indemnification obligations to New JJCI. See Debtor's Obj. ¶ 30; see also First Day Decl. ¶ 23. As a result, prosecution of the Movant's claims against the Protected Parties, including New JJCI, also would harm the Debtor. This factor also does not support granting the Movant's request.

### G. Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors.

17. Although the Movant does not address this factor, for the reasons set forth above, permitting the Movant's talc-related claims to proceed would prejudice the interests of thousands of talc claimants, who are similarly situated yet would remain subject to the stay and the PI Order. See, e.g., Jan. 11, 2022 Hr'g Tr. 90:1-7; id. at 91:3-7; PI Op., 21 22. Lifting the stay to permit the Movant to proceed with his action would result in the Movant receiving preferential treatment as compared to other similarly situated claimants. This factor weighs against granting the Movant relief from the PI Order and automatic stay.

---

[15] See, e.g., In re Emoral, Inc., 740 F.3d 875, 880-82 (3d Cir. 2014) (holding that personal injury claimants' successor liability claims against transferee were property of the debtor's estate); Tsai v. Bldgs. by Jamie, Inc. (In re Bldgs. by Jamie, Inc.), 230 B.R. 36, 43 (Bankr. D.N.J. 1998) (holding that trustee succeeded to debtor's right to assert alter ego claim because corporate debtor's interest in its alter ego's assets is property of the estate); Cho v. Park (In re Park), 682 F. App'x 104, 107 (3d Cir. 2017) ("broad definition of a bankruptcy estate includes causes of action that arise out of preferential or fraudulent transfers."); see also *Debtor's Suppl. Mem. of Law in Supp. of Prelim. Inj. Mot.*, Dkt. 128, 46-62.

NAI-1535335148

### H. The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation.

18. Contrary to the Movant's assertions (see Supp. ¶¶ 53-55), lifting the stay and PI Order would not promote judicial economy and the expeditious and economical resolution of the litigation. As set forth above, lifting the stay will likely result in an avalanche of similar requests and frustrate the Debtor's efforts to achieve a successful resolution of this case. The untenable, unsustainable, and inequitable nature of the talc litigation was a driving factor in the Debtor's determination to commence this case. The most efficient and economic resolution of not just the Movant's claims, but the thousands of current (and future) talc-related claims against the Debtor, is through resolution via the bankruptcy process and the creation of a trust. See PI Op., 49 ("Extension of the automatic stay to the Protected Parties, on the other hand, ensures that all claims are reconciled through a bankruptcy trust, which would place reduced evidentiary and causation burdens on claimants. Resolution of claims and payments to claimants can be achieved at a far more expeditious pace in bankruptcy than through uncertain litigation in the tort system. A trust would establish a far simpler and streamlined process than currently available in the tort system."). This factor weighs against granting the relief requested by the Movant.

### I. Whether the Parties Are Ready for Trial in the Other Proceedings.

19. The Movant does not claim that the parties are ready for trial. To the contrary, the Movant seeks to proceed to trial in 60 days, and claims that relief from the stay and PI Order will permit the Movant "to fully prosecute and expeditiously try his State Court action." Supp. ¶ 56. The Movant also summarily offers that the Debtor and the Protected Parties will "have ample time to conduct discovery and soon be ready for trial." Id. The Debtor disagrees. Briefing and discovery by all parties will have to be completed before the State Court. No

NAI-1535335148

parties have yet filed answers (consistent with the Court's order granting the Movant limited stay relief, Dkt. 2836) and the Movant concedes that new parties will need to be named in the action. See Supp. ¶ 45.  In sum, the parties are not ready for trial.  Further, granting the Movant's request would advantage the Movant over thousands of other similarly situated creditors (some of whom have cases much further along than the Movant's) and could result in a tidal wave of similar, piecemeal requests, to the detriment of the Debtor's ongoing efforts to achieve a successful resolution of this Chapter 11 Case.  This factor does not weigh in favor of granting the Movant's request.

**IV.    The Pending Appeals of the PI Order Further Support Denial of the Movant's Request.**

20.    The Movant seeks to have the Court revisit its prior rulings in connection with the PI Order and alter the status quo established by the PI Order.  But the Panel Opinion itself does nothing to alter the PI Order and the PI Order will not be terminated unless or until a dismissal mandate is issued.  The pending appeals of the PI Order divest this Court of jurisdiction to grant the relief requested by the Movant as to the Protected Parties.

21.    Courts treat the filing of a notice of appeal as "an event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).  This divestiture rule applies in chapter 11 cases. In re G-I Holdings, Inc., 568 B.R. 731, 763 (Bankr. D.N.J. 2017) (stating that the "divestiture rules applies with equal weight to bankruptcy court orders"); see also In re 710 Long Ridge Rd. Operating Co., II, LLC, 2014 WL 1648725, at *3 (Bankr. D.N.J. Apr. 24, 2014) (finding that bankruptcy court cannot alter or modify its prior order while that order is pending on appeal because "[a]ttempts to relitigate issues while they are on appeal are not appropriate").  Nonetheless, lower

courts retain some authority to modify an injunction. Such modifications are "proper only when there has been a change of circumstances," Favia v. Ind. Univ. of Pa., 7 F.3d 332, 337 (3d Cir. 1993), and then only to preserve the status quo or "the integrity of the appeal," Ortho Pharm. Corp. v. Amgen, Inc., 887 F.2d 460, 464 (3d Cir. 1989).

22. The Movant explicitly seeks relief from the PI Order that is currently on appeal. Although the issues on appeal are not identical to the issues presented by the Movant in the Supplement, a decision on the Movant's request requires the Court to consider many of the same issues that remain on appeal. See G-I Holdings, 568 B.R. at 768 (finding that the divestiture rule applied to motion before bankruptcy court because there was a "substantial risk that [the bankruptcy court's] decision will interfere with the appeal or substantially undermine the jurisdiction of the District Court" because bankruptcy court considered similar issues in deciding abstention and injunction motions related to same underlying facts); see also In re Whispering Pines Estates, Inc., 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007) (finding that appeal of confirmation order that provided relief from automatic stay to creditor divested authority from bankruptcy court to consider motion for relief from stay filed by same creditor because "the subject matter under the appeal of the Confirmation Order so closely related to the Stay Relief Motion that the entry of the Stay Relief Order impermissibly interfered with the Debtor's rights in its appeal").

23. Here, lifting the stay would be contrary to various findings of the Court in the PI Opinion and would not preserve the status quo or the integrity of the appeals. See PI Op., 19 (finding that the Debtor and the Protected Parties "enjoy such an identity of interests that a lawsuit asserting talc-related claims against the Protected Parties is essentially a suit against Debtor."); id. at 48 ("Debtor is likely to suffer irreparable injury without relief. As previously

explained, continued litigation will have an adverse impact on the bankruptcy estate, will hinder reorganization efforts, and will serve as a constant drain on resources and time."); id. ("the talc claimants will not be prejudiced through the issuance of a preliminary injunction and will—in fact—benefit from the extension of the automatic stay to the Protected Parties and the handling of their claims through the bankruptcy process."). The Movant essentially seeks to circumvent the appeals and achieve the same result, albeit limited to himself only, that the appellants seek in the pending appeals of the PI Order: to remove any bar from commencing or pursuing talc-related claims against the Protected Parties. Thus, the divestiture rule precludes granting the relief requested in the Supplement in light of the pending appeals. Whispering Pines Estate, 369 B.R. at 759 ("More so, once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.").

24.     The Debtor submits that, for this additional reason, the Court should deny the relief requested by the Movant as to the Protected Parties.

## Conclusion

For the reasons set forth above and in the Debtor's Objection, the Debtor respectfully requests that the Court deny the relief requested in the Supplement, and grant the Debtor such other and further relief as the Court may deem proper.

NAI-1535335148

Dated: February 13, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (*pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

-15-