MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Clayton L. Thompson, Esq.
cthompson@mrhfmlaw.com
Suzanne M. Ratcliffe, Esq.
sratcliffe@mrhfmlaw.com
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922

*Counsel for Mesothelioma Claimant and Appellant*
*Katherine Tollefson and Certain Mesothelioma Claimants*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 |
| Debtor. | Honorable Michael B. Kaplan |
| | **Hearing date: March 20, 2023** |

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC'S OBJECTION TO FEE APPLICATIONS OF FCR RANDI S. ELLIS AND HER COUNSEL**

The Third Circuit rejected Johnson & Johnson's attempt to overcome the tort system. *In re LTL Mgmt., LLC*, 58 F.4th 738 (3rd Cir. 2023). Too much **money**=bad faith bankruptcy. At present, this Court only has jurisdiction for "limited matters" like approving professional fees. Tr. 2/14/23, pg. 4. Given the Circuit's decision and pursuant to paragraph 2(h) of the Order for Compensation Procedures, MRHFM objects to fees the FCR ($2,131.50) and her lawyers ($4,453.50) charged for work performed on January 31st.[1] Unless and until the Third Circuit orders otherwise, there will be no channeling injunction and no trust. Therefore, the FCR and her counsel no longer have a role in this case. Any fees they submit for work *after* January 30th are **un**necessary and should not be paid.

---

[1] *See* Order Establishing Procedure for Interim Compensation and Reimbursement of Retained Professionals, December 9, 2021 ("Order for Compensation Procedures"), Dkt. 761. Objections are to work on January 31st for the FCR and her counsel. *See* FCR Fee App. Jan. 2023 (Dkt. 3758-3) & FCR Counsel Fee App. Jan. 2023 (Dkt. 3760-3).

LTL still wants to foist a "global resolution" on its victims that caps their damages and tramples on their jury trial rights.[2] According to her bills, the FCR remains willing to assist:

> [Jan. 30] Analyze 3rd Circuit Opinion (1.8); Emails with counsel regarding 3rd Circuit opinion and next steps (.3); Communications with mediators regarding 3rd Circuit opinion (.6).
>
> [Jan. 31] Review of text order regarding status conference set for next week (.1); Review text orders regarding exclusivity (.1); Discussion with mediators regarding 3rd Circuit opinion and next steps (.3); Additional analysis of 3rd Circuit Court opinion (1.6). FCR Fee App. Jan. 2023, Dkt. 3758-3.

There are **no next steps** for the FCR. There's nothing to discuss or strategize about with the mediators. Given the Circuit's ruling on January 30th, **any** fees the FCR charges going forward are unnecessary and should not be approved. *See In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 840 (3rd Cir. 1994)(Under 11 U.S.C. § 330(a), this Court "*may* award reasonable compensation for actual, **necessary** services…")(emphasis).[3] *See also* Fed. R. Bankr. P. 2017(a).[4]

"[R]esort to Chapter 11 is appropriate only for entities facing financial distress," which "ensures that claimants' pre-bankruptcy remedies—here, the chance to prove to **a jury of their peers** injuries claimed to be caused by a consumer product—are disrupted only when necessary." *LTL Mgmt.,* 58 F.4th at 764 (emphasis). Tellingly, at oral argument, Judge Fuentes said "I assume that [future cases being litigated outside of bankruptcy] would protect people who were exposed years down the

---

[2] LTL will "continue to explore options, notwithstanding the panel's ruling to achieve a successful resolution in this case." Tr. 2/14/2023, pg. 5. "[T]he problem that we face is that this bankruptcy case is not over. It has not been dismissed" and "[w]e are in the midst of exploring and working on options to still successfully resolve this case." *Id.*, pg. 34. Further, releasing cases into the tort system "would be a huge distraction from efforts that we're engaging in now to try to, notwithstanding the panel decision, achieve success in this case…" *Id.*, pg. 36.

[3] " Disagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *See, e.g., In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 843–44 (3d Cir. 1994) (*Cohen & Thiros, P.C. v. Keen Enters., Inc.,* 44 B.R. 570, 573 (N.D.Ind.1984)).

[4] "On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive." MRHFM does not contend the FCR's fees are excessive, but they are unnecessary.

road. They would not be subject to bankruptcy, of course. But they would be **protected**." Tr. 9/19/22, pg. 23 (emphasis). The Third Circuit recognizes the way to *protect* future plaintiffs against a non-distressed fully solvent defendant is to preserve their unfettered access to the tort system. The FCR never saw it this way.

There was plenty of support in the record for protecting future plaintiffs' Constitutional rights, state law remedies, and full jury system recourse well before the FCR filed her Statement on July 15th (Dkt. 2724). *See eg.,* MRHFM Opp. Prelim. Inj., Dkt. 2564.[5] But rather than protect future plaintiffs, the FCR instead adopted the value judgments of the $460 billion tortfeasor that poisoned them.[6] An FCR's role is ***not*** to fawn over the bankruptcy system[7]—where not a single victim has been paid a dime in ten-court-years of billionaire Two Steps—or act as judge and jury on the merits of talc claims, purporting to consider the "science" and decide these issues for *all* future plaintiffs for *all* time.[8] Here, unless and until LTL irrevocably concedes that its talc liabilities are greater than $61 billion,[9] all the Debtor's claimants can be paid in full. So, while the appeal was pending the FCR had ***one job***: to protect future victims' full recourse to the tort system with uncapped damages.[10] Now, she has no job.

---

[5] *See* TCC MTD (Dkt. 632, 12/1/21), Arnold & Itkin MTD (Dkt. 766, 12/9/21), Law Professor Brief (Dkt. 1265, 1/25/22), TCC2 Opp. Prelim. Inj. (Dkt. 166, 2/1/22), TCC Obj. Prelim. Inj. (Dkt. 142, 12/22/21), Aylstock Opp. Prelim. Inj. (Dkt. 143, 12/22/21), Brief of Erwin Chemerinsky, Dean of California Law School (Dkt. 1323, 1/31/22), and TCC2 Reply MTD (Dkt. 1358, 2/3/22).

[6] "Present claimants also have ample reason to seek global resolution to avoid the delays and inconsistent results inherent in the tort system. Here, with expedited, possibly existential appeals pending, there is every incentive for the parties to move as quickly as possible to seek compromise." FCR Statement, ¶ 4, Dkt. 2724.

[7] With Johnson & Johnson and "New" Johnson & Johnson Consumer "providing necessary funding," "unlike many other mass-tort driven bankruptcy cases, there are substantial assets available to facilitate reasonable agreement." Statement, ¶ 4 (Dkt. 2724). A "[g]lobal resolution with a fully funded trust as the optimal result for future claimants." Statement, Conclusion.

[8] Instead of awaiting the Third Circuit's direction, the FCR busied herself analyzing the "FactsAboutTalc website" (Dkt. 3138-3, 9/26/22), researching "science regarding asbestos claims" (Dkt. 3621-3, 12/10/22), studying expert reports and testimony of Dr. Jacqueline Moline (Dkt. 3758-3, 1/10/23), and reviewing "talc studies, pathology, and epidemiology for estimation" (*Id.*, 1/21/23). All matters far outside her role and beyond her power.

[9] LTL has at least $61 billion to pay talc claims. Debtor's counsel to the Third Circuit: "$61 billion is only a floor, not a ceiling." Tr. 9/19/22, pg. 65. "[W]e believe that $61 billion, which is of course only a floor, it could go up, is enough to pay a hundred percent of all valid claims. *Id.*, pg. 79. "And under the restructuring and the funding agreement, instead, you have a very different world, one with a $61-billion plus floor. That money is guaranteed free and clear." *Id.*, pg. 85.

[10] The role of a future claimants' representative in a real bankruptcy is to ensure that enough funding is be preserved so future claimants are not disadvantaged. *See In re: Imerys Talc America, Inc.*, 38 F.4th 361, 367 (3rd Cir. 2022).

MRHFM suggested in July that *nothing* be done until the Third Circuit ruled. *See* Dkt. 2717, pg. 2. The FCR—whose constituency doesn't even exist **unless** a plan is confirmed and without an offer even on the table—proposed a different course: everyone should exert "MAXIMUM EFFORT" to settle *before* the Circuit could dismiss the case. Statement, ¶2. The FCR didn't just want to close courthouse doors on future victims. She argued against just twelve plaintiffs (those the TCC suggested) having their day in open court before they died, calling more jury trials a "distraction."[11] She lobbied instead for lots of mediating because a "[g]lobal resolution of mass torts is a time-consuming challenge." Statement, ¶ 2. True enough. The FCR has billed **$399,372.00**[12] just since July. If the FCR wishes to continue ignoring the Seventh Amendment and Due Process rights of future talc plaintiffs, she and her lawyers can do it on their own dime.

Sincerely:

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**

_____
Clayton L. Thompson, Esq.
**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
150 W. 30th Street, Suite 201
New York, NY 10001
(800) 358-5922
cthompson@mrhfmlaw.com

---

[11] "Given concerns of timing, the FCR similarly believes that there should be no further bellwether or other trials. These would be a distraction and would not advance the effort. The FCR believes that information from the trials that have occurred in the tort system to date, together with other information produced in discovery, should provide sufficient guidance to the parties to help globally resolve the case." Statement, ¶ 13.

[12] $107,255 (August, Dkt. 3033) + $77,995 (September, Dkt. 3138) + $69,255 (October, Dkt. 3313) + $62,747.50 (November, Dkt. 3481) + $39,555 (December, Dkt. 3621) + $42,564.50 (January, Dkt. 3758).