MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Clayton L. Thompson, Esq.
cthompson@mrhfmlaw.com
Suzanne M. Ratcliffe, Esq.
sratcliffe@mrhfmlaw.com
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922

*Counsel for Mesothelioma Claimant and Appellant
Katherine Tollefson and Certain Mesothelioma Claimants*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 |
| Debtor. | Honorable Michael B. Kaplan |
| | **Hearing date: April 11, 2023** |

### MRHFM'S OBJECTION TO FEBRUARY 2023 FEE APPLICATIONS
### OF FCR RANDI S. ELLIS AND HER PROFESSIONALS

Section 524(g) isn't a menu choice for billionaire tortfeasors who want to "overcome the tort system" without the "obligations of a bankruptcy filing." Central to the Two Step scam is the fiction that a single person, here, Ms. Randi Ellis, can bind thousands of people that aren't sick yet to a "compromise" when all current and future plaintiffs can be paid ***in full.*** After the Third Circuit definitively ruled in favor of all cancer victims on January 30th, Ms. Ellis apparently continued to exert MAXIMUM EFFORT—at $1,000/hour, paid by the billionaire tortfeasor—trying to limit the recovery of future cancer plaintiffs.[1]

---

[1] In LTL's Preliminary Injunction Complaint, filed yesterday in its latest pathetic "bankruptcy," the Debtor says that after the Third Circuit's ruling of January 30th, "with the assistance of the mediators and the encouragement of this Court, negotiations continued between the Debtor and J&J, and various plaintiff law firms and the Future Claimants' Representative." *See* Debtor's Verified Complaint for Declaratory and Injunctive Relief, ¶ ¶ 70-71.

Pursuant to paragraph 2(h) of the Order for Compensation Procedures, MRHFM[2] objects to all fees FCR Randi S. Ellis ($16,727.20 (Dkt. 3895)), her lawyers ($50,504.95 from Walsh Pizzi O'Reilly Falanga LLP (Dkt. 3897)), and her experts ($13,392.80 from Berkeley Research Group, LLC (Dkt. 3924)) submitted for February 2023. All these services were performed after the Third Circuit decided the case on January 30th, therefore they were not necessary, and no fees should be approved.[3]

## I. This Court Should Only Approve Fees For Necessary Services

Under 11 U.S.C. § 330(a), this Court "may award reasonable compensation for actual, necessary services…" *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 840 (3rd Cir. 1994) (emphasis). *See also* Fed. R. Bankr. P. 2017(a). "The task of reviewing fee applications falls by default onto the bankruptcy courts." *Id.*, at 843.[4] Approval of fees is "more than just a formality" and under the Code professionals are entitled to "reasonable compensation only" as awarded by this Court. *In re APW Enclosure Systems, Inc.*, 2007 WL 3112414, *2 (Bankr. D. Del. 2007).[5] "A majority of courts [ ] have held that services are compensable if at the time the services were performed a benefit to the estate was

---

[2] Maune Raichle Hartley French & Mudd, LLC.
[3] *See* Order Establishing Procedure for Interim Compensation and Reimbursement of Retained Professionals, December 9, 2021 ("Order for Compensation Procedures"), Dkt. 761.
[4] To quote from the Circuit at length: "Attorneys for the creditors may also be reluctant to oppose fee requests, whether because of perceived professional courtesy, *see In re Hamilton Hardware Co.*, 11 B.R. at 330 n. 1 (observing that continuing associations in the relatively closed Bankruptcy Bar "foster[ ] a club atmosphere which militates against effective client representation in matters relating to compensation"); fear of retaliation, *see In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 585 n. 39 (Bankr.D.Utah 1985) ("Objections to fee requests often invite retaliation...."); *ABI National Report, supra*, § 5.2, at 40; *cf. In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1255 (5th Cir.1986) (referring to "a conspiracy of silence" with regard to contesting fee applications); the expectation that the expense of challenging fee applications is not cost-justified because of a creditor's modest interest in each dollar the estate saves, *Rheam III*, 133 B.R. at 331-32; and/or the fact that, should it lose, the creditor's reward for fighting that battle may be a smaller distribution due to its indirect obligation to pay a proportionate share of the fee applicant's fees ascribable to the defense of his or her fee request, *see infra* at 847 & n. 17 (discussing split of authority regarding whether time spent pursuing fees is compensable). *See In re Ginji Corp.*, 117 B.R. 983, 989 (Bankr.D.Nev.1990)." *Id.*, at 844.
[5] "It is well established that a bankruptcy court has an independent obligation to review attorney's requests for compensation for services rendered." *In re APW Enclosure Sys., Inc.*, 2007 WL 3112414, at *2. (*citing In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 841 (3rd Cir.1994); *In re Fleming Cos.*, 304 B.R. 85, 89 (D. Del. 2003); *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 42 (Bankr.S.D.N.Y.1998); *In re Spanjer Bros., Inc.*, 203 B.R. 85, 89 (Bankr.N.D.Ill.1996)).

likely." *Id.,* at *3.[6] "An attorney should only proceed with a legal service if the potential benefit of the service, which takes into consideration the chances of success, outweighs the costs." *In re Angelika Films 57th, Inc.,* 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998), *aff'd,* 246 B.R. 176 (S.D.N.Y. 2000).

## II. All Services The FCR And Her Professionals Performed After January 30th Were Unnecessary And Their Fee Requests Should Not Be Approved

The Third Circuit knows what a 524(g) bankruptcy looks like and summarily dismissed Johnson & Johnson's fraudulent attempt at one. *In re LTL Mgmt., LLC,* 58 F.4th 738 (3rd Cir. 2023).[7] There were no ambiguities in the Circuit's opinion announced on January 30th: "[w]e thus reverse the Bankruptcy Court's order denying the motions to dismiss and remand this case with the instruction to dismiss LTL's Chapter 11 petition." *Id.,* 764.

### A. The FCR's Role Is Limited By Statute

In a real 524(g) bankruptcy, a legal representative is needed to ensure enough of the limited pot of money is preserved to equitably compensate future victims. *See* 11 U.S.C. § 524(g)(2)(B)(ii)(I-III), 524(g)(4)(B)(i-ii); *In re: Imerys Talc America, Inc.,* 38 F.4th 361, 367 (3rd Cir. 2022). Unique among the professionals in this case, the FCR doesn't represent a current party. Her constituency does not exist unless and until a plan is confirmed. Future plaintiffs have no cause of action at present (because

---

[6] Citing *In re Ames Dep't Stores, Inc.,* 76 F.3d 66, 72 (2d Cir.1996); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet),* 251 B.R. 103, 108 (B.A.P. 9th Cir.2000) (finding that a plain reading of the statute supports the objective analysis of the benefit); *Reitmeyer v. Kirkpatrick & Lockhart, LLP (In re Am. Metallurgical Prods. Co.),* 228 B.R. 146, 159 (Bankr.W.D.Pa.1998) (finding that the majority standard is the "more well-reasoned approach"). *See also Ferrara & Hantman v. Alvarez (In re Engel),* 124 F.3d 567, 575 n. 23 (3rd Cir.1997) (denying fees after finding "neither actual benefit to the estate, nor a reasonable likelihood of benefit to the estate").

[7] The group of eleven (11) Third Circuit judges weighing LTL's rehearing request included several involved in prior 524(g) bankruptcy rulings. *See In re Imerys Talc America, Inc.,* 38 F.4th 361 (3rd Cir. 2022) (Hon. Krause, Hon. Bibas); *In re W.R. Grace & Co.,* 13 F.4th 279 (3rd Cir. 2021) (Hon. Fuentes, Hon. Krause); *In re Energy Future Holdings Corp,* 949 F.3d 806 (3rd Cir. 2020) (Hon. Krause, Hon. Matey); *In re W.R. Grace & Co.,* 900 F.3d 126 (3rd Cir. 2018) (Hon. Ambro, Hon. Restrepo); *In re W.R. Grace & Co.,* 729 F.3d 311 (3rd Cir. 2013) (Hon. Jordan, Hon. Ambro); *In re Federal-Mogul Global Inc.,* 684 F.3d 355 (3rd Cir. 2012) (Hon. Jordan); *In re Global Indus. Technologies, Inc.,* 645 F.3d 201 (3rd Cir. 2011) (Hon. Jordan, Hon. Fuentes, Hon. Ambro); and *In re Combustion Engineering, Inc.,* 391 F.3d 190 (3rd Cir. 2004) (Hon. Ambro, Hon. Fuentes).

3

they aren't sick yet), so a prompt or timely resolution has no value to them. There is no reason for the FCR to move promptly if it limits or caps the recovery of future victims.

When a debtor is in financial distress and all plaintiffs cannot be paid in full, the representative is supposed to "protect" future claimants by ensuring they are paid comparably to current ones. *See In re Fed.-Mogul Glob. Inc.,* 684 F.3d 355, 365 (3d Cir. 2012). 524(g) is intended to provide *something* to future victims by reorganizing a distressed debtor with overwhelming asbestos liabilities, as opposed to liquidating the debtor under Chapter 7 and leaving future claimants with *nothing*:

> The Committee remains concerned that full consideration be accorded to the interests of future claimants, who, by definition, do not have their own voice. Nevertheless, the Committee also recognizes that the interests of future claimants are ill-served if Johns-Manville and other asbestos companies **are forced into liquidation** and lose their ability to generate stock value and profits that can be used to satisfy claims.

Bankruptcy Reform Act of 1994, H.R. REP. 103-835, pgs. 40-41 (available at 1994 WL 562232)(emphasis). That's *not* this case. Given that LTL—the pre-fraudulent transfer one, anyway—is worth over $61 billion and not distressed and that non-debtor J&J has independent liability, future plaintiffs "might prefer having recourse against solvent entities rather than being limited to proceed against" a trust. *In re Combustion Eng'g,* 391 F.3d 190, 237-38 (3rd Cir. 2004). The FCR cannot cap state law damages or bar jury trials for future plaintiffs against LTL or J&J, especially after the Third Circuit ruled in January.

Even in a legitimate bankruptcy with a limited fund and a distressed debtor, the FCR and her lawyers *don't* have power to force their value judgments on future victims. Yet, in this illegitimate one, they claim they can decide between "future litigation **or** settlement"[8] on behalf of future plaintiffs.

---

[8] *See* MRHFM Objection to Fee Applications of FCR Randi S. Ellis and Her Counsel, Dkt. 3806, and the FCR's Response ("FCR Resp."), Dkt. 3816. "[T]he FCR and its counsel […] must continue to discharge their fiduciary obligations as officers of this Court. Thus, pending further direction or Order of the Court, the FCR and Walsh, along with her experts, will continue to represent the interests of future claimants, as they, in their professional judgment deem necessary, with the goal of maximizing any recovery either by way of future litigation or settlement." FCR Resp., pg. 1.

The FCR and her counsel offer no legal support—because there *isn't* any—for their astounding presumptuousness. The FCR's job is simple and prescribed by statute: if there's a limited fund, ensure enough money is preserved to pay future claims. That's it. The FCR isn't judge, jury, legislator, or mediator of all claims for all future victims for all time.

LTL (pre-fraudulent transfer) has (or had) at least $61 billion and can (or could) "pay all current and future claims in full."[9] This means the interests of current plaintiffs and future plaintiffs are *not* adverse. There is no competition for dollars. Prior to dismissal, the FCR should have protected future plaintiffs' Constitutional rights to uncapped state law damages and full tort system recourse. Since January 30th, the FCR should have done nothing.

B.  **None Of The FCR's Or Her Professionals' Services Were Necessary**

Instead of standing down, Ms. Ellis spent February strategizing with the mediators. *See* Dkt. 3895-3, FCR entries for February 4th, 6th, 14th, 23rd, and 24th. The Third Circuit had vindicated future cancer victims' Constitutional rights and the FCR still wanted to trample on them—and bill for it. On February 27th, Ms. Ellis, her lawyers, and her experts had an "ovarian cancer estimation call." *See* Dkt. 3924-2, pg. 2. This coincided with Berkeley developing "forecasting models," analyzing "estimation methodology," and programming "parameters" for ovarian cancer claims. *Id.*, pg. 3. All done a month *after* the Third Circuit decided the "existential appeal" in the plaintiffs' favor.[10]

Ms. Ellis and her lawyers charged over $2 million in fees (Dkts. 3758 & 3760) by the end of January, but when challenged about the continuing need of their services in a prior objection (MRHFM Obj., Dkt. 3806), they chose "to avoid wasting" the Estate's "resources" by defending what

---

[9] On March 31st, the Third Circuit slightly amended its *LTL* opinion, adding a specific reference to representations made by Debtor's counsel that LTL could "pay current and future claimants in full." *See* Case No. 22-2003, Dkt. 181-3, pg. 6.
[10] FCR Statement, ¶ 4 (Dkt. 2724): "Present claimants also have ample reason to seek global resolution to avoid the delays and inconsistent results inherent in the tort system. Here, with expedited, possibly existential appeals pending, there is every incentive for the parties to move as quickly as possible to seek compromise."

5

they were doing.[11] In other words, instead of billing a few hours of time to explain why MRHFM was wrong, they billed $66,000 analyzing, forecasting, and programming, instead.

It's obvious why Johnson & Johnson wants to "cap" its liabilities for poisoning people to death;[12] why is the person allegedly responsible for *protecting* future victims helping the Company do it? Why was Ms. Ellis speaking with the mediators in February? Why was she forecasting future claims? Why was she estimating anything? *None* of this was necessary, and none of her fees should be paid.

Sincerely:
**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**

_____
Clayton L. Thompson, Esq.
**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
150 W. 30th Street, Suite 201
New York, NY 10001
(800) 358-5922
cthompson@mrhfmlaw.com

---

[11] "The FCR and Walsh disagree with the accusatory and inflammatory commentary in Maune Raichle's submission, but to avoid wasting this Court's time and resources, as well as those of the Estate, this response addresses only the limited substantive objection." FCR Resp., Fn 1.
[12] *See* email from J&J Treasurer Michelle Ryan to Michael Levesque, July 19, 2021 (Bates Nos. LTL 0030195-197).