| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b) <br><br>**OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter, Esquire (006961986)<br>99 Wood Avenue South, Suite 203<br>Iselin, New Jersey 08830<br>Telephone:    (267) 338-1370<br>Facsimile:    (267) 338-1335<br>E-mail:    pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin (*pro hac vice*)<br>Robert J. Pfister (*pro hac vice*)<br>Samuel M. Kidder (*pro hac vice*)<br>Nir Maoz (*pro hac vice*)<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, California 90067<br>Telephone    (310) 407-4000<br>Facsimile    (310) 407-9090<br>Email:    mtuchin@ktbslaw.com<br>     rpfister@ktbslaw.com<br>     skidder@ktbslaw.com<br>     nmaoz@ktbslaw.com<br><br>*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 2130589 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>**Hearing Date & Time:**<br>June 22, 2023 at 10:00 a.m. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC FOR ALLOWANCE OF <u>SUBSTANTIAL CONTRIBUTION CLAIM</u>**

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf of thousands of holders of talc personal injury claims detailed in its Rule 2019 statement [Bankr. D.I. 2391], submits this memorandum in support of its motion for allowance of a substantial contribution claim (the "Motion").

## I. PRELIMINARY STATEMENT REGARDING PROCEDURAL POSTURE

This Court's Dismissal Order dismissed the above-captioned chapter 11 case as of April 4, 2023 (the "Dismissal Date") and established certain deadlines for professionals and other parties in interest to submit requests for compensation. Paragraph 8 of the Dismissal Order provides, in pertinent part, that "[a]ny party seeking payment of a claim for substantial contribution may file and serve a motion seeking such relief ... no later than 30 days following the Dismissal Date," *i.e.*, by May 4, 2023.

The Debtor commenced a second chapter 11 case shortly after entry of the Dismissal Order. *In re LTL Mgmt. LLC*, Case No. 23-12825-MBK (Bankr. D.N.J.) ("2023 LTL"). On April 26, 2023, the Debtor filed in 2023 LTL the *Debtor's Motion for an Order Authorizing it to Satisfy its Obligations Under this Court's Dismissal Order Entered in the Debtor's Prior Chapter 11 Case* [2023 LTL D.I. 319] (the "Dismissal Obligations Motion"). The Dismissal Obligations Motion seeks entry of an order, *inter alia*, authorizing the Debtor to "satisfy all prepetition obligations ... that it is required to pay under the [Dismissal Order]." *Id.* at 1-2. The substantial contribution claim requested through this Motion is a "prepetition obligation[]" within the scope of the Dismissal Obligations Motion.

The Dismissal Obligations Motion suggests that the "parties' ability to comply with the Dismissal Order's procedures, including requesting payment of expenses from the Debtor, arguably could violate the automatic stay." *Id.* ¶ 16. The Debtor thus requested that, to the extent applicable, "the automatic stay be lifted solely for the purpose of permitting parties to comply with

2

the terms of the Dismissal Order, including … to allow the submission of requests for payment to the Debtor [and] to otherwise satisfy the Dismissal Order Obligations." *Id.* The Dismissal Obligations Motion will be heard on May 22, 2023.

Given the May 4, 2023 deadline to file this Motion, AWKO has proposed a hearing date of June 22, 2023 – one month after the May 22, 2023 hearing on the Dismissal Obligations Motion – to ensure that the Debtor will not be required to expend any resources responding to this Motion unless and until the Court grants the Dismissal Obligations Motion.

## II. BACKGROUND

On October 14, 2021 (the "Petition Date"), the Debtor filed its chapter 11 petition in the Bankruptcy Court for the Western District of North Carolina (the "North Carolina Court"). AWKO retained KTBS to serve as its bankruptcy counsel in this case, and played a vital and active role throughout the case. For purposes of this Motion, AWKO has divided its contributions into three categories, with each corresponding to a discrete phase of the case:

- Work performed during the period from the Petition Date through the transfer of venue from the North Carolina Court to this Court (the "North Carolina Phase");

- Work related to the trial in this Court on the Debtor's motion for a preliminary injunction and AWKO's and other claimants' motions to dismiss the case (the "Trial Phase"); and

- Work on the appeals of the MTD Order [Bankr. D.I. 1603] and PI Order [Adv. D.I. 187] (the "Appellate Phase").

A summary of AWKO's contribution to the case in each of these three categories follows.

### 1. The North Carolina Phase

On October 18, 2021, the Debtor filed the Motion to Enforce [Bankr. D.I. 44], which sought entry of an order, *inter alia*, halting all talc-related claims against J&J, New JJCI, or any other affiliate of the Debtor. The Debtor paired the Motion to Enforce with an *ex parte* motion seeking

3

an emergency hearing. Bankr. D.I. 45. AWKO objected to the Motion to Enforce on the ground that this bankruptcy case was filed for the improper purpose of "selectively extend[ing] the benefits of bankruptcy" to J&J and JJCI without "subject[ing] their assets and their conduct to the full scrutiny of the bankruptcy process." Bankr. D.I. 103 ¶¶ 2, 9. AWKO also argued that the Motion to Enforce was procedurally improper and could only be sought via adversary proceeding. KTBS appeared in-person at the hearing on the Motion to Enforce and argued those and other points. *See generally* 10/22/2021 Hr'g Tr. at 66:4-67:4 & 121:16-124:2 (argument by Mr. Pfister). The North Carolina Court accepted the procedural objection to the Motion to Enforce and required the Debtor to file an adversary complaint. *See id.* at 136:9-11.

On October 21, 2021, the Debtor filed its adversary complaint and PI Motion [Adv. D.I. 2], which included a request for a TRO. The North Carolina Court held a hearing on the TRO component of the PI Motion the next day. KTBS appeared and argued in opposition to the TRO. *See* 10/22/2021 Hr'g Tr. at 39:23-42:10. Although the North Carolina Court entered a TRO, it dramatically scaled back the relief requested by the Debtor, declining to enter any stay or injunction in favor of J&J or any non-Debtor party other than Old JJCI. *See* Adv. D.I. 28.

The North Carolina Court set the PI Motion for an evidentiary hearing on November 4-5, 2021. In advance of that hearing, KTBS coordinated with the Debtor and the other creditors concerning discovery, trial logistics, and the like. KTBS participated in all of the depositions in advance of the hearing, and prepared and filed a legal brief in opposition to the PI Motion. Adv. D.I. 45. Mr. Pfister of KTBS appeared and argued at the hearing on the PI Motion. *See* 11/5/2021 Hr'g Tr. at 549:17-551:10.

In addition to its work opposing the TRO and PI Motion, AWKO also contributed to the successful effort to transfer venue from the North Carolina Court to this Court. AWKO filed a

4

brief in support of venue transfer, *see* Bankr. D.I. 346, and KTBS appeared and argued at the November 10, 2021 hearing concerning venue transfer. *See* 11/10/2021 Hr'g Tr. at 55:23-58:18.

The work in the North Carolina Phase occurred before any official committee been formed. KTBS worked in close coordination with a small group of other counsel – including counsel for the Plaintiffs' Steering Committee – to ensure that all appropriate arguments and evidence were presented in a comprehensive but non-duplicative manner.

### 2. The Trial Phase

After venue was transferred, this Court held a weeklong trial on the PI Motion and the motions to dismiss filed by AWKO and others (the "MTD/PI Trial"). AWKO played an integral role in the MTD/PI Trial and pre-trial discovery. Among other things, KTBS participated in every deposition and appeared and argued at the trial – both in support of dismissal and in opposition to the PI Motion.

AWKO continued to emphasize the theme that this bankruptcy case was not filed for a proper purpose and was harmful to creditors. *See, e.g.*, 2/14/2022 Hr'g Tr. at 58:11-17 (arguing that "the debtor is trying to use a Bankruptcy Code specific mechanism, Section 524(g)[,] to pay less inside bankruptcy than it would pay outside bankruptcy" and analogizing to *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004), a case on which the Third Circuit's dismissal opinion ultimately heavily relied). AWKO further argued that the Debtor was not in sufficient financial distress to invoke the protections of the Bankruptcy Code. *See* 2/17/2022 Hr'g Tr. at 86:20-87:3 (characterizing J&J as "one of the most solvent profitable enterprises in the world for which this talc liability is a blip …. The numbers that Your Honor has heard … do not suggest any kind of enterprise threatening liability here."); *see also, e.g.*, 2/14/2022 Hr'g Tr. at 55:24-59:14; 2/17/2022 Hr'g Tr. (afternoon session) at 82:12-93:1.

5

### 3. The Appellate Phase

Working in close coordination with the TCC and other appellants, AWKO played a key role in the appeals of the MTD Order and the PI Order. AWKO filed motions in both this Court and in the Third Circuit to certify a direct appeal to the Third Circuit. *See* Bankr. D.I. 1713; Appeal No. 22-8021 [ECF No. 1] (3d Cir. April 12, 2022). AWKO and the other three appellants prevailed – over the Debtor's strenuous objection – on both direct appeal motions.

At the merits stage, KTBS carefully coordinated with other appellants' counsel to ensure that the appellate briefing was comprehensive, non-duplicative, and persuasive. A total of four opening briefs were filed. *See* Appeal No. 22-2003 [ECF Nos. 46, 53, 54] (3d Cir. June 30, 2022) & Appeal No. 22-2006 [ECF No. 70] (3d Cir. June 30, 2022). AWKO's opening appellate brief focused on two aspects of the appeal: the Debtor's ineligibility for relief under section 524(g) and lack of a proper bankruptcy purpose. *See generally* Appeal No. 22-2003 [ECF No. 55] (3d Cir. June 30, 2022). The TCC's briefing cited and adopted arguments made in AWKO's opening brief. *See* Appeal No. 22-2003 [ECF No. 132] at 22 (3d Cir. Sept. 6, 2022). AWKO's reply responded to the Debtors' answering brief, *see* Appeal No. 22-2003 [ECF No. 133] (3d Cir. Sept. 6, 2022), and following the completion of briefing KTBS worked in tandem with counsel for the TCC and other appellants on oral argument preparation.

These coordinated appellate efforts were successful. On January 30, 2023, the Third Circuit issued its opinion holding that this case was filed in bad faith and instructing this Court to dismiss the case pursuant to section 1112(b). *In re LTL Mgmt., LLC*, 58 F.4th 738, *amended and superseded*, 64 F.4th 84 (3d Cir. 2023). AWKO worked with other appellants' counsel in opposing the Debtor's requests for rehearing and for a stay of the mandate. *See* Appeal No. 22-2003 [ECF Nos. 168, 176] (3d Cir. March 6, 2023 and March 28, 2023).

### III. RELIEF REQUESTED

Pursuant to section 503(b) of the Bankruptcy Code, AWKO seeks an order directing LTL to reimburse AWKO's actual out-of-pocket expenditures (in the form of fees paid to KTBS) in the aggregate amount of $961,289 for work undertaken in this case on the ground that such work directly and significantly benefited all creditors and the Debtor's estate generally and is a substantial contribution by AWKO to this case. A category-by-category breakdown and detailed time entries are appended to the Pfister Declaration. Excluded are fees incurred on client-specific matters or other matters that AWKO determined were not relevant to its substantial contribution. A proposed form of order granting the requested relief is annexed hereto as Exhibit A.

### IV. BASIS FOR RELIEF REQUESTED[2]

**A. Applicable Standard**

Section 503(b) of the Bankruptcy Code authorizes the bankruptcy court to award compensation to creditors for their restructuring expenses incurred in making a "substantial contribution" in a chapter 11 case. Section 503(b) provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including …
>
>> (3) the actual, necessary expenses … incurred by …
>>
>>> (D) a creditor … in making a substantial contribution in a case under chapter … 11 of this title;
>>
>> (4) reasonable compensation for professional services rendered by an attorney … of an entity whose expense is allowable under subparagraph … (D) … of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this

---

[2] To the extent consistent herewith, AWKO incorporates and adopts the legal argument set forth in the *Omnibus Motion of the Substantial Contribution Claimants for Allowance of Administrative Claims [Etc.]* [Bankr. D.I. 3949-1] (the "Omnibus Motion").

7

> title, and reimbursement for actual, necessary expenses incurred by such attorney[.]

11 U.S.C. §§ 503(b)(3)(D) & (b)(4).

Section 503(b)(3)(D) recognizes the importance of and encourages individual creditor participation. *Lebron v. Mechem Fin.*, 27 F.3d 937, 944 (3d Cir. 1994) (substantial contribution awards further the "objective[] of encouraging meaningful creditor participation in the reorganization process" (citation omitted)); *In re DP Partners, Ltd. P'ship*, 106 F.3d 667, 672 (5th Cir. 1997) ("The policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process." (quoting *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986))).

To determine whether a substantial contribution has been made within the meaning of section 503(b), the Court can assess the record in light of its "experience garnered during the course of the administration of the Debtor's estate...." *In re Grasso*, 519 B.R. 137, 144 (Bankr. E.D. Pa. 2014). *See also Lebron*, 27 F.3d at 946 ("The inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform the necessary fact finding task."); *In re DeVal Corp.*, 601 B.R. 725, 727 (E.D. Pa. 2019) (refusing to disturb "fact findings based on the Bankruptcy Judge's credibility evaluations ... and first-hand supervision of the various actors' conduct in this multi-year case").

Bankruptcy courts within the Third Circuit have awarded payment, as an administrative expense, of the fees and expenses, including reasonable and necessary attorneys' fees, incurred by a creditor in making a substantial contribution to a chapter 11 case. *See, e.g., DeVal Corp.*, 601 B.R. at 738; *In re Syntax-Brillian Corp.*, 2009 WL 1606474, at *3 (Bankr. D. Del. June 5, 2009); *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 554–55 (Bankr. D. Del. 1998). Among the factors typically considered are whether the services inured to the benefit of the creditor body as a whole

and whether they were duplicative of services rendered by attorneys for a committee or for the debtor. *See, e.g., In re Worldwide Direct, Inc.*, 334 B.R. 112, 121 (Bankr. D. Del. 2005). A "substantial contribution" need not be "a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation." *In re Encapsulation Int'l, Inc.*, 1998 WL 801898, at *3 (Bankr. W.D. Tenn. Nov. 9, 1998) (citing NORTON BANKR. L. AND PRAC. 2d § 42.27 (1997)); *see also* Omnibus Motion ¶ 51 (collecting additional authorities).

"Most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement." *Lebron*, 27 F.3d at 944. *See also DP Partners*, 106 F.3d at 673 ("nothing in the Bankruptcy Code requires a self-deprecating, altruistic intent as a prerequisite to recovery of fees and expenses under section 503"); *Grasso*, 519 B.R. at 140–42 (creditors' efforts need not be "animated by purely altruistic motives").

**B.    Application of Standard**

AWKO's position throughout the case was consistent: The Debtor's bankruptcy filing was a misuse of the bankruptcy process and harmful to the Debtor's creditors. *See, e.g.*, 10/20/2021 Hr'g Tr. at 66:19-22. AWKO's counsel repeatedly advanced this theme throughout the case, including during the North Carolina Phase – when the creditor body did not have representation through an official committee[3] – and during the Trial and the Appellate Phases, in close coordination with committee counsel and counsel for other creditors. AWKO's position was ultimately vindicated by the Third Circuit's decision, and dismissal redounded to all creditors'

---

[3] The TCC was appointed on November 8, 2021, and filed its retention applications on November 12, 2021. *See* Bankr. D.I. 355 (order appointing committee), 385-387 (TCC's applications to retain counsel).

9

benefit. *Cf. Lebron*, 27 F.3d at 945 (surveying the legislative history of section 503(b) and concluding that the statute does not "require a contribution that leads to confirmation of a plan").

Coordination with other claimants' counsel in North Carolina contributed to an orderly, efficient, and successful opposition to the Debtor's initial TRO and preliminary injunction motions and the transfer of venue from the North Carolina Court to this Court – notwithstanding the absence of an official committee. Similar coordination and complementary work in the Third Circuit allowed the creditor body as a whole to present comprehensive, non-duplicative, and ultimately persuasive arguments to the Third Circuit. Ultimately the creditor bodied benefited from four appellants' briefs (only one of which was filed by the TCC) and from the advocacy of two separate appellate advocates (only one of which was retained by the TCC).

AWKO's contribution was not duplicative of the work of any committee. In the North Carolina Phase, there was no committee, yet creditors were able to present a unified opposition to the Debtor's request for injunctive relief, with each counsel making its own, unique contribution. In the Trial Phase, AWKO coordinated with and assisted the TCC to ensure a comprehensive but non-duplicative presentation of the arguments and evidence. And at the Appellate Phase, the four appellants divided the issues and coordinated their efforts to minimize duplication, provide robust and independent analysis, and ultimately frame and present the issues in a way that the Third Circuit found persuasive.

The formation of an official committee does not preclude or diminish the value of participation by individual creditors, as AWKO's experience in the *Imerys*[4] case illustrates. The proposed plan in *Imerys* classified all ovarian cancer and mesothelioma claims together, yet

---

[4] *In re Imerys Talc Am., Inc., et al.*, Case No. 19-10289 (LSS) (Bankr. D. Del.). For the avoidance of doubt, AWKO has not filed a substantial contribution claim in the *Imerys* case and this Motion does not seek any compensation for AWKO's contribution to that case.

10

contemplated a "40-40-20" split of trust assets that allocated a disproportionate share of trust assets to mesothelioma claimants. *See generally Disclosure Statement for Ninth Amended Joint Plan [etc.]*, Imerys D.I. 2866 at 174 (describing the "40-40-20" split and objections thereto). Notwithstanding the preferential treatment to a relatively small number of mesothelioma claimants under the plan, the official tort claimants' committee in *Imerys* backed the plan. AWKO played an active role in discovery and contested matters related to the plan solicitation process, including successfully opposing a law firm's motion to change over 15,000 rejecting votes to accepting votes. *See* Pfister Decl. ¶ 3. This resulted in the failure of the *Imerys* plan. *In re Imerys Talc Am., Inc.*, 2021 Bankr. LEXIS 2852 (Bankr. D. Del. Oct. 13, 2021). The *Imerys* case teaches that the active participation of creditors can generate a substantial benefit for the estate and the creditor body even when an official committee has been appointed.

The fees that are the subject of this Motion are solely for services that benefited creditors generally. Fees in respect of AWKO-specific matters in this case (*e.g.*, preparation of its Rule 2019 statement, communications with the U.S. Trustee regarding a potential role on the creditors' committee, and the like) have been excluded from the amounts for which reimbursement is requested.

## V. CONCLUSION

For all the reasons set forth herein, AWKO respectfully requests that the Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit A, directing LTL to reimburse AWKO's actual out-of-pocket expenditures for work undertaken in this case on the ground that such work directly and significantly benefited all creditors and the Debtor's estate generally and is a substantial contribution by AWKO to this case.

DATED: May 4, 2023

Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
--------
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:       pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:        mtuchin@ktbslaw.com
              rpfister@ktbslaw.com
              skidder@ktbslaw.com
              nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*