**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.:  21-30589 (MBK) |
| Debtor. | Judge:  Michael B. Kaplan |
| | **Hearing Date and Time:** August 2, 2023 at 10:00 a.m. |

## DEBTOR'S OMNIBUS OBJECTION TO MOTIONS FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIMS

LTL Management LLC, the debtor in the above-captioned case (the "Debtor"),

files this omnibus objection to (a) the *Omnibus Motion of the Substantial Contribution Claimants*

*for Allowance of Administrative Claims for Reimbursement of Expenses Incurred for the Period*

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

*From October 14, 2021 Through November 12, 2021 (Prior to the Official Committee of Talc*

*Claimants' Retention of Counsel) That Provided a Substantial Contribution in the Debtor's Case*

[Dkt. 3949] (the "<u>Omnibus Motion</u>") filed by certain claimants seeking substantial contribution

claims (collectively, the "<u>Substantial Contribution Claimants</u>")[2] and (b) the *Motion of Aylstock,*

*Witkin, Kreis & Overholtz, PLLC for Allowance of Substantial Contribution Claim* [Dkt. 3951]

(the "<u>AWKO Motion</u>" and, together with the Omnibus Motion, the "<u>Motions</u>")[3] filed by

Aylstock, Witkin, Kreis & Overholtz, PLLC ("<u>AWKO</u>" and, together with the Substantial

Contribution Claimants, the "<u>Movants</u>").  In support of this omnibus objection, the Debtor

respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

Movants seek the unprecedented grant of substantial contribution claims not for

progressing the above-captioned chapter 11 case (the "<u>2021 Chapter 11 Case</u>"), but for opposing

a preliminary injunction request, supporting transfer of the 2021 Chapter 11 Case and

purportedly furthering dismissal of the case.  These services resulted in no discernable benefit to

the Debtor's estate and were, at best, performed for the benefit of Movants' individual claimants

and, at worst, for the benefit of counsel motivated to return to the tort system to seek blockbuster

judgments (despite the significant risk to claimants of no recovery), protect their business models

and, in certain cases, preserve their entitlement to common benefit funds.

---

[2]     The Substantial Contribution Claimants consist of the following law firms representing the MDL Plaintiffs
Steering Committee (the "<u>PSC</u>")—Otterbourg, P.C. ("<u>Otterbourg</u>"), Cole Hayes, Esq. ("<u>Cole Hayes</u>"),
Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, Mougey, P.A. ("<u>Levin</u>") and Burns
Charest, LLP ("<u>Burns Charest</u>"); Waldrep Wall Babcock & Bailey PLLC ("<u>Waldrep</u>") as counsel for an
unofficial committee of mesothelioma claimants (the "<u>Meso Committee</u>"); and Levy Konigsberg, LLP
("<u>Levy Konigsberg</u>") and Massey & Gail LLP ("<u>Massey & Gail</u>") on behalf of certain mesothelioma
plaintiffs.

[3]     Capitalized terms used herein but not otherwise defined have the meaning given to them in the Motions, as
appropriate.

-2-

With the exception of the transfer of the 2021 Chapter 11 Case (which was an issue raised by the NC Bankruptcy Court—not Movants—and initially briefed by the Bankruptcy Administrator),[4] each of the issues Movants purport to have pursued for the benefit of the estate were ultimately litigated to their completion, at great cost to the estate, by the myriad of counsel representing two official talc committees[5]—which included Movants Otterbourg, Waldrep and Massey & Gail.  In point of fact, the Debtor expended $22,107,768.16 for services provided by twelve professional firms to the committees in litigation of the preliminary injunction and dismissal issues from November 2021 through January 31, 2022 alone.[6]  And, in any event, both Movants' and the official committees' efforts in connection with the preliminary injunction ultimately were unsuccessful.

In addition, it was clear at a very early stage that relief would not be entered on a prejudicial or permanent basis prior to the appointment of an official committee and that committee's retention of counsel (as is common in chapter 11 cases, both mass tort and otherwise).  And, as it turned out, following the transfer of the case to this Court, the limited relief granted by the NC Bankruptcy Court, including a temporary and limited preliminary

---

[4]    The transfer of the 2021 Chapter 11 Case was first raised by the United States Bankruptcy Court for the Western District of North Carolina (the "NC Bankruptcy Court") in a detailed order requiring the Debtor to show cause and was extensively briefed in a motion filed by the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator")—the equivalent of the United States Trustee in that district.  Only later did Movants submit briefing in support of the Bankruptcy Administrator's position.

[5]    On December 23, 2021, the United States Trustee for the District of New Jersey (the "UST") filed a notice [Dkt. 965] (the "Amended Notice") that purported to form two new committees.  On January 26, 2022, the Court entered an order [Dkt. 1273] striking the Amended Notice and reinstating the Official Committee of Talc Claimants (the "TCC"), as formed by order of the NC Bankruptcy Court, as of March 9, 2022.  Subsequently, the Court authorized the continuance of the two committees until April 12, 2022.  The Court denied a request to further continue the existence of two committees [Dkt. 1923] and, as a result, the TCC was reinstated on April 12, 2022.

[6]    Notably, Arnold & Itkin LLP ("Arnold & Itkin") appeared through counsel and raised many of the issues and concerns raised by Movants both in North Carolina and before this Court, but that counsel is not asserting a substantial contribution claim.

-3-

injunction, was almost without exception[7] renegotiated or relitigated before this Court.  Thus,

there simply was no need for numerous law firms to generate over $2.8 million in legal expenses

to pursue duplicative (and in many cases baseless) arguments, purportedly on behalf of talc

claimants at large.  In particular, there was no need for the wasteful and extraordinarily

burdensome emergency discovery conducted by Movants in connection with the preliminary

injunction before the NC Bankruptcy Court.  Substantial discovery (again, at great cost to the

estate) was undertaken in connection with the official talc committees' oppositions to the

Debtor's request for a preliminary injunction.  The estate should not be forced to bear the cost of

certain law firms' determinations to pursue a scorched earth litigation strategy—particularly

when it already has compensated counsel to the talc committees for doing so.

Finally, AWKO's substantial contribution claim for services performed in

connection with the motions to dismiss the 2021 Chapter 11 Case and the Third Circuit appeals

following the formation of the official talc committees should not be allowed for the same

reasons and for the additional reason that the services merely duplicated work already being

performed by the ten law firms retained by the official talc committees charged with representing

talc claimants as a whole.

Substantial contribution claims are extraordinary, rarely granted and are meant to

compensate a creditor for non-duplicative services that directly and materially **contribute** to the

reorganization—they are not a blank check for counsel to pursue their clients' (or worse, their

own) goals at the estate's expense.  Authorizing the substantial contribution requests here would

set a dangerous precedent that could be utilized by nearly any law firm participating in a

---

[7]      The orders authorizing the Debtor to employ a claims and noticing agent, to establish certain notice
procedures for talc claimants and to establish a case management order remained as entered by the
NC Bankruptcy Court [Dkts. 320, 321, 322].

NAI-1537540909

chapter 11 case both before and after the formation of an official committee to recoup costs

incurred in performing excessive and duplicative work without any of the safeguards applicable

to retained professionals.  The Motions should be denied.

## RELEVANT BACKGROUND

### *Initial Filings, the Adversary Proceeding and Transfer of the 2021 Chapter 11 Case*

1.       The Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code

on October 14, 2021 (the "Petition Date") in the NC Bankruptcy Court.

2.       On the Petition Date, the Debtor also filed various applications and motions

seeking traditional, first day relief.  These included an application for the appointment of a

claims and noticing agent [Dkt. 6], a motion to authorize certain noticing procedures for talc

claimants [Dkt. 7], a motion to establish a case management order [Dkt. 10] and a motion for an

order authorizing the Debtor's continued use of its bank account [Dkt. 11] (collectively,

the "First Day Motions").[8]  In accordance with the *Rules of Practice and Procedure of the

United States Bankruptcy Court for the Western District of North Carolina*, the proposed orders

for each of these filings included a provision that "[a]ny party shall be entitled to request that the

Court reconsider entry of this Order by filing a motion for reconsideration within 14 days of

service of this Order."  See Dkt. 6, Proposed Order ¶ 18; Dkt. 7, Proposed Order ¶ 9; Dkt. 10,

Proposed Order ¶ 7; Dkt. 11, Proposed Order ¶ 12.

3.       On October 18, 2021, the Debtor also filed an emergency motion to enforce the

automatic stay against talc claimants who sought to pursue claims against the Debtor and its

non-debtor affiliates [Dkt. 44] (the "Emergency Motion").  The motion sought interim relief,

---

[8]       The Debtor also filed a motion to establish a qualified settlement fund [Dkt. 8], a related motion to seal
[Dkt. 9] and a motion to establish procedures for the retention and compensation of ordinary course
professionals [Dkt. 12], which motions were not scheduled to be heard at the initial hearing in the 2021
Chapter 11 Case (the "First Day Hearing").

with a final hearing to be scheduled by the NC Bankruptcy Court at a later date.  See Dkt. 44,

Proposed Interim Order ¶ 4.

4.        Notwithstanding the reconsideration language or the interim relief requested in

the First Day Motions and the Emergency Motion, in advance of the First Day Hearing, certain

of the Movants determined to contest the First Day Motions and the Emergency Motion and now

seek substantial contribution claims for those misplaced efforts.[9]

5.        On October 20, 2021, the NC Bankruptcy Court held the First Day Hearing.  The

Movants appeared at the First Day Hearing and presented arguments in line with their filed

objections.[10]  At the hearing, the NC Bankruptcy Court granted the First Day Motions and

acknowledged that it was typical in North Carolina bankruptcy courts for the orders to be entered

with a reservation of rights for the tort claimants committee and the future claimants'

representative to challenge the orders following their respective appointments.  See, e.g.,

Oct. 20, 2021 Hr'g Tr. 73:19-74:9.  As a result, and contrary to the Substantial Contribution

Claimants' suggestions, there was no need to preserve "the rights of all Talc Creditors until the

TCC was in place to do so."  Omnibus Mot. ¶ 92.  The NC Bankruptcy Court declined to grant

---

[9]        Waldrep, on behalf of Maune Raichle Hartley French & Mudd, LLC ("MRHFM"), filed objections to
certain of the First Day Motions and the Emergency Motion [Dkts. 51, 53], Otterbourg and Cole Hayes, as
counsel to the PSC, filed a limited omnibus objection to the First Day Motions [Dkt. 67] and a motion to
strike the Emergency Motion [Dkt. 76] and AWKO filed a preliminary response to the Emergency Motion
[Dkt. 103].  While Waldrep initially appeared in the 2021 Chapter 11 Case on behalf of MRHFM, its
representation appears to have evolved during the case to include representation of the Meso Committee.
However, Waldrep appears to request compensation for its services both to MRHFM and to the Meso
Committee.  See Omnibus Mot. ¶¶ 80-82 (requesting compensation for appearances and objections filed on
behalf of MRHFM).

[10]        In total, seventeen firms representing talc claimants or their counsel entered an appearance at the First Day
Hearing:  Weitz & Luxenberg P.C., Cole Hayes, Otterbourg, Ashcraft & Gerel, LLP, Beasley Allen Law
Firm, Essex Richards, P.A., Kazan, McClain, Satterley & Greenwood PLC, Waldrep, Levy Konigsberg,
Offit Kurman, KTBS Law LLP, Robinson Calcagnie, Inc., Moon Wright & Houston PLLC, Pachulski
Stang Ziehl & Jones, Michael Miller, Esq., JD Thompson Law and Lite DePalma Greenberg & Afanador.
See Oct. 20, 2021 Hr'g Tr. 2-6.  Most of these firms presented statements, arguments or made oral
objections at the First Day Hearing; only four firms assert substantial contribution claims.

the Emergency Motion and directed that the Debtor instead commence an adversary proceeding

to obtain a temporary restraining order and preliminary injunction.  See Oct. 20, 2021 Hr'g Tr.

137:12-18.  The NC Bankruptcy Court also sua sponte asked "the parties to address the question

of venue and change of venue."  See Oct. 20, 2021 Hr'g Tr. 216:14-218:12.[11]

6.      In accordance with the Court's direction, the next day, on October 21, 2021, the

Debtor commenced an adversary proceeding [Adv. Pro. No. 21-3032] (the "PI Adversary

Proceeding") and filed a motion seeking to stay or preliminarily enjoin, as applicable, the

prosecution of certain actions against non-debtor parties [Adv. Dkt. 2] (the "2021 PI Motion").

The 2021 PI Motion also sought a temporary restraining order pending a final hearing on the

motion.  Counsel to the PSC[12] [Adv. Dkt. 49], AWKO [Adv. Dkt. 45], counsel to certain

mesothelioma claimants[13] [Adv. Dkt. 44] and certain other claimant law firms[14] [Adv. Dkts. 50,

52] filed objections to the 2021 PI Motion.  Counsel to the PSC, AWKO and counsel to certain

mesothelioma claimants are now Substantial Contribution Claimants.

7.      On October 22, 2021, the NC Bankruptcy Court held a hearing on the Debtor's

request for a temporary restraining order.  On October 26, 2021, the court entered an order [Adv.

Dkt. 28] entering a temporary restraining order, but in a more limited form than requested by the

Debtor.  Following the hearing, Waldrep, as counsel to MRHFM, and Otterbourg and Cole

Hayes, as counsel to the PSC, determined to engage in extensive emergency discovery in

advance of the hearing set to consider the preliminary injunction request, and in approximately

---

[11]    The NC Bankruptcy Court entered a corresponding order to show cause as to why venue should not be
transferred on October 26, 2021 [Dkt. 208] (the "Show Cause Order").

[12]    Otterbourg and Cole Hayes filed the objection as counsel to the PSC.

[13]    Waldrep and Massey & Gail filed the objection on behalf of the following law firms:  MRHFM, Levy
Konigsberg, Kazan, McLain, Satterley & Greenwood PLC and Weitz & Luxenberg P.C.

[14]    OnderLaw, LLC and The Barnes Law Group.

10 days took, among other things, the depositions of Adam Lisman, John Kim and the Debtor's

talc expert, Dr. Charles Mullin, and issued, collectively, 19 interrogatories and 35 document

requests.[15]

8.      On October 25, 2021, in the midst of discovery with respect to the preliminary

injunction request (driven by certain of the Substantial Contribution Claimants) the Bankruptcy

Administrator moved to transfer the case from the NC Bankruptcy Court to the Bankruptcy

Court for the District of New Jersey [Dkt. 205].  Several days after, on October 29, 2021,

Movants Otterbourg and Cole Hayes, as counsel to the PSC, also moved to transfer venue

[Dkt. 235].  On November 5, 2021, Movants Waldrep and Massey & Gail, as counsel to the

Meso Committee [Dkt. 347] and Movant AWKO [Dkt. 346] followed with their own filings

seeking to transfer venue (each a "Transfer Motion" and, collectively, the "Transfer Motions").

9.      On November 4 and 5, 2021, the NC Bankruptcy Court conducted a hearing on

the 2021 PI Motion.

10.      On November 8, 2021, the NC Bankruptcy Court entered the order appointing the

TCC as requested by the Bankruptcy Administrator [Dkt. 355].[16]  AWKO approached the

Bankruptcy Administrator regarding the appointment of one of its ovarian cancer claimants to

serve as a member of the official committee.  See Dkt. 2029, 3 ("AWKO did put forward the

---

[15]    The Omnibus Motion asserts that Levin and Burns Charest were involved in conferring with tort-claimant
leadership and in specific depositions conducted during this period.  However, Levin and Burns Charest did
not appear on any of the briefing filed before the NC Bankruptcy Court or on the discovery served on the
Debtor.

[16]    The TCC was comprised of claimants represented by Ashcraft & Gerel, LLP, Beasley Allen Law Firm,
Fears Nachawati Law Firm, Karst von Oiste LLP, Kazan, McClain, Satterley & Greenwood PLC, Levin,
Levy Konigsberg, OnderLaw, LLC, Robinson Calcagnie, Inc., Weitz & Luxenberg, P.C., as well as Blue
Cross Blue Shield of Massachusetts.  Levy Konigsberg and Levin are two of the Substantial Contribution
Claimants who seeks a substantial contribution claim for work done in the 2021 Chapter 11 Case prior to
the formation of the TCC.  Notably, other firms representing claimants on the TCC are either part of the
PSC or the Meso Committee, but are not the Movants seeking substantial contribution claims.

names of several ovarian cancer claimants, first to the Bankruptcy Administrator in North

Carolina and then to the UST").  None of its claimants ultimately was appointed.

11.     On November 10, 2021, the NC Bankruptcy Court entered an agreed order

extending the time for the TCC to seek reconsideration of the entry of certain orders [Dkt. 369],

including with respect to the First Day Motions.

12.     On November 10, 2021, the NC Bankruptcy Court preliminarily granted the

2021 PI Motion for a period of 60 days [Adv. Dkt. 102] and transferred the case from the

NC Bankruptcy Court this Court [Dkt. 416].

### *Reconstitution of the TCC Following Transfer to this Court*

13.     On November 16, 2021, the 2021 Chapter 11 Case was transferred to the District

of New Jersey, which referred the case to this Court.

14.     On December 23, 2021, the UST entered the Amended Notice, appointing two

separate official committees of talc claimants—the Official Committee of Talc Claimants I

("TCC I")[17] and the Official Committee of Talc Claimants II ("TCC II").[18]

15.     On January 26, 2022, the Court entered an order [Dkt. 1273] striking the

Amended Notice, disbanding the separate committees on March 9, 2022 (subject to further Court

order) and ordering the reinstatement of the TCC as appointed by the NC Bankruptcy Court.

Subsequently, on March 30, 2022, the Court temporarily stayed its prior order and authorized the

---

[17]     TCC I was composed of claimants on the original TCC—Blue Cross Blue Shield of Massachusetts and
ovarian cancer claimants represented by Fears Nachawati Law Firm, OnderLaw, LLC, Robinson
Calcagnie, Inc., Levin, Beasley Allen Law Firm and Ashcraft & Gerel, LLP—and ovarian cancer claimants
represented by Golomb Spirt Grunfeld and Motley Rice, LLC.  See Dkt. 965-1.

[18]     TCC II was composed of mesothelioma claimants on the original TCC—Weitz & Luxenberg, P.C., Levy
Konigsberg, Kazan, McClain, Satterley & Greenwood PLC and Karst von Oiste LLP—and mesothelioma
claimants represented by Dean Omar Branham Shirley, LLP, Cooney & Conway and MRHFM.  See
Dkt. 965-2.

NAI-1537540909

continuance of TCC I and TCC II until April 12, 2022.  The original TCC was reinstated on

April 12, 2022 [Dkt. 1923].

16.    AWKO again sought a position for one of its claimants on the official committee,

proposing three potential ovarian cancer claimants for the Court's consideration as members of

the TCC in the event the Court were inclined to modify the TCC.  See Dkt. 2029, 9.  The Court

denied AWKO's request, along with similar requests made by counsel to other claimants seeking

a position on the TCC [Dkt. 2243].

17.    In the 2021 Chapter 11 Case, the TCC retained the following professionals to

represent it:  Anderson Kill P.C. [Dkt. 2365]; Bailey & Glasser LLP [Dkt. 502]; Brown Rudnick

LLP [Dkt. 501]; FTI Consulting, Inc. [Dkt. 954]; Genova Burns LLC [Dkt. 422]; Houlihan

Lokey Capital, Inc. [Dkt. 953]; Massey & Gail [Dkt. 504]; Miller Thomson LLP [Dkt. 829];

MoloLamken LLP [Dkt. 2394]; The Brattle Group, Inc. [Dkt. 1289]; Monzack Mersky and

Browder, P.A. [Dkt. 869]; Otterbourg [Dkt. 503]; and Parkins Lee & Rubio LLP [Dkt. 505].[19]

***Motions to Dismiss the 2021 Chapter 11 Case and Other Proceedings Before This Court***

18.    After the transfer to this Court, the TCC, as appointed in North Carolina, moved

to withdraw the reference of the PI Adversary Proceeding [Adv. Dkt. 110], objected to the 2021

PI Motion [Adv. Dkt. 142] and moved to dismiss the 2021 Chapter 11 Case as a bad faith filing

[Dkt. 632].  AWKO similarly moved to dismiss the 2021 Chapter 11 Case, joined in the motions

filed by other claimants [Dkt. 1003], and objected to the 2021 PI Motion [Adv. Dkt. 143].

19.    In support of its motion to dismiss and in opposition to the 2021 PI Motion, the

TCC sought extensive discovery, which requests were joined by the other claimant

---

[19]    During the time that TCC I and TCC II were in place, the following additional firms were retained and
compensated by the estate:  Cooley LLP [Dkt. 1080], Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
[Dkt. 1079] and Waldrep [Dkt. 1091].  Following the reversion of the two committees to the original TCC,
solely the firms in paragraph 17 represented the TCC.

NAI-1537540909

representatives.  This discovery included depositions of 17 individuals (and two Rule 30(b)(6)

depositions) and included depositions of Adam Lisman, John Kim and Dr. Mullin, all of whom

were previously deposed in North Carolina.

20.     On February 14 through 18, 2022, this Court held a week-long hearing on the

dismissal motions and the 2021 PI Motion.  TCC I, TCC II and AWKO all appeared and argued

for dismissal of the 2021 Chapter 11 Case and in opposition to the Debtor's request for a

preliminary injunction.

21.     On February 25, 2022, the Court entered its opinions denying the motion to

dismiss [Dkt. 1572] and granting the 2021 PI Motion [Adv. Dkt. 184].[20]  An appeal followed,

with the TCC and AWKO submitting briefing to the United States Court of Appeals for the

Third Circuit and the TCC participating in oral argument in September 2022.  On

January 30, 2023, a panel of the Third Circuit issued an opinion dismissing the 2021 Chapter 11

Case.  See In re LTL Mgmt. LLC, 64 F.4th 84 (3d Cir. 2023).

22.     This Court subsequently entered an order dismissing the 2021 Chapter 11 Case on

April 4, 2023 [Dkt. 3938] (the "Dismissal Order").

23.     Pursuant to the terms of the Dismissal Order, which permitted the filing but did

not decide the merits of any motion seeking substantial contribution, the Substantial Contribution

Claimants and AWKO filed the Motions.

24.     The Omnibus Motion seeks reimbursement of counsels' fees and expenses from

October 14, 2021 through November 12, 2021, before the TCC's retention of counsel.  The

AWKO Motion seeks reimbursement for counsel fees for services provided throughout the 2021

Chapter 11 Case.

---

[20]     Subsequently, the Court entered orders in accordance with its opinions [Dkt. 1603; Adv. Dkt. 187].

NAI-1537540909

**OBJECTION**

I.    **Movants Have Failed to Demonstrate a Direct Material Benefit to the Debtor's Estate Warranting Allowance of Substantial Contribution Claims.**

25.    Section 503(b)(3)(D) of the Bankruptcy Code provides for the allowance of an administrative expense for the actual, necessary expenses incurred by "a creditor . . . or a committee representing creditors . . . other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). Relatedly, section 503(b)(4) provides in relevant part:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b)(4).

26.    Courts rarely grant requests for payment of compensation and expenses as a substantial contribution.[21] Instead, a creditor's attorney generally must "look to its own client for payment." In re Consol. Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986). Indeed, courts have held that "[a]dministrative expense compensation based on a substantial benefit to a bankruptcy estate must be strictly limited to extraordinary creditor actions that led directly to tangible benefits to the creditors, the debtor, or the estate." In re Summit Metals, Inc., 379 B.R. 40, 67 (Bankr. D. Del. 2007) (quoting Psychiatric Hosps. of Hernando Cty. Inc., 228 B.R. 764, 767 (Bankr. M.D. Fla. 1998)); see also In re KiOR, Inc., 567 B.R. 451, 459 (D. Del. 2017) ("[W]hile the phrase 'substantial contribution' does not lend itself to a set of exacting criteria, 'a

---

[21]    Because of the limited circumstances under which courts grant substantial contribution claims, a creditor's attorney "must show by a preponderance of the evidence that he 'made a substantial contribution to the [debtor's] estate'" to be so entitled. Katchen v. Neumann, 2021 WL 1625100, at *4 (D.N.J. Apr. 27, 2021).

well-developed body of case law teaches that the sort of contribution that reaches the substantial

threshold is exceedingly narrow' and fees should only be granted in 'rare and extraordinary

circumstances.'") (quoting In re RS Legacy Corp., 2016 WL 1084400 at *4 (Bankr. D. Del.

Mar. 17, 2016)); In re Am. Plumbing & Mech., Inc., 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005)

("[A]bsent some spectacular result, such as dramatically improving treatment of all creditors,

expected and routine activities do not constitute substantial contribution.").

     27.    In addition, the Third Circuit and courts within the Third Circuit have rejected an

overly flexible approach to substantial contribution requests.  See Lebron v. Mechem Fin. Inc.,

27 F.3d 937, 943 (3d Cir. 1994); KiOR, 567 B.R. at 459; RS Legacy Corp., 2016 WL 1084400 at

*4; In re Geriatrics Nursing Home, Inc., 195 B.R. 34, 39 (Bankr. D.N.J. 1996).  Rather, the Third

Circuit has held that "[t]he services engaged [in] by creditors, creditor committees and other

parties interested in a reorganization are presumed to be incurred for the benefit of the engaging

party and are reimbursable if, but only if, the services 'directly and **materially contributed' to**

**the reorganization.**"  Lebron, 27 F.3d at 943 (emphasis added).  As a result, the Third Circuit

has found:

> that the benefit received by the estate **must be more than
> an incidental one** arising from activities the applicant has
> pursued in protecting his or her own interests.  Creditors are
> **presumed to be acting in their own interests** until they
> satisfy the court that their efforts have transcended
> self-protection.

Id. at 944 (emphasis added).[22]

     28.    In line with the Third Circuit's guidance, courts within the Third Circuit have held

that:

---

[22]    See also In re Encapsulation Int'l Inc., 1998 WL 801898, at *3 (Bankr. W.D. Tenn. 1998) (commenting
upon the Third Circuit standard and noting that it "distinguish[es] between direct and indirect benefits and
inquir[ies] into the applicant's motivation for rendering services:  Any indirect benefits resulting from the

> extensive and **active participation alone does not qualify** . . . services that are **duplicative of other estate professionals are insufficient** . . . **activities that primarily further the movant's self-interest do not suffice** . . . and **expected or routine activities in a chapter 11 case**—such as encouraging negotiation among parties, commenting and participating in successful plan negotiations, and reviewing documents – **generally do not constitute a substantial contribution**. A substantial contribution is one that confers a benefit to the entire estate and fosters the reorganization process.

RS Legacy, 2016 WL 1084400 at *4 (denying substantial contribution claim and finding that creditor's efforts were "predominantly aimed at furthering its own position") (internal citations omitted) (emphasis added).[23]

29.     The Debtor is not aware of (nor do Movants cite) any case where successfully advocating to dismiss a bankruptcy case constituted a substantial contribution. Instead, consistent with the standard set forth in the above cases, courts have concluded that substantial contributions "foster and enhance—rather than retard and interrupt—the progress of reorganization." In re Granite Partners, L.P., 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) (citing In re Best Prods. Co., 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994)). This cannot be accomplished where a case is dismissed and creditors receive no recovery through the bankruptcy case. The Substantial Contribution Claimants rely on In re Team Systems Int'l LLC, see Omnibus Mot. ¶ 51, but the court in that case merely stated that the judgment creditors' work in establishing

---

applicant's work which either advanced his own interests or arose out of his motivation to benefit himself were not substantial contributions."); In re DP Partners Ltd., 106 F.3d 667, 672 (5th Cir. 1997) (noting that "decisions from other circuits appear to distinguish between creditors' actions that 'incidentally' benefit the estate and creditors' actions that directly and demonstrably benefit the estate" and that those cases "examine a creditor's motivation in expending the time and fees at issue").

[23]     See also In re Bayou Grp., LLC, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010) ("A direct benefit also cannot be established merely by the movant's extensive participation in the case or be based on services that duplicated those of professionals already compensated by the estate, such as counsel for the debtor or an official committee."); Geriatrics Nursing Home, 195 B.R. at 39 ("[W]here creditor self-interest appears to dominate a creditor's actions[,] courts have not allowed substantial contribution claims.").

NAI-1537540909

cause for dismissal **might** have been a substantial contribution. 640 B.R. 296, 302 (Bankr. D.

Del. 2022). And, it does not appear that the judgment creditors in that case asserted a substantial

contribution claim after conversion of the case. See In re Team Sys. Int'l LLC, No. 22-10066

(CTG) (Bankr. D. Del.). Finally, that case involved egregious misconduct of the debtor,

including the potential fabrication of documents during the course of discovery in litigation

leading up to the bankruptcy case and during the bankruptcy case. Team Sys., 640 B.R. at 301,

306-08.[24]

30. The Substantial Contribution Claimants also rely on In re Williams for the

proposition that substantial contribution does not necessarily mean that a creditor's efforts must

lead to a confirmed plan. See Omnibus Mot. ¶ 51. But the Substantial Contribution Claimants

disregard that their efforts to obtain transfer of this case were duplicative of the NC Bankruptcy

Court's Show Cause Order and the Bankruptcy Administrator's Transfer Motion and, as a result,

cannot serve as the basis for a substantial contribution claim. See 49 F. App'x 845, 850 (10th

Cir. Oct. 30, 2002).

31. Movants' other cases, cited for the proposition that critical services provided as an

unofficial committee or on behalf of all creditors and absent an expectation of reimbursement

justify allowance of a substantial contribution claim, actually support denial of the Motions. See

---

[24]     The bankruptcy court found that, after considering the evidence and arguments, there was enough to raise a
question of the debtor's good faith and to justify conversion of the case. Id. at 301-02. The bankruptcy
court highlighted the following issues as influencing its decision: "(1) the district court in Florida had
expressed serious concerns that documents [the debtor] had produced in that case had been fabricated;
(2) evidence unearthed, for the first time, in discovery in this bankruptcy case suggest[ed] the debtor
engaged in other misconduct in the Florida litigation; (3) evidence produced in this bankruptcy case
show[ed] that after the Florida litigation was filed, the debtor's principals moved substantial value from the
debtor to themselves; (4) the debtor engaged in litigation conduct during this bankruptcy case that, at the
very least, raise[d] very serious concerns; and (5) the evidence provided in this case indicate[d] that both
the receivables that [the debtor] [said were] due for past government contracting work and the prospects for
future government contracting work [were] somewhere between speculative and highly dubious." Id. at
301.

NAI-1537540909

Omnibus Mot. ¶¶ 48-49, 53; AWKO Mot., 8.  For example, in In re Serv. Merchandise Co., Inc.,

an out-of-circuit case, the court granted a substantial contribution request, notwithstanding the

movant's self-interest, after finding that there was an "air of cooperation" by the parties and

commenting that "the administrative costs saved by the synergy of the parties [was] significant.

**Hotly litigated issues and scorched earth policies would have generated even larger**

**professional fees and expenses**."  See 256 B.R. 738, 743 (Bankr. M.D. Tenn. 1999) (emphasis

added).  Movants' purported substantial contribution here resulted in precisely the opposite

result.

32.     And, in In re DeVal Corp., the court awarded a substantial contribution claim to a

creditor after finding the creditor's actions were not duplicative and resulted in the acceleration

of a sale process before the estate was administratively insolvent, thus preserving value for the

unsecured creditors.  592 B.R. 587, 599-601 (Bankr. E.D. Penn. 2018).  Again, the opposite of

the services for which Movants' seek substantial contribution compensation.  Finally, in Bayou

Group, a case which involved a Ponzi scheme debtor, the court was tasked with determining

whether a substantial contribution request by an unofficial committee, which request included

work by the committee not only at the outset of the case but prior to the filing of the case, was

proper.  431 B.R. at 553.  In granting the substantial contribution claim, the court highlighted

several factors that supported the request, including that the unofficial committee "worked with

an eye to the prompt commencement of an organized chapter 11 case" and "specifically

contemplated and prepared for the members of the Committee being appointed."  Id. at 562.

Rather than attempting to defeat the filing of the bankruptcy case, the creditors in Bayou Group

worked towards a successful restructuring, even prior to the filing.

33.    The Third Circuit has made clear that substantial contribution is an extraordinary

measure to be granted only in rare circumstances.  Hallmarks of appropriate substantial

contribution efforts, as demonstrated by Movants' own cases, include those actions which

enhance efficiency, add to the prompt administration and resolution of a case and help preserve

value for creditors and the estate.  Duplicative, excessive and scorched-earth litigation tactics,

such as those employed by Movants here, do not qualify.

II.    **None of the Services Provided by the Substantial Contribution Claimants Directly
and Materially Contributed to the Debtor's Reorganization, Conferred a Benefit to
the Entire Estate or Fostered the Reorganization Process.**

34.    The Substantial Contribution Claimants argue that they provided services in four

areas that constitute substantial contributions and should be compensated by the estate:

(a) contesting the First Day Motions; (b) contesting the 2021 PI Motion; (c) supporting the

Transfer Motions; and (d) supporting the motions to dismiss the 2021 Chapter 11 Case.  None of

these services meet the Third Circuit's high standard for granting a substantial contribution

claim.

A.    **Contesting Routine First Day Motions Did Not Confer a Benefit to the
Estate.**

35.    The First Day Motions sought relief routinely requested in mass tort cases,[25] as

the Substantial Contribution Claimants are forced to acknowledge.  Omnibus Mot. ¶ 9 (noting

the First Day Motions "were typical first day pleadings (e.g. Claims Agent Retention

Application, Notice Procedures Motion, Case Management Motion, and the Bank and Business

---

[25]    See, e.g., In re Cyprus Mines Corp., No. 21-10398 (LSS) (Bankr. D. Del. Feb. 11, 2021), Dkts. 3, 5
(application and motion requesting similar relief as First Day Motions); In re DBMP LLC, No. 20-30080
(JCW) (Bankr. W.D.N.C. Jan. 23, 2020), Dkts. 3, 4, 5, 7 (application and motions requesting same relief as
First Day Motions); In re Paddock Enter., LLC, No. 20-10028 (LSS) (Bankr. D. Del. Jan. 6, 2020),
Dkts. 3-5 (application and motions requesting similar relief as First Day Motions); In re Imerys Talc Am.,
Inc., No. 19-10289 (LSS) (Bankr. D. Del. Feb. 13, 2019), Dkts. 5, 11, 14 (same); In re Bestwall LLC,
No. 17-31795 (LTB) (Bankr. W.D.N.C. Nov. 2, 2017), Dkts. 9, 10, 17, 22 (application and motions
requesting same relief as First Day Motions).

Forms Motion")".[26]  Each of the motions sought straightforward administrative relief subject to

the rights of the TCC, once appointed, to seek reconsideration of any order granting the relief.

There was no threat (imminent or otherwise) to talc claimants.  Nevertheless, the Substantial

Contribution Claimants determined to object.[27]  And, despite the "collective and concerted

effort," alleged by the Substantial Contribution Claimants, both the PSC and the Meso

Committee filed duplicative objections[28] (and now both seek reimbursement for those

objections).[29]

36.    The objections to the First Day Motions provided no benefit to the estate, and

were overruled in any event.  And the content of the Substantial Contribution Claimants'

objections, which focused not on the specific relief requested but on contesting the filing of the

chapter 11 case itself, revealed their true purpose—pursuit of a scorched earth litigation strategy

motivated by a desire to return to the tort system, which could be potentially profitable for

counsel (but most often not for claimants).  Such tactics should not be rewarded by the grant of

substantial contribution claims.

---

[26]    The Substantial Contribution Claimants highlight the *Informational Brief of LTL Management LLC* [Dkt. 3] as an "atypical filing," Omnibus Mot. ¶ 9, but no relief was requested in that filing and such briefs are not uncommon in mass tort cases.  See In re Aldrich Pump LLC, No. 20-30608 (JCW) (Bankr. W.D.N.C. June 18, 2020), Dkt. 5; In re DBMP LLC, No. 20-30080 (JCW) (Bankr. W.D.N.C. Jan. 23, 2020), Dkt. 22; In re Bestwall LLC, No. 17-31795 (LTB) (Bankr. W.D.N.C. Nov. 2, 2017), Dkt. 12.

[27]    Those decisions, even without the grant of substantial contribution claims, already burdened the estate through the incurrence of fees by Debtor's counsel in reviewing and responding to the frivolous objections.

[28]    See Dkts. 51, 67.

[29]    Talc claimants were well-represented by counsel from the outset of the 2021 Chapter 11 Case.  Seventeen different tort plaintiff firms made appearances at the First Day Hearing alone.  These firms, like the Substantial Contribution Claimants, focused on the interests of their respective clients and contesting the filing of the 2021 Chapter 11 Case and a return to the tort system.  The Substantial Contribution Claimants' determination to participate in the 2021 Chapter 11 Case at an early stage was not unique, and their decision to incur substantial legal fees advancing arguments being made by myriad other plaintiff firms does not entitle them to an award of substantial contribution compensation.

-18-

**B.    The Substantial Contribution Claimants' Failed Efforts in Opposing the 2021 PI Motion Were Unnecessary and Did Not Benefit the Estate.**

37.    The Substantial Contribution Claimants claim that it was critical for them to address the Emergency Motion and the 2021 PI Motion, because the motions represented "a unilateral and improper extension of the automatic stay" and "extraordinary relief."  Omnibus Mot. ¶¶ 12-13, 15, 25-26.  But preliminary injunction motions in mass tort chapter 11 cases are common place and, until recently, have been uncontroversial, with parties, including tort claimants, recognizing that halting both the liquidation of claims against the debtor and the litigation of estate claims outside of a chapter 11 case benefits the estate.[30]  And, the Emergency Motion sought an extension of the automatic stay in accordance with recent rulings of the NC Bankruptcy Court under similar factual circumstances.  See generally Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A to Complaint (In re Aldrich Pump LLC), 2021 WL 3729335 (Bankr. W.D.N.C. Aug. 23, 2021); DBMP LLC v. Those Parties Listed on Appendix A to Complaint (In re DBMP LLC), 2021 WL 3552350 (Bankr. W.D.N.C. Aug. 11, 2021).

---

[30]    See, e.g., In re Aldrich Pump LLC, No. 20-30608, Adv. No. 20-03041 (Bankr. W.D.N.C. Aug. 23, 2021); In re DBMP LLC, No. 20-30080, Adv. No. 20-03004 (Bankr. W.D.N.C. Aug. 11, 2021); In re Mallinckrodt PLC, No. 20-4018, Adv. No. 20-50850 (D. Del. Feb. 11, 2021); In re Purdue Pharma L.P. et al., No. 19-23649, Adv. No. 19-08289 (Bankr. S.D.N.Y. Oct. 11, 2019); In re Bestwall LLC, No. 17-31795, Adv. No. 17-03105 (Bankr. W.D.N.C. July 29, 2019); In re Kaiser Gypsum Co. Inc., No. 16-31602, Adv. No. 16-03313 (Bankr. W.D.N.C. Nov. 4, 2016); In re Specialty Prods. Holding Corp., No. 10-11780, Adv. No. 10-51085 (Bankr. D. Del. July 23, 2010); In re Leslie Controls, Inc., No. 10-12199, Adv. No. 10-51394 (Bankr. D. Del. July 14, 2010); In re Garlock Sealing Techs. LLC, No. 10-31607, Adv. No. 10-03145 (Bankr. W.D.N.C. June 21, 2010); In re Quigley Co., Inc., No. 04-15739, Adv. No. 04-04262 (Bankr. S.D.N.Y. Dec. 17, 2004); In re Mid-Valley, Inc., No. 03-35592, Adv. No. 03-3296 (Bankr. W.D. Pa. Dec. 17, 2003); In re Combustion Eng'g, Inc., No. 03-10495, Adv. No. 03-50839 (Bankr. D. Del. Mar. 7, 2003); In re ACandS, Inc., No. 02-12687, Adv. No. 02-5881 (Bankr. D. Del. Sept. 27, 2002); In re G-I Holdings, Inc., No. 01-30135, Adv. No. 01-3013 (Bankr. D.N.J. Feb 22, 2002); In re Harbison-Walker Refractories Co., No. 02-21627, Adv. No. 02-2080 (Bankr. W.D. Pa. Feb. 14, 2002); In re N. Am. Refractories Co. (NARCO), No. 02-20198, Adv. No. 02-2004 (Bankr. W.D. Pa. Jan. 4, 2002); In re W.R. Grace & Co., No. 01-02239, Adv. No. 01-771 (Bankr. D. Del. May 3, 2001); In re Babcock & Wilcox, No. 00-10992, Adv. No. 00-01029 (Bankr. E.D. La. Apr. 17, 2000); In re Pittsburgh Corning Corp., No. 00-22876, Adv. No. 00-2161 (Bankr. W.D. Pa. Apr. 16, 2000).

-19-

38.     Additionally, the Substantial Contribution Claimants' oppositions to the 2021 PI

Motion and the Emergency Motion ultimately were unsuccessful.  Nonetheless, the PSC and

Meso Committee claim that their efforts resulted in the NC Bankruptcy Court entering a more

limited temporary restraining order [Adv. Dkt. 28].  But achieving the Substantial Contribution

Claimants' goal of returning to the tort system (to a limited extent and for a limited period of

time) did not benefit the estate or contribute to the Debtor's reorganization.  And, as the PSC and

the Meso Committee acknowledge, the limited temporary restraining order was dissolved and,

following discovery and a two-day evidentiary hearing, the NC Bankruptcy Court entered an

order confirming the application of the automatic stay and granting the Debtor's requested

preliminary injunction for 60 days [Adv. Dkt. 102].

39.     And the NC Bankruptcy Court limited the preliminary injunction to an initial 60

days, not because of the work of the Substantial Contribution Claimants, Omnibus Mot. ¶ 92, but

because it had determined to transfer the case and wanted to provide the transferee court an

opportunity to rule on the matter.  See Adv. Dkt. 102 ¶ 4 ("This Order is not intended to bind a

subsequent Presiding Court.  The injunction and the Court's interim stay ruling herein shall

expire on the date that is 60 days after the entry of this Order . . ., unless modified or extended by

an order of the Presiding Court.").

40.     Following the transfer of the case to this Court, months of discovery by the

Debtor, the official talc committees and others (which duplicated in part the discovery conducted

in October-November 2021) and a five-day evidentiary trial to address the motions to dismiss

and the PI Adversary Proceeding, on February 25, 2022, this Court issued an opinion granting

the 2021 PI Motion.  LTL Mgmt. LLC v. Those Parties Listed on Appendix A to Complaint

(In re LTL Mgmt. LLC), 638 B.R. 291 (Bankr. D.N.J. 2022) mooted by LTL Mgmt., 64 F.4th 84
(3d. Cir. 2023).

41.    Rather than providing any substantial contribution, the Substantial Contribution
Claimants' determination to engage in extensive emergency discovery in North Carolina and
repeated, duplicative and ultimately unsuccessful challenges to the 2021 PI Motion (a) served
only the plaintiff law firms' individual interests to return to the tort system, (b) delayed the
administration and progress of the 2021 Chapter 11 Case and (c) generated substantial retained
professional fees,[31] which already have been borne by the estate.  See RS Legacy, 2016 WL
1084400 at *4 (finding that "activities that primarily further the movant's self-interest" do not
constitute a substantial contribution because a substantial contribution "is one that . . . fosters the
reorganization process"); Granite Partners, 231 B.R. at 446 (services that are substantial
contributions "foster and enhance—rather than retard and interrupt—the progress of
reorganization.").

**C.    The NC Bankruptcy Court—Not the Substantial Contribution Claimants—
Initiated the Venue Transfer.**

42.    Although the Substantial Contribution Claimants make much of the "successful"
transfer of the 2021 Chapter 11 Case to this Court, the NC Bankruptcy Court sua sponte raised
the issue of venue transfer and entered the Show Cause Order, which included detailed
preliminary findings regarding venue, ordered the Debtor to show cause as to why venue should
not be transferred and permitted other interested parties to submit motions.  See Dkt. 208, 3.  As
noted above, the Bankruptcy Administrator filed the initial motion in support of venue transfer.

---

[31]    From the time of the formation of the TCC through January 31, 2022 alone, the TCC's professionals
collectively requested fees totaling $21,628,831.25 and expenses totaling $478,936.91 for a total of
$22,107,768.16—with Otterbourg alone requesting $2,280,824.73.  See Dkt. 2432 (Debtor's statement
regarding interim fee applications filed by professionals for the TCC, TCC I and TCC II); Dkt. 1763-1
(Otterbourg's first interim fee application for the period of November 12, 2021 through February 28, 2022).

NAI-1537540909

In addition to the Transfer Motions filed by Movants, representatives for talc claimants, none of

whom are Movants, filed four motions and/or joinders to the Transfer Motions and the TCC,

once formed, filed a letter supporting transfer.

43.     The Transfer Motions all made strikingly similar arguments.  In fact, the PSC's

Transfer Motion largely repeated the arguments made in the Bankruptcy Administrator's

Transfer Motion.  See generally Dkt. 205; id. ¶¶ 21, 35-36 (Bankruptcy Administrator arguing

that the interests of justice and convenience of the parties both supported transferring the 2021

Chapter 11 Case to New Jersey, including because "the Debtor's connections to North Carolina

are limited, manufactured, and recent.  The Debtor did not exist until a mere two days prior to

the Petition Date, and Old JJCI had no relationship with North Carolina" and the Debtor's assets

and witnesses are primarily located in New Jersey); compare generally with Dkt. 235; id. ¶¶ 4, 6

(PSC raising similar arguments, including that "J&J chose to reincorporate the Debtor in North

Carolina, a place in which its scant connections were manufactured mere days before filing" and

that the Debtor's assets and witnesses are primarily located in New Jersey) and Dkt. 347 ¶¶ 1,

16-22 (Meso Committee raising similar arguments, including that the Debtor's assets and

witnesses are in New Jersey).  Additionally, each of these parties appeared at, and made

duplicative arguments during, the November 10, 2021 hearing on the Transfer Motions.  See

Nov. 10, 2021 Hr'g Tr. 28:23-31:13, 83:11-88:17, 120:19-123:1 (Bankruptcy Administrator);

32:16-42:23, 123:3-25 (PSC); 45:11-48:21 (Meso Committee).  As the Third Circuit has held,

mere participation or duplication of efforts does not justify a substantial contribution claim, and

the duplicative nature of these filings only further emphasizes that any reimbursement to the

Substantial Contribution Claimants would be inappropriate.  See Lebron, 27 F.3d at 943-44;

RS Legacy, 2016 WL 1084400 at *4.

NAI-1537540909

**D.      Litigation of the Motions to Dismiss Was Led by the TCC.**

44.      Finally, the Substantial Contribution Claimants baselessly claim that they "set the
stage" for and were the "predicate for the TCC's motion to dismiss."  Omnibus Mot. ¶ 11.  But
achieving dismissal of a bankruptcy case does not substantially contribute to a successful
resolution to the benefit of the debtor's estate.  See supra ¶ 29.  Moreover, it is not even apparent
that the Substantial Contribution Claimants contributed to the dismissal efforts in any event.

45.      The Substantial Contribution Claimants present nothing but vague claims that
"the work performed by the Substantial Contribution Claimants formed a basis for much of the
motion to dismiss."  Id. ¶ 28.  As set forth above, numerous claimants' counsel appeared at the
First Day Hearing and expressed their dissatisfaction with the 2021 Chapter 11 Case—with the
exception of Movants, none of these lawyers is seeking substantial contribution claims for
having contributed to dismissal of the chapter 11 case (and rightly so).  Regardless, given the
dismissal standard applicable in the Fourth Circuit and existing dismissal precedent in the
divisional merger asbestos chapter 11 cases pending in North Carolina, it is far from clear that
any party, including Movants, seriously considered seeking dismissal prior to the transfer of the
case to this Court (after which point, an official talc committee already had been formed).

46.      Further, the TCC was appointed by order on November 8, 2021, less than one
month after the Petition Date.  See Dkt. 355.  The TCC's motion to dismiss was filed on
December 1, 2021, and was denied by this Court in February 2022.  See Dkts. 632, 1572.  In the
approximate two-month period between the filing of and hearing on the TCC's motion to
dismiss, extensive discovery occurred; at most, any discovery previously conducted in North
Carolina was expanded and recreated during that process.  That the motion to dismiss may have
included some facts developed during the preliminary hearings before the NC Bankruptcy Court
does not retroactively render the Substantial Contribution Claimants' needless, premature and

NAI-1537540909

burdensome preliminary injunction discovery a substantial contribution.  Such facts would likely have been developed even if it were not for the Substantial Contribution Claimants' overruled objections to the 2021 PI Motion.  The Substantial Contribution Claimants' contention that they "set the stage" for the eventual dismissal motions, even if true, does not satisfy the Third Circuit's requirement for a direct material benefit to the estate.

### III.    The AWKO Motion Should Also Be Denied, Including Its Request for Payment of Amounts Incurred Providing Services AWKO Knew the TCC Was Performing.

47.    While there is no dispute that AWKO was an active participant throughout the 2021 Chapter 11 Case, that alone is not enough to warrant a substantial contribution claim. AWKO's request for a substantial contribution claim for services provided during the period from October 14, 2021 through the TCC's retention of counsel fails for the same reasons as the Substantial Contribution Claimants' requests do—AWKO acted primarily in its clients' (or its own) self-interest,[32] see supra ¶ 36, the services provided by AWKO regarding the Emergency Motion and the 2021 PI Motion were unnecessary, duplicative and did not benefit the estate, see supra ¶¶ 37-41, and AWKO's Transfer Motion was duplicative of the Bankruptcy Administrator's Transfer Motion.[33] See supra ¶¶ 42-43.

---

[32]    AWKO sought, on multiple occasions, to seat a client on the TCC.  These efforts failed.  Nonetheless, AWKO continued to take an active role in this case, pursuing its own interests with no expectation of reimbursement from the estate.  AWKO even explicitly acknowledged that, much like Arnold & Itkin, its activity in the case was to protect the interests of its own constituency and "not on the debtor's dime."  See Apr. 12, 2022 Hr'g Tr. 17:7-14.  It cannot come now and request reimbursement from the Debtor's estate for work that was done to benefit itself or its own clients.

[33]    AWKO's Transfer Motion repeated many of the same arguments, although it requested transfer to Delaware instead of New Jersey.  See, e.g., Dkt. 346 ¶ 3 ("The Court, the Bankruptcy Administrator, and other claimants have already highlighted the Debtor's lack of any meaningful connections to this District."); id. ¶ 8 (requesting court transfer "case to the District of Delaware or, in the alternative, New Jersey, in the interest of justice and for the convenience of the parties").

NAI-1537540909

48.     Similarly, the services provided by AWKO after the formation of the TCC (and

TCC I and TCC II) in connection with the motions to dismiss the 2021 Chapter 11 Case and the

Third Circuit appeals that followed were unnecessary, duplicative and not uniquely beneficial to

the estate.  AWKO performed these services knowing they would duplicate work already being

performed by the ten law firms retained by the official talc committees charged with representing

talc claimants generally and other parties-in-interest who, rightly so, have not sought substantial

contribution claims.

49.     AWKO's duplicative services in connection with the motions to dismiss did not

provide any benefit—rather its positions and arguments duplicated, almost verbatim, the efforts

of the TCC and other parties in the 2021 Chapter 11 Case.  <u>Compare</u> Dkt. 1003, 2 (AWKO

stating that "this bankruptcy case serves no legitimate reorganizational purpose.  The Debtor is a

newly-confected entity, created two days before the Petition Date as part of a series of corporate

machinations intended to cleave off the personal injury liabilities of J&J and JJCI, saddle those

liabilities, and then ferry [those liabilities] into bankruptcy.") <u>with</u> Dkt. 632 ¶¶ 1, 4 (TCC

asserting that "Johnson & Johnson created this Debtor on the eve of its bankruptcy filing and

initiated and prosecutes this Chapter 11 case for one purpose and one purpose alone – to manage

the litigation associated with J&J's decades-long manufacture and sale of a carcinogenic product.

. . . This is not what Chapter 11 is for.  The purpose of Chapter 11, and of the powers and

benefits granted by statute, is to 'further a valid reorganizational purpose.' . . .  This Debtor has

no such purpose.") (internal citation and definitions omitted).

50.     And AWKO's services in connection with the Third Circuit appeal likewise did

not provide any unique benefit to the estate.  Although AWKO filed a brief in concert with the

NAI-1537540909

TCC and Arnold & Itkin[34] in the Third Circuit appeals,[35] the TCC could have handled, and did

ably handle, the appeal without any of the services rendered by AWKO—at that point in time,

the TCC had special appellate counsel to assist it in addition to at least six other professionals.[36]

AWKO intervened in the 2021 Chapter 11 Case on its own accord and nothing in the record

warrants the award of a substantial contribution claim for its work.

## **CONCLUSION**

For the reasons set forth herein, the Debtor respectfully requests that the Court

deny the Motions and grant such other and further relief to the Debtor as the Court deems just

and proper.

---

[34]     Arnold & Itkin has not sought any substantial contribution claims in this case.

[35]     AWKO did not present oral argument in the Third Circuit.  See No. 22-2003, Dkt. 142 (noting time would be divided between counsel for the TCC, the UST and Arnold & Itkin).

[36]     AWKO's briefing focused on how the Debtor was ineligible for relief under section 524(g) of the Bankruptcy Code and how the Debtor's pre-petition corporate restructuring and subsequent bankruptcy filing was an illegitimate use of the bankruptcy system.  See No. 22-2003, Dkt. 55, 24-38.  The Third Circuit's opinion dismissing the 2021 Chapter 11 Case, however, did not discuss the Debtor's eligibility for relief under section 524(g) at all and accepted the Debtor's pre-petition corporate restructuring in conducting its analysis of the Debtor's financial condition.  See LTL Mgmt., 64 F.4th at 105-106 ("Thus for us, the financial state of LTL—a North Carolina limited liability company formed under state law and existing separate from both its predecessor company (Old Consumer) and its newly incorporated counterpart company (New Consumer)—should be tested independent of any other entity").

NAI-1537540909

Dated:  July 26, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (Admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

NAI-1537540909