| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br> **SHERMAN, SILVERSTEIN,** <br> **KOHL, ROSE & PODOLSKY, P.A.** <br> Arthur J. Abramowitz <br> Alan I. Moldoff <br> Ross J. Switkes <br> 308 Harper Drive, Suite 200 <br> Moorestown, NJ 08057 <br> Tel: (856) 662-0700 <br> Email: aabramowitz@shermansilverstein.com <br> amoldoff@shermansilverstein.com <br> rswitkes@shermansilverstein.com <br><br> *Counsel to Substantial Contribution Claimants* |

| | |
|---|---|
| In Re: | Case No. 21-30589 (MBK) |
| LTL MANAGEMENT LLC, | Chapter 11 |
| Debtor. | Honorable Michael B. Kaplan, U.S.B.J., Chief |
| | Hearing Date: August 2, 2023 at 10:00 a.m. |

**RESPONSE OF THE SUBSTANTIAL CONTRIBUTION CLAIMANTS IN FURTHER SUPPORT OF OMNIBUS MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIMS FOR REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM OCTOBER 14, 2021 THROUGH NOVEMBER 12, 2021 (PRIOR TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' RETENTION OF COUNSEL) THAT PROVIDED A SUBSTANTIAL CONTRIBUTION IN THE DEBTOR'S CASE**

The Substantial Contribution Claimants[1] file this response in further support of its Motion[2], seeking allowance of administrative claims for reimbursement of fees and expenses incurred for the twenty-nine (29) day period from October 14, 2021 through November 12, 2021, which

---

[1] The Substantial Contribution Claimants are comprised of MDL Plaintiffs Steering Committee ("PSC"), Maune, Raichle, Hartley, French & Mudd, LLC, as representative for an unofficial committee of mesothelioma claimants (the "Meso Committee"), and Levy Konigsberg LLP ("LK"), as counsel for and on behalf of certain mesothelioma claimants. The relevant counsel is as follows: (i) PSC (Otterbourg, P.C., Coley Hayes, Esq., Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, Mougey, P.A., and Burns Charest, P.C.); (ii) Meso Committee (Waldrep Wall Babcock & Bailey PLLC); and (iii) LK (Massey & Gail and LK).

[2] Any terms not expressly defined herein will be ascribed the meaning set forth in the Motion and/or Objection.

3380040.1

represents the time period from the Petition Date until the appointment of the Official Committee of Talc Claimants (the "TCC") and its retention of counsel (the "Pre-TCC Period") (Docket No. 3949), and in reply to the Debtor's Omnibus Objection to Motions for Allowance of Substantial Contribution Claims (the "Objection") (Docket No. 3962). In connection therewith, the Substantial Contribution Claimants respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.  The Debtor asserts that Movants seek the "unprecedented grant" of substantial contribution claims "not for progressing the above-captioned chapter 11 case" but for certain intermediate steps and ultimately "purportedly furthering dismissal of the case." *See* Objection at 2. The Debtor further asserts that "[s]ubstantial contribution claims are extraordinary." *Id.* at 4. In fact, this bankruptcy case was itself extraordinary. It was so extraordinary that the U.S. Court of Appeals for the Third Circuit, on a direct appeal from the Bankruptcy Court, mandated its dismissal. This case was subsequently dismissed pursuant to the Dismissal Order, which the Movants sought from the inception of the case.

2.  This case was unlike most any other bankruptcy case ever filed; it involved a chapter 11 debtor with seemingly unlimited resources. The Debtor was backed by <u>billions</u> of dollars of financial support from Johnson & Johnson and world-class law firms that had a long runway to craft and implement the "Texas Two Step" strategy. As laid bare in the Objection, the Debtor's view of the bankruptcy system is that an incredibly well-funded Debtor should be permitted to run roughshod without resistance in the early days of a chapter 11 case prior to the formation and/or appointment of a committee. In these early days, the Substantial Contribution Claimants provided a "voice" to a massive creditor body when there was no other.

3380040.1

3.      The Substantial Contribution Claimants, to the dismay of the Debtor, after unexpectedly being thrust into this Court, coordinated a direct response to the extraordinary and complex relief sought by the Debtor beginning on the first day of the case (all prior to the appointment of the TCC).  Such countervailing weight is a critical aspect of a proper functioning bankruptcy system which balances the rights of debtors, their estates, and creditors.  Had the Substantial Contribution Claimants not acted in concert and served the role of *ad hoc* committees to preserve the interests of all creditors, the Debtor would have steamrolled creditors and obtained far-reaching and unfettered relief during the twenty-nine (29) day Pre-TCC Period.  The Substantial Contribution Claimants not only preserved the rights of all creditors, but contributed to the integrity of the bankruptcy system by appropriately opposing the relief sought by the Debtor.

4.      Success, and the benefits conferred by the Substantial Contribution Claimants, must be analyzed through the lens of this case's ultimate disposition.  Their contributions resulted in, *inter alia*, the transfer of venue to this District and the establishment of a factual and legal foundation for the TCC to prosecute the motion to dismiss which was later proven successful as a result of the Third Circuit's dismissal directive. Although not always successful in its initial opposition, ultimately the Substantial Contribution Claimants were successful (the case was eventually dismissed) and their efforts accordingly provided a direct benefit to all creditors.

5.      The Debtor spills much ink in asserting that the services provided by the Substantial Contribution Claimants were duplicative of the services performed by the professionals of the two (2)[3] later appointed creditor committees for which those professionals received compensation.  In fact, the reverse is the case.  To the extent any of that work was duplicative, it was the official committees duplicating (but in reality, building upon) the work of the Substantial Contribution

---

[3] The fact that this case had two (2) official committees at one point further emphasizes the extraordinary nature of these proceedings.

3380040.1

Claimants, which preceded it. The TCC did not even exist when such efforts were undertaken. Importantly, the Substantial Contribution Claimants, unlike AWKO, are **solely seeking compensation for services provided during the Pre-TCC Period** during which a committee had yet to be formed. This is an important distinction which negates any argument about "duplication" with any services provided by the TCC.[4] Indeed, how can the work of the Substantial Contribution Claimants be called duplicative of work of the TCC when the TCC did not yet exist to be able to perform any of its work? Nevertheless, this tacit admission that the work performed by the Substantial Contribution Claimants was similar in nature to the work later performed by the official committees is significant in that it concedes that the services performed by the Substantial Contribution Claimants rose to the level of services which would be compensable for professionals representing an official committee. Clearly, the Debtor fails to distinguish the claims for compensation by the two (2) distinct groups of Movants in this case (the Substantial Contribution Claimants and AWKO). The Substantial Contribution Claimants that are asserting claims herein are confining their requests to the Pre-TCC Period, when by definition, there were no formal creditors' committees in place.

6. As set forth in detail in the Motion and herein, the Substantial Contribution Claimants request that this Court allow them administrative priority claims as a result of their providing critical services during the Pre-TCC Period that at the same time provided an important voice for the tort claimants, thereby constituting a substantial contribution pursuant to 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4).

---

[4] As referenced in the Certification of the PSC submitted in support of the Motion, the PSC did collaborate with AWKO during the Pre-TCC Period and worked in close coordination to avoid duplication of efforts and to ensure an orderly and efficient presentation of argument and evidence. *See* Docket No. 3949-2, ¶ 51. The Substantial Contribution Claimants maintain that the work performed by the Substantial Contribution Claimants and AWKO during the Pre-TCC Period added value through, *inter alia*, its briefing and arguments to the Court as well as its participation in discovery related to the preliminary injunction motion. *Id.*

# REPLY

## I. The Substantial Contribution Claimants Conferred a Direct Material Benefit to the Debtor's Estate Warranting the Allowance of a Substantial Contribution Claim

### A. The Debtor Misstates the Legal Requirements for a Finding of a Substantial Contribution

7. The Debtor erroneously asserts (implicitly, if not explicitly) that a predicate for the allowance of a substantial contribution claim is a successful reorganization. *See e.g.,* Objection at 4; ¶¶ 27-29. The Substantial Contribution Claimants directly addressed this issue at length in its Motion and cited a myriad of cases stating the opposite. *See e.g.,* Motion, ¶ 51. Contrary to the Debtor's arguments, the Third Circuit *Lebron* opinion broadly defines substantial contribution as efforts that "resulted in an actual and demonstrable benefit to the <u>debtor's estate and the creditors</u>." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (citing *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)) (emphasis added). This definition, on its face, clearly does not exclude the possibility that there can be a finding of a substantial contribution in cases which do not lead to a reorganization. A benefit to, and indeed, the "best interests" of the debtor's estate and the creditors is not always served by a bankruptcy reorganization. For example, section 1112(b)(1) of the Bankruptcy Code provides for conversion or dismissal of a bankruptcy case, for cause, if in the "best" interests of creditors and the estate. *See* 11 U.S.C. § 1112(b)(1). Clearly then, a substantial contribution claim can be awarded where a case dismissed. In fact, the Debtor does not cite any authority for the proposition that a substantial contribution claim can *only* be awarded in cases that result in a reorganization.

8. In furtherance of the Debtor's misguided arguments in this regard, the Debtor implies that the efforts of the Substantial Contribution Claimants building a foundation for the ultimate outcome of dismissal of the case was not for the benefit of creditors or the estate. While

3380040.1

the Debtor may honestly believe this, the Third Circuit found otherwise and, in fact, deemed dismissal in the best interests of the estate.[5] Thus, the efforts of the Substantial Contribution Claimants, in laying the groundwork for the ultimate dismissal of the case, clearly conferred a direct benefit on all creditors.

9. The Debtor further argues that substantial contribution claims should only be awarded in extraordinary circumstances. Not only is there a wide-array of case law analyzing substantial contribution claims (as set forth in the Motion) which demonstrates a lack of uniqueness about such claims, but even if the allowance of these types of claims were reserved for "extraordinary" circumstances, this case would certainly meet that criteria given the complex and novel legal issues at issue, the incredible financial backing of the Debtor by Johnson & Johnson, the magnitude of the creditor body comprised of over 38,000 Talc Creditors, and the absence of an official committee representing these creditors at the initial stages of this bankruptcy. Even the Debtor would have to concede that this case was nothing other than "extraordinary."

10. Finally, the Debtor asserts that "[a]uthorizing the substantial contribution requests here would set a dangerous precedent . . ." Objection at 4. In doing so, the Debtor ignores the underlying policy behind the allowance of substantial contribution claims. The policy aim allowing compensation for a creditor's (or an unofficial *ad hoc* creditors committee's) efforts in substantially contributing to a bankruptcy case under sections 503(b)(3) and 503(b)(4) is to promote meaningful creditor participation in the reorganization process. *See e.g., In re General Oil Distributors, Inc.*, 51 B.R. 794, 805 (Bankr. E.D.N.Y. 1985); *In re Calmuet Realty Company*,

---

[5] The Third Circuit observed that, in order to save a petition under section 1112(b)(2), and overcome a finding a finding of lack of financial distress, it would need to identify unusual circumstances establishing that dismissal was not in the best interests of creditors and the estate. It declined to do so thereby concluding dismissal was in the best interests of the creditors and the estate. *See In re LTL Management, LLC*, 64 F.4th 84, 110 (3d Cir. 2023).

3380040.1

34 B.R. 922, 926 (Bankr. E.D. Pa. 1983). The Third Circuit had explicitly endorsed this view while also emphasizing the need for the creditor effort to be substantial to be compensated, noting that these Code provisions "represent[s] an accommodation between the twin objectives of encouraging meaningful creditor participation in the reorganization process" and "keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for creditors." *Lebron*, 27 F.3d at 244 (internal citations omitted).

11. In allowing for the prospect of allowance of substantial contribution claims, Congress clearly wanted to incentivize creditors to take action in the early stages of a chapter 11 case in the absence of a committee. Here, the Substantial Contribution Claimants did just that and acted on behalf of all creditors in an effort to preserve their rights until an official committee was in place and could take action.

**B. The Debtor Ignores the Relevant Time Period for Which the Substantial Contribution Claimants Seek Recovery**

12. To be clear, the Substantial Contribution Claimants are solely seeking compensation for services rendered during the twenty-nine (29) day Pre-TCC period between the Petition Date and the date on which the TCC had been formed and retained counsel. The Debtor either ignores this fact or conflates the Substantial Contribution Claimants with AWKO which seeks reimbursement of services rendered during a significantly longer period of time.

13. During the relevant Pre-TCC period, it is obvious that the Substantial Contribution Claimants, while working in concert, served the role of an unofficial committee that filled the void until an official committee could be appointed. These services were critical in that without the resistance of the Substantial Contribution Claimants, the Debtor would have been able to run roughshod over all creditors.

3380040.1

14. As set forth in the Motion, and broadly recognized, creditors may be reimbursed "for services performed by it or its attorney prior to the formation of an official committee, to the extent those services provide a substantial contribution to the estate." *In re Worldwide Direct, Inc.*, 259 B.R. 56, 62 (Bankr. D. Del. 2001); *see also In re General Electrodynamics Corp.*, 368 B.R. 543, 554-56 (Bankr. N.D. Tex. 2007) (finding that the applicants' actions as a surrogate creditors' committee that policed the actions of the debtors and identified potentially voidable transfers to insiders were a substantial contribution to the estate).

15. In performing the function of a committee, there was no duplication of services with the later formed TCC as asserted by the Debtor, nor could there be, because all of these services predated the work performed by the TCC. This was recognized in *General Electrodynamics* where the Court observed that because there had not been a committee in that case, there was no duplication that would weigh against the claimant. *General Electrodynamics*, 368 B.R. at 554, n. 27. In fact, the claimant's performance of those functions, that in other cases might be denied as duplicative, in the absence of any actual or potential duplication, weighed in favor of granting the section 503(b) application. *Id.* Due to the absence of an unofficial committee during the Pre-TCC Period, and coordination amongst the Substantial Contribution Claimants, there was no duplication of services rendered by additional parties.

16. Further, the Debtor emphasizes the significant compensation paid to professionals duly retained by the official committees subsequent to the time for which the Substantial Contribution Claimants seek reimbursement as a reason to deny such reimbursement. However, the services performed by the official TCC professionals were <u>in addition to, and after</u>, the services already provided by the Substantial Contribution Claimants. Since none of this work was

simultaneous, it certainly could not be duplicative and therefore the amount paid to the retained professionals should have no bearing on the Movants' request herein.

17. Again, it cannot go without repeating that if the TCC were in place during the Pre-TCC Period it would have a right to seek compensation for the same services rendered by the Substantial Contribution Claimants during the Pre-TCC period, a fact conceded by the Debtor as it complains of an alleged duplication of services and payment of significant amounts to professionals retained by the committees.[6]

18. Notably, however, as referenced in the Motion, the Debtor's professionals billed, and largely sought payment of, legal fees in the amount of approximately $4,623,121.39 during the Pre-TCC Period.[7] For comparison, the Substantial Contribution Claimants seek the allowance of a claim totaling approximately $1,916,770.13 for the same period, which includes legal fees and expenses.[8]

**II.  All of the Services Provided by the Substantial Contribution Claimants During the Pre-TCC Period Conferred a Benefit to the Estate and its Creditors**

19. The Debtor asserts that the Substantial Contribution Claimants should not receive allowance of administrative priority claims for services rendered during four (4) distinct aspects of this case during the Pre-TCC Period, including (i) contesting the First Day Motions; (ii) contesting the preliminary injunction; (iii) obtaining the transfer of venue; and (iv) supporting the

---

[6] Despite almost unlimited resources and the billions of dollars in financial backing from Johnson & Johnson, the Debtor has consistently complained of the fees sought, and ultimately awarded, to retained committee professionals while also being compensated millions of dollars for services rendered. *See e.g.,* Docket No. 2888 (comparing approximately $22,000,000 sought by the numerous committee professionals during the Second Interim Period to the approximately $13,000,000 sought by Debtor professionals). Simply, at one point during this case two (2) official committees were appointed, and thus the number of professionals representing those committees outnumbered the Debtor's retained professionals.

[7] In addition to Jones Day, such professionals include Alix Partners, LLP (*see* Docket Nos. 1104, 1771), Bates White, LLC (*see* Docket Nos. 963, 1778), King & Spalding, LLP (*see* Docket Nos. 1550, 1753), McCarter & English, LLP (*see* Docket Nos. 1020, 1728), Rayburn Cooper & Durham, P.A. (*see* Docket No. 1748), Skadden Arps (*see* Docket Nos. 1610, 1779), and Weil, Gotshal & Manges, LLP (*see* Docket Nos. 1144, 1870).

[8] The Substantial Contribution Claimants note for comparison that as of December 31, 2022, Jones Day alone had been paid $23,495,917.75 while seeking an additional $858,184.47 for December 2022. *See* Docket No. 3815.

9

3380040.1

motion to dismiss. Objection, ¶ 34. As set forth below and in the Motion, the Substantial Contribution Claimants respectfully submit that the services rendered rose to the level of a substantial contribution as such services conferred a benefit on the estate and all creditors.

### A. Contesting the First Day Motions Constituted a Substantial Contribution

20. The Debtor argues that the First Day Motions were routine and presented no threat to the Talc Creditors. Objection, ¶ 35.

21. Despite the Debtor's assertions, some of the first day filings were atypical, such as the Debtor's Informational Brief. This pleading alone was more than 130 pages in length and set forth the Debtor's one-sided story and narrative in an effort to deny the legitimacy of the claims asserted while, in the same breath, to boost the legitimacy of its bankruptcy filing. As stated in the Motion, the Substantial Contribution Claimants were required to counter that narrative and address the significant issues affecting the estate and its creditors which included a preliminary injunction, transfer of venue, and whether the Debtor's bankruptcy filing constitute a bad faith filing.

22. The Debtor characterize these efforts as a "scorched earth litigation strategy motivated by a desire to return to the tort system . . ." Objection, ¶ 36. To the contrary, it was nothing other than prudent lawyering to preserve rights for all creditors, and more importantly, the Third Circuit ultimately agreed with the result that the Substantial Contribution Claimants were seeking; dismissal.

### B. Efforts to Oppose the Injunction Constituted a Substantial Contribution

23. The Debtor asserts that efforts undertaken by the Substantial Contribution Claimants to oppose the injunction on non-debtor entities "(a) served only the plaintiff law firms' individual interests to return to the tort system, (b) delayed the administration and progress of the

10

2021 Chapter 11 Case; and (c) generated substantial retained professional fees, which already had been borne by the estate." Objection, ¶ 41.

24. Again, the actions of the Substantial Contribution Claimants were not for the purpose of serving individual law firms, but instead, were for all Talc Creditors, which actions were undertaken on their belief that this matter did not have a valid bankruptcy purpose, as was ultimately confirmed by the Third Circuit. In fact, absent the filing of LTL II only hours after the dismissal of LTL I, the Talc Creditors would have returned to the tort system immediately.

25. As to the delay of the administration and progress of LTL I, as the Third Circuit already determined, LTL I should not have been filed in the first place due to an absence of a valid bankruptcy purpose. In no way did the efforts undertaken by the Substantial Contribution Claimants prior to the appointment of a committee delay the administration of LTL I. Indeed, the Substantial Contribution Claimants could not have delayed the progress of a case that was ultimately headed for dismissal from day one in the first place.

26. In addition, the allegation with respect to the generation of retained professional fees as a reason to deny this Motion is a non-sequitur in that all of the retained professional expenses were incurred <u>after</u> the Pre-TCC Period. The Substantial Contribution Claimants do not seek recovery of any fees incurred beyond that period.

27. Here, the efforts of the Substantial Contribution Claimants in opposing the Debtor's requests for injunctive relief, in the absence of a committee, conferred a benefit to all creditors. Upon the opposition of the Substantial Contribution Claimants following the Debtor's filing of the Emergency Motion seeking extension of the automatic stay, the Debtor was required to follow the rules and commence an adversary proceeding (rather than through motion practice) to obtain a TRO and preliminary injunction, which was the appropriate procedural mechanism for seeking

11

such relief. Moreover, the North Carolina Court initially declined to extend the injunction to non-debtors, and though it ultimately did so, limited that injunction to just sixty (60) days. And most importantly, the opposition to the imposition of an injunction as to non-debtor entities was ultimately proved "right" since the underlying bankruptcy itself was improper and no "stay" at all should have ever been put in place for the Debtor, let alone for any non-debtor entities.

### C. The Substantial Contribution Claimants' Efforts Led to Transfer of Venue

28. The Debtor alleges that the Substantial Contribution Claimants made "strikingly similar arguments" in the motions filed by other parties to transfer venue and subsequent hearing on the motions. Objection, ¶ 43.

29. In the North Carolina Court's *Order to Appear and Show Cause Why Venue Should Not Be Transferred to Another District*, the North Carolina Court specifically provided all parties with an opportunity to file their own motions to transfer venue following the motion of the Bankruptcy Administrator. Docket No. 208. To provide the North Carolina Court with its position on the matter, the PSC deemed it necessary to file its own motion to transfer venue. Docket No. 235. Further, the Meso Committee filed support to the motion to transfer venue filed by the Bankruptcy Administrator (Docket No. 205). *See* Docket No. 347. These Substantial Contribution Claimants specifically advanced the interests of not only their separate creditor groups, but all creditors.

30. Importantly, not only were these filings necessary and appropriate, but the pleadings and arguments of the Substantial Contribution Claimants afforded the Court a broad, and apparently consensus, view of the entire creditor body. These efforts were not duplicative, but rather they were cumulative in effect, which was no doubt important to the successful motions and resulting transfer of LTL I to this District. The transfer directly benefited the Debtor and all

12

3380040.1

parties as this District was a more convenient forum for the parties, especially in light of the Debtor's operational/corporate ties to New Jersey, the location of the MDL, and other talc-related litigations that were pending in New Jersey.

### D. The Substantial Contribution Claimants Built the Foundation for the Motion to Dismiss

31. Despite the Debtor's assertions in ¶ 44 of the Objection, it is not a correct statement of the law that achieving dismissal of a bankruptcy case does not substantially contribution to a successful resolution to the benefit of the debtor's estate. *See supra* ¶ 7. Again, a reorganization is not a predicate for the allowance of a substantial contribution claim.

32. As set forth in the Motion, all of the initial steps taken while this case was pending in North Carolina, including establishing the factual record and legal arguments that were built upon as the case progressed, and preserving the rights of all Talc Creditors until the TCC was in place to do so, substantially contributed to the motion dismiss and ultimate decision by the Third Circuit to dismiss the case. In fact, the discovery obtained (including depositions) and witness testimony elicited and exhibits utilized by the Substantial Contribution Claimants and their professionals during the critical hearings conducted in the North Carolina Court: (1) became part of the record of the bankruptcy case; (2) were referenced and cited in numerous court filings including motions opposing the preliminary injunction and for dismissal; (3) were subsequently used at the dismissal hearing; (4) and were made part of the appellate record which formed the basis for the proper resolution (dismissal) of this case.

33. The Debtor cannot refute that the ultimate disposition of this case resulted in dismissal. The Substantial Contribution Claimants sought that result since the first day, and the services rendered are directly tied to that result, which was in the best interests of the estate and all creditors.

## **CONCLUSION**

34. For all the foregoing reasons, and as set forth at length in the Motion, the Substantial Contribution Claimants respectfully request that the Motion be granted and they be allowed administrative priority claims under sections 503(b)(3), (b)(4) on account of the substantial contribution made in this case for the benefit of the estate and its creditors.

**SHERMAN, SILVERSTEIN,
KOHL, ROSE & PODOLSKY, P.A.**

Dated: July 28, 2023

By: */s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
amodolff@shermansilverstein.com
rswitkes@shermansilverstein.com

*Counsel to Substantial Contribution Claimants*

3380040.1