**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**OFFIT KURMAN, P.A.**
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:    pwinterhalter@offitkurman.com

**KTBS LAW LLP**
Michael L. Tuchin, Esq. (*pro hac vice*)
Robert J. Pfister, Esq. (*pro hac vice*)
Samuel M. Kidder, Esq. (*pro hac vice*)
Nir Maoz, Esq. (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:    mtuchin@ktbslaw.com
    rpfister@ktbslaw.com
    skidder@ktbslaw.com
    nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| | **Hearing Date & Time:** August 2, 2023 at 10:00 a.m. |

### REPLY IN SUPPORT OF MOTION OF
### AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
### FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIM

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf of thousands of holders

of talc personal injury claims detailed in its Rule 2019 statement [Bankr. D.I. 2391], submits this

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

reply to the *Debtor's Omnibus Objection to Motions for Allowance of Substantial Contribution Claims* [Bankr. D.I. 3962] (the "Objection")[2] and in support of AWKO's motion for allowance of a substantial contribution claim [Bankr. D.I. 3951] (the "Motion").

## I. PRELIMINARY STATEMENT

The issues actually in dispute are quite narrow. The Debtor does not dispute that "AWKO was an active participant throughout the 2021 Chapter 11 Case[.]" Obj. ¶ 47. Nor is there any challenge to the reasonableness of AWKO's fees, the number of timekeepers, or the like. Indeed, there is no objection to any specific item in the detailed time entries attached to the Pfister Declaration, all of which were carefully reviewed to exclude fees incurred on AWKO-specific matters that did not benefit the estate as a whole – such as, *e.g.*, preparation of AWKO's Rule 2019 Statement, and work in connection with potential Committee membership of AWKO clients.

At bottom, the Debtor's Objection to the Motion consists of three arguments: first, that the Debtor's failure to reorganize precludes creditors from asserting substantial contribution claims; second, that AWKO's services were "duplicative" of services provided by other parties in interest; and third, that AWKO's efforts to obtain dismissal of this case constituted "scorched earth" litigation tactics that harmed the estate and creditors. (The Debtor also objects to fees relating to contesting First Day Motions, *see* Obj. ¶ 35, but AWKO did not object to the First Day Motions and does not seek reimbursement of any fees incurred in connection therewith.) For the reasons set forth below, all of these arguments are without merit.

---

[2] The Debtor objects to both AWKO's Motion and the *Omnibus Motion of the Substantial Contribution Claimants [Etc.]* [Bankr. D.I. 3949] (the "Omnibus Motion") on substantially similar grounds. AWKO adopts and incorporates the reply filed in support of the Omnibus Motion to the extent consistent herewith. The United States Trustee also filed a response to the Motion and the Omnibus Motion (styled as an "omnibus objection"). *See* Bankr. D.I. 3963 (the "UST Response"). The UST Response does not appear to oppose the relief sought in the Motion; it merely "submits that the Court deny the Substantial Contribution Motions *if* the Movants are unable to satisfy the standards under Section 503." UST Response at 7 (emphasis added). For all the reasons set forth in the Motion and in this reply, AWKO satisfies the standards under section 503.

The Debtor says that "[h]allmarks of appropriate substantial contribution efforts, as demonstrated by Movants' own cases, include those actions which enhance efficiency, add to the prompt administration and resolution of a case and help preserve value for creditors and the estate." Obj. ¶ 33. AWKO's efforts bore all of those hallmarks. Its work was unique, narrowly tailored, and effective in substantially contributing to the dismissal of the case, which inured to the benefit of the creditor body as a whole. Indeed, by the Debtor's telling, it was the dismissal of 2021 LTL that spurred the Debtor to come to the table in 2023 LTL with a substantially larger ($8.9 billion) settlement proposal. In short, AWKO played an integral role in enhancing value for the entire creditor body and is therefore entitled to an administrative expense claim for its "substantial contribution in [the] case." 11 U.S.C. § 503(b)(3)(D).

## II. ARGUMENT

### A.  A Confirmed Plan is Not a Prerequisite to a Substantial Contribution Claim.

The Debtor argues or implies that no substantial contribution claim can be awarded for work that leads to dismissal of a chapter 11 case, rather than reorganization pursuant to a confirmed plan. *See, e.g.*, Obj. at 4 (arguing that substantial contribution claims are "meant to compensate a creditor for … services that directly and materially contribute to the reorganization" (emphasis omitted)); *see also id.* ¶¶ 27, 29, 30, 38, 41, 44. That is not correct.

The Bankruptcy Code authorizes administrative claims for expenses incurred "in making a substantial contribution in a case under chapter 9 or 11 of this title[.]" 11 U.S.C. § 503(b)(3)(D). Congress intentionally omitted from the statute any requirement that such efforts be made in furtherance of a confirmed plan. *See* 3 Norton Bankr. L. & Prac. 3d § 49:41 (2023) ("Legislative history defines the term [substantial contribution] as not requiring 'a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved

3

uncovers facts that would lead to a denial of confirmation ….'" (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 66-67 (1978)).

Case law from the Third Circuit and elsewhere confirms that a successful reorganization is not a prerequisite to allowance of a substantial claim. *See, e.g.*, *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 945-46 (3d Cir. 1994) (citing legislative history for the proposition that the statute "does not require a contribution that leads to confirmation of a plan" and remanding for a factual determination on whether creditor's efforts prior to conversion of case from chapter 11 to chapter 7 made a substantial contribution); *In re Team Sys. Int'l LLC*, 640 B.R. 296, 322 n.139 (Bankr. D. Del. 2022) (citing *Lebron* for the proposition that a substantial contribution claim "may be asserted after conversion to chapter 7 by a creditor that made such a contribution while the case was proceeding under chapter 11"); *In re Williams*, 49 F. App'x 845, 850 (10th Cir. 2002) (substantial contribution claim allowed in connection with efforts to convert case to chapter 7).

**B.    The Services for Which AWKO Seeks Reimbursement Were Not Duplicative of the TCC's or Any Other Party's Work**

The Debtor contends that AWKO's work was duplicative of work performed by others. *See, e.g.*, Obj. ¶¶ 47-50; *see also id.* ¶¶ 36-43.[3]  The Debtor's cases on "duplication" focus on whether the substantial contribution claimant's work was duplicative of services provided by *estate professionals*.[4]

---

[3]    Although paragraphs 47-50 comprise the AWKO-specific portion of the Objection, the Debtor contends that AWKO's substantial contribution claim for work in the North Carolina Phase "fails for the same reasons as the [other claimants'] requests do" and incorporates by reference the arguments made in connection with those claimants. *See* Obj. ¶ 47.

[4]    *See In re Deval Corp.*, 592. B.R. 587, 599 (Bankr. E.D. Pa. 2018) ("[S]ervices that are duplicative of other estate professionals generally will not qualify for reimbursement under section 503(b)(3)(D) or (b)(4))."; *In re RS Legacy Corp.*, 2016 WL 1084400, at *4 (Bankr. D. Del. Mar. 17, 2016) ("services that are duplicative of other estate professionals are insufficient"); *In re Bayou Grp., LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010) (a substantial contribution claim cannot be "based on services that duplicated those of other professionals already compensated by the estate, such as counsel for the debtor or an official committee").

4

During the North Carolina Phase, the TCC had yet to be appointed, and thus, by definition, AWKO's work was not duplicative of any estate professional. *Cf.* UST Obj. ¶ 23 ("[T]he U.S. Trustee recognizes (and the docket evidences) there was significant activity and substantial issues presented to the North Carolina Bankruptcy Court and the Bankruptcy Administrator in the period before a committee could be appointed. The U.S. Trustee therefore recognizes it is more likely that services performed in that period may have benefited creditors and the estate as a whole ….").

AWKO certainly acknowledges the important work of others involved in the North Carolina Phase; creditors worked in close collaboration to, among other things, oppose the PI Motion and advocate for venue transfer. But, as the record reflects and the declaration attached to the Omnibus Motion evidences, each participant made a unique and valuable contribution to the North Carolina Phase of the case.[5] Nothing in the case law precludes multiple firms from coordinating to collectively make a substantial contribution to a case in the absence of an official committee, and the Debtor's conclusory accusations of "duplication" are insufficient to rebut the evidence before the Court.

With respect to the Dismissal Phase, AWKO does not dispute that the TCC took the lead in litigating the motion to dismiss. But it simply is not true that AWKO's "positions and arguments duplicated, almost verbatim, the efforts of the TCC and other parties in the 2021 Chapter 11 Case." Obj. ¶ 49. The sole support for this sweeping accusation is the fact that AWKO and the TCC both (unsurprisingly and correctly) argued in their respective dismissal motions that this case served no valid reorganizational purpose. *See id.* That AWKO shared the same ultimate goal as the TCC –

---

[5] *See Certification of the Plaintiffs' Steering Committee in Support of [Omnibus Motion]* [Bankr. D.I. 3949-2] ¶ 51 ("The objectors worked in close coordination to avoid duplication of efforts and to ensure an orderly and efficient presentation of argument and evidence. I believe that AWKO [and other creditors] added value to this stage of the case through, among other things, its briefing and argument to the Court as well as its participation in discovery related to the preliminary injunction motion.").

dismissal for lack of a valid reorganizational purpose – does not mean that its work was duplicative of the TCC.  The Court's direct observation (from presiding over the trial) is sufficient to confirm AWKO's unique, non-duplicative contributions to the motion to dismiss.

The third and final prong of the Debtor's "duplication" argument is that "the TCC could have handled, and did ably handle, the appeal without any of the services rendered by AWKO …." Obj. ¶ 50.  Here, too, the Debtor misses the point.  Although the TCC had its own able counsel, AWKO worked with the TCC and other appellants to divide and allocate the issues on appeal and avoid duplication.  *See, e.g.*, Pfister Decl. (Motion Ex. B) ¶ 8.  This allocation of issues reduced the TCC's appellate workload, redounding to the benefit of the estate.  *Cf.* Obj. ¶ 31 (discussing the decision to grant a substantial contribution request in *In re Service Merchandise Co., Inc.*, 256 B.R. 738, 743 (Bankr. M.D. Tenn. 1999), and quoting that court's finding there was an "air of cooperation" and its observation that "the administrative costs saved by the synergy of the parties [was] significant").

C.    **AWKO's Successful Opposition to the Debtor's Bankruptcy Aided the Creditor Body as a Whole**

The Debtor complains that it should not be required to bear the cost of "a scorched earth litigation strategy motivated by a desire to return to the tort system, which could be potentially profitable for counsel (but most often not for claimants)."  Obj. ¶ 36; *see also id.* at 4 & ¶¶ 31, 33 (additional references to claimants' "scorched earth" litigation strategy).  For example, the Debtor argues that it was a waste of resources for creditors to even "address" the Emergency Motion and the 2021 PI Motion because "preliminary injunction motions in mass tort chapter 11 cases are common place and, until recently, have been uncontroversial[.]"  *Id.* ¶ 37.  By this telling, any opposition to the Debtor's bankruptcy strategy constituted "scorched earth" litigation, and creditors should have simply acquiesced to the Debtor's improper bankruptcy purpose.  This is a

repackaging of the Debtor's arguments in connection with the motion to dismiss in 2021 LTL, *i.e.*, bankruptcy is the most "equitable and efficient" alternative for talc claimants – whether they like it or not – and thus any attempt to impede the Debtor's bankruptcy goals is wasteful and harmful to the estate.

The Debtor's argument presupposes that claimants' desire to return to the tort system was an improper motive, even though the Third Circuit vindicated that very desire when it held that 2021 LTL was a bad faith filing.  In any event, active creditor participation in the chapter 11 process is a laudable goal, not something to be discouraged.  A purpose of section 503(b)(3)(D) is to further the "objective[] of encouraging meaningful creditor participation in the reorganization process." *Lebron*, 27 F.3d at 944; *see also In re DP Partners, Ltd. P'ship*, 106 F.3d 667, 672 (5th Cir. 1997) ("The policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process." (citation omitted)).

### III. CONCLUSION

For all the reasons set forth herein and in the Motion, the Court should grant the Motion and enter an order substantially in the form of the proposed order attached as Exhibit A thereto.

DATED:  July 28, 2023                    Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
_____
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:     (267) 338-1370
Facsimile:      (267) 338-1335
E-mail:          pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister  (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:     (310) 407-4000
Facsimile:      (310) 407-9090
Email:           mtuchin@ktbslaw.com
                    rpfister@ktbslaw.com
                    skidder@ktbslaw.com
                    nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*