

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                                                      **609-858-9360**
**Chief Judge, United States Bankruptcy Court**

September 25, 2023

To: All Counsel of Record

      Re:    LTL Management LLC, Debtor
                Case No. 21-30589 (MBK)
                <u>Motions for Allowance of Substantial Contribution Claims</u>

Dear Counsel:

      Pending before the Court are the following two motions: (a) *Omnibus Motion of the Substantial Contribution Claimants for Allowance of Administrative Claims for Reimbursement of Expenses Incurred for the Period From October 14, 2021 Through November 12, 2021 (Prior to the Official Committee of Talc Claimants' Retention of Counsel) That Provided a Substantial Contribution in the Debtor's Case* [ECF No. 3949] (the "Omnibus Motion") filed by certain claimants seeking substantial contribution claims (collectively, the "Substantial Contribution Claimants")[1] and (b) the *Motion of Aylstock, Witkin, Kreis & Overholtz, PLLC for Allowance of Substantial Contribution Claim* [ECF No. 3951] (the "AWKO Motion" and, together with the Omnibus Motion, the "Motions") filed by Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO" and, together with the Substantial Contribution Claimants, the "Movants"). The Court has reviewed the initial Motions, the Objections filed by both the Debtor [ECF No. 3962] and the Office of the United States Trustee [Dkt 3963] and Responses filed by Movants [ECF Nos. 3964 and 3965]. Additionally, the Court heard oral argument on August 2, 2023, and has considered the supplemental submissions [ECF Nos. 3971

---

[1] The Substantial Contribution Claimants consist of the following law firms representing the MDL Plaintiffs Steering Committee—Otterbourg, P.C, Cole Hayes, Esq., Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, Mougey, P.A. and Burns Charest, LLP ; Waldrep Wall Babcock & Bailey PLLC as counsel for an unofficial committee of mesothelioma claimants; and Levy Konigsberg,) on behalf of certain mesothelioma plaintiffs.

and 3972] requested by the Court in its August 15, 2023, Text Order. For the reasons that follow, the Court grants in part and denies in part the allowances for fees and expenses requested in the Motions.

The factual background and procedural history of this matter are well known to the parties and will not be repeated in detail here. In the Omnibus Motion, the Substantial Contribution Claimants seek reimbursement of fees and expenses pursuant to § 503 of the Bankruptcy Code for the twenty-nine (29) day period between the Petition Date and the appointment of the Official Committee of Talc Claimants. In the AWKO Motion, AWKO seeks reimbursement of fees and expenses for work performed throughout the pendency of the Debtor's first case, which is divided by the movant into three phases: (i) work performed from the Petition Date to the date venue was transferred from North Carolina to New Jersey; (ii) work related to the trial on the preliminary injunction and motions to dismiss; and (iii) work performed on the appeal of the orders concerning the preliminary injunction and motions to dismiss.

Section 503 of the Bankruptcy Code governs a non-debtor party's request for compensation for substantial contribution to a bankruptcy case. Section 503(b)(4) provides for the allowance for the "reasonable compensation for professional services rendered by an attorney or an accountant of an entity who expense is allowable under" § 503(b)(3). Bankruptcy Code § 503(b) provides in pertinent part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> . . .
>   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
> . . .
>     (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
> . . .
>   (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

Thus, under § 503(b)(3)(D) the actual, necessary expenses of a creditor that makes a substantial contribution in a chapter 11 case is afforded administrative priority. Further, pursuant to section 503(b)(4), the reasonable fees and actual, necessary expenses of the creditor's attorneys and accountants are also given administrative expense priority. Section 503(b)(3)(D) must be narrowly construed so that administrative expenses will be held to a minimum. *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)). Movants must prove by a preponderance of the evidence that they made a substantial contribution to the case and have satisfied the requirements of section 503. *Katchen v. Neumann*, 2021 WL 1625100, at *4 (D.N.J. Apr. 27, 2021); *See also In re Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993).

The Third Circuit, interpreting the "substantial contribution" standard in *Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994), has held that this provision has two purposes: (1) to encourage creditors to participate meaningfully in the reorganization process; and (2) to minimize fees and administrative expenses and thereby maximize creditor recoveries. *Lebron*, 27 F.3d at 944. A creditor makes a substantial contribution if its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Id.* at 943-44 (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)); *see In re Worldwide Direct, Inc.*, 334 B.R. at 121. 19. Moreover, creditors are presumed to act in their own interest "until they satisfy the court that their efforts have transcended self-protection." *Lebron*, 27 F.3d at 944 (citations omitted). The activities that a § 503(b)(3)(D) applicant has engaged in are "presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization." *Id.* at 943-44 (citation omitted). Indeed, courts have held that "[a]dministrative expense compensation based on a substantial benefit to a bankruptcy estate must be strictly limited to extraordinary creditor actions that led directly to tangible benefits to the creditors, the debtor, or the estate." *In re Summit Metals, Inc.*, 379 B.R. 40, 67 (Bankr. D. Del. 2007) (quoting *Psychiatric Hosps. of Hernando Cty. Inc.*, 228 B.R. 764, 767 (Bankr. M.D. Fla. 1998)); see also *In re KiOR, Inc.*, 567 B.R. 451, 459 (D. Del. 2017) ("[W]hile the phrase 'substantial contribution' does not lend itself to a set of exacting criteria, 'a well-developed body of case law teaches that the sort of contribution that reaches the substantial threshold is exceedingly narrow' and fees should only be granted in 'rare and extraordinary circumstances.'") (quoting *In re RS Legacy Corp.*, 2016 WL 1084400 at *4 (Bankr. D. Del. Mar. 17, 2016))*; In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005) ("[A]bsent some spectacular result, such as dramatically improving treatment of all creditors, expected and routine activities do not constitute substantial contribution.").

At the Court's request, Movants have provided a breakdown of their contribution claims into four separate categories: (1) General Discovery, (2) First Day Matters, (3) Supporting Venue Change, and (4) Opposing the Preliminary Injunction and Extension of the Automatic Stay. The Substantial Contribution Claimants, unlike AWKO, are seeking compensation solely for services provided during the 29-day period during which a committee had yet to be formed. In contrast, AWKO seeks allowances for the same period, as well as post-official committee formation through the appellate proceedings. In evaluating whether Movants are entitled to the allowances requested, this Court considers whether the services provided (a) were only for the benefit of the claimant or were for the benefit of all parties in the case; (b) directly, significantly, and demonstrably benefited the estate; and (c) were duplicative of the services provided by professionals for the creditors' committee, the committee itself, debtor and its attorneys, or other fiduciaries and their professionals. *See In re Worldwide Direct, Inc.*, 334 B.R. at 122 (citing *In re Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993)). Substantial contribution claims are extraordinary, rarely granted and are intended to compensate a creditor for non-duplicative services that directly and materially advance the interests of the bankruptcy estate.[2] Such claims are not allowable to the extent there are court-approved retained professionals who have undertaken the same work with comparable zeal and competence. In this matter, there were indeed, for the bulk of the proceedings following the formation

---

[2] Note, the Court agrees with Movants that substantial contribution allowances are not limited to situations where contributions lead directly or indirectly to a successful reorganization. The Third Circuit *Lebron* opinion broadly defines substantial contribution as efforts that "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (citing *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).

of two separate talc committees, at least ten law firms retained by the official talc committees, along with a myriad of other professionals, charged with representing the talc claimants as a whole. This Court finds no basis in law or fact to compensate counsel—no matter how well-intentioned or experienced—for services rendered while there were two official committees with court-approved professionals engaged in every facet of the case. To do otherwise, would open the door to parties deciding on their own—without safeguards and outside of the purview of the Court and the Office of the United States Trustee—which professionals can represent the interests of the bankruptcy estate.

With respect to the period preceding the formation of the two official committees, the Court is somewhat receptive to Movants' characterization of this case as "extraordinary". From the very outset, this case involved unusual pre-petition restructuring transactions, contested venue options and precedent-setting legal issues relative to the propriety of the chapter 11 filing and the extension of the automatic stay/imposition of injunctions as to third parties (including regulatory bodies). This Court accepts Movants' contention that the massive creditor body needed a voice and active representation early on in the proceeding to engage in critical discovery with respect to the pre-filing restructuring undertaken by the Debtor and affiliated entities, to investigate and challenge the propriety of venue choices, and to respond to the relief sought by the Debtor in the first days of the case. The mere fact that there was a Bankruptcy Administrator contemporaneously undertaking her review of the issues does not diminish the need for independent counsel representing the interests of thousands of tort claimants and other creditors prior to the formation of an official committee and retention of its professionals. Likewise, the Court is cognizant that thousands of hours were expended on discovery subsequent to the appointment of the official committees with respect to the balance of the case and the dismissal trial. The Court has no doubt that the discovery undertaken at the outset of the case was necessary to shape the direction of subsequent investigation and litigation efforts and provided meaningful value. Accordingly, the Court will grant Movants' requested allowances under section 503(b)(3)(D) for services rendered and expenses incurred with respect to contributions that fall under the first three categories (i.e., General Discovery, First Day Matters and Supporting Venue Change).

The Court does challenge and take issue with Movants' views that services rendered opposing the extension of the automatic stay or the imposition of a preliminary injunction merit the same results under § 503(b)(3)(D). Quite simply, this Court on multiple occasions granted the Debtor relief sought with respect to extending the automatic stay and continuing (or imposing) the preliminary injunction originally entered in North Carolina. In the Court's view, the relief sought by the Debtor furthered the interests of the bankruptcy estate and aided the Debtor in its reorganization efforts. This Court has authored several lengthy opinions outlining its reasoning and will not repeat same here.[3] Suffice to say, the Court does not consider the Movants' opposition to such relief as serving the best interests of the bankruptcy estate and compensable under § 503(b)(3)(D). Rather, such work performed in opposing the relief sought by the Debtor aided primarily the interests of individual plaintiffs seeking to pursue relief outside of the bankruptcy court. The Court acknowledges that some small percentage of the work performed opposing the preliminary injunction/extension of the automatic stay laid the groundwork for future efforts to gain dismissal of the proceeding. As such, and after reviewing the detailed supplemental submissions, the Court will approve 25% of the allowances sought (attorneys'

---

[3] *See In re LTL Management, LLC*, 638 B.R. 291, 297 (Bankr. D.N.J. 2022) (granting preliminary injunction and extending automatic stay to enjoin actions against those parties listed in Appendix A); *In re LTL Mgmt., LLC*, 640 B.R. 322 (Bankr. D.N.J. 2022) (granting preliminary injunction and extending automatic stay to enjoin securities action); In re LTL Mgmt., LLC, 645 B.R. 59 (Bankr. D.N.J. 2022) (granting preliminary injunction and extending automatic stay to enjoin state-court litigation for alleged consumer protection violations).

fees and expenses) for this category. Movants are to submit proposed orders modified to reflect the Court's ruling herein.

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge